1  Douglas R. Young (State Bar No. 073248)
   C. Brandon Wisoff (State Bar No. 121930)
2  Thomas B. Mayhew (State Bar No. 183539)
   Helen Dutton (State Bar No. 235558)
3  Farella Braun + Martel LLP
   235 Montgomery Street, 17th Floor
4  San Francisco, CA  94104
   Telephone:  (415) 954-4400
5  Facsimile:  (415) 954-4480
   dyoung@fbm.com
6  bwisoff@fbm.com

7  Attorneys for Defendant
   SHARLENE ABRAMS

8
                    UNITED STATES DISTRICT COURT
9
                  NORTHERN DISTRICT OF CALIFORNIA
10
                         SAN JOSE DIVISION
11

12
   SECURITIES AND EXCHANGE              Case No.  5:07-cv-02822 JF
13 COMMISSION,

14            Plaintiff,                **DEFENDANT SHARLENE ABRAMS'
                                        MOTION TO DISMISS (FRCP 12(b)(6))
15     vs.                              AND MOTION FOR MORE DEFINITE
                                        STATEMENT (FRCP 12(e))**

16 MERCURY INTERACTIVE, LLC             Date:    March 14, 2008
   (F/K/A/MERCURY INTERACTIVE,          Time:    9:00 a.m.
17 INC.), AMNON LANDAN, SHARLENE        Dept.:   Courtroom 3, 5th Floor
   ABRAMS, DOUGLAS SMITH and            Judge:   Honorable Jeremy D. Fogel
18 SUSAN SKAER,
                                        Date Complaint Filed:  May 31, 2007
19            Defendants.               Date Set For Trial:  None

20

21

22

23

24

25

26

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEF. ABRAMS' MOT.TO DISMISS & MOT. FOR
MORE DEFINITE STATEMEN
Case No. 5:07-cv-02822-JF

19994\1334257.3

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ................................................................. 1

STATEMENT OF ISSUES .............................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................... 3

INTRODUCTION ........................................................................................... 3

ARGUMENT ................................................................................................. 4

I.     THE COURT SHOULD ORDER A MORE DEFINITE STATEMENT REQUIRING THE SEC TO SPECIFY WHAT FACTS APPLY TO WHICH CLAIM ................................................................................................ 4

II.    THE FIRST THROUGH FIFTH, SEVENTH AND EIGHTH CLAIMS FOR RELIEF REQUIRE PLEADING WITH PARTICULARITY BECAUSE THEY SOUND IN FRAUD ......................................................................... 5

    A.    The 17(a) and 10(b) Claims (First and Second Claims for Relief) Must Be Pleaded With Particularity ............................................. 6

        1.    Rule 9(b) Applies To The Section 17(a) Claims (First Claim For Relief) And The 10(b) Claims (Second Claim For Relief) ......................... 6

        2.    The Third Through Eighth Claims For Relief, Under Section 13, Must Be Pleaded With Particularity Under Rule 9(b) ............................... 7

        3.    The SEC Must Plead Scienter With Particularity As To Each Of The Claims ........................................................................................ 9

    B.    THE SEC FAILS TO PLEAD PARTICULARITY FOR THREE OF THE FOUR DIFFERENT ACCOUNTING ERRORS ALLEGED IN THE COMPLAINT ................................................................................... 10

        1.    The SEC's Allegations Regarding Allegedly Backdated Option Exercises (¶¶ 82 – 97) Do Not Satisfy Rule 9(b) And Do Not Amount To A Violation Of The Securities Fraud Statutes ..................... 10

            a.    With Respect To Its Allegations Regarding Backdated Option Exercises, The SEC Fails To Plead Any Of The Elements Of A Securities Violation With The Required Specificity. ............................................... 11

            b.    Breach Of Fiduciary Duty Is Not A Violation Of The Securities Laws ................................................................... 12

            c.    The SEC Cannot Recover Ms. Abrams' Alleged Ill-Gotten Tax Benefits .......................................................... 13

        2.    The SEC's Allegations Regarding Inventory And Shipping "Backlog" (¶¶ 117 - 130) Do Not Satisfy Rule 9(b) And Do Not Amount To A Violation Of The Securities Fraud Statutes .............. 13

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEF. ABRAMS' MOT. TO DISMISS & MOT. FOR
MORE DEFINITE STATEMEN
Case No. 5:07-cv-02822-JF

- i -

19994\1334257.3

1

        3.      The SEC's Allegations Regarding European Exercises (¶¶ 131-144)
Do Not Satisfy Rule 9(b) .......................................................................... 17

2

III.    THE FOURTH CLAIM FOR RELIEF – FOR MISLEADING MERCURY'S
3        ACCOUNTANTS –IS NOT PLEADED WITH ADEQUATE PARTICULARITY ....... 18

4   IV.   THE EIGHTH CLAIM FOR RELIEF – "FAILURE TO DEVISE AND
        MAINTAIN A SUFFICIENT SYSTEM OF INTERNAL ACCOUNTING
5        CONTROLS" –IS NOT PLEADED WITH ADEQUATE PARTICULARITY ............. 20

6   V.    THE CLAIM FOR INJUNCTIVE RELIEF SHOULD BE DISMISSED ........................ 22

7   CONCLUSION ..................................................................................................................... 24

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEF. ABRAMS' MOT.TO DISMISS & MOT. FOR
MORE DEFINITE STATEMEN
Case No. 5:07-cv-02822-JF

- ii -

19994\1334257.3

1

# TABLE OF AUTHORITIES

2

## FEDERAL CASES

3

4
*Aaron v. SEC,*
    446 U.S. 680 (1980) .......................................................................................... 7, 10

5
*Abbott v. Equity Group, Inc.,*
    2 F.3d 613 (5th Cir. 1993) .................................................................................... 8

6

7
*Anderson v. District Board of Trustees of Central Florida Community College,*
    77 F.3d 364 (11th Cir. 1996) ............................................................................... 4, 5

8
*Basic Inc. v. Levinson,*
    485 U.S. 224 (1988) ............................................................................................ 12

9

10
*Bell Atlantic Corp. v. Twombly,*
    127 S. Ct. 1955 (2007) ........................................................................................ 9, 22

11
*Blake v. Dierdorff,*
    856 F.2d 1365 (9th Cir. 1988) ............................................................................. 22

12

13
*Badger v. Grubb & Ellis Co.,*
    No. 0-90-1550 MHP, 1992 U.S. Dist. LEXIS 3648, (N.D. Cal. Mar. 13, 1992) .............. 12

14
*City of Philadelphia v. Fleming Cos.,*
    264 F.3d 1245 (10th Cir. 2001) ........................................................................... 19

15

16
*In re CornerStone Propane Partners, L.P. Sec. Litig.,*
    355 F. Supp. 2d 1069 (N.D. Cal. 2005) .............................................................. 10

17
*In re Cylink Sec. Litigation,*
    178 F. Supp. 2d 1077 (N.D.Cal. 2001) ............................................................... 13

18

19
*Ditech Networks, Inc. Derivative Litigation, ,*
    No. C 06-5157JF, 2007 WL. 2070300 (N.D. Cal. July 16, 2007) ....................... 9

20
*Dreiling v. American Exp. Co.,*
    458 F.3d 942 (9th Cir. 2006) ............................................................................... 12

21

22
*Edward J. Mawod & Co. v. SEC,*
    591 F.2d 588 (10th Cir. 1979) ............................................................................. 8

23
*Fecht v. Price Co.,*
    70 F.3d 1078 (9th Cir. 1995) ............................................................................... 7

24

25
*In re GlenFed, Inc. Sec. Litigation,*
    42 F.3d 1541, 1994 (9th Cir. 1994) ..................................................................... 7, 9

26
*In re Gupta Corp. Sec. Litigation,*
    900 F. Supp. 1217 (N.D. Cal. 1994) ................................................................... 7

27

28
*Hollinger v. Titan Capital Corp.,*
    914 F.2d 1564 (9th Cir. 1990) ............................................................................. 8

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEF. ABRAMS' MOT.TO DISMISS & MOT. FOR
MORE DEFINITE STATEMEN                    - iii -
Case No. 5:07-cv-02822-JF

19994\1334257.3

*Howard v. SEC,*
    376 F.3d 1136 (D.C. Cir. 2004) .................................................................................. 8

*K & S Partnership v. Continental Bank,*
    952 F.2d 971  (8th Cir. 1991) .................................................................................. 8

*Lyons Partnership, L.P. v. Morris Costumes, Inc.,*
    243 F.3d 789 (4th Cir.2001) .................................................................................. 23

*McConville v. SEC,*
    465 F.3d 780 (7th Cir. 2006) .................................................................................. 20

*In re McKesson HBOC Securities Litigation,*
    126 F. Supp. 2d 1248 (N.D.Cal. 2000) .................................................................................. 13

*Morgan v. Prudential Group, Inc.,*
    81 F.R.D. 418 (S.D.N.Y. 1978) .................................................................................. 11, 17

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West Holding Co.,*
    320 F.3d 920, 931 (9th Cir. 2003) .................................................................................. 11

*Orloff v. Allman,*
    819 F.2d 904 (9th Cir. 1987), .................................................................................. 8

