*SEC. v. Mercury Interactive, LLC, et al..*
United States District Court, Northern District, Case Number 07-cv-02822 JF

# TAB A

LEXSEE 1992 U.S. DIST. LEXIS 3648



Cited
As of: Oct 01, 2007

**FREDRICK H. BADGER, RICHARD R. BRUCE, JEAN-LOUISE GASSEE,
DAVID W. PIDWELL, DONALD SCHAFFER, MICHAEL SPINDLER, and DON-
ALD C. ANDERSON, individually and on behalf of all others similarly situated,
Plaintiffs, -vs.- GRUBB & ELLIS COMPANY, et al., Defendants.**

**NO. C-90-1550 MHP**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
CALIFORNIA**

*1992 U.S. Dist. LEXIS 3648*

**March 13, 1992, Decided
March 13, 1992, Filed; March 16, 1992, Entered**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendants, partner-
ships and law firm, filed a motion for dismissal or, in the alter-
native, for summary adjudication of the issues raised by
plaintiff investors' second amended complaint alleging
violations of § 10(b) of the Securities Exchange Act of
1934 (Act), *15 U.S.C.S. § 78j(b)*, violations of *§ 1962* of
the Racketeering Influenced Corrupt Organizations Act
(RICO), *18 U.S.C.S. § 1962*, and a variety of state law
causes of action.

**OVERVIEW:** The investors alleged that the partner-
ships engaged in deceptive and illegal acts under both the
Act and RICO related to the sale of limited partnership
interests. The investors also alleged state law claims for
breach of contract, breach of fiduciary duties, and mal-
practice as to the partnerships and its law firm. The court
first considered the claims based on RICO and concluded
that the "enterprises" and "defendants" in the RICO
causes of action were indistinguishable. The court noted
that, within the Ninth Circuit, an alleged RICO enterprise
could not simultaneously be the alleged RICO defendant,
and the RICO causes of action had to be dismissed. The
court then considered the claims under the Act and con-
cluded that reliance was an essential element of these
claims. The court found that the investors failed to plead
any specific reliance. Although the court observed that
reliance could be presumed in some circumstances, the

court found that the investors failed to plead the neces-
sary facts to allow the presumption of reliance under any
of the alternative approaches. As a result, the court found
that the investors' claims under the Act had to be dis-
missed.

**OUTCOME:** The motion filed by the partnerships and
law firm to dismiss for failure to state a cause of action
was granted as to the federal claims in the investors'
complaint, and the court dismissed the investors' remain-
ing state claims under its discretionary authority.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses,
Demurrers, & Objections > Failures to State Claims*
*Civil Procedure > Dismissals > Involuntary Dismissals
> Failures to State Claims*
*Evidence > Inferences & Presumptions > General
Overview*
[HN1] A motion to dismiss for failure to state a claim
under *Fed. R. Civ. P. 12(b)(6)* will be denied unless it
appears that the plaintiff can prove no set of facts which
would entitle him or her to relief. All material allegations
in the complaint will be taken as true and construed in the
light most favorable to the plaintiff. Although the
court is generally confined to consideration of the allega-
tions in the pleadings, when the complaint is accompa-

1992 U.S. Dist. LEXIS 3648, *

nied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a *rule 12(b)(6)* motion.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
*Securities Law > Liability > RICO Actions > General Overview*
[HN2] *18 U.S.C.S. § 1962(c)* provides that it shall be unlawful for any person employed by or associated with any enterprise engaged in interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. *18 U.S.C.S. § 1962(d)* provides that it shall be unlawful for any person to conspire to violate any of the provisions of *18 U.S.C.S. § 1962(a)*, *18 U.S.C.S. § 1962(b)*, or *18 U.S.C.S. § 1962(c)*.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > Elements*
*Securities Law > Liability > RICO Actions > General Overview*
[HN3] Within the Ninth Circuit and under *18 U.S.C.S. § 1962(c)*, an enterprise cannot also be the Racketeering Influenced and Corrupt Organizations Act defendant.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
*Torts > Procedure > Multiple Defendants > Concerted Action > Civil Conspiracy > General Overview*
[HN4] In order to state a claim of conspiracy to violate the Racketeering Influenced and Corrupt Organizations Act under *18 U.S.C.S. § 1962(d)*, a plaintiff must allege an agreement to commit a pattern of racketeering activity in violation of one of the substantive provisions of *18 U.S.C.S. § 1962(a)*, *18 U.S.C.S. § 1962(b)*, or *18 U.S.C.S. § 1962(c)*.

*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Deceptive & Manipulative Devices*
*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Elements of Proof > Reliance > General Overview*
*Torts > Business Torts > Fraud & Misrepresentation > General Overview*
[HN5] Reliance is an essential element of a claim under § 10(b) of the Securities Exchange Act of 1934, *15 U.S.C.S. § 78j(b)*. *15 U.S.C. § 78r(a)*. Reliance is specifically required for a claim under S.E.C. Rule 10b-5 and, in light of the *15 U.S.C.S. § 78r(a)* requirement of reliance for *15 U.S.C.S. § 78j(b)* actions in general, reliance is an essential element of a S.E.C. Rule 10(b)-9 action.

*Criminal Law & Procedure > Criminal Offenses > Fraud > Securities Fraud > Elements*
*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Deceptive & Manipulative Devices*
*Torts > Business Torts > Fraud & Misrepresentation > General Overview*
[HN6] Reliance may be presumed in a fraud-on-the-market situation. This theory assumes that in an open and developed securities market, the material information available on a security is sifted and digested by the market to determine an accurate value for the security. Thus misleading statements will defraud purchasers of stock even if they have not directly relied on the misstatements, since the purchasers are presumed to rely on the integrity of the market's "invisible hand" to set a fair price for the security. However, this theory applies only in an open and developed market.

*Energy & Utilities Law > Federal Oil & Gas Leases > Assignments & Transfers*
*Energy & Utilities Law > Oil Industry > General Overview*
*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Deceptive & Manipulative Devices*
[HN7] The fraud-created-the-market theory may be viewed as substituting reliance on governmental regulatory process for reliance on open market process. Just as the open market purchaser relies on the integrity of the market to reflect the true value of securities, so the purchaser of an original issue security relies, at least indirectly, on the integrity of the regulatory process and the truth of any representations made to the appropriate agencies.

1992 U.S. Dist. LEXIS 3648, *

*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Deceptive & Manipulative Devices*

*Torts > Business Torts > Fraud & Misrepresentation > General Overview*

[HN8] Reliance in securities cases under § 19(b) of the Securities Exchange Act of 1934, *15 U.S.C.S. § 78j(b)*, may be presumed in cases involving material omissions.

**JUDGES:** [*1] PATEL

**OPINION BY:** MARILYN HALL PATEL

**OPINION**

*MEMORANDUM AND ORDER*

Plaintiffs, Frederick H. Badger, Richard R. Bruce, Jean-Louise Gassee, David W. Pidwell, Donald Schaffer, Michael Spindler and Donald Schaffer, bring this action against defendants, Grubb & Ellis Co., 222 Sutter Street Partners, Ltd., Grubb & Ellis Securities Co., G & E Investors Associates IV, Ltd., G & E Investor Properties I, Inc., Grubb & Ellis Real Estate Investment Banking Group, Grubb & Ellis Realty Advisors (collectively "Grubb & Ellis"), and defendant Morrison & Foerster. [1] In their second amended complaint, plaintiffs allege 1) violations of section 10(b) of the Securities Exchange Act of 1934, *15 U.S.C. § 78j(b)* and the rules promulgated thereunder; 2) Racketeering Influenced Corrupt Organizations Act ("RICO") *section 1962(c),(d), 18 U.S.C. § 1962 (c),(d)*, violations; 3) breach of contract; 4) breach of fiduciary duty; 5) violation of *California Corporations Code § 25401*; and, 6) legal malpractice.

---

1  Plaintiffs allege that defendants' relationships are as follows: G&E Investor Associates IV, Ltd. is a limited partnership that acts as the general partner of 222 Sutter Street Partners, Ltd.; G&E Investor Properties I, Inc. is the general partner of G&E Investor Associates IV, and a subsidiary of Grubb & Ellis Company; Grubb & Ellis Securities Company is the registered broker/dealer through which the limited partnership units were sold; Grubb & Ellis Real Estate Investment Banking Group and Grubb & Ellis Realty Associates controlled the other Grubb & Ellis defendants in some manner. Plaintiffs allege that Morrison & Foerster is a law firm which performed legal work for the Grubb & Ellis defendants regarding the limited partnership offering. See Second Amended Complaint, attached as Ex. A to McCormick Decl., PP9-17.

