# EXHIBIT B

No. 06-484

# In the Supreme Court of the United States

TELLABS, INC., ET AL., PETITIONERS

*v.*

MAKOR ISSUES & RIGHTS, LTD., ET AL.

*ON WRIT OF CERTIORARI*
*TO THE UNITED STATES COURT OF APPEALS*
*FOR THE SEVENTH CIRCUIT*

**BRIEF FOR THE UNITED STATES**
**AS AMICUS CURIAE SUPPORTING PETITIONERS**

BRIAN G. CARTWRIGHT
  *General Counsel*
ANDREW N. VOLLMER
  *Deputy General Counsel*
JACOB H. STILLMAN
  *Solicitor*
LUIS DE LA TORRE
  *Senior Litigation Counsel*
MICHAEL L. POST
  *Senior Counsel*
  *Securities and Exchange*
  *Commission*
  *Washington, D.C. 20549*

PAUL D. CLEMENT
  *Solicitor General*
  *Counsel of Record*
PETER D. KEISLER
  *Assistant Attorney General*
THOMAS G. HUNGAR
  *Deputy Solicitor General*
KANNON K. SHANMUGAM
  *Assistant to the Solicitor*
  *General*
MICHAEL JAY SINGER
JOHN S. KOPPEL
  *Attorneys*
  *Department of Justice*
  *Washington, D.C. 20530-0001*
  *(202) 514-2217*

## QUESTION PRESENTED

Whether, and to what extent, a court must consider or weigh competing inferences in determining whether a securities fraud complaint has "state[d] with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," as required by the Private Securities Litigation Reform Act of 1995.

(I)

## TABLE OF CONTENTS

Page

Interest of the United States . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Summary of argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
Argument:
    In order for a private securities fraud complaint to sat-
    isfy the "strong inference" requirement of the Reform
    Act, there must be a high likelihood that the conclusion
    that the defendant possessed scienter follows from the
    facts alleged with particularity . . . . . . . . . . . . . . . . . . . . . . 10
    A.  Before the enactment of the Reform Act, lower
       courts applied different pleading standards to
       the mental-state element of securities fraud . . . . . 11
    B.  The Reform Act applied a heightened pleading
       standard to the mental-state element of securi-
       ties fraud, and the court of appeals erroneously
       diluted that standard . . . . . . . . . . . . . . . . . . . . . . . . . 15
    C.  In applying the Reform Act's heightened
       pleading standard for the mental-state element
       of securities fraud, a court must consider any
       competing inference or non-culpable explana-
       tions for the defendant's conduct . . . . . . . . . . . . . . . 24
    D.  The Reform Act's heightened pleading stan-
       dard for the mental-state element of securities
       fraud is consistent with the Seventh Amend-
       ment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

(III)

IV

## TABLE OF AUTHORITIES

Cases:                                                          Page

*Abrams* v. *Baker Hughes Inc.*, 292 F.3d 424 (5th Cir.
2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Allen* v. *WestPoint-Pepperell, Inc.,* 945 F.2d 40
(2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Baltimore & Carolina Line, Inc.* v. *Redman*, 295 U.S.
654 (1935) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Beck* v. *Manufacturers Hanover Trust Co.*, 820 F.2d
46 (2d Cir. 1987), cert. denied, 484 U.S. 1005
(1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 19

*Blue Chip Stamps* v. *Manor Drug Stores*, 421 U.S.
723 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Bryant* v. *Avado Brands, Inc.*, 187 F.3d 1271 (11th
Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Burlington Coat Factory Sec. Litig., In re*, 114 F.3d
1410 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Cabletron Sys., Inc., In re*, 311 F.3d 11 (1st Cir. 2002) . . . 20

*Caterpillar Inc.* v. *Williams*, 482 U.S. 386 (1987) . . . . . . . 25

*Conley* v. *Gibson*, 355 U.S. 41 (1957) . . . . . . . . . . . . . . . 11, 12

*Connecticut Nat'l Bank* v. *Fluor Corp.*, 808 F.2d 957
(2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Credit Suisse First Boston Corp, In re,* 431 F.3d 36
(1st Cir.), cert. denied, 498 U.S. 941 (1990) . . . . 20, 21, 25

*Denny* v. *Barber*, 576 F.2d 465 (2d Cir. 1978) . . . . . . . . . . 13

*DiLeo* v. *Ernst & Young*, 901 F.2d 624 (7th Cir.),
cert. denied, 498 U.S. 941 (1990) . . . . . . . . . . . . . . . 13, 15

*Dura Pharmaceuticals* v. *Broudo*, 544 U.S. 336
(2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*Ernst & Ernst* v. *Hochfelder*, 425 U.S. 185 (1976) . . . . 10, 11

V

Cases—Continued:                                          Page

*Fidelity & Deposit Co.* v. *United States*, 187 U.S. 315
(1902) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28, 29

*Florida State Bd. of Admin.* v. *Green Tree Fin. Corp.*,
270 F.3d 645 (8th Cir. 2001) . . . . . . . . . . . . . . . . 12, 13, 15

*Geffon* v. *Micrion Corp.*, 249 F.3d 29 (1st Cir. 2001) . . . . 29

*GlenFed, Inc. Sec. Litig., In re*, 42 F.3d 1541 (9th Cir.
1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Gompper* v. *VISX, Inc.*, 298 F.3d 893 (9th Cir.
2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

*Greebel* v. *FTP Software, Inc.*, 194 F.3d 185 (1st Cir.
1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Greenstone* v. *Cambex Corp.*, 975 F.2d 22 (1st Cir.
1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*Gutierrez* v. *Peters*, 111 F.3d 1364 (7th Cir. 1997) . . . . . . 25

*Helwig* v. *Vencor, Inc.*, 251 F.3d 540 (6th Cir. 2001),
cert. dismissed, 536 U.S. 935 (2002) . . . . . . . . . . . . . . . . 21

*Howard* v. *Everex Sys., Inc.*, 228 F.3d 1057 (9th Cir.
2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Kramer* v. *Time Warner Inc.*, 937 F.2d 767 (2d Cir.
1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Leatherman* v. *Tarrant County Narcotics Intelli-
gence & Coordination Unit*, 507 U.S. 163 (1993) . . . . . 21

*Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Dabit*,
126 S. Ct. 1503 (2006) . . . . . . . . . . . . . . . . . . . 15, 16, 17, 22

*Nathenson* v. *Zonagen Inc.*, 267 F.3d 400 (5th Cir.
2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14, 18

*Neely* v. *Martin K. Eby Constr. Co.*, 386 U.S. 317
(1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

VI

Cases—Continued:                                          Page

*Novak* v. *Kasaks*, 216 F.3d 300 (2d Cir.), cert. denied,
531 U.S. 1012 (2000) ........................ 13, 14

*Ottmann* v. *Hanger Orthopedic Group, Inc.*, 353 F.3d
338 (4th Cir. 2003) ........................... 11, 19

*Pease* v. *Rathbun-Jones Eng'g Co.*, 243 U.S. 273
(1917) ....................................... 28

*Peterson, Ex parte*, 253 U.S. 300 (1920) ........... 27, 28

*Pirraglia* v. *Novell, Inc.*, 339 F.3d 1182 (10th Cir.
2003) ....................................... 25, 26

