# EXHIBIT C

Suggested agenda for telephonic BOD meeting - Message    http://209.24.203.194/MBX/SUSAN/ID=36E1A48D/Folder:Inbox.mercury/MSG:9



**Date Sent:** Tuesday, March 16, 1999 3:08 PM

**From:** Sharlene_Abrams@merc-int.com
<SMTP:Sharlene_Abrams@merc-int.com>

**To:** "Aryeh Finegold.Mercury IL"@merc-int.com <SMTP:"Aryeh Finegold.Merc

**Cc:** sskaer@gcounsel.com <SMTP:sskaer@gcounsel.com>

**Subject:** Suggested agenda for telephonic BOD meeting

**Status:** ☐ Urgent ☐ New

Sharlene Abrams@MERCURY_US
03/16/99 03:08 PM

The following is the proposed agenda for the telephonic BOD meeting scheduled on Thursday, March 25 at 8 am California time (6 pm in Israel). Some of these items will need to be included in the proxy for shareholder vote. I will indicate which items need to be on the proxy vs. those which the BOD just need to approve. I will get a telephone number for everyone to call in to from wherever they are and send this to you by Friday. Please forward this to outside directors or let me know if you want me to. Also add anything else you want to the agenda.

1. a. Approval of amendments to our shareholder rights plan (poison pill) - the current price in the poison pill adjusted for the split is only $35 per share (price was chosen when our stock price was about $6 split adjusted in June 1996). H&Q did a presentation for me and Susan Skaer on Friday, March 5 using several different methodologies (I have Fedex'ed the book to Israel- two copies) and recommends we update the price to $220-$225 per share in order to maintain the Pill as an effective anti-takeover defense.   $220

b. In addition, as we discussed at the last BOD meeting, we need to remove the "deadhand" provision from our plan.

c. Also, the trigger for the pill is set at hostile ownership of 20% of our stock. At the time the pill was implemented Putnam owned just under 20%, and H&Q still owned significant amounts so we didn't want to set the trigger too low. Now, our largest holder is Pilgrim Baxter with about 10%, so Sue recommends lowering the trigger to 15%, which is common in the industry at our stage of maturity.   @15%

CONFIDENTIAL TREATMENT REQUESTED BY MERCURY                                MEC 0350695

These three items are just amendments to the plan and only require BOD approval, not shareholder approval. We cannot act, however until approval is obtained.

2.a. We would like to make certain amendments to the 1999 stock option plan. The first would be to add wording to the plan that states that "options will only be granted at the fair market value of the stock price on the date of grant". This is already our policy since any discount (except for ESPP) will create a compensation charge. However, during the proxy solicitation last year, several shareholders noted that we could grant shares at less than fair market value and were therefore opposed to the plan.

approved

b. Second, a new accounting rule which will probably pass when the FASB finishes their "repairs" to APB 25 says that any stock option repricing (or cancellation and regrant of options at a lower price) automatically changes the character of those options from a "fixed" plan to a "variable" plan. In English, that means, that compensation charges would have to be recorded for those options over the vesting period based on the difference between the market price over time in the future and the option price. (Yes, they plan to kill the ability to reprice for free - ) In any case, ISS will more likely recommend "yes" votes for us on proxy items relating to options if they see this in our plan anyway - that is what they told us last year. Again, this only needs BOD approval, not shareholder approval.

Only management requires SH approval

3. We need BOD approval on the items that will be included in the proxy-

a. Slate of directors up for re-election ✓
b. Re-appointment of PricewaterhouseCoopers as our auditors ✓
c. Increase in number of authorized shares - between outstanding shares, options, and additional statutory requirement, we have used up about 48-50 million. We have 60 million authorized. If we wanted to do any stock acquisitions or split again, we may not have enough. We recommend increasing the number to about [illegible] million.

120 million

d. Request additional shares for the 1999 stock option plan. This new plan is populated with only 400K shares (post split). We could request just under a 5% increase (which would add about 2.1 million shares- which would give us 2.5 million in total and last for a couple of years). This amount would qualify as a routine item and we could get the broker non-votes. We could try for an evergreen, but since anything over 5% cumulatively (not annually) will not qualify as routine, we could have a problem with ISS. This year, they have a new program, which we are investigating, where they are working with companies to understand the dynamics of their market and reasoning for the high level of options. They may be persuaded to give you "yes" recommendations now. By the way, did I mention, this is a new profit center for them and there are some fees involved? Probably $30-50K- no big deal if we want to do it and IF they guaranty a "yes").

$8,000 to ISS fee
go for evergreen
default back on 4.99% increase

4. Amendments to outside directors plan which also need shareholder approval-

Suggested agenda for telephonic BOD meeting - Message          http://209.24.203.194/MBX/SUSAN/ID=36E1A48D/Folder:Inbox.mercury/MSG:9

a. First - the directors plan states that in a split, their current options split, the price on current options split and their remaining pool splits. It does not state that their future grants will split. Sue said that this is typical in most directors plans which are formula plans and must be approved by shareholders. Therefore, if it was anyone's understanding or belief that their future grants would double, this must be an amendment to the plan and approved by the shareholders.

b. As part of the FASB's initiative on repairing rules surrounding stock options, they have focused on eliminating stock option grants to directors from the exemption of recording compensation expense. Yes, if this passes and it probably will later this year, we would have to record compensation on options granted to directors over the vesting period based on the difference between market prices and the exercise prices of their options. Nothing would be grandfathered. However, there is a way to restructure the plan so that nothing will change in substance, but the form of the plan will change. In a nutshell, each outstanding and new grant would have to vest immediately (or just before the new rule takes effect). Then, the directors would need to exercise the options within thirty days (we would need to in effect loan them the money - no cash actually leaves the company) and they would enter into restricted stock and escrow agreements, which would not allow them to sell except at specified dates, which would correspond to the normal vesting period. It achieves the same goal but if there are any tax consequences to them under Israeli law, we need to consider that too. Anyway, this change is an amendment to the plan and needs shareholder approval. Per Sue and Alyssa Baker, the benefits lawyer and author of the plan, this is what companies are doing to avoid the compensation charge.

[handwritten margin note: Summary of Draft]

5. The last thing we will need to cover is an update of the Director and Officer questionnaires which I have sent to Naomi with the biographies of the directors for updating or revising. They can ask any questions during the meeting.

A rep from H&Q on standby to answer any questions on the poison pill update and of course Sue will also be there for the meeting.

---

Powered by WebMail v3.20 -- © Copyright 1995-98 by Infinite Technologies

[handwritten: Next mtg - Wed, May 5th in Sunnyvale]

CONFIDENTIAL TREATMENT REQUESTED BY MERCURY                              MEC 0350697