1   Jeffrey S. Facter (State Bar No. 123817)
    Patrick D. Robbins (State Bar No. 152288)
2   Emily V. Griffen (State Bar No. 209162)
    SHEARMAN & STERLING LLP
3   525 Market Street, Suite 1500
    San Francisco, CA 94105-2723
4   Telephone: (415) 616-1100
    Facsimile: (415) 616-1199
5   Email:    jfacter@shearman.com
              probbins@shearman.com
6             egriffen@shearman.com

7   Attorneys for Defendant Douglas Smith

8

9                   UNITED STATES DISTRICT COURT

10                NORTHERN DISTRICT OF CALIFORNIA

11                        SAN JOSE DIVISION

12  SECURITIES AND EXCHANGE COMMISSION,        Case No.: 5:07-C02822-JF

13                      Plaintiff,              Assigned to Hon. Jeremy Fogel

14           v.                                 DEFENDANT DOUGLAS SMITH'S
                                                NOTICE OF MOTION AND MOTION
15  MERCURY INTERACTIVE, LLC (F/K/A/            TO DISMISS COMPLAINT PURSUANT
    MERCURY INTERACTIVE, INC.), AMNON          TO F.R.C.P. 12(B)(6) AND 9(B) OR, IN
16  LANDAN, SHARLENE ABRAMS, DOUGLAS           THE ALTERNATIVE, TO STRIKE
    SMITH and SUSAN SKAER,                      PURSUANT TO F.R.C.P. 12(F);
17                                              MEMORANDUM OF POINTS AND
                        Defendants.             AUTHORITIES IN SUPPORT THEREOF
18
                                                Date:       March 14, 2008
19                                              Time:       9:00 a.m.
                                                Judge:      Honorable Jeremy Fogel
20                                              Courtroom:  No. 3, 5th Floor

21

22

23

24

25

26

27

28

─────────────────────────────────────────────────────────────────
DEFENDANT DOUGLAS SMITH'S                      CASE NO. 5:07-C02822-JF
MOT. TO DISMISS/STRIKE COMPLAINT
                                                                      268846

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION TO DISMISS OR, IN THE
ALTERNATIVE, TO STRIKE COMPLAINT ................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

INTRODUCTION ............................................................................................................... 1

STATEMENT OF FACTS ALLEGED IN THE COMPLAINT ........................................ 3

ARGUMENT ...................................................................................................................... 4

I.   The Claim for Forfeiture of Profits Pursuant to Section 304 of the Sarbanes-
     Oxley Act is Not Actionable Or, In the Alternative, Must Be Stricken ................... 4

     A.   Section 304 Does Not Apply Retroactively to the Misconduct Alleged
          Here .................................................................................................................. 4

     B.   Even if Section 304 Did Apply Retroactively, None of the Filings
          Occurring Within the Applicable Statute of Limitations Qualify to
          Trigger Forfeiture of Profits ........................................................................... 7

II.  The Sixth Claim for Relief for Filing False Certifications Pursuant to Sarbanes-
     Oxley Act Section 302 and Rule 13a-4 Promulgated Thereunder Must Be
     Dismissed or Stricken as to Certifications Outside the Statute of Limitations ........ 9

III. The Entire Complaint Engages in Shotgun Pleading, and Thus Violates
     Rule 9(b)'s Particularity Requirement for Pleadings Grounded in Fraud .............. 10

     A.   Rule 9(b)'s Heightened Pleading Standard Requires that Pleadings
          Grounded in Fraud be Pled with Particularity ............................................... 10

     B.   The Complaint in its Entirety Fails to Plead Fraud with Particularity
          Because it Engages in Shotgun Pleading, Failing to Specify What Conduct
          Is Alleged to Be the Basis for Which Claim for Relief .................................. 11

     C.   The Complaint Fails to Plead Fraud with Particularity Because It Fails
          to Specify, With Respect to Mr. Smith, How and To What Extent Each
          Alleged Financial Statement Was Materially False or Misleading ................. 13

IV.  The First and Second Claims For Relief Based on "Scheme" Liability, and
     the Third, Seventh and Eighth Claims for Relief for Violations of Section 13(b)
     of the Exchange Act, Must Be Dismissed as Time-Barred by
     28 U.S.C. § 2462 ..................................................................................................... 15

     A.   Claims Based Upon Conduct Occurring Before May 31, 2002 Are
          Time-Barred .................................................................................................... 15

     B.   Pursuant to the Concurrent Remedy Rule, Both Legal and Equitable
          Claims Are Barred by Section 2462 ............................................................... 17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

V.    The Fifth, Seventh and Eighth Claims for Relief for Aiding and Abetting
      Mercury's Violations Must Be Dismissed for Failure to Plead with
      Particularity What Conduct by Smith Constituted Aiding and Abetting
      Each Particular Alleged Violation by Mercury .......................................................................... 19

VI.   The Ninth Claim for Relief for Violation of Section 16(a) of the Exchange
      Act and Rule 16a-3 Must be Dismissed for Failure to Plead with
      Particularity Mr. Smith's Failure to File Any Specific Form.................................................... 20

VII.  The Tenth Claim for Relief for Violation of Section 14(a) of the Exchange
      Act and Rule 14a-9 Must be Dismissed for Failure to Plead with
      Particularity Any Specific Proxy Statement, or Any Particular Statement
      Made Therein That Was Materially False or Misleading.......................................................... 22

      A.    The Particularity Requirement of Rule 9(b) Applies to the Tenth Claim
            for Relief............................................................................................................................. 22

      B.    Plaintiff Fails to Allege Any Materially Misleading Misrepresentation or
            Omission By Failing to Identify Any Specific Proxy Solicitations ................................ 23

      C.    Plaintiff Has Not Pled Any Facts to Show Whether or to What Extent
            Mr. Smith Participated in Soliciting Proxies.................................................................... 24

CONCLUSION ......................................................................................................................... 25

1

TABLE OF AUTHORITIES

2

Page

Cases

3

Bell Atlantic Corp. v. Twombly, 550 U.S. ____, 127 S. Ct. 1955 (2007) .......................... 12-13

4

Bruns v. Ledbetter, 583 F. Supp. 1050 (S.D. Cal. 1984) ..................................................... 11

5

Bureerong v. Uvawas, 922 F. Supp. 1450 (C.D. Cal. 1996) .................................................. 5

6

Cal. Pub. Employees' Ret. Sys. v. Chubb Corp., No. Civ. 00-4285 (GEB),
   2002 WL 33934282 (D.N.J. 2002) .................................................................... 22, 23

7

8

Chabra v. S. Monterey County Mem'l Hosp., Civ. No. C 94-20335 EAI,
   1994 WL 564566 (N.D. Cal. Oct. 3, 1994) .......................................................... 11-12

9

Clayton v. Landsing Pac. Fund, Inc., No. C 01-03110 WHA,
   2002 WL 1058247 (N.D. Cal. May 9, 2002), aff'd mem.,

10

   56 Fed. App'x 379 (9th Cir. 2003) ........................................................................ 17

11

Desaigoudar v. Meyercord, 223 F.3d 1020 (9th Cir. 2000) ............................................. 22, 23

12

Durning v. Citibank, Int'l, 990 F.2d 1133 (9th Cir. 1993) .................................................. 17

13

Eco Mfg. LLC v. Honeywell Int'l, 357 F.3d 649 (7th Cir. 2003) ........................................... 6

14

Falkowski v. Imation Corp., 309 F.3d 1123 (9th Cir. 2002) ................................................. 17

15

Fed. Election Comm'n v. Williams, 104 F.3d 237 (9th Cir. 1996) ......................................... 18

16

Foss v. Bear, Stearns & Co., 394 F.3d 540 (7th Cir. 2005) ................................................... 6

17

Humetrix, Inc., v. Gemplus S.C.A., 268 F.3d 910 (9th Cir. 2001) .......................................... 6

18

In re ADC Telecomms., Inc. Sec. Litig., 409 F.3d 974 (8th Cir. 2005) ................................... 6

19

In re AFC Enters., Inc., Derivative Litig., 224 F.R.D. 515 (N.D. Ga. 2004) ........................... 7

20

In re DVI Inc. Sec. Litig., No. Civ. A. 03-5336, 2005 WL 1307959
   (E.D. Pa. May 31, 2005) ........................................................................................ 17

21

22

In re Daou Sys., Inc. Sec. Litig., 411 F.3d 1006 (9th Cir. 2005) ...................................... 10, 13

23

In re Enron Corp. Sec., Derivative & ERISA Litig., 310 F. Supp. 2d 819
   (S.D. Tex. 2004) .................................................................................................... 17

24

In re Enter. Mortgage Acceptance Co. Sec. Litig., 391 F.3d 401
   (2d Cir. 2004) .......................................................................................................... 6

25

In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541 (9th Cir. 1994) .............................................. 11

26

In re Goodyear Tire & Rubber Co. Derivative Litig., No. 5:03CV2180,
   2007 WL 43557 (N.D. Ohio Jan. 5, 2007) ............................................................... 7

27

28

In re Stac Elecs. Sec. Litig., 89 F.3d 1399 (9th Cir. 1996) ................................. 10, 14, 23

---

DEFENDANT DOUGLAS SMITH'S
MOT. TO DISMISS/STRIKE COMPLAINT

iii

CASE NO. 5:07-C02822-JF

268846

1 | _Johnson v. SEC_, 87 F.3d 484 (D.C. Cir. 1996) ................................................ 18-19

2 | _Jones v. R.R. Donnelley & Sons Co._, 541 U.S. 369 (2004)............................... 8

3 | _Kaplan v. Rose_, 49 F.3d 1363 (9th Cir. 1994) ................................................ 11

4 | _Landgraf v. USI Film Prods._, 511 U.S. 244 (1994) ........................................ 6

5 | _Levald, Inc. v. City of Palm Desert_, 998 F.2d 680 (9th Cir. 1993).................... 18

