A. DAVID WILLIAMS (Cal. Bar No. 183854) (williamsdav@sec.gov )
JOSEPH V. JEST (DC Bar No. 412338) (jestj@sec.gov )
Attorneys for Plaintiff
U.S. Securities and Exchange Commission
100 F Street, NE
Washington, DC 20901-4010
Telephone:  (202) 551-4548 (Williams)
Fax: (202) 972-9246 (Williams)

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. C-07-2822 JF |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO LANDAN'S, ABRAMS, SMITH'S AND SKAER'S MOTION TO DISMISS** |
| v. | Date:   March 14, 2008 |
| MERCURY INTERACTIVE, et al. | Time:  9:00 am |
| Defendants. | Courtroom No. 3, 5th Floor |
| | Judge: Hon. Jeremy Fogel |

# TABLE OF CONTENTS

Page

Table of Contents ...........................................................................................i

Table of Authorities.....................................................................................ii

I.     Introduction.........................................................................................1

II.    Issues To Be Decided ........................................................................1

III.   There Is No Basis For Dismissing Any Part of the Commission's Complaint ..........1

       A.    The Standards For Pleading Securities Law Claims And A Motion To Dismiss Preclude Dismissal Of The Complaint ...............................................1

       B.    The SEC Has Adequately Pled With Particularity The Circumstances Constituting Fraud Under Rule 9(b) And Abrams, Skaer, Landan and Smith Are Able To Frame Responsive Pleadings ....................................................3

       C.    The SEC Has Adequately Pled A Claim For Relief Pursuant To Section 304 of the Sarbanes-Oxley Act of 2002 with Respect to Landan and Smith........10

       D.    The SEC's Third Through Fifth and Seventh Through Eighth Claims Adequately Pled Claims For Relief  ............................................................14

       E.    The SEC Has Adequately Pled A Claim For Relief Pursuant to Section 16(a) of the Exchange Act and Rule 16a-3 thereunder .................................17

       F.    The SEC Has Adequately Pled A Claim For Relief Pursuant to Section 14(a) of the Exchange Act and Rule 14a-9 thereunder ...........................................18

       G.    The SEC Has Adequately Pled A Claim For Relief Notwithstanding the Application of Any Applicable Statute of Limitations .................................19

IV.    CONCLUSION.........................................................................................25

# TABLE OF AUTHORITIES

## CASES

Aaron v. SEC, 446 U.S. 680 (1980)......................................................................3

Badaracco v. Commissioner of Internal Revenue, 464 U.S. 386 (1984)..........................20

 Basic Inc. v. Levinson, 485 U.S. 224 (1988) .......................................................8

Betz v. Trainer Wortham & Co., 504 F.3d 1017 (9th Cir. 2007)........................................13

Cellars v. Pacific Coast Packaging, Inc., 189 F.R.D. 575 (N.D.Cal. 1999)......................25

Cooper v. Pickett, 137 F.3d 616 (9th Cir. 1997) ..............................................2

Cope v. Anderson, 331 U.S. 461 (1945) ............................................................21

Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litigation), 42 F.3d 1541 (9th
    Cir. 1994) ..........................................................................2, 3, 9, 10

E.I. DuPont De Nemours & Co. v. Davis, 264 U.S. 456 (1924).......................................20

FEC v. Williams, 104 F.3d 237 (9th Cir.1996) .....................................20, 21, 24

Fecht v. Price Co., 70 F.3d 1078 (9th Cir. 1995) ..................................................2

GAF Corp. v. Milstein, 453 F.2d 709 (2nd Cir. 1971)........................................17

Getty v. Harmon, 53 F. Supp. 2d 1053 (W.D. Wa. 1999)..................................................21

Goodman v. Epstein, 582 F.2d 388 (7th Cir. 1978) ............................................21

Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982) ..................................................22

Hishon v. King & Spalding, 467 U.S. 69 (1984) ..................................................2

Howard v. Everex Systems, Inc., 228 F.3d 1057 (9th Cir. 2000)........................................8

Interamericas Investments Ltd. v. Board of Governors of the Federal Reserve
    System, 111 F.3d 376 (5th Cir. 1997) ..............................................22, 24

In re AFC Enterprises, Inc., Derivative Litigation, 224 F.R.D. 515 (N.D. Ga 2004) ........12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In re Atmel Derivative Litigation, C-06-4592 JF, 2007 WL 2070299 (N.D. Cal. July 16, 2007)..................................................................................................................24

In re Ditech Networks, N. C 06-5157 JF, 2007 WL 2070300 (N.D. Cal. July 16, 2007) ............................................................................................................................7

In re JDN Realty Securities Litigation, 182 F. Supp. 2d 1230 (N.D.Ga 2002)...................9

In re Stac Electronics Securities Litigation, 89 F.3d 1399 (9th Cir. 1996) ......................10

Kaplan v. Newman, Federal  Sec. Law Rep. P93,134, 1971 WL 283 (E.D.N.Y. July 2, 1971)........................................................................................................7

Landgraf v. USI Film Products, 511 U.S. 244 (1994) ......................................................12

Levald, Inc. v. City of Palm Desert, 998 F.2d 680 (9th Cir. 1993) ...................................20

Maldonado v. Flynn, 597 F.2d 789 (2nd Cir.1979)............................................................7

Michaels Building Co v. Ameritrust, 848 F.2d 674 (6th Cir.1988)......................................3

Middlesex Retirement System v. Quest, 2007 WL 3286784 (C.D. Cal. October 22, 2007) ...............................................................................................10, 11, 23

Mullikin v. United States, 952 F.2d 920 (6th Cir. 1992)...................................................20

Newman v. Universal Pictures, 813 F.2d 1519 (9th Cir. 1987) .........................................2

Pierce v. SEC, 239 F.2d 160 (9th Cir. 1956)....................................................................21

Ponce v. SEC, 345 F.3d 722 (9th Cir. 2003) ...............................................................15, 16

SEC v. Blavin, 760 F.2d 706 (6th Cir. 1985) .....................................................................8

SEC v. Cotton, No. SACV 06-0905-AG (C. D. Cal. December 21, 2006) ......................23

SEC v. Durgarian, 477 F. Supp. 2d 342 (D. Mass 2007) ................................................10

SEC v. Falstaff Brewing Corp., 629 F.2d 62 (D.C. Cir. 1980)..........................................19

S.E.C. v. First California Capital Markets Group, Inc., No. C-97-02761-CRB (N.D. Cal. July 30, 1998)...........................................................................................21

SEC v. ICN Pharmaceuticals, Inc., 84 F. Supp. 2d 1097 (C.D. Cal. 2000) ........................3

SEC v. Kalvex, 425 F. Supp. 310 (S.D.N.Y 1975) ...........................................................16

SEC's Opposition to Landan, Abrams, Smith and Skaer's Motion to Dismiss
Case No. 5:07-CV-2822 JF

SEC v. Levin, 232 F.R.D. 619 (C.D. Cal. 2005)............................................................2

SEC v. Levy, 706 F. Supp. 61 (D. D.C. 1989) ...................................................18

SEC v. Lucent Technologies, 363 F. Supp. 2d 708 (D.N.J. 2005) .....................................17

SEC v. Lucent Technologies, 2005 WL 1206841 (D.N.J. May 20 2005)..........................10

SEC v. McNulty, 137 F.3d 732 (2d Cir. 1998)...................................................15

SEC v. Ogle, No. 99 C 609, 2000 WL 45260 (N.D. Ill. Jan. 11, 2000)............................23

SEC v. Rana Research, Inc., 8 F.3d 1358 (9th Cir. 1996) .....................................3

SEC v. Reyes, 491 F. Supp. 2d 906 (N.D.Cal 2007)...........................................7

SEC v. Richie, No. EDCV 06-63-VAP (C.D. Cal. May 9, 2006) ................................22

SEC v. Rind, 991 F.2d 1486 (9th Cir.) .............................................3, 19, 20, 21

SEC v. Willis, 472 F. Supp. 1250 (D.D.C. 1978)...............................................18

SEC v. World-Wide Coin Investments, 567 F. Supp. 724 (ND GA 1983)..........................8

SEC v. Yuen, 221 F.R.D. 631 (C.D. Cal. 2004) ...............................................2

SEC v. Yuen, 2006 U.S. Dist. LEXIS 33938 (C.D. Cal. March 16, 2006) ........................15

Simpson v. AOL Time Warner, 452 F.3d 1040 (9th Cir. 2006)............................................8

Smith v. Jackson, 84 F.3d 1213 (9th Cir. 1996) ...............................................2

Supermail Cargo v. United States, 68 F.3d 1204 (9th Cir.1995)................................21, 24

Thomson v. City of Shasta Lake, 314 F. Supp. 2d 1017 (E.D.Cal 2004) .........................14

Trotter v. International Longshoremen's & Warehouseman's Union Local 13, 704
    F.2d 1141 (9th Cir.1983) .........................................................14

U.S. v. Campbell Soup Co., No. CIV-S-95-1854 - DFL, 1997 WL 258894 (E.D.
    Cal. March 11, 1997) ...............................................................21

U.S. v. Naftalin, 441 U.S. 768 (1979)............................................................3

United States ex rel. Hyatt v. Northrop Corp., 91 F.3d 1211 (9th Cir. 1996) ...................24

United States v. Bilzerian, 926 F.2d 1285 (2d Cir. 1991) ...................................................18

United States v. Brown, 578 F.2d 1280 (9th Cir. 1978).....................................................23

