# TAB B

Priority    ✓
Send
Enter
Closed
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only___

FILED
CLERK, U.S. DISTRICT COURT

**MAY - 9 2006**

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION    BY DEPUTY

**ENTERED**
MAY - 9 2006

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION
BY    DEPUTY

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(D).

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SECURITIES AND EXCHANGE )
COMMISSION, )
                       )
          Plaintiff, )
                       )
     v.                 )
                       )
JEFFREY A. RICHIE and )
FORTRESS FINANCIAL )
GROUP, INC., )
                       )
         Defendants. )
_____ )

Case No. EDCV 06-63-VAP
(SGLx)

**[Motion filed on March 22, 2006.]**

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS COMPLAINT OR ALTERNATELY, TO DISMISS CERTAIN OF PLAINTIFF'S FOUR CLAIMS FOR RELIEF OR ALTERNATELY FOR A MORE DEFINITE STATEMENT, OR ALTERNATELY, TO STRIKE PORTIONS OF THE COMPLAINT**

     Defendants' Motion to Dismiss Complaint or Alternately, to Dismiss Certain of Plaintiff's Four Claims for Relief or Alternately, for a More Definite Statement, or Alternately, to Strike Portions of the Complaint came before this Court for hearing on May 1, 2006. After reviewing and considering all papers filed in support of, and in opposition to, the Motion, as well as the arguments advanced by counsel at the hearing, the Court DENIES Defendants' Motion.

DOCKETED ON CM
MAY - 9 2006
BY

1 | **I. BACKGROUND**

2   Plaintiff Securities and Exchange Commission filed a

3 Complaint on January 19, 2006, alleging that Defendants

4 Jeffrey Richie ("Richie") and Fortress Financial Group,

5 Inc. ("Fortress") (collectively, "Defendants") made

6 material misrepresentations or omissions of fact in the

7 sale of unregistered securities.  Plaintiff alleges the

8 following four claims:

9

10    (1) Violation of Sections 5(a) and 5(c) of the

11    Securities Act of 1933 ("Securities Act");

12    (2) Violation of Section 17(a) of the Securities Act;

13    (3) Violation of Section 10(b) of the Securities

14    Exchange Act of 1934 ("Exchange Act") and Rule 10b-5;

15    and

16    (4) Violation of Section 10(b) of the Exchange Act

17    and Rule 10b-9.

18

19 Plaintiff seeks an injunction, civil penalties, and

20 disgorgement.

21

22 **A.   Plaintiff's Allegations**

23   Defendant Richie controls Defendant Fortress; he is

24 the president, chief executive officer, and 90%

25 shareholder of Defendant Fortress.   [Complaint ("Compl.")

26 at ¶ 3.]  During the approximate period of March 2000

27 though April 2001, Defendants were involved in the

28

2

1  fraudulent and unregistered offering of Defendant
2  Fortress's preferred stock; the initial offering raised
3  approximately $2.9 million.  [Id. at ¶¶ 3, 4, 13, 15.]
4

5      Defendant Richie told potential investors the money
6  would fund Defendant Fortress's business operations,
7  including its business of providing 401(k) services to
8  employees of corporations and clients of financial
9  institutions.  [Id. at ¶ 5.]  Defendants lied to and
10 deceived investors, ignored legal advice, and disregarded
11 securities registration and antifraud provisions.  [Id.
12 at ¶ 18.]

13

14     Defendant Richie sold Defendant Fortress's stocks to
15 approximately eighty-five investors nationwide through a
16 "private placement."  [Id. at ¶¶ 7, 15.]  No registration
17 statement was on file or in effect, and Defendant
18 Fortress was not exempt from the registration
19 requirements.  [Id. at ¶¶ 7, 16, 17, 41.]  Defendant
20 Fortress did not qualify for an exemption because it
21 offered its shares nationwide to "unaccredited"
22 investors.  [Id.]

23

24     Defendants' material misrepresentations and omissions
25 to investors concerned the following aspects of Defendant
26 Fortress's business:
27 ///

28

3

1              (1) Financial projections,

2              (2) Undisclosed liabilities in excess of $1

3                  million,

4              (3) Plans to conduct an initial public offering

5                  ("IPO"), and

6              (4) Defendant Fortress's promise not to spend

7                  any of the offering proceeds until it raised

8                  $2 million.

9    [Id.]

10

11       **1.   Financial Projections**

12       Defendant Richie distributed Defendant Fortress's

13   business plan, which was written in April 2000 and

14   covered the five year period between 2000 and 2004.   [Id.

15   at ¶ 19.]   The business plan consisted of fifteen pages

16   of narrative and thirty-nine pages of financial

17   projections.   [Id.]   The following projections were made

18   in Defendant Fortress's business plan:

19

20

|        | Revenue       | Net Income    |
|--------|---------------|---------------|
| 2000   | $25,341,640   | $797,889      |
| 2001   | $159,542,531  | $28,287,653   |
| 2002   | $299,260,992  | $60,829,881   |
| 2003   | $435,000,128  | $91,681,050   |
| 2004   | $546,483,408  | $119,993,262  |

26   [Id.]

27   ///

28

4

1    Defendant Richie knew, or was reckless in not

2  knowing, that Defendant Fortress was not going to achieve

3  these projections because Defendant Fortress had no

4  operating history, lacked experienced management, and the

5  projections were based on unreasonable assumptions.   [Id.

6  at ¶¶ 20, 21.]   The projections were unreasonable because

7  Defendant Fortress did not have a single client, assumed

8  it would contract with a certain number of financial

9  institutions each quarter, and contracted with no clients

10  in 2000 and only one client in 2001.   [Id. at ¶ 22.]

11  Certain investors viewed the financial projections as an

12  important factor in deciding to purchase Defendant

13  Fortress's stock.   [Id. at ¶ 24.]

14

15    In September 2000, Defendant Fortress's former CFO

16  knew that the financial projections were unreasonable,

17  and by January 1, 2001, Defendant Richie knew the 2001

18  financial projections were not going to be achieved.

19  [Id. at ¶ 25.]   Knowing that the financial projections

20  were unreasonable, Defendant Richie continued to

21  distribute the business plan to potential investors.

