**TAB C**

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

DEC 21 2006

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

*Priority Send*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> STEVEN V. COTTON, ) <br> ) <br> Defendant. ) <br> ) <br> ——————————————— ) | CASE NO. SACV 06-0905 AG (ANx) <br><br> ORDER DENYING DEFENDANT'S MOTION TO DISMISS COMPLAINT UNDER RULES 9(b) AND 12(b)(6) |

Before the Court is the Motion to Dismiss Complaint Under Rules 9(b) and 12(b)(6) ("Motion") filed by Defendant Steven V. Cotton ("Defendant"). After considering the moving, opposing, and reply papers, and oral argument by the parties, the Court DENIES Defendant's Motion.

DOCKETED ON CM

DEC 21 2006

BY _____ 178

## 1.    BACKGROUND

This case revolves around allegations that Defendant as chief financial officer and chief operating officer caused Lantronix, Inc. ("Lantronix") to violate several securities laws by fraudulently recognizing and reporting revenue under Lantronix's revenue recognition policy.

1    The facts in this background section are taken from the Complaint of Plaintiff Securities

2    Exchange Commission (the "SEC"), which the Court must accept as true in this Motion.

3         As part of his duties as chief financial officer, Defendant monitored whether Lantronix

4    was likely to meet the quarterly revenue and earning expectations of Wall Street analysts.

5    (Complaint ¶ 12.)  At the time of the violations, Lantronix relied on sales to its distributors for

6    the majority of its revenue.  (Complaint ¶ 4.)  Defendant ensured that the analyst's expectations

7    were met by engaging in a number of fraudulent revenue recognition practices, including

8    "recognizing revenue of product that had not been ordered during the quarter; improperly

9    recognizing revenue on sales that gave distributors 'full stock rotation rights', which allowed the

10   distributors to exchange all the product received for different product; entering into undisclosed

11   side agreements with distributors that included return rights; shipping product in excess of the

12   amount ordered or shipping product that was not ordered at all; and recognizing revenue on a

13   contingent sale."  (Complaint ¶ 12.)  Not only did these practices cause Lantronix to make

14   material misstatements on its quarterly and annual financial filings, but also Defendant

15   concealed these practices from Lantronix's auditors.  (Complaint ¶ 12.)  As a result of these

16   actions, Defendant caused Lantronix to overstate revenues and understate pre-tax losses on key

17   financial statements.  (Complaint ¶ 13.)

18

19        **1.1    ALLEGATIONS RELATING TO THE QUARTER ENDING**

20                 **DECEMBER 31, 2000**

21

22        Before the end of Lantronix's quarter ending December 31, 2000, a Lantronix manager

23   for manufacturing and distribution "ran a report of the high-dollar inventory items on hand and

24   advised Defendant of its contents."  (Complaint ¶ 16.)  Several hours later, and without a

25   purchase order, Defendant caused Lantronix personnel to enter an order for Transtec AG

26   ("Transtec"), one of Lantronix's largest distributors, consisting of several of the products from

27   the list the manager had created earlier.  (Complaint ¶¶ 15-16.)  Lantronix shipped $272,605 of

28   product on December 31, 2000.  Defendant caused this revenue to be recognized in the quarter

2

1  ending December 31, 2000, even though a purchase order was only issued on January 4, 2001

2  for this shipment. (Complaint ¶¶ 16-17.)  Lantronix's internal procedure for recognizing

3  revenue required a purchase order from the distributor including the terms and conditions of

4  sale, a receipt of the purchase order before shipment of the product ordered, and shipment of the

5  product to the distributor before quarter's end. (Complaint ¶ 19.)  Defendant reviewed and

6  signed the Form 10-Q filed on behalf of Lantronix for the quarter ending December 31, 2000,

7  which contained revenue from this transaction. (Complaint ¶ 21.)

