MELINDA HAAG (STATE BAR NO. 132612)
   mhaag@orrick.com
JAMES A. MEYERS (ADMITTED *PRO HAC VICE*)
   jmeyers@orrick.com
JAMES N. KRAMER (STATE BAR NO. 154709)
   jkramer@orrick.com
M. TODD SCOTT (STATE BAR NO. 226885)
   tscott@orrick.com
LUCY E. BUFORD (STATE BAR NO. 244885)
   lbuford@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:   415-773-5700
Facsimile:   415-773-5759

Attorneys for Defendant
SUSAN SKAER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>MECURY INTERACTIVE, LLC (F/K/MERCURY INTERACTIVE, INC.), AMNON LANDAN, SHARLENE ABRAMS, DOUGLAS SMITH and SUSAN SKAER,<br><br>Defendants. | Case No. 5:07-cv-02822-JF<br><br>**DEFENDANT SUSAN SKAER'S REPLY IN SUPPORT OF MOTION TO DISMISS** |

OHS West:260367978.1

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................1
II. ARGUMENT..........................................................................................................3
    A. The SEC Has Articulated Erroneous Pleading Standards .........................3
    B. The Complaint Fails To Allege Securities Fraud Against Ms. Skaer......................5
        1. The Complaint Alleges No Facts To Show Ms. Skaer's Scienter ...............6
        2. The Complaint Alleges No Facts To Show That Ms. Skaer Made An Actionable Misstatement ........................................................8
    C. The SEC's Non-Fraud Claims Against Ms. Skaer Should Be Dismissed............10
    D. The SEC Should Not Be Granted Leave To Amend ...........................................13

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Bell Atlantic Corp. v. Twombly*,
  127 S. Ct. 1955 (2007) .................................................................................................... 3

*In re Ditech Networks Deriv. Litig.*, No. C 06-5157 JF,
  2007 WL. 2070300 (N.D. Cal. July 16, 2007) ............................................................... 7

*In re Enron Corp. Sec. Deriv. & "ERISA" Litig.*,
  No. MDL-1446, CIV.A H-01-3624, 2005 WL. 3704688 (S.D. Tex. Dec. 5, 2005) ........ 8

*In re Ess Tech., Inc. Sec. Litig.*, No. C-02-04497,
  RMW 2004 WL 3030058, at *12 (N.D. Cal. Dec. 1, 2004) ...................................... 9, 10

*In re GlenFed Inc. Sec. Litig.*,
  42 F.3d 1541 (9th Cir. 1994) ................................................................................... 3, 4, 9

*In re JDN Realty Sec. Litig.*,
  182 F. Supp. 2d 1230 (N.D. Ga. 2002) ............................................................................ 7

*In re Stac Elecs. Sec. Litig.*,
  89 F.3d 1399 (9th Cir. 1996) ............................................................................................ 4

*In re U.S. Aggregates, Inc. Sec. Litig.*,
  235 F. Supp. 2d 1063 (N.D. Cal. 2002) ......................................................................... 12

*In re Van Wagoner Funds, Inc. Sec. Litig.*,
  382 F. Supp. 2d 1173 (N.D. Cal. 2004) ......................................................................... 12

*K & S P'ship v. Continental Bank*,
  952 F.2d 971 (8th Cir. 1991) .......................................................................................... 12

*Renovitch v. Kaufman*,
  905 F.2d 1040 (7th Cir. 1990) ........................................................................................ 12

*SEC v. Cedric Kushner Promotions, Inc.*,
  417 F. Supp. 2d 326 (S.D.N.Y. 2006) ........................................................................... 10

*SEC v. Collins & Aikman Corp.*,
  No. 07 CIV. 2419 (SAS), 2007 WL. 4480025 (S.D.N.Y. Dec. 21, 2007) .................. 5, 8

*SEC v. Lucent Techs.*, No. CIV. 04-2315 (WHW),
  2005 WL. 1206841 (D. N.J. May 20, 2005) ................................................................. 12

*SEC v. Morris*, No. CIV. A. H-04-3096,
  2005 WL. 2000665 (S.D. Tex. Aug. 18, 2005) ............................................................. 10

*SEC v. Tambone*,
  417 F. Supp. 2d 127 (D. Mass. 2006) ........................................................................ 4, 10

# TABLE OF AUTHORITIES
### (continued)

**Page**

*SEC v. Todd*,
   No. 03 CV 2230 BEN, 2007 WL. 1574756 (S.D. Cal. May 30, 2007) ............................. 11

*SEC v. Yuen*,
   221 F.R.D. 631 (C.D. Cal. 2004) ........................................................................... 4, 5, 11

*SEC v. Yuen*,
   No. 03 CV 03-4376 MRP, 2006 WL. 1390828 (C.D. Cal. March 16, 2006) ................ 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   (S. Ct. No. 06-484 Feb. 2007) ........................................................................................ 6

*Semegen v. Weidner*,
   780 F. 2d 727, 731 (9th Cir. 1985) ................................................................................ 3

