John D. Cline (State Bar No. 237759)
K.C. Maxwell (State Bar No. 214701)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104-1500
Telephone:    (415) 626-3939
Facsimile:    (415) 875-5700
E-mail:       jcline@jonesday.com
              kcmaxwell@jonesday.com

Andrew T. Solomon (Admitted *Pro Hac Vice*)
Franklin B. Velie (Admitted *Pro Hac Vice*)
SULLIVAN & WORCESTER LLP
1290 Avenue of the Americas
New York, NY 10104
Telephone:    (212) 660-3000
Facsimile:    (212) 660-3001
E-mail:       asolomon@sandw.com
              fvelie@sandw.com

Attorneys for Defendant
AMNON LANDAN

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>            Plaintiff,<br><br>     vs.<br><br>MERCURY INTERACTIVE, LLC (F/K/A MERCURY INTERACTIVE, INC.), AMNON LANDAN, SHARLENE ABRAMS, DOUGLAS SMITH and SUSAN SKAER,<br><br>            Defendants. | **CASE NO. 5:07-CV-02822 RS**<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AMNON LANDAN'S MOTION TO DISMISS AND MOTION FOR A MORE DEFINITE STATEMENT**<br><br>Date:    March 14, 2008<br>Time:    10:30 a.m.<br>Place:   Courtroom 3<br>Judge:   Honorable Jeremy D. Fogel<br><br>Complaint Filed:   May 31, 2007<br>Trial Date:        None |

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION .................................................................................................................. 1

I. THE SEC HAS NOT ADEQUATELY ALLEGED FRAUD (FIRST AND SECOND CLAIMS FOR RELIEF) ............................................................................ 1

    A. BELL ATLANTIC CORP. V. TWOMBLY REQUIRES A PLAINTIFF TO ALLEGE THE FACTUAL CIRCUMSTANCES WHICH RENDER OTHERWISE "NEUTRAL" CONDUCT ACTIONABLE .................................................................................. 2

    B. DATING OPTIONS "AS OF" A PRIOR DATE FALLS WITHIN "NEUTRAL TERRITORY" ............................................................... 3

    C. THE SEC DOES NOT ADEQUATELY ALLEGE THE "FURTHER CIRCUMSTANCES" REQUIRED TO TAKE LANDAN'S CONDUCT OUT OF "NEUTRAL TERRITORY" ............ 4

        1. The SEC Did Not Adequately Allege Landan's Understanding Of "Complex" Accounting Rules .......................... 4

            a. Abrams' Statement at the March 1999 Board Meeting Did Not Put Landan on Notice of An Accounting or Disclosure Problem .................................... 5

            b. Smith's Late 2002 E-Mail Did Not Put Landan On Notice of An Accounting or Disclosure Problem ............... 6

        2. The SEC Does Not Adequately Allege That Landan Was Aware of the Failure of Accountants and Auditors to Properly Apply These "Complex" Accounting Rules ................... 7

II. SECTION 304 OF THE SARBANES-OXLEY ACT OF 2002 DOES NOT APPLY TO THE ALLEGED MISCONDUCT (FIFTH PRAYER FOR RELIEF) ................................................................................................................ 8

III. IN THE ALTERNATIVE, THE MOTION FOR MORE DEFINITE STATEMENT SHOULD BE GRANTED .......................................................... 10

CONCLUSION ................................................................................................................... 11

# TABLE OF AUTHORITIES

**PAGE**

### Cases

*Anderson v. Dist. Bd. of Trs. of Cent. Fl. Cmty. Coll.*,
   77 F.3d 364 (11th Cir. 1996) .................................................................................. 10

*Bell Atlantic v. Twombly*,
   127 S. Ct. 1955 (2007) ............................................................................... 1, 2, 3, 7

*Conley v. Gibson*,
   355 U.S. 41 (1957) ...................................................................................................... 2

*Hollinger v. Titan Capital Corp.*,
   914 F.2d 1564 (9th Cir. 1990) ................................................................................... 4

*In re AFC Enterprises, Inc. Derivative Litigation*,
   224 F.R.D. 515 (N.D. Ga. 2004) ........................................................................... 8, 9

*In re Goodyear Tire & Rubber Co. Derivative Litigation*,
   2007 WL 43557 (N.D. Ohio Jan. 5, 2007) ............................................................... 8

