Douglas R. Young (State Bar No. 073248)
C. Brandon Wisoff (State Bar No. 121930)
Thomas B. Mayhew (State Bar No. 183539)
Helen Dutton (State Bar No. 235558)
Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
Telephone:  (415) 954-4400
Facsimile:  (415) 954-4480
dyoung@fbm.com
bwisoff@fbm.com

Attorneys for Defendant
SHARLENE ABRAMS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>              Plaintiff,<br><br>     vs.<br><br>MERCURY INTERACTIVE, LLC (F/K/A/MERCURY INTERACTIVE, INC.), AMNON LANDAN, SHARLENE ABRAMS, DOUGLAS SMITH and SUSAN SKAER,<br><br>              Defendants. | Case No.  5:07-cv-02822 JF<br><br>**DEFENDANT SHARLENE ABRAMS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (FRCP 12(b)(6)) AND MOTION FOR MORE DEFINITE STATEMENT (FRCP 12(e))**<br><br>Date:     March 14, 2008<br>Time:    9:00 a.m.<br>Dept.:    Courtroom 3, 5th Floor<br>Judge:   Honorable Jeremy Fogel<br><br>Date Complaint Filed: May 31, 2007<br>Date Set For Trial: None |

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEF. ABRAMS' REPLY MEMORANDUM ISO MOT.TO
DISMISS & MOT. FOR MORE DEFINITE STATEMENT
Case No. 5:07-cv-02822-JF

19994\1420722.1

# TABLE OF CONTENTS

INTRODUCTION .............................................................................................................................. 1

I.  THE SEC'S ALLEGATIONS CONCERNING OPTION GRANT BACKDATING – WHICH ABRAMS DOES NOT CHALLENGE ON THIS MOTION – DO NOT SUPPORT THE SEC'S OTHER PURPORTED CLAIMS CONCERNING OPTION EXERCISE BACKDATING, EARNINGS MANAGEMENT OR EUROPEAN LOANS.................................................................. 2

   A.  The SEC's Allegations Regarding Allegedly Backdated Option Exercises (¶¶ 82-97) Fail To Satisfy Rule 9(b) Or To State A Claim For Violation Of The Securities Laws ........................................................................................ 3

   B.  The SEC's Allegations Regarding European Exercises (¶¶ 131-144) Fail To Satisfy Rule 9(b) Or Otherwise State A Claim Against Abrams ..................... 5

   C.  The SEC's Allegations Regarding Inventory And Shipping "Backlog" (¶¶ 117-130) Do Not Satisfy Rule 9(b) Or Otherwise State A Securities Claim ................................................................................................................. 6

II. NOTHING IN THE SEC'S OPPOSITION SUPPORTS ITS EIGHTH CLAIM FOR RELIEF AGAINST ABRAMS FOR "FAILURE TO DEVISE AND MAINTAIN A SUFFICIENT SYSTEM OF INTERNAL ACCOUNTING CONTROLS"............................................................................................................ 8

III. NOTHING IN THE SEC'S OPPOSITION ADDRESSES THE FAILURE OF ITS COMPLAINT TO ALLEGE ANY FACTS DEMONSTRATING A NEED FOR INJUNCTIVE RELIEF AGAINST ABRAMS ................................................. 9

CONCLUSION ................................................................................................................................ 9

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEF. ABRAMS' REPLY MEMORANDUM ISO MOT. TO
DISMISS & MOT. FOR MORE DEFINITE STATEMENT
Case No. 5:07-cv-02822-JF

- i -

19994\1420722.1

## TABLE OF AUTHORITIES

### FEDERAL STATUTES AND RULES

15 U.S.C.
   § 78m(b)(2)(B) .................................................................................................. 8
   § 78m(b)(5) ....................................................................................................... 8

Fed. R. Civ. P.
   8(a) ..................................................................................................................... 1
   9(b) ............................................................................................... 1, 2, 4, 7, 8
   10(b) ................................................................................................................... 1

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEF. ABRAMS' REPLY MEMORANDUM ISO MOT. TO
DISMISS & MOT. FOR MORE DEFINITE STATEMENT
Case No. 5:07-cv-02822-JF

- ii -

19994\1420722.1

# INTRODUCTION

The SEC's Opposition, like its Complaint, takes multiple defendants who held different positions and worked at Mercury over differing periods of time, accuses them of numerous asserted violations all sounding in fraud, but says it has no obligation to plead further specifics of which alleged conduct by which defendant is the basis of which claim. Given the SEC's extraordinary pre-filing investigatory powers, of which it generously availed itself, the Court should expect and require more under Rules 8(a), 9(b) and 10(b).