*Pelletier v. Zweifel,*
    921 F.2d 1465 (11th Cir. 1991) .................................................................................. 4

*Pinter v. Dahl,* 486
    486 U.S. 622 (1988) .................................................................................. 9

*Ponce v. SEC,*
    345 F.3d 722 (9th Cir. 2003) .................................................................................. 8, 21

*Rich v. Touche Ross & Co.,*
    68 F.R.D. 243 (S.D.N.Y. 1975) .................................................................................. 19

*SEC v. Autocorp Equities, Inc.,*
    292 F. Supp. 2d 1310 (D. Utah 2003) .................................................................................. 18

*SEC v. Baxter,*
    No. C-05-03843 RMW, 2007 WL 2013958,  (N.D.Cal. July 11, 2007), .................................................................................. 21

*SEC v. Commonwealth Chemical Securities,*
    574 F.2d 90 (2d Cir. 1978) .................................................................................. 23

*SEC v. Digital Lightwave, Inc.,*
    196 F.R.D. 698 (M.D. Fla. 2000) .................................................................................. 7

*SEC v. Druffner,*
    353 F. Supp. 2d 141 (D. Mass. 2005) .................................................................................. 9

*SEC v. Fehn,*
    97 F.3d at 1283 (9th Cir. 1996) .................................................................................. 8

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEF. ABRAMS' MOT.TO DISMISS & MOT. FOR
MORE DEFINITE STATEMEN
Case No. 5:07-cv-02822-JF

- iv -

19994\1334257.3

*SEC v. First City Financial Corp.*,
890 F.2d 1215 (D.D.C. 1989) ...................................................................................... 13

*SEC v. Kornman*,
391 F. Supp. 2d 477 (N.D. Tex. 2005)........................................................................... 9

*SEC v. Lucent Techs. Inc.*,
363 F. Supp. 2d 708 (D.N.J. 2005) ................................................................................ 7

*SEC v. Morris*,
No. Civ. A. H-04-3096, 2005 WL. 2000665 (S.D. Tex. Aug. 18, 2005) ......................... 9

*SEC v. Monarch Fund*,
608 F.2d 938 (2d Cir. 1979)........................................................................................ 23

*SEC v. Parnes*,
No. 01 CIV 0763 LLS THK, 2001 WL. 1658275 (S.D.N.Y. Dec. 26, 2001) ................. 9

*SEC v. Price Waterhouse*,
797 F. Supp. 1217 (S.D.N.Y. 1992)......................................................................... 6, 10

*SEC v. Rana Research, Inc.*,
8 F.3d 1358 (9th Cir. 1993).......................................................................................... 6

*SEC v. Rogers*,
790 F.2d 1450, (9th Cir. 1986)..................................................................................... 8

*SEC v. Saltzman*,
127 F. Supp. 2d 660 (E.D. Pa. 2000) ............................................................................ 9

*SEC v. Steadman*,
967 F.2d 636 (D.C. Cir. 1992) .................................................................................... 10

*SEC v. World-Wide Coin Investments, Ltd.*,
567 F. Supp. 724 (N.D. Ga. 1983) .............................................................................. 20

*SEC v. Yuen*,
221 F.R.D. 631 (C.D. Cal. 2004) ....................................................................... 9, 11, 17

*SEC v. Yuen*,
No. CV 03-4376MRP, 2006 WL. 1390828 (C.D.Cal. 2006)........................................ 14

*Santa Fe Industries, Inc. v. Green*,
430 U.S. 462 (1977)................................................................................................... 12

*In re Silicon Graphics, Inc. Sec. Litigation*,
183 F.3d 970 (9th Cir. 1999) ...................................................................................... 15

*In re Stac Electrics Sec. Litigation*,
89 F.3d 1399 (9th Cir. 1996)........................................................................................ 7

*Sunstrand Corp. v. Sun Chemical Corp.*,
553 F.2d 1033 (7th Cir. 1977)..................................................................................... 10

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEF. ABRAMS' MOT.TO DISMISS & MOT. FOR
MORE DEFINITE STATEMEN                   - v -
Case No. 5:07-cv-02822-JF

19994\1334257.3

1

2

*TSC Industrial, Inc. v. Northway, Inc.*,
    426 U.S. 438 (1976) ........................................................................................................ 12

3

4

*United States v. Oregon State Medical Society*,
    72 S. Ct. 690 (1952) ........................................................................................................ 23

*Woodward v. Metropolitan Bank of Dallas*,
    522 F.2d 84 (5th Cir. 1975) ............................................................................................ 9

5

6

*In re Worlds of Wonder SEC Litigation*,
    35 F.3d 1407  (9th Cir. 1994) ........................................................................................ 10

7

8

**FEDERAL STATUTES**

9

15 U.S.C. § 78(m)(b)(12)(B) ............................................................................................ 20

10

Fed. R. Civ. P.  12(e) ............................................................................................... 1, 4
            12(b) ............................................................................................. passim
            9(b) ............................................................................................... passim
            10(b) .............................................................................................. 4

11

12

13

14

**MISCELLANEOUS**

3D Harold S. Bloomenthal & Samuel Wolff, Securities and Federal Corporate Law
    § 21.66.55 (Westlaw 2004) ............................................................................................ 12

15

16

Schwarzer, Tashima & Wagstaffe, <u>Federal Civil Procedure Before Trial</u>, ¶ 9:351 ....................... 4

17

18

19

20

21

22

23

24

25

26

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEF. ABRAMS' MOT.TO DISMISS & MOT. FOR
MORE DEFINITE STATEMEN
Case No. 5:07-cv-02822-JF

- vi -

19994\1334257.3

1

### NOTICE OF MOTION AND MOTION

2     TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3          PLEASE TAKE NOTICE that on March 14, 2008 at 9:00 a.m., or as soon thereafter as the

4     matter may be heard in the above captioned court, located at 280 South 1st Street, San Jose,

5     California, 95113, Defendant Sharlene Abrams will move, and hereby does move, for an order

6     pursuant to Rules 12(b)(6), 9(b), and 12(e) of the Federal Rules of Civil Procedure dismissing the

7     First, Second, Third, Fourth, Fifth, Seventh, and Eighth claims alleged against her by Plaintiff

8     Securities & Exchange Commission ("SEC"), and the dismissing or striking the claim for

9     injunctive relief.

10          This Motion is based on this Notice of Motion; the following Memorandum of Points and

11     Authorities in Support of the Motion, the other defendants' motions to dismiss and related filings;

12     and such other matters and arguments as may come before the Court, including the reply briefing

13     and oral argument on the Defendants' Motions.

14

### STATEMENT OF ISSUES

15

### (CIVIL LOCAL RULE 7-4(A)(3))

16          1.          Whether the SEC should be ordered to provide a more definite statement,

17     repleading its complaint in compliance with Fed. R. Civ. Proc. 10(b).

18          2.          Whether the SEC's "Backdating of Stock Option Exercises" claims (Complaint ¶¶

19     82-97) are pleaded with the required level of particularity under Fed. R. Civ. Proc. 9(b) to state a

20     claim under Section 17(a), Section 10(b) and Rule 10b-5, or Section 13 and related rules [15

21     U.S.C. §§ 77q(a), 78j(b), 78m et seq.].

22          3.          Whether the SEC's "Earnings Management" claims (Complaint ¶¶ 117-130) are

23     pleaded with the required level of particularity under Fed. R. Civ. Proc. 9(b) to state a claim under

24     Section 17(a), Section 10(b) and Rule 10b-5, or Section 13 and related rules.

25          4.          Whether the SEC's "European Exercises" claims (Complaint ¶¶ 131-144) are

26     pleaded with the required level of particularity under Fed. R. Civ. Proc. 9(b) to state a claim under

27     Section 17(a), Section 10(b) and Rule 10b-5, or Section 13 and related rules.

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEFENDANT SHARLENE ABRAMS' MOTION
TO DISMISS AND MOTION TO STRIKE          -1-
Case No. 5:07-cv-02822-JF

19994\1334257.3

1    5.    Whether the SEC's Rule 13b2-2 (lying to auditors) claim ("Fourth Claim for

2 Relief") is pleaded with the required level of particularity under Fed. R. Civ. Proc. 9(b).

3    6.    Whether the SEC's Section 13(b)(2)(B) ("Eighth Claim for Relief") pleads facts

4 sufficient to state a claim that Abrams knowingly provided substantial assistance to a failure to

5 devise and maintain a system of internal accounting controls, as opposed to only misreporting

6 particular transactions within the system.

7    7.    Whether the SEC's claim for injunctive relief should be dismissed in light of the

8 failure to allege any facts showing that injunctive relief is necessary to prevent future violations.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEF. ABRAMS' MOT.TO DISMISS & MOT. FOR
MORE DEFINITE STATEMEN                          - 2 -
Case No. 5:07-cv-02822-JF

19994\1334257.3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

This is an equitable relief action by the SEC, seeking injunctive relief and disgorgement in connection with alleged options "backdating" and other assorted wrongs.  Sharlene Abrams was the chief financial officer of Mercury Interactive from November 1993 to November 2001, and has not worked there since.  Complaint ¶ 12.  Although though her work there ended six years ago, the SEC alleges that she will, unless an injunction issues, "continue to violate" various securities laws by providing substantial assistance to Mercury Interactive – which itself no longer files anything with the SEC – in false filings with the Commission.  Complaint ¶ 147, 150, 156, 160, 165, 173, 178, 184, 189, 187.