[*2]  Defendants bring the instant motion for dismissal of plaintiffs' second amended complaint, or, in the alternative, for summary adjudication of issues. For the reasons discussed below, the court GRANTS defendants' motion to dismiss plaintiffs' second amended complaint.

**BACKGROUND**

This lawsuit arises from the offering of 157 limited partnership interests in defendant 222 Sutter Street Partners, Ltd., a California limited partnership (the "partnership"). The significant facts are as follows.

1. The partnership was formed in September 1985 for the purpose of acquiring, owning, and managing a commercial office and retail building in San Francisco. See Confidential Private Offering Memorandum ("POM"), attached as Ex. 1 to McCormick Decl. in Support of Opposition to Motion to Dismiss or for Summary Adjudication of Issues, at A-7.

2. Limited partnership units were sold through a private offering memorandum, the POM, dated November 1, 1985. Id. at i.

3. The POM provided that all 157 units were to be sold by May 31, 1986, the "termination date"; if all 157 units had not been sold by the termination date, the limited partners' investments would be returned. Id. at C-6.

4. If [*3] all the units had not been sold by May 31, 1986, but a "closing date" had occurred, then the general partner, G & E Investor Associates IV, Ltd., would be required to purchase the remaining units. Id. at 8. A "closing date" was generally defined as the purchase of eighty units. Id. at 110.

5. All of the named plaintiffs had signed their respective subscription agreements and tendered their settlement checks by February 22, 1986. See Bruno Decl., P4, Ex. B.

6. All 157 units were not sold by May 31, 1986; only 129 units had been sold as of May 30, 1986. See June 3, 1986, Letters from Grubb & Ellis, attached as Ex. A to Bruno Decl.

7. Instead of purchasing the remaining unsold units on May 31, 1986, the Grubb & Ellis defendants extended the termination date until September 30, 1986. Id.; Grubb & Ellis Defendants' Statement of Undisputed Material Facts at No. 2; Plaintiffs' Response to Defendants' Statement of Undisputed Material Facts at No. 2.

8. Plaintiffs filed this action on May 29, 1990.

**LEGAL STANDARD**

[HN1] A motion to dismiss for failure to state a claim under *Federal Rule of Civil Procedure 12(b)(6)*

will be denied unless it appears that the plaintiff can prove [*4] no set of facts which would entitle him or her to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Fidelity Financial Corp. v. Federal Home Loan Bank of San Francisco,* 792 F.2d 1432, 1435 (9th Cir. 1986), cert. denied, 479 U.S. 1064 (1987). All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *NL Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir. 1986). Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a *Rule* 12(b)(6) motion. *Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir.), cert. denied sub nom., *Wyoming Community Dev. Auth. v. Durning,* 484 U.S. 944 (1987).

DISCUSSION

1. RICO

Plaintiffs' third, fourth and fifth causes of action allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), *18 U.S.C. § 1962(c)* and *(d),* against the Grubb & Ellis [*5] defendants. Morrison & Foerster is not alleged to be a defendant in these three causes of action. [HN2] RICO *section 1962(c)* provides that "it shall be unlawful for any person employed by or associated with any enterprise engaged in . . . interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . ." RICO *section 1962(d)* provides that "it shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section." These causes of action must be dismissed.

Though artfully pleaded, these three causes of action cannot escape the fatal flaw that the alleged RICO enterprise is simultaneously the [HN3] defendant. The Ninth Circuit has held that under *section 1962(c)* an "enterprise . . . cannot also be the RICO defendant." *Rae v. Union Bank,* 725 F.2d 478, 481 (9th Cir. 1984); see also *Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.,* 806 F.2d 1393, 1396 n.2 (9th Cir. 1986) (courts have "consistently held") to the distinction between enterprise and defendant); *Bishop v. Corbitt Marine Ways, Inc.,* 802 F.2d 122, 123 (5th Cir. 1986) [*6] (noting that all circuits but the Eleventh Circuit require distinction between "enterprise" and "defendant" and enumerating cases so holding); *Buran Equipment Co. v Hydro Elec. Constructors,* 656 F. Supp. 864, 865 (N.D. Cal. 1987) (alleged *section 1962(c)* action against a closely related group of entities involved in construction of a dam failed to state a claim against the related entities, since it alleged they were both defendants and the RICO enterprise).

In their third cause of action, plaintiffs allege that all Grubb & Ellis defendants except G&E Co. have participated in an unlawful pattern of racketeering activity. In this cause of action, G&E Co. is alleged to be the enterprise, but there is no indication of how it differs from the other Grubb & Ellis defendants and becomes the enterprise. The complaint merely states "as an enterprise, G&E Co. is not a Defendant in this Count Three." Second Amended Complaint for Damages, P71.

Similarly, in the fourth cause of action, the Grubb & Ellis defendants, including G&E Co. but now excluding 222 Sutter Street, are the alleged racketeers. 222 Sutter Street is alleged to be the enterprise, again without any allegations [*7] as to how it is distinguishable from the remaining Grubb & Ellis defendants. The complaint simply asserts that "as an enterprise, 222 Sutter Street is not a Defendant in this Fourth Count." *Id. P80.* Based on the lack of allegations or supporting evidence which would tend to show that either G&E Co. or 222 Sutter Street differ from the other Grubb & Ellis defendants in any relevant respect, it appears that plaintiffs have arbitrarily picked one defendant out of the Grubb & Ellis group and labeled that defendant the "enterprise" for these two causes of action.

Closer scrutiny of the second amended complaint further illustrates that the alleged "enterprises" and "defendants" in these causes of action are not distinguishable. In their complaint, plaintiffs expend considerable effort alleging that the Grubb & Ellis defendants are, in the words of one court, "a monolithic enterprise whose sole purpose was to separate plaintiffs from their money." *Bruns v. Ledbetter,* 583 F. Supp. 1050, 1051 (S.D. Cal. 1984). Plaintiffs' third and fourth RICO causes of action fully incorporate by reference "paragraphs 1 through 69 inclusive" of the complaint. *Id.,* PP70, 79. Plaintiffs' [*8] complaint also asserts that "at all material times. . . . There existed a unity of control, interest and ownership among the Grubb & Ellis defendants such that any individuality and separateness of such entities may be disregarded by the Court. . . ." Id. P16. This united posture is abandoned only when it becomes necessary to allege the existence of an enterprise for purposes of the RICO actions.

Given plaintiffs' allegations that the Grubb & Ellis defendants are indistinguishable from one another, and the lack of any evidence that either G&E Co. or 222 Sutter Street is distinct from the other Grubb & Ellis defendants for purposes of constituting a RICO enterprise, the court concludes that plaintiffs are alleging that the Grubb & Ellis defendants are at once defendants and the RICO enterprise. This does not state a claim under *section*

*1962(c)*. The court therefore dismisses plaintiffs' third and fourth causes of action.

Plaintiffs' fifth cause of action alleges that two or more of the Grubb & Ellis defendants conspired to commit acts which are unlawful under sections 1961(c) and 1961(d) of RICO. Second Amended Complaint, P90. [HN4] In order to state a claim of conspiracy to violate RICO [*9] under *section 1962(d)*, plaintiffs must allege an agreement to commit a pattern of racketeering activity in violation of one of the substantive provisions of *section 1962*, i.e. *section 1962(a)*, *1962(b)*, or *1962(c)*. See *Rose v. Bartle, 871 F.2d 331, 366 (3rd Cir. 1989)* (citing cases); *Frymire v. Peat, Marwick, Mitchell & Co., 657 F. Supp. 889, 895-96 (N.D. Ill. 1987)* (cited approvingly in Farlow v. Peat, Marwick, & Mitchell & Co., No. 89-6310, 1992 WL 24185 at *6 (10th Cir. Feb. 13, 1992). Since plaintiffs' fifth cause of action does not allege any distinct enterprise which the Grubb & Ellis defendants conspired to affect, but only incorporates the *section 1962(c)* causes of action which erroneously portray G&E Co. and 222 Sutter Street as "enterprises," plaintiffs' fifth cause of action is deficient. See *Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1411 n.1 (3rd Cir. 1991)*; see also *Satellite Financial Planning v. First Nat. Bank, 633 F. Supp. 386, 405 n.23 (D.Del. 1986)* (closely related entities cannot conspire to violate RICO). The court therefore dismisses plaintiffs' fifth cause of action.