*Romani* v. *Shearson Lehman Hutton*, 929 F.2d 875
(1st Cir. 1991) ............................... 13

*Ross* v. *A.H. Robins Co.*, 607 F.2d 545 (2d Cir. 1979),
cert. denied, 446 U.S. 946 (1980) ................. 13

*Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970 (9th
Cir. 1999) .................................. 11

*Time Warner Inc. Sec. Litig., In re*, 9 F.3d 259 (2d
Cir. 1003), cert. denied, 511 U.S. 1017 (1994) ....... 13

*Tuchman* v. *DSC Comm'cns Corp.*, 14 F.3d 1061 (5th
Cir. 1994) .................................. 15

*United States* v. *Oakland Cannabis Buyers' Coop.*,
532 U.S. 483 (2001) ........................... 27

*Wexner* v. *First Manhattan Co.*, 902 F.2d 169 (2d Cir.
1990) ....................................... 14

*Wharf (Holdings) Ltd.* v. *United Int'l Holdings, Inc.*,
532 U.S. 588 (2001) ........................... 16

Constitution, statutes, regulation and rules:

U.S. Const. Amend. VII ................. 9, 26, 27, 28, 29
Private Securities Litigation Reform Act of 1995,
Pub. L. No. 104-67, 109 Stat. 737 ................. 11

VII

Statutes, regulation and rules—Continued:      Page

§ 101(b), 109 Stat. 743 ......................... 3

Securities Exchange Act of 1934, 15 U.S.C. 78a
*et seq.*:

§ 10(b), 15 U.S.C. 78j(b) ............... 3, 5, 10, 22

§ 20(a), 15 U.S.C. 78t(a) ...................... 3, 5

§ 20A, 15 U.S.C. 78u-1 ......................... 5

§ 21D(b), 15 U.S.C. 78u-4(b) .................. 17

§ 21D(b)(1), 15 U.S.C. 78u-4(b)(1) ........... 16, 17

§ 21D(b)(2), 15 U.S.C. 78u-4(b)(2) .......... *passim*

§ 21D(b)(3)(B), 15 U.S.C. 78u-4(b)(3)(B) ........ 17

Y2K Act, Pub. L. No. 106-37, § 8(d), 113 Stat. 198
(15 U.S.C. 6607(d)) ............................ 19

17 C.F.R. 240.10b-5 ......................... 3, 5, 10, 22

Fed. R. Civ. P.:

Rule 8 ........................................ 11

Rule 8(a)(2) .................................. 11

Rule 9(b) ............................. 8, 12, 17, 22

Rule 50(b) .................................... 28

Miscellaneous:

*Black's Law Dictionary*:

6th ed. (1990) ................................ 20

8th ed. (2004) ................................ 19

H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess.
(1995) .............................. 16, 17, 18, 19

VIII

Miscellaneous—Continued:                                   Page

James Hawthorne, *Inductive Logic* (last modified
  Oct. 10, 2005), in *Stanford Encyclopedia of Philos-
  ophy* (Edward N. Zalta ed., 2007) <http://
  plato.stanford.edu/entries/logic-inductive> ......... 20

S. Rep. No. 98, 104th Cong., 1st Sess.
  (1995) .................................... 16, 18, 22

*The American Heritage Dictionary of the English
  Language* (4th ed. 2000) ......................... 20

16 *The Oxford English Dictionary* (2d ed. 1989) ....... 20

Charles Alan Wright & Arthur R. Miller, *Federal
  Practice and Procedure*:
    Vol. 5A (3d ed. 2004) ......................... 14
    Vol. 9 (2d ed. 1995) .......................... 28

# In the Supreme Court of the United States

---

No. 06-484

TELLABS, INC., ET AL., PETITIONERS

*v.*

MAKOR ISSUES & RIGHTS, LTD., ET AL.

---

*ON WRIT OF CERTIORARI*
*TO THE UNITED STATES COURT OF APPEALS*
*FOR THE SEVENTH CIRCUIT*

---

**BRIEF FOR THE UNITED STATES**
**AS AMICUS CURIAE SUPPORTING PETITIONERS**

---

### INTEREST OF THE UNITED STATES

The United States, through the Department of Justice (DOJ) and the Securities and Exchange Commission (SEC), administers and enforces the federal securities laws. The issue in this case concerns the interpretation of the heightened pleading requirement for state of mind in private securities fraud actions. Meritorious private actions are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by DOJ and the SEC. At the same time, Congress has recognized a potential for such actions to be abused in ways that impose substantial costs on companies that have fully complied with the applicable laws. The United States has a strong interest in seeing that the principles applied in private actions promote the

(1)

2

purposes of the securities laws, and has previously participated as an amicus curiae in cases involving those principles.

STATEMENT

1. Petitioner Tellabs, Inc., manufactures equipment used in fiber-optic networks; respondents are persons who purchased Tellabs stock between December 11, 2000, and June 19, 2001. Petitioner Richard C. Notebaert served as chief executive officer and president of Tellabs during the relevant period. Respondents allege that, during that period, Notebaert and other Tellabs executives "falsely reassured public investors, in a series of statements * * * , that Tellabs was continuing to enjoy strong demand for its products and earning record revenues." "In truth," respondents further allege, "Tellabs' performance was being adversely affected by the same difficult telecommunications business environment that its competitors had been facing." J.A. 94, 95, 98; Pet. App. 1a, 30a.

As is relevant here, respondents more specifically allege that Notebaert made four categories of false or misleading statements during the relevant period. J.A. 113-144. First, Notebaert allegedly made statements indicating that demand for the TITAN 5500, Tellabs' flagship networking device, was continuing to grow, when demand for that product was in fact flagging. Pet. App. 10a-12a, 48a-50a. Second, Notebaert allegedly made statements indicating that the TITAN 6500, Tellabs' next-generation networking device, was available for delivery, and that demand for that product was strong and growing, when the product was not in fact ready for delivery and demand was weak. *Id.* at 12a-13a, 51a-53a. Third, Notebaert allegedly falsely repre-

3

sented Tellabs' financial results for the fourth quarter of 2000 (and, in connection with those results, sanctioned the practice of "channel stuffing," under which Tellabs flooded its customers with unwanted products). *Id.* at 13a-14a, 55a-57a. Fourth, Notebaert allegedly made a series of overstated revenue projections, when demand for the TITAN 5500 was drying up and production of the TITAN 6500 was behind schedule. *Id.* at 14a-16a, 45a.

Starting in March 2001, Tellabs made progressively more cautious statements about its projected sales. On June 19, 2001, the last day of the relevant period, Tellabs disclosed that demand for the TITAN 5500 had significantly dropped, and considerably lowered its revenue projections for the second quarter of 2001. The following day, the price of Tellabs stock, which had reached a high of $67.125 during the period, dropped to a low of $15.87. Pet. App. 3a-5a, 39a.