6 | _Lieberman v. Cambridge Partners, L.L.C._, 432 F.3d 482 (3d Cir. 2005) .......... 6

7 | _Oca v. Skylawn Mem'l Park_, No. C 92 1190 THE, 1993 WL 255438
      (N.D. Cal. June 25, 1993)........................................................................... 18

8 | _Ponce v. SEC_, 345 F.3d 722 (9th Cir. 2003)....................................................... 19

9 | _Rodriguez v. Gen. Motors Corp._, 27 F.3d 396 (9th Cir. 1994)........................... 6

10 | _Rosenbaum v. City & County of San Francisco_, No. C96-3409 MMC,
       2005 WL 1170480 (N.D. Cal. Jan. 12, 2005) ........................................... 18

11

12 | _SEC v. Fehn_, 97 F.3d 1276 (9th Cir. 1996) ....................................................... 19

13 | _SEC v. Jones_, 476 F. Supp. 2d 374 (S.D.N.Y. 2007)........................................ 18

14 | _SEC v. Shattuck Denn Mining Corp._, 297 F. Supp. 470 (S.D.N.Y. 1968) ........ 21

15 | _SEC v. Solow_, No. 06-81041-CIV, 2007 WL 917269 (S.D. Fl. Mar. 23, 2007)............... 12

16 | _SEC v. World-Wide Coin Invs., Ltd._, 567 F. Supp. 724 (D.C. Ga. 1983)........... 21

17 | _SEC v. Yuen_, 221 F.R.D. 631 (C.D. Cal. 2004) ............................................... 14

18 | _Schwartz v. Celestial Seasonings, Inc._, 124 F.3d 1246 (10th Cir. 1997)........... 12

19 | _Segal v. Gordon_, 467 F.2d 602 (2d Cir. 1972)................................................... 11

20 | _Seinfeld v. Bartz_, 322 F.3d 693 (9th Cir. 2003)............................................... 24

21 | _Semegen v. Weidner_, 780 F.2d 727 (9th Cir. 1985) ........................................ 11, 14

22 | _Textainer Equip. Mgmt. (U.S.) Ltd. v. TRS Inc._, No. C 07-01519 WHA,
       2007 WL 1795695 (N.D. Cal. June 20, 2007) ......................................... 11

23 | _Tracinda Corp. v. Daimler-Chrysler AG_, 364 F. Supp. 2d 362 (D. Del. 2005)................. 24

24 | _TSC Indus. v Northway, Inc._, 426 U.S. 438 (1976)........................................ 22, 23

25 | _Vess v. Ciba-Geigy Corp. USA_, 317 F.3d 1097 (9th Cir. 2003) ........................ 10, 11, 20

26 | _Wagner v. First Horizon Pharm. Corp._, 464 F.3d 1273 (11th Cir. 2006) ......... 11, 12

27 | _Weiner v. Quaker Oats Co._, 129 F.3d 310 (3d Cir. 1997) ............................... 23

28

DEFENDANT DOUGLAS SMITH'S                iv                CASE NO. 5:07-C02822-JF
MOT. TO DISMISS/STRIKE COMPLAINT                                                268846

1  Wilkerson v. Butler, 229 F.R.D. 166 (E.D. Cal. 2005) ........................................................ 5

2  Wool v. Tandem Computers, Inc., 818 F.2d 1433 (9th Cir. 1987) ..................................... 10

3                                                    Statutes

4  15 U.S.C. § 78p(a) ........................................................................................................... 20

5  15 U.S.C. § 7243 ....................................................................................................... passim

6  28 U.S.C. § 1658 ....................................................................................................... passim

7  28 U.S.C. § 2462 ....................................................................................................... passim

8

9                                                      Rules

10  17 C.F.R. § 240.16a-3 ................................................................................................ 20, 21

11  Federal Rule of Civil Procedure 9(b) ....................................................................... passim

12  Federal Rule of Civil Procedure 12(b)(6) ................................................................ passim

13  Federal Rule of Civil Procedure 12(f) ..................................................................... 1, 5, 25

14

15                                                 Miscellaneous

16  California Practice Guide: Federal Civil Procedure Before Trial, § 9:188 (2007) ............. 5

1

<u>NOTICE OF MOTION AND MOTION TO DISMISS</u>

2

<u>OR, IN THE ALTERNATIVE, TO STRIKE COMPLAINT</u>

3

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

4

PLEASE TAKE NOTICE THAT on March 14, 2008, at 9:00 a.m., or as soon

5

thereafter as the matter may be heard, in Courtroom Three, Fifth Floor of the above captioned

6

Court, located at 280 South First Street, San Jose, California, defendant Douglas Smith will and

7

hereby does move the Court for an order dismissing this action or, in the alternative, striking

8

certain portions of the Complaint.  This motion is made pursuant to Federal Rule of Civil

9

Procedure 12(b)(6) and the heightened pleading requirements of Rule 9(b), or in the alternative

10

pursuant to Rule 12(f), and asks that this Court dismiss all claims against Mr. Smith for failure to

11

state a claim upon which relief may be granted.

12

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

13

<u>INTRODUCTION</u>

14

The Complaint is a classic example of the type of conclusory, "lump-all-the-

15

defendants-together" pleading that does not satisfy Rule 9(b)'s heightened pleading standard for

16

claims of fraud.  Plaintiff describes an alleged, years-long scheme to backdate stock options, on

17

the basis of which it simply recites the language of ten separate provisions of the Securities

18

Exchange Act of 1934 (the "Exchange Act") and the Securities Act of 1933 (the "Securities Act"),

19

without ever specifying what alleged conduct by which defendant gives rise to which claim for

20

relief.  Such pleading is particularly unfair to Mr. Smith, who served as Mercury Interactive

21

Corporation's ("Mercury" or the "Company") Chief Financial Officer ("CFO") for all of six

22

months at the very end of the period of alleged wrongdoing, and who therefore stands in a very

23

different position from the other defendants.

24

Plaintiff alleges that stock option grants were intentionally and fraudulently

25

backdated at Mercury for a five-year period beginning in 1997.[1/]  For the first 4½ of those five

---

26

[1/]   This memorandum uses the phrase "backdated grants" to refer to those stock option grants as
to which someone chose a grant date in the past with a beneficial price and in so doing caused

27

the Company to incur a compensation expense under applicable accounting principles because
the grant's value exceeded the fair market value of the Company's stock on the date the details

28

of the grant were determined.

---

DEFENDANT DOUGLAS SMITH'S
MOT. TO DISMISS/STRIKE COMPLAINT

1

CASE NO. 5:07-C02822-JF

268846

1   years, Mr. Smith was not involved in the stock option granting process at the Company.  ¶¶ 13, 30,

2   60.  Mr. Smith joined Mercury in 2000 as Executive Vice President of Corporate Development,

3   and did not become CFO or obtain the authority to grant stock options to employees until

4   November 2001.  ¶¶ 13, 30, 60.  Even then, his authority was limited to granting options to

5   non-executive employees in limited amounts.  ¶¶ 23, 30.  The Complaint concedes that within six

6   months of Mr. Smith's becoming CFO, intentional backdating of stock options at Mercury ceased.

7   ¶¶ 1, 13, 30, 45, 60.  Plaintiff's obligation to plead fraud with particularity requires it to specify

8   what precise conduct Mr. Smith engaged in that gives rise to each claim for relief alleged against

9   him.  Given Mr. Smith's lack of involvement during the vast majority of the alleged period of

10  backdating at Mercury, it is especially crucial that plaintiff plead -- cause of action by cause of

11  action -- what it alleges Mr. Smith did or did not do, and precisely why that alleged conduct had a

12  material effect on the Company's financial statements and other public filings.

13          Plaintiff's "kitchen sink" strategy, whereby it simply parrots the statutory language

14  of each and every securities fraud provision it can possibly think of, based on every public filing

15  in which Mr. Smith or his option grants are mentioned, does not satisfy Rule 9(b)'s heightened

16  pleading requirement.  One purpose of pre-trial motions is to narrow the issues for discovery and

17  trial, so that irrelevant and inapplicable claims for relief do not pollute and clutter an action.  This

18  is precisely what is required here:  several of plaintiff's asserted claims for relief simply do not

19  apply to the conduct alleged against Mr. Smith here, and must be dismissed.

20          This action must also be substantially trimmed down to size as a result of the

21  applicable statutes of limitations:  the five-year catch-all for federal proceedings located at 28

22  U.S.C. § 2462; and 28 U.S.C. § 1658, the four-year statute applicable to Congressional Acts

23  passed after 1990 (such as the Sarbanes-Oxley Act of 2002).  Almost all of the conduct alleged in

24  the Complaint (and, with respect to some claims for relief, all the conduct alleged) occurred

25  outside these time periods.  This motion seeks to dismiss or strike from the Complaint those

26  allegations that fall outside these statutes of limitations and are therefore time-barred.

27

28

1    STATEMENT OF FACTS ALLEGED IN THE COMPLAINT [2/]

2           The Complaint alleges that from 1997 through 2005, Mercury and its senior

3    officers, including "at various times" Mr. Smith, "engaged in a fraudulent and deceptive scheme"

4    to provide Mercury employees undisclosed compensation by backdating the date on which stock

5    options were granted.  ¶ 1.  From 1997 through 2005, Mercury filed financial statements that were

6    false or misleading because they failed to comply with Generally Accepted Accounting Principles

7    ("GAAP") provisions with respect to accounting for backdated options, and made false or

8    misleading statements about the Company's policy with respect to granting options at fair market

9    value.  ¶¶ 1, 98-103.  From 1997 through April 2002, plaintiff alleges there were 45 instances of

10   stock option grants in which the exercise price of the stock option was backdated to a date

11   corresponding to a relative low point of Mercury's stock.  ¶¶ 1, 45.