United States v. McDonald, 576 F.2d 1350 (9th Cir. 1978)................................................23

U.S. v. Hempfling, 431 F. Supp. 2d 1069 (E.D. Cal. 2006)..................................................3

Vess v. Ciba-Geigy Corp., 317 F.3d 1097 (9th Cir.2003) ..................................................15

Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273 (11th Cir. 2006) ...........................9

Walling v. Beverly Enterprises, 476 F.2d 393 (9th Cir. 1973) .............................................2

In re Wells Fargo Securities Litigation, 12 F.3d 992 (9th Cir. 1993)...................................8

Wilson v. Great American Industries, Inc., 855 F.2d 987 (2d Cir. 1988)...........................18

In re Zoran Corp. Derivative Litigation, 511 F. Supp. 2d 986 ...........................................18

## STATUTES, RULES AND REGULATIONS

28 U.S.C. § 1658..........................................................................................................13, 14

28 U.S.C. § 2462......................................................................................................19, 20

Fed. R. Civ. P. 8(a)(2) ...............................................................................................1, 2

Fed. R. Civ. P. Rule 9(b) ............................................................................................1, 2

Fed. R. Civ. P. Rule 12(b) ...............................................................................................1

**Securities Exchange Act of 1934 [15 U. S. C. § 78a, et seq.]**

      Rule 10(b)-5 [17 C.F.R. § 240.10b-5].................................................................3, 23

      Rule 17a-3 [17 C.F.R. § 240.17a-3].......................................................................23

Item 402(a) of Regulation S-K [17 C.F.R. §§ 229.402(a)] ...............................................18

Sarbanes Oxley Section 3(b)(1), 15 U.S.C. § 7202 ........................................................14

Sarbanes Oxley Section 302, 15 U.S.C. § 7241...............................................................11

Sarbanes-Oxley Act Section 304, 15 U.S.C. § 7243........................................................11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**OTHER AUTHORITIES**

2A James Wm. Moore et al., *Moore's Federal Practice* ¶ 903 (2d ed. 1972) ....................2

Senate Amendment 4198 to S. 2673, Arnold & Porter LLP, Sarbanes-Oxley Act
   of 2002 Legislative History, 40-C (2002 WL 32054475).   ..........................................12

SEC's Opposition to Landan, Abrams, Smith and Skaer's Motion to Dismiss
Case No. 5:07-CV-2822 JF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**I.      INTRODUCTION**

Plaintiff Securities and Exchange Commission ("SEC" or the "Commission") opposes the

motions of defendants Sharlene Abrams, Amnon Landan, Douglas Smith and Susan Skaer to

dismiss its Complaint.  The defendants assert that the Complaint, or certain aspects of the

Complaint, are improperly pled should be stricken, dismissed, or further explained.  For all claims,

Fed. R. Civ. P. 8(a)(2) requires nothing more than "a short and plain statement of the claim

showing that the pleader is entitled to relief."  Fed. R. Civ. P. Rule 9(b)'s requirement that the

circumstances constituting fraud be stated with particularity requires only that plaintiff plead

sufficient information to enable preparation of a responsive pleading and scienter may be pled

generally.  The Commission's claims as alleged in the Complaint are set forth in great detail.  The

defendants cannot legitimately contend that they have insufficient notice to respond to the

allegations and articulate defenses to those allegations.  As demonstrated more fully below, the

Complaint easily passes muster under Rules 8(a)(2) and 9(b), and no application of the statute of

limitations acts as a bar to the Commission's claims.  The motions should be denied.

**II.      ISSUES TO BE DECIDED**

1.      Whether the SEC's complaint pleads securities fraud against Landan, Skaer, Smith

and Abrams with the requisite particularity?

2.      Whether the SEC's complaint properly pleads a claim of relief under Section 304 of

the Sarbanes-Oxley Act of 2002 against Smith and Landan?

3.      Whether the SEC's complaint properly pleads claims with respect to its non-fraud

allegations in Counts Three through Eight against Landan, Smith, Skaer and Abrams?

4.      Whether the application of the statute of limitations requires dismissal of the fraud

claims or prayer for relief pursuant to Section 304 of the Sarbanes-Oxley Act of 2002?

**III.    THERE IS NO BASIS FOR DISMISSING ANY PART OF THE
          COMMISSION'S COMPLAINT**

**A.      The Standards For Pleading Securities Law Claims And A Motion
          To Dismiss Preclude Dismissal Of The Complaint**

Landan, Skaer, Abrams and Smith move to dismiss pursuant to Rules 12(b)(6) and 9(b) of

1   the Federal Rules of Civil Procedure.  Dismissal under Rule 12(b)(6) is appropriate "only if it is

2   clear that no relief could be granted under any set of facts that could be proved consistent with the

3   allegations." *SEC v. Levin*, 232 F. R. D. 619, 622 (C.D. Cal. 2005) (citing *Newman v. Universal*

4   *Pictures*, 813 F.2d 1519, 1521-22 (9th Cir. 1987), *quoting Hishon v. King  & Spalding*, 467 U.S. 69,

5   73 (1984)).  The allegations of material fact must be taken as true and construed in the light most

6   favorable to the Commission.  *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996).

7        Rule 9(b) provides that, "in all averments of fraud or mistake, the circumstances

8   constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).   In securities

9   fraud actions, the plaintiff must aver with particularity the circumstances constituting the fraud.

10  *Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.)*, 42 F.3d 1541, 1547 (9th Cir. 1994) (en

11  banc).  A pleading is sufficient if it identifies the circumstances of the alleged fraud so that the

12  defendant can prepare an adequate answer. *SEC v. Yuen*, 221 F.R.D. 631, 634 (C.D. Cal. 2004);

13  *Fecht v. Price Co.*, 70 F.3d 1078, 1082 (9th Cir. 1995).  The notice requirement means that the

14  complaint should contain allegations of the time, place, and nature of the alleged fraudulent

15  activities. *Fecht,* 70 F.3d at 1082.  In addition, to the extent that fraudulent activities include false

16  or misleading statements, the plaintiff must set out what is false or misleading about the statement,

17  and why it is false.  *In re Glen Fed*, 42 F.3d at 1548.  Any statement or omission must be false or

18  misleading when made.  *Id*. at 1548-49.

19       However, Rule 9(b) does not require the pleading of detailed evidence concerning each and

20  every fraudulent act committed by the defendants.  *Walling v. Beverly Enterprises,* 476 F.2d 393,

21  397 (9th Cir. 1973) (*quoting* 2A James Wm. Moore et al., *Moore's Federal Practice* ¶ 903, at 1930

22  (2d ed. 1972)) ("Rule 9(b) does not require nor make legitimate the pleading of detailed

23  evidentiary matter."); *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (in the context of an

24  improper revenue recognition case, the Court held that "[i]t is not fatal to the complaint that it does

25  not describe in detail a single specific transaction . . . by customer, amount, and precise method.

26  Comparable precedent does not require greater detail.").  Moreover, Rule 9(b) should be read in

27  harmony with the Rule 8 requirement of a "short and plain statement of the claim," and

28  consequently, "[w]here fraud allegedly occurred over a period of time, . . . Rule 9(b)'s requirement

2

1    that the circumstances of the fraud be stated with particularity are less stringently applied." *U.S. v.*

2    *Hempfling*, 431 F.Supp.2d 1069, 1075 (E.D. Cal. 2006) (general allegations of defendant's conduct

3    over three year period gave adequate notice of fraudulent conduct alleged); *see Michaels Bldg. Co*

4    *v. Ameritrust*, 848 F.2d 674, 679 (6th Cir.1988).

5            In accordance with the final sentence in Rule 9(b), the complaint need only state that the

6    required scienter existed. *In re Glen Fed,* 42 F.3d at 1547. Furthermore, the heightened pleading

7    requirements of the Private Securities Litigation Reform Act of 1995 (PSLRA) do not apply to

8    SEC actions. *SEC v. ICN Pharms., Inc*., 84 F. Supp. 2d 1097, 1099 (C.D. Cal. 2000).

9            Under these standards, the Commission has alleged sufficient facts to withstand the

10   Defendants' motion to dismiss the SEC's fraud claim under Rules 12(b)(6) and 9(b).

11   **B.    The SEC Has Adequately Pled With Particularity The Circumstances**
**Constituting Fraud Under Rule 9(b) And Abrams, Skaer, Landan and Smith**
12   **Are Able To Frame  Responsive Pleadings**

13           The SEC alleges Landan, Abrams, Skaer and Smith violated the anti-fraud provisions of

14   Section 10(b) of the Securities Exchange Act of 1934 ("the Exchange Act") and Rule 10b-5, as

15   well as Section 17(a) of the Securities Act of 1933 ("the Securities Act."). To establish liability

16   under Section 10(b) and Rule 10b-5, the SEC must prove four elements: (1) a fraudulent device,

17   material misrepresentation or omission, or an act that operated as a fraud or deceit; (2) in

18   connection with the purchase or sale of a security, (3) scienter, and (4) use of the jurisdictional

19   means. *SEC v. Rana Research, Inc.*, 8 F.3d 1358, 1363-64 (9th Cir. 1996) (adopting elements of

20   10b-5). The SEC is not required to prove reliance or injury. *Rana Research*, 8 F.3d at 1364 (no

21   reliance); *SEC v. Rind*, 991 F.2d 1486, 1490 (9th Cir.), *cert. denied*, 510 U.S. 963 (1993) (no

22   injury). Section 17(a) of the Securities Act prohibits fraud in the offer or sale of securities. *See*

23   *U.S. v. Naftalin*, 441 U.S. 768, 771-72 (1979). Scienter need not be shown to establish violations

24   of Sections 17(a)(2) or 17(a)(3) of the Securities Act. *Aaron v. SEC*, 446 U.S. 680, 697 (1980).