22  [Id.]

23

24    Before beginning the offering, Defendant Fortress's

25  attorney advised Defendant Richie to disclose in the

26  business plan the assumptions upon which the financial

27  projections were made.   [Id. at ¶ 26.]   Disregarding this

28

5

advice, Defendants failed to disclose any assumptions underlying the financial projections in the business plan.  [Id.]  This constitutes evidence that Defendants acted with scienter.  [Id.]

    In September 2000, Defendant Richie amended the financial projections by lowering the revenues and profits for 2000 through 2002, and increasing the revenues and profits for 2003 through 2004.  [Id. at ¶ 24.]

### 2.  Undisclosed Liabilities

    During the offering period, Defendant Fortress's current liabilities increased as indicated in the following table:

| June 2000 | $205,000 |
| July 2000 | $317,000 |
| August 2000 | $389,000 |
| September 2000 | $562,000 |
| October 2000 | $641,000 |
| November 2000 | $738,000 |
| December 2000 | $1,139,000 |
| January 2001 | $1,186,000 |
| February 2001 | $1,208,000 |
| March 2001 | $1,250,000 |
| April 2001 | $1,300,000 |

[Id. at ¶ 29.]  In April 2001, the current liabilities constituted 45% of the funds raised with the offering.

1   [Id. at ¶ 30.]   During the offering, Defendants did not
2   disclose to current and potential investors Defendant
3   Fortress's liabilities; they also failed to disclose that
4   a substantial portion of the funds raised would be used
5   to pay off these liabilities.   [Id.]   Defendant
6   Fortress's assets never exceeded $74,000 during the
7   offering period.   [Id.]   At least seven investors
8   considered Defendant Fortress's existing liabilities
9   important and would have considered this information
10  before investing in Defendant Fortress.   [Id. at ¶ 31.]
11

12      Moreover, Defendants did not provide an audited
13  balance sheet to its unaccredited investors, which would
14  have had the current liabilities in it.   [Id. at ¶ 32.]
15

16      Defendant Richie was aware of the need to disclose
17  Defendant Fortress's current liabilities.   [Id. at ¶ 32.]
18  The former CFO and Defendant Fortress's attorney asked
19  that Defendant Richie disclose the current liabilities on
20  two different occasions, but Defendant Richie refused.
21  [Id. at ¶ 33.]   Defendant Richie also did not disclose
22  that Defendant Fortress was planning on paying off
23  Fortress's current liabilities with the money raised from
24  the offering.   [Id.]   Defendant Richie knew, or
25  recklessly disregarded, that the current liabilities were
26  not disclosed to potential or current investors.   [Id. at
27  ¶ 34.]

28

7

1        **3.    The Expected IPO**

2        Defendant Richie told at least six investors that he

3   expected an IPO to occur "within 12 months" or "one year

4   or so."   [Id. at ¶ 35.]   Defendant Richie told one

5   investor that he expected Defendant Fortress's shares to

6   trade between $15 and $30, a substantially higher price

7   than the $1 price at which the stock was eventually

8   offered initially.   [Id. at ¶¶ 15, 35.]   Defendant

9   Fortress's attorney warned Defendant Richie before the

10  offering not to make statements concerning the likelihood

11  or timing of an IPO.   [Id. at ¶ 36.]

12

13       **4.   Using Investor Funds Before Reaching Minimum**

14           **Amount**

15       The offering here was a so-called "mini-max"

16  offering; it offered a minimum of $2 million and a

17  maximum of $10 million of stock.   [Id. at ¶ 37.]

18  Defendants represented that the funds raised in the

19  offering would be placed in escrow until $2 million was

20  raised, which occurred on August 31, 2000.   [Id.]

21  Defendant Fortress's financial records indicate that

22  Defendant Fortress had spent $1 million of the funds

23  raised by June 22, 2000.   [Id.]   By August 22, 2000, only

24  $125,000 of the $1.3 million raised from the offering

25  remained in escrow.   [Id.]

26  ///

27  ///

28

8

**B.   Proceedings**

On March 22, 2006, Defendants filed a Motion to
Dismiss Complaint or Alternately, to Dismiss Certain of
Plaintiff's Four Claims for Relief or Alternately, for a
More Definite Statement, or Alternately, to Strike
Portions of the Complaint ("Mot."). Defendants' Motion
argues that (1) Plaintiff's Complaint fails to allege
facts entitling it to the relief requested, (2)
Defendants did not make any material misrepresentations
or omissions because they did disclose the current
liabilities of Defendant Fortress and the underlying
assumptions in the financial projections, (3) Defendants
did qualify for an exemption from registering because it
only sold securities to fewer than thirty-five
unaccredited investors, and (4) the fraud allegations
lack specificity.   [Mot. at 2-3, 16.]

Plaintiff filed a Memorandum of Points and
Authorities in Opposition to Defendants' Motion ("Opp'n")
on April 10, 2006. Defendants filed a Reply ("Reply") on
April 24, 2006.

## II. LEGAL STANDARD

**A.   Motion to Dismiss Pursuant to Federal Rule of Civil
Procedure 12(b)(6)**

Under Rule 12(b)(6), a party may bring a motion to
dismiss for failure to state a claim upon which relief

9

1  can be granted.  Dismissal is appropriate when it is
2  clear that no relief could be granted under any set of
3  facts that could be proven consistent with the
4  allegations set forth in the complaint.  See Williamson
5  v. Gen. Dynamics Corp., 208 F.3d 1144, 1149 (9th Cir.
6  2000); Big Bear Lodging Ass'n v. Snow Summit, Inc., 182
7  F.3d 1096, 1101 (9th Cir. 1999).

8

9     The Court must view all allegations in the complaint
10  in the light most favorable to the non-moving party and
11  must accept all material allegations — as well as any
12  reasonable inferences to be drawn from them — as true.
13  See Big Bear Lodging Ass'n, 182 F.3d at 1101; Am. Family
14  Ass'n, Inc. v. City and County of San Francisco, 277 F.3d
15  1114, 1120 (9th Cir. 2002).