8      Because this transaction did not conform with Lantronix's  policy and the Statement of

9  Financial Accounting Concepts Number 5, "Recognition and Measurement of Financial

10  Statements of Business Enterprises section 85(b)," a Generally Accepted Accounting Principle

11  ("GAAP") provision, Defendant caused Lantronix to improperly record revenue from this

12  transaction in the quarter ended December 31, 2000 rather than the next quarter. (Complaint ¶¶

13  17, 21.)  By doing so, Defendant ensured that Wall Street's analysts expectations relating to

14  Lantronix's revenues and earnings were met for the quarter. (Complaint ¶ 22.)

15

16      **1.2    ALLEGATIONS RELATING TO THE QUARTER ENDING**

17          **MARCH 31, 2001**

18

19      The SEC states that Defendant also caused a material misstatement on Lantronix's March

20  31, 2001 filing. Lantronix represented in its 10-Q from March 31, 2001 that "[w]e have granted

21  several customers limited return privileges," and that estimated reserves have been recorded, in

22  part, to reflect these agreements. (Complaint ¶ 23.) But on March 21, 2001, Defendant emailed

23  Manfred Rubin-Schwartz ("Rubin-Schwartz"), chief financial officer of Transtec, requesting

24  Transtec to consider purchasing a new stocking order for $1.3 million of product by quarter's

25  end. (Complaint ¶ 24.) Defendant told Transtec that Transtec would have "the ability to rotate

26  any unsold inventory" at the end of June 2001, but these terms were not included on either the

27  purchase order or the invoice. (Complaint ¶ 24.) Recognition of revenue from this transaction

28  was improper under Financial Accounting Standards Board Statement Number 48 ("FAS 48 "), a

3

1  GAAP provision. (Complaint ¶ 26.) By completing this transaction, Defendant caused

2  Lantronix to improperly recognize $1,531,659 in revenue for this transaction in the quarter

3  ending March 31, 2001. (Complaint ¶ 25.)

4       At the same time that this product was shipped, Defendant caused Lantronix to ship to

5  Transtec an additional $263,925 of unordered product without a purchase order. (Complaint

6  ¶ 28.) Recognition of this revenue was improper under GAAP. (Complaint ¶ 29.) This

7  $263,925 was also caused by Defendant to be improperly recorded as revenue in the quarter

8  ending March 31, 2001, and Defendant reviewed and signed the associated Form 10-Q on behalf

9  of Lantronix containing material misstatements related to both of these inflated revenues.

10 (Complaint ¶¶ 28, 30.) By doing so, Defendant ensured that Wall Street's analysts expectations

11 relating to Lantronix's revenues and earnings were met for the quarter. (Complaint ¶ 31.)

12

13   **1.3   ALLEGATIONS RELATING TO THE QUARTER ENDING JUNE 30, 2001**

14

15       The SEC claims that to meet analyst's expectations for the quarter ending June 30, 2001,

16 Defendant caused two improper transactions to occur and caused Lantronix to improperly

17 recognize revenue from these transactions. (Complaint ¶ 32.) First, in a June 19, 2001 email to

18 Rubin-Schwartz and Franz Bochtler ("Bochtler") of Transtec, Defendant requested Transtec's

19 participation in a call with Lehman Brothers, Inc. ("Lehman Brothers") and Lantronix.

20 (Complaint ¶ 33.) Defendant informed Transtec that in preparation for a public securities

21 offering that Lehman was making in July of that year, Lehman Brothers would want to confirm

22 with Transtec its sell-through and inventory levels of the product and its shipment to Transtec

23 that quarter. (Complaint ¶ 33.) Defendant explained to Transtec that it wanted to tell Lehman

24 that Lantronix was shipping $2.3 million of product in the quarter ending June 30, 2001, and if

25 Defendant were permitted to do so, Transtec could order no more than $500,000 in the following

26 quarter while rotating back $1.5 million of product to "bring [Transtec's] inventories down to

27 the acceptable levels by the end of September." (Complaint ¶ 33.)

28       On June 27, 2001, Transtec issued two purchase orders totaling $2,269,861 of Lantronix

1   product. (Complaint ¶ 34.) These orders included $1,597,170 of Lantronix products and

2   $671,691 of product of Lantronix's subsidiary, Lightwave Communications, Inc. ("Lightwave")

3   (Complaint ¶ 34.) Lightwave had been newly acquired by Lantronix, and because the bulk of

4   the Lightwave order involved new products for Transtec, Bochtler demanded return rights with

5   this order. (Complaint ¶ 34.) Defendant orally agreed that Transtec would have the right to

6   return $1.1 million in product in early August 2001 and could return any remaining goods later

7   in the year. (Complaint ¶ 34.) Recognition of revenues from these sales was improper, and

8   Defendant's caused Lantronix to improperly recognize these revenues to inflate Lantronix's

9   reported revenue and earnings. (Complaint ¶ 35.)

10      Defendant also caused Lantronix to grant another foreign distributor, Lightwave GmbH,

11   undisclosed full stock rotation rights for 90 days relating to a sale of $421,900 in June 2001.