*U.S. v. Hempfling*,
   431 F. Supp. 2d 1069 (E.D. Cal. 2006) ......................................................................... 9

*Weiss v. Amkor Tech., Inc.*, No. CV 07-0278-PHX,
   2007 WL. 2808224 (D. Ariz. Sept. 25, 2007) ............................................................... 6

**STATUTES**

Federal Rule of Civil Procedure § 8 ....................................................................................... 3

Federal Rule of Civil Procedure § 9(b) ................................................................. 1, 3, 4, 5, 7, 8, 9

Federal Rule of Civil Procedure § 13 ............................................................................... 11, 13

Federal Rule of Civil Procedure § 13(b)(5) ......................................................................... 11

Federal Rule of Civil Procedure § 16 ................................................................................... 13

## I. INTRODUCTION

Unable to allege a single *fact* that, if proven, would show that Susan Skaer acted with scienter, made an actionable misstatement, or knowingly aided and abetted a securities law violation, the SEC in its Opposition (or "Opp.") seeks instead to rewrite applicable pleading standards. It attempts, for example, to write Fed. R. Civ. P. 9(b) out of existence by saying that Rule 9(b) should be read "in harmony with" Rule 8's so-called notice pleading standard (Opp. at 2), failing to mention that, in one of the cases it cites, the Ninth Circuit long ago rejected that very argument. It says that it can discharge its obligation to plead scienter by simply alleging "scienter existed" (*id.* at 3), thus ignoring the numerous recent cases cited in Ms. Skaer's Motion to Dismiss (or "MTD") that have dismissed SEC complaints for failure to plead scienter with the requisite factual allegations and/or the requisite particularity. It asserts that its non-fraud claims are not "'averments of fraud' within the meaning of Rule 9(b)" (*id.* at 15), again ignoring settled case law, including from this District, to the contrary. And, it urges that its aiding and abetting claims are not subject to a scienter requirement, yet again ignoring settled case law holding that the more demanding threshold of *actual knowledge* is required to state such claims.

It is not surprising that the SEC has sought to minimize its pleading burden, because even after collecting about 3 million documents totaling approximately ***10 million pages***, it has not alleged *facts* that establish Ms. Skaer violated any provision of the securities laws.[1] In the end, the Opposition simply rehashes the Complaint's allegations, totally ignoring the Motion to Dismiss' demonstration that the same allegations actually establish Ms. Skaer (i) had no role in or responsibility for accounting for options grants at Mercury Interactive Corporation ("Mercury" or "Company"); (ii) made no decisions as to options grant dates (the SEC itself directly alleges that others, not including Ms. Skaer, made those decisions); and (iii) had only a ministerial role in the two (out of 45) challenged grants where she is alleged to have had any involvement. As shown in the Motion to Dismiss, these allegations fail to state any securities law claim.

---

[1] Ms. Skaer's Motion to Dismiss observed that the SEC had collected 3 million pages of documents. As the SEC's production of its Rule 26 initial disclosure has proceeded, however, it has become clear that the SEC collected 3 million ***documents*** totaling 10 million pages.

Notably, the SEC cannot allege one single fact to support its conclusory allegation that Ms. Skaer had "knowledge of options accounting" (Compl. ¶ 42), an allegation necessary to support the scienter element of its fraud claims. Nor can its Opposition cure this fatal defect. Indeed, in the Opposition, the SEC buries its head in the sand, utterly ignoring Ms. Skaer's thorough demonstration that the Complaint fails to allege any facts to support the required showings that (i) the grant dates that others chose were the wrong "measurement dates" under the difficult-to-apply provisions of APB 25; (ii) the selection of wrong measurement dates necessitated a compensation charge; (iii) Mercury did not take a required compensation charge; and (iv) Mercury's financial statements were materially misstated as a result. *See* MTD at 11-16. The SEC also fails to address the other circumstances discussed in Ms. Skaer's Motion to Dismiss – most pointedly the recent pronouncements of an SEC Commissioner and the SEC's Office of the Chief Accountant regarding the difficulty of applying APB 25 to circumstances identical or very similar to those that Mercury allegedly used – that preclude any inference of recklessness, much less actual knowledge of wrongdoing. *See id.* at 16-18. These circumstances, in addition to others discussed below and in the Motion to Dismiss, doom not only the fraud claims against Ms. Skaer, but the aiding and abetting and other non-fraud claims as well.

The SEC's silence as to the points made in the Motion to Dismiss – even after receiving 10 million pages of documents, interviewing about a dozen current or former Company representatives, considering the results of the Company's internal investigation, and conducting its own 18-month investigation – speaks volumes about the insufficiency of its claims against Ms. Skaer. It is telling that after its exhaustive investigation, the SEC still cannot allege particularized facts that Ms. Skaer knowingly or recklessly participated in a fraudulent scheme to backdate options, but instead can allege at most that Ms. Skaer had only a ministerial role in two grants. Given that this is the best the SEC can do despite the massive investigative record it compiled, and given the continuing prejudice Ms. Skaer suffers due to the mere pendency of the SEC's insufficient claims, the Complaint against her should be dismissed ***with prejudice***.