*In re Sportsline.com Sec. Litig.*
   366 F. Supp. 2d 1159 (S.D. Fla. 2004) .................................................................... 4

*In re Verisign, Inc., Derivative Litig.*,
   2007 WL 2705221 (N.D. Cal. Sept. 14, 2007) ..................................................... 1, 3

*SEC v. Baxter*,
   2007 WL 2013958 (N.D. Cal. July 11, 2007) ...................................................... 2, 5

*SEC v. Trabulse*,
   2007 WL 4293476 (N.D. Cal. Dec. 7, 2007) ............................................................ 2

*Wagner v. First Horizon Pharm. Corp.*,
   464 F.3d 1273 (11th Cir. 2006) .............................................................................. 10

*Weiss v. Amkor Tech., Inc.*,
   2007 WL 2808224 (D. Ariz. Sept. 25, 2007) ............................................................ 4

### Statutes

15 U.S.C. § 7243 ................................................................................................................ 8

Fed. R. Civ. P. 9(b) ............................................................................................................ 1

Fed. R. Civ. P. 10(b) ........................................................................................................ 10

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 1

Fed. R. Civ. P. 12(e) .......................................................................................................... 1

# TABLE OF AUTHORITIES
### (continued)

**PAGE**

### Miscellaneous

Coca Cola Co. Form 10-Q, note D ("Accounting Pronouncements"),
filed Aug. 13, 2002, (available at
http://www.sec.gov/Archives/edgar/data/21344/000002134402000027/koq63002.txt) ..... 6

General Electric Co. Form 10-Q, note 9,
filed Oct. 29, 2002, (available at
http://www.sec.gov/Archives/edgar/data/40545/000004054502000058/frm10q3.htm) ..... 6

Letter from SEC Chief Accountant Conrad Hewitt to Lawrence Salva and Sam Ranzilla
(Sept. 19, 2006), (available at
http://www.sec.gov/info/accountants/staffletters/fei_aicpa091906.htm .............................. 5

*Ownership Reports and Trading by Officers, Directors and Principal Security Holders*,
Release No. 34-46421 (Aug. 27, 2002),
(available at http://www.sec.gov/rules/final/34-46421.htm) ............................................... 6

Paul S. Atkins, Speech by SEC Commissioner: Remarks before the International
Corporate Governance Network 11th Annual Conference (July 6, 2006),
(available at http://www.sec.gov/news/speech/2006/spch070606psa.htm) ........................ 3

Defendant Amnon Landan respectfully submits this reply memorandum of law in support of his motion for an order dismissing the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to plead scienter as required under Fed. R. Civ. P. 9(b), or, in the alternative, under Fed. R. Civ. P. 12(e), for a more definite statement.

**INTRODUCTION**

The SEC's opposition brief does nothing to diminish the strength of Landan's arguments for dismissal. When faced with persuasive or binding precedents favoring dismissal of the fraud claims, the SEC ignored them. (Point I.) When challenged on the Section 304 claim, it misread and dodged the only decision to have addressed retroactivity in this context. (Point II.) Rather than address defendants' arguments directly, the SEC cloaked itself in the ambiguity of shotgun pleading, enabling it to disregard arguments that would require dismissal of more clearly structured counts. (Point III.)

The Facts and Issues pertaining to this reply brief are set forth in Landan's moving papers. (Landan Br. at 1-9.)

**I.    THE SEC HAS NOT ADEQUATELY ALLEGED FRAUD (FIRST AND SECOND CLAIMS FOR RELIEF)**

Apparently content to rest on past successes, the SEC refuses to consider recent authority that checks its arguments, even from the United States Supreme Court. The SEC's opposition brief ignores persuasive authority from this district holding that options backdating, the same conduct alleged in this case, "is not per se illegal." *In re Verisign, Inc., Derivative Litig.*, 2007 WL 2705221, *1 (N.D. Cal. Sept. 14, 2007) (Landan's Br. at 13). As the district court in *In re Verisign* stated, there are specific circumstances that render backdating improper. Therefore, in order to properly plead scienter, the SEC must allege facts that support scienter not only as to backdating generally, but also as to the circumstances that make backdating improper in this case. Such allegations are required under the Supreme Court's decision in *Bell Atlantic v. Twombly*, 127 S. Ct. 1955 (2007), which clarified that a plaintiff must plead facts showing that conduct has crossed the line from neutral to actionable. (Landan's Br. at 11.) The SEC's opposition brief ignores both of these precedents.