At its core, this is an option grant backdating case. Sharlene Abrams did not – on this motion – challenge any of those allegations. Her motion was instead focused on several narrow issues. She challenged the SEC's claims to the extent they are based on other alleged violations – namely option exercise backdating, earnings management, and loans to European employees – because (1) none of those claims has any factual basis in the Complaint, (2) one of those claims (so-called "earnings management") describes conduct that is lawful even if supported by facts, and (3) another of those claims (exercise backdating) at most would state a claim for breach of fiduciary duty or underpayment of taxes, neither of which is within the SEC's jurisdiction to enforce. Abrams also challenged the fourth and eighth claims for relief in their entirety as failing to state a claim. Finally, she challenged all the SEC's claims to the extent they seek injunctive relief given that she left the company over six years ago and the SEC pleads no facts to support the need for any injunction. In its Opposition, the SEC tellingly relies largely on allegations pertaining to option grant backdating, none of which are even challenged on this motion, to support its other, unrelated claims which are challenged. In other instances, the SEC ignores Abrams' arguments entirely. The Court should grant Abrams' motion and either dismiss, or require a more definite statement of, the challenged claims.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEF. ABRAMS' REPLY MEMORANDUM ISO MOT.TO DISMISS & MOT. FOR MORE DEFINITE STATEMENT
Case No. 5:07-cv-02822-JF

-1-

19994\1420722.1

# ARGUMENT

**I. THE SEC'S ALLEGATIONS CONCERNING OPTION GRANT BACKDATING – WHICH ABRAMS DOES NOT CHALLENGE ON THIS MOTION – DO NOT SUPPORT THE SEC'S OTHER PURPORTED CLAIMS CONCERNING OPTION EXERCISE BACKDATING, EARNINGS MANAGEMENT OR EUROPEAN LOANS**

As noted in Abrams' moving papers, the SEC alleges that Abrams caused Mercury to record accounting errors in four distinct areas:

(1) Accounting for stock option grants (Complaint ¶¶ 16-81, ¶¶ 98-116);

(2) Accounting for stock option exercises (Complaint ¶¶ 82-97);

(3) Accounting for revenue in the form of inventory not yet shipped (Complaint ¶¶ 117-130); and

(4) Accounting for purchases of stock options by European employees who received loans from the company (Complaint ¶¶ 131-144).

Because the SEC incorporates by reference each of paragraphs 1 through 144 into each of its purported "claims for relief," *see* Complaint ¶¶ 145-148, 153, 157, 161, 166, 169, 174, 179, 185, it appears that each of these alleged categories of accounting errors are meant to support each of the SEC's claims.

Abrams demonstrated in her moving papers that the first through fifth, seventh and eighth claims for relief all require particularized pleading under Rule 9(b). While the SEC questions whether Rule 9(b) applies to its third through fifth and seventh through eighth claims for relief (Opposition at 14-15), it claims that it has nevertheless provided the necessary particularity.[1] In support of this contention, the SEC recites several pages of allegations that pertain to its claim that Abrams, and others, fraudulently accounted for stock option grant dates. *See* Opposition at 3-5. But for purposes of this motion, Abrams has not challenged the SEC's allegations concerning the backdating of option grants. Most of the allegations that the SEC directs the Court to, therefore, have no bearing whatsoever on this motion. When one focuses on the sparse

---

[1] The SEC claims that civil violations of Section 13 do not require scienter and need not comply with Rule 9(b). Abrams respectfully refers the Court to her discussion of these issues at pp. 7-10 of her moving papers.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEF. ABRAMS' REPLY MEMORANDUM ISO MOT. TO DISMISS & MOT. FOR MORE DEFINITE STATEMENT
Case No. 5:07-cv-02822-JF

- 2 -

19994\1420722.1

allegations that the SEC offers in support of its other claims – the claims that Abrams *actually* attacks on this motion – it is apparent the SEC's pleading is inadequate.