Where, as here, the facts alleged do not support the claim, conclusory language will not save it.  An injunctive relief action brought six years after any alleged violation does not state a claim for relief, because a federal court's equity powers should not be exercised to prevent something that does not appear likely to recur.

Despite an extensive pre-filing investigation that lasted over two years,[1] the SEC relies largely on conclusions rather than factual allegations throughout its complaint, and improperly groups all the various defendants and claims together.  It alleges incorrect accounting in four categories:  stock option grant compensation expenses, stock option exercise dates, accounting for revenue for inventory not yet shipped, and accounting for loans to European employees for stock option exercises.  Because the complaint bunches all the facts into "incorporated by reference" paragraphs and never explains which facts support which claims; a more definite statement should be ordered.

Meanwhile, as to at least three of these factual claims for relief, the complaint fails to plead wrongful conduct by Abrams with the required particularity.  The case should be cut down to its proper size before discovery begins in earnest.

---

[1]    *See* http://edgar.sec.gov/Archives/edgar/data/867058/000119312505139558/d8k.htm, an 8-K filing by Mercury Interactive confirming that the SEC initiated an investigation in November 2004, and a special committee of the board of directors was formed as announced publicly in July 2005.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEF. ABRAMS' MOT.TO DISMISS & MOT. FOR
MORE DEFINITE STATEMEN            - 3 -
Case No. 5:07-cv-02822-JF

19994\1334257.3

1

**ARGUMENT**

2

**I.    THE COURT SHOULD ORDER A MORE DEFINITE STATEMENT**

3

**REQUIRING THE SEC TO SPECIFY WHAT FACTS APPLY TO WHICH CLAIM.**

4

A motion under Federal Rule of Civil Procedure 12(e) for more definite statement is, as

5

conventional wisdom has it, "viewed with disfavor, and . . . rarely granted." Schwarzer, Tashima

6

& Wagstaffe, Federal Civil Procedure Before Trial, ¶ 9:351. But the rule exists because

7

occasionally the remedy is needed. This is such a case.

8

Over 144 paragraphs, the SEC alleges a period of conduct at least eight years between

9

1997 and 2005, involving multiple defendants who had different job responsibilities and

10

employment dates, at least four major categories of accounting errors, and a variety of internal

11

discussions and external public filings. *See* Complaint ¶¶ 1-144. Then it says that the conduct

12

alleged in paragraphs 1 through 144 is "realleg[ed] and incorporate[d] by reference" in each of

13

ten claims for relief, none of which have any factual content, and all of which merely invoke in

14

paraphrased form the legal standards applicable to such claims. *See* Complaint ¶¶ 145, 148, 153,

15

157, 161, 166, 169, 174, 179, 185.

16

Even in the typical case, this kind of pleading is problematic:

17

[Plaintiff's] complaint is a perfect example of "shotgun" pleading, *see Pelletier v.*

18

*Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991), **in that it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.** Under the Federal Rules of Civil Procedure, a defendant faced with a

19

complaint such as [plaintiff's] is not expected to frame a responsive pleading. Rather, the defendant is expected to move the court, pursuant to Rule 12(e), to

20

require the plaintiff to file a more definite statement. Where, as here, the plaintiff asserts multiple claims for relief, a more definite statement, if properly drawn, will

21

present each claim for relief in a separate count, as required by Rule 10(b) . . . .

22

*Anderson v. District Board of Trustees of Central Florida Community College*, 77 F.3d 364, 366

23

(11th Cir. 1996) (emphasis added). Rule 10(b) requires that the contents of each claim "Each

24

claim founded upon a separate transaction or occurrence . . . shall be stated in a separate count . . .

25

wherever a separation facilitates the clear presentation of the matters set forth." Fed. R. Civ. P.

26

10(b); *see Anderson*, 77 F.3d at 366 n.4 (citing this standard as the appropriate guide to remedy

27

failure to link facts with legal claims).

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEF. ABRAMS' MOT.TO DISMISS & MOT. FOR
MORE DEFINITE STATEMEN
Case No. 5:07-cv-02822-JF

- 4 -

19994\1334257.3

1    Even more should be required of the SEC.  This is not the typical case where a private

2    plaintiff needs discovery from the defendants to develop the necessary facts to plead a proper

3    claim.  The SEC, through its pre-filing governmental investigatory and enforcement powers, has

4    compelled voluminous testimony and subpoenaed massive amounts of documentation and

5    information from the company and third parties. Thus, contrary to the typical case, it is the

6    plaintiff here who holds the defendants at a substantial informational disadvantage.

7    Nevertheless, only some of the claims give any hint of which conduct is the basis for the

8    claim.  For example, the Ninth Claim says that "Forms 3 and 4 were filed with the Commission

9    that contained false or misleading statements with regard to the options' grant dates, expiration

10   dates, and exercise prices."  Complaint ¶ 181.  Presumably, this means that the European loan

11   theory – paragraphs 131-144 – is not really part of the Ninth Claim for Relief, even though those

12   paragraphs were incorporated by reference.  But can the same inference be made for the Fourth

13   Claim?  (No.)  Which accounting errors or other alleged conduct are the subject of that claim?

14   (The complaint never says.)

15   Instead of incorporating all 144 paragraphs into every claim, the Court should required the

16   SEC to incorporate only those allegations that actually relate to the particular claim being

17   asserted.  And if the SEC claims that two transactions or occurrences (e.g., stock option grant date

18   accounting, and European exercise loan accounting) each violate a single statutory provision

19   (e.g., 13(b)(5)), then it should plead the separate transactions in separate counts, even though they

20   are based on the same statutory basis for relief.  This will relieve the parties and Court alike of

21   "the cumbersome task of sifting through myriad claims, many of which may be foreclosed by

22   various defenses."  *Anderson*, 77 F.3d at 367.  The Court should order a more definite statement.

23   **II.    THE FIRST THROUGH FIFTH, SEVENTH AND EIGHTH CLAIMS FOR
         RELIEF REQUIRE PLEADING WITH PARTICULARITY BECAUSE THEY
24       SOUND IN FRAUD.**

25   As stated previously, the SEC alleges wrongdoing with respect to four categories of

26   accounting error:

27   (1)    accounting for stock option grant dates and pricing (Complaint ¶¶ 16-81, ¶¶ 98-
                116),

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEF. ABRAMS' MOT.TO DISMISS & MOT. FOR
MORE DEFINITE STATEMEN
Case No. 5:07-cv-02822-JF

- 5 -

19994\1334257.3

(2)      accounting for exercise of stock options (Complaint ¶¶ 82-97),

(3)      accounting for revenue in the form of inventory not yet shipped (Complaint ¶¶ 117-130), and

(4)      accounting for purchases of stock options by European employees who received loans from the company (Complaint ¶¶ 131-144).

Because the complaint incorporates by reference paragraphs 1-144 into each of the "claims for relief," s*ee* Complaint ¶¶ 145, 148, 153, 157, 161, 166, 169, 174, 179, 185, it appears that each of the four categories of alleged accounting errors are being pleaded as independent violations of each of the ten statutory and regulatory prohibitions.[2]

The first through fifth, seventh, and eighth "claims" in the complaint all require particularity in pleading.  (section II.A below).  The SEC fails to plead a case of fraud as to three of the four alleged accounting errors, as those facts are incorporated into each of the legal theories for relief.  *See* section II.B below.  The Court should therefore dismiss the fraud-based claims based on three of the four accounting errors, as to defendant Abrams, under Rule 9(b).

### A.    The 17(a) and 10(b) Claims (First and Second Claims for Relief) Must Be Pleaded With Particularity.

Particularity is required for each of the first eight claims for relief.

#### 1.    Rule 9(b) Applies To The Section 17(a) Claims (First Claim For Relief) And The 10(b) Claims (Second Claim For Relief).

Under Section 17(a) and 10(b), the SEC must plead that Ms. Abrams made (1) a material misrepresentation, (2) in connection with a purchase or sale of a security, and (3) with scienter. *See SEC v. Rana Research, Inc.*, 8 F.3d 1358, 1364 (9th Cir. 1993); *SEC v. Price Waterhouse*, 797 F. Supp. 1217, 1240 (S.D.N.Y. 1992) ("The elements of liability for violations of Section 17(a)(1) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 . . . are the following: (1) a misrepresentation or omission (where a duty to speak exists); (2) of a material fact; (3) made with scienter; and (4) made in connection with the purchase or sale of securities.").

---

[2]    Obviously, analyzing the complaint as forty claims renders discussion near impossible – the headings would take up most of the page limit of the brief.  Since a motion to dismiss requires review of the factual allegations of the complaint, this motion will analyze the complaint in terms of its factual allegations by examining the factual claims for relief grouped together.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEF. ABRAMS' MOT.TO DISMISS & MOT. FOR
MORE DEFINITE STATEMEN                   - 6 -
Case No. 5:07-cv-02822-JF

19994\1334257.3

1    With the exclusion of the scienter requirement, the same elements are required to prove violations

2    of Sections 17(a)(2) and 17(a)(3) of the Securities Act. *Aaron v. SEC*, 446 U.S. 680, 701-02

3    (1980) (holding that scienter is not an element of Sections 17(a)(2) and 17(a)(3)).