[*10] 2. Securities 10(b) Claims

Plaintiffs' first and second causes of action allege violations of section 10(b) of the Securities and Exchange Act of 1934, *15 U.S.C. § 78j(b)*, and Rules 10b-5 and *10b-9* promulgated thereunder, against the Grubb & Ellis defendants and defendant Morrison & Foerster. Alternatively, plaintiffs allege that defendants aided and abetted securities violations. Defendants claim that these claims are deficient, due to failure to plead reliance.

[HN5] Reliance is an essential element of a 10(b) claim. *15. U.S.C. § 78r(a)*; *Basic, Inc. v. Levinson, 485 U.S. 224, 243 (1988)* (reliance is specifically required for a 10(b)-5 claim). [2] Plaintiffs have not pleaded reliance specifically; they claim that in this case reliance may be presumed on two alternative grounds, the "fraud-created-the-market" theory or the theory outlined in *Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128 (1972)*.

2   The court is unaware of any case specifically holding that reliance is an element of a Rule 10(b)-9 claim; however, in light of *15 U.S.C. § 78r(a)*'s requirement of reliance for 10(b) actions in general, and the reasoning outlined in *Basic, 485 U.S. at 243*, the court finds that reliance is an essential element of a Rule 10(b)-9 action.

[*11] A. Fraud-Created-the-Market

The Supreme Court has affirmed that [HN6] reliance may be presumed in a fraud-on-the-market situation. See *Basic Inc., 485 U.S. at 245-47*; see also *Blackie v. Barrack, 524 F.2d 891, 905-08 (9th Cir. 1975)*, cert. denied, *429 U.S. 816 (1976)* (articulating the fraud-on-the-market theory in the Ninth Circuit). This theory assumes that in an open and developed securities market, the material information available on a security is sifted and digested by the market to determine an accurate value for the security. Thus misleading statements will defraud purchasers of stock even if they have not directly relied on the misstatements, since the purchasers are presumed to rely on the integrity of the market's "invisible hand" to set a fair price for the security.

However, this theory applies only in an open and developed market. In the case at bar, the limited partnership interests were clearly not issued on an open and developed market. See, e.g., POM at ii ("no market exists for the Units and it is unlikely that a market will exist at any future time"), and the fraud-on-the-market presumption of reliance [*12] is inapplicable. Plaintiffs therefore allege a variation of the fraud-on-the-market theory, namely, the fraud-created-the-market theory. *Shores v. Sklar, 647 F.2d 462 (5th Cir. 1981)* (en banc), cert. denied, *459 U.S. 1102 (1983)*. See also *Arthur Young & Co. v. United States District Court, 549 F.2d 686, 695 (9th Cir.)*, cert. denied, *434 U.S. 829 (1977)* (implicitly endorsing a Shores-type variation of the fraud-on-the-market theory).

The Shores case involved the original issue of revenue bonds by a municipal development board. The court held that the alleged fraud was so pervasive that "without [the fraud] . . . these Bonds . . . would not have been offered on the market at any price." *Shores, 647 F.2d at 464 n.2*. Thus, even in an original issue situation, if fraud is so pervasive that without it the securities would not have been marketed, reliance can be presumed.

[HN7] The fraud-created-the-market theory may be viewed as substituting reliance on governmental regulatory process for reliance on open market process. The pertinent case in the Ninth Circuit is Arthur Young, where reliance [*13] was presumed in connection with the sale of interests in several oil exploration joint ventures. See *Arthur Young, 549 F.2d at 688, 695*. These joint venture interests had been marketed by defendants pursuant to registration statements and prospectuses filed with the Securities Exchange Commission. *Id. at 695*. The Arthur Young court concluded that just as the open market purchaser relies on the integrity of the market to reflect the true value of securities, "so the purchaser of an original issue security relies, at least indirectly, on the

integrity of the regulatory process and the truth of any representations made to the appropriate agencies . . . ." Id.; see also *Lubin v. Sybedon Corp.*, 688 F. Supp. 1425, 1447 (S.D. Cal. 1988) ("even under *Shores* an investor must show that he relied to some extent upon either the pricing mechanisms of a securities exchange or the registration procedures of the Securities Exchange Commission."). *Shores* may thus be interpreted consistently with *Arthur Young*. [3]

> 3   In *Shores*, Alabama law required that the bonds in question could only be issued by an Industrial Development Board incorporated by a municipality. *Shores*, 647 F.2d at 465. It is likely that the *Shores* plaintiffs relied upon this governmental procedure to assure the genuineness of the bonds.

[*14]  In this case, plaintiffs have not pleaded reliance of SEC registration procedures or any other regulatory mechanisms that would warrant a presumption of reliance under the fraud-created-the-market theory. Nor have plaintiffs alleged or provided any supplemental evidence which suggests that any exchange commission certified the limited partnerships. Indeed, the POM is replete with prominent disclaimers disavowing any such regulatory oversight of the privately-offered limited partnership units. See, e.g., POM at iii ("THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION, NOR HAS THE COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THIS OFFERING MEMORANDUM") (capital letters in original); POM at C-13 ("NO STATE SECURITY COMMISSIONERS OR STATE REGULATORY AGENCIES HAVE PASSED UPON THE VALUE OF THE SECURITIES, NOR HAVE THEY APPROVED OR DISAPPROVED THE OFFERING") (capital letters in original).

Plaintiffs have failed to allege or demonstrate that they relied upon any regulatory process in conjunction with the purchase of the limited partnership units. Therefore, the court finds that reliance may not be presumed in this case.

B. Affiliated [*15]  Ute

The Supreme Court has held that [HN8] reliance in 10(b) securities cases may be presumed in cases involving material omissions. *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153 (1972). On its face, the Affiliated Ute presumption applies only in those cases "involving primarily a failure to disclose." Id.; see also *Lubin*, 688 F. Supp. at 1446 (Affiliated Ute presumption applies "only in cases based upon omissions, and not in cases based upon misrepresentations."). The Ninth Circuit has reserved the question of whether the Affiliated Ute presumption of reliance should be extended to cases based primarily on misrepresentations rather than omissions. See *Kramas v. Security Gas & Oil Inc.*, 672 F.2d 766, 769 n.2 (9th Cir. 1982).

In the instant case, plaintiffs' allegations consist almost entirely of misrepresentations. See Second Amended Complaint at PP43(a)-(s), 44(a)-(c) (listing alleged omissions and misrepresentations). By emphasizing facts that the misrepresentations did not state, plaintiffs attempt to characterize these misrepresentations as omissions. For example, plaintiffs allege that [*16] "the POM represents . . . that the project is part of both San Francisco's Financial and Union Square retail districts. . . . Defendants knew and failed to disclose . . . that the property was West of the Financial District and Southeast of the Union Square retail district." Id. at P43(b). The supposed omission, that the property was West of the financial district and Southeast of the retail district, does not carry any weight by itself; it is material only in relationship to defendants' statement, that the property was part of both areas, which it potentially makes inaccurate. Similarly, plaintiffs allege that "the POM represents . . . that the partnership obtained an appraisal . . . [that] determined the value of the building to be [$ 38.1 million]. Defendants knew and failed to disclose . . . that the appraisal assumed an [unrealistic] 2% vacancy ratio factor. . . ." Id. at P43(p). The asserted omission, that the assumed 2% vacancy ratio factor should have been disclosed, is of no relevance of itself; it is significant only in interpreting the POM's statement that an assessment had determined a certain value for the building.

The court finds that plaintiffs' allegations [*17] in this case involve chiefly misrepresentations. The Affiliated Ute presumption of reliance does not on its face extend to misrepresentation cases, and the Ninth Circuit has not extended the presumption to misrepresentation cases; the court declines to so extend it in this case. Plaintiffs, therefore, may not rely on a presumption of reliance based upon Affiliated Ute.

Plaintiffs' have not alleged reliance, a necessary element for their 10(b) claims. Nor is any presumption of reliance, applicable to plaintiffs under either a fraud-created-the-market theory or an Affiliated Ute theory. The court therefore dismisses plaintiffs' first and second causes of action. [4]

> 4   Since the time the parties' submissions in this case were filed, and oral argument was heard, the Supreme Court has held that securities actions brought under Section 10(b) must be commenced within one year of discovery of the facts constituting the violation. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 111 S. Ct. 2773

1992 U.S. Dist. LEXIS 3648, *

*(1991)*. The parties have submitted letters discussing the possible retroactive application of Lampf to this case. Since the court finds that plaintiffs' Section 10(b) claims are deficient on other grounds, it need not address the retroactivity of Lampf. Similarly, the court need not address the additional question of whether Section 476 of the Federal Deposit Insurance Corporation Improvement Act of 1991, Pub. L. No. 102-242, which eliminates the retroactive application of Lampf, is unconstitutional.