2. Respondents filed a class action against petitioners and other Tellabs executives in the United States District Court for the Northern District of Illinois. In their complaint, as amended, respondents alleged, *inter alia*, that defendants had engaged in securities fraud in violation of Section 10(b) of the Securities Exchange Act of 1934 (1934 Act), 15 U.S.C. 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. 240.10b-5, and that the individual defendants were derivatively liable as "controlling persons" under Section 20(a) of the 1934 Act, 15 U.S.C. 78t(a). J.A. 167-171.

Under Section 21D(b)(2) of the 1934 Act, which was added by the Private Securities Litigation Reform Act of 1995 (Reform Act or PSLRA), Pub. L. No. 104-67, § 101(b), 109 Stat. 737, a private securities fraud complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the

4

required state of mind." 15 U.S.C. 78u-4(b)(2). Defendants moved to dismiss the complaint on the ground, *inter alia*, that respondents had failed to meet that heightened pleading standard.

The district court dismissed the complaint without prejudice. Pet. App. 80a-117a. As is relevant here, the court noted that, while respondents had contended that "the Individual Defendants knew facts or recklessly disregarded information at their disposal that contradicted their public statements," they had failed to "individualize their allegations as to each of these Defendants, as they must." *Id.* at 113a. The court further noted that "[c]onclusory allegations of reckless disregard are insufficient to raise a strong inference of scienter" for purposes of the Reform Act. *Ibid.*

3. Respondents filed a second amended complaint in which they included additional allegations concerning defendants' mental state. J.A. 152-160. Defendants moved to dismiss the complaint on the ground, *inter alia*, that respondents had still failed to meet the Reform Act's heightened pleading standard.

The district court again dismissed the complaint, this time with prejudice. Pet. App. 28a-79a. The court held that, as to the four categories of statements discussed above, respondents had sufficiently alleged that the statements were misleading. *Id.* at 45a-46a, 48a-59a. As to those categories of statements, however, the court held that respondents had insufficiently alleged the requisite state of mind. *Id.* at 46a-48a, 59a-74a. At the outset, the court noted that "[respondents] again lump many of their scienter allegations together with broad statements regarding 'Defendants' or the 'Individual Defendants.'" *Id.* at 60a. The court reasoned that

5

"these allegations alone are insufficient to establish scienter under the PSLRA." *Id.* at 61a.

With regard to petitioner Notebaert more specifically, the district court first observed that "[respondents] do not allege that CEO Notebaert sold stock during the Class Period." Pet. App. 62a. The court then reasoned that, while respondents had alleged that Notebaert attended various meetings with Tellabs employees and participated in regular phone calls concerning the status of Tellabs' products, "[t]hese allegations support that Notebaert was active in Tellabs' business as one would expect, but they do not establish scienter." *Id.* at 73a. The court explained that "[respondents] do not disclose any details regarding what Notebaert allegedly learned during these calls or meetings that support an inference of scienter." *Ibid.* The court determined that respondents' allegations concerning "channel stuffing" were also insufficient, because "there is nothing inherently wrong with several of [respondents'] channel stuffing allegations." *Id.* at 74a. Overall, the court noted, "[respondents] rely on group pleading allegations about Notebaert's position in the company and general conclusions concerning his knowledge of the allegedly fraudulent activities without providing particulars to reinforce their general conclusions." *Ibid.*; see *id.* at 48a. "Such allegations," the court concluded, "fail to meet the mandates of the PSLRA." *Id.* at 74a.

4. The court of appeals reversed as to the claims against petitioners, and remanded for further proceedings. Pet. App. 1a-27a.[1] The court of appeals first held

---

[1] The court of appeals also reversed as to claims against other Tellabs executives under Section 20(a) of the 1934 Act, 15 U.S.C. 78t(a), and Section 20A, 15 U.S.C. 78u-1. Those claims are derivative of the Section 10(b) and Rule 10b-5 claims against petitioners.

6

that, with regard to all four of the categories of statements discussed above, respondents had sufficiently alleged that the statements were misleading. *Id.* at 8a-16a. Unlike the district court, however, the court of appeals held that respondents had sufficiently alleged that Notebaert (and thus, by imputation, Tellabs itself) had acted with the requisite state of mind. *Id.* at 16a-26a.

a. As a preliminary matter, the court of appeals recognized that the Reform Act "unequivocally raise[d] the bar for pleading scienter" by requiring plaintiffs to "plead[] sufficient facts to create 'a strong inference' of scienter." Pet. App. 18a. But the court contended that "Congress did not, unfortunately, throw much light on what facts will suffice to create such an inference." *Ibid.* In the court of appeals' view, "the best approach is for courts to examine all of the allegations in the complaint and then to decide whether collectively they establish such an inference." *Id.* at 20a.

The court of appeals then observed that "[a]nother concern, independent from the question of what type of information will support a finding of scienter, is the degree of imagination courts can use in divining whether a complaint creates a 'strong inference.'" Pet. App. 20a. The court of appeals considered, but rejected, a standard under which a court would consider whether the inference of scienter was the "strongest" inference that could be drawn from the alleged facts, on the ground that such a standard "could potentially infringe upon plaintiffs' Seventh Amendment rights." *Ibid.* "Instead of accepting only the most plausible of competing inferences as sufficient at the pleading stage," the court held, "we will allow the complaint to survive if it alleges facts from which, if true, a reasonable person could infer that the defendant acted with the required intent." *Ibid.* By

7

contrast, "[i]f a reasonable person could not draw such an inference from the alleged facts, the defendants are entitled to dismissal," because "the complaint would fail as a matter of law to meet the requirements of [the Reform Act]." *Id.* at 21a.

Applying that standard, and holding that "plaintiffs must create [the required] inference with respect to each individual defendant in multiple defendant cases," Pet. App. 22a, the court of appeals determined that the complaint had sufficiently alleged that Notebaert possessed the requisite state of mind with regard to each of the four categories of alleged misstatements. *Id.* at 21a-26a. As to the statements concerning the TITAN 5500, the court concluded, based on "the significance of the TITAN 5500 and the number of reports suggesting that it was in trouble," that "[respondents] have provided enough for a reasonable person to infer that Notebaert knew that his statements were false." *Id.* at 23a. As to the statements concerning the TITAN 6500, the court reasoned that, "[i]f it is true that the TITAN 6500 was not in fact available during the class period, it is hard to accept that Notebaert's statements were simply honest mistakes." *Id.* at 24a-25a. As to Tellabs' financial results, the court determined that respondents had "allege[d] sufficient facts to suggest that Notebaert was aware of the channel stuffing" and "therefore knew that Tellabs had exaggerated its fourth quarter 2000 revenues." *Id.* at 25a. Finally, as to the revenue projections, the court reasoned that those projections "rest[ed] on the company's statements that its products were doing better than they actually were," and that "the scienter for those alleged misrepresentations serves as sufficient circumstantial evidence of scienter here." *Ibid.*

8

## SUMMARY OF ARGUMENT

Congress enacted the Private Securities Litigation Reform Act of 1995 in order to curtail abusive practices that undermine the beneficial purposes of private securities litigation. As part of that effort, Congress amended the Securities Exchange Act of 1934 to require that a securities fraud complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind." 15 U.S.C. 78u-4(b)(2). The court of appeals erroneously diluted that requirement by holding that a securities fraud plaintiff need only "allege[] facts from which, if true, a reasonable person could infer that the defendant acted with the required intent." Pet. App. 20a.