12          Mr. Smith did not join Mercury until 2000.  ¶ 13.  He joined in a strategic position,

13   Executive Vice President of Corporate Development, not a legal, human resources, executive

14   compensation or financial position.  Id.  Mr. Smith had no authority over stock options until

15   November 2001, when he became Mercury's CFO.  ¶¶ 13, 30, 60.  According to plaintiff, by the

16   time Mr. Smith became CFO, the Company had been backdating options for almost five years.

17   ¶¶ 1, 45.  Within six months of Mr. Smith's becoming CFO of Mercury, the intentional selection

18   of favorable prices for stock options had ceased.  ¶¶ 1, 45.  Only two stock option grants are

19   alleged to have been backdated while Mr. Smith was CFO of Mercury (the January 22 and March

20   20, 2002 employee grants):  these were the last two allegedly backdated grants before the practice

21   ended in April 2002.  ¶¶ 45, 60-78.

22          On July 3, 2006, Mercury restated its financial statements for the years 2002, 2003

23   and 2004 and selected financial data for the fiscal years 2000-2004, in large part to correct for the

24   failure to have taken compensation charges for in-the-money options in an aggregate amount of

25   $258 million.  ¶ 101.  Plaintiff claims that the Company's publicly filed financial statements for

26   the nine years between 1997 and 2005 -- including nine annual Forms 10-K (filed March 1997

27   _____

28   [2/]   This brief Statement of Facts is based entirely on the allegations in the Complaint, which are
            taken to be true solely for purposes of this motion.

DEFENDANT DOUGLAS SMITH'S                    3            CASE NO. 5:07-C02822-JF
MOT. TO DISMISS/STRIKE COMPLAINT                          268846

1   through March 2005) and twenty-five quarterly Forms 10-Q (filed May 14, 1997 through May 6,

2   2005) -- as well as statements made by the Company that it granted options at fair market value,

3   were materially false and misleading due to the accounting adjustments that were later made.

4   ¶¶ 99-105.  Plaintiff alleges that Mr. Smith reviewed and signed the annual Forms 10-K for fiscal

5   years 2002 through 2005, and reviewed and signed eleven quarterly Forms 10-Q filed between

6   November 2001 and May 2005.  ¶¶ 102, 105.

7          Plaintiff further alleges the following false and misleading statements by

8   Mr. Smith:  (1) Mr. Smith (and defendant Landan) signed false Sarbanes-Oxley Section 302

9   certifications for fiscal years 2003-2005 stating that the reports "fairly present in all material

10  respects the financial condition and results of operations of Mercury" (¶¶ 102, 104);

11  (2) "numerous" false representation letters to Mercury's auditors were signed between 1998 and

12  2005, including those signed by Mr. Smith (and defendant Landan) on January 22, 2002,

13  March 14, 2003, March 5, 2004 and March 14, 2005 (¶¶ 109-110); (3) Mr. Smith permitted

14  materially false and misleading information with respect to the grant dates of his options to be

15  reported in proxy statements sent to Mercury's shareholders from 1997 through 2003

16  (¶¶ 112-113); and (4) various registration statements filed with the SEC on Forms S-3

17  incorporated by reference materially false and misleading financial statements, including the Form

18  S-3 filed on June 26, 2003 signed by Mr. Smith (and defendant Landan) (¶ 114).  Plaintiff alleges

19  generally that Mr. Smith and the other defendants knew, should have known or were reckless in

20  not knowing that they made materially false and misleading statements in these documents.  See,

21  e.g., ¶ 115.

22                                ARGUMENT

23  I.      The Claim for Forfeiture of Profits Pursuant
            to Section 304 of the Sarbanes-Oxley Act is Not
24          Actionable Or, In the Alternative, Must Be Stricken

25          A.      Section 304 Does Not Apply Retroactively
                    to the Misconduct Alleged Here

26          Plaintiff seeks forfeiture of Mr. Smith's bonuses and stock profits pursuant to

27

28

---

DEFENDANT DOUGLAS SMITH'S              4          CASE NO. 5:07-C02822-JF
MOT. TO DISMISS/STRIKE COMPLAINT                  268846

1    Section 304 of the Sarbanes-Oxley Act of 2002, 15 U.S.C. § 7243 ("Section 304").[3/]  Section 304

2    provides in relevant part as follows:

3           If an issuer is required to prepare an accounting restatement due to
            the material noncompliance of the issuer, as a result of misconduct,
4           with any financial reporting requirement under the securities laws,
            the chief executive officer and chief financial officer of the issuer
5           shall reimburse the issuer for . . . any bonus [or stock profits]
            received by that person from the issuer during the 12-month period
6           following the first public issuance or filing with the Commission
            (whichever first occurs) of the financial document embodying such
7           financial reporting requirement . . . .

8    15 U.S.C. § 7243.  The following elements of a Section 304 claim are apparent from the statutory

9    text:  (1) the issuer must be required to restate its financial statements; (2) the restatement must be

10   due to "material non-compliance" with a financial reporting requirement; and (3) the material

11   noncompliance must be the "result of misconduct."  All of the "misconduct" alleged by plaintiff

12   that resulted in the restatement of Mercury's financial statements occurred prior to the entry into

13   force of the Sarbanes-Oxley Act.  Since all of the conduct comprising an essential element of the

14   Section 304 claim occurred before the statute's passage, permitting Section 304 to reach this

15   alleged misconduct constitutes an impermissible retroactive application of the statute.  Therefore,

16   the claims for Section 304 forfeiture must be dismissed.

17           Mercury's backdating of stock option grants is the alleged "misconduct"

18   underlying the corporation's material noncompliance with financial reporting requirements (the

19   failure to take compensation charges), which resulted in a restatement.  Plaintiff alleges that the

20   backdating itself ended in April 2002, conceding that the very last act of misconduct leading to

21   _____

22   [3/]   See Prayer for Relief, V ("Issue an order directing Defendants Landan and Smith to repay
            bonuses and stock profits, pursuant to Section 304 of the Sarbanes-Oxley Act of 2002,
            15 U.S.C. § 7243.").  The Section 304 "prayer for relief" is subject to dismissal pursuant to
23          Rule 12(b)(6) because it is, in effect, a "claim for relief."  For this purpose, "'claim' means a
            set of facts which, if established, give rise to one or more enforceable legal rights."  Schwarzer
24          et al., California Practice Guide:  Federal Civil Procedure Before Trial, § 9:188 (2007).
            Section 304 sets out a series of elements which, if met by the facts alleged, give rise to
25          enforceable legal rights (forfeiture of bonuses and stock profits).  Therefore, it is not just a
            "prayer for relief," but a "claim for relief" which may be dismissed pursuant to Rule 12(b)(6)
26          for failure to state a claim.  In the alternative, Defendant moves to strike the Section 304
            "prayer for relief."  A motion to strike pursuant to Rule 12(f) may be used to strike a prayer for
27          relief where, as here, the damages sought are not recoverable as a matter of law.  See, e.g., id.
            § 9:389; Wilkerson v. Butler, 229 F.R.D. 166, 172 (E.D. Cal. 2005) (citing Schwarzer);
28          Bureerong v. Uvawas, 922 F. Supp. 1450, 1479 n.34 (C.D. Cal. 1996).

DEFENDANT DOUGLAS SMITH'S              5              CASE NO. 5:07-C02822-JF
MOT. TO DISMISS/STRIKE COMPLAINT                                        268846

1    Mercury's material noncompliance with the financial reporting requirements occurred on April 1,

2    2002.  ¶ 45.  The Sarbanes-Oxley Act was enacted on July 30, 2002.  See Sarbanes-Oxley Act of

3    2002, Pub. L. No. 107-204, 2002 U.S.C.C.A.N. (116 Stat.) 745.  Accordingly, the very last act of

4    alleged misconduct underlying the charged violation of Section 304 occurred before the statute

5    was enacted.

6              A statute operates retroactively when it "attaches new legal consequences to events

7    completed before its enactment," including "increas[ing] a party's liability for past conduct . . . ."

8    Landgraf v. USI Film Prods., 511 U.S. 244, 270, 280 (1994) (quoted in Rodriguez v. Gen. Motors

9    Corp., 27 F.3d 396, 398 (9th Cir. 1994)).  See also Eco Mfg. LLC v. Honeywell Int'l, 357 F.3d

10   649, 652 (7th Cir. 2003) ("A law is retroactive when it alters the legal consequences of completed

11   acts.").  Section 304 implicates both aspects of retroactivity as applied here.  Section 304's

12   forfeiture remedy both attaches new legal consequences and increases Mr. Smith's liability for

13   alleged misconduct which had ceased, according to plaintiff's own statement of the case, before

14   the statute's enactment.

15             "[T]he presumption against retroactive legislation is deeply rooted in our

16   jurisprudence, and embodies a legal doctrine centuries older than our Republic."  Landgraf, 511

17   U.S. at 265 (quoted in INS v. St. Cyr, 533 U.S. 289, 316 (2001)).  This presumption against

18   retroactive application of legislation prevails absent a clear intent to the contrary from Congress.

19   See Humetrix, Inc., v. Gemplus S.C.A., 268 F.3d 910, 922 (9th Cir. 2001).  Consistent with this

20   presumption, at least one other section of the Sarbanes-Oxley Act has been found not to apply

21   retroactively.[4]  Congress has expressed no intention that Section 304 have a retroactive effect, and

22   thus the statute is not applicable to "misconduct" occurring before July 30, 2002.

23             Section 304 itself and the Act's Conference Report and Congressional Record are

24   silent regarding retroactive application of Section 304.  Accordingly, the only two courts to

25   _____

26   [4]   The majority of courts to address the issue have held that Section 804, which extends the
     statute of limitations for certain securities claims, does not apply retroactively.  See Lieberman
     v. Cambridge Partners, L.L.C., 432 F.3d 482, 492 (3d Cir. 2005); In re ADC Telecomms., Inc.