25           The Complaint alleges that over an eight year period from at least 1997 through 2005,

26   Landan, and at various times Abrams, Smith and Skaer participated in a fraudulent scheme to

27   backdate stock options, including stock option grants to themselves, and to conceal their self

28

SEC's Opposition to Landan, Abrams, Smith and Skaer's Motion to Dismiss
Case No. 5:07-CV-2822 JF

dealing from Mercury's shareholders by making false disclosures and misrepresenting stock option compensation expense being accrued by the company under Generally Accepted Accounting Principles ("GAAP").  (Com. ¶1).  Through the scheme, the Complaint alleges that each of the Defendants defrauded Mercury and its public shareholders through their conduct, which included concealing approximately $258 million in compensation expense incurred by the company through grants of in-the-money stock options. (Com. ¶ ¶ 1, 101).

The Complaint clearly alleges how the backdating took place.  Former Chief Executive Officer ("CEO") Landan, former Chief Financial Officer ("CFO") Abrams, and former CFO Smith had the responsibility, delegated from Mercury's board, for granting options to most employees of the company.  (Com. ¶¶ 1, 23, 25).  The company's stock option plan required options to be priced at the closing price of the company's stock at the date of grant.  (Com. ¶ 16).  Nevertheless, Landan, Abrams and Smith, in breach of a fiduciary duty, each knowingly looked back to pick purported grant dates for stock options based upon low-points of the company's stock, and signed backdated documents to memorialize the dozens of grants made in this fashion.  (Com. ¶¶ 1, 25, 26, 27, 28, 30, 39, 40).   Abrams at times requested a historical stock price chart from Mecury's stock option administrator to use to select the purported grant date.  (Com. ¶ 27).   Once the date was picked, Abrams and Landan executed unanimous written consents memorializing the grant. (Com. ¶ 28).  After Abrams left Mercury in November 2001, Smith assumed her role in selecting historical dates to be reflected as grant dates along with Landan.  (Com. ¶ 30).

Landan, Abrams, Smith and Skaer, the company's former General Counsel, each also participated in selecting historical dates to be represented as the "grant dates" for options to company executives, including themselves, approved by Mercury's board.  (Com. ¶¶ 1, 25, 32, 34). Landan decided how many options each senior executive would receive.  (Com. ¶ 32).   These options would be given purported grant dates that were chosen in the same manner as the employee grants; indeed, the executive grants typically were given the same purported "grant date" as employee grants.  (Com. ¶ 32).   The grants were memorialized by unanimous written consents signed by Mercury's Compensation Committee.  (Com. ¶ 33).  These consents falsely represented that the options had been granted "as of" the date chosen by the defendants.  (Com. ¶ 33).  Skaer

participated in the process of selecting fraudulent grant dates and prepared the documentation memorializing the grants. (Com. ¶¶ 1, 25, 31, 36). Skaer prepared falsified unanimous written consents and Board and Compensation Committee minutes, false Forms 4 reporting the grants to the SEC, and the company's public filings which falsely and misleadingly disclosed the company's stock option grants and fraudulently omitted the compensation expense being incurred. (Com. ¶¶ 1, 25, 31, 36, 102, 107, 112, 114).

The Complaint goes on to describe in detail the facts surrounding four particular grants, two in 1999 involving Abrams and Landan, as well as two in 2002 involving Landan, Smith and Skaer. (Com. ¶¶ 47-78). The Complaint identifies each of the 45 grants which are alleged to have been backdated, including the date that the grant was made and the date that the grant was purported to have been made by the Defendants. (Com. ¶45). The Complaint further describes in detail numerous false statements made by Landan, Abrams, Smith, and Skaer to conceal the fraudulent scheme. These false statements included misrepresentations to Mercury's auditors (Com. ¶¶ 108, 109, 110, 111); misrepresentations in Mercury's proxy statements (Com. ¶¶ 112, 113); misrepresentations in registration statements filed by Mercury (Com. ¶¶ 114, 115); and misrepresentations in Mercury's financial statements, including the description of the company's stock option granting practices and compensation expense being incurred as a result of the conduct. (Com. ¶¶ 98-106).

The Complaint makes clear what the misrepresentations were. For instance, in annual reports in each year between 1997 and 2005, prepared in most years by Skaer and filed under the signatures of Landan, Smith and Abrams, Mercury disclosed that the company granted employee stock options at the fair market value of the company's stock on the date of grant, so no compensation cost was recorded. (Com. ¶¶ 99, 100, 102). In fact, the company was granting employee stock options with prices less than the fair market value on the date of grant and incurring compensation expense, based on the previously described conduct of Landan, Abrams, Smith and Skaer. (Com. ¶ 101). Through Landan, Smith, Skaer and Abrams' course of conduct, Mercury concealed $258 million in compensation expense through 2004. (Com. ¶¶ 1, 101)

In addition, the Complaint alleges that during at least 1998 through 2001, Mercury, acting through Landan, Abrams and Skaer, made false and misleading disclosures relating to the stock

SEC's Opposition to Landan, Abrams, Smith and Skaer's Motion to Dismiss
Case No. 5:07-CV-2822 JF

1    option exercises of certain of Mercury's senior officers.  (Com. ¶¶ 2, 82).    The Complaint alleges

2    in detail the factual "who, what, when, where" of the conduct of Mercury executives, including

3    Landan and Abrams, who backdated exercises by weeks and sometimes months to dates consistent

4    with low-points of the company's stock, in order to minimize their taxable gain on exercise, and

5    thereby depriving Mercury of the tax deduction that the company was entitled to on the full extent

6    of the gain.  (Com. ¶¶ 2, 82).    The Complaint describes which exercises of stock options Landan

7    and Abrams backdated.  (Com. ¶¶ 88, 89).  The Complaint then describes precisely how Landan,

8    Abrams and Skaer concealed the conduct, through the submission of false and misleading proxy

9    statements and forms filed with the SEC.  (Com. ¶¶ 90, 91).  The Complaint then describes in

10   detail the facts surrounding one of the backdated exercises, clearly explaining the conduct that

11   Landan, Abrams and Skaer engaged in with respect to that exercise.  (Com. ¶¶ 92-97).

12          The Complaint also alleges that Landan and Abrams manipulated the company's reported

13   earnings per share ("EPS") to meet or exceed financial analyst consensus expectations by

14   managing the timing of revenue recognition of the company's products (Com. ¶¶ 3, 117), and that

15   Abrams and Skaer participated in the fraudulent structuring of overseas employee stock option

16   exercise transactions to conceal the variable accounting consequences of those transactions.  (Com.

17   ¶¶ 4, 135, 136).  In connection with the earnings management allegations, the Complaint details

18   that Landan and Abrams created a secret backlog of revenue, which was recognizable at the

19   discretion of Landan and Abrams, by directing others to hold and not ship ordered products toward

20   the end of quarters once revenue targets had been achieved.  (Com. ¶ 120).  The Complaint goes on

21   to allege misstatements by Landan and Abrams in Mercury's financial statements filed in March

22   1998 and March 1999 – Landan and Abrams represent that Mercury "does not have a significant

23   backlog . . . and . . . that . . . backlog is not significant to an understanding of its business or

24   representative of potential revenue for any future period."  (Com. ¶ 123).  The Complaint also

25   alleges material omissions with respect to backlog in subsequent financial statements signed by

26   Landan and Abrams.  (Com. ¶ 125).   The Complaint alleges that Landan and Abrams knew those

27   statements to be false and misleading at the time the statements were made.  (Com. ¶ 124-128).

28          With respect to the fraudulent structuring of overseas employee stock option exercises, the

     Complaint describes who was involved – Skaer and Abrams.  (Com. ¶ 134).    The Complaint

6

details what Skaer and Abrams did – structuring stock option early exercises to appear to be fully recourse obligations when they were not by creating documentation that mischaracterized the transaction. (Com. ¶ 136). The Complaint clearly lays out when the conduct took place – the early exercises began to be implemented in late 1999, the false documentation was created in mid-2001, and the accounting consequences spanned from 1999 through 2005. (Com. ¶¶ 132-144). And, further, the Complaint explains why Abrams and Skaer undertook these actions – to avoid the accounting consequences associated with properly documenting the transactions. (Com. ¶¶ 135, 136, 139, 141).