16

17     The scope of review under Rule 12(b)(6) is generally
18  limited to the contents of the complaint.  Clegg v. Cult
19  Awareness Network, 18 F.3d 752, 754 (9th Cir. 1994).
20  Nevertheless, "a document is not 'outside' the complaint
21  if the complaint specifically refers to the document and
22  if its authenticity is not questioned."  Branch v.
23  Tunnell, 14 F.3d 449, 453 (9th Cir. 1993), overruled on
24  other grounds by Galbraith v. Santa Clara, 307 F.3d 1119,
25  1125-27 (9th Cir. 2002).  The Court may also consider
26  exhibits submitted with the complaint, Hal Roach Studios
27  v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th

28

1  Cir. 1990), and "take judicial notice of matters of

2  public record outside the pleadings," <u>Mir v. Little Co.</u>

3  <u>of Mary Hosp.</u>, 844 F.2d 646, 649 (9th Cir. 1988)

4  (quotation marks omitted).

5

6  **B.   Motion for More Definite Statement Pursuant to**

7  **Federal Rule of Civil Procedure 12(e)**

8  Rule 12(e) of the Federal Rules of Civil Procedure

9  states:

10

11  If a pleading to which a responsive pleading is

12  permitted is so vague or ambiguous that a party

13  cannot reasonably be required to frame a

14  responsive pleading, the party may move for a

15  more definite statement before interposing a

16  responsive pleading.  The motion shall point out

17  the defects complained of and the details

18  desired.  If the motion is granted and the order

19  of the court is not obeyed within 10 days after

20  notice of the order or within such other time as

21  the court may fix, the court may strike the

22  pleading to which the motion was directed or

23  make such order as it deems just.

24

25  "[A] motion for a more definite statement must be

26  considered in light of the liberal pleading standards of

27  Rule 8(a) (a Complaint need only be a 'short and plain

28

1   statement of the claim showing that the pleader is

2   entitled to relief[.]')."  Bureerong v. Uvawas, 922 F.

3   Supp. 1450, 1461 (C.D. Cal. 1996) (citing Sagan v. Apple

4   Computer, Inc., 874 F. Supp. 1072, 1077 (C.D. Cal. 1994)

5   ("Motions for a more definite statement are viewed with

6   disfavor and are rarely granted because of the minimal

7   pleading requirements of the Federal Rules.")).  "A

8   motion for a more definite statement is used to attack

9   unintelligibility, not mere lack of detail, and a

10  complaint is sufficient if it is specific enough to

11  apprise the defendant of the substance of the claim

12  asserted against him or her."  San Bernardino Public

13  Employees' Ass'n v. Stout, 946 F. Supp. 790, 804 (C.D.

14  Cal. 1996) (citing Famolare, Inc. v. Edison Bros. Stores,

15  Inc., 525 F. Supp. 940, 949 (E.D. Cal. 1981)).  "Thus, a

16  motion for a more definite statement should not be

17  granted unless the defendant literally cannot frame a

18  responsive pleading."  Bureerong, 922 F. Supp. at 1461

19  (citing Boxall v. Sequoia Union High Sch., 464 F. Supp.

20  1104, 1114 (N.D. Cal. 1979)).

21

22      "A Rule 12(e) motion is proper only where the

23  complaint is so indefinite that the defendant cannot

24  ascertain the nature of the claim being asserted."

25  Sagan, 874 F. Supp. at 1077 (citing Famolare, 525 F.

26  Supp. at 949).  "Parties are expected to use discovery,

27  not the pleadings, to learn the specifics of the claims

28

1 being asserted."  Id., see also Famolare, 525 F. Supp. at

2 949 ("where the information sought by the moving party is

3 available and/or properly sought through discovery the

4 motion should be denied.").

5

6    "A Rule 12(e) motion is more likely to be granted

7 where the complaint is so general that ambiguity arises

8 in determining the nature of the claim or the parties

9 against whom it is being made."  Sagan, 874 F. Supp. at

10 1077 (citing Van Dyke Ford, Inc. v. Ford, 399 F. Supp.

11 277, 284 (E.D. Wis. 1975)).  "Such a motion is likely to

12 be denied where the substance of the claim has been

13 alleged, even though some of the details are omitted."

14 Id. (citing Boxall, 464 F. Supp. at 1113-14).

15

16 **C.    Federal Rule of Civil Procedure 9(b)**

17    The Ninth Circuit has held that a "pleading is

18 sufficient under Rule 9(b) if it identifies the

19 circumstances constituting fraud so that the defendant

20 can prepare an adequate answer from the allegations."

21 Wool v. Tandem Computers Inc., 818 F.2d 1433, 1439 (9th

22 Cir. 1987) (quotations and citation omitted).  The

23 plaintiff must state the "time, place and specific

24 content of the false representation."  Semegen v.

25 Weidner, 780 F.2d 727, 731 (9th Cir. 1985).  "Mere

26 conclusory allegations of fraud are insufficient."  Moore

27 ///

28

1 | v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th
2 | Cir. 1989).
3 |
4 |                    **III. DISCUSSION**
5 | **A.   Motion to Dismiss Pursuant to Federal Rule of Civil**
6 |      **Procedure 12(b)(6)**
7 |      **1.   Violation of Section 17(a) of the Securities**
8 |           **Act, Section 10(b) of the Exchange Act, and**
9 |           **Rules 10b-5 and 10b-9.**
10 | ///
11 | ///
12 | ///
13 | ///
14 | ///
15 | ///
16 | ///
17 | ///
18 | ///
19 | ///
20 | ///
21 | ///
22 | ///
23 | ///
24 | ///
25 | ///
26 | ///
27 | ///
28 |

14

Section 17(a) of the Securities Act,[1] Section 10(b) of the Exchange Act,[2] and Rules 10b-5[3] and 10b-9[4]

---

[1] Section 17(a) of the Securities Act states as follows:

> It shall be unlawful for any person in the offer or sale of any securities . . . by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly
>
> > (1) to employ any device, scheme, or artifice to defraud, or
> >
> > (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
> >
> > (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a).

[2] Section 10(b) of the Exchange Act states as follows:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange- . . .
>
> > (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement (as defined in section 206B of the Gramm-Leach-Bliley Act), any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the
> >
> > (continued...)