12   Defendant negotiated the sale, but a purchase order was never transmitted, even though

13   Lantronix had not made a sale of similar magnitude to Lightwave GmbH. (Complaint ¶ 36.)

14   Lightwave GmbH never paid for the product and ultimately returned it several months later.

15   (Complaint ¶ 39.) Defendant caused Lantronix to recognize the revenue from this sale during

16   the quarter ending in June 2001, even though such recognition violated FAS 48 and statements

17   made by Lantronix on its Form 10-Q for the quarter ending March 31, 2001 and its Form 10-K

18   for the year ending June 30, 2001. (Complaint ¶¶ 36-37.)

19      In June 2001, Defendant also structured a deal in which KMJ, one of Lantronix's

20   distributors, held about $300,000 of product until Hewlett Packard, who intended to purchase the

21   product, could obtain the necessary authorization to commit to a purchase order. (Complaint ¶

22   40.) On June 30, 2001, Defendant caused Lantronix to ship $343,000 worth of product to KMJ,

23   and Defendant caused Lantronix to recognize the revenue. (Complaint ¶ 41.) KMJ eventually

24   paid Lantronix $62,500 for the transaction in the quarters ended December 2001 and March

25   2002 and returned the remainder of the product. (Complaint ¶ 42.) On June 30, 2001,

26   Defendant reviewed and signed Lantronix's Form-10K for the year ended June 30, 2001, which

27   contained inflated revenues related to these transactions.

28

**1.4    ALLEGATIONS RELATED TO QUARTER ENDING
SEPTEMBER 30, 2001**

Defendant brokered a deal before he was terminated to prevent a product return from Transtec. (Complaint ¶ 48.) Transtec attempted to sell the product to TECsys Development, Inc. ("TDI"), a Texas-based company. (Complaint ¶ 48.) TDI wanted the product for a future sale to a customer in the Philippines, but also did not want to be obligated to pay for the product if the sale was not consummated. (Complaint ¶ 49.) Defendant negotiated a deal for this transaction with several favorable terms to TDI. (Complaint ¶ 48.) In December 2001, Transtec attempted to collect payment for this transaction, but the Philippines sale had not been consummated. (Complaint ¶ 50.) Because TDI was not able to pay Transtec for the product, Defendant caused Lantronix to wire money and issue a check to TDI to pay Transtec. (Complaint ¶ 50.) Although TDI's owner signed promissory notes on behalf of TDI for the benefit of Lantronix, Defendant effectively caused Lantronix to improperly loan money to a company to purchase Lantronix's product. (Complaint ¶ 50-51.) In June 2002, TDI returned the entire order to Lantronix. (Complaint ¶ 51.)

**1.5    ALLEGATIONS RELATED TO FILINGS AND AUDITS**

As a result of the transactions detailed above, Defendant caused Lantronix to file material misstatements in several quarterly and annual filings relating to Lantronix's revenues and pre-tax losses. (Complaint ¶¶ 53-54.) Defendant also made material misrepresentations to auditors relating to the 2001 audit. (Complaint ¶¶ 55-57.) Additionally, Defendant signed management representation letters written to Lantronix's auditors representing that the company's financial statements were in conformity with GAAP and that there were no material transactions that were not properly recorded in the accounting records. (Complaint ¶ 56.) On or about February 2002, Defendant also signed a letter to the auditors, which was false, discussing the revenue recognition method and stating that Lantronix did not have a history of significant returns or

1    stock rotations and that such returns or rotations were properly provided for according to

2    Lantronix's return policy. (Complaint ¶ 57.)

3

4    **2.    LEGAL STANDARD**

5

6        Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a

7    plaintiff's allegations fail to state a claim upon which relief can be granted. The Court must

8    construe the complaint liberally, and dismissal should not be granted unless "it appears beyond

9    doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him

10   to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see Balistreri v. Pacific Police Dep't,

11   901 F.2d 696, 699 (9th Cir. 1990) (stating that a complaint should be dismissed only when it

12   lacks a "cognizable legal theory" or sufficient facts to support such a theory). The Court must

13   accept as true all factual allegations in the complaint and must draw all reasonable inferences

14   from those allegations, construing the complaint in the light most favorable to the plaintiff.