## II. ARGUMENT

### A. The SEC Has Articulated Erroneous Pleading Standards

The SEC concedes that to survive the Motion to Dismiss, its Complaint must satisfy the heightened pleading standard of Rule 9(b) by alleging "with particularity the circumstances constituting the [purported] fraud," including "allegations of the time, place, and nature of the alleged fraudulent activities." Opp. at 2. Nevertheless, according to the SEC, "Rule 9(b) should be read in harmony with Rule 8" to require little if anything more than a "short and plain statement." *Id.* Thus, the SEC maintains that Rule 9(b) doesn't require the Complaint to allege "detailed evidence concerning each and every fraudulent act committed"; indeed, says the SEC, the Complaint need not "describe in detail [even] a single specific transaction." *Id.*

The Ninth Circuit has explicitly rejected the pleading standard the SEC advances here. In *In re GlenFed Inc. Sec. Litig.*, 42 F.3d 1541, 1547-49 (9th Cir. 1994), the Court of Appeals rejected the notion that Rule 9(b) must be read in "harmony" with Rule 8, instead holding that it is improper to "collapse" the requirements of Rule 9(b) into Rule 8(a), and making clear that Rule 9(b) "requires particularized allegations of the circumstances ***constituting*** fraud," i.e., not only the who, what, when, where, and how of the alleged misconduct, but "what is false or misleading about a statement, and why it is false" and, most importantly in securities cases, "an explanation as to why the disputed statement was untrue or misleading ***when made***." (Emphasis by the Court).[2] Thus, as the Ninth Circuit concluded in *GlenFed*, it is not enough for the SEC to simply "set forth conclusory allegations of fraud ... punctuated by a hand-full of neutral facts." *Id.* (citing *Semegen v. Weidner*, 780 F. 2d 727, 731 (9th Cir. 1985)). In a more recent case dismissing a SEC complaint, the court stated that it, "in essence, concur[red]" that it was "preposterous" for the SEC to assert "that Rule 9(b) must be read alongside Fed. R. Civ. P. 8" so as not to require it "to set out in detail each and every fact upon which it bases its claims or to plead evidentiary

---

[2] Though Ms. Skaer cited it in her Motion to Dismiss, the SEC also ignores *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1973 n.14 (2007), in which the Supreme Court explained that Rule 9(b) requires a plaintiff to state its factual allegations with more specificity than required by Rule 8. The Court also held that, even under Rule 8, a plaintiff must plead *facts*, not the conclusory assertions that form the basis of the SEC's claims against Ms. Skaer. *See id.* at 1966; MTD at 9.

matters." *SEC v. Tambone*, 417 F. Supp. 2d 127, 131 (D. Mass. 2006) (also stating that "this Court rejects the SEC's argument in favor of relaxing the strictures of Rule 9(b)").

Curiously, the SEC cites *SEC v. Yuen*, 221 F.R.D. 631, 634 (C.D. Cal. 2004), for the proposition that a complaint alleging fraud is sufficient if it provides enough detail about the purported fraud so that the defendant can prepare an adequate answer. Opp. at 2. But, in *Yuen*, the court dismissed because the SEC had omitted to plead particularized facts as to each defendant's actions and instead sought "to get around the stringent pleading requirements of 9(b)" by impermissibly relying on the "group published information doctrine." 221 F.R.D. at 636. The court held the SEC's failure to plead specifics as to each individual defendant "unreasonable" and insufficient to survive a motion to dismiss, particularly "given the SEC's substantial pre-filing investigatory powers." *Id.* at 637 ("[T]he SEC bases its application of the group pleading presumption solely upon conclusory allegations of job title, purported general involvement with the day-to-day activities, and alleged participation in disclosure of public statements. This Court finds such reliance upon the group published information doctrine to be unreasonable."). Similarly here, the SEC fails to allege specific facts as to Ms. Skaer's purportedly fraudulent actions and knowledge, thus requiring dismissal of the Complaint as to her, despite its lengthy investigation of this matter.

The SEC also seeks to minimize its obligation to plead specific facts as to scienter, saying it need allege only that scienter "existed." Opp. at 3. This is wrong, for two reasons. *First*, as the Motion to Dismiss set forth, Rule 9(b)'s heightened pleading requirements extend to the SEC's allegations of scienter. *See* MTD at 9-10 & n.8. Thus, even under the SEC's "scienter existed" formulation, the SEC must nonetheless "aver with particularity the circumstances constituting the fraud," setting forth "why the statement or omission complained of was false or misleading ... when made." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1404 (9th Cir. 1996) (citing *GlenFed*, 42 F.3d at 1548-49). The SEC cannot tenably maintain that Ms. Skaer made any false statement if she was unaware at the time of the facts that rendered her alleged statements false. More specifically, the SEC cannot maintain that any statement by Ms. Skaer, in public filings or elsewhere, was false when made unless it alleges particularized facts that she knew or was