### A. *Bell Atlantic Corp. v. Twombly* Requires A Plaintiff To Allege The Factual Circumstances Which Render Otherwise "Neutral" Conduct Actionable

Earlier this year, the Supreme Court retired *Conley v. Gibson*'s "famous" but "puzzling" statement that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1968-69 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The Court held that a complaint must do more than allege facts that are consistent with or merely create a suspicion of an actionable wrong; the facts must plausibly suggest that the wrongful conduct in fact occurred. 127 S. Ct. at 1964-65.

The SEC feigns ignorance of *Bell Atlantic* in its opposition brief -- despite the fact that all four defendants cited it in their moving briefs -- and continues to invoke the pre-*Bell Atlantic* standard. *Compare* Landan's Br. at 11; Abrams' Br. at 9, 22; Smith's Br. at 12-13 n.8; Skaer's Br. at 9 *with* SEC Br. at 2 (arguing that 12(b)(6) dismissal "is appropriate 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations'"). Nonetheless *Bell Atlantic*'s restatement and clarification of the standard for dismissal under 12(b)(6) is current and binding precedent.[1]

The facts in *Bell Atlantic* are analogous to those presented by this case. The plaintiff in *Bell Atlantic* alleged that an agreement to violate antitrust laws could be inferred from parallel business conduct. The Court dismissed the complaint because it did not contain "enough factual matter (taken as true) to suggest that an agreement was made" or "plausible grounds to infer an agreement." 127 S. Ct. at 1965. In the Court's view, the complaint's allegations "need[ed] some setting suggesting the agreement necessary to make out [the] claim; without that *further*

---

[1] *Bell Atlantic*'s authority as precedent is not limited to antitrust cases. Federal courts around the country have applied its clarification of the pleading standard to a range of cases, including securities fraud. Indeed, it has already been cited in two Northern District of California opinions deciding motions to dismiss SEC complaints. *See SEC v. Trabulse*, 2007 WL 4293476 (N.D. Cal. Dec. 7, 2007) (finding fraud claim well-pleaded where defendant allegedly reported results to investors that were inconsistent with financial records and used firm assets to make "personal and unauthorized expenses" for himself and his family); *SEC v. Baxter*, 2007 WL 2013958 (N.D. Cal. July 11, 2007) (finding a sufficient showing of scienter based on allegations that the defendant signed financial statements in the face of "potentially alarming information" from auditors).

*circumstance* pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in *neutral territory*." 127 S. Ct. at 1966.[2]

The Court's reasoning in *Bell Atlantic* should lead to the same conclusion in this case. Here, too, the Complaint alleges conduct that on its own falls within "neutral territory" and the SEC did not adequately allege a "further circumstance" needed to show that that the conduct is not neutral but fraudulent. The SEC has therefore "not nudged [its] claims across the line from conceivable to plausible [and its] complaint must be dismissed." 127 S. Ct. at 1974.

### B. Dating Options "As Of" A Prior Date Falls Within "Neutral Territory"

In our moving brief, Landan cited a recent Northern District of California decision for the proposition that options backdating "is not per se illegal." *In re Verisign, Inc., Derivative Litig.*, 2007 WL 2705221, *1 (N.D. Cal. Sept. 14, 2007) (Landan Br. at 13). The court in *In re Verisign* found that backdating options raises no concerns "assuming it is permitted under the tax laws and the company's by-laws and/or shareholder-approved stock option plans. *What may be unlawful is a company's failure to disclose the backdating or to report the proper compensation expense in its financial statements and other public filings*." *Id.* This reasonable interpretation of the law even tracks the personal view of one SEC Commisioner. At a conference in July 2006, Commissioner Paul Atkins observed that "[b]ackdating of options sounds bad, but the mere fact that options were backdated does not mean that the securities laws were violated. *Purposefully backdated options that are properly accounted for and do not run afoul of the company's public disclosure are legal.*" Paul S. Atkins, Speech by SEC Commissioner: Remarks before the International Corporate Governance Network 11th Annual Conference (July 6, 2006) (available at http://www.sec.gov/news/speech/2006/spch070606psa.htm). Thus to take backdating out of unactionable "neutral territory," the SEC must adequately allege as a "further circumstance" that Landan knew or was complicit in the company's failure to properly account for or properly report the option grants. *Bell Atlantic*, 127 S. Ct. at 1966.