### A. The SEC's Allegations Regarding Allegedly Backdated Option Exercises (¶¶ 82-97) Fail To Satisfy Rule 9(b) Or To State A Claim For Violation Of The Securities Laws

As noted in Abrams' moving papers, the SEC fails to allege (1) any misrepresentation made by Abrams in any of Mercury's public financial statements concerning the *exercise date* of any option or (2) how any such misrepresentation, even if made, was material to Mercury's financial statements. Abrams' moving papers at 11-13. Without these allegations, the SEC cannot state a securities law violation – and any claim for breach of fiduciary duty or underpayment of income taxes is outside the SEC's jurisdiction. *Id*.

The SEC's response to this point is relegated to a single paragraph (Opposition at 5:27-6:11), the content of which only confirms that the SEC is complaining about an alleged usurpation of a corporate tax benefit (*e.g.*, a breach of fiduciary duty claim) and not about any securities law violation. Thus, the SEC cites the Court to the Complaint at ¶ 2 (describing how Abrams and others "received more favorable long-term capital gains treatment" on stock option exercise profits and thus "deprived Mercury of the tax deduction that the company was entitled to take on the full extent of the gain"); ¶ 82 (stating that "Landan and Abrams also backdated their exercises of stock options to reap even greater profits at the expense of the company"); ¶¶ 88, 89 (describing the exercises that were purportedly backdated but providing no information concerning any misrepresentation by Abrams in any financial statements); ¶¶ 90, 91 (alleging that Abrams and others backdated exercises, but providing no information concerning Abrams' alleged role in preparing any Form 4 or making any other public misrepresentation); ¶¶ 92-97 describing an event where some of defendant Landan's exercises were supposedly backdated with assistance from Abrams and others, but providing no information concerning any misrepresentation to the securities markets made by Abrams). Not only do these allegations confirm that the SEC is trying to assert a breach of fiduciary duty claim on behalf of the corporation, they also confirm that the SEC is complaining about the alleged underpayment of taxes that falls within the jurisdiction of the IRS, not the SEC. *See*, *e.g., Id*. ¶ 2 ("These

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEF. ABRAMS' REPLY MEMORANDUM ISO MOT.TO
DISMISS & MOT. FOR MORE DEFINITE STATEMENT
Case No. 5:07-cv-02822-JF

- 3 -

19994\1420722.1

1  executives, including Landan and Abrams, backdated exercises to dates consistent with low-
2  points of the company's stock, in order to minimize their taxable gain on exercise."); ¶ 83 ("The
3  point of backdating the exercise was to enable the executive to obtain a tax benefit, including tax
4  benefits obtained at the expense of the company."); ¶ 84 ("Backdating the exercise of an ISO
5  effectively reduces the post-exercise holding period and thus helps avoid the incurrence of
6  ordinary income tax liability that would be associated with the disqualifying disposition."); ¶ 87
7  ("Through the backdating of the exercise documentation, Abrams and Landan were able to
8  minimize the gain from these transactions reported as ordinary income on their tax returns, while
9  maximizing the capital gains treatments of their profits."). Nowhere in its Opposition does the
10 SEC explain – let alone with the detail required by Rule 9(b) – what misrepresentation Abrams
11 made to the public financial markets regarding the exercise date on any options. Thus, as noted in
12 Abrams' moving papers, the alleged ill-gotten gains about which the SEC complains results, if it
13 all, from the underpayment of taxes or the breach of an internal corporate duty, and not from any
14 violation of the securities laws.