4         Rule 9(b) applies to claims under Section 17(a), Section 10(b) and Rule 10b-5. *See In re*

5    *GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (*en banc*) (citations omitted). Rule

6    9(b) will be satisfied only if the complaint "state[s] precisely the time, place, and nature of the

7    misleading statements, misrepresentations, and specific acts of fraud." *In re Gupta Corp. Sec.*

8    *Litig.*, 900 F. Supp. 1217, 1228 (N.D. Cal. 1994) (citation omitted); *see also Fecht v. Price Co.*,

9    70 F.3d 1078, 1082 (9th Cir. 1995). Additionally, when a fraudulent statement is alleged, a

10   plaintiff must set forth *what* is false or misleading about the statement and *why* it was false when

11   made. *Gupta*, 900 F. Supp. at 1228. Thus, the SEC must plead the who, what, when, where, why

12   and how of the alleged fraudulent conduct. *See SEC v. Lucent Techs. Inc.*, 363 F. Supp. 2d 708,

13   715 (D.N.J. 2005); *see also SEC v. Digital Lightwave, Inc.*, 196 F.R.D. 698, 700 (M.D. Fla.

14   2000).

15
16            **2.    The Third Through Eighth Claims For Relief, Under Section 13, Must
                     Be Pleaded With Particularity Under Rule 9(b).**

17       The SEC's Section 13 related claims also must meet the pleading requirements of Rule

18   9(b) for two independent reasons: (i) these claims require the SEC prove fraud as an element of

19   each claim; and (ii) the allegations supporting the SEC's Section 13 claims all "sound" in fraud.

20   *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403-05 (9th Cir. 1996).

21       First, each Section 13 claim at issue here requires the SEC to prove elements constituting

22   fraud. Section 13(b)(5) and Rule 13b2-1 ("Third Claim") require allegations regarding the

23   falsification of books and records. Rule 13b2-2 ("Fourth Claim") requires allegations of false and

24   misleading statements or omissions to an outside auditor. Section 13(a), 13(b)(2)(A) and

25   13(b)(2)(B) ("Fifth, Seventh, and Eighth Claims") require allegations that Ms. Abrams knowingly

26   aided and abetted a primary violation of the securities laws. (Ms. Abrams is not charged in the

27   Sixth Claim – violation of Rule 13a-14).).

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEF. ABRAMS' MOT.TO DISMISS & MOT. FOR
MORE DEFINITE STATEMEN                    - 7 -
Case No. 5:07-cv-02822-JF                                      19994\1334257.3

As to the Fifth, Seventh, and Eighth claims for relief, the SEC's theory against Abrams (and others) is that they "knowingly provided substantial assistance" – i.e., an aiding and abetting theory. (These claims each plead violations of a standard that only applies to the company/issuer (Mercury)). To plead and prove this theory of liability, the SEC must show (1) the existence of a primary violation by Mercury; (2) that Ms. Abrams had knowledge of the primary violation and her own role in furthering it; and (3) that Ms. Abrams provided substantial assistance in the primary violation. *See Ponce*, 345 F.3d at 737 (citing *SEC* v. *Fehn*, 97 F.3d at 1288); 15 U.S.C. § 78t(e) ("any person that knowingly provides substantial assistance to another person in violation of a provision of this chapter"). Constructive knowledge is insufficient; the SEC must prove actual knowledge of the primary wrong. *Orloff v. Allman*, 819 F.2d 904, 907-08 (9th Cir. 1987), *overruled on other grounds by Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1575 (9th Cir. 1990).

To survive a motion to dismiss, the SEC must plead facts sufficient to demonstrate that Ms. Abrams actually knew "of the illegality" of the conduct. *SEC v. Fehn*, 97 F.3d at 1283-84; *SEC v. Ponce*, 345 F.3d at 737 (requiring an aider and abettor's "knowledge" for Section 13 violations); *Edward J. Mawod & Co. v. SEC*, 591 F.2d 588, 595-96 (10th Cir. 1979) ("Knowledge of the illegality of the scheme is, of course, essential to aiding and abetting."). However, facts, not conclusions, must be pled. *K & S P'ship v. Continental Bank*, 952 F.2d 971, 977 (8th Cir. 1991) ("the proof must demonstrate actual awareness . . . [and] may not rest on a bare inference that the defendant must have had knowledge of the facts.") (internal quotation omitted); *Howard v. SEC*, 376 F.3d 1136, 1142-43 (D.C. Cir. 2004) ("aiding and abetting liability cannot rest on the proposition that the person 'should have known' he was assisting violations of the securities laws").

The SEC must also allege facts that Ms. Abrams knowingly rendered substantial assistance in furthering a primary violation. *See Abbott v. Equity Group, Inc.*, 2 F.3d 613, 621 (5th Cir. 1993) (requiring "conscious intent" of assistance); *SEC v. Rogers*, 790 F.2d 1450, 1460 (9th Cir. 1986) ("To establish an aiding and abetting violation of the securities laws, the [government] must show that [the defendant] *knowingly* provided substantial assistance to another

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEF. ABRAMS' MOT.TO DISMISS & MOT. FOR
MORE DEFINITE STATEMEN                    - 8 -
Case No. 5:07-cv-02822-JF                                          19994\1334257.3

1    person's violation . . .") (emphasis added), *overruled on other grounds by Pinter v. Dahl*, 486

2    U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988); *Woodward v. Metro Bank of Dallas*, 522 F.2d

3    84, 94 (5th Cir. 1975) (finding liability "only if . . . the accused aider-abettor knowingly and

4    substantially assisted the violation"). Allegations of review and approval of the financial

5    statements by Ms. Abrams are not sufficient. *See SEC v. Morris*, No. Cvi. A. H-04-3096, 2005

6    WL 2000665 at *9.

7              **3.      The SEC Must Plead Scienter With Particularity As To Each Of The**

8              **Claims.**

9              When the SEC has performed an extensive pre-filing investigation as it has here, it should

10   be required to plead scienter with particularity. *SEC v. Parnes*, No. 01 CIV 0763 LLS THK,

11   2001 WL 1658275, at *5 (S.D.N.Y. Dec. 26, 2001) (court required allegations with strong

12   inference of scienter for each defendant where "SEC has had three years' discovery and access to

13   records and documents"). In short, the SEC "must plead specific facts giving rise to a 'strong

14   inference' of fraudulent intent." *SEC v. Druffner*, 353 F. Supp. 2d 141, 150 (D. Mass. 2005)

15   (citation omitted); *SEC v. Kornman*, 391 F. Supp. 2d 477, 493 (N.D. Tex. 2005) (requiring SEC

16   to plead "specific facts that support an inference of fraud" on scienter issue); *SEC v. Saltzman*,

17   127 F. Supp. 2d 660, 666 (E.D. Pa. 2000). Unlike a private plaintiff, the SEC has broad pre-filing

18   investigatory powers that permits it to conduct extensive pre-filing discovery. *SEC v. Yuen,* 221

19   F.R.D. 631, 637 (C.D. Cal. 2004). Therefore, relaxed pleading standards (e.g., invoking the

20   "group published information presumption") for securities fraud are "inappropriate" where the

21   SEC exercises such powers. *Id.* While earlier cases state that scienter can be pleaded generally

22   (contrary to the rule in other circuits), *see In re GlenFed Sec. Litig.*, 42 F.3d 1541, 1545-1547 (9th

23   Cir. 1994), the more recent trend based on Congressional direction under the PSLRA (for private

24   cases) and in light of the SEC's investigatory powers (as in *SEC v. Yuen*), is to require a more

25   thorough pleading of facts showing scienter before the case goes forward. *See Bell Atlantic Corp.*

26   *v. Twombly*, 127 S. Ct. 1955 (2007); *see also Ditech Networks, Inc. Derivative Litig*, No. C 06-

27   5157JF, 2007 WL 2070300 (N.D. Cal. July 16, 2007) ("[t]he conclusory allegation that each

28   individual defendant had knowledge or acted with reckless disregard of the truth is insufficient to

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEF. ABRAMS' MOT.TO DISMISS & MOT. FOR
MORE DEFINITE STATEMEN                  - 9 -
Case No. 5:07-cv-02822-JF                                         19994\1334257.3

1    state a claim even under the more liberal Rule 12(b)(6) standard").

2         Scienter is defined as "[a] mental state embracing intent to deceive, manipulate or

3    defraud." *Aaron*, 446 U.S. at 686 n.5. "[E]xtreme recklessness may also satisfy this intent

4    requirement." *SEC v. Steadman*, 967 F.2d 636, 641 (D.C. Cir. 1992). "The kind of recklessness

5    required, however, is not merely a heightened form of ordinary negligence; it is an 'extreme

6    departure from the standards of ordinary care, . . . which presents a danger of misleading buyers

7    or sellers that is either known to the defendant or is so obvious that the actor must have been

8    aware of it.'" *Id.* at 641-42 (quoting *Sunstrand Corp. v. Sun Chem. Corp.*, 553 F.2d 1033, 1045

9    (7th Cir. 1977)).