[*18] 3. Remaining State Claims

Because plaintiffs' RICO and securities claims are dismissed, no further federal claims remain in plaintiffs' second amended complaint. The court therefore dismisses plaintiffs' remaining claims under its discretionary authority. *United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)*. [5]

5  Since this action was filed before the adoption of *28 U.S.C. § 1367*, which provides for supplemental jurisdiction, supplemental jurisdiction does not apply. Even if the statute were applicable, however, the result would be the same under subparagraph (c)(3) of *28 U.S.C. § 1367*.

CONCLUSION

Having read the parties' papers and heard oral argument, and for the reasons discussed above, the court finds:

1. That plaintiffs have failed to allege a RICO enterprise distinct and separate from the alleged defendants for purposes of plaintiffs' third, fourth and fifth causes of action;

2. That plaintiffs have failed to plead reliance or to demonstrate that reliance should be presumed [*19] for purposes of their first and second causes of action,; and,

3. That plaintiffs have no federal claims other than their RICO and securities claims.

Therefore, the court GRANTS defendants' motion to dismiss plaintiffs' second amended complaint.

IT IS SO ORDERED.

Dated: MAR 13 1992

MARILYN HALL PATEL

United States District Judge

*SEC. v. Mercury Interactive, LLC, et al..*
United States District Court, Northern District, Case Number 07-cv-02822 JF

# TAB B

Only the Westlaw citation is currently available.

NOT FOR CITATION

United States District Court, N.D. California,
San Jose Division.

**In re DITECH NETWORKS, INC.
DERIVATIVE LITIGATION.**

**No. C 06-5157 JF.**

July 16, 2007.

Darryl Paul Rains, Morrison & Foerster, LLP,
Palo Alto, CA, Diane Elizabeth Pritchard, Morrison
& Foerster, LLP, San Francisco, CA, for
Defendants.

ORDER [FN1] GRANTING MOTION TO
DISMISS FOR FAILURE TO STATE A CLAIM
UPON
WHICH RELIEF CAN BE GRANTED WITH
LEAVE TO AMEND; DEFERRING MOTION TO
DISMISS
FOR FAILURE TO MAKE DEMAND

FN1. This disposition is not designated for
publication and may not be cited.

JEREMY FOGEL, United States District Judge.

I. BACKGROUND

1. Procedural Background

**\*1** This derivative action arises from the alleged
backdating and springloading of stock options by
directors and officers of nominal defendant Ditech
Networks, Inc. ("Ditech" or "the Company").
Plaintiff Donald W. Newman filed the initial
complaint on August 23, 2006. The Court has
consolidated the Newman action and two other
actions under the caption of the instant case. On
March 2, 2007, Plaintiffs filed an amended
consolidated complaint ("the Complaint"). The
Complaint asserts claims against the following
individuals ("the Individual Defendants").

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Slip Copy                                                    **Page  99**
(Cite as: 2007 WL 2070300, *1 (N.D.Cal.))

-------------------------------------------------------------------
Defendant                  Role at the Company
-------------------------------------------------------------------
Timothy K. Montgomery      President, CEO, and director, September 1998 to
                             present.
                           Chairman of the Board of Directors ("the Board"),
                             October 1999 to present.
                           Senior Vice President of Sales and Marketing, November
                             1997 to September 1998.
-------------------------------------------------------------------
Gregory M. Avis            Director, February 1997 to present.
                           Member, Compensation Committee, 1999 to present.
-------------------------------------------------------------------
William A. Hasler          Director, May 1997 to present.
                           Member, Compensation Committee, at least 1999 to
                             present.
                           Member, Audit Committee, at least 1999 to present.
-------------------------------------------------------------------
Andrei M. Manoliu          Director, June 2000 to present.
                           Member, Audit Committee, 2003 to present.
-------------------------------------------------------------------
Edwin L. Harper            Director, December 2002 to present.
-------------------------------------------------------------------
David M. Sugishita         Director, February 2003 to present.
                           Member, Audit Committee, 2003 to present; Chair of
                             Audit Committee, 2004 to present.
-------------------------------------------------------------------
Serge Stepanoff            Vice President of Engineering & Development for Echo
                             Cancellation Products, September 1996 to May 2002.
-------------------------------------------------------------------
William J. Tamblyn         Chief Financial Officer, June 1997 to present.
                           Executive Vice President, May 2005 to present.
                           Vice President, June 1997 to May 2005.
-------------------------------------------------------------------
Toni M. Bellin            Vice President of Operations, December 1998 to July
                             2001.
-------------------------------------------------------------------
Robert T. DeVincenzi       Senior Vice President of Sales for Altamar Networks,
                             July 2000 to June 2003.
-------------------------------------------------------------------
Lowell B. Transgrud        Vice President, Operations, July 2001 to present.
-------------------------------------------------------------------
James H. Grady             Vice President, Business Development, 2005 to present.
                           Vice President, Worldwide Sales, July 2003 to 2005.
-------------------------------------------------------------------
Lee H. House               Vice President, Echo Engineering, May 2002 to present.
-------------------------------------------------------------------
Ian M. Wright              Senior Vice President of Engineering for Optical
                             Networking Products, February 2000 to present.
-------------------------------------------------------------------
Chalan M. Aras             Vice President of Marketing, May 2004 to present.
                           Senior Director of Product Management, October 2003 to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Slip Copy
(Cite as: 2007 WL 2070300, *1 (N.D.Cal.))

May 2004.

------------------------------------------------------------

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

*Westlaw*®

Complaint ¶¶ 14-30. The Complaint describes Montgomery, Stepanoff, Tamblyn, Bellin, DeVincenzi, Transgrud, Grady, House, Wright, and Aras as "the Officer Defendants;" Avis and Hasler as "the Committee Defendants;" and Montgomery, Tamblyn, Transgrud, House, Avis, Hasler, Manoliu, Sugishita, and Grady as "the Insider Selling Defendants." Complaint ¶¶ 24, 27.

The Complaint asserts nine claims: (1) violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder, against the Individual Defendants; (2) violation of Section 14(a) of the Securities Exchange Act and Rule 14a-9 promulgated thereunder, against the Individual Defendants; (3) violation of Section 20(a) of the Securities Exchange Act, against defendants Montgomery, Tamblyn, Avis, Hasler, Sugishita, Harper, and Manoliu; (4) accounting, against the Individual Defendants; (5) breach of fiduciary duty and/or aiding and abetting, against the Individual Defendants; (6) unjust enrichment, against the Individual Defendants; (7) rescission, against the Officer Defendants; (8) insider selling and misappropriation of information, against the Insider Selling Defendants; and (9) breach of fiduciary duty and/or aiding and abetting relating to the May 18, 2004 option grants, against the Individual Defendants.

*2 On April 2, 2007, the Individual Defendants moved to dismiss the Complaint for failure to state a claim upon which relief can be granted ("Motion One"), and Ditech moved to dismiss the Complaint for failure to make demand ("Motion Two"). Plaintiffs oppose both motions. The Court heard oral argument on June 8, 2007.

2. Allegations Made in the Complaint

Pursuant to the Company's shareholder-approved stock option plans, the exercise price of options may not be less than the fair market value of the stock on the date the option is granted. Complaint ¶ 38. However, the Complaint alleges that

[t]he Compensation Committee, with the knowledge and approval of the other members of the Board, knowingly and deliberately violated the terms of the [Company's stock option] Plans ... by knowingly and deliberately backdating grants of stock options to make it appear as though the grants were made on dates when the market price

of Ditech stock was lower than the market price on the actual grant dates, thereby benefitting the recipients of the backdated options.

Complaint ¶ 37; see also Complaint ¶ 46. Nine stock option grants allegedly were backdated:

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Westlaw.

Slip Copy
(Cite as: 2007 WL 2070300, *2 (N.D.Cal.))

| Purported Date | Recipient | Number of Options | Exercise Price |
|---|---|---|---|
| 8/10/1999 | Montgomery | 253,888 | $9.00 |
| 8/10/1999 | Stepanoff | 125,020 | $9.00 |
| 8/10/1999 | Tamblyn | 149,586 | $9.00 |
| 10/4/1999 | Bellin | 50,000 | $24.69 |
| 8/1/2000 | DeVincenzi | 133,934 | $22.50 |
| 1/10/2001 | Montgomery | 400,000 | $7.19 |
| 1/10/2001 | DeVincenzi | 160,000 | $7.19 |
| 1/10/2001 | Tamblyn | 145,000 | $7.19 |
| 1/10/2001 | Wright | 300,000 | $7.19 |

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Westlaw.