Before the enactment of the Reform Act, numerous lower courts, applying Rule 9(b) of the Federal Rules of Civil Procedure, held that it was insufficient for a securities fraud plaintiff merely to allege state of mind generally, and some courts held that a securities fraud plaintiff was required to allege facts that gave rise to at least a reasonable inference of the requisite mental state. The Second Circuit, however, went further and held that a securities fraud plaintiff was required to allege facts that gave rise to a *strong* inference of scienter. In enacting the Reform Act, Congress intended to impose a uniform and heightened pleading standard that built upon the Second Circuit's "strong inference" terminology.

In evaluating whether a plaintiff has alleged facts that "giv[e] rise" to a "strong inference" of scienter, a court should determine whether, taking the alleged facts as true, there is a high likelihood that the conclusion that the defendant possessed scienter follows from those facts. While it is impossible to specify with mathemati-

9

cal precision the degree of likelihood required for a "strong inference," both the plain language of the Reform Act and the backdrop against which it was enacted show that a "strong" inference requires something considerably more than merely a "reasonable" inference. The standard applied by the court of appeals in this case does not appear to differ materially from the "reasonable" inference standard that it (and other courts of appeals) had applied *before* the enactment of the Reform Act. Congress plainly rejected that approach in favor of a more demanding standard.

In determining whether an inference of scienter is "strong" for purposes of the Reform Act, a court will necessarily have to consider whether the facts alleged in the complaint leave open a range of non-culpable explanations for the defendant's conduct. Where the same facts simultaneously support *both* the conclusion that the defendant acted with scienter *and* the alternative conclusion that the defendant acted without scienter, the court should consider the relative strength of both inferences, because, where there is a substantial possibility that the defendant acted without scienter, the inference of scienter will not be "strong."

Finally, the Reform Act's heightened pleading requirement is consistent with the Seventh Amendment of the Constitution. Respondents did not claim that the dismissal of their complaint under the Reform Act would violate the Seventh Amendment. Even if they had, that claim would lack merit, because the Reform Act does not improperly assign to a court the jury's role of resolving genuine issues of fact. Because the court of appeals misinterpreted the Reform Act's heightened pleading standard, its decision should be vacated, and the case remanded for application of the correct standard.

10

## ARGUMENT

**IN ORDER FOR A PRIVATE SECURITIES FRAUD COM-PLAINT TO SATISFY THE "STRONG INFERENCE" RE-QUIREMENT OF THE REFORM ACT, THERE MUST BE A HIGH LIKELIHOOD THAT THE CONCLUSION THAT THE DEFENDANT POSSESSED SCIENTER FOLLOWS FROM THE FACTS ALLEGED WITH PARTICULARITY**

Section 10(b) of the Securities Exchange Act of 1934 (1934 Act) makes it unlawful to "use or employ, in con-nection with the purchase or sale of any security * * *, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. 78j(b). The SEC's Rule 10b-5 implements Section 10(b) by declaring it unlawful, "in connection with the pur-chase or sale of any security," to (a) "employ any device, scheme, or artifice to defraud"; (b) "make any untrue statement of a material fact or to omit to state a mate-rial fact necessary in order to make the statements made * * * not misleading"; or (c) "engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." 17 C.F.R. 240.10b-5. Section 10(b) has been construed to afford a right of action to purchasers or sellers of securi-ties who have been injured by its violation. See, *e.g.*, *Dura Pharmaceuticals, Inc.* v. *Broudo*, 544 U.S. 336, 341 (2005).

This Court has held that, in order to establish liabil-ity under Section 10(b) and Rule 10b-5, a private plain-tiff must prove "a mental state embracing intent to de-ceive, manipulate, or defraud." *Ernst & Ernst* v. *Hoch-*

11

*felder*, 425 U.S. 185, 194 n.12 (1976).[2]  Under the Private Securities Litigation Reform Act of 1995 (Reform Act or PSLRA), Pub. L. No. 104-67, 109 Stat. 737, a private securities fraud complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind." 15 U.S.C. 78u-4(b)(2).  The question presented in this case is whether the court of appeals correctly interpreted that heightened pleading standard in concluding that respondents' allegations were sufficient.

###### A. Before The Enactment Of The Reform Act, Lower Courts Applied Different Pleading Standards To The Mental-State Element Of Securities Fraud

1. In an ordinary civil action, the sufficiency of a complaint is governed by Rule 8 of the Federal Rules of Civil Procedure, which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  In order to satisfy that requirement, a complaint must "set forth a claim upon which relief could be granted," *Conley* v. *Gibson*, 355 U.S. 41, 45 (1957), and give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which

---

[2] Although this Court has reserved the question, see *Hochfelder*, 425 U.S. at 194 n.12, lower courts have consistently held that a plaintiff may meet the state-of-mind requirement by showing that the defendant acted either intentionally or recklessly (although they have articulated the degree of recklessness required in somewhat different ways).  See *Ottmann* v. *Hanger Orthopedic Group, Inc.*, 353 F.3d 338, 343 (4th Cir. 2003) (citing cases); compare, *e.g.*, *Nathenson* v. *Zonagen Inc.*, 267 F.3d 400, 408 (5th Cir. 2001) (requiring "severe recklessness," defined as "resembl[ing] a slightly lesser species of intentional misconduct"), with *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 977 (9th Cir. 1999) (requiring "deliberate recklessness," defined as "a form of intentional conduct").

12

it rests," *id.* at 47. That requirement, however, is "not meant to impose a great burden upon a plaintiff." *Dura Pharmaceuticals*, 544 U.S. at 347.

2. Before the enactment of the Reform Act, courts consistently held that the sufficiency of a complaint for securities fraud was governed by the more demanding standard of Rule 9(b), which applies to "all averments of fraud or mistake." Rule 9(b) provides that "the circum-stances constituting fraud * * * shall be stated with particularity," but also provides that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Relying on the latter language, the Ninth Circuit held that a securities fraud plaintiff could allege the requisite state of mind "simply by say-ing that scienter existed," without "alleg[ing] with par-ticularity facts giving rise to an inference of scienter." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1546-1547 (1994) (en banc). The Ninth Circuit explained that "add[ing] new requirements to Rule 9(b)" is "a job for Congress, or for the various legislative, judicial, and advisory bodies involved in the process of amending the Federal Rules." *Id.* at 1546.