27   Sec. Litig., 409 F.3d 974, 978 (8th Cir. 2005); Foss v. Bear, Stearns & Co., 394 F.3d 540, 542
     (7th Cir. 2005); In re Enter. Mortgage Acceptance Co. Sec. Litig., 391 F.3d 401, 406 (2d Cir.

28   2004).

1   address the issue have opined that Section 304 does not apply retroactively, as "nothing in the text

2   of Section 304 suggests retroactive application of any of its provisions." In re Goodyear Tire &

3   Rubber Co. Derivative Litig., No. 5:03CV2180, 2007 WL 43557, at *8 (N.D. Ohio Jan. 5, 2007).

4   See also In re AFC Enters., Inc., Derivative Litig., 224 F.R.D. 515, 521 (N.D. Ga. 2004) ("There

5   is no 'clear indication' from Congress that [Section 304] of the Sarbanes-Oxley Act was intended

6   to have retroactive application to misconduct which occurred before its effective date.").  There is

7   nothing in Section 304's text, legislative history, or the Sarbanes-Oxley Act as a whole which

8   might imply that Congress intended Section 304 to apply retroactively to misconduct which was

9   complete well before the statute's effective date.  Accordingly, this Court should dismiss or strike

10  plaintiff's claim for Section 304 forfeiture of bonuses and stock profits as an impermissible

11  retroactive application of the statute to the facts at hand.

12          B.      Even if Section 304 Did Apply Retroactively, None
                    of the Filings Occurring Within the Applicable Statute
13                  of Limitations Qualify to Trigger Forfeiture of Profits

14                  Nowhere in the Complaint does plaintiff allege the factual basis for seeking

15  forfeiture of Mr. Smith's bonuses and stock profits (or which bonuses and/or profits are even

16  sought), a deficiency which by itself requires dismissal for failure to plead with particularity.  See

17  infra, Section III.A.  However, in its Initial Disclosures plaintiff specifies that it seeks Section 304

18  forfeiture as follows:

19                  As to Defendants Landan and Smith, the Commission also seeks
                    repayment of all bonuses earned, or Mercury stock sale or stock
20                  option exercise profits received *after November 12, 2002, the date
                    of filing of Mercury's Form 10-Q for the third quarter of 2002*,
21                  pursuant to Section 304 of the Sarbanes-Oxley Act of 2002.[5]

22  Thus, plaintiff seeks forfeiture of bonuses and stock profits based on the November 12, 2002 10-Q

23  (and perhaps filings thereafter).  Provided with this level of specificity by plaintiff, it becomes

24

_____

25  [5]   Declaration of Emily V. Griffen, Ex. A (Plaintiff's Initial Disclosures served September 7,
          2007 at 16) (emphasis added).  Similarly, the SEC alleges in the Sixth Claim for Relief for
26        violation of Rule 13a-14 (false Sarbanes-Oxley Act Section 302 certifications) that "Landan
          and Smith signed . . . false certifications pursuant to Rule 13a-14 of the Exchange Act that
27        were included in Mercury's 2003, 2004 and 2005 annual reports filed on Forms 10-K, as well
          as its *quarterly reports filed on Forms 10-Q for the quarters ended November 12, 2002*
28        through May 6, 2005."  ¶ 167.

_____

DEFENDANT DOUGLAS SMITH'S            7            CASE NO. 5:07-C02822-JF
MOT. TO DISMISS/STRIKE COMPLAINT                             268846

eee

1   clear that such allegations do not state a claim for Section 304 forfeiture.

2          First, the federal statute of limitations applicable to claims pursuant to the

3   Sarbanes-Oxley Act, 28 U.S.C. § 1658 ("Section 1658"), provides in relevant part:

4          Except as otherwise provided by law, a civil action arising under an
           Act of Congress enacted after the date of the enactment of this
5          section [December 1, 1990] may not be commenced later than 4
           years after the cause of action accrues.
6

7   See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382 (2004) ("[A] cause of action 'aris[es]

8   under an Act of Congress enacted' after December 1, 1990 -- and therefore is governed by

9   § 1658's 4-year statute of limitations -- if the plaintiff's claim against the defendant was made

10  possible by a post-1990 enactment.").  The Sarbanes-Oxley Act was enacted on July 31, 2002,

11  well after Section 1658 became effective, so any claim arising under the Sarbanes-Oxley Act (or

12  made possible by the Act) must be brought within four years of accrual of the claim.  Therefore,

13  because this action was filed on May 31, 2007, plaintiff cannot pursue any claim based on conduct

14  occurring prior to May 31, 2003.  Plaintiff's reliance on the November 12, 2002 Form 10-Q is

15  ineffective in stating a Section 304 claim on this ground alone.

16         Second, Section 304 only requires forfeiture of bonuses or stock profits received by

17  a CEO or CFO "during the 12-month period following the ***first public issuance or filing*** with the

18  Commission (whichever first occurs) of the financial document embodying such [material

19  noncompliance with a] financial reporting requirement . . . ."  15 U.S.C. § 7243(a)(1) (emphasis

20  added).  The financial document plaintiff relies on here is Mercury's November 12, 2002 10-Q for

21  the third quarter of 2002.  However, plaintiff alleges that the backdating itself ended in April 2002.

22  Plaintiff thus alleges that the very *last* allegedly backdated grant should have been dated April 1,

23  2002 (not March 20, 2002), and should have been accounted for by taking a compensation

24  expense in the ***second quarter*** of 2002.  ¶ 45.

25         If a compensation expense were taken for the April 1, 2002 grant in order to

26  properly account for it, however, that expense would have been reflected in the August 13, 2002

27  Form 10-Q for the second quarter of 2002, which encompasses April, May and June 2002.  That

28  Form 10-Q, then, is the "***first public issuance or filing*** with the Commission . . . of the financial

1   document embodying such financial reporting requirement . . . ."  Each and every public filing

2   *after* the August 13, 2002 Form 10-Q -- including all of the filings alleged by plaintiff to be the

3   basis for its Section 304 forfeiture claim (November 12, 2002 Form 10-Q and thereafter) -- merely

4   repeats the previous noncompliance with the requirement to take a compensation expense for in-

5   the-money option grants, and thus falls outside the express temporal language of the statute

6   (applying only to the "first" such filing).

7          Therefore, *none* of the filings alleged by plaintiff to be the basis for its Section 304

8   claim (filings from November 12, 2002 on), nor any filing falling within Section 1658's four-year

9   statute of limitations (filings after May 31, 2003), in fact meets the express requirements for

10  forfeiture of bonuses and stock profits pursuant to Section 304, because none is the "***first*** public

11  issuance or filing" (after the effective date of the Sarbanes-Oxley Act) of the financial document

12  in which the Company failed to comply with the applicable reporting requirement that its financial

13  statements reflect non-cash compensation charges for backdated stock options.  Consequently, the

14  claim for forfeiture of Mr. Smith's bonuses and stock profits pursuant to Section 304 of the

15  Sarbanes-Oxley Act must be dismissed or, in the alternative, stricken from the Complaint.

16  II.   The Sixth Claim for Relief for Filing False
            Certifications Pursuant to Sarbanes-Oxley Act
17          Section 302 and Rule 13a-4 Promulgated
            Thereunder Must Be Dismissed or Stricken as to
18          Certifications Outside the Statute of Limitations

19         As established above, Section 1658's four-year statute of limitations applies to

20  claims arising under the Sarbanes-Oxley Act, such that conduct prior to May 31, 2003 giving rise

21  to a claim under the Act is time-barred.  Plaintiff alleges in the Sixth Claim for Relief that Mr.

22  Smith filed false certifications pursuant to Rule 13a-14 -- which was promulgated by the SEC on

23  August 29, 2002 pursuant to Section 302 of the Sarbanes Oxley Act -- in Mercury's 2003, 2004

24  and 2005 Forms 10-K as well as Forms 10-Q from November 2002 through May 2005.  ¶ 167.

25  However, a Sarbanes-Oxley Act claim based upon any Form 10-Q or Form 10-K filed prior to

26  May 31, 2003 (including the August and November 2002 and April 2003 10-Qs, as well as the

27  March 2003 10-K) is time-barred by Section 1658's four-year statute of limitations.  See

28  ¶¶ 102-105.  Therefore, plaintiff's Sixth Claim for Relief, to the extent that it is based on false

1    certifications by Mr. Smith in Forms 10-Q or 10-K filed prior to May 31, 2003, must be dismissed

2    or, in the alternative, stricken from the Complaint.

3    III.   The Entire Complaint Engages in Shotgun Pleading,
            and Thus Violates Rule 9(b)'s Particularity
4            Requirement for Pleadings Grounded in Fraud

5           A.    Rule 9(b)'s Heightened Pleading Standard
                  Requires that Pleadings Grounded in Fraud
6                 be Pled with Particularity

7           Federal Rule of Civil Procedure 9(b) contains a heightened pleading requirement

8    for allegations of fraud, which provides in relevant part:  "In all averments of fraud or mistake, the

9    circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P.

10   9(b).  It is well established that securities fraud claims are subject to Rule 9(b)'s particularity

11   requirements.  See, e.g., In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1404 (9th Cir. 1996).  Further,

12   the Ninth Circuit has held that Rule 9(b) applies to claims that do not require a showing of fraud

13   (i.e., claims that only require a showing of negligence or contain no scienter requirement) when

14   the nature of the allegations "clearly sound in fraud."  See, e.g., id. at 1404-05.  Thus, to the extent

15   that plaintiff's allegations are grounded in fraud, they are subject to Rule 9(b)'s particularity

16   requirements.  See In re Daou Sys., Inc. Sec. Litig., 411 F.3d 1006, 1027 (9th Cir. 2005); Vess v.