Clearly, the conduct alleged against Landan, Smith, Skaer and Abrams make out claims of fraud. Those responsible for granting stock options who cause options to be granted at less than fair market value in violation of a shareholder-approved stock option plan breach their fiduciary duty to the company and defraud the company under the federal securities laws. *Kaplan v. Newman*, Fed. Sec. Law Rep. P93,134 (1971 WL 283, *6) (E.D.N.Y. 1971) (Where the defendants "were in control of the determination of the fair market value of the stock and they are charged on the ground that in violation of Section 10(b) and Rule 10b-5 [of the Exchange Act] they caused the options to be granted at a price that directly transgressed the limitation of the qualified stock option plan, and in doing that, . . . the scheme of issuance was a fraud on [the stockholders of the corporation]."); *see SEC v. Reyes*, 491 F.Supp.2d 906, 909 (N.D.Cal 2007) ("[u]ndisclosed use of a company's vault is improper, whether it lines the pockets of the chief executive or his preferred employees"). The undisclosed backdating of option exercises likewise defrauded the company by depriving it of an appropriate tax deduction. *See Maldonado v. Flynn*, 597 F.2d 789, 793 (2nd Cir.1979). As this Court has stated, "a plaintiff likely could proceed past the pleading stage by alleging sufficient factual detail as to the mechanics of an option backdating scheme, including the specific roles and mental states of the various participants." In re Ditech Networks, No. C 06-5157 JF, 2007 WL 2070300, *7, fn. 7 (N.D.Cal July 16, 2007). Such detail has been pled here. In addition, the defendants made statements to the market in the company's financial statements and elsewhere with respect to how stock options were being granted that were false, and failed to

report compensation expense required by GAAP.[1]  Also, Landan and Abrams made false

representations about how the company managed its shipping practices in order to conceal the fact

that those practices were being used to manipulate the company's earnings.  The allegations that

Landan, Smith, and Abrams made these "affirmative representations inconsistent with the state of

corporate affairs they knew to exist" at Mercury adequately plead a fraud claim.  *In re Wells Fargo*

*Securities Litigation*, 12 F. 3d 992 (9th Cir. 1993), *cert. denied*, 513 U.S. 917 (1994).

Further, the conduct of Skaer that has been pled, including her participation in decisions to

backdate options, her participation in the fraudulent structuring of overseas employee stock option

exercise transactions, and her preparation of documentation of the false transactions and public

filings that contain the misrepresentations with respect to the transactions that she knows or is

reckless in not knowing to be false, adequately pleads a fraud claim against her.  The Complaint

alleges that Skaer prepared, and signed, publicly filed documents that make misrepresentations

with respect to executive stock option transactions, including Forms 4 filed with the Commission

and a registration statement for Mercury which incorporates by reference annual reports which are

alleged to be materially false.  (Com. ¶¶ 1, 25, 31, 36, 79, 91, 92, 94. 114).  The Ninth Circuit has

made clear that "signers of documents should be held responsible for the statements in the

document."  *Howard v. Everex Systems, Inc.*, 228 F.3d 1057, 1061 (9th Cir. 2000).  Moreover,

individuals who are substantial participants in a scheme to defraud may be primarily liable for

violations of the anti-fraud provisions even where they do not directly make fraudulent statements.

*Id*. at 1061, n.5 ("[W]e have held that substantial participation or intricate involvement in the

preparation of fraudulent statements is grounds for primary liability even though that participation

might not lead to the actor's actual making of the statements."); *Simpson v. AOL Time Warner,* 452

---

[1]     The misrepresentations alleged were material.  A misrepresentation is material if "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."  *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988).  The conduct alleged, including substantial overstatements of GAAP income over a period of several years, and substantial misstatements relative to executive compensation, could be viewed as having 'altered the total mix available" to investors.  *See  SEC v. Blavin*, 760 F.2d 706, 711 (6th Cir. 1985)( Information regarding the financial condition of an issuer is presumptively material); *SEC v. World-Wide Coin Investments*, 567 F.Supp. 724, 753-754 (ND Ga 1983) (Omissions and misrepresentations relating to inadequate consideration given by CEO in exchange for corporate stock were material to investors – corporation violated Section 10(b) of the Exchange Act by making false and misleading disclosures and omissions).

8

1  F.3d 1040, 1048 (9ᵗʰ Cir. 2006) (defendant liable as a primary violator where "a defendant's

2  conduct or role in an illegitimate transaction has the principal purpose and effect of creating a false

3  appearance of fact in furtherance of the scheme.").  Where a defendant "consciously participate[s]

4  in a scheme to conceal executive compensation," and permits a corporation "to issue false public

5  disclosures regarding executive compensation and related party transactions," it is reasonable to

6  infer that the defendant "knew, or was severely reckless in not knowing, that the[] disclosures were

7  incomplete and that he was making misrepresentations to [the company's] shareholders." *In re*

8  *JDN Realty Securities Litigation*, 182 F.Supp.2d 1230, 1248 (N.D.Ga 2002) (corporate officer who

9  prepared documents concealing the nature of transactions involving executive compensation and

10  related party transactions and permitted corporation to file reports which failed to disclose those

11  transactions acts with scienter as required by Section 10(b) of the Exchange Act.).

12      With respect to each defendant, the "who, what, when and where" of the fraudulent

13  conduct are clearly set out in detail.  Nothing more is necessary to survive a motion to dismiss.

14  Yet, notwithstanding this detail, the defendants contend that the SEC has not pled its claims of

15  fraud with particularity because the fraud claims in the Complaint incorporate by reference each of

16  the 144 paragraphs of the Complaint that precede the SEC's claims for relief.  The defendants

17  maintain that such pleading amounts to improper "shotgun" pleading, and that such pleading is

18  contrary to the particularity requirements of Rule 9(b).  However, the factual allegations in this

19  Complaint lay out in a plain, particularized way exactly what each of the defendants is alleged to

20  have done, and the consequences of those actions.  In the case primarily relied upon by the

21  defendants, *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273 (11ᵗʰ Cir. 2006), the court

22  criticized the incorporation by reference of all antecedent facts in each claim, focusing on the fact

23  that it could not discern whether the conduct of the defendants amounted to fraud.[2]  Here, however,

24  the Complaint details the circumstances surrounding the fraud, including the particular conduct of

25  each defendant.  This all Rule 9(b) requires; more would "make Rule 9(b) carry more weight than

26  it was meant to bear."  *GlenFed Inc. Securities Litig.,* 42 F.3d 1553-1554.

27  _____

   [2]      Even in *Wagner*, however, the appellate court held that it was improper to grant a Rule 12(b)(6) motion to

28  dismiss on the basis of "shotgun pleading," and instead held that the district court should have ordered re-
   pleading under Rule 12(e).

SEC's Opposition to Landan, Abrams, Smith and Skaer's Motion to Dismiss
Case No. 5:07-CV-2822 JF

The Complaint clearly identifies the misrepresentations made as a part of the scheme, and identifies the defendants responsible for those misrepresentations. Of course, Rule 9(b) does not require a plaintiff to allege that each misrepresentation was made with scienter; this requirement of the PSLRA is inapplicable to this case. The defendants (Skaer and Landan in particular) argue that the Complaint does not detail their knowledge of the wrongfulness of their conduct. The Complaint certainly does allege facts which demonstrate that each defendant was aware of the accounting consequence of granting an in-the-money option (Com. ¶¶ 38-45), and also alleges facts leading to the inescapable conclusion that each defendant knew was reckless in not knowing that their conduct was causing in-the-money options to be granted and thus an undisclosed accounting charge to be incurred. (Com. ¶¶ 22-36, 46-79). However, details of the defendants' knowledge are not required to be pled.[3] The SEC may aver the defendants' knowledge generally. *In re GlenFed Inc. Securities Litig.* 42 F.3d 1541, 1545-1547 (9th Cir. 1993) (en banc) (General allegations of scienter and knowledge are sufficient because second sentence of 9(b) is to be strictly construed and argument that intent and state of mind must be pled in detail "is irreconcilable with the second sentence of Rule 9(b)."); *In re Stac Electronics Securities Litig.*, 89 F.3d 1399, 1404 (9th Cir. 1996). Moreover, even if the SEC were required to allege facts supporting a strong inference of scienter, it has done so here. *See Middlesex Retirement System v. Quest*, 2007 WL 3286784, *23 (C.D. Cal. October 22, 2007) (defendants participation in a scheme to grant backdated options, contrary to shareholder approved option plan, resulting in a cumulative GAAP charge of $150 million, supported strong inference that defendants were "deliberately reckless in not recording a compensation expense.").

**C.    The SEC Has Adequately Pled A Claim For Relief Pursuant to Section 304 of the Sarbanes-Oxley Act of 2002 with Respect to Landan and Smith**

Smith moves to dismiss the prayer for relief seeking re-payment of his bonuses and stock

---

[3]    Skaer in particular cites numerous cases for the proposition that facts supporting a "strong inference of scienter" must be pled under Rule 9(b), even in actions not subject to the PSLRA. *E.g.*, *SEC v. Lucent Techs.*, 2005 WL 1206841 (D.N.J. May 20 2005), *SEC v. Durgarian*, 477 F.Supp. 2d 342 (D. Mass 2007). These cases rely upon precedents from various circuits extending "strong inference of scienter" pleading requirements to actions subject to Rule 9(b). The Ninth Circuit has explicitly rejected this extension, which would impose a pleading requirement found nowhere in Rule 9(b). *In re GlenFed Inc. Securities Litig.* 42 F.3d 1541, 1545-1547.

10

sale profits, contending that the claim of forfeiture of bonuses and profits pursuant to Section 304 of the Sarbanes-Oxley Act of 2002, 15 U.S.C. § 7243 ("Section 304"), would amount to an improperly retroactive application of this provision. Section 304 requires that:

> If an issuer is required to prepare an accounting restatement due to the material noncompliance of the issuer, as a result of misconduct, with any financial reporting requirement under the securities laws, the chief executive officer and chief financial officer of the issuer shall reimburse the issuer for— (1) any bonus or other incentive-based or equity-based compensation received by that person from the issuer during the 12-month period following the first public issuance or filing with the Commission (whichever first occurs) of the financial document embodying such financial reporting requirement; and (2) any profits realized from the sale of securities of the issuer during that 12-month period.