15

[2](...continued)
        public interest or for the protection of
        investors.

15 U.S.C. § 78j

[3]  Rule 10b-5 states as follows:

        It shall be unlawful for any person, directly or
        indirectly, by the use of any means or
        instrumentality of interstate commerce, or of
        the mails or of any facility of any national
        securities exchange,

            (a) To employ any device, scheme, or
            artifice to defraud,

            (b) To make any untrue statement of a
            material fact or to omit to state a material
            fact necessary in order to make the
            statements made, in the light of the
            circumstances under which they were made,
            not misleading, or

            (c) To engage in any act, practice, or
            course of business which operates or would
            operate as a fraud or deceit upon any
            person, in connection with the purchase or
            sale of any security.

17 C.F.R. § 240.10b-5.

[4]  Rule 10b-9 states as follows:

        It shall constitute a manipulative or deception
        device or contrivance, as used in section 10(b)
        of the Act, for any person, directly or
        indirectly, in connection with the offer or sale
        of any security, to make any representation:

            (1) To the effect that the security is being
            offered or sold on an "all-or-none" basis,
            unless the security is part of an offering
            or distribution being made on the condition
            that all or a specified amount of the
            consideration paid for such security will be
            promptly refunded to the purchaser unless
            (i) all of the securities being offered are
                                          (continued...)

16

1 | prohibit fraudulent conduct in the sale or offering of
2 | securities.  <u>S.E.C. v. Dain Rauscher, Inc.</u>, 254 F.3d 852,
3 | 855-56 (9th Cir. 2001).  To establish a violation of
4 | these statutes, Plaintiff must allege the following: (1)
5 | a material misrepresentation or omission of fact, (2) in
6 | connection with the purchase or sale of a security, (3)
7 | scienter, and (4) that the sale involved interstate
8 | commerce.  <u>See, e.g.</u>, <u>id.</u>, <u>S.E.C. v. Rana Research, Inc.</u>,
9 | 8 F.3d 1358, 1364 (9th Cir. 1993).

10

11 |     Plaintiff has alleged that Defendants violated
12 | Section 17(a) of the Securities Act, Section 10(b) of the
13 | Exchange Act, and Rule 10b-5 by making material
14 | misrepresentations and omissions of fact to investors

15

16

[4](...continued)
        sold at a specified price within a specified
time, and (ii) the total amount due to the
seller is received by him by a specified
date; or

(2) To the effect that the security is being
offered or sold on any other basis whereby
all or part of the consideration paid for
any such security will be refunded to the
purchaser if all or some of the securities
are not sold, unless the security is part of
an offering or distribution being made on
the condition that all or a specified part
of the consideration paid for such security
will be promptly refunded to the purchaser
unless (i) a specified number of units of
the security are sold at a specified price
within a specified time, and (ii) the total
amount due to the seller is received by him
by a specified date.

17 C.F.R. § 240.10b-9.

17

1  concerning the following areas: (1) financial

2  projections, (2) undisclosed liabilities, (3) plans to

3  conduct an IPO, and (4) promising not to spend any of the

4  proceeds from the offering until it raised $2 million.

5  [Compl. at ¶¶ 5, 18-38.]

6

7          a.   **Non-Disclosure of Defendant Fortress's**

8               **Current Liabilities**

9     Defendants assert that they disclosed Defendant

10 Fortress's current liabilities in the business plan.[5]

11 [Mot. at 16.]   In its Opposition, Plaintiff contends its

12 Complaint alleges sufficiently Defendants' non-disclosure

13 of a material fact, i.e., Defendant Fortress's current

14 liabilities, as well as Defendants' scienter.   [Opp'n at

15 7.]

16

17    Plaintiff alleges that Defendants' current

18 liabilities were never disclosed to potential investors

19 and it was never disclosed that Defendants were using a

20 large portion of the revenue from the offering to pay for

21 the liabilities already incurred.   [Compl. at ¶¶ 29-34.]

22 Plaintiff also alleges that these misrepresentations and

23 omissions were material and Defendants acted or failed to

24 act with scienter.   [Id. at ¶¶ 31, 33-34.]   Thus,

25 Plaintiff has alleged a prima facie claim for a violation

26 _____

27       [5]  Pursuant to Federal Rule of Evidence 201, the
   Court grants Defendants' Request for Judicial Notice
28 Number 5.

18

1  of Section 17(a) of the Securities Act, Section 10(b) of
2  the Exchange Act, and Rule 10b-5.

4      Defendants assert that they did in fact disclose
5  their current liabilities and relied upon their quarterly
6  balance sheets in their business plan to support such an
7  assertion.  [Mot. at 2 n.6, 16.]  That some of the
8  financial documents in Defendant Fortress's business plan
9  have a category for current liabilities does not
10  necessarily disprove Plaintiff's allegation that there
11  were current liabilities that were undisclosed.  [Compl.
12  at ¶ 29.]  The Court cannot, as a matter of law, conclude
13  that since Defendants' business plan included a statement
14  of current liabilities, that all of Defendant Fortress's
15  current liabilities were disclosed.  It is possible that
16  the current liabilities disclosed in the business plan
17  did not accurately reflect its actual liabilities.

19      Moreover, Plaintiff avers that Defendants never
20  disclosed that the revenue from the offering was going to
21  be used to cover Defendant Fortress's expenses.  [Id. at
22  ¶¶ 30, 33.]  Even if Defendants did disclose their
23  current liabilities, Plaintiff would be entitled to
24  relief if it is proven that Defendants misrepresented or
25  omitted to disclose the liabilities compared to the
26  current assets.  Accordingly, Defendants have not
27  satisfied their burden of establishing that Plaintiff has
28

1 not alleged facts that, if proven, would entitle it to
2 relief.

4   In light of the Court's ruling that Plaintiff has
5 alleged facts that, if proven, would entitle it to relief
6 for its claims that Defendants violated Section 17(a) of
7 the Securities Act, Section 10(b) of the Exchange Act,
8 and Rule 10b-5, the Court need not address Defendants'
9 other arguments that Plaintiff cannot state a claim under
10 these statutes.[6] See Conley v. Gibson, 355 U.S. 41, 45-
11 46 (1957), Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336,
12 338 (9th Cir. 1996), De La Cruz v. Tormey, 582 F.2d 45,
13 48 (9th Cir. 1978). That Defendants did not disclose
14 their current liabilities, however, does not establish a
15 violation of Rule 10b-9.