15   Westland Water Dist. v. Firebaugh Canal, 10 F.3d 667, 670 (9th Cir. 1993); Balistreri, 901 F.2d

16   at 699. Dismissal without leave to amend is appropriate only when the Court is satisfied that the

17   deficiencies of the complaint could not possibly be cured by amendment. Jackson v. Carey, 353

18   F.3d 750, 758 (9th Cir. 2003) (citing Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir. 1996)); Lopez

19   v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000); Polich v. Burlington Northern, Inc., 942 F.2d

20   1467, 1472 (9th Cir. 1991).

21       Claims of securities violations must meet the particularity requirements of Federal Rules

22   of Civil Procedure Rule 9(b). Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1439 (9th Cir.

23   1987); Suna v. Biley Corp., 107 F.3d 64, 68 (1st Cir. 1997.) Rule 9(b) states that "[i]n all

24   averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated

25   with particularity. Malice, intent, knowledge, and other condition of mind of a person may be

26   averred generally." The Ninth Circuit has explained that, in securities fraud actions, the plaintiff

27   "must aver with particularity the circumstances constituting the fraud." Decker v. GlenFed, Inc.

28   (In re GlenFed, Inc. Sec. Litig.), 42 F.3d 1541, 1547 (9th Cir. 1994) (en banc). But a pleading is

1  sufficient if it identifies the circumstances of the alleged fraud so that the defendant can prepare

2  an adequate answer. Fecht v. Price Co., 70 F.3d 1078, 1082 (1995). "[T]he 'more rigorous'

3  pleading requirements under the [Private Securities Litigation Reform Act], which go beyond the

4  Rule 9(b) requirements only apply to private securities fraud actions; they do not apply to a case,

5  such as this, brought by the SEC." United States SEC v. ICN Pharms., Inc., 84 F. Supp. 2d

6  1097, 1099 (C.D. Cal. 2000).

7       The notice requirement means that the pleading should contain allegations of the "time,

8  place and nature of the alleged fraudulent activities." Wool, 818 F.2d at 1439 (quoting Walling

9  v. Beverly Enterprises, 476 F.2d 393, 397 (9th Cir. 1973)). In addition, "[t]he plaintiff must set

10  forth what is false or misleading about a statement, and why it is false. In other words, the

11  plaintiff must set forth an explanation as to why the statement or omission complained of was

12  false or misleading." In re GlenFed, 42 F.3d at 1548. Further, the statement or omission must

13  be alleged to have been false or misleading when made. Id. at 1548-49. However, under the

14  final sentence of Rule 9(b), the complaint need only state that the required scienter existed. Id.

15  at 1547.

16

17  **3.    DISCUSSION**

18

19      **3.1    STATUTE OF LIMITATIONS FOR CIVIL PENALTIES**

20

21      Defendant argues that the statutory limitations period for civil penalties relating to a claim

22  for a securities violation is five years. 28 U.S.C. § 2462. Defendant claims that the SEC filed

23  the complaint on September 27, 2006, and thus the SEC may only seek civil penalties for alleged

24  violations occurring after September 27, 2001. (Motion at 6:8-10.) The SEC argues that this

25  contention is wrong because the SEC "has alleged that the Defendant engaged in a continuing

26  fraudulent scheme to inflate Lantronix's revenues to meet analyst's expectations." (Opposition at

27  24:5-9.) The Court agrees with the SEC.

28      The SEC appears to concede that section 2462 does apply to its civil penalties remedy

1   sought for violations of the Securities Act of 1933 ("Securities Act") and the Securities

2   Exchange Act of 1934 ("Exchange Act"). Indeed, by its very definition, section 2462 governs

3   actions that are punitive, rather than remedial, in nature. Thus, the civil penalties claims are

4   subject to section 2462's five-year limitations period. See 3 M Co. v. Browner, 305 U.S. App.

5   D.C. 100, 17 F.3d 1453 (D.C.Cir. 1994) (extending § 2462's application to administrative

6   proceedings, in addition to judicial proceedings).

7       However, the SEC asserts that the presence of a continuing fraudulent scheme removes

8   the statutory bar from the assessment of civil penalties.  At oral argument, the SEC cited the

9   language of Section 17(a) of the Securities Act and Rule 10b-5 at 17 C.F.R. section 240.10b-5 to

10  assert that the actionable activity may consist of a scheme to defraud, and that a claim for the

11  fraudulent scheme would not accrue until the scheme had been terminated.  The SEC argued that

12  because it has alleged that Defendant engaged in a scheme of channel-stuffing to boost

13  Lantronix's revenue figures, (Complaint ¶¶ 3-4), its claims are not time-barred although the

14  claims stem from over five years before the filing of the complaint.