reckless in not knowing the relevant details about options accounting, including the principles of APB 25 and the manner in which Mercury was accounting for options grants. *Second*, even apart from Rule 9(b), numerous recent cases cited in Ms. Skaer's Motion to Dismiss – all of which dismissed all or some SEC fraud claims for failure to allege specific facts to support an inference of scienter, and all of which the SEC totally ignores in its Opposition – make clear that the SEC cannot discharge its pleading burden by simply alleging that scienter existed. *See* MTD at 10 n.8. *See also SEC v. Collins & Aikman Corp.*, No. 07 CIV. 2419 (SAS), 2007 WL 4480025, at *6 (S.D.N.Y. Dec. 21, 2007) (even though the Private Securities Litigation Reform Act ("PSLRA") does not apply to SEC actions, the SEC nevertheless "must ... plead a 'strong inference' of scienter").[3]

## B. The Complaint Fails To Allege Securities Fraud Against Ms. Skaer

In her Motion to Dismiss, Ms. Skaer showed that even accepting the Complaint's allegations as true, the SEC had alleged that (i) Mercury's program for granting options had been in place for more than two years before Ms. Skaer joined the Company; (ii) under that program, others within the Company made the decisions as to measurement dates and numbers of shares; (iii) Ms. Skaer had no knowledge of options accounting generally, nor did she have any responsibility for or knowledge of how Mercury accounted for its options grants (or any particular grant); and (iv) of the 45 grants that the SEC challenges in this action, 33, or nearly 75%, were made before Ms. Skaer joined the Company. MTD at 4-8. The Complaint describes with any specifics only two grants in which Ms. Skaer had any involvement, and the allegations as to Ms. Skaer describe no more than ministerial participation, with no allegations that Ms. Skaer picked the grant or measurement dates or had any knowledge of how Mercury accounted for the grants. *Id.* In its Opposition, the SEC does not dispute *any* of these points, choosing instead simply to rehash its Complaint's allegations and to assert in conclusory fashion that they suffice

---

[3] The SEC's repeated observation that the PSLRA does not apply to it (Opp. at 3, 10) misses the point. As the several cases cited in the Motion to Dismiss at 10 n.8 (all of which the SEC has chosen to ignore), as well as *Collins & Aikman* and *Yuen*, 221 F.R.D. at 635, make clear, the SEC's obligation to allege sufficient factual detail as to mental state to support its scienter allegations exists separate and apart from the PSLRA and does not depend on applying the PSLRA to SEC actions.

to state a claim. But, as shown in the Motion to Dismiss (at 10-19), the allegations do not state a fraud claim against Ms. Skaer, particularly in light of the non-scienter inferences to be drawn from the Complaint.[4] As Ms. Skaer now shows, the assertions raised by the SEC in its Opposition similarly do not suffice to enable its allegations to survive her Motion to Dismiss.

### 1.  The Complaint Alleges No Facts To Show Ms. Skaer's Scienter

To meet its burden, the SEC must allege facts that, if proven, would show that Ms. Skaer (i) knew the accounting ramifications of using historic measurement dates; (ii) knew that Mercury was not correctly accounting for its options and that Mercury's financial statements and other public disclosures were materially misstated as a result; and (iii) herself made actionable misstatements. *See* MTD at 12-13. Recognizing this burden and acknowledging that the Court's scienter analysis will turn on whether defendants then knew arcane (and still unclear) accounting rules,[5] the SEC claims in its Opposition that the Complaint alleges facts which "demonstrate that each defendant was aware of the accounting consequence of granting an in-the-money option," citing generically to ¶¶ 38-45 of the Complaint. Opp. at 10.

But, as they concern Ms. Skaer, the scienter allegations in the paragraphs cited by the SEC consist only of (i) a conclusory reference that defendant Sharlene Abrams "shared her knowledge of options accounting with" Ms. Skaer and defendant Amnon Landan in March 1999 – 1-1/2 years before Ms. Skaer joined Mercury as General Counsel and approximately *three years* before the only two grants as to which the SEC specifically describes any involvement by Ms. Skaer

---

[4] As the SEC itself has urged: "When the facts alleged in the complaint give rise to a substantial possibility that the defendant acted without scienter, the necessary 'strong inference' of scienter will be lacking, because there will be an insufficient likelihood that the conclusion that the defendant acted with scienter follows from the facts alleged in the complaint as a whole." Brief for the United States as Amicus Curiae Supporting Petitioners at 25, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.* (S. Ct. No. 06-484 Feb. 2007) (attached as Ex. B to Ms. Skaer's Request for Judicial Notice ("RJN")). The SEC did not object to Ms. Skaer's request that the Court take judicial notice of this brief or to any other document included in Ms. Skaer's RJN.