---

[2]    Unless otherwise indicated, all emphasis is supplied.

### C. The SEC Does Not Adequately Allege The "Further Circumstances" Required To Take Landan's Conduct Out Of "Neutral Territory"

The Complaint does not allege that Landan had reason to suspect that Mercury's accounting staff and auditors were improperly accounting for the options. Consequently he could not have known that Mercury was not properly reporting them.[3]

#### 1. The SEC did not adequately allege Landan's understanding of "complex" accounting rules

To adequately plead that Landan knew that Mercury was accounting for options improperly, the SEC must first allege facts showing that he understood how to properly account for them. A non-accountant's knowledge of accounting rules is not to be presumed lightly. As one court in this circuit noted in another options backdating case, "the accounting rules at issue, specifically APB No. 25, are complex and require accounting expertise and judgment. As noted by the Court in *In re Sportsline.com Securities Litigation*, the misapplication of accounting rules to a particular company's stock option grants cannot be construed as a glaring example of scienter because the measurement date criteria embodied in APB No. 25 are far from obvious." *Weiss v. Amkor Tech., Inc.*, 2007 WL 2808224, *9 (D. Ariz. Sept. 25, 2007) (citing *In re Sportsline.com Sec. Litig.* 366 F. Supp. 2d 1159, 1168-69 (S.D. Fla. 2004)); *see also Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1569 (9th Cir. 1990) (defining scienter as an omission presenting a danger of misleading investors "that is either known to the defendant or is so obvious that the actor must have been aware of it").

To the extent the SEC alleges that Landan had a sufficient understanding of these "complex" accounting rules, it does so in Point C.c. of the Complaint (¶¶ 37-45; "The Defendants Were Aware of the Pricing Requirement for Options"). None of these allegations, however, is sufficient to plead Landan's knowledge of the accounting rules and how they were supposed to be applied. While the SEC summarizes and excerpts the statements of others on the subject of compensation charges (Compl. ¶¶ 41-44), only two of these statements were allegedly made to Landan between 1997 and 2002. The allegations do not support an inference that Landan was

---

[3] As we argued in our moving brief, an alleged violation of a shareholder-approved stock option plan alone does not show an intent to commit securities fraud. (Landan Br. at 2-3.)

sufficiently educated by these statements that he understood the accounting rule well enough to discuss it with or explain it to others, let alone apply it.

### a. Abrams' statement at the March 1999 Board meeting did not put Landan on notice of an accounting or disclosure problem

The first statement was allegedly made by Abrams at the March 1999 Board meeting which Landan attended. (Compl. ¶ 42.) According to Skaer's notes, Abrams explained "that the company's publicly stated policy was *already* that it did not grant in-the-money options, because such a grant would result in a compensation charge for the company." (*Id.*) The word "already" denotes the maintenance of the status quo. Nothing in this statement suggests that Abrams was informing Landan and others attending the Board meeting that Mercury's publicly stated policy had been and continued to be a lie. To the contrary, the statement informed the listener that he should not anticipate seeing any options-related expense charges on the financial statements. The statement therefore did not constitute "alarming information" that should have given Landan pause. *SEC v. Baxter*, 2007 WL 2013958, *7 (N.D. Cal. July 11, 2007). Rather it suggested that the options issued before this meeting were not considered in-the-money for accounting or disclosure purposes. Obviously this differs from the SEC's allegations that at least 10 options issued prior to this meeting were in-the-money (Compl. ¶¶ 37, 45), but the issue is whether *Landan*, who was not an accountant, could have learned of any accounting or disclosure problems from Abrams' alleged statement.