15       Moreover, even if the SEC could make some showing of a public misrepresentation, it has
16 failed to make any connection between the alleged misdating of option exercises and any *material*
17 impact on Mercury's financial statements. The most the SEC says is that the tax benefit received
18 by Abrams and others would otherwise have resulted in a tax deduction to the company.
19 Complaint ¶¶ 2, 83. Usurping a benefit that belongs to the company, however, is – by itself –
20 nothing more than a breach of fiduciary duty. The SEC nowhere alleges – consistent with the
21 particularity requirements of Rule 9(b) – that any alleged act or omission of Abrams concerning
22 the backdating of exercise dates had either the purpose or effect of *materially* misstating
23 Mercury's financial condition. Thus, with respect to this claim, the SEC is not complaining about
24 any securities laws violations or seeking to cause disgorgement of any ill gotten gains related to
25 any inflated stock sales. It is instead seeking to expand its jurisdiction to include the collection of
26 alleged tax underpayments and the policing of corporate fiduciary duties. These claims should be
27 dismissed.
28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEF. ABRAMS' REPLY MEMORANDUM ISO MOT.TO
DISMISS & MOT. FOR MORE DEFINITE STATEMENT  - 4 -
Case No. 5:07-cv-02822-JF

19994\1420722.1

### B. The SEC's Allegations Regarding European Exercises (¶¶ 131-144) Fail To Satisfy Rule 9(b) Or Otherwise State A Claim Against Abrams

As noted in Abrams' moving papers, the SEC alleges no false statement by Abrams in connection with its allegations that Mercury improperly accounted for purchases of stock options by European employees who received loans from the company. Indeed, any conduct alleged by the SEC with respect to Abrams occurred prior to the enactment of Financial Accounting Standards Board Interpretation Number 44 ("FIN 44") upon which the SEC bases its claims. Abrams' moving papers at 17-18.

The SEC's response to this point is again relegated to a single paragraph which again highlights the futility of the SEC's allegations. Opposition at 6:27-7:8. Thus, the SEC directs the Court to paragraph 136, stating: "The Complaint details what Skaer and Abrams did – structuring stock option early exercises to appear to be fully recourse obligations when they were not by creating documentation that mischaracterized the transaction." Opposition at 6-7. Paragraph 136 of the Complaint, however, nowhere even mentions Abrams. Complaint ¶ 136 (stating only in conclusory fashion with no supplied facts that "Skaer and others" structured full recourse loan documentation knowing that the loans were "truly non-recourse"). The SEC then directs the Court to paragraphs 132-144, commenting: "The Complaint clearly lays out when the conduct took place – the early exercises began to be implemented in late 1999, the false documentation was created in mid-2001, and the accounting consequences spanned from 1999 through 2005." Opposition at 7. But the SEC admits in its own Complaint, at paragraph 135, that FIN 44 was not even adopted until 2000. Complaint ¶ 135. Thus, exercises implemented in 1999 were not covered by the rule on which the SEC relies. Equally unavailing is the SEC's allegation that "false" documentation was created in mid-2001. What the SEC actually alleges is that beginning with "a grant of options in April 2001, following the implementation of FIN 44, the documentation associated with the loans was changed" to make the loans full recourse as required by FIN 44. *Id.* at ¶ 138. The SEC then claims that: "[t]his change, made by Skaer and others in late August or early September of 2001, was done to cause the loan arrangements to appear to be fully recourse and in compliance with FIN 44." *Id.* In other words, the SEC admits that the

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEF. ABRAMS' REPLY MEMORANDUM ISO MOT.TO
DISMISS & MOT. FOR MORE DEFINITE STATEMENT - 5 -
Case No. 5:07-cv-02822-JF

19994\1420722.1

documentation created in mid-2001 fully complied with FIN 44, but is complaining that the intent of "Skaer" and unidentified "others" was actually that the loans would *later* be treated as non-recourse, contrary to their plain terms. The SEC apparently bases this allegation on its claim that "[i]n practice, during 2003 and 2004" the company typically issued a bonus to employees to help them repay any interest amounts owing on their loans. Complaint ¶ 142. The SEC admits, however, that by 2003/2004 Abrams had been gone from the company for years. Complaint ¶ 12 (alleging she left Mercury as of November 2001). Nothing in any of the SEC's allegations states or even implies that Abrams knew in 2001 when post-FIN 44 loan documents were being prepared on a full recourse basis that the company would later treat the loans differently than they had been legally documented. Indeed, the only allegation providing any information concerning Abrams is contained in paragraph 137 of the complaint which states as follows:

> One indication of whether loans are recourse obligations under accounting principles is whether the loans carry a market rate of interest. Abrams communicated to employees at the time loans were provided beginning in late 1999 that the employees would not be required to pay any interest on the loans. The stock option paperwork reflected that the advances used to accomplish the exercises would be interest free.