10         Moreover, courts have consistently held that allegations of departures from established

11    accounting rules like GAAP are insufficient to establish scienter *even under* a deliberate

12    recklessness standard. *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1426 (9th Cir. 1994)

13    ("Scienter requires more than a misapplication of accounting principles") (internal quotations

14    omitted);" *In re CornerStone Propane Partners, L.P. Sec. Litig.*, 355 F. Supp. 2d 1069, 1091

15    (N.D. Cal. 2005) ("The majority of circuits have clearly held that standing alone, allegations of

16    violations of GAAP or SEC regulations do not establish scienter."); *SEC v. Price Waterhouse*,

17    797 F. Supp. at 1240 ("That [scienter] standard requires more than a misapplication of accounting

18    principles. The SEC must prove that . . . the accounting judgments which were made were such

19    that no reasonable accountant would have made the same decisions if confronted with the same

20    facts.").

21    **B.**    **THE SEC FAILS TO PLEAD PARTICULARITY FOR THREE OF THE**

22    **FOUR DIFFERENT ACCOUNTING ERRORS ALLEGED IN THE COMPLAINT.**

23         The complaint fails to plead with the required particularity with respect to three of the four

24    factual claims for relief under the First through Fifth, and Seventh and Eighth "Claims" in the

25    complaint.

26    **1.**    **The SEC's Allegations Regarding Allegedly Backdated Option Exercises (¶¶ 82 – 97) Do Not Satisfy Rule 9(b) And Do Not Amount**

27    **To A Violation Of The Securities Fraud Statutes.**

28         The SEC alleges that Ms. Abrams and Mr. Landan backdated certain option exercises to

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEF. ABRAMS' MOT.TO DISMISS & MOT. FOR
MORE DEFINITE STATEMEN       - 10 -
Case No. 5:07-cv-02822-JF

19994\1334257.3

1   achieve certain tax benefits.  *See* Complaint ¶¶ 82-97.  But even accepting the allegations as true

2   (as must be done on motion to dismiss), the SEC has not alleged any violation of the securities

3   laws it seeks to enforce.  The SEC has not alleged any misrepresentations by Ms. Abrams – never

4   mind a material misrepresentation.  Nor has the SEC alleged any facts demonstrating that Ms.

5   Abrams had the requisite scienter.  Indeed, the SEC has failed to plead any of the elements

6   necessary to sustain a cause of action for securities fraud.  Even if the SEC were able to plead a

7   cause of action, however, the SEC has no authority to recover unpaid taxes from Ms. Abrams;

8   that responsibility is left to the Internal Revenue Service.

9           a.       With Respect To Its Allegations Regarding Backdated Option
        Exercises, The SEC Fails To Plead Any Of The Elements Of A
10      Securities Violation With The Required Specificity.

11      At the outset, although the SEC alleges that Ms. Abrams and Mr. Landan "backdated their

12  exercises of stock options" (¶ 82) or "manipulated the date of their stock option exercises" (¶ 85),

13  the SEC does not allege any specific misrepresentations by Ms. Abrams.  At most, the SEC

14  alleges that Ms. Abrams, "caused to be filed Forms 4 which falsely reported the 'transaction date'

15  of option exercises."  (¶ 90)  To the extent the SEC believes this qualifies as an actionable

16  misstatement, this vague allegation is wholly insufficient to meet the requirements of Rule 9(b).

17      At the very least, the SEC must plead facts detailing Ms. Abrams' alleged role in the

18  creation or filing of the Forms 4.  *See Morgan v. Prudential Group, Inc.*, 81 F.R.D. 418, 425

19  (S.D.N.Y. 1978) (allegations that defendant "participated in the drafting, preparation and, in

20  particular, provided accounting and technical advice in connection with their preparation" failed

21  to satisfy Rule 9(b)); *SEC v. Yuen*, 221 F.R.D. 631, 637 (C.D. Cal. 2004) (requiring SEC to plead

22  each defendants' role and scienter; rejecting application of group pleading in light of SEC's

23  investigative powers).  As to the only Form 4 identified, s*ee* Complaint ¶ 92, the SEC nowhere

24  alleges that Abrams had a role in drafting or filing it.

25      Moreover, the SEC must identify each Form 4 alleged to contain a misstatement for which

26  Ms. Abrams may be held responsible.  S*ee No. 84 Employer-Teamster Joint Council Pension

27  Trust Fund v. America West Holding Co.*, 320 F.3d 920, 931 (9th Cir. 2003).  The SEC alleges

28  there are six exercises that were backdated, but identifies no Form 4 filings in which Abrams had

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEF. ABRAMS' MOT.TO DISMISS & MOT. FOR
MORE DEFINITE STATEMEN          - 11 -
Case No. 5:07-cv-02822-JF

19994\1334257.3

1   a role. To the extent that the SEC attempts to plead Ms. Abrams made omissions rather than

2   affirmative misstatements, the analysis is the same; omissions are not properly pleaded merely by

3   "emphasizing facts that misrepresentations did not state." *Badger v. Grubb & Ellis Co.*, No. 0-

4   90-1550 MHP, 1992 U.S. Dist. LEXIS 3648, at *5 (N.D. Cal. Mar. 13, 1992).

5        Finally, the SEC does not allege that incorrect Forms 4 were in any way material. To

6   establish a violation of the securities laws, the SEC must demonstrate "a substantial likelihood

7   that the disclosure of the omitted fact would have been viewed by the reasonable investor as

8   having significantly altered the 'total mix' of information made available." *Basic Inc. v.*

9   *Levinson*, 485 U.S. 224, 231-32 (1988); *see also TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438,

10  449 (1976) (holding that materiality requires showing of a substantial likelihood that the omitted

11  fact would have assumed actual significance in the deliberations of a reasonable shareholder).

12              b.    Breach Of Fiduciary Duty Is Not A Violation Of The Securities
13                    Laws.

14       At most, the SEC alleges that Ms. Abrams breached her fiduciary duty by allegedly

15  backdating the exercise dates of various stock options – that she and others appropriated to

16  themselves a tax benefit that should have been the corporation's to enjoy. Although Ms. Abrams

17  obviously disputes this allegation, the mere breach of fiduciary duty, without more, does not

18  constitute a violation of the antifraud provisions of the securities laws. *Santa Fe Industries, Inc.*

19  *v. Green*, 430 U.S. 462, 475, 479-80 (1977) (holding that breach of fiduciary duty, without

20  deception or misrepresentation, does not violate Section 10(b) or Rule 10b-5). Indeed, the SEC

21  admitted in its *Amicus Curiae* brief in *Dreiling v. American Exp. Co.*, 458 F.3d 942 (9th Cir.

22  2006) that "[s]tate corporate law is sufficient to regulate self-dealing or breaches of fiduciary duty

23  where directors improperly award securities to themselves (or improperly approve awards to

24  other directors or officers)." *Amicus Curiae* Brief of SEC, at 15-16, quoting 3D Harold S.

25  Bloomenthal & Samuel Wolff, Securities and Federal Corporate Law § 21.66.55 (Westlaw 2004);

26  *see also* SEC Adopting Release, Rel. No. 37260 n. 17 ("[A]n insider's breach of fiduciary duty to

27  profit from self-dealing transactions with the company is a concern of state corporate law").

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEF. ABRAMS' MOT.TO DISMISS & MOT. FOR
MORE DEFINITE STATEMEN                - 12 -
Case No. 5:07-cv-02822-JF                                           19994\1334257.3

1
2

      c.      The SEC Cannot Recover Ms. Abrams' Alleged Ill-Gotten Tax Benefits.

3

    To the extent that the stock option exercise dates were in fact backdated, potentially

4 resulting in incorrect tax returns by Ms. Abrams, the remedy lies with the tax authorities, not with

5 the SEC.  According to the SEC's mission statement:  "The mission of the U.S. Securities and

6 Exchange Commission is to protect investors, maintain fair, orderly, and efficient markets, and

7 facilitate capital formation."  The enforcement of the nation's tax laws is left to the Internal

8 Revenue Service, not to the SEC.

9     Moreover, the SEC may only seek disgorgement of profits causally connected to an

10 alleged securities violation; disgorgement may not be used punitively.  *SEC v. First City*

11 *Financial Corp.*, 890 F.2d 1215, 1231 (D.D.C. 1989).  Here, the underpayment of taxes (for

12 which the SEC seeks to recover) is caused by an alleged violation of the tax laws; it is not

13 proximately caused by the alleged securities violation.  Therefore, the SEC is not entitled to

14 recover unpaid taxes as "disgorgement."