Complaint ¶ 41. [FN2] The grants dated August 10, 1999 coincided with the second-lowest quarterly price, those dated October 4, 1999 and August 1, 2000 coincided with the lowest price of their respective months, and those dated January 10, 2001 coincided with the second-lowest price of the six-month period ending on April 30, 2001. Complaint ¶¶ 43-45. [FN3]

FN2. Two further alleged backdated grants were made on July 6, 2000, but were cancelled on March 19, 2003. Complaint ¶ 41 n.3.

FN3. The Complaint includes no allegations regarding the actual date of the option grants, of any public announcement by the Company of options backdating or the need to restate earnings, or of any investigation by the Company or by the SEC.

Defendants allegedly engaged in option springloading in 2004. This is a practice "when directors grant options at the market value on the date of grant, at a time the directors know that the shares are actually worth more than the market value because the directors possess material non-public information." Complaint ¶ 48. Three springloaded stock option grants allegedly were made on May 18, 2004.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

| Purported Date | Recipient | Number of Options | Exercise Price |
|----------------|-----------|-------------------|----------------|
| 5/18/04 | Tamblyn | 125,000 | $13.37 |
| 5/18/04 | Transgrud | 125,000 | $13.37 |
| 5/18/04 | Aras | 100,000 | $13.37 |

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Westlaw.

Complaint ¶ 49. The grant price coincided with the third lowest price of 2004. Id. The Company announced positive results on May 27, 2004, and Ditech shares closed at $20.61 per share on May 28, 2004. Complaint ¶ 51.

As alleged in the Complaint, two proxy statements, filed on August 18, 2000 and August 8, 2001, respectively, falsely reported the backdated option grants. Complaint ¶ 61. Defendants also are alleged to have disseminated false financial reports, Complaint ¶¶ 54-61, concealed their misconduct, Complaint ¶¶ 62-63, and violated GAAP accounting principles, SEC regulations, and IRS rules and regulations. Complaint ¶¶ 64-86. During the period from October 5, 1999 to December 9, 2004, the Individual Selling Defendants are alleged to have sold over $100 million in Ditech stock while in the possession of materially adverse non-public information regarding the backdating of stock options. Complaint ¶ 87. These alleged actions of the Individual Defendants constituted breaches of their fiduciary duties and were not, and could not have been, products of the exercise of good faith business judgment. Complaint ¶¶ 88-89.

*3 Plaintiffs claim that they have not made a demand on the Board because "demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action." Complaint ¶ 94. At the time that this action was commenced, the Board consisted of six directors: Montgomery, Avis, Hasler, Manoliu, Sugishita, and Harper. Complaint ¶ 95. According to Plaintiffs, five directors are incapable of considering independently and disinterestedly a demand to commence and prosecute this action vigorously. Id. The reasons for each director's alleged incapacity to do so are summarized in the table below:

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Slip Copy                                                    **Page 106**
**(Cite as: 2007 WL 2070300, \*3 (N.D.Cal.))**

| Director | Reasons for Lack of Independence and Disinterestedness |
|----------|---------------------------------------------------------|
| Montgomery | . Received backdated stock options.<br>. Sold Ditech stock for proceeds in excess of $39 million on the basis of inside information. |
| Avis | . Sold Ditech stock for proceeds in excess of $43 million on the basis of inside information.<br>. Knowingly and deliberately backdated stock option grants as a member of the Compensation Committee, and is substantially likely to be held liable for breaching his fiduciary duties.<br>. Colluded with the Officer Defendants, demonstrating that he is unable or unwilling to act independently.<br>. Has served as Managing Partner of Summit, a venture capital and private firm, since 1990. Summit invested in Ditech in 1997 and is still listed as a Summit portfolio company. |
| Hasler | . Sold Ditech stock for proceeds in excess of $4.4 million on the basis of inside information.<br>. Knowingly and deliberately backdated stock option grants and approved, signed, and disseminated false financial statements and other false SEC filings as a member of the Audit and Compensation Committees, and is substantially likely to be held liable for breaching his fiduciary duties.<br>. Colluded with the Officer Defendants, demonstrating that he is unable or unwilling to act independently. |
| Manoliu | . Sold Ditech stock for proceeds in excess of $441,000 on the basis of inside information.<br>. Knowingly and deliberately approved, signed, and disseminated false financial statements and other false SEC filings as a member of the Audit Committee, and is substantially likely to be held likely for breaching his fiduciary duties.<br>. Colluded with the Officer Defendants, demonstrating that he is unable or unwilling to act independently. |
| Sugishita | . Sold Ditech stock for proceeds in excess of $516,000 on the basis of inside information.<br>. Knowingly and deliberately approved, signed, and disseminated false financial statements and other false SEC filings as a member and Chair of the Audit Committee, and is substantially likely to be held liable for breaching his fiduciary duty.<br>. Colluded with the Officer Defendants, demonstrating that he is unable or unwilling to act independently. |

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

*4 Id.

## II. LEGAL STANDARD

### 1. Motion to Dismiss

For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the Court must construe the complaint in the light most favorable to the plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). However, the court is not required "to accept legal conclusions case in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir.1994). Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. Lucas v. Department of Corrections, 66 F.3d 245, 248 (9th Cir.1995). When amendment would be futile, however, dismissal may be ordered with prejudice. Dumas v. Kipp, 90 F.3d 386, 393 (9th Cir.1996). Leave to amend is to be granted with extreme liberality in securities fraud cases, because the heightened pleading requirements imposed by the PSLRA are so difficult to meet. See Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir.2003).

On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. North Star International v. Arizona Corporation Commission, 720 F.2d 578, 581 (9th Cir.1983); MGIC Indemnity Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir.1986); Beliveau v. Caras, 873 F.Supp. 1393, 1395 (C.D.Cal.1995). However, under the "incorporation by reference" doctrine, the Court also may consider documents that are referenced extensively in the complaint and are accepted by all parties as authentic, even though the documents are not physically attached to the complaint. In re Silicon Graphics, Inc. Securities Litigation, 183 F.3d 970 (9th Cir.1999).

### 2. The Demand Requirement

A derivative complaint must "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort." Fed.R.Civ.P. 23.1. The existence and satisfaction of a demand requirement is a substantive issue governed by state law. See Kamen v. Kemper Financial Services, Inc., 500 U.S. 90, 96-97, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991). [FN4] When the challenged decision is that of the board in place at the time of the filing of the complaint, failure to make demand may be excused if a plaintiff can raise a reason to doubt that a majority of the board is disinterested or independent or that the challenged acts were the product of the board's valid exercise of business judgment. Aronson v. Lewis, 473 A.2d 805, 812 (Del.1984); see also Ryan v. Gifford, 918 A.2d 341, 352 (Del.Ch.2007) (discussing Aronson ). However, "[w]here there is no conscious decision by the corporate board of directors to act or refrain from acting, the business judgment rule has no application." Rales v. Blasband, 634 A.2d 927, 933 (Del.1993); see also Ryan, 918 A.2d at 352 (discussing Rales ). In such a situation, demand may be excused only if a plaintiff "can create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." Id. at 353 (citing Rales, 634 A.3d 933-34).

FN4. The parties agree that Delaware law applies to the instant action because Ditech is incorporated in Delaware.

## III. DISCUSSION

### 1. Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted

a. Claim One: Violation of Section 10(b) and Rule 10b-5

i. Sufficiency of the Allegations

*5 Plaintiffs allege securities fraud in violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder. Complaint ¶ 99. Plaintiffs summarize their claim as follows:
Plaintiffs allege that (1) Defendants committed a variety of manipulative and deceptive acts, including backdating stock option grants and producing and disseminating false financial statements, false proxy statements, and false Form

Westlaw.

Slip Copy                                            **Page  108**
**(Cite as: 2007 WL 2070300, \*5 (N.D.Cal.))**

4s, ¶¶ 54-63; (2) Defendants' misconduct was in furtherance of their scheme to defraud the Company, ¶¶ 88-90, 98-103; (3) Defendants engaged in their fraudulent scheme knowingly and deliberately, i.e., with scienter, ¶¶ 54-59, 61-63; and (4) the Company relied on Defendants' fraud in granting the Officer Defendants options to purchase Ditech common stock, ¶¶ 37-38, 41, 46-49-53.

Opposition to Motion One 18. [FN5]

> FN5. Plaintiffs do not assert that springloading supports liability under the federal claims.