Other courts of appeals, however, "uniformly held inadequate a complaint's general averment of the defen-dant's [state of mind]" in securities fraud cases, *Green-stone* v. *Cambex Corp.*, 975 F.2d 22, 25 (1st Cir. 1992) (Breyer, C.J.), and instead "requir[ed] pleading of facts that would indicate scienter," *Florida State Bd. of Admin.* v. *Green Tree Fin. Corp.*, 270 F.3d 645, 655 (8th Cir. 2001). Those courts expressed concern that, unless securities fraud plaintiffs were required to do more than make conclusory allegations of scienter, they could readily allege what Judge Friendly famously called "fraud by hindsight": *i.e.*, by making "a general aver-

13

ment that defendants 'knew' earlier what later turned out badly." *Greenstone*, 975 F.2d at 25 (quoting *Denny v. Barber*, 576 F.2d 465, 470 (2d Cir. 1978)); *DiLeo v. Ernst & Young*, 901 F.2d 624, 627-629 (7th Cir.), cert. denied, 498 U.S. 941 (1990). Plaintiffs would thereby enable themselves to pursue discovery on unfounded claims in the hopes of "extracting undeserved settlements." *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 263 (2d Cir. 1993), cert. denied, 511 U.S. 1017 (1994); see, *e.g.*, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997) (Alito, J.); *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 878 (1st Cir. 1991); *Ross* v. *A.H. Robins Co.*, 607 F.2d 545, 557 (2d Cir. 1979), cert. denied, 446 U.S. 946 (1980); see generally *Blue Chip Stamps* v. *Manor Drug Stores*, 421 U.S. 723, 739 (1975) (noting that "[t]here has been widespread recognition that litigation under Rule 10b-5 presents a danger of vexatiousness different in degree and in kind from that which accompanies litigation in general").

While those courts of appeals uniformly required more than the Ninth Circuit, they articulated their pleading standards differently. The Second Circuit required securities fraud plaintiffs to "specifically plead those [facts] which they assert give rise to a strong inference that the defendants had" the requisite state of mind. *Ross*, 607 F.2d at 558. In subsequent cases, the Second Circuit held that plaintiffs could meet the "strong inference" requirement in one of two ways. First, plaintiffs could "allege facts showing a motive for committing fraud and a clear opportunity for doing so." *Beck* v. *Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir. 1987), cert. denied, 484 U.S. 1005 (1988); see *Novak* v. *Kasaks*, 216 F.3d 300, 311 (2d Cir.) (noting that

14

this standard was met when defendants "benefitted in a concrete and personal way from the purported fraud"), cert. denied, 531 U.S. 1012 (2000). Second, "[w]here motive is not apparent," plaintiffs could "identify[] circumstances indicating conscious behavior by the defendant, although the strength of the circumstantial allegations must be correspondingly greater." *Beck*, 820 F.2d at 50 (citations omitted); see *Novak*, 216 F.3d at 311 (noting that this standard was met when defendants "engaged in deliberately illegal behavior," "knew facts or had access to information suggesting that their public statements were not accurate," or "failed to check information they had a duty to monitor"). Applying that standard, the Second Circuit required the dismissal of numerous securities fraud complaints. See, *e.g.*, *Kramer* v. *Time Warner Inc.*, 937 F.2d 767, 775-776 (1991); *Wexner* v. *First Manhattan Co.*, 902 F.2d 169, 172-173 (1990); *Connecticut Nat'l Bank* v. *Fluor Corp.*, 808 F.2d 957, 961-962 (1987). Accordingly, at the time the Reform Act was enacted, the Second Circuit's standard was regarded as the "most stringent" in the country. See *Nathenson* v. *Zonagen Inc.*, 267 F.3d 400, 407 (5th Cir. 2001).

Other courts of appeals "took an intermediate position" between the Second and Ninth Circuits and held that, while securities fraud plaintiffs must plead specific facts suggestive of a defendant's mental state, those facts need not give rise to a "strong" inference of the requisite state of mind. 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1301.1, at 300-302 (3d ed. 2004) (Wright & Miller). Thus, the First Circuit required plaintiffs to "set[] forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or mislead-

15

ing," *Greenstone*, 975 F.2d at 25; the Fifth Circuit required plaintiffs to "set forth specific facts that support an inference of fraud," *Tuchman* v. *DSC Comm'cns Corp.*, 14 F.3d 1061, 1068 (1994); and the Seventh Circuit required plaintiffs to "afford a basis for believing that plaintiffs could prove scienter," *DiLeo*, 901 F.2d at 629. Although those courts used slightly differing formulations, all of them required plaintiffs to plead facts that supported at least a reasonable inference that the defendant possessed the requisite state of mind.

### B. The Reform Act Applied A Heightened Pleading Standard To The Mental-State Element Of Securities Fraud, And The Court Of Appeals Erroneously Diluted That Standard

In the Reform Act, Congress devised a heightened pleading standard for scienter that was considerably more stringent than the standard that the court below (and other courts of appeals) had applied before the Reform Act's enactment. The court of appeals therefore erred in this case by effectively adhering to its lower, pre-Reform Act standard. Instead, the court of appeals should have determined whether there was a high likelihood that the conclusion that petitioners possessed scienter followed from the particular facts alleged in respondents' complaint.

1. Congress's enactment of the Reform Act was prompted by concerns that the beneficial purposes of private securities litigation were being "undermined by * * * abusive and meritless suits," which "had become rampant in recent years." H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. 31 (1995); *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Dabit*, 126 S. Ct. 1503, 1510-

16

1511 (2006).[3]   In particular, the Reform Act was
prompted by "the routine filing of lawsuits against issu-
ers of securities * * * whenever there is a significant
change in the issuer's stock price, without regard to any
underlying culpability of the issuer, and with only a faint
hope that the discovery process might lead eventually to
some plausible cause of action."  H.R. Conf. Rep. No.
369, *supra*, at 31.  The legislative history noted that "[a]
complaint alleging violations of the Federal securities
laws is easy to craft and can be filed with little or no due
diligence," S. Rep. No. 98, 104th Cong., 1st Sess. 8
(1995), while "[t]he dynamics of private securities litiga-
tion create powerful incentives to settle, causing securi-
ties class actions to have a much higher settlement rate
than other types of class actions," *id.* at 6.  Accordingly,
the Reform Act made a number of substantive and pro-
cedural changes to the securities laws.  See *Dabit*, 126
S. Ct. at 1511 (citing 15 U.S.C. 78u-4).

Of particular relevance here, the Reform Act "im-
poses heightened pleading requirements in [private]
actions brought pursuant to § 10b and Rule 10b-5."
*Dabit*, 126 S. Ct. at 1511; see *Wharf (Holdings) Ltd.* v.
*United Int'l Holdings, Inc.*, 532 U.S. 588, 597 (2001).  In
new Section 21D(b)(1) of the 1934 Act, the Reform Act
provides that, in any private securities action in which
the plaintiff alleges that the defendant made a false or
misleading statement, the complaint must "specify each
statement alleged to have been misleading [and] the

---

[3]  See, *e.g.*, H.R. Conf. Rep. No. 369, *supra*, at 42 (noting that abusive
securities litigation "severely affects the willingness of corporate man-
agers to disclose information to the marketplace"); S. Rep. No. 98,
104th Cong., 1st Sess. 9 (1995) (noting that such litigation "add[s] signif-
icantly to the cost of raising capital and represent[s] a 'litigation tax' on
business").