17   Ciba-Geigy Corp. USA, 317 F.3d 1097, 1105 (9th Cir. 2003).

18          Here, plaintiff alleges that Mr. Smith, along with the other defendants, "engaged in

19   a fraudulent and deceptive scheme to provide executives and other employees undisclosed, secret

20   compensation" by "backdat[ing] the date on which stock options were granted to executives and

21   employees so that those options appeared to have been granted at times corresponding to low

22   points of the closing price of the company's stock, resulting in artificially and fraudulently low

23   exercise prices for those options," and that the "accounting consequences of these benefits were

24   then concealed . . . ."  ¶ 1.  These are allegations of intentional deception and concealment, and

25   undoubtedly sound in fraud.  Thus, plaintiff's allegations are subject to Rule 9(b)'s particularity

26   requirement.  Plaintiff's failure to plead fraud with the requisite particularity is grounds for

27   dismissal.  See Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1439 (9th Cir. 1987).

28

DEFENDANT DOUGLAS SMITH'S              10          CASE NO. 5:07-C02822-JF
MOT. TO DISMISS/STRIKE COMPLAINT                              268846

1    To satisfy Rule 9(b), the Complaint must "set forth what is false or misleading

2  about a statement, and why it is false." In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548 (9th

3  Cir. 1994) (en banc). First, the pleadings must "state precisely the time, place, and nature of the

4  misleading statements, misrepresentations, and specific acts of fraud." Kaplan v. Rose, 49 F.3d

5  1363, 1370 (9th Cir. 1994). "Averments of fraud must be accompanied by 'the who, what, when,

6  where, and how' of the misconduct charged." Vess, 317 F.3d at 1106 (quoting Cooper v. Pickett,

7  137 F.3d 616, 627 (9th Cir. 1997)).

8    The Rule imposes a second requirement that the complaint "set forth an

9  explanation as to why the statement or omission complained of was false or misleading."

10  GlenFed, 42 F.3d at 1548. Conclusory allegations that a defendant's conduct was fraudulent or in

11  violation of federal securities law are insufficient. See Semegen v. Weidner, 780 F.2d 727, 731

12  (9th Cir. 1985); Segal v. Gordon, 467 F.2d 602, 606-08 (2d Cir. 1972). Further, plaintiff must

13  satisfy Rule 9(b) for each defendant; plaintiff must distinguish among those he sues and "enlighten

14  each defendant as to his or her part in the alleged fraud." Bruns v. Ledbetter, 583 F. Supp. 1050,

15  1052 (S.D. Cal. 1984).

16
       B.    The Complaint in its Entirety Fails to Plead Fraud
17           with Particularity Because it Engages in Shotgun
             Pleading, Failing to Specify What Conduct Is
18           Alleged to Be the Basis for Which Claim for Relief

19    The Complaint cannot satisfy the heightened pleading requirements of Rule 9(b)

20  because it engages in what at least one Circuit Court of Appeals has called "shotgun pleading."

21  Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273 (11th Cir. 2006). "Shotgun pleadings are

22  those that incorporate every antecedent allegation by reference into each subsequent claim for

23  relief or affirmative defense." Id. at 1279.[6/] In each claim for relief here, plaintiff re-alleges and

24  _____
    [6/]  The Ninth Circuit has yet to speak directly on this issue. A few district courts have touched on
25       the issue, with mixed results. In Textainer Equipment Management (U.S.) Ltd. v. TRS Inc.,
         No. C 07-01519 WHA, 2007 WL 1795695, at *4 (N.D. Cal. June 20, 2007), defendants
26       pointed out that plaintiff's fraud claim did not contain any specific allegations, but merely
         incorporated by reference the previous paragraphs in the complaint. The court stated that there
27       is nothing wrong with this, "provided that plaintiff has pleaded all necessary elements in the
         preceding paragraphs." In Chabra v. Southern Monterey County Memorial Hospital, Civ. No.
28       C 94-20335 EAI, 1994 WL 564566, at *8 (N.D. Cal. Oct. 3, 1994), however, the court stated
         that because allegations of fraud must be stated with particularity, it was insufficient for the

1  incorporates by reference all of the factual allegations contained in the first 144 paragraphs of the

2  Complaint.  In all but one, no further reference is made to particular previous allegations in the

3  Complaint.[7/]  Rather, following the clause incorporating the previous paragraphs by reference,

4  each claim for relief generally avers a claim solely by reference to the language of the allegedly

5  violated statute or rule.  The reader is left to wonder which prior paragraphs support the elements

6  of each claim, and what conduct alleged in the first 144 paragraphs plaintiff intends to use as the

7  basis for each claim.

8           Shotgun pleadings are defective because they do not connect the alleged facts to the

9  complaint's claims for relief in a manner sufficient to satisfy Rule 9(b):

10          The central problem is that the factual particularity of the first 175
            paragraphs is not connected to the otherwise generally pled claim in
11          any meaningful way. . . .  The lack of connection between the
            substantive count and the factual predicates is the central problem
12          with each of the enumerated counts in the complaint, because courts
            cannot perform their gatekeeping function with regard to the
13          averments of fraud.  It is not that we know that plaintiffs cannot
            state a claim but rather that we do not know whether they have.
14          This is because plaintiffs have not connected their facts to their
            claims in a manner sufficient to satisfy Rule 9(b).

15

16  Id. at 1279-80; see also SEC v. Solow, No. 06-81041-CIV, 2007 WL 917269, at *3 (S.D. Fl.

17  Mar. 23, 2007) ("There was no effort by the Plaintiff to state with particularity which specific

18  allegations apply to which specific count, thereby impeding Defendant's ability to discern the

19  exact nature of the complaint against him.").[8/]

20  purposes of Rule 9(b) for plaintiff to merely re-allege by reference all of the proceeding
    allegations.
21

22  [7/]  In the Sixth Claim for Relief, plaintiff makes an exception to specify which particular filings
    allegedly contain false Sarbanes-Oxley Section 302 certifications.  ¶ 167.  Thus, plaintiff is
23  able to and knows how to provide a brief description of what alleged statements or conduct
    provide the basis for a particular claim for relief.  Requiring the same for each claim is not
24  unduly onerous.

25  [8/]  Some courts have found shotgun-style pleading sufficient under various circumstances.  For
    instance, the Tenth Circuit in Schwartz v. Celestial Seasonings, Inc., 124 F.3d 1246 (10th Cir.
26  1997) found that incorporation by reference satisfied Rule 9(b) in a Section 10(b) case.
    However, in that case the Section 10(b) claim "explicitly tie[d] the § 10(b) violations to the
27  'releases, prospectuses, statements and reports referred to above.'"  Id. at 1252-53.  Even this
    minimal effort is more than plaintiff has done here.  Moreover, this case (and others finding
28  shotgun pleading sufficient) was decided prior to the Supreme Court's recent decision in Bell
    Atlantic Corp. v. Twombly, which made clear that even under Rule 8(a)'s notice pleading

DEFENDANT DOUGLAS SMITH'S            12            CASE NO. 5:07-C02822-JF
MOT. TO DISMISS/STRIKE COMPLAINT                                    268846

1    The Complaint purports to outline in 144 paragraphs an ongoing scheme of

2   fraudulent conduct which took place over more than five years.  However, the Complaint makes

3   no effort to specify which particular allegations among the 144 prior paragraphs of the Complaint

4   are alleged to be the basis for each claim for relief.  Nor does it attempt to explain precisely how

5   *each* defendant acted in a way that meets the elements of *each* claim.  To allow these shotgun

6   pleadings to go forward would be particularly unfair to Mr. Smith, who plaintiff itself alleges was

7   involved in the alleged scheme for a total of six months.

8
         C.    The Complaint Fails to Plead Fraud with Particularity
9              Because It Fails to Specify, With Respect to Mr. Smith,
               How and To What Extent Each Alleged Financial
10             Statement Was Materially False or Misleading

11    Plaintiff also fails to plead the circumstances of the fraud with particularity because

12  it does not provide the requisite detail for each allegedly false or misleading financial statement by

13  explaining precisely how the purported misstatement or omission would have been material to a

14  reasonable investor, or precisely how Mr. Smith's conduct caused each financial statement to be

15  false.  For example, plaintiff fails to allege the amount by which any of the allegedly false or

16  misleading financial statements understated compensation expenses and thus overstated Mercury's

17  net income.  Absent this level of particularity, the Complaint fails to allege that the cited financial

18  statements were *materially* false or misleading when made.[9]

19

20  _____

21  standard, simply listing the elements of a claim for relief does not suffice:  "While a complaint
    attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a
    plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than
22  labels and conclusions, and a formulaic recitation of the elements of a cause of action will not
    do . . . ."  550 U.S. ____, 127 S. Ct. 1955, 1964-65 (2007).  The Supreme Court noted:  "As we
23  indicated over 20 years ago . . . , 'a district court must retain the power to insist upon some
    specificity in pleading before allowing a potentially massive factual controversy to proceed.'"
24  Id. at 1967.  If that is the case under Rule 8(a)'s relatively permissive standard, then shotgun
    pleading ought not survive Rule 9(b)'s heightened pleading requirement for fraud.

25  [9]   "To properly state a claim for accounting fraud, plaintiffs must plead facts sufficient to support
26  a conclusion that [d]efendant[ ] prepared the fraudulent financial statements and that the
    alleged financial fraud was material. . . .  [P]laintiffs should allege . . . such basic details as the
27  approximate amount by which revenues and earnings were overstated . . . ."  Daou, 411 F.3d at
    1018 (internal quotations omitted).  Plaintiff has not satisfied these particularity requirements
28  here.

DEFENDANT DOUGLAS SMITH'S          13          CASE NO. 5:07-C02822-JF
MOT. TO DISMISS/STRIKE COMPLAINT                              268846

1    Perhaps more importantly, plaintiff has not pled, with respect to Mr. Smith, how his

2    conduct caused each alleged financial statement to be materially false or misleading.  Mr. Smith is

3    only alleged to have participated in the last 2 of 45 allegedly backdated stock option grants, yet

4    plaintiff claims that Mercury filed materially false or misleading financial statements for *nine*

5    *years*.  Plaintiff makes no effort to allege how Mr. Smith's conduct with respect to two grants in

6    the first two quarters of 2002 rendered those particular Forms 10-Q materially false and

7    misleading, let alone attempt to tie those two grants to specific material misstatements or

8    omissions within the literally dozens of other periodic reports referenced in the Complaint.  In

9    other words, plaintiff has not adequately pled "the who, what, when, where, and how" of each

10   allegedly false or misleading financial statement.