The Complaint alleges that numerous financial statements of Mercury were required to be restated as a result of misconduct, with each financial statement filed after the enactment of the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley") triggering the Section 304 re-payment obligation on the part of both Smith and Landan. Smith contends that because the stock option backdating "misconduct" that resulted in the restatement pre-dated the effective date of Section 304, applying Section 304 in this case would amount to an improperly retroactive application of the provision. However, Section 304 attaches no new legal consequence to the misconduct; rather, the legal consequence flows to the CFO and CEO of Mercury for filing false financial statements that later are required to be restated. While the misreporting of these financials is required to be tainted by misconduct, it is clear that it is the misreported financial statements, and not the misconduct itself, that is the focus of the Section 304 repayment obligation.

The provisions of the Sarbanes-Oxley require, in Section 302 (15 U.S.C. § 7241), that both the CFO and CEO of the issuer attest, under oath, to the accuracy of the financial statements, acknowledge that each is "responsible for establishing and maintaining internal controls," have designed those internal controls to ensure that material financial information relating to the issuer becomes known to them, and have disclosed to their auditors all weaknesses in those internal controls and all fraud involving employees responsible for internal controls. In other words, Sarbanes-Oxley makes the CEO and CFO of a company to take personal responsibility of that company's financial statements, and holds them personally responsible for devising internal controls and procedures that will bring fraudulent conduct to light. *See Middlesex Retirement*

11

*System, supra*, 2007 WL 3286784, *23 (signatories to Section 302 certifications of financial statements are "attesting to the[] accuracy and reliability" of those statements). The repayment provisions of Section 304 simply make those responsible individuals put their money where their mouth is when those financial statements prove to have been infected by fraud. This consequence flows from the filing, and subsequent restatement, of the false financial statement, and not the misconduct. Indeed, by the language of Section 304, neither the CFO nor CEO need be personally responsible for, or even aware of, the misconduct itself.[4]

It is clear that "[e]ven uncontroversially prospective statutes may unsettle expectations and impose burdens on past conduct: . . . a new law banning gambling harms the person who had begun to construct a casino before the law's enactment or spent his life learning to count cards. . . [A] statute is not made retroactive merely because it draws upon antecedent facts for its operation." *Landgraf v. USI Film Products*, 511 U.S. 244, 270, fn. 24 (1994) (citations omitted). The question is not whether an application of Section 304 in this case would draw on pre-enactment conduct; "[r]ather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment." *Id*. at 269-270. In this case, Section 304 attaches no new legal consequence to the misconduct itself; it attaches a legal consequence to the filing of a financial statement tainted by misconduct upon those responsible for the accuracy of the financial statement, without regard for who was responsible for the misconduct. Each financial statement that the Commission contends triggers the repayment obligation of Section 304 was filed with the Commission after the July 30, 2002, enactment of Sarbanes-Oxley. *Cf. In re AFC Enters., Inc., Derivative Litig*., 224 F.R.D. 515 (N.D. Ga 2004) (potentially retroactive application of Section 304 based upon financial statements filed before July 2002 enactment of provision.). There is no retroactive application of Section 304 here.

Thus, Smith and Landan are responsible under Section 304 for repayment of all bonuses and stock sales in the year following each annual and quarterly financial statement filed by

---

[4]    Under Senate Amendment 4198, proposed by then Senator Max Cleland, liability under this provision would have extended to any officer or director of an issuer "with knowledge, at the time of the misconduct, of the material noncompliance of the issuer." *See* Arnold & Porter LLP, Sarbanes-Oxley Act of 2002 Legislative History, 40-C (2002 WL 32054475). This knowledge requirement is not found in the final version of Section 304, and liability extends only to the two officers required to certify the accuracy of the financial statements.

12

SEC's Opposition to Landan, Abrams, Smith and Skaer's Motion to Dismiss
Case No. 5:07-CV-2822 JF

1   Mercury from the November 12, 2002 quarterly report forward, which the Complaint alleges were

2   all restated on July 3, 2006. (Com. ¶ 101). Contrary to Smith's arguments, the financial impact of

3   the misconduct is not limited to the very first financial statement following the fraud; as the

4   Complaint clearly explains, the in-the-money expense of an option is required to be expensed over

5   the vesting period of the option. (Com. ¶ 21). Properly accounting for the expense incurred

6   required an expense to be reported during each reporting period over the vesting period of the

7   backdated options. Thus, the misconduct had a substantial accounting consequence, necessitating

8   restatements, with respect to each financial statement filed for several years after the backdating

9   itself had ceased. The clear language of Section 304 makes obvious that each of these later-

10  restated financial statements triggers a repayment obligation for bonuses earned or issuer securities

11  sold during the twelve month period following the first public issuance of each statement.

12         Smith also contends that there is a four-year statute of limitations applicable to the

13  Commission's claims under Section 304 (and Section 302) pursuant to 28 U.S.C. § 1658, which

14  Smith argues should bar claims for Section 304 repayment based upon public filings made prior to

15  May 31, 2003, four years prior to the filing of the Complaint in this case.[5] However, the four-year

16  statute of limitations provided by 28 U.S.C. § 1658 is not applicable to an SEC enforcement action

17  under the provisions of Sarbanes-Oxley. As Smith notes, 28 U.S.C. § 1658 does provide a four-

18  year period of limitations for legislation, enacted after December 1, 1990, "[e]xcept as otherwise

19  provided by law." While Sarbanes-Oxley was enacted subsequent to December 1, 1990, it is

20  otherwise exempted from the operation of 28 U.S.C. § 1658. Given that Sarbanes-Oxley

21  specifically modifies 28 U.S.C. § 1658 to create a five-year statute of limitations for private suits

22  (*see* Section 804 of Sarbanes-Oxley, codified at 28 U.S.C. § 1658(b)), Congress certainly could not

23  have intended an even shorter period of limitations to apply to SEC enforcement actions.

24  Congress intended an SEC enforcement action under Sarbanes-Oxley to be treated the same way

25  as any other enforcement action under the Exchange Act – indeed, it specifically provided as much

26  in enforcement actions brought under the provisions of Sarbanes-Oxley:

27  _____
    [5]     In this argument Smith seems to recognize that, contrary to his contention with respect to retroactivity, the
28  conduct implicated by Section 304 is the filing of the financial statement, not the underlying misconduct that
    causes the misstatement.

SEC's Opposition to Landan, Abrams, Smith and Skaer's Motion to Dismiss
Case No. 5:07-CV-2822 JF

1

2

3

> A violation by any person of this Act, any rule or regulation of the Commission issued under this Act, or any rule of the Board *shall be treated for all purposes in the same manner as a violation of the Securities Exchange Act of 1934* or the rules and regulations issued thereunder, consistent with the provisions of this Act, and *any such person shall be subject to the same penalties, and to the same extent, as for a violation of that Act* or such rules or regulations.

4   Sarbanes Oxley Section 3(b)(1), 15 U.S.C. § 7202 (emphasis supplied).

5        A violation of the Sarbanes-Oxley provisions "shall be treated for all purposes" as a

6   violation of the Exchange Act.  Because the Exchange Act, enacted in 1934, is not subject to the

7   limitations period of 28 U.S.C. § 1658, an SEC enforcement action pursuant to the provisions of

8   Sarbanes-Oxley is likewise exempt from the limitations period provided by that statute.

9        Moreover, under the plain language of 28 U.S.C. § 1658(a) the period of limitations does

10  not begin to run until a "cause of action accrues."  "Under federal law, a cause of action generally

11  accrues when the plaintiff knows or has reason to know of the injury which is the basis of the

12  action." *Thomson v. City of Shasta Lake*, 314 F.Supp.2d 1017, 1025 (E.D.Cal 2004) (*quoting

13  Trotter v. Int'l Longshoremen's & Warehouseman's Union Local 13*, 704 F.2d 1141 (9th Cir.1983).

14  In this case, no cause of action existed, and no claim could accrue, at least until the issuer,

15  Mercury, was required to prepare an accounting restatement.  The Complaint alleges that Mercury

16  actually restated its financials on July 3, 2006, less than one year prior to the date that the

17  Commission filed the present suit.  (Com. ¶ 101.)  There is no allegation, and no reason to

18  conclude, that the Commission had any reason to believe that Mercury would be required to restate

19  any of its financials more than four years prior to the filing of the Complaint, in May of 2003.  C*f.

20  Betz v. Trainer Wortham & Co.,* 504 F.3d 1017, 1020 (9th Cir.2007) ("the statute of limitations for a

21  federal securities fraud claim begins to run when the plaintiff has either actual or inquiry notice

22  that the defendants have made a fraudulent representation.").  Thus, even if there was a limitations

23  period provided by 28 U.S.C. § 1658(a), it has not run with respect to the Section 304 claims.

24       Thus, Smith's motion to dismiss, or alternatively to strike, allegations of the complaint

    based upon the operation of 28 U.S.C. § 1658(a) should be denied.