17           **b.   Early Withdrawal of Escrow Funds**
18   Defendants assert that breaking the escrow agreement
19 is a breach of contract and not fraud.  [Mot. at 22.]
20 Plaintiff counters that violating the escrow agreement
21 can constitute fraud.  [Opp'n at 15.]

23   Plaintiff alleges that Defendants knew or should have
24 known that their statements concerning the "mini-max"
25 offering were false because they were not going to keep

27      [6]  The Court need not address Defendants' argument
   that its forward-looking statements are protected under
28 the "bespeaks caution" doctrine at this time.

the revenue from the sale of the securities in an escrow
account until $2 million was raised.   [Compl. at ¶¶ 37-
38.]   Defendants seek dismissal of the Rule 10b-9 claim
on the ground that their early withdrawal of escrow funds
was not actionable fraud.   [Mot. at 22.]

Defendants' argument lacks merit.   Defendants rely
upon Poth v. Russey, 99 Fed. Appx. 446, 454 (4th Cir.
2004), an unpublished case; there, the Fourth Circuit
held that fraudulent intent cannot be inferred through a
mere breach of contract.   Id.   Such a holding does not
establish that a statement contained in a contract, which
is knowingly false and later breached, cannot constitute
fraud.   Plaintiff alleges that Defendant Richie knew or
should have known that Defendant Fortress was in such a
dire financial condition that issuing business plans that
stated the revenue from the offering would be held in
escrow was materially false. [Compl. at ¶¶ 35-36.]   Thus,
Plaintiff's allegations, if proven, would entitle it to
relief for a violation of Section 10(b) of the Exchange
Act and Rule 10b-9.

### 2.   Violation of Sections 5(a) and 5(c) of the Securities Act

Defendants contend that Plaintiff's conclusory
allegations that Defendants sold securities to
unaccredited investors without a registration statement,

21

1  and that Defendants were not eligible for an exemption,
2  are insufficient because (1) Plaintiff failed to allege
3  how many unaccredited investors Defendant Fortress's
4  securities were sold to, and (2) it would have been an
5  idle act to present unaccredited investors with an
6  "audited" balance sheet of a start-up company with no
7  operational history.   [Mot. at 23-24.]

8

9      Plaintiff responds that a prima facie claim for a
10 violation of sections 5(a) and 5(c) of the Securities Act
11 requires Plaintiff to allege that Defendants sold
12 unregistered securities in interstate commerce.   [Opp'n
13 at 4-5.]   Plaintiff contends that Defendants bear the
14 burden that they are exempt from the registration
15 requirements.   [Id. at 5.]

16

17     Defendants counter that since Plaintiff pled that
18 Defendants were not eligible for an exemption, normally
19 an affirmative defense, it "assumed the burden of
20 correctly pleading the issue."   [Reply at 21.]
21 Defendants argue that Plaintiff did not adequately plead
22 the exemption issue because Plaintiff's allegations are
23 conclusory and do not set forth facts establishing *why*
24 Defendants had no exemption.

25

26     Sections 5(a) and 5(c) of the Securities Act forbid
27 the sale of unregistered securities in interstate
28

22

1  commerce.  <u>S.E.C. v. Murphy</u>, 626 F.2d 633, 640 (9th Cir.
2  1980).   Here, Plaintiff has alleged that Defendants sold
3  unregistered securities through interstate commerce.
4  [Compl. at ¶¶ 40, 41.]   Moreover, Plaintiff also has
5  alleged that Defendants are not exempt from registration.
6  [<u>Id.</u> at ¶ 17.]   Accordingly, Plaintiff has averred facts
7  that, if proven, would establish a violation of Sections
8  5(a) and 5(c) of the Securities Act.

9

10      Defendants' argument that Plaintiff has assumed the
11  burden of pleading that Defendants were not exempt from
12  the registration requirements lacks merit.   [Reply at
13  21.]   The authority Defendants cite does not support such
14  a proposition.[7]   That Plaintiff averred that Defendants
15  were not exempt from the registration requirements does
16  not place an extra burden on it in establishing its
17  overall claim that Defendants sold unregistered
18  securities in interstate commerce in violation of
19  Sections 5(a) and 5(c) of the Securities Act.   Thus,
20  Plaintiff does not need to allege that Defendant sold
21  securities to over thirty-five unaccredited investors.
22  ///

23

24      [7]  In <u>United States v. One 1949 Model Ford Coach
    Auto., Motor No. 98BA-876874</u>, 101 F. Supp. 492 (D. S.C.
25  1951), the court held that if a party pleads a fact in
    its complaint, it should have the burden of proving it.
26  <u>Id.</u> at 494.   Not only is the Court unpersuaded by the
    holding of this case, it is irrelevant to the facts here;
27  this is not a motion for summary judgment where Plaintiff
    has to prove its allegations.
28

**3.   Failure to Plead Facts Entitling Plaintiff to an
        Injunction**

Defendants contend that Plaintiff fails to allege a
present threat; there are "no facts that the conduct was
repeated or continued during the five intervening years
or that the conduct is being repeated at this time or in
the near future." [Mot. at 9.] Defendants argue that if
there is no continuing harm, there needs to be a
"cognizable danger of recurrent violation, something more
than the mere possibility . . . ." [Id. at 10 (citing
United States v. W.T. Grant Co., 345 U.S. 629, 633
(1953)).] Defendants assert that Plaintiff is not
authorized to bring this action because it has failed to
allege an imminent violation of the law. [Id. at 12.]

Plaintiff responds that because it has stated a claim
under federal securities laws, Defendants' argument
regarding the relief sought in this action is premature.
[Opp'n at 9.] Plaintiff argues that its Complaint
alleges the following facts establishing its right to an
injunction:

    (1) Defendants' violations were serious, repeated,
    and committed with scienter;

    (2) material misrepresentations and omissions were
    made in the original private placement memorandum,
    and in the revised memorandum, issued one-year later;

1        (3) Defendants disregarded their counsel's advice to
2        comply with the antifraud provisions;
3        (4) Defendants have not revised the private placement
4        memorandum;
5        (5) Defendants have failed to recognize their
6        wrongful conduct or provide assurances of future
7        compliance; and
8        (6) Defendant Richie is still associated with a
9        regulated entity.
10   [Id. at 9-11.]