15      The Court finds the SEC's statutory construction is persuasive at this stage.  The statutes

16  at issue in this case permit a finding of fraud due to a fraudulent scheme, and the SEC has

17  alleged such a scheme.  Further, the Court notes that it is not unreasonable for practitioners and

18  their clients to expect the statute to begin running at the termination of a scheme like the one

19  alleged. At this pleading stage, the Court must accept all of Plaintiff's facts as true and must

20  view all inferences raised in the light most favorable to the Plaintiff.  Thus, the Court finds that

21  at this stage, the SEC has alleged sufficient facts to justify the potential grant of civil remedies.

22  Defendant's Motion to bar the SEC's claim for civil penalties is DENIED.

23

24      **3.2    CLAIMS OF VIOLATIONS OF ANTI-FRAUD STATUTES**

25

26      The SEC claims that Defendant has violated the antifraud provisions of Section 17(a) of

27  the Securities Act, 15 U.S.C. section 77q(a), and Section 10(b) of the Exchange Act, 15 U.S.C.

28  section 78(j)(b) and Rule 10b-5 under that section. Also, the SEC claims that Defendant has

1   violated or aided in the violation of several record-keeping and reporting provisions of the

2   Exchange Act. (Complaint ¶¶ 73-91.)

3          The antifraud provisions of Section 17(a) of the Securities Act and Section 10(b) of the

4   Exchange Act broadly prohibit fraudulent conduct in the sale or offer of any security. These

5   antifraud provisions prohibit making a material misstatement or omission in connection with the

6   offer, purchase, or sale of a security. SEC v. Glt Dain Rauscher, Inc., 254 F.3d 852 (9th Cir.

7   2001). A fact is material if there is a substantial likelihood that a reasonable investor would

8   consider it important in making an investment decision. Basic, Inc. v. Levinson, 485 U.S. 224,

9   231-232 (1988). Exchange Act Rule 12b-20 also prohibits omissions of material fact in SEC

10  filings including Form 10-K's and 10-Q's. Rule 13b2-2(a) prohibits company officers from

11  making or causing to be made any "materially false or misleading statement" or omission of

12  material fact to an accountant relating to, among other things an audit or the preparation or filing

13  of any document or report.

14

15          3.2.1   Claims Related to the Allegations of the Quarter Ending

16                  December 31, 2000

17

18          Defendant argues that the SEC has failed to state a claim for its anti-fraud violations

19  relating to the allegations of the quarter ending December 30, 2001 because the SEC appears to

20  base its claims on the fact that Cotton did not receive a purchase order from Transtec before

21  recognizing the revenue. (Motion at 7:4-6.) Defendant states that an oral purchase was made

22  before the end of the quarter, and recognition at the time of the oral purchase was not improper

23  even though the written confirmation did not arrive until after the quarter had ended. (Motion at

24  7:4-14.) Further, Defendant states that the SEC has failed to plead fraud with particularity

25  because the SEC has not adequately pleaded its theory regarding this action. (Motion at 7:6-14.)

26  The Court disagrees.

27          Defendant has cited no authority to support its argument that recognition of oral purchase

28  orders is proper. In contrast, the SEC has presented persuasive authority indicating that such

1   recognition is not permitted under GAAP. While the Court makes no finding on this matter, the

2   Court notes that resolution of this dispute is not appropriate at this pleading stage. <u>Burlington</u>

3   <u>Coat Factory Securities Litigation</u>, 114 F.3d 1410, 1421 (3d Cir. 1997) (whether a defendant's

4   accounting practices were consistent with GAAP is a question of fact). Because the Court is

5   required to accept plaintiff's allegations as true, the Court may not make such a contrary factual

6   determination at this pleading stage and will not grant the motion to dismiss on this ground.

7        Further, the SEC has pleaded the alleged fraud with the requisite level of particularity.

8   The SEC alleges the circumstances constituting the fraud, Defendant's actions relating to the

9   fraud, the Defendant's intent in perpetrating the fraud, the amount of the fraudulent

10  overstatement of revenue and the understatement of tax losses, the materiality of the fraudulent

11  statements made, and the explanation for why the revenue recognition was fraudulent.

12  (Complaint ¶¶ 15-22.)   This is sufficient to state a claim for fraud. <u>In re Daou Systems, Inc.</u>,

13  411 F.3d 1006, 1016 (9th Cir. 2005). Thus, the Court is unpersuaded that the fraud claims

14  relating to Defendant's participation in the fraudulent revenue recognition of the Lantronix

15  quarter ended December 31, 2000 should be dismissed. Defendant's Motion to dismiss the

16  claims related to these allegations is DENIED.