[5] As explained in the Motion to Dismiss, at the time of the challenged grants, and extending up to the time of this lawsuit, not even the SEC had a firm grasp of how APB 25 should be applied to options grants with historical prices. MTD at 16-17. *See also Weiss v. Amkor Tech., Inc.*, No. CV 07-0278-PHX, 2007 WL 2808224, at *9 (D. Ariz. Sept. 25, 2007) ("the misapplication of accounting rules to a particular company's stock option grants cannot be construed as a glaring example of scienter because the measurement date criteria embodied in APB No. 25 are far from obvious" and require "accounting expertise and judgment").

(Compl. ¶ 42); and (ii) two alleged statements by Ms. Skaer to others, one in 2001 and the other in 2003, "that granting options to new employees at prices below the then-market value of Mercury stock would incur a compensation expense for Mercury" (*id.* ¶ 43). Ms. Skaer devoted a significant portion of her Motion to Dismiss to showing that these allegations, even if credited, do not suffice to show her scienter. *See* MTD at 12-16.[6] In response, the SEC is utterly mute, thus conceding these points.

The SEC mistakenly reads this Court's decision in *In re Ditech Networks Deriv. Litig.*, No. C 06-5157 JF, 2007 WL 2070300 (N.D. Cal. July 16, 2007), as somehow obviating its burden to plead factual details to support its scienter allegations. Opp. at 7. *Ditech* does no such thing. As the SEC accurately quotes, *Ditech* held – in the course of dismissing a complaint challenging alleged unlawful options backdating – that a plaintiff must plead "***sufficient factual detail*** as to the mechanics of an option backdating scheme, including the ***specific roles and mental states of the various participants***." 2007 WL 2070300, at *7 n.7 (emphasis added). Here, the SEC not only fails to allege sufficient factual detail as to Ms. Skaer's specific role and mental state in the alleged scheme, it disavows its obligation to do so.[7]

In short, the SEC has failed to allege any particularized facts that would show that Ms. Skaer knowingly participated in a scheme to misrepresent Mercury's financial statements, or even

---

[6] In brief, Ms. Skaer showed that (i) as to ¶ 42 of the Complaint, the one and only document on which the SEC bases its scienter claims against Ms. Skaer does not in the slightest show Ms. Skaer's purported "knowledge of options accounting," the document in fact *exonerates* Ms. Skaer and, in any event, the SEC has selectively quoted from and improperly paraphrased the document; (ii) as to ¶ 43, the SEC's extraordinarily vague allegations fail Rule 9(b)'s particularity requirement and, in any event, exonerate Ms. Skaer by reflecting her understanding that the Company was properly accounting for its options grants; and (iii) neither of those paragraphs nor the Complaint as a whole takes the additional required steps of alleging that Ms. Skaer knew the Company was improperly accounting for its option grants or acted to conceal that alleged fact.

[7] The SEC asserts that a court may infer knowledge of or severe recklessness as to incomplete disclosures where a defendant "'consciously directed and participate[s] in a scheme to conceal excessive executive compensation,'" thereby resulting in false public disclosures. Opp. at 9 (quoting *In re JDN Realty Sec. Litig.*, 182 F. Supp. 2d 1230, 1248 (N.D. Ga. 2002)). That assertion misses the mark, since the SEC has alleged no facts that, if proven, would establish that Ms. Skaer ***consciously participated*** in a scheme to conceal executive compensation. A compelling difference between this case and *JDN Realty* is that the defendant in question in that case "[c]learly" knew or was severely reckless in not knowing that the disclosures to investors were "incomplete and that he was making misrepresentations to JDN's shareholders." *Id.* Here, the SEC has nowhere alleged facts that would show that Ms. Skaer knew or was severely reckless in not knowing that Mercury was making materially false or incomplete disclosures to investors.

that she knew such a scheme existed. At most, even accepting all of the SEC's allegations, the Complaint alleges no more than that Ms. Skaer performed "purely administrative duties without knowledge of the purpose of the scheme"; under these circumstances, and as a matter of law, she cannot be held to have "employed a manipulative or deceptive device and so has not incurred liability under section 10(b)" of the Securities Exchange Act of 1934 ("Exchange Act"). *Collins & Aikman*, 2007 WL 4480025, at *5.[8]

### 2. The Complaint Alleges No Facts To Show That Ms. Skaer Made An Actionable Misstatement

In her Motion to Dismiss, Ms. Skaer showed that the Complaint fails to allege sufficient facts that, if proven, would establish that Ms. Skaer herself made an actionable misstatement. MTD at 18-19. In particular, as Ms. Skaer showed, the SEC failed to plead facts to attribute any particular alleged misstatement to Ms. Skaer. In its Opposition, the only specific alleged misstatements that the SEC mentions as regards Ms. Skaer are "Forms 4 filed with the Commission and a registration statement for Mercury which incorporates by reference annual reports which are alleged to be materially false." Opp. at 8.[9] Such "incorporation by reference" allegations are insufficient to allege an actionable misstatement. *See In re Enron Corp. Sec. Deriv. & "ERISA" Litig.*, No. MDL-1446, CIV.A H-01-3624, 2005 WL 3704688, at *10-12 (S.D. Tex. Dec. 5, 2005) (dismissing with prejudice securities fraud claim against law firm for alleged role in preparing offering memoranda incorporating allegedly false financial statements by reference).