Further, Skaer's statement could not put Landan on notice of an accounting or disclosure issue unless he already understood the complex accounting rules for options. In particular, he would have had to understand the differences between "as of" dates, grant dates and measurement dates for purposes of determining whether an option was in-the-money or at-the-money.[4] (See Landan Br. at 2-3.) Because the SEC does not adequately allege that Landan had the requisite

---

[4] The SEC is being coy when it ignores Landan's explanation of "as of" dates and continues to describe the unanimous written consents as "falsely represent[ing] that the options had been granted 'as of' the dates chosen by the defendants." (SEC Br. at 4.) The SEC -- or at least its Chief Accountant -- fully understands that options can be dated "*as of* an earlier date" even if the "terms of the award and its recipients are actually determined" on another date. Letter from SEC Chief Accountant Conrad Hewitt to Lawrence Salva and Sam Ranzilla (Sept. 19, 2006) (available at http://www.sec.gov/info/accountants/staffletters/fei_aicpa091906.htm; emphasis added). The relevant issue is whether the measurement date, the date on which the terms and recipients are determined, is used to account for the grants. *Id.*

"accounting expertise and judgment" to understand and apply APB No. 25, Skaer's statement is inadequate to put him on notice of an accounting or disclosure problem and therefore does not support an inference of scienter.

### b. Smith's late 2002 e-mail did not put Landan on notice of an accounting or disclosure problem

The second statement is contained in a "late 2002" Smith e-mail -- that is, one sent after the last option at issue had been granted in March of 2002. (Compl. ¶¶ 44-45.) Smith, who was then Mercury's CFO but was not a CPA, wrote the e-mail in response to a request to set the price of an option as of an earlier date. He replied that the price "'must be determined when the Comp Committee or Board of Directors approves the grant' and that 'deliver[ing] in the money options would . . . Create a Comp Charge.'" (Compl. at ¶ 44; alteration and ellipsis in original.)

Whatever Smith's understanding of options accounting may have been in late 2002, it does not support an inference that Mercury's executives understood that the options issued in April 2002 or earlier were governed by the same accounting rules or corporate policies. Indeed, after April 2002, a number of companies changed their accounting for stock options by voluntarily adopting SFAS 123 and choosing to expense options. *See, e.g.*, Coca Cola Co. Form 10-Q, note D ("Accounting Pronouncements"), filed Aug. 13, 2002 (available at http://www.sec.gov/Archives/edgar/data/21344/000002134402000027/koq63002.txt); General Electric Co. Form 10-Q, note 9, filed Oct. 29, 2002 (available at http://www.sec.gov/Archives/edgar/data/40545/000004054502000058/frm10q3.htm). During the same time period, the SEC implemented Section 403 of the Sarbanes-Oxley Act by promulgating rules requiring officers and directors to report stock option grants within two days. *See Ownership Reports and Trading by Officers, Directors and Principal Security Holders*, Release No. 34-46421 (Aug. 27, 2002) (available at http://www.sec.gov/rules/final/34-46421.htm). In sum, the playing field was changing and thus companies' policies about issuing and accounting for option grants at the end of 2002 did not necessarily accord with their views from earlier in the year. Accordingly, this e-mail was also insufficient to educate Landan that Mercury had improperly accounted for stock options granted between 1997 and April 2002.

### 2. The SEC does not adequately allege that Landan was aware of the failure of accountants and auditors to properly apply these "complex" accounting rules

Even if the two statements cited in the Complaint could be viewed as putting Landan, a computer scientist, on notice of accounting procedures and rules, it was Mercury's outside accountants who were charged with implementing them and its outside independent auditors who were charged with reviewing the accountants' work. The SEC does not allege that Landan directed the accountants to account for the grants improperly or was complicit with their doing so. Nor does the SEC allege that Landan withheld any documentation about the grants from its auditors, gave them false information, or directed them to accept accounting errors of this or any kind. (Compl. ¶ 108.)[5] Without such allegations or supporting documents, it is not plausible that Landan was complicit in the failure of accounting professionals to apply the proper accounting rules to the option grants. And without alleging such facts, the complaint cannot give rise to a plausible inference of scienter.

\*       \*       \*

In sum, while no "heightened fact pleading" is required to plead securities fraud, the SEC is nonetheless required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 127 S. Ct. at 1974. By failing to adequately allege facts showing that Landan was aware of any "further circumstance" that rendered the accounting or reporting of the option grants improper, the SEC has "not nudged [its] claims across the line from conceivable to plausible." *Id.* at 1966, 1974.