Complaint ¶ 137. Thus, the plain allegations of SEC's complaint demonstrate that (1) any communications *by Abrams* concerning interest free loans were made in 1999, prior to the adoption of FIN 44 and (2) the paperwork used to document these pre-FIN 44 loans clearly indicated on their face that they would be interest free. These allegations clearly do not state a securities fraud claim against Abrams. The claims based on these allegations should be dismissed.

### C. The SEC's Allegations Regarding Inventory And Shipping "Backlog" (¶¶ 117-130) Do Not Satisfy Rule 9(b) Or Otherwise State A Securities Claim

As noted in Abrams' moving papers, no law or rule prevents a company – absent a misstatement to the public financial markets – from determining when to ship product and thus complete the conditions necessary to revenue recognition. Thus, most of the SEC's allegations concerning Mercury's alleged practice of delaying shipment (and thus recognition of revenue) so as to "manage" earnings is of no legal consequence whatsoever. Abrams' moving papers at 13-

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEF. ABRAMS' REPLY MEMORANDUM ISO MOT.TO
DISMISS & MOT. FOR MORE DEFINITE STATEMENT
Case No. 5:07-cv-02822-JF

- 6 -

19994\1420722.1

16. As also noted in Abrams' moving papers, the SEC has failed to allege – consistent with Rule 9(b) – any false statement made by Abrams to the public concerning Mercury's inventory backlog.

The SEC dedicates less than a paragraph of its opposition to responding to this point (Opposition at 6:16-26) and none of the allegations noted by the SEC actually supports its claims. Citing to paragraph 120 of the Complaint, the SEC states: "In connection with earnings management allegations, the Complaint details that Landan and Abrams created a secret backlog of revenue, which was recognizable at the discretion of Landan and Abrams, by directing others to hold and not ship ordered products toward the end of quarters once revenue targets had been achieved." Opposition at 6:16-19. Nowhere, however, does the SEC explain how this conduct – even if true – is unlawful. The SEC cites no authority – because there is none – for the proposition that a company is required to continue shipping products, and thus recognizing revenue on the shipped products, once its revenue targets for the quarter have been met. To the contrary, as noted in Abrams' moving papers, accounting principles prohibit the premature recognition of revenue on software that has not yet shipped, but no accounting, legal or even common sense principle dictates *when* a company must ship software to complete the revenue recognition cycle.

Nor has the SEC adequately pled any misrepresentation by Abrams concerning Mercury's backlog. Citing to paragraphs 123 and 125 of the Complaint, the SEC claims that Abrams, along with Landan, stated in one of Mercury's annual reports that Mercury's backlog "was not significant to an understanding of its business or representative of potential revenue for any future period." Opposition at 6. The SEC, however, fails to point to any allegation – containing facts consistent with Rule 9(b) – that Mercury's backlog was material to an understanding of the business taken as a whole. This omission is particularly glaring given the unqualified audit opinion that Mercury received from its outside auditors during the period in question. Moreover, the "factual" allegations asserted by the SEC to support its claim are flatly contradicted by the remaining allegations of the SEC's Complaint. Thus, in paragraph 130 of the Complaint, the SEC attempts to plead the materiality of Mercury's backlog by alleging that the "cushion of

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEF. ABRAMS' REPLY MEMORANDUM ISO MOT. TO
DISMISS & MOT. FOR MORE DEFINITE STATEMENT     - 7 -
Case No. 5:07-cv-02822-JF

19994\1420722.1

revenue" created by the backlog permitted the company to meet earnings consensus "even during periods in 1998 and 2001 when the company's actual quarterly earnings would have otherwise fallen short of projections." Complaint ¶ 130. Nothing in the SEC's Complaint supports this assertion. To the contrary, the SEC's other allegations (*e.g.*, ¶ 129) imply precisely the opposite by stating that the company increased its backlog in every year from 1998 through 2000. The SEC's claim therefore, is not based on any properly pleaded misrepresentation, but instead boils down to the unsupported assertion that a company must ship product (and then recognize revenue) as soon as it is physically able to do so. Because there is no legal basis for this claim, it should be dismissed.