15
16

    **2.**      **The SEC's Allegations Regarding Inventory And Shipping "Backlog" (¶¶ 117 - 130) Do Not Satisfy Rule 9(b) And Do Not Amount To A Violation Of The Securities Fraud Statutes.**

17     The SEC's third accounting "error" – which it floridly calls "earnings management" – is

18 no error at all.  Unlike many software companies in the late 1990s, who were later accused of

19 premature revenue recognition, *see, e.g., In re McKesson HBOC Securities Litig.*, 126 F.Supp.2d

20 1248, 1257 (N.D.Cal. 2000); *In re Cylink Sec. Litig.*, 178 F.Supp.2d 1077, 1081 (N.D.Cal. 2001),

21 Mercury correctly accounted for revenue by not recognizing revenue unless all elements required

22 for revenue recognition had occurred, including shipment.  Instead, the SEC apparently faults

23 Mercury for not shipping, and then recognizing revenue, faster.  This does not state a valid fraud

24 claim.

25     The practice of deciding when to ship products to customers is not a valid concern for the

26 SEC or the securities laws.  Absent fraudulent statements to the market (the allegations of which

27 are discussed below), companies can and should decide for themselves how to conduct their

28 business.  If companies decide that they want to manage their affairs so that earnings are

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEF. ABRAMS' MOT.TO DISMISS & MOT. FOR
MORE DEFINITE STATEMEN
Case No. 5:07-cv-02822-JF

- 13 -

19994\1334257.3

1    relatively stable from quarter-to-quarter, instead of experiencing volatility that could affect stock

2    prices and access to the credit markets, they can do so.  <u>Cf.</u> Complaint ¶ 118 (alleging CEO and

3    CFO were interested in the company's reported earnings per share).  Allowing the SEC and a

4    court to second-guess the decision on whether to deliver a product to a customer, and whether it

5    should have been delivered earlier, is unsupported by any law and is bad policy.

6        The SEC's position is shakiest at paragraph 130, where it states that the company's

7    "actual quarterly earnings" would have fallen short of projections.  This allegation is not

8    supported, and is instead contradicted, by the allegations that precede it.  Mercury was required

9    by SEC rules to correctly recognize revenue – and that meant that revenue could not be

10    recognized until a product had shipped.  *See* Complaint ¶ 122 ("stopping shipments to manage the

11    recognition of revenue is not necessarily a violation of GAAP");  *see also SEC v. Yuen*, 2006 WL

12    1390828, *8 (C.D.Cal. 2006) (under the American Institute of Certified Public Accountants'

13    Statement of Position 97-2, revenue recognition for software sales requires that the product have

14    been delivered).  The source of Mercury's revenue was not "concealed" as the SEC alleges at

15    paragraph 120, because the source of Mercury's revenue was sales of software, properly

16    recognized in the time periods in which it was reported; the Court should disregard conclusory

17    statements that are contrary to the factual allegations that put them in context.  "Actual quarterly

18    earnings," since they could only be based on properly recognized revenue (which of necessity

19    included shipping the product), were indeed as publicly disclosed – and the SEC does not allege

20    any facts to the contrary.

21        The only fair dispute here is thus not about "earnings management" but about whether

22    misleading or fraudulent public statements were made about shipment of inventory.  Here, the

23    SEC alleges three.  First, the SEC claims that in annual 10K reports in March 1998 and 1999,

24    Mercury made a statement about the short period between order receipt and shipment of products,

25    and that it "believes that backlog is not significant to an understanding of its business nor

26    representative of potential revenue for any future period."  Complaint ¶ 123.  Second, the SEC

27    claims that in 2000 that statement was not included, but that the company said that "[Quarterly

28    revenue and operating result] fluctuations are due to a number of factors, many of which are

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEF. ABRAMS' MOT.TO DISMISS & MOT. FOR
MORE DEFINITE STATEMEN                    - 14 -
Case No. 5:07-cv-02822-JF

19994\1334257.3

1  outside our control, including . . . deferrals by our customers of orders in anticipation of new

2  products or product enhancements." Complaint ¶ 125. Third, the SEC states that companies are

3  "required to disclose" backlog order under Reg. S-K, Item 101(c)(1)(viii). Complaint ¶ 122.

4      As to the first of these, the claim fails against Sharlene Abrams for several reasons. First,

5  the SEC never alleges that the actual statement made – "backlog is not significant to an

6  understanding of [Mercury's] business nor representative of potential revenue for any future

7  period" was false at the time it was made. Since allegations showing the falsity of any alleged

8  false statement is a key element of fraud required to be pleaded with particularity, the fraud-based

9  claims for this statement fail. Second, the SEC never alleges facts showing that the statement

10 would be material to investors. Investors knew that they did not have backlog information but

11 there's no reason to think that they would care: they knew that the company had properly

12 recognized revenues and costs at a certain level. The SEC does not allege that investors bought

13 the stock in whole or in part because of the statement that "backlog is not significant to an

14 understanding . . . ." And finally, the SEC does not allege "facts that constitute . . . deliberately

15 reckless or conscious misconduct," *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir.

16 1999) – it asserts that the accuracy of the statement was "questioned" by the auditors, but given

17 that the auditors then went on to issue an unqualified audit opinion stating that the 10-K fairly

18 represented the finances of the company "in all material respects," *see* 1999 10-K at p. 29,

19 "Report of Independent Accountants" by PricewaterhouseCoopers LLP,[3] there are insufficient

20 facts showing scienter. Given the extensive investigation that the SEC did before filing this suit,

21 the lack of factual pleading here evidences the lack of merit of the claim.

22      Second, the SEC complains of a "risk factor" disclosure in the 2000 10-K that said that

23 quarterly revenue fluctuations are "due to a number of factors, many of which are outside our

24 control . . ." Complaint ¶ 125. This statement was true. Many of the factors governing revenue

25 fluctuations were outside Mercury's control. Some were not. An investor would understand that

26 "many" does not mean "all," and that Mercury was accurately disclosing that it had some control

---

[3]      The court has the long-recognized power to look at the actual documents alleged to have been fraudulent, as if they were incorporated into the complaint. The 1999 10-K is such a document. A copy is available on-line at the SEC's website: http://www.sec.gov/Archives/edgar/data/867058/0001012870-99-000972.txt.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEF. ABRAMS' MOT.TO DISMISS & MOT. FOR
MORE DEFINITE STATEMEN                                    - 15 -
Case No. 5:07-cv-02822-JF

19994\1334257.3

1    over revenue fluctuations.  Equally significant, the SEC does not allege that Abrams had any role

2    in making this statement.  *See* Complaint ¶ 125 ("*The company* additionally added the misleading

3    disclosure . . . .") (emphasis added).  Finally, the SEC does not plead scienter for Ms. Abrams

4    here:  the accuracy of the statement in the 1999 10-K was "questioned" by the company's

5    auditors (Complaint ¶ 124), but there is no similar allegation that anyone thought anything was

6    inaccurate about the 2000 10-K disclosure – and once again the auditors signed an unqualified

7    audit opinion.[4]

8         Third, the SEC asserts that "companies are required to disclose" the dollar amount of

9    backlog orders and other backlog information, and quotes Reg. S-K, Item 101(c)(1)(viii).  But the

10   quote is selective.  The first portion of Reg. S-K, Item 101(c)(1) states:

11        Describe the business done and intended to be done by the registrant and its
         subsidiaries, focusing upon the registrant's dominant industry segment or each
12        reportable industry segment about which financial information is presented in the
         financial statements. **To the extent material to an understanding of the**
13        **registrant's business taken as a whole, the description of each such segment**
         **shall include the information specified in paragraphs (c)(1) (i) through (x) of**
14        **this section.** The matters specified in paragraphs (c)(1) (xi) through (xiii) of this
         section shall be discussed with respect to the registrant's business in general;
15        where material, the industry segments to which these matters are significant shall
         be identified.

16

17   Reg. S-K, Item 101(c)(1) (emphasis added).  Thus, backlog information only need be provided if

18   it is "material to an understanding of the registrant's business taken as a whole."  The SEC never

19   alleges facts showing that the backlog information here would be material, despite an unqualified

20   audit opinion from PricewaterhouseCoopers that said that the financial statements did fairly

21   present "in all material respects" the financial condition of the company.  (*See* footnotes 2 and 3

22   above for the 1999 and 2000 10-K audit opinions).

23        The "Earnings Management" claim (*see* Complaint at p. 31 line 11) should therefore be

24   dismissed.

25

26

27

28   [4]    *See* 2000 10-K at p. 30.  http://www.sec.gov/Archives/edgar/data/867058/0001012870-00-001508.txt

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEF. ABRAMS' MOT.TO DISMISS & MOT. FOR
MORE DEFINITE STATEMEN                    - 16 -
Case No. 5:07-cv-02822-JF                                              19994\1334257.3

1

**3.    The SEC's Allegations Regarding European Exercises (¶¶ 131-144) Do Not Satisfy Rule 9(b).**

2

3    The next accounting error alleged in the complaint concerns accounting for stock option

4    exercises by European employees, using loans from the company.  *See* Complaint ¶¶ 131-144.

5    The complaint alleges that European employees were provided options and then required to

6    immediately exercise them, in order to minimize taxes.  Complaint ¶ 132.  The company loaned

7    money to the European employees so that they could pay the exercise price.  Complaint ¶ 133-

8    134.  In 2000, Financial Accounting Standards Board Interpretation Number 44 ("FIN 44") came

9    into effect, requiring compensation expenses to be calculated in a particular way if the loans were

10    non-recourse loans.  Complaint ¶ 135.  Against this context, the complaint alleges fraud:  "In

11    order to avoid the potential accounting expense that variable accounting would have created, in

12    the latter part of 2001 Skaer and others fraudulently structured the loan documentation provided

13    for exercises so that the loans appeared to be full recourse obligations, when in fact they knew

14    that the loans were truly non-recourse to the employees."  Complaint ¶ 136.  The loans after April

15    2001, allegedly created by "Skaer and others," stated that they bore a market rate of interest.