Section 10(b) makes it unlawful
[t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). Rule 10b-5 makes it unlawful for any person to use interstate commerce
(a) To employ any device, scheme, or artifice to defraud,
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240. 10b-5. In cases involving publicly-traded securities and purchases or sales in public securities markets, the elements of an action under Section 10(b) and Rule 10b-5 are: (1) a material misrepresentation or omission, (2) scienter, (3) a connection with the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation. Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 341-42, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005).

Plaintiffs must meet two heightened pleading standards. Fed.R.Civ.P. 9(b) requires that "the circumstances constituting fraud ... be stated with particularity." The Ninth Circuit has explained that a "plaintiff must include statements regarding the time, place, and nature of the alleged fraudulent activities, and that mere conclusory allegations of fraud are insufficient." In re GlenFed, Inc. Securities Litigation, 42 F.3d 1541, 1548 (9th Cir.1994). A plaintiff asserting fraud "must set forth an explanation as to why the statement or omission complained of was false or misleading." Id. (internal quotation marks omitted); see also Yourish v. California Amplifier, 191 F.3d 983, 992-93 (9th Cir.1999). The Private Securities Litigation Reform Act ("PSLRA") raises the pleading standard further:

**\*6** (1) Misleading statements and omissions
In any private action arising under this chapter in which the plaintiff alleges that the defendant--
(A) made an untrue statement of a material fact; or
(B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading; the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.
(2) Required state of mind
In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u-4b(1)-(2).

Plaintiffs assert that they "undeniably plead all of the elements necessary to state a claim for "scheme liability." The Court disagrees. The Complaint alleges a very limited number of facts that pertain to a subset of the defendants, but then attempts to impose liability on all the Individual Defendants. In addition to this global deficiency, at least two major inadequacies require dismissal. [FN6]

> FN6. In dismissing this claim on these grounds, the Court expresses no opinion as to other argued grounds for dismissal forwarded by the Individual Defendants, such as the sufficiency of the pleading of damage to Ditech or causation. Nor does the Court deem it necessary to discuss arguments it does not reach as to the other claims.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Westlaw.

First, Plaintiffs assert that their claim is for violation of Rule 10b-5(a) and (c), not for violation of Rule 10b-5(b), which pertains to material untrue statements or omissions. Id. This assertion is confusing given Plaintiffs' emphasis on the alleged production and dissemination of false financial statements, proxy statements, and Form 4's. In light of this ambiguity, while Plaintiffs may have stated with particularity some portion of the supposed universe of Defendants' fraudulent conduct, the extent of this alleged fraudulent conduct remains unclear. Not only must Plaintiffs give Defendants notice of what acts constitute the alleged violations, but, as discussed below, the nature of the violation is relevant to the statute of limitations analysis. Accordingly, Plaintiffs may not proceed with this claim as presently stated.

Second, the Complaint fails to allege scienter sufficiently. The Complaint alleges no facts that give rise to a strong inference that the non-director defendants knew that the options they received were backdated or that the directors who joined after the final alleged backdated grant participated in the backdating scheme. Even the participation and knowledge of the remaining members of the board during the time of the options grants is pled without factual particularity. Instead, the Complaint alleges generically that the Compensation Committee acted "with the knowledge and approval of the other members of the Board." Complaint ¶¶ 37, 40, 42. The high rank of various Defendants within the Company is insufficient, without more, to impose liability, and the conclusory allegation that each individual defendant had knowledge or acted with reckless disregard of the truth is insufficient to state a claim even under the more liberal Rule 12(b)(6) standard. See e.g. Assoc. Gen. Contractors, Inc. v. Metro. Water Dist. of So. Cal., 159 F.3d 1178, 1181 (9th Cir.1998); see also Bell Atlantic v. Twombly, ---U.S. ----, ---- - ----, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929, ---- - ----(May 21, 2007) (explaining that a plaintiff's obligation to state the ground for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do") (citations omitted).

*7 Other courts within this district have considered the presence or absence of a pattern of backdating, primarily in the context of the demand futility requirement. See e.g. In re CNET Networks,

Inc. Deriv. Litig., 483 F.Supp.2d 947 (N.D.Cal.2007); In re Zoran Corp. Deriv. Litig., 2007 WL 1650948 (N.D.Cal. June 5, 2007); In re Openwave Systems Inc. Deriv. Litig., 2007 WL 1456039 (N.D.Cal., May 17, 2007); In re Linear Tech. Corp. Deriv. Litig., 2006 WL 3533024 (N.D.Cal. Dec.7, 2006). As currently pled, the Complaint alleges fraudulent conduct by labeling various grants as backdated and describing them as having been made at low points within certain defined periods. See e.g. Complaint ¶¶ 37, 42-46. While counsel for Plaintiffs represented at oral argument that the statistical likelihood of the options having been granted properly is very low, that theory is not alleged in the Complaint or in a document that the Court may consider on this motion. Even assuming that the factual allegations of the Complaint are true, many explanations other than options backdating exist for the coincidence of the grants and a low share price. [FN7] The following factual detail likely would strengthen the Complaint: the degree to which the options were granted at the discretion of the compensation committee or the board, versus at fixed, preestablished times; the actual grant dates of the options and the appropriate price of the options; the date that the options were exercised; whether required performance goals were met before the options were granted; the presence or absence of other major corporate events, such as an acquisition, at the time of the grants; and the results of any requests by Plaintiff for information.

> FN7. The Court does not hold that a plaintiff must allege a pattern of backdating in order to state a claim under Section 10(b), to establish demand futility, or to state a claim for breach of fiduciary duty. See CNET, 483 F.Supp.2d at 956-58 (describing analytical methods as one way to support an inference of illegal conduct when "direct evidence is rare and difficult to uncover"). For example, a plaintiff likely could proceed past the pleading stage by alleging sufficient factual detail as to the mechanics of an option backdating scheme, including the specific roles and mental states of the various participants. In such a case, the fact that the defendants only backdated one option grant or did not grant themselves the largest possible benefit (and thus failed to generate a statistically implausible pattern) would not be an automatic bar to liability.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



ii. Statute of Limitations

[A] private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47)), may be brought not later than the earlier of--

(1) 2 years after the discovery of the facts constituting the violation; or

(2) 5 years after such violation.

28 U.S.C. § 1658(b); see e.g. In re Heritage Bond Litig., 289 F.Supp.2d 1132, 1147-48 (C.D.Cal.2003). This statute of limitations is not subject to equitable tolling. Durning v. Citibank, In'l, 990 F.2d 1133, 1136-37 (9th Cir.1993). Claim one, asserting a violation of Section 10(b) and Rule 10b-5 of the Securities Exchange Act, alleges and involves fraud. See Complaint ¶ 99. Accordingly, Section 1658 applies to this claim. Because the practice of backdating options came to light in 2005, the Court concludes that the two-year discovery period does not bar the instant action. Accordingly, the applicable period for this analysis is the five-year period of repose. [FN8]

> FN8. "A statute of repose is a fixed, statutory cutoff date, usually independent of any variable, such as claimant's awareness of a violation." Munoz v. Ashcroft, 339 F.3d 950, 957 (9th Cir.2003) (citing Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 363, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991)).

In light of the statute's focus on the "violation," the Court first must decide what comprises the alleged violation. The primary focus of the claim appears to be on the backdating of options. [FN9] To the extent that the claim is based upon the backdating itself, the period of repose starts on the date that the option grant was made. See Durning, 990 F.2d at 1136 (noting that the federal rule is that a cause of action accrues at the completion of the sale of the instrument); Falkowski v. Imation Corp., 309 F.3d 1123, 1130 (9th Cir.2002) (describing the grant of an option as "a purchase or sale" under the Securities Litigation Uniform Standards Act). The last alleged purported date of a backdated option is January 10, 2001. This option was reported in a proxy statement filed with the SEC on August 8, 2001, so even though the actual date of the options

grant is not alleged, it could not have been granted after that date. Because the initial complaint was filed on August 23, 2006, any improper transaction under Section 10(b) must have occurred after August 23, 2001. Accordingly, this claim is time-barred to the extent that it is based upon the actual backdated grants.

> FN9. Plaintiffs do not argue that option springloading would support a claim under the federal securities laws.