17

reason or reasons why the statement is misleading." 15 U.S.C. 78u-4(b)(1). Moreover, if the allegation that the statement is false or misleading is made on information and belief, the complaint must "state with particularity all facts on which that belief is formed." *Ibid.* In new Section 21D(b)(2) of the 1934 Act—the provision at issue in this case—the Reform Act further states that, in any private securities action in which the plaintiff must show that the defendant acted with a particular mental state in order to recover money damages, the complaint must, "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind." 15 U.S.C. 78u-4(b)(2).[4]

The legislative history of the Reform Act confirms what is apparent from the terms of Section 21D(b): *viz.*, that Congress, in enacting that provision, intended to adopt "uniform and more stringent pleading require- ments" for private securities fraud actions, H.R. Conf. Rep. No. 369, *supra*, at 41, and thereby "deter or at least quickly dispose of those suits whose nuisance value outweighs their merits," *Dabit*, 126 S. Ct. at 1511. The legislative history expressed concern that the applica- tion of Rule 9(b) to securities fraud actions "ha[d] not prevented abuse of the securities laws by private liti- gants," and noted that "the courts of appeals ha[d] inter- preted Rule 9(b)'s requirement in conflicting ways, cre- ating distinctly different standards among the circuits." H.R. Conf. Rep. No. 369, *supra*, at 41. And it expressed concern that those differences had "creat[ed] substantial uncertainties and opportunities for abuses," in light of

---

[4] The Reform Act also provides for a stay of all discovery during the pendency of a motion to dismiss, subject to limited exceptions. See 15 U.S.C. 78u-4(b)(3)(B).

18

18

the potential for forum shopping in securities fraud actions. S. Rep. No. 98, *supra*, at 4.

It is clear, therefore, that, in adopting Section 21D(b)(2), Congress was reacting to the various court of appeals decisions articulating differing standards for pleading scienter in securities fraud cases (and to the continuing abuses under those standards). By using the "strong inference" standard, Congress rejected both the standard of the Ninth Circuit, which allowed securities fraud plaintiffs simply to state that scienter existed, and the "intermediate" standard of other circuits, which required plaintiffs to plead facts that supported at least a reasonable inference of scienter. Instead, Congress built upon the Second Circuit's "strong inference" terminology and added various other pleading requirements, resulting in a statute that was "intend[ed] to *strengthen* existing pleading requirements." H.R. Conf. Rep. No. 369, *supra*, at 41 (emphasis added). Section 21D(b)(2) was "not intend[ed] to codify the Second Circuit's case law interpreting [its] pleading standard." *Ibid.* At a minimum, however, Section 21D(b)(2) was intended to require dismissal in any case that would have been subject to dismissal under the Second Circuit's preexisting "strong inference" standard. See *Nathenson*, 267 F.3d at 412.[5]

---

[5] The Statement of Managers accompanying the Conference Committee Report on the PSLRA (and endorsed by the members of the Committee) described the "strong inference" test in these terms:

Regarded as the most stringent pleading standard, the Second Circuit requirement is that the plaintiff state facts with particularity, and that these facts, in turn, must give rise to a "strong inference" of the defendant's fraudulent intent. Because the Conference Committee intends to strengthen existing pleading requirements, it does not intend to codify the Second Circuit's case law interpreting this pleading standard.

19

2. As noted above, Section 21D(b)(2) requires that a securities fraud plaintiff "state with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind." 15 U.S.C. 78u-4(b)(2).[6] An "inference" is "[a] conclusion reached by considering other facts and deducing a logical consequence from them." *Black's Law Dictionary* 793 (8th ed. 2004). In articulating the pleading requirement in terms of "inferences," Congress "acknowledg[ed] the role of indirect and circumstantial evidence" in proving a defendant's state of mind. *Greebel* v. *FTP Software, Inc.*, 194 F.3d 185, 195 (1st Cir. 1999).

In Section 21D(b)(2), however, Congress did not merely require a plaintiff to allege particular facts from which an inference of scienter *could* be drawn, but in-

H.R. Conf. Rep. No. 369, *supra*, at 41. The courts of appeals are in disagreement as to whether the Reform Act codified the Second Circuit's explanation of the alternative *methods* by which a securities fraud plaintiff could plead scienter (*i.e.*, *either* by "alleg[ing] facts showing a motive for committing fraud and a clear opportunity for doing so" *or* by "identifying circumstances indicating conscious behavior by the defendant," *Beck*, 820 F.2d at 50), and specifically, whether a plaintiff can plead scienter solely by alleging facts showing a motive and opportunity to defraud. See *Ottmann*, 353 F.3d at 344-346 (citing cases). This case presents no question concerning the proper role of motive-and-opportunity allegations under the PSLRA, because respondents have not alleged that petitioner Notebaert had a motive and opportunity to defraud, at least as that concept was defined by the Second Circuit (*e.g.*, by alleging that Notebaert engaged in unusual trading in Tellabs stock during the relevant period).

[6] The "strong inference" requirement is also included in the Y2K Act, Pub. L. No. 106-37, § 8(d), 113 Stat. 198, which provides that, in any qualifying "Y2K action," "there shall be filed with the complaint, with respect to each element of [the] claim, a statement of the facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. 6607(d).

20

stead required a plaintiff to allege particular facts that "giv[e] rise" to a "strong" inference of scienter.  The strength of an inference, in turn, is measured by the degree of confidence that the conclusion at issue (here, that the defendant acted with scienter) follows from the underlying facts—or, in other words, by the extent to which the underlying facts tend to establish the conclusion at issue.  See, *e.g.*, James Hawthorne, *Inductive Logic* (last modified Oct. 10, 2005), in *Stanford Encyclopedia of Philosophy* (Edward N. Zalta ed., 2007) <http://plato.stanford.edu/entries/logic-inductive>.

A "strong" inference therefore exists when there is a high degree of confidence—*i.e.*, a high likelihood—that the conclusion at issue follows from the underlying facts.  The ordinary meaning of the word "strong" amply confirms that interpretation.  See *Black's Law Dictionary* 1423 (6th ed. 1990) (defining "strong" as "[c]ogent, powerful, forcible, forceful"); *The American Heritage Dictionary of the English Language* 1717 (4th ed. 2000) (defining "strong," with regard to an argument, as "[p]ersuasive, effective, and cogent"); 16 *The Oxford English Dictionary* 949 (2d ed. 1989) (defining "strong," with regard to an argument, evidence, or proof, as "[p]owerful to demonstrate or convince; hard to confute or overthrow").  Accordingly, in evaluating whether a plaintiff has alleged particular facts that "giv[e] rise" to a "strong" inference of scienter, a court should determine whether, taking the alleged facts as true, there is a high likelihood that the conclusion that the defendant possessed scienter follows from those facts.  See, *e.g.*, *In re Credit Suisse First Boston Corp.*, 431 F.3d 36, 48-49 (1st Cir. 2005) (concluding that "a plaintiff's allegations must show a high likelihood of scienter in order to satisfy the PSLRA standard").  It is clear that a "strong"

21

inference requires something considerably more than merely a "reasonable," "possible," "plausible," or "marginal" inference, even if it does not require that the inference be an "ironclad" or "irrefutable" one. See *Credit Suisse*, 431 F.3d at 49, 51; *In re Cabletron Sys., Inc.*, 311 F.3d 11, 38, 40 (1st Cir. 2002); *Helwig* v. *Vencor, Inc.*, 251 F.3d 540, 551, 553 (6th Cir. 2001) (en banc), cert. dismissed, 536 U.S. 935 (2002). While it is impossible to specify with mathematical precision the degree of likelihood required under Section 21D(b)(2), "facts giving rise to a strong inference" of scienter cannot be ambiguous facts; the inference cannot be merely borderline or a close call.