11   "Rule 9(b) ensures that allegations of fraud are specific enough to give defendants

12   notice of the particular misconduct which is alleged to constitute the fraud charged so that they can

13   defend against the charge and not just deny that they have done anything wrong."  <u>Semegen</u>, 780

14   F.2d at 731.  By (1) alleging a sweeping scheme carried out over a long period of time by various

15   defendants, some of whom were involved at different times, and then simply incorporating by

16   reference all of the factual allegations of the Complaint into each claim for relief, and (2) failing to

17   plead with particularity how and to what extent each alleged financial statement was false or

18   misleading due to Mr. Smith's conduct, the Complaint fails to provide Mr. Smith with sufficient

19   information as to the particular alleged conduct upon which each claim for relief *against him* is

20   based.[10/]  The Complaint must be dismissed for failure to satisfy Rule 9(b) because it does not

21   provide Mr. Smith with adequate notice to allow him to defend against the charges brought against

22   him.  <u>See</u>, <u>e.g.</u>, <u>In re Stac</u>, 89 F.3d at 1405 ("Rule 9(b) serves to give defendants adequate notice to

23   allow them to defend against the charge").

24

25

---

26   [10/]  Cases in the Ninth Circuit have made clear that the specific role of each defendant in an
          alleged fraud must be pled with particularity.  <u>See</u>, <u>e.g.</u>, <u>SEC v. Yuen</u>, 221 F.R.D. 631, 633

27        (C.D. Cal. 2004) (requiring greater specificity regarding each defendant's role where the
          complaint alleged a "complex scheme carried out over a long period of time by the defendants,

28        some of whom had different involvement at different times").

---

IV.   The First and Second Claims For Relief Based on "Scheme"
      Liability, and the Third, Seventh and Eighth Claims for
      Relief for Violations of Section 13(b) of the Exchange Act,
      Must Be Dismissed as Time-Barred by 28 U.S.C. § 2462

      A.   Claims Based Upon Conduct Occurring
           Before May 31, 2002 Are Time-Barred

           This action was filed on May 31, 2007.  While no statute of limitations specifically

applies to SEC enforcement actions, the federal catch-all statute of limitations at 28 U.S.C. § 2462

("Section 2462") is applicable to "an action, suit or proceeding for the enforcement of any civil

fine, penalty, or forfeiture, pecuniary or otherwise," and is thus applicable here.  Section 2462

requires that such an action be "commenced within five years from the date when the claim first

accrued . . . ."  Therefore, any claim by plaintiff that is based on alleged conduct occurring more

than five years prior to May 31, 2007, i.e., before May 31, 2002, is time-barred.  Further, any

portion of a claim that relies upon conduct occurring before May 31, 2002 is similarly time-barred,

and the claim must be limited solely to conduct occurring after May 31, 2002.[11]

           Several of plaintiff's claims for relief are based wholly upon conduct that occurred

prior to May 31, 2002.  First, to the extent that plaintiff alleges that Mr. Smith violated Section

17(a)(1) and (3) of the Securities Act (First Claim for Relief, ¶ 146) and Rule 10b-5(a) and (c) of

the Exchange Act (Second Claim for Relief, ¶ 149) by engaging in a fraudulent or deceptive

"scheme" (as opposed to violating Section 17(a)(2) and Rule 10b-5(b) by making false or

misleading statements), these bases for relief must be dismissed as time-barred.  All of the stock

option backdating alleged in the Complaint occurred from 1997 to April 2002, as alleged by

plaintiff itself.  See ¶ 1 ("Between 1997 and April 2002, the company backdated 45 different stock

option grants to executives and employees."); ¶ 45 ("Between 1997 and April 2002, the company

. . . made a total of 45 grants of options to executives and employees.  [followed by chart

containing a list of allegedly backdated grants, the last of which was alleged to have actually been

---

[11]   Though the Complaint's shotgun pleading style makes it impossible to know precisely what
       conduct is the basis for which of plaintiff's ten claims for relief, to the extent that plaintiff
       relies on conduct occurring prior to May 31, 2002 -- e.g., the act of backdating stock options --
       to support any such claim, that claim must be dismissed or stricken because allegations based
       on such conduct are time-barred.  Similarly, all allegedly false or misleading statements made
       prior to May 31, 2002 are also time-barred and must be dismissed or stricken.

1   granted on April 1, 2002]"); ¶ 78 (last action alleged with respect to April 1, 2002 backdated grant

2   allegedly occurred on April 2, 2002).

3              The only conduct alleged to have occurred after May 31, 2002 is the filing (and

4   certifying) of false and misleading financial statements and other statements (such as proxy

5   statements or representation letters to auditors) incorporating the backdated option grant dates and

6   prices and improper accounting therefor.  Thus, the heart of plaintiff's Complaint -- the

7   "fraudulent and deceptive scheme to provide executives and other employees undisclosed, secret

8   compensation" by "backdat[ing] the date on which stock options were granted to executives and

9   employees" (¶ 1) giving rise to plaintiff's claims under Section 17(a)(1) and (3) of the Securities

10  Act and Rule 10b-5(a) and (c) of the Exchange Act -- occurred in its entirety more than five years

11  prior to the filing of this action, and is completely time-barred.

12             Second, plaintiff alleges that Mr. Smith violated Section 13(b)(5) of the Exchange

13  Act because he "knowingly falsified books, records, or accounts of Mercury, or knowingly

14  circumvented or knowingly failed to implement a system of internal accounting controls" (Third

15  Claim for Relief, ¶ 154), and further alleges that Mr. Smith aided and abetted Mercury's violations

16  of Sections 13(b)(2)(A) and (B) by knowingly providing substantial assistance to Mercury's

17  "failure to make and keep [accurate] books, records, and accounts," (Seventh Claim for Relief,

18  ¶ 171) and Mercury's "failure to devise and maintain a sufficient system for internal accounting

19  controls" (Eighth Claim for Relief, ¶ 176).  Again, by plaintiff's own allegations, all of the

20  conduct underlying these claims occurred prior to May 31, 2002.  It is at the time that a stock

21  option grant is approved and recorded in the company's books, with a particular (allegedly

22  backdated) date and price, that a false book, record or account is created and any circumvention or

23  failure of internal accounting controls occurs.  As plaintiff alleges:  "During the period from 1997

24  through 2002, using the unanimous written consents or meeting minutes which memorialized the

25  grants and were prepared by Skaer and Abrams, ***persons working in Mercury's finance***

26  ***department recorded the stock option grant information into Mercury's books and records***."

27  ¶ 107 (emphasis added).  Thus, as the Complaint itself establishes, the conduct giving rise to *all*

28  Section 13(b) claims asserted against Mr. Smith occurred when the allegedly backdated stock

---

1   option grants were prepared and entered into Mercury's books and records in 1997 to 2002,

2   outside the five-year limitations period.

3          Plaintiff's claims described above ("scheme" liability and Section 13(b) primary

4   and secondary violations) are based solely on the act of backdating stock options, as they involve

5   no false or misleading public statements.  The five-year catch-all statute of limitations begins to

6   run "when the claim first accrued," which is the date that the option grant was made.  Cf. Durning

7   v. Citibank, Int'l, 990 F.2d 1133, 1136 (9th Cir. 1993) (noting that the federal rule is that a cause

8   of action accrues at the completion of the sale of the instrument); Falkowski v. Imation Corp., 309

9   F.3d 1123, 1130 (9th Cir. 2002) ("The grant of an employee stock option on a covered security

10  is . . . a 'sale' of that covered security.").  Plaintiff may not avoid the effect of the statute of

11  limitations by combining allegations of financial statements within the statute of limitations with

12  time-barred option backdating.[12]

13         Plaintiff must allege independent wrongful acts that occurred after May 31, 2002,

14  in order to state a timely claim for relief.  The only such claims that meet this description are those

15  that rely upon false and misleading financial statements and other statements issued after May 31,

16  2002; any claim or portion of a claim that relies upon the act of backdating itself (or statements

17  made prior to May 31, 2002) is time-barred.

18         B.    Pursuant to the Concurrent Remedy Rule, Both Legal
                 and Equitable Claims Are Barred by Section 2462

19

20         The applicability of Section 2462 to the claims asserted by plaintiff here is not

21  dependent upon whether the remedy sought is legal or equitable in nature.  The Complaint seeks

22  both legal and equitable remedies.  The legal remedy seeking payment of "civil monetary

---

23  [12]  An allegation of false financial statements within the statute of limitations does not preserve
24        claims for options backdating that occurred outside the limitations period.  Courts consistently
          reject this "continuing harm" or "continuing violation" approach to pleading securities cases.
25        See, e.g., Clayton v. Landsing Pac. Fund, Inc., No. C 01-03110 WHA, 2002 WL 1058247, at
          *3 (N.D. Cal. May 9, 2002) (rejecting "plaintiff's continuing-violation argument" for section
26        10(b) claim), aff'd mem., 56 Fed. App'x 379 (9th Cir. 2003); In re DVI Inc. Sec. Litig.,
          No. Civ. A. 03-5336, 2005 WL 1307959, at *11 (E.D. Pa. May 31, 2005) ("this Court declines
27        to extend the continuing violation doctrine to [securities law]"); see also In re Enron Corp.
          Sec., Derivative & ERISA Litig., 310 F. Supp. 2d 819, 844-49 (S.D. Tex. 2004) (statute is
28        triggered by first discrete act in each transaction).