25

26  **D.     The SEC's Third Through Fifth and Seventh Through Eighth Claims Adequately Pled Claims For Relief**

27       The SEC's Third, Fourth, Fifth, Seventh and Eighth Claims allege violations of the

28  Exchange Act's reporting and record keeping requirements. The Third Claim alleges that Landan,

SEC's Opposition to Landan, Abrams, Smith and Skaer's Motion to Dismiss
Case No. 5:07-CV-2822 JF

Skaer, Smith and Abrams violated Section 13(b)(5) of the Exchange Act and Rule 13b2-1 thereunder. The Fourth Claim alleges that Landan, Abrams, Smith and Skaer violated Exchange Act Rule 13b2-2. The Fifth Claim alleges that Landan, Abrams, Smith and Skaer aided and abetted Mercury's violations of Section 13(a) of the Exchange Act and Rules 13a-1 and 13a-13 thereunder. The Seventh and Eighth Claims allege that Landan, Abrams, Smith and Skaer aided and abetted Mercury's violations of Sections 13(b)(2)(A) and (B) of the Exchange Act.

Precedent and the Commission's interpretive regulations establish that scienter is not an element of claims made under Section 13 of the Exchange Act and the regulations thereunder. *SEC v. McNulty*, 137 F.3d 732, 740-41 (2d Cir. 1998). In *McNulty*, the Second Circuit observed that Congress amended Section 13(b) in 1988 to impose *criminal* liability for "knowing[]" falsification, "plainly implying that falsification of the information to be filed in accordance with § 13(b) need not be knowing in order to lead to civil liability." *Id. See also Ponce v. SEC*, 345 F.3d 722, 737 n.10 (9th Cir. 2003) ("a plain reading of Section 13(b) reveals that it also does not impose a scienter requirement"); *SEC v. Yuen*, 2006 U.S. Dist. LEXIS 33938, *115-120 (C.D. Cal. March 16, 2006) (SEC not required to show scienter to establish violation of the periodic reporting, record keeping, and internal control requirements).

The defendants assert that the SEC claims under Sections 13(a), 13(b)(2)(A) and (B), 13(b)(5) and the pertinent Rules thereunder, must be pled with Rule 9(b) particularity. However, because the underlying Section 13 violations are not "averments of fraud" within the meaning of Rule 9(b), allegations that Landan, Abrams, Smith and Skaer aided and abetted those violations do not need to be pled with particularity. Moreover, even "[w]here averments of fraud are made in a claim in which fraud is not an element, an inadequate averment of fraud does not mean that no claim had been stated. The proper route is to disregard averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has been stated." *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1105 (9th Cir.2003) (quotation omitted).

Irrespective of the application of Rule 9(b), the Complaint sets forth in great detail the "who, what and where" of the defendants' violations. In particular, Smith, Landan and Abrams signed backdated written consent documents, which Skaer prepared, in order to memorialize the backdated stock option transactions. (Com. ¶¶ 28, 30). Skaer produced false documentation

SEC's Opposition to Landan, Abrams, Smith and Skaer's Motion to Dismiss
Case No. 5:07-CV-2822 JF

associated with stock option exercises of European employees of Mercury.  (Com. ¶ 136).

Moreover, financial statements are records companies are required to maintain under the Exchange

Act.  As discussed above, Landan, Abrams and Smith signed and filed financial statements,

prepared by Skaer, with the SEC that contained material misrepresentations regarding the

company's stock option granting practices, (with respect to certain financials) the company's

backlog, and the company's GAAP income.  (Com. ¶¶ 102, 103, 123, 125).

Landan, Abrams, Smith and Skaer knew or were certainly reckless in not knowing income

was overstated, because they failed to report any compensation expense arising from the stock

option grant transactions, which they knew or had information that should have alerted them was

required under GAAP.  (Com. ¶ 106).    It is reasonable to infer from the failure to expense these

substantial compensation charges in the financial statements that the company's internal

accounting controls were not recording the compensation expense being accrued.    And since

Landan, Smith, Abrams and Skaer were responsible for the backdating conduct, they knew no

internal controls were in place or they circumvented the controls to permit the conduct without

recording an associated expense.  (Com. ¶ 116).

Landan, Skaer, Abrams and Smith, through this conduct, caused Mercury's books and

records reflecting the transactions at issue to be falsified.  Based on the conduct described above,

Mercury violated Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act.  By falsifying stock

option grant documentation, each of Landan, Skaer, Abrams and Smith violated directly Section

13(b)(5) of the Exchange Act, Exchange Act Rule 13b2-1, and aided and abetted the company's

violation of Section 13(b)(2)(A).  *Ponce v. SEC*, *supra*, 345 F.3d at 737 (*quoting SEC v. Kalvex*,

425 F.Supp. 310, 316 (S.D.N.Y 1975) (aiding and abetting liability under 13(a) found against

corporate director who participated in kickback scheme and self-dealing transactions which caused

financial statements to be misreported, as he "provided assistance and encouragement to conduct

patently in violation of the securities laws.").  Landan, Skaer, Abrams and Smith also aided and

abetted Mercury's violation of Section 13(b)(2)(B) of the Exchange Act, which requires issuers to

maintain systems of internal accounting controls sufficient to, among other things, provide

reasonable assurances that transactions are recorded as necessary to permit the preparation of

financial statements in accordance with GAAP.  Landan, Abrams, Skaer and Smith also violated

SEC's Opposition to Landan, Abrams, Smith and Skaer's Motion to Dismiss
Case No. 5:07-CV-2822 JF

1   Exchange Act Rule 13b2-2 by causing falsified option grant documents to be provided to

2   Mercury's auditors and by signing management representation letters to the auditors falsely

3   certifying that no fraud existed at the Company.

4        These allegations give Landan, Abrams, Skaer and Smith adequate notice of their

5   wrongdoing and meet the pleading requirements of Rule 8 and if necessary the more particular

6   pleading requirements of Rule 9(b).

7        **E.    The SEC Has Adequately Pled A Claim For Relief Pursuant to Section 16(a) of the Exchange Act and Rule 16a-3 thereunder**

8        The defendants further contend that the Ninth Claim of Relief, which alleges that each of

9   Landan, Smith, Skaer and Abrams filed false Forms 3, 4, and 5 with the Commission, should be

10  dismissed, on the basis that the false filings are not identified with particularity, and that a false

11  filing does not violate the requirements of Section 16(a) or Rule 16a-3, which require the filing of

12  reports with the Commission associated with each change of ownership of Mercury stock on each

13  of the defendants' behalf.

14       Again, because violations of Section 16(a) or Rule 16a-3 require no showing of scienter,

15  the Commission contends that the heightened pleading requirements of Rule 9(b) do not apply.

16  Nevertheless, the Complaint clearly describes with particularity the nature of the falsity of the

17  documents.  The Complaint clearly alleges that each defendant received backdated stock options.

18  (Com. ¶¶ 1, 40).  The Complaint makes clear that every option the defendants received during the

19  period covered by the Complaint was backdated.  (Com. ¶¶ 45).  The Complaint also alleges that

20  each defendant filed forms with the Commission reporting those grants which misrepresented the

21  date that the options were actually granted. (Com. ¶¶ 36, 79).

22       While Section 16(a) and Rule 16a-3 facially require only the reporting of equity

23  transactions involving certain individuals including corporate officers such as the defendants,

24  implicit in this reporting requirement is that the information reported be truthful.  In keeping with

25  the principle that "the securities acts should not be construed technically and restrictively, but

26  flexibly to effectuate [their] remedial purposes, . . . the obligation to file *truthful* statements is

27  implicit in the obligation to file."  *GAF Corp. v. Milstein*, 453 F.2d 709, 720 (2nd Cir. 1971)

28  (emphasis in original) (Interpreting filing requirements under Rule 13(d)); *SEC v. Lucent*

SEC's Opposition to Landan, Abrams, Smith and Skaer's Motion to Dismiss
Case No. 5:07-CV-2822 JF

1  *Technologies*, 363 F.Supp. 2d 708, 718, n.1 (D.N.J. 2005) (Section 13(a) requirement that an issuer

2  must file certain documents with the SEC implicitly requires "that the information submitted be

3  true and correct.").  Consistent with these principles, the filing of false documents reporting equity

4  transactions violates the implicit requirement of Section 16(a) and Rule 16a-3 that such documents

5  be filed containing information that is true and correct.

6  **F.    The SEC Has Adequately Pled A Claim For Relief Pursuant to Section 14(a) of**
      **the Exchange Act and Rule 14a-9 thereunder**

7       The defendants also contend that the Complaint fails to adequately articulate facts that form

8  the basis of its claims under Section 14(a) of the Exchange Act and Rule 14a-9 thereunder.

9       Violations of Section 14(a) and Rule 14a-9 likewise require no showing of scienter, *e.g.,*

10  *Wilson v. Great American Industries, Inc*., 855 F.2d 987, 995 (2d Cir. 1988); *SEC v. Willis*, 472 F.

11  Supp. 1250, 1268 (D.D.C. 1978), and consequently the heightened pleading requirements of Rule

12  9(b) do not apply.  *Cf. In re Zoran Corp. Derivative Litigation*, 511 F.Supp.2d 986, 1016

13  (concluding that extended statute of limitations provided under Sarbanes-Oxley do not apply to a

14  claim under 14(a), as "[a] Section 14(a) claim is not a claim that 'sounds in fraud'").  Even

15  assuming the requirements did apply, however, the Complaint clearly alleges that Mercury's

16  annual proxy statements were materially false and misleading in each year between 1997 and

17  2003.  (Com. ¶¶ 112, 113).  The Complaint alleges who participated in the preparation of each of

18  the proxy statements.  (Com. ¶¶ 112, 113).  The Complaint alleges how each of the proxy

19  statements were materially false – they provided incorrect information with respect to the grant

20  dates of executive stock option grants, including grants to Abrams, Smith and Landan, that each

21  defendant knew to be false. (Com. ¶ 113).  That the materiality of this grant date information, and

22  indeed complete information relevant to executive compensation, is material is evidenced by the

23  requirements of Item 402(a) of Regulation S-K [17 C.F.R. §§ 229.402(a)], which specifically calls

24  for disclosure of such information.  *Cf. United States v. Bilzerian*, 926 F.2d 1285, 1299 (2d Cir.