11

12       Injunctive relief is used to deter future violations
13   of securities laws, not to punish past violations.
14   S.E.C. v. Koracorp Indus., Inc., 575 F.2d 692, 697 (9th
15   Cir. 1978) (citing Hecht Co. v. Bowles, 321 U.S. 321, 329
16   (1944)).  Thus, injunctions against securities law
17   violations are proper only if the wrongs are ongoing or
18   likely to recur.  F.T.C. v. Evans Prods Co., 775 F.2d
19   1084, 1087 (9th Cir. 1985).  In other words, the SEC must
20   establish "some cognizable danger of recurrent violation,
21   something more than the mere possibility which serves to
22   keep the case alive."  W. T. Grant Co., 345 U.S. at 633.
23   There must be a reasonable likelihood of future
24   violations of securities law.  Murphy, 626 F.2d at 655.

25

26       Past violations of securities laws may give rise to
27   an inference of future violations, however.  Id.  The

28

1  Court shall consider the totality of the circumstances
2  surrounding the securities violations, specifically, "the
3  degree of scienter involved; the isolated or recurrent
4  nature of the infraction; the defendant's recognition of
5  the wrongful nature of his conduct; the likelihood,
6  because of defendant's professional occupation, that
7  future violations might occur; and the sincerity of his
8  assurances against future violations." Id.
9
10      Defendants have not met their burden of establishing
11 that, taking all of Plaintiff's allegations as true, the
12 Complaint does not state a claim for injunctive relief.
13 Plaintiff has alleged that (1) Defendants' violations
14 occurred over a one year period, [Compl. at ¶ 13]; (2)
15 the violations were committed with a great amount of
16 scienter, [id. at ¶¶ 25, 26, 27, 33, 35, 37]; and (3)
17 Defendant Richie currently holds several securities
18 licences.  [Id. at ¶ 10.]  Using the Murphy factors,
19 these alleged facts, if proven, could entitle Plaintiff
20 to injunctive relief.
21
22      Defendants argue that the phrase "is engaged or is
23 about to engage," as commonly used in other areas of the
24 law and ordinary usage, would not support an inference of
25 imminent future action from past conduct; in a securities
26 context, however, there is clear authority that permits
27 the Court to do just that.  See Murphy, 626 F.2d at 655.
28

26

1  Indeed, the Murphy Court held that a defendant's present

2  compliance with securities laws does not preclude the

3  issuance of an injunction.   [Id.]

4

5      Defendants argue that Plaintiff's enabling

6  legislation should be interpreted as confining

7  Plaintiff's standing to sue only if there is an imminent

8  violation.   This contention is equally unfounded.   Murphy

9  establishes that injunctive relief is proper only if

10  there is a likelihood of future securities violations,

11  and evidence of past conduct may be sufficient to

12  establish that there is a reasonable likelihood of future

13  violations.   [Id.]   Thus, under Murphy, Plaintiff has

14  standing to bring this suit.

15

16      To interpret the phrase "is engaged or is about to

17  engage" as creating a higher standard than the reasonable

18  likelihood of future violations standard would be

19  illogical because this would create situations when the

20  S.E.C has made a showing that it could obtain injunctive

21  relief but does not have standing to sue for such relief.

22  In concluding that the standard "is engaged and is about

23  to engage" is similar to the reasonable likelihood

24  standard, the Court finds that Defendants' past conduct

25  ///

26  ///

27  ///

28

27

1 can be used to infer that they are about to engage in

2 securities fraud.[8]

3

4     Defendants' Motion would have the Court engage in the

5 level of scrutiny required to determine if Plaintiff is

6 entitled to injunctive relief.  Such an undertaking is,

7 of course, premature at the Motion to Dismiss stage.

8 Plaintiff's allegations are sufficient to defeat

9 Defendants' Motion.  In light of this ruling, the Court

10 finds that Plaintiff has standing to bring this action as

11 well.

12

13     **4.   Failure to Plead Facts Entitling Plaintiff to**

14         **Disgorgement**

15     Defendants assert that to obtain disgorgement from

16 Defendant Richie, Plaintiff must allege that the monies

17 Defendant Richie received "exceeded a reasonable salary

18 for his services," which it has not done.  [Mot. at 13.]

19

20     Plaintiff counters that it can obtain disgorgement

21 from Defendant Richie because (1) he was the president

22 and CEO of Defendant Fortress, (2) he was responsible for

23 _____

24    [8]  The Court is not disregarding Congress's intent
that Plaintiff establish that Defendants be about to
25 engage in securities violations, it is merely considering
Defendants' past conduct as circumstantial evidence that
26 Defendant are indeed about to engage in securities
violations.  The dispute between the parties is not what
27 the relevant standard is, but what evidence can be
considered to satisfy this standard.  The decision in
28 <u>Murphy</u> forecloses Defendants' position, however.

1 | selling Defendant Fortress's stock, and (3) he co-wrote

2 | the business plan that contained the material

3 | misrepresentations and omissions.  [Opp'n at 12.]

4 |

5 |     Pursuant to the Court's equity powers, it may order a

6 | defendant to disgorge all "ill-gotten gains" from its

7 | violation of securities laws.  S.E.C. v. First Pacific

8 | Bancorp, 142 F.3d 1186, 1191 (9th Cir. 1998).  "The

9 | purpose of disgorgement is to deprive a person of

10 | 'ill-gotten gains' and prevent unjust enrichment."