17

18        3.2.2  Claims Related to the Allegations of the Quarter Ending March 31, 2001

19

20        Next, Defendant argues that the SEC's allegation that Defendant granted an undisclosed

21  stock rotation right is not actionable because the SEC has not adequately alleged that the stock

22  rotation granted was a right of return under FAS 48. (Motion at 7:22-24.)   Further, Defendant

23  argues that the SEC has failed to allege that the products were actually rotated, and this failure is

24  fatal. (Motion at 9:1-7.) The Court disagrees with Defendant.

25        While Defendant argues that the SEC has not sufficiently pleaded a violation of the

26  relevant accounting principles, the SEC has given adequate  notice of the claims made and

27  provided all the necessary details. The SEC alleges that Defendant caused the improper

28  recognition of $1,795,584 in revenue for the quarter ending March 31, 2001. (Complaint ¶¶ 23-

1  31.) These allegations specify the amount of the overstatement of revenues and the

2  understatement of pre-tax losses. (Complaint ¶¶ 31, 53.) The SEC has pleaded that the

3  recognition of revenue for the quarter ending March 31, 2001 was not only contrary to

4  accounting principles, but also it was contrary to Lantronix's own disclosures of its stock

5  rotation policy in its Form 10-Q for that quarter, in that the recognition was not merely "limited

6  return privileges." (Complaint ¶¶ 23, 25.) The SEC alleges that the misstatements made in the

7  Form 10-Q for the quarter ending March 31, 2001 were material, false, and knowingly made.

8  (Complaint ¶¶ 23, 30, 31.)

9       These allegations are sufficient to state a claim. While Defendant claims that the SEC

10  must allege that the stocks were actually rotated and that Lantronix was forced to take a loss

11  (Motion at 9:1-4), the SEC is not required to prove injury to establish violations of the relevant

12  antifraud provisions. SEC v. Rana Research, 8 F.3d 1358, 1363, n. 4 (9th Cir. 1993)

13  ("Defendants also claim, erroneously, that the SEC was required to prove injury."). While

14  Defendant makes much of the fact that "[n]owhere does the [SEC] allege any goods were

15  rotated, let alone returned without being paid for," (Reply Brief in Support of Motion to Dismiss

16  Complaint Under Rules 9(b) and 12(b)(6) ("Reply") at 5:1-2), the SEC is not required to allege

17  such a loss when the misstatement is not dependant on it. Thus, this argument does not

18  sufficiently attack the SEC's pleading.

19       Further, Defendant's substantive argument that the transaction alleged to occur during the

20  quarter ending March 31, 2001 complied with the relevant GAAP provisions, including

21  specifically FAS 48, is not appropriate at this time. Not only does Defendant fail to identify any

22  authority to that effect, Defendant again asks the Court to examine the merits of the complaint.

23  Whether Lantronix's accounting practices and Defendant's actions were consistent with GAAP

24  is a question of fact, best resolved by expert testimony. Fine v. Am. Solar King Corp., 919 F.2d

25  290, 298 (5th Cir. 1990); In re Burlington Coat Factory Secs. Litig., 114 F.3d at 1421. Because

26  the Court is required to credit the SEC's allegations as true, the Court may not make such a

27  factual determination at this pleading stage. Moreover, this determination is not necessary to

28  hold that the SEC has pleaded its complaint with the requisite level of particularity, as the GAAP

1  violations only provide one allegation of fraud. The SEC has certainly alleged with particularity

2  that Defendant made actionable material misrepresentations and omissions of material facts.

3       The Court will not address Defendant's argument relating to paragraph 28 of the

4  complaint as it was first raised in Defendant's reply. Thus, Defendant's motion to dismiss

5  claims related to the quarter ending March 31, 2001 is DENIED.

6

7       3.2.3   Claims Related to the Allegations of the Quarter Ending June 30, 2001

8

9       Defendant argues that the SEC's claims related to two transactions in the quarter ending

10  June 30, 2001 fail to adequately state a claim. First, Defendant asserts that the allegations

11  relating to Lantronix's $2.3 million sale of product with full stock rotation rights do not state that

12  Defendant violated securities law by granting return rights and recognizing revenue on the order,

13  (Reply at 6:9-12,) and also that the SEC does not allege that the product shipped to Transtec was

14  rotated. (Motion at 9:8-14.) Second, Defendant asserts that the SEC does not adequately plead

15  the revenue recognition fraud related to the $421,900 transaction with Lightwave GmbH because

16  the SEC does not allege that the return shipment was improperly accounted for within the return

17  reserves. (Motion at 9:15-22.) The Court disagrees with both points.