---

[8] In its Opposition, the SEC summarizes in passing its allegations with respect to the so-called "European Exercises." Opp. at 6-7; *See* Compl. ¶¶ 131-144. But, the SEC never addresses or even acknowledges any of the points made in Ms. Skaer's Motion to Dismiss regarding the European Exercises, namely, (i) the Complaint fails to allege a single fact that would show that Ms. Skaer understood the applicable accounting or that Mercury was improperly accounting for those transactions; (ii) the Complaint fails to allege which financial statements, if any, were purportedly misstated as a result of the European Exercises or by how much, thus failing Rule 9(b); (iii) the SEC also fails Rule 9(b) by failing to specify whether it is charging Ms. Skaer with fraud, violations of the non-fraud provisions of the Exchange Act, or both with respect to the European Exercises; and (iv) in any event, the SEC has not alleged that any misstatement resulting from the European Exercises was material in any reporting period, thus dooming both fraud and non-fraud charges with respect to those Exercises. *See* MTD at 25 n.15.

[9] A Form 4 is a statement of beneficial changes in ownership that must be filed by or on behalf of officers, directors, or owners of more than 10% of a class of a company's equity securities.

More generally, the SEC asserts that Ms. Skaer "prepared, and signed, publicly filed documents that make misrepresentations with respect to executive stock option transactions," citing Compl. ¶¶ 1, 25, 31, 36, 79, 91, 92, 94, and 114. But the allegations in those paragraphs lack any specificity whatsoever, thus failing Rule 9(b)'s particularity requirement. *See, e.g.*, Compl. ¶ 31 (allegedly "prepared false documentation"), ¶ 79 (allegedly "prepared false form 4's), ¶ 107 (allegedly improperly recorded grant information during "the period from 1997 through 2002"), and ¶ 112 (allegedly "participated in the drafting of all Mercury's [false] proxy statements during this period"). Some of the paragraphs that the SEC cites do not even allege a misstatement by Ms. Skaer. *Id.* ¶¶ 1, 25.[10] In short, as shown in the Motion to Dismiss, because the Complaint relies on "group published information" and thus fails to attribute any specific misstatement to Ms. Skaer with respect to the purportedly fraudulent statements published over the course of five years,[11] the Complaint must be dismissed. *See* MTD at 19 (citing *GlenFed*, 42 F.3d at 1548; *In re Ess Tech., Inc. Sec. Litig.*, No. C-02-04497 RMW, 2004 WL 3030058, at *12 (N.D. Cal. Dec. 1, 2004) (requiring plaintiffs to allege with particularity that the defendant was directly involved in the preparation of allegedly misleading statements)).

---

[10] The *only* arguably specific allegations of Ms. Skaer's alleged involvement in any particular statement are found at Compl. ¶¶ 91-92, where the SEC alleges that Ms. Skaer signed a Form 4 regarding Mr. Landan's *exercise* of certain options. But, the SEC's theory of this case is that allegedly backdated options *grants* resulted in materially misstated financial statements. While the SEC describes alleged misconduct with respect to options *exercises*, it nowhere alleges that Mercury's financial statements were materially misstated as a result of this alleged misconduct, and the SEC's own allegations are inconsistent with any such claim. *See* Compl. ¶¶ 88-89, 97 (alleging only actual or potential tax benefits to Mr. Landan and Ms. Abrams, but nowhere alleging *any* effect on Mercury's financial statements). Thus, Ms. Skaer made no actionable misstatement in signing the Form 4 regarding this options exercise by Mr. Landan.

[11] On this point, the SEC again seeks to reduce its pleading burden by claiming that "'[w]here fraud alleged occur over a period of time, ... Rule 9(b)'s requirement that the circumstances of fraud to be stated with particularity are less stringently applied.'" Opp. at 2-3 (quoting *U.S. v. Hempfling*, 431 F. Supp. 2d 1069, 1075 (E.D. Cal. 2006)). But, this assertion begs the questions that the Complaint and the Opposition never answer: What is the duration of Ms. Skaer's alleged fraud? When did she purportedly join the scheme, and for how long did she actively participate? What were the first and last allegedly fraudulent statements she made? The only facts the SEC alleges that even remotely address these questions are that (i) the alleged scheme began in late 1996 or early 1997; (ii) Ms. Skaer did not join the Company until more than three years later; and (iii) the only two specific grants as to which the SEC alleges any involvement by Ms. Skaer were in January and March 2002, which, according to the SEC, were the last two alleged improper grants. *See* Compl. ¶¶ 14, 45 (chart), 60-78. Under these circumstances, there is no basis for granting the SEC's request to water down Rule 9(b)'s particularity requirement as to Ms. Skaer.