The SEC's allegations fall within neutral territory and do not adequately plead intentional fraud. They are consistent with a company whose CFO, accountants and auditors believed, perhaps in error, that using an "as of" date in an option grant was compatible with the shareholder approved policy and did not require a compensation charge. The facts that communications and

---

[5] As noted in our moving brief, the SEC merely makes the conclusory statement that "Landan, Abrams, Smith and Skaer made false statements and representations to Mercury's auditors . . . as described below." The promised description did not materialize. (Landan Br. at 7; quoting Compl. ¶ 79.) Nor can anyone at Mercury be viewed as misleading accountants and auditors by supplying them with documents containing "as of" dates. (Landan Br. at 8, 12-13.)

records implementing the options policy were entirely in plain view, lacking any badges of fraud, and that Mercury's CFOs, Abrams and Smith, allegedly expressed concern that certain conduct would result in a compensation charge, indicate that there was no intentional fraud here. Without alleging that Landan understood something about proper accounting for options that Mercury's own accountants and auditors did not realize, the SEC cannot meet its burden. Moreover, if Mercury's accountants and auditors did something improper, there are no facts alleged to suggest that Landan was told of this or somehow found out about it. The claims for fraud under section 10(b) and 17(a) must therefore be dismissed.

## II. SECTION 304 OF THE SARBANES-OXLEY ACT OF 2002 DOES NOT APPLY TO THE ALLEGED MISCONDUCT (FIFTH PRAYER FOR RELIEF)

Landan joined Douglas Smith's motion to dismiss or strike the SEC's claim for forfeiture pursuant to Section 304 of the Sarbanes-Oxley Act of 2002, 15 U.S.C. § 7243 ("Section 304"). (Docket no. 59, Oct. 2, 2007.) One of Smith's arguments was that Section 304 does not apply retroactively to misconduct that occurred prior to July 2002. In support of this argument Smith cited the only two cases that have spoken to this issue, *In re AFC Enterprises, Inc. Derivative Litigation*, 224 F.R.D. 515 (N.D. Ga. 2004), and *In re Goodyear Tire & Rubber Co. Derivative Litigation*, 2007 WL 43557 (N.D. Ohio Jan. 5, 2007). *In re Goodyear* simply cites *In re AFC Enterprises*' discussion for the point that "[n]othing in the text of Section 304 suggests retroactive application of any of its provisions." 2007 WL 43557 at *8 (citing *In re AFC Enters.*, 224 F.R.D. at 521).

The SEC, again refusing to engage defendants' cited cases head-on, somehow reads *In re AFC Enterprises* to support its position. It cites the decision as a "cf." cite in support of its argument that applying Section 304 in this case would not be retroactive because rather than punishing pre-Sarbanes-Oxley misconduct it would punish post-Sarbanes-Oxley filings. (SEC Br. at 12.) The SEC then provides the following parenthetical description of the case: "potentially retroactive application of Section 304 based upon financial statements filed before July 2002 enactment of provision." (*Id.*)

This description of the case is misleading on two levels.  First, the case did not only involve pre-Sarbanes-Oxley filings.  The "quarterly financial results for . . . July[] and October 2002" were filed *with the SEC* after July 30, 2002.  *In re AFC Enters.*, 224 F.R.D. at 517; s*ee* AFC Enterprises Inc. Forms 10-Q filed on Aug. 14, 2002 (available at http://www.sec.gov/Archives/edgar/data/1041379/000095014402008762/0000950144-02-008762-index.htm) and Nov. 20, 2002 (available at http://www.sec.gov/Archives/edgar/data/1041379/000095014402012164/0000950144-02-012164-index.htm).  Second, and more importantly, the *AFC Enterprises* court was focused on the timing of the misconduct.  The court wrote:

> The Act requires forfeiture of certain bonuses and profits if an accounting restatement is necessitated due to material noncompliance with SEC reporting requirements *"as a result of misconduct."*  The plain language of the statute indicates that *the purpose of the Act is to punish "misconduct,"* not the mere decision to restate financial reports.
>
> In this case, the Defendants contend that although the decision to restate AFC's financial reports was made after the effective date of the Sarbanes-Oxley Act, *the putative misconduct about which the Plaintiffs complain occurred prior to that date*.  The Plaintiffs do not dispute this point.  Absent a "clear indication from Congress" to the contrary, the presumption is that legislation does not apply retroactively.  There is no "clear indication" from Congress that this forfeiture provision of the Sarbanes-Oxley Act was intended to have retroactive application *to misconduct which occurred before its effective date*.