## II. NOTHING IN THE SEC'S OPPOSITION SUPPORTS ITS EIGHTH CLAIM FOR RELIEF AGAINST ABRAMS FOR "FAILURE TO DEVISE AND MAINTAIN A SUFFICIENT SYSTEM OF INTERNAL ACCOUNTING CONTROLS"

In her moving papers, Abrams set forth in great detail how the SEC had failed adequately to allege a claim under Section 13(b)(2)(B) of the Exchange Act. Abrams discussed the relevant cases and noted that they do not support the notion that mis-accounting for certain transactions involving employee compensation equates to an absence of adequate internal accounting controls. Abrams' moving papers at 20-22.

In its Opposition, the SEC fails to address this argument. It merely states in conclusory fashion (as it does in its Complaint) that the defendants (collectively) "knew no internal controls were in place or they circumvented the controls to permit the conduct without recording an associated expense." Opposition at 16. Rather than address Abrams' argument, this statement by the SEC makes Abrams' point. If failing to devise and maintain a system of internal accounting controls were the same as "circumventing" controls, there would be no reason for Congress to address these violations in separate statutes. Compare 15 U.S.C. § 78m(b)(2)(B) (Exchange Act § 13(b)(2)(B)) with *id* at § 78m(b)(5) (Exchange Act § 13(b)(5)). This claim should therefore be dismissed.[2]

---

[2] Abrams also challenged the SEC's fourth claim for relief (lying to outside auditors) as being unsupported by sufficient facts under Rule 9(b). Abrams' moving papers at 18-19. Since the SEC does nothing in its Opposition other than to repeat the sparse allegations of its Complaint

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEF. ABRAMS' REPLY MEMORANDUM ISO MOT. TO
DISMISS & MOT. FOR MORE DEFINITE STATEMENT     - 8 -
Case No. 5:07-cv-02822-JF

19994\1420722.1

### III. NOTHING IN THE SEC'S OPPOSITION ADDRESSES THE FAILURE OF ITS COMPLAINT TO ALLEGE ANY FACTS DEMONSTRATING A NEED FOR INJUNCTIVE RELIEF AGAINST ABRAMS

The SEC concedes in its own Complaint that Abrams had left the company as of November 2001 (Complaint ¶ 12) and, as noted in Abrams' moving papers, provides no factual support in its Complaint for the notion that Abrams (who is nowhere alleged to be involved in any public company in any capacity) must be enjoined from future violations of the securities laws. The SEC simply ignores this argument in its Opposition. For the reasons set forth at pages 22-24 of Abrams' moving papers, the SEC's claims for injunctive relief against Abrams should be dismissed as having no basis.

### CONCLUSION

For the above-stated reasons and those set forth in Abrams' moving papers, the Court should dismiss, or require a more definite statement concerning, the SEC's fourth and eighth claims for relief against Abrams, as well as all other claims for relief against Abrams as they pertain to option exercise backdating, earnings management, European loans or injunctive relief.

Dated: January 15, 2008                    Respectfully submitted,

                                           FARELLA BRAUN + MARTEL LLP


                                           By: /s/
                                              C. Brandon Wisoff

                                           Attorneys for Defendant
                                           SHARLENE ABRAMS

(Opposition at 16:28 to 17:3), Abrams respectfully reiterates here the arguments in her moving papers at pages 18-19.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEF. ABRAMS' REPLY MEMORANDUM ISO MOT.TO
DISMISS & MOT. FOR MORE DEFINITE STATEMENT   - 9 -
Case No. 5:07-cv-02822-JF

19994\1420722.1