16    Complaint ¶ 138.  But "In practice, during 2003 and 2004 when the terms of many of the loans

17    required repayment . . . the company issued a 'bonus' to the employee . . . [or in other cases] the

18    shares that had been exercised were simply recaptured by the company and outstanding principal

19    and interest amounts due were written off.  The company, as a matter of practice, never had any

20    intention of collecting the full value of the loan."  Complaint ¶ 142.

21    The SEC never identifies any false statement by Abrams, public or internal – unless the

22    allegations of actions by "Skaer and others" in paragraphs 136 and 138 are somehow intended to

23    encompass Abrams, in which case it still fails to reach the required level of particularity.  *See*

24    *Morgan v. Prudential Group, Inc.*, 81 F.R.D. 418, 425 (S.D.N.Y. 1978) (allegations that

25    defendant "participated in the drafting, preparation and, in particular, provided accounting and

26    technical advice in connection with their preparation" failed to satisfy Rule 9(b)); *SEC v. Yuen*,

27    221 F.R.D. 631, 637 (C.D. Cal. 2004) (dismissing claims against most defendants where they

28    were referred to as a group; group pleading doctrine should not be permitted by the SEC in light

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEF. ABRAMS' MOT.TO DISMISS & MOT. FOR
MORE DEFINITE STATEMEN                                         - 17 -
Case No. 5:07-cv-02822-JF

19994\1334257.3

1    of its broad pre-filing investigative powers).  The SEC never says what the accounting expense

2    associated with the European stock option exercises should have been, whether the publicly filed

3    financial statements were wrong, (and which ones, and on which dates) and if so, whether the

4    amount of the error was material.

5          Moreover, no facts are pled to suggest scienter as to Abrams for this claim.  The SEC's

6    claim that the loans were actually non-recourse is based on the assertion that "in practice" the

7    company issued bonuses to the affected employees in 2003 and 2004 when their loans came due.

8    Complaint ¶ 142.  The SEC admits, however, that Abrams left the company years earlier in 2001.

9    Complaint ¶ 12.  Abrams obviously had no role in determining what if any bonuses would be

10   granted in 2003 or 2004 and whether any loans would be forgiven in those years.

11         Indeed, the SEC fails to allege any wrongful conduct by Abrams during the period of time

12   that she was at the company.  As the SEC concedes, the current accounting principles (on which it

13   bases this claim), namely FIN 44, were enacted in 2000.  But the SEC fails to plead any acts

14   between 2000 and late 2001, the time when Ms. Abrams left Mercury, that give rise to the alleged

15   omission on the financial statements (if that is indeed the SEC's theory).  The only allegations in

16   this section that refer to Abrams by name relate to events predating FIN 44.  Abrams should not

17   be faulted – much less accused of fraud – for not following an accounting rule that had not yet

18   been implemented.

## III.   THE FOURTH CLAIM FOR RELIEF – FOR MISLEADING MERCURY'S ACCOUNTANTS –IS NOT PLEADED WITH ADEQUATE PARTICULARITY.

21         In the Fourth Claim for Relief, the SEC asserts that Abrams violated Exchange Act Rule

22   13b2-2.  As to this claim, the complaint does not state a claim upon which relief can be granted.

23         A viable cause of action for violation of Rule 13b2-2 must do more than present "bare

24   allegation[s]" that Ms. Abrams "did not disclose all material information to the auditor." *See SEC*

25   *v. Autocorp Equities, Inc.*, 292 F. Supp. 2d 1310, 1332 (D. Utah 2003).  Instead, in order to state a

26   claim under Section 13b2-2, the SEC must plead facts showing that Ms. Abrams intentionally or

27   with deliberate recklessness misled Mercury's auditors.  *See Autocorp Equities*, 292 F. Supp. 2d

28   at 1332 ("the anti-fraud policies behind federal securities law suggest that this enforcement of

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEF. ABRAMS' MOT.TO DISMISS & MOT. FOR
MORE DEFINITE STATEMEN                    - 18 -
Case No. 5:07-cv-02822-JF

19994\1334257.3

1    [13b2-2] requires intent to mislead or recklessness").  The SEC has to plead what specific

2    information was disclosed, who disclosed it, when it was disclosed, and how Ms. Abrams knew

3    that any such disclosure rendered Mercury's financial statements fraudulent.  In *City of*

4    *Philadelphia v. Fleming Cos.*, 264 F.3d 1245 (10th Cir. 2001), the Tenth Circuit held that "the

5    important issue in this case is *not* whether Defendants knew the underlying facts, but whether

6    Defendants knew that not disclosing the [litigation] posed substantial likelihood of misleading a

7    reasonable investor. 'It is the danger of misleading buyers that must be actually known or so

8    obvious that any reasonable man would be legally bound as knowing.'" *Id.* at 1264 (emphasis in

9    original) (citations omitted).

10    The SEC's allegations about misleading auditors are sparse.  At paragraph 79, the SEC

11    alleges that the defendants "made false statements and representations to Mercury's auditors," but

12    provide no further detail about who, what, when, where, or why it was false.  At paragraph 108,

13    the SEC alleges that "Mercury, as directed by Abrams and Skaer, . . . provided the same

14    documentation about stock option grant dates to the Company's external auditors in connection

15    with their annual audits of Mercury's financial statements," but it never specifies what

16    documentation was provided, which auditor or auditors it was provided to, when it was provided,

17    or other particulars.  There is no detail about which documentation was provided by Abrams as

18    opposed to Skaer, or indeed whether either of them provided any as opposed to asking someone

19    else to provide it.  This is not adequate fraud pleading.

20    Paragraph 109 and 110 allege three letters signed by Abrams, with dates, sent to

21    unidentified auditors.  Most significantly, the SEC never alleges facts sufficient to show that

22    Abrams believed, or was reckless with respect to, whether there were "fraudulent practices" or

23    "irregularities" (a technical accounting term requiring that the accountant believe that there was a

24    form of scienter associated with an accounting error) at the company, even if she believed that the

25    actual accounting for specific options grants was incorrect (which is also not alleged).

26    The SEC thus does not explain *how* or *why* any of these alleged statements are false, but

27    simply implies that they must be.  *See* Complaint ¶¶ 109, 110.  *See Rich v. Touche Ross & Co.*, 68

28    F.R.D 243, 246 (S.D.N.Y. 1975) ("[s]imply denominating unspecified financial statements

DEF. ABRAMS' MOT.TO DISMISS & MOT. FOR
MORE DEFINITE STATEMEN                    - 19 -
Case No. 5:07-cv-02822-JF

1   'false,' 'misleading', or 'inaccurate' is not sufficient").  The Fourth Claim for Relief should be

2   dismissed.

3   **IV.    THE EIGHTH CLAIM FOR RELIEF – "FAILURE TO DEVISE AND MAINTAIN
        A SUFFICIENT SYSTEM OF INTERNAL ACCOUNTING CONTROLS" –IS NOT**

4   **PLEADED WITH ADEQUATE PARTICULARITY.**

5       The SEC also claims that Abrams and the other defendants aided and abetted Mercury in

6   violating Section 13(b)(2)(B) the Exchange Act, which obligates issuers to

7       devise and maintain a system of internal accounting controls sufficient to provide
        reasonable assurances that –

8
        (i) transactions are executed in accordance with management's general or specific
9       authorization;

10      (ii) transactions are recorded as necessary (I) to permit the preparation of financial
        statements in conformity with generally accepted accounting principles or any

11      other criteria applicable to such statements, and (II)

12  15 U.S.C. § 78(m)(b)(2)(B) (Exchange Act § 13(b)(2)(B)).  The SEC claims that Abrams and

13  others "knowingly provided substantial assistance to Mercury's failure to devise and maintain a

14  sufficient system of internal accounting controls."  Complaint ¶ 175.

15      But the factual allegations in the complaint do not support the conclusory statement.  The

16  only allegation bearing on the maintenance of a system of internal accounting controls appears at

17  paragraph 116, which states "Additionally, Landan, Abrams, Smith and Skaer circumvented

18  internal accounting controls and, by virtue of their misconduct, failed to maintain a system of

19  internal accounting controls sufficient to provide assurances that stock option grants were records

20  [sic – recorded?] as necessary to permit the proper preparation of financial statements in

21  conformity with GAAP."  Complaint ¶ 116.