**\*8** Plaintiffs also appear to suggest that the Individual Defendants violated Section 10(b) by disseminating false financial statements. However, as noted above, Plaintiffs state in opposition to the instant motion that they do not assert a claim under Rule 10b-5(b), which it is unlawful to make an untrue statement or to omit a material fact. Opposition to Motion One 18. Consequently, it is by no means clear how the alleged fraudulent financial statements fit into the first claim. Plaintiffs have not pled them as an independent violation of Section 10(b); indeed, they appear to acknowledge their failure to do so by disclaiming any need to plead the elements of a violation of Rule 10b-5(b). See Opposition to Motion One 18. While Plaintiffs refer to a fraudulent scheme in the Complaint, see e.g. Complaint ¶¶ 2-4, they do not allege such a scheme with any particularity and, as noted above, fail to allege with any factual detail the involvement of a large number of the Individual Defendants. In light of these inadequacies, the Court concludes that it is premature to rule out the possibility that Plaintiffs will be able to plead a violation of Section 10(b) based upon fraudulent financial statements that is not time-barred. In reaching this conclusion, the Court notes the Individual Defendants' argument that the period of repose starts when the misrepresentation is made for the first time. At least one court in this district has accepted this argument, see Zoran, 2007 WL 1650948 *21(citing Asdar Group v. Pillsbury, Madison, and Sutro, 99 F.3d 289, 294-95 (9th Cir.1996) ("[A] statute of limitations [for a Section 10(b) claim] ordinarily begins to run when an act occurs that gives rise to liability ....")) [FN10] As it indicated at oral argument, the Court is highly skeptical of a continuing wrong theory [FN11] that would allow the revival of a time-barred claim under Section 10(b) upon the issuance of a further financial statement that failed to correct the prior false

Westlaw.

statement. Such a theory appears to approximate the effects of the fraudulent concealment doctrine of equitable tolling, a doctrine that does not apply in the Section 10(b) context.

FN10. The court explained in In re Dynex Capital, Inc. Sec. Litig., 2006 WL 314524 *5 (S.D.N.Y. Feb 10, 2006) that while it concluded that a series of misrepresentations were not barred by the period of repose when the alleged securities transaction fell within the five-year period, it had held in a previous case that a claim was time-barred when the underlying securities transaction fell outside the five-year period. Dynex, 2006 WL 314524 at n. 4 (citing Shalam v. KPMG, L.L.P., 2005 WL 2139928 *2 (S.D.N.Y. Sept.6, 2005)). Thus, even if Dynex were binding authority, which it is not, it would not necessarily dictate the outcome suggested by Plaintiffs.

FN11. Any such theory would be distinct from the continuing wrong exception, recognized by other courts, see e.g. Bateson v. Magna Oil Corp., 414 F.2d 128, 130 (5th Cir.1969) to the continuous ownership requirement of Rule 23.1 that allows standing to maintain a claim for an entire course of a continuing wrong even if a portion of those events occurred prior to the plaintiff's acquisition of stock in the nominal defendant.

iii. Leave to Amend

Counsel for Plaintiffs represented at oral argument that he believed that Plaintiffs could allege further facts that would allow them to address both the time-bar and the current lack of particularity in the Complaint. Accordingly, this claim will be dismissed with leave to amend.

b. Claim Two: Violation of Section 14(a)

Rule 14a-9 provides:
No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.
*9 17 C.F.R. § 240.14a-9(a). To state a claim under Rule 14a-9 and Section 14(a), a plaintiff must allege a false or misleading statement or omission of material fact; that the misstatement or omission was made with the requisite level of culpability; and that it was an essential link in the accomplishment of the transaction. Desaigoudar v. Meyercord, 223 F.3d 1020, 1022 (9th Cir.2000).

The Individual Defendants argue that the extended limitations period under 28 U.S.C. § 1658 does not apply to actions under Section 14(a), and that a Section 14(a) claim must be filed one year after discovery of the facts constituting the violation, and in no event more than three years following publication of the false statement. Individual Defendants' Motion 8 (citing In re Exxon Mobil Corp. Sec. Litig., 387 F.Supp.2d 407, 424 (D.N.J.2005); In re Global Crossing, Ltd. Sec. Litig., 313 F.Supp.2d 189, 196-97 (S.D.N.Y.2003). Plaintiffs do not respond to this argument, and the Court concludes that it should apply the one/three-year limitations period. Accord Zoran, 2007 WL 1650948 * 24. The last proxy statement containing an allegedly false statement was filed on August 8, 2001, Complaint ¶ 61, and the initial complaint was filed on August 23, 2006. Plaintiffs provide no specific argument explaining why the Section 14(a) claim is not time-barred, but they appear to imply that it survives under a continuing wrong theory. However, nothing is pled that would support such a theory, as even the part of the fraudulent scheme pled with respect to that claim apparently ends in 2001, outside the three-year period of repose. See Complaint ¶ 106. Moreover, it is unclear how false statements in financial filings other than proxy statements (such as Form 4's) could revive a claim under Section 14(a), which pertains to proxy statements. Accordingly, the Court concludes that claim two is time-barred as currently pled and should be dismissed with leave to amend.

The Individual Defendants also argue that Plaintiffs fail to allege which Defendants made the false statements, specific facts that support a strong inference of negligence, and specific facts supporting causation. The Court does not reach the Individual Defendants' challenges to the sufficiency of the allegations, but notes that, assuming without

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Westlaw.

deciding that the PSLRA also applies to Section 14(a) claims, see e.g. In re Textainer Partnership Securities Litig., 2005 WL 3801596 (N.D.Cal. March 8, 2005), In re McKesson HBOC, Inc. Sec. Litig., 126 F.Supp.2d 1248, 1267 (N.D.Cal.2000), greater specificity likely would strengthen this claim considerably. [FN12]

> FN12. This Court has held in another action that the PSLRA has foreclosed the application of the "group published pleading" doctrine, which provides that when false or misleading information is conveyed in group published statements, it is reasonable to presume that the statements are the result of the collective actions of the company's officers. In re Nextcard, Inc. Sec. Litig., 2006 WL 708663 *2-3 (N.D.Cal. March 20, 2006). Since it is not clear to what extent the first claim is based upon false statements made by the defendants, see Opposition to Motion One 18, that holding may not be relevant to the first claim. However, it likely will be relevant to the sufficiency of any amended claim under Section 14(a).

c. Claim Three: Violation of Section 20(a)

To state a claim under Section 20(a), a plaintiff must allege (1) a primary violation of federal securities laws; and (2) that the defendant exercised actual power or control over the primary violator. Howard v. Everex Systems, Inc., 228 F.3d 1057, 1065 (9th Cir.2000). As discussed above, Plaintiffs have failed to state a claim for a primary violation of the securities laws. The statute of limitations analysis pertaining to the Section 10(b) claim applies equally to the Section 20(a) claim. See e.g. In re Heritage Bond Litigation, 289 F.Supp.2d at 1148. Accordingly, this claim also will be dismissed with leave to amend.

d. Claims Four to Nine: Violations of Delaware Law

i. Statute of Limitations

*10 The parties agree that a three-year statute of limitations applies to the claims asserted under Delaware law. Plaintiffs argue that the running of this period was tolled because the injury was inherently unknowable, because the defendants engaged in fraudulent concealment, and because Plaintiffs relied on the competence and good faith of

a fiduciary. "[P]laintiffs bear the burden of pleading specific facts to demonstrate that the statute of limitations was, in fact, tolled." In re Dean Witter P'Ship Litig., 1998 WL 442456 *6 (Del.Ch. July 17, 1998). The Complaint alleges that the Individual Defendants colluded with one another to "conceal[ ] the improper backdating of stock options." Complaint ¶ 6(d); see also Complaint ¶¶ 57, 114, 120. It also identifies the signatories to seven Form 10-K filings that disseminated false financial statements. Complaint ¶ 55. Under Delaware law, if a plaintiff "alleges that defendants intentionally falsified public disclosures, defendants may not rely on the statute of limitations as a defense until plaintiff is placed on inquiry notice that such filings were fraudulent." Ryan, 918 A.2d at 360. The Court concludes that Plaintiffs have pled intentional falsification of proxy statements and other public disclosures sufficiently to toll the statue of limitations under the fraudulent concealment doctrine. The Individual Defendants do not argue that the claims would be time-barred even if the statute of limitations was tolled until the Plaintiffs were put on inquiry notice. Accordingly, the Court concludes that the state law claims are not time-barred.

ii. Sufficiency of the Claims

(1) Claims Four and Seven: Accounting and Rescission

The Individual Defendants argue that the fourth and seventh claims in the Complaint should be included as remedies, not as independent claims. Plaintiffs do not respond to this argument in their opposition. The Court agrees with Defendants that Plaintiffs should include accounting and rescission as remedies in any amended complaint.