The PSLRA's stringent pleading standard reflects the critical importance of the pleading stage in private securities litigation. Securities fraud plaintiffs enjoyed, and under the PSLRA continue to enjoy, considerable latitude in pleading their complaints. They choose and craft the allegations in the complaint, see, *e.g., Allen* v. *WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991) (noting that, in ruling on a motion to dismiss, a court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken"), and all of the allegations in the complaint must be accepted as true when tested by a motion to dismiss, see, *e.g., Leatherman* v. *Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993).

Congress determined, however, that the preexisting pleading standards were leading to serious abuse in the private securities litigation context, in which "nuisance filings," followed by "vexatious discovery requests" and resulting "extortionate settlements," had become "ram-

22

pant in recent years." *Dabit*, 126 S. Ct. at 1510-1511. Congress concluded that the costs and dynamics of private securities litigation too often caused innocent parties to settle cases for large sums without regard to the merit of the claims—without any "evidence of fraud," S. Rep. No. 98, *supra*, at 4, for which scienter is essential under Section 10(b) and Rule 10b-5. If a securities case is not dismissed at the pleading stage, the practical reality is that the defendant will usually be forced to settle and the case will never reach an adjudication on the merits. Many years of effort by courts to screen cases under Rule 9(b) had not prevented the abuses.

In sum, Congress "structur[ed] the [Reform Act] to permit the dismissal of frivolous cases at the earliest feasible stage of the litigation, thereby reducing the cost to the company, and by derivation, to its shareholders, in defending a baseless action." *Bryant* v. *Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999). Enforcing the "strong inference" requirement by requiring particularized allegations that give rise to a high likelihood of scienter is thus a crucial element of the reforms enacted by Congress.

3. In this case, the court of appeals correctly recognized that the Reform Act "unequivocally raise[d] the bar for pleading scienter" by requiring plaintiffs to "plead[] sufficient facts to create a 'strong inference' of scienter." Pet. App. 18a. The court of appeals erred, however, by failing to give force to Congress' clear intent, as reflected by the text, and instead holding that a securities fraud complaint would satisfy the Reform Act's "strong inference" standard "if it alleges facts from which, if true, a reasonable person could infer that the defendant acted with the required intent." *Id.* at 20a; see *id.* at 20a-21a (noting that a complaint should be

23

dismissed "[i]f a reasonable person could not draw such an inference from the alleged facts"). Although the court of appeals recognized Congress's unequivocal intent to raise the bar, the court of appeals' standard appears to be equivalent to the standard that it (and some other courts of appeals) had applied *before* the enactment of the Reform Act, under which a complaint was sufficient if the plaintiff pleaded facts that supported at least a *reasonable* inference of state of mind.[7] As explained above, however, Congress's insistence on a "strong" inference of scienter plainly requires something considerably more than a "reasonable" inference (or a permissible inference by a reasonable person). The court of appeals erred in asking whether respondents had alleged facts from which an inference of scienter *could* reasonably have been drawn. Instead, the court should have determined whether, as to each false or misleading statement at issue, there was a high likelihood that the conclusion that petitioner Notebaert possessed scienter followed from the alleged facts.

---

[7]  By looking to the inference that a reasonable person "could" draw, the court of appeals seemingly allows as sufficient a *permissible* inference for a reasonable person, which appears to be no different from (or, if anything, less demanding than) a *reasonable* inference. The key is the relative strength of the inference required, not the nature of the person drawing the inference. Presumably, Congress and all of the courts of appeals pre- and post-Reform Act have had in mind the inference that a reasonable, as opposed to unreasonable, person would draw. The Reform Act clearly requires more than a permissible inference; it requires a strong one.

24

### C. In Applying The Reform Act's Heightened Pleading Standard For The Mental-State Element Of Securities Fraud, A Court Must Consider Any Competing Inference Or Non-Culpable Explanations For The Defendant's Conduct

In determining whether there is a high likelihood that the conclusion that the defendant possessed the requisite state of mind follows from the facts alleged in the complaint, a court must consider other possible explanations for the defendant's conduct—or any competing inference that can be drawn from the same facts. The probabilistic inquiry required by the "strong inference" test demands as much.

1. By its terms, Section 21D(b)(2) requires a court to determine whether the plaintiff has alleged particularized facts giving rise to a strong inference that the defendant acted with the requisite state of mind. To make that determination, a court will necessarily have to consider whether the facts leave open non-culpable explanations for the defendant's conduct, even where those facts do not affirmatively buttress the conclusion that the defendant acted without scienter. Where, for example, a plaintiff alleges, with regard to scienter, only that a corporate executive sold a higher (but not dramatically higher) number of shares than usual during the relevant period, a court should consider the high probability that there are innocent explanations for the executive's increased trading activity—a consideration that forecloses the conclusion that the facts give rise to a strong inference that the executive acted with scienter.[8]

---

[8] By contrast, a sharp and atypical spike in trading activity could, depending on the circumstances, provide a strong basis for inferring scienter, because innocent explanations would be less probable.

25

Many of the leading cases apply precisely that mode of analysis. See, *e.g.*, *Credit Suisse*, 431 F.3d at 51 (noting that a court is not required to "turn a blind eye to the universe of possible conclusions stemming from a given fact or set of facts" where a complaint "leaves * * * a myriad of other possibilities wide open"); *Pirraglia* v. *Novell, Inc.*, 339 F.3d 1182, 1187 (10th Cir. 2003) (contending that "[w]hether an inference is a strong one cannot be decided in a vacuum").

2. In some cases, a court may determine that *some* facts in the complaint support the conclusion that the defendant acted with scienter, whereas *other* facts actually support the conclusion that the defendant acted without scienter. As the court of appeals in this case seemingly recognized (Pet. App. 20a), however, Section 21D(b)(2) requires a court to consider whether *all* of the facts alleged in the complaint, taken together, give rise to a strong inference of the requisite state of mind. See *Gompper* v. *VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002); *Abrams* v. *Baker Hughes Inc.*, 292 F.3d 424, 431 (5th Cir. 2002). Such an approach is consistent with the broader principle that the plaintiff is the master of his complaint, see, *e.g.*, *Caterpillar Inc.* v. *Williams*, 482 U.S. 386, 392 (1987)—and that a plaintiff may plead himself out of court by including allegations that undermine his claim. See, *e.g.*, *Gutierrez* v. *Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997). When the facts alleged in the complaint give rise to a substantial possibility that the defendant acted without scienter, the necessary "strong inference" of scienter will be lacking, because there will be an insufficient likelihood that the conclusion that the defendant acted with scienter follows from the facts alleged in the complaint as a whole.