---

penalties," as well as the Section 304 forfeiture of bonuses and stock profits, are each undoubtedly a "civil fine, penalty, or forfeiture" under Section 2462, and therefore subject to the five-year statute of limitations.  See Prayer for Relief, III & V.  Because plaintiff's legal remedies (with respect to certain claims as described above) are time-barred, the related equitable remedies (for an injunction, director/officer bar, and disgorgement) are also barred pursuant to the concurrent remedy rule.

As articulated by the Ninth Circuit, this rule provides that, where both legal and equitable remedies are sought, and the legal remedies are barred by an applicable statute of limitations, the equitable remedies are barred as well.  In a case brought by the Federal Election Commission seeking both legal and equitable remedies, where the legal remedies were barred by Section 2462, the Ninth Circuit held as follows:

> FEC argues that § 2462 does not apply to actions for injunctive relief.  This assertion runs directly contrary to the Supreme Court's holding in <u>Cope v. Anderson</u>, 331 U.S. 461, 464, 67 S. Ct. 1340, 1341, 91 L. Ed. 1602 (1947).  <u>Cope</u> holds that "equity will withhold its relief in such a case where the applicable statute of limitations would bar the concurrent legal remedy."  In other words, ***because the claim for injunctive relief is connected to the claim for legal relief, the statute of limitations applies to both***.

<u>Fed. Election Comm'n v. Williams</u>, 104 F.3d 237, 240 (9th Cir. 1996) (emphasis added).  <u>See also</u> <u>Levald, Inc. v. City of Palm Desert</u>, 998 F.2d 680, 688 (9th Cir. 1993); <u>Rosenbaum v. City & County of San Francisco</u>, No. C96-3409 MMC, 2005 WL 1170480, at *4 (N.D. Cal. Jan. 12, 2005); <u>Oca v. Skylawn Mem'l Park</u>, No. C 92 1190 THE, 1993 WL 255438, at *3 (N.D. Cal. June 25, 1993).  Under <u>Williams</u> and its progeny, because plaintiff's legal remedies (civil monetary penalties and Section 304 forfeiture) are time-barred pursuant to Section 2462, plaintiff's equitable remedies are also barred.  For this reason, all of the remedies sought by plaintiff are subject to Section 2462's five-year statute of limitations.[13]

---

[13] Alternatively, the Court need not reach the <u>Williams</u> analysis at all because upon close inspection, each item of ostensibly equitable relief sought by plaintiff is in fact a "penalty" subject to Section 2462.  <u>See, e.g.</u>, <u>SEC v. Jones</u>, 476 F. Supp. 2d 374, 381 (S.D.N.Y. 2007) (noting that "the limitations period in § 2462 applies to civil penalties and equitable relief that seeks to punish, but does not apply to equitable relief which seeks to remedy a past wrong or protect the public from future harm," and holding that "the requested injunction would carry with it the sting of punishment"); <u>Johnson v. SEC</u>, 87 F.3d 484, 488 (D.C. Cir. 1996) (holding

1    Therefore, the First and Second Claims for Relief based on fraudulent or deceptive

2    "scheme" liability pursuant to Section 17(a)(1) and (3) of the Securities Act and pursuant to

3    Rule 10b-5(a) and (c), as well as the Third, Seventh and Eighth Claims for Relief for violations of

4    Section 13(b) of the Exchange Act, must be dismissed as time-barred by Section 2462, as all the

5    alleged conduct giving rise to these claims occurred during the alleged period in which options

6    were being backdated -- 1997 to April 2002 -- more than five years prior to the institution of this

7    suit.  Similarly, any other claim or portion of a claim relying on conduct which occurred prior to

8    May 31, 2002 is also time-barred.

9    V.    The Fifth, Seventh and Eighth Claims for Relief for Aiding
            and Abetting Mercury's Violations Must Be Dismissed for
10           Failure to Plead with Particularity What Conduct by Smith
            Constituted Aiding and Abetting Each Particular Alleged
11           Violation by Mercury

12    The elements of a claim for aiding and abetting a securities violation are:  "(1) the

13    existence of an independent primary violation; (2) actual knowledge by the alleged aider and

14    abettor of the primary violation and of his or her own role in furthering it; and (3) 'substantial

15    assistance' by the defendant in the commission of the primary violation."  SEC v. Fehn, 97 F.3d

16    1276, 1288 (9th Cir. 1996); see Ponce v. SEC, 345 F.3d 722, 737 (9th Cir. 2003) (citing Fehn in

17    Section 13 case).  Nowhere in the Complaint does plaintiff plead what Mr. Smith did to aid and

18    abet Mercury's violations of Section 13 of the Exchange Act (Fifth, Seventh and Eighth Claims

19    for Relief), other than by offering the vague suggestion that he did so "[b]y engaging in the

20    conduct described above [in the first 144 paragraphs]."  ¶¶ 163, 171, 176.  These claims sound in

21    fraud, as they allege that Mr. Smith knowingly provided substantial assistance to Mercury's

22    securities fraud violations.  Therefore, Rule 9(b)'s particularity requirement applies, and requires

23    that the details of the fraud be pled, including the specific conduct engaged in by Mr. Smith that

24

25

26    that a "penalty" is "a form of punishment imposed by the government for unlawful or
      proscribed conduct, which goes beyond remedying the damage caused to the harmed parties by
27    the defendant's actions," and therefore a censure and six-month disciplinary suspension (a
      much less severe remedy than the director/officer bar sought here) is a penalty pursuant to
28    Section 2462).

DEFENDANT DOUGLAS SMITH'S            19           CASE NO. 5:07-C02822-JF
MOT. TO DISMISS/STRIKE COMPLAINT                                      268846

1   plaintiff alleges constitutes aiding and abetting Mercury's violations of Section 13.  Absent

2   additional particularity, Mr. Smith cannot respond to these claims.

3              For example, plaintiff has not pled at all, much less with particularity, <u>how</u> or in

4   what way (<u>i.e.</u>, through what particular conduct) Mr. Smith provided "substantial assistance" to

5   Mercury's failure to implement accounting controls (¶ 176); <u>how</u> Mr. Smith aided the Company in

6   *failing* to implement certain controls; and <u>what</u> Mr. Smith did to assist such a failure by Mercury,

7   assuming that it is even logically possible to assist in another's failure to do something.  <u>See</u> <u>Vess</u>

8   <u>v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1106 (9th Cir. 2003) (requiring the "'the who, what,

9   when, where, and how' of the misconduct charged").  The Complaint does not say, and it certainly

10  does not satisfy Rule 9(b)'s heightened particularity requirement.  This is true for all of the aiding

11  and abetting claims alleged against Mr. Smith:  it is impossible to tell from the Complaint's

12  allegations what conduct Mr. Smith is alleged to have engaged in that constituted aiding and

13  abetting Mercury's primary violations of the securities law provisions at issue.  Plaintiff must

14  provide more specificity so that Mr. Smith may adequately respond.

15  VI.    The Ninth Claim for Relief for Violation of Section 16(a)
           of the Exchange Act and Rule 16a-3 Must be Dismissed
16         for Failure to Plead with Particularity Mr. Smith's
           Failure to File Any Specific Form

17              Section 16(a) of the Exchange Act requires in relevant part as follows:

18
19              Every person who is . . . an officer of the issuer of [any equity
                security which is registered pursuant to section 12] shall file . . . at
                the time of the registration of such security[,] within 10 days after he
20              or she becomes such [officer, or] if there has been a change in such
                ownership . . . a statement of the amount of all equity securities of
21              such issuer of which the filing person is the beneficial owner; and . .
                . shall indicate ownership by the filing person at the date of filing,
22              any such changes in such ownership, and such purchases and sales
                of the security-based swap agreements as have occurred since the
23              most recent such filing . . . .

24  15 U.S.C. § 78p(a).  The particularity requirement of Rule 9(b) applies to plaintiff's Section 16(a)

25  claim, as the entirety of the Complaint sounds in fraud, as explained above.  <u>See</u> Section III.A.,

26  <u>supra</u>.  The Complaint here, however, fails to identify any particular Form 3, 4 or 5 filed or caused

27  to be filed by Mr. Smith, though it is only those documents which give rise to the Section 16(a)

28  claim.  <u>See</u> SEC Rule 16a-3, 17 C.F.R. § 240.16a-3 ("All such statements shall be prepared and

---

DEFENDANT DOUGLAS SMITH'S              20         CASE NO. 5:07-C02822-JF
MOT. TO DISMISS/STRIKE COMPLAINT                              268846

1 filed in accordance with the requirements of the applicable form.").  Rather, the Complaint lumps

2 all the defendants and their respective, unidentified Forms 4 together, alleging nothing more than

3 that "Landan, Smith, Abrams and Skaer each filed false Forms 4 with the Commission, prepared

4 by Skaer or under her direction, which misreported the grant date of stock options each received."

5 ¶ 79.  The Complaint does not even limit the time period of the Forms 4 that allegedly caused

6 defendants to violate Section 16(a).  Because plaintiff's claim lacks specificity and fails to allege

7 with any particularity the relevant Forms 3, Forms 4 or Forms 5,[14/] Mr. Smith cannot respond

8 meaningfully to this claim.  The Section 16(a) claim should be dismissed for failing to meet the

9 heightened pleading standard of Rule 9(b).

10          Even assuming that plaintiff could plead with particularity a Form 3, 4 or 5 filing

11 for which Mr. Smith was responsible, and even if those filings reflected allegedly backdated

12 grants, plaintiff has not alleged -- and cannot allege -- that Mr. Smith has not complied with the

13 requirements of Section 16(a) and Rule 16a-3.  Those provisions merely require the filing of the

14 requisite Forms with the SEC.  Plaintiff does not allege that Mr. Smith failed to file the periodic

15 statements of ownership mandated by Section 16(a) and Rule 16a-3 with the SEC.[15/]

16          In its attempt to throw as many claims against Mr. Smith as possible, plaintiff is

17 reading an additional requirement into Section 16(a) and Rule 16a-3 -- one which is not supported

18 by the plain language of the statute or rule nor supported by any case law -- by alleging that Mr.