25  1991) (holding that the requirement of disclosure under Schedule 13D is evidence of materiality);

26  *SEC v. Levy*, 706 F. Supp. 61, 72 (D. D.C. 1989) (Section 13(d)'s requiring disclosure of

27  information is "strong evidence" of information's materiality).

28       Because Landan, Smith, and Abrams each permitted their name to be used in the

SEC's Opposition to Landan, Abrams, Smith and Skaer's Motion to Dismiss
Case No. 5:07-CV-2822 JF

solicitation, and were aware or should have been aware of the material misrepresentations that were being made in the proxies, they each violated Section 14(a) and Rule 14a-9. *SEC v. Falstaff Brewing Corp.,* 629 F.2d 62, 78 (D.C. Cir. 1980). Skaer, who the Complaint clearly alleges prepared "these proxy statements knowing that they misrepresented the true grant dates of the stock options for the executive officers named in the filing, knowingly aided in the presentation of materially false information in these filings." (Com. ¶ 113). The motion to dismiss these claims should be denied.

### G.    The SEC Has Adequately Pled Claims For Relief Notwithstanding the Application of Any Applicable Statute of Limitations

Smith also argues that because the Complaint does not allege any stock option grant backdating after April 2002, the Commission's "scheme" liability claims, books and records claims, and other claims relating to the acts of backdating options are now time-barred by the statute of limitations provided for in 28 U.S.C. § 2462, a catch-all provision which provides a five-year statute of limitations applicable to civil penalties. His argument should be rejected for three reasons: 1) there is no statute of limitations relative to the Commission's equitable claims, 2) there are claims for penalties which are within the applicable limitations period, and 3) because the fraud was a part of a continuing course of conduct, all of the conduct is brought within the period of limitations.

The Ninth Circuit has held that there is no implied statute of limitations applicable to SEC actions seeking equitable remedies such as an injunction or disgorgement. *SEC v. Rind*, 991 F.2d 1488. The court stated that "limitations periods do not bind the United States when it sues to vindicate a public right or interest, absent a clear showing of congressional intent to the contrary." *SEC v. Rind*, 991 F.2d at 1491. The Ninth Circuit reasoned that "[i]mposing a state or any other statute of limitations on Commission civil enforcement actions would [] conflict with the underlying policies of the securities laws; this conclusion strongly negates any inference that Congress intended a limitations period to apply." *Id.* at 1492.

The limitations period provided by 28 U.S.C. § 2462 applies, by its terms, only to claims for "any civil fine, penalty, or forfeiture" and not to equitable claims for disgorgement or injunctive relief. Smith contends that the "concurrent remedy" rule somehow extends the statute of

limitations applicable to the Commission's claims for a civil penalty and forfeiture to the

Commission's equitable claims as well.  However, such a conclusion is contrary to the traditional

rule that "an action on behalf of the United States in its governmental capacity, … is subject to no

time limitation, in the absence of congressional enactment clearly imposing it."  *E.I. DuPont De

Nemours & Co. v. Davis,* 264 U.S. 456, 462 (1924).  Thus, "[s]tatutes of limitation, sought to be

applied to bar rights of the government, must receive a strict construction in favor of the

government."  *Id*. at 462.  *Accord Badaracco v. Commissioner of Internal Revenue*, 464 U.S. 386,

398, 104 S. Ct. 756, 764 (1984);  *Mullikin v. United States*, 952 F.2d 920 (6th Cir. 1992) (rejecting

use of 28 U.S.C. § 2462, and holding that no statute of limitations applied to penalties for aiding

and abetting under-reporting of income because the denial of a limitations period contributes to

"interest of Congress in combating fraud").

       The cases cited by Smith supporting his "concurrent remedy" theory limit claims of

injunctive relief when the substance of the claim is truly one governed by a statute of limitations:

"[t]o prevent plaintiffs from making a mockery of the statute of limitations by the simple expedient

of creative labeling-styling an action as one for declaratory relief rather than for damages-courts

must necessarily focus upon the substance of an asserted claim as opposed to its form."  *Levald,

Inc. v. City of Palm Desert*, 998 F.2d 680, 688 (9th Cir. 1993).  The Ninth Circuit has long

recognized that Commission enforcement actions seeking injunctive relief are not merely

incidental to claims for damages or some other legal remedy; rather "[t]he entire purpose and

thrust of a Commission enforcement action is to expeditiously safeguard the public interest by

enjoining securities violations."  *SEC v. Rind*, *supra*, 991 F.2d at 1491.

       While the Ninth Circuit in *FEC v. Williams*, 104 F.3d 237 (9th Cir.1996), extended

precedents relevant to private plaintiffs to a Federal Election Commission action in concluding that

the statute of limitations barred certain equitable claims in that case, that decision did not consider

the distinction between the application of statutes of limitations to governmental entities and

private plaintiffs, and certainly did not consider the application of the statute of limitations to an

SEC enforcement action.  The Ninth Circuit had made clear even before its decision in *Williams*

that there is no limitations period for SEC enforcement actions seeking injunctions, disgorgement

or other equitable relief.  *SEC v. Rind*, *supra*, 991 F.2d at 1491.  Consequently, equitable claims

SEC's Opposition to Landan, Abrams, Smith and Skaer's Motion to Dismiss
Case No. 5:07-CV-2822 JF

brought by the Commission are not subject to statutes of limitations, even where the Commission also seeks a penalty against the wrongdoer. *S.E.C. v. First California Capital Markets Group, Inc*., No. C-97-02761-CRB, slip. op. at 4-5 (N.D. Cal. July 30, 1998) (Attached as Exhibit A) (Judge Breyer distinguishes the *Williams* decision, holding that under the *Rind* decision SEC equitable claims are not subject to statute of limitations even where penalties are sought and barred by limitations). Drawing an artificial distinction with respect to the application of statutes of limitations on equitable claims as between SEC enforcement actions which include penalty claims and those that do not would "make[] no sense." *Id*. at 5; *see U.S. v. Campbell Soup Co*., No. CIV-S-95-1854 DFL, 1997 WL 258894, at *3 (E.D. Cal. March 11, 1997) (concurrent remedy rule did not apply in Clean Air Act case under the limitations provisions applicable there, including Section 2462; *Cope v. Anderson,* 331 U.S. 461 (1945), relied upon by defendant, was not "remotely similar to an action for injunctive relief by a federal agency" and did not address "the particular statutory language at issue").

There is therefore no basis to dismiss any part of the Complaint on the basis of the statute of limitations barring any claim, as the Commission's equitable claims[6] extend to reach the entirety of each of the defendants' conduct. Moreover, although the Complaint does not allege that the backdating conduct recurred after April of 2002,[7] the Complaint clearly alleges that Smith and others fraudulently concealed this conduct by making fraudulent statements in Mercury's

---

[6]    The Commission's equitable claims are not "penal" in nature, but rather a non-punitive "means to protect the public interest." *Pierce v. SEC*, 239 F.2d 160, 163 (9th Cir. 1956) (SEC action revoking a broker-dealer's registration is "not to be regarded as a penalty imposed on the broker").

[7]    Even if the statute of limitations did begin to run on the date the options were granted, the Complaint alleges that each of the defendants later exercised some of the options procured by fraud. (Com. ¶ 80). Those subsequent exercises, themselves purchases of stock at a price procured by fraud, re-start any applicable statute of limitations. This is so because the decision to exercise options with exercise prices procured by fraud is properly viewed as a new "investment decision," and thus an additional "purchase or sale" of securities for limitations purposes. *See Getty v. Harmon*, 53 F.Supp.2d 1053, 1055-1056 (WD Wa. 1999) (*citing Goodman v. Epstein*, 582 F.2d 388, 414 (7th Cir. 1978), in holding that where investors renewed investments in promissory notes, "each renewal, whether accompanied by new representations or not, was based upon a new decision, and each constituted a new investment for purposes of determining the period of repose."). The Commission expects to prove facts that would demonstrate that the defendants exercised options months and even years after April 2002, and thus the question of the application of any statute of limitations is not properly resolved on a motion to dismiss. *Supermail Cargo v. United States*, 68 F.3d 1204, 1206-07 (9th Cir.1995) ("a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.").

SEC's Opposition to Landan, Abrams, Smith and Skaer's Motion to Dismiss
Case No. 5:07-CV-2822 JF

1   financials, proxy statements, and to the company's auditors for years, through 2005.  Smith does

2   not dispute that this alleged conduct took place within the five-year period of limitations provided

3   by 28 U.S.C. § 2462.  Where at least some of the alleged conduct is within the period of

4   limitations, a Court should not bar the claim on a motion to dismiss.  *SEC v. Richie*, No. EDCV 06-

5   63-VAP, slip. op. at 31-34 (C.D. Cal. May 9, 2006) (Attached as Exhibit B) ("For the purposes of a

6   motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), it is immaterial that § 2462

7   might limit the civil remedies Plaintiff may be entitled to").