11 | Hateley v. S.E.C., 8 F.3d 653, 655 (9th Cir. 1993).  The

12 | disgorgement amount should not exceed the actual amount

13 | of "ill-gotten gains."  See id. at 655-56 (finding that

14 | when $50,000 was assessed against another defendant out

15 | of $55,000 of total disgorgement, any amount exceeding

16 | $5,000 in disgorgement assessed against the remaining

17 | defendant would be excessive.)  "[W]here two or more

18 | individuals or entities collaborate or have a close

19 | relationship in engaging in the violations of the

20 | securities laws, they have been held jointly and

21 | severally liable for the disgorgement of illegally

22 | obtained proceeds."  First Pacific Bancorp, 142 F.3d at

23 | 1191 (holding that it was appropriate to find the

24 | individual defendant jointly and severally liable because

25 | the individual defendant, as a high ranking officer of

26 | the corporate defendants, enjoyed a sufficiently close

27 | relationship.)

28 |

1   Plaintiff has sufficiently alleged facts that, if
2   proven, would authorize an order of disgorgement from
3   Defendant Richie.  Plaintiff has alleged that Defendants
4   enjoyed a close relationship by alleging that Defendant
5   Richie was responsible for the illegal sale of Defendant
6   Fortress's preferred stock and he co-wrote the business
7   plan containing the allegedly material misrepresentations
8   and omissions.  [Compl. at ¶¶ 3, 4, 5, 7, 9, 11.]
9
10   Defendants incorrectly assert that Plaintiff must
11   allege that Defendant Richie received funds above a
12   reasonable salary for his services.  Defendants cite no
13   authority for this proposition and rely only on authority
14   that stands for the general principle that disgorgement
15   is not punitive in nature.  Defendants request the Court
16   extend this authority to the point that disgorgement
17   could not be ordered from a high ranking corporate
18   officer unless it was shown that he or she received more
19   than a reasonable salary.  Such an extension of the law
20   is not only unsupported by existing case law, it is
21   unwarranted.  Defendants' proposed rule, for example,
22   does not take into account the situation when a
23   struggling business is only able to pay a "reasonable"
24   salary of the high ranking officers because of the
25   illegal securities transactions.  See First Pacific
26   Bancorp, 142 F.3d at 1192.  Moreover, Defendants'
27   proposed pleading requirement directly contradicts the
28

1   authority that permits joint and several liability when

2   the individual defendant and the corporate defendant

3   jointly undertake to violate securities laws.   Id.

4

5        Hence, as Plaintiff has properly alleged that

6   Defendant Richie enjoyed a close relationship with

7   Defendant Fortress, such that he could be jointly and

8   severally liable for the "ill-gotten gains" received by

9   Defendant Fortress, the Court denies Defendants' Motion

10  as to this remedy.

11

12       **5.   Time-Bar to Plaintiff's Request for Civil**

13            **Penalties**

14       Defendants aver that Plaintiff's allegations

15  establish that their alleged material misrepresentations

16  and omissions were made more than five years before the

·17  Complaint was filed and thus are barred by the five year

18  statute of limitations on civil penalties.   [Mot. at 14-

19  15.]   Defendants contend that there is no exception to

20  the five year time period because it is not subject to

21  the same equitable considerations as a statute of

22  limitations.   [Id. at 15.]

23

24       Plaintiff contends that it did file this action

25  within the five year period because Defendants did not

26  cease selling securities until April 2001 and this action

27  was filed in January 2006.   [Opp'n at 13.]   Plaintiff

28

1 argues that Defendants sold securities within the time
2 period, January 2001 through April 2001, which gives the
3 Court authority to assess penalties for all of
4 Defendants' illegal conduct.  [Id.]  Plaintiff asserts
5 that the five year time period should not begin to run
6 until it knew or should have known of Defendants' illegal
7 conduct, which was April 2002.  [Id. at 14.]

9      28 U.S.C. § 2462 states as follows:

11          Except as otherwise provided by Act of Congress,
12          an action, suit or proceeding for the
13          enforcement of any civil fine, penalty, or
14          forfeiture, pecuniary or otherwise, shall not be
15          entertained unless commenced within five years
16          from the date when the claim first accrued if,
17          within the same period, the offender or the
18          property is found within the United States in
19          order that proper service may be made thereon.[9]

21      A claim first accrues on the date the defendant
22 allegedly violated the statute and not when the plaintiff
23 knew or should have known of the alleged violation.  Fed.
24 Election Comm'n v. Williams, 104 F.3d 237, 240 (9th Cir.

---

26      [9]  Neither party disputes that this is the applicable
statute of limitations for civil penalties pursuant to a
27 violation of Sections 5(a), 5(c), and 17(a) of the
Securities Act, Section 10(b) of the Exchange Act, and
28 Rules 10(b)(5) and 10(b)(9).

1 1996) ("We hold that an action, suit or proceeding to
2 assess or impose a civil penalty must be commenced within
3 five years of the date of the violation giving rise to
4 the penalty.  We reject the discovery of violation rule
5 [respondent] advocates as unworkable; outside the
6 language of the statute; inconsistent with judicial
7 interpretations of § 2462; unsupported by the discovery
8 of injury rule adopted in non-enforcement, remedial
9 cases; and incompatible with the functions served by a
10 statute of limitations in penalty cases.") (quoting 3M
11 Co. v. Browner, 17 F.3d 1453, 1462-1463 (D.C. Cir.
12 1994)).

13

14     Here, Plaintiff alleges that Defendants sold
15 securities in violation of securities laws during the
16 period of March 2000 through April 2001.  [Compl. at ¶¶
17 4, 15.]  Plaintiff filed its Complaint January 19, 2006.
18 Therefore, a portion of the alleged wrongful conduct
19 occurred within the limitations period:  Defendants'
20 alleged sale of securities during the period of January
21 19, 2001, through April 2001.  Plaintiff has alleged
22 facts that, if proven, would entitle it to civil
23 penalties; this is sufficient to survive Defendants'
24 Motion.  See Conley, 355 U.S. at 45-46, Cahill, 80 F.3d
25 at 338, De La Cruz, 582 F.2d at 48; Cf. Doe v. United
26 State Dept. of Justice, 753 F.2d 1092, 1104 (D.C. Cir.
27 1985) ("[I]t need not appear that the plaintiff can

28

1  obtain the specific relief demanded as long as the court
2  can ascertain from the face of the complaint that some
3  relief can be granted. . . .  A district court should not
4  grant a Rule 12(b)(6) motion to dismiss for failure to
5  seek the technically appropriate remedy when the
6  availability of some relief is readily apparent on the
7  face of the complaint."), <u>Doss v. South Cent. Bell Tel.</u>
8  <u>Co.</u>, 834 F.2d 421, 425 (5th Cir. 1987).  For the purposes
9  of a motion to dismiss pursuant to Federal Rule of Civil
10 Procedure 12(b)(6), it is immaterial that § 2462 might
11 limit the civil penalties Plaintiff may be entitled to.
12

13     It is premature for the Court to address the parties'
14 arguments concerning whether the alleged wrongful conduct
15 outside of the limitations period can be considered in
16 assessing civil penalties. Accordingly, Plaintiff has
17 stated facts that, if proven true, would entitle it to
18 civil penalties.