18       First, the SEC has sufficiently pleaded claims relating to the alleged $2.3 million sale

19  because the SEC provides detail relating to Defendant's improper grant of return rights and

20  accommodation of Transtec's inventory concerns. (Complaint ¶ 35.) As the Court concluded in

21  the previous section, the SEC is not required to allege greater injury under the applicable anti-

22  fraud provisions to maintain its claim against Defendant. Although Defendant may wish to

23  challenge the merits of these claims at this pleading stage, the SEC merely is required to plead

24  what is necessary to state a claim. Thus, the Court finds that the claims linked to the first set of

25  allegations should not be dismissed on this ground.

26       Second, Defendant's argument related to the $421,900 transaction with Lightwave GmbH

27  may be true, but it misses the point. (Motion at 9:15-22.) The SEC has alleged that the

28  recognition of this revenue was improper because Lantronix did not have a well-established

1  history of similar transactions with Lightwave GmbH. (Complaint ¶ 36.) The SEC

2  demonstrates that without this prior history, Lantronix could not properly reserve for this

3  transaction according to the dictates of GAAP and FAS 48. (Complaint ¶ 37.) Not only does the

4  SEC indicate which GAAP provisions were violated (Complaint ¶ 37), but also the SEC alleges

5  that the revenue recognition was contrary to Lantronix's own disclosures made in its Form 10-K

6  for the year ending June 30, 2001 and the Form 10-Q for the quarter ending March 31, 2001.

7  (Complaint ¶¶ 37, 38.) Thus, Defendant's argument merely provides a red herring as the SEC

8  has stated a claim that does not require the SEC to demonstrate that Lantronix did not have an

9  adequate return reserve to account for the sale .

10      Defendant has not demonstrated that the SEC's claims based on the allegations related to

11  the quarter ending June 31, 2001 fail to state a claim or lack the requisite specificity.

12  Defendant's motion to dismiss the claims related to these allegations is DENIED.

13

14            3.2.4  Claims Related To The Sale Of Product To KMJ

15

16      Defendant argues that the SEC's claims relating to the product shipped to KMJ, one of

17  Lantronix's distributors, on or about June 30, 2001 fail to state a claim with particularity because

18  the SEC does not allege that the return of the product was improperly accounted for in

19  Lantronix's return reserves. (Motion at 10:8-9.) Defendant argues that the SEC's allegation,

20  which states that the transaction specifically violated FAS 48 paragraph 6, is insufficient because

21  the SEC is also required to demonstrate the revenue was actually overstated. (Reply at 7:8-19.)

22  In its opposition and complaint, the SEC cites authority for the proposition that revenue

23  recognition is improper when a payment for the relevant product is contingent on the product's

24  resale. (Opposition at 16:19-21; Complaint ¶ 41.) Defendant does not cite anything to the

25  contrary, but seems to dispute the SEC's interpretation of the cited accounting principle. While

26  Defendant may ultimately prevail on this issue at summary judgment with more argument and

27  relevant evidence, at this pleading stage the Court declines to adopt Defendant's interpretation of

28  the relevant accounting principles. For this reason, the motion to dismiss these allegations for is

1    DENIED.

2

3            3.2.5   Claims Related To The Form 10-K of 2001

4

5            Defendant argues that because the SEC failed to state a claim with particularity for

6    violation of the various anti-fraud provisions relating to each individual quarter of 2001, the SEC

7    has failed to state a claim based on the Form 10-K for the fiscal year. (Motion at 10:10-16.)

8    However, as the Court has described in the previous section, the SEC has stated a claim for

9    fraudulent activity in the last three quarters of 2001. Moreover, the SEC alleges that the Form

10   10-K contained material misstatements and omissions, which were reviewed and signed by the

11   Defendant, and these misstatements related to the overstatement of revenue and the

12   understatement of pre-tax losses for the entire fiscal year (¶¶ 53-54.) Thus, the SEC has stated a

13   claim based on the revenue recognition and reporting of revenue for the fiscal year, as well as for

14   the last three quarters of 2001. For this reason, the motion to dismiss the allegations relating to

15   the Form 10-K for 2001 is DENIED.