### C. The SEC's Non-Fraud Claims Against Ms. Skaer Should Be Dismissed

As shown in the Motion to Dismiss, the SEC's aiding and abetting claims fail to allege with particularity (or otherwise) facts that, if proven, would show that Ms. Skaer had *actual knowledge* of the alleged primary violations and her own role in furthering them or that she provided substantial assistance to others in the commission of the alleged primary violations. MTD at 20-22. In particular, the SEC fails to allege (indeed, it cannot allege) that Ms. Skaer either (i) understood the accounting ramifications of using historical options prices or (ii) was ever aware that Mercury was not properly accounting for its option grants. *See id.* at 20-21. Accordingly, the SEC's aiding and abetting claims against Ms. Skaer should be dismissed. *See, e.g., SEC v. Cedric Kushner Promotions, Inc.*, 417 F. Supp. 2d 326, 334-335 (S.D.N.Y. 2006) ("knowing conduct" – not mere recklessness – must be satisfactorily alleged for aiding and abetting); *SEC v. Morris*, No. CIV. A. H-04-3096, 2005 WL 2000665, at *9 (S.D. Tex. Aug. 18, 2005) (dismissing complaint against former CFO for purportedly aiding and abetting Halliburton's alleged books and records violations because the SEC had failed to "specify[ ] facts that would show Morris's knowledge of participation in improper activity").

Further, the Complaint offers no particularized facts to show Ms. Skaer ever provided substantial assistance in the commission of the alleged primary violations. *See* MTD at 21 (citing *Tambone*, 417 F. Supp. 2d at 136-37). The SEC is required to plead particularized facts showing that Ms. Skaer did more than simply compile filings – it must allege facts showing she had a "conscious intent" to assist the alleged primary violation by "throwing in [her] lot" with the alleged primary violators. *Id.* at 22 (citing same). Here, the SEC does not and cannot even allege that Ms. Skaer knew of the accounting irregularities, let alone that she was aware of some purported scheme to conceal them and had a "conscious intent" to further it. As such, the SEC's aiding and abetting claims against her must fail.

The SEC's only response to Ms. Skaer's Motion to Dismiss on this score is to assert that "scienter is not an element of claims made under Section 13 of the Exchange Act and the regulations thereunder." Opp. at 15. This observation is beside the point as to all of the SEC's aiding and abetting claims against Ms. Skaer, i.e., the Fifth, Seventh, Eighth, and Tenth Claims

for Relief, as well as those portions of the Second and Ninth Claims for Relief that allege aiding and abetting. Whether or not scienter is an element of a claim for a ***primary*** violation of § 13 or a regulation thereunder, ***actual knowledge*** is a requirement of ***all*** aiding and abetting claims, including aiding and abetting alleged non-fraud violations. *See* MTD at 20 (and cases cited therein).

The only two ***primary*** violations of § 13 or a rule thereunder that the SEC has alleged against Ms. Skaer are the Third Claim (alleging a violation of § 13(b)(5) of the Exchange Act) and the Fourth Claim (alleging a violation of Rule 13b2-2). As shown in Ms. Skaer's Motion to Dismiss, § 13(b)(5) expressly requires knowing conduct (stating that no person shall "knowingly" falsify any book, record, or account, etc.), and courts, including courts within this District, have consistently held that Rule 13b2-2 requires at least scienter (and some courts have required actual knowledge). *See* MTD at 23 (and cases cited therein). The SEC does not address any of these cases, instead relying chiefly on two appellate cases, neither of which involved § 13b-5 or Rule 13b2-2. *See* Opp. at 15.[12] Nor does the SEC address the fact that the ministerial conduct it alleges as to Ms. Skaer – merely providing allegedly false documents to auditors (Compl. ¶¶ 108, 111), without any allegation that she knew the documents were false – cannot state a Rule 13b2-2 claim for making false statements to auditors. *See* MTD at 23.

Rather than point to any facts that would establish Ms. Skaer's actual knowledge of the alleged primary violation and her role in furthering it, the SEC simply incants in conclusory fashion that Ms. Skaer and the other defendants "knew or had information that should have

---

[12] The SEC also includes a "*see also*" cite to *SEC v. Yuen*, No. 03 CV 03-4376 MRP, 2006 WL 1390828, at * 40-41 (C.D. Cal. March 16, 2006), which involved Rule 13b2-2 but not § 13(b)(5), for the proposition that the SEC need not show scienter to establish a violation of "the periodic reporting, record keeping, and internal control requirements" of the Exchange Act. But, neither *Yuen* itself nor the cases it cited held that the SEC is excused from alleging and proving scienter to establish the violation of so-called "lying to auditors" under Rule 13b2-2. Indeed, in holding the defendant liable under Rule 13b2-2, the court made express findings that the defendant failed to disclose to his company's auditors that the company, "with his knowledge and approval, had shifted revenues ... and structured transactions to be able to record ... revenue at its discretion to meet Gemstar's financial targets." *Id.* at *121-122. Thus, *Yuen* fully corroborates *SEC v. Todd*, No. 03 CV 2230 BEN, 2007 WL 1574756, at *15 (S.D. Cal. May 30, 2007), in which the court stated that it had "yet to find a case where a claim of Rule 13b2-2 violations was sustained without ***knowledge of the falsity*** of the statements at issue." (Emphasis added).