224 F.R.D. at 521 (citations omitted) (declining to "definitively rule on this issue at this early stage of the litigation without a developed factual record").[6]  Accordingly, contrary to the impression the SEC would like to impart, the only court to consider this issue disagreed with the SEC and found (1) that the purpose of the statute is to punish the underlying "misconduct" and (2) that there is no clear indication from Congress that courts should retroactively punish misconduct that took place before the Act went into effect.  We respectfully submit that the Court should follow *In re AFC Enterprises, Inc. Derivative Litigation* and dismiss or strike the SEC's fifth prayer for relief.

---

[6] A review of the case docket indicates that the parties settled without the court having an opportunity to revisit this issue.

### III. IN THE ALTERNATIVE, THE MOTION FOR MORE DEFINITE STATEMENT SHOULD BE GRANTED

Landan joined Abrams' motion for a more definite statement pursuant to Rule 12(e). (Docket no. 60, Oct. 2, 2007.) Should the Court decide not to dismiss the SEC's claims at this time, we submit that defendants' 12(e) motion should be granted. A clear listing of claims and the factual allegations that support them will assist the defendants -- and the Court -- to deal with the SEC's claims accurately and efficiently. *See* Fed. R. Civ. P. 10(b); *Anderson v. Dist. Bd. of Trs. of Cent. Fl. Cmty. Coll.*, 77 F.3d 364, 366-67 (11th Cir. 1996) ("Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice."). To permit the SEC to proceed with its current complaint puts the burden first on defendants and then on the Court to clarify the interconnections between 144 paragraphs of factual allegations and ten separate claims for relief in order to determine whether those claims are properly stated. *See Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006) ("Such [shotgun] pleadings divert already stretched judicial resources into disputes that are not structurally prepared to use those resources efficiently.").

One effect of the SEC's shotgun pleading is to hamstring Landan's efforts to streamline the case against him. Had the SEC structured its complaint to plead a single type of misconduct for each claim for relief, Landan would have been able to seek dismissal of individual claims that are not supported by the factual allegations, such as earnings management, or that were not properly pleaded against him, such as the European exercises.

*Earnings management.* As Abrams persuasively argued in her memorandum of points, the SEC has not adequately pleaded that earnings management can support any of the claims in the Complaint. (Abrams Br. at 13-16.) The SEC's own Complaint states that the revenue backlog was known to and questioned by Mercury's auditors. (Abrams at 15; Compl. ¶ 124.) Asking questions is not an indication of fraud; it shows that the "secret backlog" was no secret, and that the auditors were doing their jobs. (Compl. at ¶ 122.) More significant than the fact that the auditors asked questions is that they were satisfied and issued an unqualified audit opinion

Reply In Support of Motion to Dismiss and Motion
for A More Definitive Statement
Case No. 5:07-CV-02822 RS

stating that the 10-K fairly represented the company's finances "in all material respects." (Abrams at 15 quoting 1999 10-K at 29.)  Such facts do not state a claim for fraud, improper accounting or recordkeeping, or any other claims based on "materially" false statements or filings.  The SEC does not respond to this argument in their opposition brief, preferring to benefit from the muddy waters created by its pleading.

*European exercises.*  The allegations concerning European exercises in paragraphs 131-44 of the Complaint do not mention Landan at all.  Had any claims been specifically pleaded on the basis of these exercises, Landan would have been able to successfully move for their dismissal as to him.

Should the case go forward without identifying and dismissing claims based on earnings management or European exercises, Landan will be unfairly subjected to the burdens of discovery and trial on these allegations.  Requiring a more definite statement from the SEC will avoid such burdens and any resulting prejudice to Landan.

## CONCLUSION

For the reasons set forth above and in Landan's motion, the First and Second Claims for relief should be dismissed as against Landan or, in the alternative, the fifth prayer for relief should be stricken and the motion for more definite statement should be granted.

Dated:  January 15, 2008                                      Respectfully submitted,

                                                              JONES DAY


                                                              By:    /s/  John D. Cline
                                                                   John D. Cline

                                                              Attorneys for Defendant
                                                              AMNON LANDAN