22      The reported cases upholding such a claim have involved situations where "financial

23  records were in an ongoing state of disarray," a "labyrinth" and a "maze of transactions,"

24  *McConville v. SEC*, 465 F.3d 780, 790 (7th Cir. 2006) (accounts showing most of the sales of the

25  company had never been reconciled, and there was an accumulation of problems over a three or

26  four year period), or where records were "sheer chaos."  *SEC v. World-Wide Coin Investments,*

27  *Ltd.*, 567 F. Supp. 724 (N.D. Ga. 1983)  ("For example, there has been no procedure implemented

28  with respect to writing checks: employees have had access to presigned checks; source documents

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEF. ABRAMS' MOT.TO DISMISS & MOT. FOR
MORE DEFINITE STATEMEN
Case No. 5:07-cv-02822-JF

- 20 -

19994\1334257.3

1  were not required to be prepared when a check was drawn; employees have not been required to

2  obtain approval before writing a check; and, even when a check was drawn to 'cash,' supporting

3  documentation was usually not prepared to explain the purpose for which the check was drawn."),

4  or where "years of poor record-keeping and lack of internal controls in all areas of [the] business"

5  resulted in a "gross unsubstantiated balance in [a] holding account [of] more than $320 million."

6  *See SEC v. Baxter*, C-05-03843 RMW, 2007 WL 2013958, *2 (N.D.Cal. July 11, 2007).

7       By contrast, the cases do not support the notion that mis-accounting for certain

8  transactions involving employee compensation equates to an absence of adequate internal

9  accounting controls. The SEC nowhere alleges that Mercury lacked an overall system for

10 recording transactions, ensuring control over assets (for example, check-signing procedures),

11 checking the accuracy of accounting entries, and so on – there is no allegation at all about

12 Mercury's systems as opposed to individual accounting treatment of specific items of expense.

13 Indeed, the SEC's entire complaint is based on the theory that certain transactions should have an

14 accounting treatment, *determinable by looking at the books and records of the company*, that is

15 different than the accounting conclusion ultimately made by the company. Under these

16 circumstances, the SEC has not pleaded a violation by Mercury of Section 13(b)(2)(B), and in the

17 absence of a primary violation by Mercury, has not pleaded substantial, knowing assistance in a

18 13(b)(2)(B) violation by Abrams.

19       Stretching 13(b)(2)(B) to cover any erroneous accounting treatment of otherwise

20 documented transactions is inconsistent with the statutory scheme. As to the company's primary

21 liability, Section 13(b)(2)(B) does not appear to require scienter.[5] Thus, a company would

22 arguably be in violation of Section 13(b)(2)(B) on the SEC's theory if it had a single erroneous

23 accounting entry, even an unintentional one. Meanwhile, other subsections appear to better

24 describe the SEC's theory. Section 13(b)(5) covers the conduct of those who "knowingly

25 circumvent or knowingly fail to implement a system of internal accounting controls or knowingly

26

---

[5]     Because Abrams is sued for "knowingly" provided "substantial assistance" to the failure to devise/maintain
27 an effective internal accounting system, there is a scienter requirement for her participation. *Cf. Ponce v. SEC*, 345
F.3d 722, 736, 737 (9th Cir. 2003) (stating a "scienter" requirement for violation of Section 13(b)(2), though plaintiff
28 had conceded that a violation of 10(b) and 10b-5 would also violate Section 13).

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEF. ABRAMS' MOT.TO DISMISS & MOT. FOR
MORE DEFINITE STATEMEN                    - 21 -
Case No. 5:07-cv-02822-JF                                    19994\1334257.3

1  falsify any book, record, or account described in paragraph (2)." If "circumventing" were the

2  same as "failing to implement" internal accounting controls, there would be no need for two

3  subsections. If the SEC contends that there was falsification, or that individuals disregarded an

4  established system of accounting controls, then the correct statute to invoke is Section 13(b)(5).[6]

5  Section 13(b)(2)(B) has a different purpose: it is intended to cover those who fail to put into or

6  keep in place any system for recording and measuring the financial status and performance of the

7  business. It should be applied only to those companies and individuals who genuinely lose

8  control over the tracking of financial transactions. The SEC never alleges that here.

9  ## V.  THE CLAIM FOR INJUNCTIVE RELIEF SHOULD BE DISMISSED.

10  Sharlene Abrams has not worked at Mercury Interactive (which has itself been acquired

11  by Hewlett-Packard, and has no separate ongoing existence or public securities filing

12  requirements) since October 2001. *See* Complaint ¶ 12. There is no allegation that at any point

13  in the last six years that she has violated any securities law. While the SEC alleges that in the

14  absence of an injunction defendants will "continue to violate" each of the many statutes and rules

15  on which it sues, none of the factual allegations support that assertion.

16  "Factual allegations must be enough to raise a right to relief above the speculative level on

17  the assumption that all the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*,

18  127 S.Ct. 1955, 1964-65 (2007). While the Court must accept all well-pleaded factual allegations

19  as true, it should not consider unsupported, conclusory allegations. *See Blake v. Dierdorff*, 856

20  F.2d 1365, 1368 (9th Cir. 1988).

21  The injunctive relief claim should be dismissed because it is based only on an

22  unsupported, conclusory allegation. When defendant's conduct has stopped years ago, and not

23  recurred since, an injunction will not be granted in the absence of a showing of likelihood of

24  future violation:

25

26  ---

[6]  The SEC also alleges that the same conduct – failure to properly record compensation expense for stock

27  option transactions – violates Section 13(b)(2)(A) (requiring issuers to "make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions . . . of the issuer"). The SEC's reading of

28  13(b)(2)(B) as meaning the same thing – failure to properly record compensation expense for stock option transactions – would render Section 13(b)(2)(B) redundant.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEF. ABRAMS' MOT.TO DISMISS & MOT. FOR
MORE DEFINITE STATEMEN          - 22 -
Case No. 5:07-cv-02822-JF                                    19994\1334257.3

The sole function of an action for an injunction is to forestall future violations.  It is so unrelated to punishment or reparations for those past that its pendency or decision does not prevent concurrent or later remedy for past violations by indictment or action for damages by those injured.  All it takes to make the cause of action for relief by injunction is a real threat of future violation or a contemporary violation of a nature likely to continue or recur.  This established, it adds nothing that the calendar of years gone by might have been filled with transgressions.  Even where relief is mandatory in form, it is to undo existing conditions, because otherwise they are likely to continue. . . .

We agree with the trial court that conduct discontinued in 1941 does not warrant the issuance of an injunction in 1949.

*United States v. Oregon State Medical Society*, 72 S.Ct. 690, 695-696 (1952); *cf. Lyons Partnership, L.P. v. Morris Costumes, Inc.,* 243 F.3d 789, 799 (4th Cir.2001) ("A prospective injunction is entered only on the basis of current, ongoing conduct that threatens future harm.  Inherently, such conduct cannot be so remote in time as to justify the application of the doctrine of laches.").  This rule applies to SEC injunctive relief actions as well:

Where, as here, the SEC is not attempting to stop an ongoing violation of the securities laws, the test for injunctive relief is "whether the defendant's past conduct indicates . . . that there is a reasonable likelihood of further violation in the future."  *See SEC v. Commonwealth Chemical Securities*, 574 F.2d 90, 99 (2d Cir. 1978), quoting 3 L. Loss, Securities Regulation 1976 (1961).  As we further stated in *Commonwealth Chemical*, "(o)ur recent decisions have emphasized, perhaps more than the older ones, the need for the SEC to go beyond the mere facts of past violations and demonstrate a realistic likelihood of recurrence."  574 F.2d at 100.

Here, even if a violation of Section 10(b) and Rule 10b-5 had been shown and it was not we do not believe that an injunction was appropriate.  The judgment below was not entered until more than seven years after the alleged violations.  At oral argument, the SEC conceded that at no time during those seven years did it attempt to expedite the requested injunctive relief.  Nor was there any evidence that the defendants committed any prior or subsequent violations of the securities laws.  Indeed, Paul testified that since the action was commenced, he had exercised greater care with respect to information he received.  For substantially the same reasons, we do not believe that disgorgement was properly authorized.

*SEC v. Monarch Fund*, 608 F.2d 938, 943 (2d Cir. 1979).

Moreover, the judicially noticeable fact that Mercury Interactive has been acquired and is no longer a public company required to file reports with the SEC renders any claim for injunctive relief all the more untenable.  The allegation that Abrams or anyone else will "continue to aid and abet" violations by Mercury, *see, e.g.*, Complaint ¶ 173, is without basis in these circumstances.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEF. ABRAMS' MOT.TO DISMISS & MOT. FOR
MORE DEFINITE STATEMEN
Case No. 5:07-cv-02822-JF

- 23 -

19994\1334257.3

1    The complaint thus does not state a claim for injunctive relief (or in the alternative, the

2    request for injunctive relief should be stricken as against Abrams).

3                                    **<u>CONCLUSION</u>**

4    For the reasons set forth in detail above, Sharlene Abrams respectfully requests that the

5    aforementioned claims of the SEC's complaint be dismissed as to her.  Additionally, or

6    alternatively, Ms. Abrams requests that Plaintiff's prayer for injunctive relief be stricken.

7    Dated: October 1, 2007                    FARELLA BRAUN + MARTEL LLP

8

9                                              By: /s/_____

10                                                 Thomas B. Mayhew

11                                              Attorneys for Defendant
                                                SHARLENE ABRAMS

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEF. ABRAMS' MOT.TO DISMISS & MOT. FOR
MORE DEFINITE STATEMEN
Case No. 5:07-cv-02822-JF                    - 24 -

19994\1334257.3