(2) Claim Five: Breach of Fiduciary Duty

As discussed above, the Complaint contains no factual allegations as to the knowledge of the options recipients and instead makes only conclusory allegations that do not satisfy Rule 12(b)(6). While the PSLRA does not apply to this claim or the other claims under Delaware law, because the options backdating sounds in fraud, see Complaint ¶ 99, Plaintiffs also must plead the circumstances of the fraud with particularity. Fed.R.Civ.P. 9(b); Atlantis Plastic Corp. v.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Westlaw.

Sammons, 558 A.2d 1062, 1066 (Del.Ch.1989) (stating same rule under Delaware law). Plaintiffs fail to do so. Accordingly, this claim will be dismissed with leave to amend.

### (3) Claim Six: Unjust Enrichment

The Individual Defendants argue that the Complaint fails to state a claim for unjust enrichment because Plaintiffs fail to allege that other adequate remedies are not provided by law or that the options recipients were enriched unjustly. Individual Defendants' Motion 25. Plaintiffs do not respond to these arguments in their opposition. Plaintiffs asserted the validity of this claim at oral argument, however, and at least one Delaware case suggests that option backdating will support a claim for unjust enrichment. Ryan, 918 A.2d at 361. Accordingly, while the Court concludes that the unjust enrichment claim should be dismissed, leave to amend will be granted.

### (4) Claim Eight: Insider Selling

**\*11** The Complaint alleges that the Insider Selling Defendants breached their fiduciary duties of loyalty and good faith by selling stock when in possession of material, non-public information. Complaint ¶¶ 115-18. To determine the sufficiency of insider selling allegations, Delaware courts look to whether a complaint contains "particularized facts providing an inference of insider trading." Guttman v. Huang, 823 A.2d 492, 503 (Del.Ch.2003). The Complaint alleges that the Insider Selling Defendants sold a certain amount of shares for a certain amount of "proceeds garnered" within a range of dates. Complaint ¶ 87. For example, it alleges that Montgomery sold 1,163,200 shares between the dates of October 5, 1999 and December 16, 2004, for proceeds garnered of $39,188,259. Id. It does not identify the date or amount of individual transactions; instead, it provides only aggregate totals by defendant. Accordingly, the Complaint fails to allege particularized facts sufficient to state a claim for insider selling. The eighth claim will be dismissed with leave to amend. [FN13]

FN13. Plaintiffs do not respond to the Individual Defendants' argument that the Complaint fails to state a claim for insider selling due to the lack of such specificity and appear to have abandoned this claim. However, in light of the statements made by

counsel for Plaintiffs and the grant of leave to amend the rest of the Complaint, leave to amend is also appropriate as to this claim.

### (5) Claim Nine: Breach of Fiduciary Duty by Options Springloading

The Complaint alleges that the Individual Defendants "breached their fiduciary duties by ... engaging in a scheme to grant spring-loaded stock options to themselves and/or certain other officers and directors of the Company and cover up their misconduct." Complaint ¶ 122. [FN14] The Complaint alleges that Tamblyn, Transgrud, and Aras received springloaded options on May 18, 2004. Complaint ¶ 49. The Complaint also alleges that "the Individual Defendants agreed to and did participate with and/or aided and abetted one another in a deliberate cause of action designed to divert corporate assets to themselves and/or other Company insiders." Complaint ¶ 123. [FN15] However, the Complaint does not allege which defendants authorized the grants, approved the grants, or intended or had knowledge that the grants were springloaded. Nor does the Complaint allege the specific material information that had not been made public previously. As is the case with the fifth claim, because the springloading claim sounds in fraud, see Complaint ¶ 128 (describing stock option grants in the relevant period as obtained by fraud), Plaintiffs must plead the circumstances of the fraud with particularity. Fed.R.Civ.P. 9(b); see also Atlantis Plastics Corp., 558 A.2d at 1066 (stating same rule under Delaware law). Plaintiffs fail to do so here. While it is not clear that Plaintiff will be able to state a claim for breach of fiduciary duty by identifying only one allegedly improper grant date, the law in this area is still developing and the Delaware Chancery has permitted at least one claim for breach of the duty of loyalty and good faith to proceed on a springloading theory. See In re Tyson Foods, 919 A.2d 563, 593 (Del.Ch.2007). Accordingly, the claim will be dismissed with leave to amend.

FN14. The Complaint repeats certain paragraph numbers. This cite refers to the paragraph bearing this number that appears under the heading "Count IX," not that which appears under the heading "Count V."

FN15. In a portion of a recent decision concluding



that plaintiffs had failed to allege sufficient facts to establish demand futility, the Delaware Court of Chancery observed that a "spineless 'and/or' is a telling concession that [plaintiff] cannot cross even the minimal Rule 11 threshold." Order Dismissing Complaint 51, Desimone v. Barrows, Case No. 2210-VCS (Del.Ch., June 7, 2007). While not directly applicable to the instant motion, this reference to Rule 11 bears notice as it reminds Plaintiffs that any amended complaint must be based upon appropriate investigation. While the Court appreciates the efforts of counsel for each side to bring to its attention new cases in this rapidly developing area of law, it concludes that it should defer a detailed discussion of Desimone. Its distinction of In re Tyson Foods, 919 A.2d 563, 593 (Del.Ch.2007) and its discussion of demand futility likely will provide guidance to the Court in subsequent motion practice. However, the Complaint's lack of detail makes a similar analysis premature in the instant action.

2. Motion to Dismiss for Failure to Make Demand

a. Standing Under Rule 23.1

*12 Ditech argues that Plaintiffs lack standing because they allege only that they have held stock in Ditech at all relevant periods. See Complaint ¶¶ 10-12. Ditech cites a number of non-binding cases from other districts in support of this proposition. Because the Court will dismiss the Complaint with leave to amend on other grounds, it need not decide the appropriate level of detail in the pleading of share ownership. Nonetheless, it recommends that Plaintiffs amend this aspect of the Complaint.

b. Disinterestedness and Independence

Ditech argues that Plaintiffs have failed to allege sufficient facts to raise a reasonable doubt as to the disinterestedness and independence of a majority of the present Board. Ditech concedes that Montgomery is not independent or impartial, and Plaintiffs do not argue that Harper cannot act independently or impartially. Accordingly, the question as to the independence and disinterestedness of the Board revolves around four members: Avis, Hasler, Manoliu, and Sugishita. Hasler and Avis were on the Board during the entire period of alleged backdating. Complaint ¶¶ 25-26. Manoliu joined the Board prior to the final alleged

backdated grant. Complaint ¶ 28. Sugishita joined the Board prior to the alleged springloaded grant. Complaint ¶ 29. Ditech points out that the Company's policy that the compensation committee makes option grant decisions would limit the challenged decisions to a subset of the existing Board. Motion Two 22. However, Plaintiffs allege that this policy was not followed in multiple respects and that, while the Compensation Committee backdated the grants, the other members of the Board had knowledge and approved of the backdating. Complaint ¶ 37. Accordingly, assuming that an amended complaint alleges with sufficient particularity that each of these directors approved the option grants or otherwise participated in wrongful conduct, Plaintiffs may be able to plead demand futility on the basis of an insufficient number of disinterested and independent directors. However, the Court concludes that it is premature to make such a determination because Plaintiffs have failed to allege with sufficient particularity that any options backdating or other actionable misconduct occurred at Ditech.

c. The Business Judgment Rule

Ditech argues that the second prong of the Aronson demand futility test, which inquires whether a plaintiff can identify a reason to doubt that the challenged acts were the product of the board's valid exercise of business judgment, does not apply because the "board that would be considering the demand did not make a business decision which is being challenged in the derivative suit." Rales, 634 A.2d at 933-34. As discussed above, the threshold question is the role of the members of the board when the Complaint was filed. "Where at least one half or more of the board in place at the time the complaint was filed approved the underlying challenged transactions, which approval may be imputed to the entire board for purposes of proving demand futility, the Aronson test applies." Ryan, 918 A.2d at 353. As with the disinterestedness and independence inquiry, assuming that Plaintiffs can amend to add sufficient particularity, it appears possible that this aspect of the Aronson test applies to some or all of the surviving claims. However, the Court also concludes that it is premature to determine the presence or absence of a valid business judgment behind the decision to engage in the alleged misconduct.

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Slip Copy
(Cite as: 2007 WL 2070300, *12 (N.D.Cal.))

### IV. ORDER

**\*13** Good cause therefor appearing, IT IS HEREBY ORDERED that the motion to dismiss for failure to state a claim upon which relief can be granted is GRANTED WITH LEAVE TO AMEND and the motion to dismiss for failure to make demand is DEFERRED. Any amended complaint shall be filed within thirty days of the date of this order.

2007 WL 2070300 (N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Westlaw.