26

3. In other cases, a court may determine that the *same* facts *simultaneously* provide affirmative support both for the conclusion that the defendant acted with scienter and for the alternative conclusion that the defendant acted without scienter. The existence of a plausible competing inference, however, "quite clearly impedes the plaintiffs' progress toward building the requisite strong inference of scienter." *Gompper*, 298 F.3d at 897. And where the facts as alleged give rise to a substantial possibility that the defendant acted without scienter, the inference of scienter cannot be said to be "strong" in the relevant sense (*i.e.*, "powerful," "forceful," or "hard to confute"). In such a case, the presence of a substantial contrary inference would foreclose the conclusion that scienter was highly likely on the basis of the facts alleged. Plainly, therefore, if the alleged facts give rise to "two seemingly equally strong [competing] inferences," Pet. App. 20a (quoting *Pirraglia*, 339 F.3d at 1188), a court must conclude that the inference of scienter is not itself "strong." See, *e.g.*, *Gompper*, 298 F.3d at 897.

### D. The Reform Act's Heightened Pleading Standard For The Mental-State Element Of Securities Fraud Is Consistent With The Seventh Amendment

Finally, requiring a plaintiff to allege facts that "giv[e] rise" to a "strong" inference of scienter does not raise any valid concerns under the Seventh Amendment of the Constitution.

1. In diluting Section 21D(b)(2)'s "strong inference" requirement, the court of appeals expressed concern that a more stringent standard would potentially violate the Seventh Amendment. See Pet. App. 20a. But the text of Section 21D(b)(2) quite clearly commands a

27

heightened pleading standard, and the canon of constitutional avoidance "has no application in the absence of statutory ambiguity." *United States* v. *Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 494 (2001).

2. Respondents did not claim that dismissal of *their* complaint under Section 21D(b)(2) would violate the Seventh Amendment. Even if they had, that claim would lack merit.

This Court has explained that the purpose of the Seventh Amendment was "to preserve the substance of the common-law right of trial by jury, as distinguished from mere matters of form or procedure" and "particularly to retain the common-law distinction between the province of the court and that of the jury, whereby * * * issues of law are to be resolved by the court and issues of fact are to be determined by the jury." *Baltimore & Carolina Line, Inc.* v. *Redman*, 295 U.S. 654, 657 (1935). This Court has never held that a pleading requirement violates the Seventh Amendment. To the contrary, the Court has upheld against Seventh Amendment challenge a requirement that the defendant in a contract action file an affidavit "stating * * * , in precise and distinct terms, the grounds of his defense, which must be such as would, if true, be sufficient to defeat the plaintiff's claim in whole or in part." *Fidelity & Deposit Co.* v. *United States*, 187 U.S. 315, 318 (1902); see *Ex parte Peterson*, 253 U.S. 300, 310 (1920) (Brandeis, J.) (concluding that "[i]t does not infringe the constitutional right to a trial by jury, to require, with a view to formulating the issues, an oath by each party to the facts relied upon"). The Court rejected the argument that "the rule deprived the [defendant] of the *right* to trial by jury." *Fidelity & Deposit Co.*, 187 U.S. at 320. Instead, the Court reasoned that the rule merely "prescribe[d] the means of

28

making an issue" and that, when "[t]he issue [was] made
as prescribed, the right of trial by jury accrues." *Ibid.*
Moreover, in approving the appointment of an auditor to
streamline the issues for trial, the Court rejected a Sev-
enth Amendment challenge by characterizing the audi-
tor's role as being "the same as that of pleading." *Peter-
son*, 253 U.S. at 310. The Court explained that "[n]o one
is entitled in a civil case to trial by jury unless and ex-
cept so far as there are issues of fact to be determined."
*Ibid.*

    Like the requirement at issue in *Fidelity & Deposit
Co.*, the heightened pleading requirement in Section
21D(b)(2) merely imposes a threshold legal hurdle that
a plaintiff must surmount in order to state a claim (and
thereby obtain discovery); it does not trench upon the
jury's prerogative to resolve disputed issues of fact. Cf.
*Neely* v. *Martin K. Eby Constr. Co.*, 386 U.S. 317, 321
(1967) (stating that it is "settled" that Rule 50(b), which
governs judgment as a matter of law after trial, does not
violate the Seventh Amendment); *Pease* v. *Rathbun-
Jones Eng'g Co.*, 243 U.S. 273, 278 (1917) (concluding
that "[t]he constitutional right of trial by jury presents
no obstacle" to granting summary judgment).

    It is true that, in an ordinary case, when a plaintiff
presents sufficient evidence at trial that would support
at least a reasonable inference in the plaintiff's favor as
to each element of the claim, the plaintiff would be enti-
tled to reach the jury on that claim, and the defendant
would not be entitled to judgment on that claim as a
matter of law. See 9A Wright & Miller § 2528, at 288-
289 & nn.2-3 (2d ed. 1995) (citing cases).[9] The practical

---

    [9] There appears to be a circuit conflict on the question whether the
Reform Act alters not just the pleading standard but the substantive

29

effect of Section 21D(b)(2) is to prevent a plaintiff who alleges facts that give rise only to a reasonable inference of scienter from proceeding to discovery, even if the plaintiff would ultimately be able to prove those facts at trial. But all heightened pleading standards have the effect of preventing a plaintiff from getting discovery on a claim that might have gone to the jury, had discovery occurred and yielded substantial evidence. Heightened pleading requirements have nevertheless not been thought to raise serious Seventh Amendment problems. The Reform Act's heightened pleading requirement for scienter likewise raises no such problems, because the jury retains the power to resolve any disputed factual issue once the plaintiff has satisfied the congressionally "prescribe[d] * * * means of making an issue." *Fidelity & Deposit Co.*, 187 U.S. at 320.

---

proof standard for scienter as well. Compare *Geffon* v. *Micrion Corp.*, 249 F.3d 29, 36 (1st Cir. 2001) (stating that "we agree with the district court that the judicial reasoning applicable to imposing heightened pleading requirements is at least as forceful, if not more so, with regard to proof requirements that a trial judge must consider in deciding whether to allow a motion for summary judgment") (internal quotation marks and brackets omitted), with *Howard* v. *Everex Sys., Inc.*, 228 F.3d 1057, 1064 (9th Cir. 2000) (stating that, under the Reform Act, "the standard of summary judgment or [judgment as a matter of law] remains unaltered"). To the extent that the Reform Act altered the proof standard, it would eliminate any Seventh Amendment concerns, no matter what the standard at the pleading stage. For the reasons outlined in the text, however, Section 21D(b)(2)'s heightened pleading requirement does not implicate any such concerns, and the Court therefore need not address the question at this time.

30

## CONCLUSION

The judgment of the court of appeals should be vacated, and the case remanded for further proceedings.

Respectfully submitted.

BRIAN G. CARTWRIGHT
*General Counsel*

ANDREW N. VOLLMER
*Deputy General Counsel*

JACOB H. STILLMAN
*Solicitor*

LUIS DE LA TORRE
*Senior Litigation Counsel*

MICHAEL L. POST
*Senior Counsel*
*Securities and Exchange*
*Commission*

PAUL D. CLEMENT
*Solicitor General*

PETER D. KEISLER
*Assistant Attorney General*

THOMAS G. HUNGAR
*Deputy Solicitor General*

KANNON K. SHANMUGAM
*Assistant to the Solicitor*
*General*

MICHAEL JAY SINGER
JOHN S. KOPPEL
*Attorneys*

FEBRUARY 2007