19 Smith filed false or misleading statements of beneficial ownership.  While materially false SEC

20 filings may trigger liability under other sections of the securities laws, such as Sections 10(b) and

21 17(a) (which have been asserted against Mr. Smith), Section 16(a) and the Rules thereunder say

22

23 [14/]  Rule 16a-3 provides that an initial statement by an insider is to be made on Form 3, and
24 subsequent statements of changes in beneficial ownership are to be made on Form 4 or Form 5.  17 C.F.R. § 240.16a-3.

25 [15/]  Cases holding a defendant liable for violating Section 16(a) generally involve instances where
26 an insider fails to file such periodic reports.  See, e.g., SEC v. World-Wide Coin Invs., Ltd., 567 F. Supp. 724, 758 (D.C. Ga. 1983) (finding company liable for aiding and abetting
27 violations of Section 16(a) where officer had never filed Forms 3 and Forms 4); SEC v. Shattuck Denn Mining Corp., 297 F. Supp. 470, 477 (S.D.N.Y. 1968) (finding defendant liable
28 for Section 16(a) violation for his failure to make complete disclosures of his stock disposition in certain Forms 4).

DEFENDANT DOUGLAS SMITH'S          21          CASE NO. 5:07-C02822-JF
MOT. TO DISMISS/STRIKE COMPLAINT                                      268846

1   nothing about false filings.  While other provisions asserted by plaintiff may apply to such

2   conduct, its claim under Section 16(a) and Rule 16a-3 that Mr. Smith filed false Forms 3 and 4

3   must be dismissed for failure to state a claim.

4   VII.   The Tenth Claim for Relief for Violation of Section 14(a)
            of the Exchange Act and Rule 14a-9 Must Be Dismissed
5           for Failure to Plead with Particularity Any Specific Proxy
            Statement, or Any Particular Statement Made Therein
6           That Was Materially False or Misleading

7           To state a claim under Section 14(a) and Rule 14a-9, plaintiff must allege a false or

8   misleading statement or omission of material fact; that the misstatement or omission was made

9   with the requisite level of culpability, and that the proxy solicitation was an essential link in the

10  accomplishment of the transaction.  See Desaigoudar v. Meyercord, 223 F.3d 1020, 1022 (9th Cir.

11  2000) (citing TSC Indus. v Northway, Inc., 426 U.S. 438, 444 & n.7 (1976)).

12          The Section 14(a) claim here must be dismissed because plaintiff fails to identify

13  the precise proxy statements it alleges to be misleading or false, thus rendering it impossible to

14  determine whether the allegedly false or misleading statements were material.  More

15  fundamentally, plaintiff has not adequately alleged that Mr. Smith was actually involved in

16  drafting or releasing Mercury's proxy statements such that he may be liable for "soliciting"

17  proxies.

18          A.   The Particularity Requirement of Rule 9(b)
19               Applies to the Tenth Claim for Relief

20          Plaintiff's Section 14(a) claim is a fraud claim.  Although plaintiff had the option of

21  pleading facts supporting a theory that Mr. Smith acted negligently in disseminating proxy

22  statements containing misleading information, it chose not to do so.  Plaintiff chose instead to

23  allege fraudulent and intentional misconduct surrounding the granting of stock options at Mercury,

24  which underlies the Section 14(a) claim.  See, e.g., Cal. Pub. Employees' Ret. Sys. v. Chubb

25  Corp., No. Civ. 00-4285 (GEB), 2002 WL 33934282, at *31 (D.N.J. 2002) (rejecting plaintiffs'

26  attempt to plead a 14(a) claim based in negligence where it found that "[n]owhere in plaintiffs'

27  Complaint is there an assertion of ordinary negligence" and where "plaintiffs repeatedly refer to

28  the defendants' action as a 'fraudulent scheme,' or 'a campaign to persuade investors.'").

DEFENDANT DOUGLAS SMITH'S            22          CASE NO. 5:07-C02822-JF
MOT. TO DISMISS/STRIKE COMPLAINT                 268846

1   Plaintiff's apparent attempt to tailor its Section 14(a) claim to include allegations that Mr. Smith

2   acted negligently with regards to the proxy solicitations does not preclude Rule 9(b)'s application

3   to the Section 14(a) claim.  See id. (court's conclusion that Rule 9(b) applied to Section 14(a)

4   claim was "not altered by plaintiffs' attempt at transforming an action in fraud into a negligence

5   cause of action by adding a boilerplate assertion under [the Section 14(a) claim] 'expressly

6   disclaiming any allegations of fraud, knowledge, intent or scienter'"); see also In re Stac, 89 F.3d

7   at 1404-05 (holding, with respect to attempt to disclaim allegations of fraud regarding Section 11

8   claim only, that "[t]hese nominal efforts are unconvincing where the gravamen of the complaint is

9   plainly fraud and no effort is made to show any other basis for the claims").

10          B.      Plaintiff Fails to Allege Any Materially Misleading
                    Misrepresentation or Omission By Failing to
11                  Identify Any Specific Proxy Solicitations

12                  In contravention of Rule 9(b), plaintiff does not specifically identify which proxies

13   solicited between 1997 through 2003 violated Section 14(a), let alone specifically identify the

14   statements within such proxies it alleges were false or misleading.  By failing to identify which

15   statements were allegedly false or misleading, plaintiff makes it impossible to determine whether

16   any such misleading or false information was material, since the standard of materiality is that

17   "there is substantial likelihood that a reasonable shareholder would consider [the omitted or

18   misleading information] important in deciding how to vote."  TSC Industries, 426 U.S. at 449.  To

19   maintain a Section 14(a) claim, plaintiff needs to demonstrate the materiality of the allegedly false

20   or misleading statement.  Desaigoudar, 223 F.3d at 1026 ("there can be no Section 14(a) liability

21   without materiality").  Immateriality may be decided as a matter of law "if the alleged

22   misrepresentations or omissions are so obviously unimportant to an investor that reasonable minds

23   cannot differ on the question of materiality."  Weiner v. Quaker Oats Co., 129 F.3d 310, 317

24   (3d Cir. 1997) (internal citations omitted).

25                  Because plaintiff has not identified specific statements within specifically identified

26   proxy statements that are alleged to be materially false or misleading, Mr. Smith is unable to

27   answer the Section 14(a) claim against him by showing, for example:  (i) that any of the

28   statements alleged to be false or misleading was immaterial as a matter of law because a

DEFENDANT DOUGLAS SMITH'S              23          CASE NO. 5:07-C02822-JF
MOT. TO DISMISS/STRIKE COMPLAINT                   268846

1   reasonable investor would not consider statements about stock option grants important in deciding

2   on how to vote on unrelated issues, see, e.g., Seinfeld v. Bartz, 322 F.3d 693, 698 (9th Cir. 2003)

3   (rejecting argument that omitted information about Black-Scholes valuation of shares granted to

4   executive officers was material when voting on amendment to stock option plan for grants to

5   outside directors); (ii) that many of the Company's proxy statements contain no information

6   whatsoever about Mr. Smith's grant dates; or (iii) that claims based on proxy statements issued

7   before May 31, 2002 are barred by the statute of limitations.  Without the requisite particularity

8   regarding the challenged proxy statements and the alleged false or misleading statements therein,

9   Mr. Smith cannot respond to this claim.

10          C.      Plaintiff Has Not Pled Any Facts to Show
                    Whether or to What Extent Mr. Smith
11                  Participated in Soliciting Proxies

12          Lastly, the Complaint says nothing about whether Mr. Smith had any real

13   involvement in the issuance of the proxy statements, other than by stating conclusorily that

14   Mr. Smith, along with the other defendants, "prepared and/or reviewed each proxy statement . . .

15   between 2000 and 2003 . . . ."  ¶ 112.  But such a conclusory statement ignores the fact that

16   Mr. Smith's position -- and thus responsibilities -- changed while he was at Mercury, since for part

17   of his tenure, he served as Executive Vice President of Corporate Development, and only in late

18   2001 became CFO.  ¶ 13.  The fact that the Complaint summarily alleges that Mr. Smith "prepared

19   and/or reviewed" each proxy statement during the entirety of his tenure at Mercury -- regardless of

20   his position at the Company -- underscores the Complaint's lack of specificity and its inability to

21   plead any facts showing Mr. Smith's participation in soliciting proxies, whether as Executive Vice

22   President of Corporate Development or as CFO.  See Tracinda Corp. v. Daimler-Chrysler AG, 364

23   F. Supp. 2d 362, 391 (D. Del. 2005) (holding that defendant who "may have read" proxy

24   solicitation but was not involved in preparing or approving the document could not be subject to

25   Section 14(a) liability).  Plaintiff's Section 14(a) claim should therefore be dismissed for failing to

26   plead a violation by Mr. Smith with particularity.

27

28

DEFENDANT DOUGLAS SMITH'S            24        CASE NO. 5:07-C02822-JF
MOT. TO DISMISS/STRIKE COMPLAINT                           268846

1

<u>CONCLUSION</u>

2

For all of the foregoing reasons, the Complaint must be dismissed for failure to

3

state a claim pursuant to Rule 12(b)(6), and failure to plead fraud with particularity pursuant to

4

Rule 9(b).  In the alternative, the claim for forfeiture of Mr. Smith's bonuses and stock profits

5

pursuant to Section 304 must be stricken pursuant to Rule 12(f).  Similarly, any claim or portion of

6

a claim based on alleged conduct by Mr. Smith occurring outside the five-year federal catch-all

7

statute of limitations (or, with respect to claims arising under the Sarbanes-Oxley Act, the four-

8

year statute of limitations) must be dismissed and/or stricken from the Complaint.

9

Dated:  October 1, 2007                           SHEARMAN & STERLING LLP

10

11

By:  _____/s/_____

12

Jeffrey S. Facter

13

Attorneys for Defendant Douglas Smith

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---