8          And contrary to Smith's contentions, federal courts do recognize the doctrine of a

9   "continuing violation" or "continuing wrong" in assessing statute of limitations issues.  Under this

10  doctrine, if the original violation occurred outside the statute of limitations, but is closely related to

11  other violations that are not time-barred, recovery may be had for all violations, on the theory that

12  they are part of one, continuing violation.  The Supreme Court recognized this doctrine in *Havens*

13  *Realty Corp. v. Coleman*, 455 U.S. 363, 380-81, 102 S. Ct. 1114, 1125 (1982): "Where the

14  challenged violation is a continuous one, the staleness concern disappears. … [When a plaintiff]

15  challenges not just one incident … , but an unlawful practice that continues into the limitations

16  period, the complaint is timely when it is filed within [the limitations period] of the last asserted

17  occurrence of that practice."

18         Courts have applied this doctrine to 28 U.S.C. §2462.  In *Interamericas Investments Ltd. v.*

19  *Board of Governors of the Federal Reserve System*, 111 F. 3d 376, 382 ( 5th Cir. 1997) the Fifth

20  Circuit accepted the doctrine for purposes of allowing civil penalties for violations of the Bank

21  Holding Company Act.  In *Interamericas*, the defendants had formed an offshore bank holding

22  company to conceal improper foreign ownership of a U.S. bank.  This took place in 1985.  As a

23  bank holding company, the offshore entity had to register with the Federal Reserve Board within

24  180 days of its formation.  The government did not discover this failure, and other violations of the

25  Bank Holding Company Act, until late in 1989, and did not commence its enforcement action until

26  1994.  Nonetheless, the Fifth Circuit found the violation to be "continuing" in nature, and held that

27  the case was timely, while noting that "statutes of limitation in the civil context are to be strictly

28  construed in favor of the Government against repose." *Interamericas Investments  v. Board of*

    *Governors of the Federal Reserve System*, *supra*, 111 F. 3d at 382.

SEC's Opposition to Landan, Abrams, Smith and Skaer's Motion to Dismiss
Case No. 5:07-CV-2822 JF

Likewise, the statutes underlying the securities fraud claims here speak in terms that clearly contemplate continuing activity. *See, e.g.,* Section 17(a)(3) of the Securities Act (making it illegal "to engage in any transaction, **practice, or course of business** which operates or would operate as a fraud or deceit upon the purchaser"; Rule 10b-5 under Section 10(b) of the Exchange Act (making it illegal "to engage in any act, **practice, or course of business** which operates or would operate as a fraud or deceit upon any person,"). Consequently, the continuing violation doctrine extends the statute of limitations in the context of the federal securities laws. *See, e.g., United States v. McDonald*, 576 F.2d 1350 (9th Cir. 1978); *United States v. Brown*, 578 F.2d 1280, 1285 (9th Cir. 1978) (where the sale of the securities occurred outside the five-year limitations period, court found that the mailings of monthly payments to investors constituted an integral part of the fraud, and further noted that: "activities tending to lull investors, either to prevent discovery of a fraud or to permit further fraudulent activities to progress unhindered, have been held to constitute a part of the execution of the fraudulent scheme and to be integral to the offense rather than incidental to it."). The conduct complained of in this case, including filing misstated financial reports and other public documents to conceal that Mercury executives were receiving backdated options in clear violation of the company's stock option plan, and that Mercury was failing to properly account for the resulting compensation expense being accrued, (Com. ¶¶ 1, 79, 80), was a part of an ongoing scheme to defraud; indeed one court has characterized like conduct as a "primary method of perpetuating the scheme." *Middlesex Retirement System, supra*, 2007 WL 3286784, *26. Thus, where a defendant's participation in the perpetuation of an ongoing scheme to commit securities fraud, it is reasonable for him to expect "the statute to begin running at the termination of the scheme." *SEC v. Cotton*, No. SACV 06-0905-AG, slip. op. at 8-9 (C.D. Cal. December 21, 2006) (Attached as Exhibit C); *see SEC v. Ogle*, No. 99 C 609, 2000 WL 45260, at *4 (N.D. Ill. Jan. 11, 2000) (applying continuing violation doctrine to find that Section 2462 did not bar Commission action seeking penalties in market manipulation case). Because the Commission has alleged an ongoing scheme with conduct involving each of the defendants which extends into periods not covered by any period of limitations, the statute of limitations should not

SEC's Opposition to Landan, Abrams, Smith and Skaer's Motion to Dismiss
Case No. 5:07-CV-2822 JF

1   apply to any of the conduct that is a part of the scheme.[8]

2         Also applicable to the operation of the statute of limitations is the principle of equitable

3   tolling.  The Ninth Circuit has recognized the doctrine of equitable tolling, describing it as "the

4   venerable notion that it would be unfair to bar a fraud action as untimely where the defendant

5   successfully concealed the fraud from the plaintiff during the limitations period." *United States ex*

6   *rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211, 1216 (9th Cir. 1996).  "Fraud by its very nature is

7   concealed and difficult to discover." *Id*.  Accordingly, the statute of limitations should be tolled

8   until the plaintiff knew or reasonably should have known of the facts underlying its cause of

9   action. *Id*.  The Complaint clearly alleges that the defendants concealed their backdating conduct

10  though the filing of materially false financial statements and other conduct.  (Com. ¶¶ 1, 79, 80)

11  There are no facts alleged in the Complaint that suggest that the Commission should have known

12  or been aware of the fraud at the time of the backdating conduct.  "A motion to dismiss based on

13  the running of the statute of limitations period may be granted only if the assertions of the

14  complaint, read with the required liberality, would not permit the plaintiff to prove that the statute

15  was tolled.  In fact, a complaint cannot be dismissed unless it appears beyond doubt that the

16  plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail*

17  *Cargo v. United States*, 68 F.3d at 1206-07 (citations omitted).  Because the Commission could

18  establish facts during the course of this litigation that would demonstrate that the statute of

19  limitations should be equitably tolled, the motion to strike claims on the basis of the statute of

20

21  [8]   Courts have indicated that filing false financial statements concealing stock option backdating conduct cannot
        revive claims based upon the backdating conduct outside of the limitations period provided by 28 U.S.C. §

22      1658(b), as that provision is a statute of repose, and not subject to ordinary equitable doctrines generally
        applicable to statutes of limitations.  *In re Atmel Derivative Litigation*, C-06-4592 JF, 2007 WL 2070299, *7,

23      fn.8 (N.D. Cal July 16, 2007) (noting that fraudulent concealment of backdating conduct in financial
        statements "approximate[s] the effects of the fraudulent concealment doctrine in relation to equitable tolling,"

24      and because 28 U.S.C. § 1658(b) is a statute of repose, that statute's limitations period is not subject to
        equitable tolling).  By contrast, 28 U.S.C. §2462 is not a statute of repose, and therefore is subject to ordinary

25      principles of equity, including the doctrine of equitable tolling.  *Williams*, 104 F.3d at 240-241 (28 U.S.C.
        §2462 subject to equitable tolling based upon fraudulent concealment by defendant, where diligent plaintiff

26      fails to discover operative facts).  Whether the fraudulent misrepresentations of the defendants within the
        limitations period are viewed through the prism of "continuing violations" or through the equitable tolling

27      principle of fraudulent concealment, permitting this SEC enforcement action to reach the full extent of each
        defendant's course of conduct is in keeping with the principle that "statutes of limitations in the civil context

28      are to be strictly construed in favor of the Government against repose." *Interamericas Investments,* 111 F. 3d
        at 382.

SEC's Opposition to Landan, Abrams, Smith and Skaer's Motion to Dismiss
Case No. 5:07-CV-2822 JF

1  limitations should be denied.

2  **IV.    CONCLUSION**

3        The SEC has pled its fraud claims against Landan, Skaer, Smith and Abrams with sufficient

4  particularity to meet the requirements of Rule 9(b).  Plaintiff's Third through Eighth Claims are not

5  fraud claims and do not need to comply with the particularity requirements of Rule 9(b).  They meet

6  the notice pleading requirements of Rule 8(e).  If the Court finds that the pleading requirements of

7  Rule 9(b) are applicable to the Third through Eighth Claims, the Plaintiff has pled sufficient facts to

8  advise the defendants of when and how they violated these provisions.  Indeed, even a more definite

9  statement pursuant to Rule 12(e) is not required.  Such a statement is required only where the

10  Complaint is "so vague or ambiguous that the opposing party cannot respond, even with a simple

11  denial, in good faith or without prejudice to himself." *Cellars v. Pacific Coast Packaging, Inc*., 189

12  F.R.D. 575, 578 (N.D.Cal. 1999).  Here, however, the Complaint more than adequately provides

13  each defendant with notice of his or her conduct and the allegations against them.  If the Court

14  nevertheless determines that the Plaintiff has not sufficiently pled facts to support one or more of its

15  claims, Plaintiff requests leave to file an amended complaint.  Plaintiff respectfully requests that the

16  Court deny the motion to dismiss the claims against Landan, Skaer, Smith and Abrams, and deny

17  their motions to strike and for a more definite statement.

18        DATED:  December 3, 2007

19

20                                    Respectfully submitted,

21

22                                    s/ David Williams_____
                                      A. David Williams
23                                    Joseph V. Jest
                                      Attorneys for Plaintiff
24                                    Securities and Exchange Commission
                                      100 F Street, NE
25                                    Washington, DC 20901-4010
                                      Telephone:  (202) 551-4548 (Williams)
26                                    Fax: (202) 972-9246 (Williams)

27

28

SEC's Opposition to Landan, Abrams, Smith and Skaer's Motion to Dismiss
Case No. 5:07-CV-2822 JF