19

20 **B.  Specificity of Plaintiff's Fraud Allegations**
21     **1.  Financial Projections**

22     Defendants contend that Plaintiff merely alleges that
23 their projections were premised on faulty assumptions,
24 which does not satisfy the specificity requirement
25 because (1) Plaintiff does not allege which of the
26 assumptions are unreasonable, (2) Plaintiff does not
27 allege how the assumptions are unreasonable, and (3) an
28

1  allegation of unreasonableness is not sufficient to

2  allege actionable fraud.  [Id. at 20-21.]

3

4      Plaintiff responds that the Complaint alleges

5  adequately the "time, place, persons, statements, and

6  explanations of why" the assumptions were unreasonable.

7  [Opp'n at 15.]  Plaintiff argues that in reading

8  Defendants' Motion as a whole, it is obvious that they

9  understood which assumptions are alleged to be

10  unreasonable.  [Id. at 15-16.]

11

12      Plaintiff premises its claim for a violation of

13  Section 17(a) of the Securities Act, Section 10(b) of the

14  Exchange Act, and Rule 10b-5 on multiple theories, one of

15  which is that the financial projections in the business

16  plan were misrepresented.  Defendants' Motion argues in

17  vain that Plaintiff's Complaint lacks specificity as to

18  unreasonable assumptions; Plaintiff has specifically

19  alleged how the financial disclosures were

20  misrepresented.  [Compl. at ¶¶ 19-27.]  Plaintiff need

21  not then specifically allege why the assumptions were

22  unreasonable.

23

24      **2.  The IPO Allegations**

25      Defendants assert that it is unclear what was false

26  about Defendant Richie's statements concerning the IPO,

27  and how Defendant Richie knew the statements were false.

28

1  [Mot. at 21.]  Defendants argue that Defendant Richie's

2  statement was a "vague statement of optimism," or an

3  "unfulfilled promise of a future event," which is not

4  actionable.  [Id. at 22.]

5

6      Plaintiff contends that it has alleged adequately the

7  "time, place, persons, statements, and explanations [for]

8  why" Defendant Richie's statements concerning the IPO

9  were improper.  [Opp'n at 15.]

10

11      Plaintiff's IPO allegations are sufficiently

12  specific.  Defendants' argument that Plaintiff does not

13  allege why the statement is false is unpersuasive.  The

14  Complaint alleges that Defendant Richie made statements

15  concerning an IPO and was told by his attorneys that he

16  should not make such statements.  [Compl. at ¶ 35.].

17  Plaintiff alleges that Defendant Fortress was a start-up

18  company, had a poor record of accomplishment, had

19  inexperienced management, and was in a deteriorating

20  financial condition; Defendant Richie knew or should have

21  known that his statement that there would be an IPO for

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28

36

1  Defendant Fortress within a year, was false.[10]   [Id. at ¶¶
2  35-36.]

3

4        **3.   Timing of Misrepresentations**

5        Defendants contend that Plaintiff fails to allege the
6  date of the misrepresentations.   [Mot. at 22.]
7  Plaintiff responds that it alleged sufficiently the
8  "time" of the misrepresentations.   [Opp'n at 15.]

9

10       While Plaintiff has not alleged the exact date and
11 time of the misrepresentations, it is clear that all of
12 the misrepresentations and omissions occurred during the
13 period of March 2000 to April 2001.   [See Compl. at 4.]
14 This is a sufficient allegation as to the time of the
15 misrepresentations and omissions.

16

17 **C.   Request to Strike Certain Allegations**

18       Defendants move this Court to strike certain
19 allegations from the Complaint.   [Notice of Motion at 3-
20 4.]   In the body of their Motion, however, Defendants
21 neither state the legal standard for a Motion to Strike

22 _____

23       [10]  Defendants' other assertion, that Defendant
   Richie's statements are not actionable, is immaterial to
24 whether the allegations are specific.  [Mot. at 22.]
   This assertion should have been in the section concerning
25 why Plaintiff did not allege actionable fraud.   The Court
   need not address this assertion in light of the Court's
26 ruling that Plaintiff alleged facts that would entitle it
   to relief on its Second, Third, and Fourth Claims on a
27 theory that Defendants broke the escrow account early and
   did not disclose Defendant Fortress's current
28 liabilities.

1 nor argue why the allegations should be stricken.

2 Apparently, Defendants request the Court to strike these

3 allegations as an alternative remedy to their request to

4 dismiss the Complaint.

5

6     A motion to strike does not have the same standards

7 as a motion to dismiss pursuant to Federal Rule of Civil

8 Procedure 12(b)(6), however.  Compare section II.A with

9 Federal Rule of Civil Procedure 12(f) and Fantasy, Inc.

10 v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993) rev'd on

11 other grounds in Fogerty v. Fantasy, Inc., 510 U.S. 517,

12 534-535 (1994).  It is insufficient to argue that a claim

13 should be dismissed under Federal Rule of Civil Procedure

14 12(b)(6) and, without arguing the legal elements, request

15 the Court to strike portions of the Complaint.

16

17     Accordingly, Defendants did not satisfy their burden

18 that certain allegations in Plaintiff's Complaint should

19 be stricken.

20

21                    **IV. CONCLUSION**

22     For the foregoing reasons, Defendants' Motion is

23 denied.

24

25 Dated: _May 9, 2006_

26                              VIRGINIA A. PHILLIPS
                               United States District Judge

27

28