16

17           3.2.6   Claims Related To The 2001 Arrow Electronics Transaction

18

19           Defendant's reply argues that the SEC has improperly pleaded its claims related to a

20   transaction between Lantronix and Arrow Electronics, a component distributor of Lantronix.

21   The Court declines to address new argument raised in Defendant's reply. For this reason, the

22   Motion to dismiss the claims related to these allegations is DENIED.

23

24           3.2.7   Claims Related to The Transaction with TDI

25

26           Defendant argues that the Defendant did not conduct a fraudulent transaction related to

27   the return of Transtec's product and a loan made to TDI to pay for the product when it was

28   unable to pay. (Motion at 10:24-11:2.) Instead, Defendant claims that the transaction was

1   proper, and Defendant is being sued for choices that Lantronix made after his termination that

2   may have the appearance of impropriety. (Motion at 11:1-2.) While this may constitute an

3   appropriate defense at summary judgment, at this pleading stage, the Court must credit the

4   allegations of the SEC, which allege fraudulent activity. For this reason, Defendant's Motion to

5   dismiss the claims relating to the allegations relating to the deal negotiated for Transtec's

6   product in December 2001 are DENIED.

7

8                    3.2.8   Claims Related To Statements Made To Auditors In Support Of Lantronix's

9                            2001 Audit

10

11          Defendant argues that the SEC misstates the facts in its claims relating to the alleged

12  fraudulent statements made to auditors. Specifically, Defendant argues that the allegedly

13  fraudulent letters to the auditors were written by auditors and were signed by three other people.

14  (Motion at 11:4-14.) In making this argument, Defendant again attacks the merits of the SEC's

15  allegations. Defendant will have opportunity to address the claims raised by the SEC, and to

16  present admissible evidence to rebut the SEC's allegations. However, at this pleading stage, the

17  Court is required to accept as true all allegations raised by the SEC. For this reason, the motion

18  to dismiss claims related to Defendant's statements made to the auditors relating to the 2001

19  audit is DENIED.

20

21      **3.3   DISGORGEMENT**

22

23          Defendant argues that the SEC cannot support its claim for disgorgement of "ill gotten

24  gains" because the SEC has not pleaded with specificity that any of the alleged gains that

25  Defendant received were linked to violations of the securities laws. (Motion at 11:24-13:24.)

26  Defendant claims that the SEC's allegations do not specifically tie the alleged gains to the

27  securities violations as opposed to legitimate services rendered. (Id.) In response, the SEC

28  argues that "[w]hat these arguments fail to perceive is that determining the scope of the equitable

1     remedy of disgorgement entails an analysis separate from assessing whether the SEC has stated a

2     cause of action in an SEC enforcement case." <u>SEC v. PennCentral Co.</u>, 450 F. Supp. 908, 916

3     (E.D. Pa. 1978). The SEC argues that because a separate analysis must be done to fashion a

4     remedy, it is inappropriate for the Defendant to challenge the SEC's requested disgorgement

5     relief at the pleading stage. The Court agrees with the SEC.

6        "The district court has broad equity powers to order the disgorgement of 'ill-gotten gains'

7     obtained through the violation of the securities laws." <u>SEC v. First Pac. Bancorp</u>, 142 F.3d

8     1186, 1190 (9th Cir. 1988). In the present case, where the Court has found that the SEC's

9     complaint presents sufficiently detailed allegations of fraudulent conduct against Defendant, it

10    would appear that the remedy is available, and it may be appropriate if the SEC prevails. The

11    cases cited to by Defendant for the proposition that the SEC is required to plead and prove that it

12    is appropriate to order the disgorgement of compensation are not properly applied in the instant

13    motion because Defendant's cited case law involve dispositions at summary judgment, pre-trial

14    conferences, or post-trial motions. None of Defendant's authority supports the argument that the

15    SEC's disgorgement claim should be dismissed at the pleading stage, when all that is necessary

16    is that the Court find that disgorgement would be appropriate if the SEC prevails in its

17    case-in-chief. For this reason, Defendant's motion to dismiss the SEC's claim for disgorgement

18    is DENIED.

19

20    **DISPOSITION**

21

22        For the reasons stated above, Defendant's Motion is DENIED.

23

24    IT IS SO ORDERED.

25    DATED: December 20, 2006

26

27

28                                Andrew J. Guilford
                                  United States District Judge