alerted them" that there was a "compensation expense arising from the stock option grant transactions" and that "[i]t is reasonable to infer from the failure to expense these substantial compensation charges ... that the company's internal accounting controls were not recording the compensation expense being accrued." Opp. at 16.[13] But, neither in its Complaint nor its Opposition does the SEC allege at all, much less with particularity, facts that would establish the knowledge or information that Ms. Skaer supposedly had that should have alerted her that a compensation expense was both required and not being taken. The SEC's circular reasoning is no substitute for allegations of actual facts, and amounts to no more than an assertion that Ms. Skaer "must have known" of the alleged problems with Mercury's books, records, internal controls, and financial statements from the sheer "magnitude" of the allegedly required compensation expense. The courts have consistently rejected such "must have known" and "magnitude" allegations as a proper basis for alleging actual knowledge or scienter, and this Court should do the same here.[14]

Finally, the SEC has failed to state a claim that Ms. Skaer violated or aided and abetted a violation of § 16 of the Exchange Act, which requires certain owners of an issuer's securities to file statements of ownership or changes in ownership of those securities under certain conditions. As pointed out in Ms. Skaer's Motion to Dismiss, § 16 prohibits only the failure to make a required filing, and then only if that failure was purposeful or the result of willful blindness.

---

[13] The only citation provided by the SEC for these assertions is Compl. ¶ 106, which contains nothing more than conclusory allegations that Ms. Skaer and the other defendants "knew, should have known, or were reckless in not knowing that they made materially false and misleading statements and disclosures in the financial statements" and that Ms. Skaer "knew that she was aiding and abetting the making of the false statements in the financial statements."

[14] See, e.g., SEC v. Lucent Techs., No. CIV. 04-2315 (WHW), 2005 WL 1206841, at *5 (D. N.J. May 20, 2005) ("While the SEC charges that Dorn did not need to be an accountant to realize that the side agreements would lead to improper revenue recognition, the SEC offers no compelling reason why this Court should charge regular business people with knowledge of accounting principles."); K & S P'ship v. Continental Bank, 952 F. 2d 971, 977 (8th Cir. 1991) (plaintiff must "demonstrate actual awareness"); Renovitch v. Kaufman, 905 F.2d 1040, 1047 (7th Cir. 1990) (plaintiff "may not rest on a bare inference that the defendant 'must have had' knowledge of the facts"); In re Van Wagoner Funds, Inc. Sec. Litig., 382 F. Supp. 2d 1173, 1187 (N.D. Cal. 2004) ("Magnitude of fraud only supports an inference of scienter when the plaintiff alleges specific and detailed facts showing that the magnitude either enhanced the suspiciousness of specifically identified transactions or made the overall fraud glaringly conspicuous."); In re U.S. Aggregates, Inc. Sec. Litig., 235 F. Supp. 2d 1063, 1073 (N.D. Cal. 2002) (magnitude of alleged fraud does not support inference of scienter absent "particularized allegations" suggesting defendants knew of violations of Generally Accepted Accounting Principles).

MTD at 24. In response, the SEC asserts that "implicit in this reporting requirement is that the information reported be truthful." Opp. at 17. But, the only support it cites for this assertion are two cases interpreting § 13 of the Exchange Act, not § 16. Simply put, there is no authority of which Ms. Skaer is aware – and the SEC cites none – holding that § 16 prohibits the filing of Forms 3 or 4 that contain allegedly false information. And, as with its other claims, the SEC has failed to allege any facts that would show that Ms. Skaer knew or was reckless in not knowing ("purposeful" or "willful blindness," to use the words of the applicable case law under § 16) that the forms in question were false in any respect, material or otherwise.

### D. The SEC Should Not Be Granted Leave To Amend

The SEC has not requested and should not be granted leave to amend. Despite having conducted an 18-month investigation that included collecting some 10 million pages of documents and taking the testimony of nearly a dozen current or former Mercury insiders, the SEC has come nowhere close to alleging specific facts that, if proven, would state a securities law claim against Ms. Skaer. It has not alleged and cannot allege that she intentionally did anything wrong or even knew that Mercury was improperly administering its options process or accounting for options grants. Meantime, Ms. Skaer has suffered and continues to suffer unwarranted hardships by the mere pendency of this matter. She should not have to suffer further prolonged damage to her profession and her reputation so that the SEC may embark on a futile effort to cure the incurable defects in its Complaint. The Complaint should be dismissed with prejudice.

Dated: January 15, 2008

MELINDA HAAG
JAMES A. MEYERS
JAMES N. KRAMER
M. TODD SCOTT
LUCY E. BUFORD
ORRICK, HERRINGTON & SUTCLIFFE LLP

/s/ M. Todd Scott
M. Todd Scott
Attorneys for Defendant
SUSAN SKAER