Jeffrey S. Facter (State Bar No. 123817)
Patrick D. Robbins (State Bar No. 152288)
Emily V. Griffen (State Bar No. 209162)
SHEARMAN & STERLING LLP
525 Market Street, Suite 1500
San Francisco, CA 94105-2723
Telephone: (415) 616-1100
Facsimile: (415) 616-1199
Email:      jfacter@shearman.com
            probbins@shearman.com
            egriffen@shearman.com

Attorneys for Defendant Douglas Smith

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No.: 5:07-C02822-JF |
| Plaintiff, | Assigned to Hon. Jeremy Fogel |
| v. | DEFENDANT DOUGLAS SMITH'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION TO DISMISS COMPLAINT PURSUANT TO F.R.C.P. 12(B)(6) AND 9(B) OR, IN THE ALTERNATIVE, TO STRIKE PURSUANT TO F.R.C.P. 12(F) |
| MERCURY INTERACTIVE, LLC (F/K/A/ MERCURY INTERACTIVE, INC.), AMNON LANDAN, SHARLENE ABRAMS, DOUGLAS SMITH and SUSAN SKAER, | |
| Defendants. | Date:       March 14, 2008 |
| | Time:       9:00 a.m. |
| | Judge:      Honorable Jeremy Fogel |
| | Courtroom:  No. 3, 5th Floor |

## TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

I.    The Claim for Forfeiture of Profits Pursuant to Section 304 of the Sarbanes-Oxley
      Act is Not Actionable Or, In the Alternative, Must Be Stricken.................................. 2

      A.    Section 304 Cannot Apply Retroactively to the Misconduct Alleged Here..................... 2

      B.    The Court Should Reject the SEC's Attempt to Rewrite the Language of
            Section 304 to Delete the "First Public Issuance or Filing" Limitation ........................... 3

      C.    The Rule of Lenity Requires that any Ambiguities in Section 304 be
            Resolved in Favor of Mr. Smith ..................................................................................... 5

II.   The Entire Complaint Engages in Shotgun Pleading, and Thus Violates Rule
      9(b)'s Particularity Requirement for Pleadings Grounded in Fraud ......................... 6

III.  The Claims Based on "Scheme" Liability and Section 13(b) Must Be Dismissed
      as Time-Barred by 28 U.S.C. § 2462 ........................................................................ 7

IV.   The Aiding and Abetting Claims Must Be Dismissed for Failure to Plead with
      Particularity What Conduct by Smith Constituted Aiding and Abetting With
      Requisite State of Mind............................................................................................ 12

V.    The Section 16(a) and Rule 16a-3 Claim Must be Dismissed for Failure to Plead
      with Particularity Mr. Smith's Failure to File Any Specific Form ......................... 13

VI.   The Section 14(a) and Rule 14a-9 Claim Must Be Dismissed for Failure to Plead
      with Particularity Any Specific Proxy Statement, or Any Particular Statement
      Made Therein That Was Materially False or Misleading.......................................... 14

CONCLUSION ......................................................................................................................... 15

1

# TABLE OF AUTHORITIES

Page

2                                    Cases

3   Apace Commc'ns, Ltd. v. Burke, No. 07-CV-6151L, 2007 WL 4125232
    (W.D.N.Y. Nov. 16, 2007) ...................................................................................... 7

4
    Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007) ....................................... 7
5
    Boise Cascade Corp. v. EPA, 942 F.2d 1427 (9th Cir. 1991) ............................... 4
6
    Conmar Corp. v. Mitsui & Co. (U.S.A.), 858 F.2d 499 (9th Cir. 1988) .............. 11, 12
7
    County of Suffolk, N.Y. v. First Am. Real Estate Solutions, 261 F.3d 179 (2d Cir. 2001) ........... 5
8
    Dell, Inc. v. This Old Store, Inc., No. H-07-0561, 2007 WL 1958609
9   (S.D. Tex. July 2, 2007) ......................................................................................... 7

10  Desimone v. Barrows, 924 A.2d 908 (Del. Ch. 2007) ........................................... 10

11  Elster v. Am. Airlines, Inc., 100 A.2d 219 (Del. Ch. 1953) ................................... 11

12  Fed. Election Comm'n v. Arlen Specter '96, 150 F. Supp. 2d 797 (E.D. Pa. 2001) .................... 5

13  Fed. Election Comm'n v. Williams, 104 F.3d 237 (9th Cir. 1996) ........................ 8, 9, 12

14  GAF Corp. v. Milstein, 453 F.2d 709 (2d Cir. 1971) ............................................ 13

15  In re AFC Enters., Inc. Deriv. Litig., 224 F.R.D. 515 (N.D. Ga. 2004) ............... 2

16  In re Affiliated Computer Servs. Deriv. Litig., No. 3:06-CV-1110-M, 2007 WL 4440920
17  (N.D. Tex. Dec. 13, 2007) ...................................................................................... 9

18  In re Apple Computer, Inc. Deriv. Litig., No. C 06-4128 JF, 2007 WL 4170566
    (N.D. Cal. Nov. 19, 2007) ...................................................................................... 10

19  In re Computer Scis. Corp. Deriv. Litig., 244 F.R.D. 580 (C.D. Cal. 2007) ........ 10

20  In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541 (9th Cir. 1994) ............................... 6

21  In re Goodyear Tire & Rubber Co. Deriv. Litig., No. 5:03CV2180, 2007 WL 43557
22  (N.D. Ohio Jan. 5, 2007) ........................................................................................ 2

23  In re iBasis, Inc. Deriv. Litig., No. 06-12276-DPW, 2007 WL 4287591
    (D. Mass. Dec. 4, 2007) .......................................................................................... 9

24  In re Maxim Integrated Prods., Inc., No. C06-0334JW, 2007 WL 2745805
25  (N.D. Cal. July 25, 2007) ........................................................................................ 9

26  In re Metro. Sec. Litig., No. CV-04-0025-FVS, 2007 WL 3274893
    (E.D. Wash. Nov. 5, 2007) ...................................................................................... 6

27  In re Zoran Corp. Deriv. Litig., 511 F. Supp. 2d 986 (N.D. Cal. 2007) ............... 9, 10

28  Landgraf v. USI Film Products, 511 U.S. 244 (1994) ........................................... 2

Cases (cont.)

Mehlenbacher v. Jitaru, No. 6:04CV1118ORL-22KRS, 2005 WL 4585859
(M.D. Fla. June 6, 2005) ............................................................................................ 6

OBG Technical Servs., Inc. v. Northrup Grumman Space & Mission Sys. Corp., 503 F.
Supp. 2d 490 (D. Conn. 2007) .................................................................................... 7

Resident Councils of Wash. v. Leavitt, 500 F.3d 1025 (9th Cir. 2007).......................... 3

Ryan v. Gifford, 935 A.2d 258 (Del. Ch. 2007) ........................................................... 11

Santa Maria v. Pac. Bell, 202 F.3d 1170 (9th Cir. 2000)............................................ 11

SEC v. Falstaff Brewing Corp., 629 F.2d 62 (D.C. Cir. 1980) .................................... 15

SEC v. Fehn, 97 F.3d 1276 (9th Cir. 1996) ................................................................. 13

SEC v. First Cal. Capital Mkts. Group, No. C-97-02761-CRB (N.D. Cal. July 30, 1998) ........... 8

SEC v. Levy, 706 F. Supp. 61 (D.D.C. 1989) ............................................................... 15

SEC v. Lucent Techs., 363 F. Supp. 2d 708 (D.N.J. 2005)..................................... 12, 13

SEC v. Richie, No. EDCV 06-63-VAP, slip. op. (C.D. Cal. May 9, 2006).......... 11, 12

SEC v. Rind, 991 F.2d 1486 (9th Cir. 1993)................................................................... 8

Stoll v. Ardizzone, No. 07 Civ. 00608 (CM), 2007 WL 2982250 (S.D.N.Y. Oct. 9, 2007)........... 9

TSC Indus. v. Northway, Inc., 426 U.S. 438 (1976)..................................................... 15

United States v. Berger, 473 F.3d 1080 (9th Cir. 2007) .............................................. 14

United States v. Bilzerian, 926 F.2d 1285 (2d Cir. 1991)............................................ 15

United States v. Campbell Soup Co., No. CIV-S-95-1854 DFL, 1997 WL 258894
(E.D. Cal. Mar. 11, 1997)......................................................................................... 8, 9

United States v. One 1973 Rolls Royce, V.I.N. SRH-16266, 43 F.3d 794 (3d Cir. 1994)............. 5

United States v. Robertson, 73 F.3d 249 (9th Cir. 1996) ............................................... 3

United States ex rel. Hyatt v. Northrop Corp., 91 F.3d 1211 (9th Cir. 1996)............... 12

Wilson v. Great Am. Indus., 855 F.2d 987 (2d Cir. 1988)........................................... 14

Statutes

15 U.S.C. § 7243(a)(1), Sarbanes-Oxley Act Section 304.................................... passim

28 U.S.C. § 1658 ............................................................................................................ 4

28 U.S.C. § 2462 .................................................................................................. passim

1

<u>Rules</u>

2

Fed. R. Civ. P. 8(a) ................................................................................................................. 7

3

Fed. R. Civ. P. 9(b) ........................................................................................................ passim

4

5

<u>Miscellaneous</u>

6

<u>H.R. 3762 – The Corporate and Auditing Accountability, and Transparency Act of 2002:
Hearing Before the H. Comm'n on Fin. Servs.</u>, 107th Cong. (Mar. 20, 2002) (remarks by
Harvey L. Pitt, SEC Chairman) ................................................................................................. 3

7

8

James E. Johnson, "Disgorgement of Executive Compensation," 865 PLI/Comm 149
(2004) .......................................................................................................................................... 6

9

Marleen A. O'Connor, <u>Toward a More Efficient Deterrence of Insider Trading: The
Repeal of Section 16(b)</u>, 58 Fordham L. Rev. 309 (1989) ........................................................ 14

10

11

Steve Thel, <u>The Genius of Section 16: Regulating the Management of Publicly Held
Companies</u>, 42 Hastings L.J. 391 (1991) ................................................................................. 14

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INTRODUCTION

This motion raises a serious due process question arising from the SEC's effort to apply a relatively new and unusually harsh civil penalty -- Sarbanes-Oxley Act ("SOX") Section 304's forfeiture provision -- retroactively and beyond the statute's plain limitations. Section 304 penalizes corporate misconduct that leads to a restatement. The alleged misconduct leading to a restatement here ended before SOX was enacted in July 2002. To apply the statute against Mr. Smith is to exact a retroactive penalty for acts prior to that date. The cases addressing this issue, which the SEC ignores or misstates, uniformly examine the date of the alleged <u>misconduct</u> -- not the financial statements requiring restatement -- and ask whether that misconduct pre-dates or post-dates SOX. If it precedes the statute, forfeiture is foreclosed. By its plain terms, Section 304 also measures forfeiture for one year from the <u>first</u> SEC filing containing the accounting error stemming from the misconduct. The SEC's Complaint fails to identify such a filing. For both of these reasons, the Court should hold that Section 304 is inapplicable to Mr. Smith.

This case also presents a prime example of why claims of fraud must be pled with particularity. The SEC alleges a nine-year scheme of stock option backdating and related false statements arising out of 45 allegedly backdated stock option grants. By the SEC's own account, Mr. Smith did not become CFO of Mercury until the end of November 2001, mere months before the backdating at Mercury ended, and was involved only in the very last two of those grants. Given these undisputed facts, a meaningful application of Rule 9(b) -- requiring the SEC to plead Mr. Smith's particular role in the alleged "scheme" and to provide specificity about what fraudulent conduct and/or statements he is being accused of -- is essential. The SEC has opted not to provide the requisite particularity about each alleged false or misleading statement, nor does it identify what <u>specific conduct by Mr. Smith</u> forms the basis for its undifferentiated fraud claims.

Because the accusations of fraud being made, as well as the possible sanctions that could be levied, are severe, fundamental fairness requires the Court's close scrutiny of the adequacy of the Complaint's allegations in support of each claim for relief against Mr. Smith. Such scrutiny reveals not only an utter lack of particularity in the Complaint's allegations, but failure to state a claim with respect to certain Claims for Relief, and the time-barred nature of certain others.

ARGUMENT

I.  The Claim for Forfeiture of Profits Pursuant
    to Section 304 of the Sarbanes-Oxley Act is Not
    Actionable Or, In the Alternative, Must Be Stricken

    A.    Section 304 Cannot Apply Retroactively
          to the Misconduct Alleged Here

Mr. Smith established in his opening brief that Section 304 cannot apply retroactively to the misconduct alleged in the SEC's Complaint.  See Op. Mem. at 4-7.  The SEC responds by asserting that Section 304 only attaches new legal consequences (forfeiture of bonuses and stock profits by CEOs and CFOs) to the filing of false financial documents tainted by misconduct, and not to the misconduct itself, and is thus not being applied retroactively.  See Opp. at 11-12.  This argument has no basis in the authority that has interpreted Section 304.

A statute has retroactive effect when it gives "a quality or effect to acts or conduct which they did not have or did not contemplate when they were performed."  Landgraf v. USI Film Products, 511 U.S. 244, 268 n.23 (1994) (citing Union Pac. R.R. Co. v. Laramie Stock Yards, Co., 231 U.S. 190, 199 (1913)).  Application of Section 304 here would retroactively give a new "quality or effect" to alleged misconduct that occurred prior to its enactment.

Every case examining the retroactive application of Section 304 focuses on when the "misconduct" occurred, not when the corporation made the false financial disclosures that were later restated.  The only case cited by the SEC on this point actually supports Mr. Smith's position, as it addresses the same fact pattern at issue here.  In In re AFC Enterprises, Inc. Derivative Litigation, 224 F.R.D. 515 (N.D. Ga. 2004), AFC made an allegedly false and misleading financial disclosure, arising out of alleged misconduct, in its quarterly financial results for October 2002, *after* the July 30, 2002 adoption of SOX.  Id. at 517.  The timing of this filing did not even enter the Court's analysis, as it opined that "[t]he plain language of the statute indicates that *the purpose of the Act is to punish 'misconduct,'*" and that there was no indication that "Sarbanes-Oxley was intended to have retroactive application to *misconduct which occurred before its effective date*."  Id. at 521 (emphasis added); see also In re Goodyear Tire & Rubber Co. Deriv. Litig., No. 5:03CV2180, 2007 WL 43557, at *1, 8 (N.D. Ohio Jan. 5, 2007) (restated financial

1   documents filed in "first two quarters of 2003" but Section 304 "would not apply to the vast

2   majority of the alleged *wrongful conduct* . . . because that alleged *conduct* took place prior to the

3   statute's enactment in July 2002") (emphasis added).  In fact, the Chairman of the SEC at the time

4   of SOX's enactment, Harvey L. Pitt, testified before Congress that the legal consequence of

5   forfeiture of bonuses and stock profits should be a sanction for "misconduct."[1/]

6          Thus, it is the underlying misconduct itself, not solely the filing of false financial

7   statements tainted by that misconduct, which Section 304 seeks to punish.  Both a false financial

8   filing *and* underlying misconduct are required elements to state a Section 304 claim, so the new

9   legal consequences of the Section 304 forfeiture penalty attach to both.[2/]

10         B.     The Court Should Reject the SEC's Attempt to
                  Rewrite the Language of Section 304 to Delete
11                the "First Public Issuance or Filing" Limitation

12         Even if the SEC were not asking the Court to apply Section 304 retroactively to conduct

13  occurring prior to its effective date, the claim cannot stand because none of the false filings

14  alleged in the Complaint qualifies as a "*first* public issuance or filing . . . of the financial document

15  embodying such financial reporting requirement."  15 U.S.C. § 7243(a)(1) (emphasis added).  The

16  SEC seeks to rewrite the language of Section 304 to replace the word "first" with "each" or

17  "every" in order to support an extremely broad remedy entitling it to recover "bonuses earned or

18  issuer securities sold during the twelve month period following the first public issuance of *each*

19  statement" affected by the fraud.  Opp. at 13 (emphasis added).  It is the duty of the Court to

20  interpret the statute as written, not as the SEC wishes it were written.  See <u>Resident Councils of</u>

21

---

22  [1/]  See <u>H.R. 3762 – The Corporate and Auditing Accountability, and Transparency Act of 2002:
         Hearing Before the H. Comm'n on Fin. Servs.</u>, 107th Cong. (Mar. 20, 2002) (remarks by
23       Harvey L. Pitt, SEC Chairman) ("Just last week, we brought a case . . . in which we have
         sought to have a former CEO of a public company *disgorge his compensation in stock options*
24       *and bonuses* . . . .  I believe that the Commission has to be much more aggressive in *targeting*
         *misconduct*.  And *where serious misconduct has occurred, I think one incentive or sanction*
25       *has to be removing any benefits* . . . .") (emphasis added).

26  [2/]  In the analogous context of the retroactivity of criminal statutes and sentencing guidelines, the
         Ninth Circuit has stated unequivocally that "the Government has to show that a complete
27       offense could be charged based on conduct occurring after [enactment], in order to avoid an *ex
         post facto* problem . . . ."  <u>United States v. Robertson</u>, 73 F.3d 249, 252 (9th Cir. 1996).  Here,
28       the SEC cannot charge a complete Section 304 offense if it relies (as it must) solely upon
         conduct occurring after SOX's enactment.

---

DEFENDANT DOUGLAS SMITH'S          3          CASE NO. 5:07-C02822-JF
REPLY MEM. I/S/O MOT. TO DISMISS                            270980

1   <u>Wash. v. Leavitt</u>, 500 F.3d 1025, 1031 (9th Cir. 2007) (in conducting a statutory analysis, a court

2   "may not rewrite a statute, but instead [must] simply 'construe what Congress has written. . . .'").

3   An interpretation of Section 304 that would omit the word "first" in this way cannot be endorsed.

4   <u>See Boise Cascade Corp. v. EPA</u>, 942 F.2d 1427, 1432 (9th Cir. 1991) ("Under accepted canons

5   of statutory interpretation, we must interpret statutes as a whole, giving effect to each word.").[3/]

6          The SEC justifies its interpretation by arguing that "the financial impact of the misconduct

7   is not limited to the very first financial statement following the fraud . . . ." Opp. at 13.  Nowhere

8   does Section 304 mention continuing "financial impact" of an error; it is only concerned with the

9   <u>first</u> "financial document embodying such financial reporting requirement," in other words, the

10  first financial document that contains the error in financial reporting (here, failure to take a

11  compensation expense for backdated stock options).  For each allegedly backdated stock option,

12  there is one financial statement that meets the definition as the "first public issuance or filing"

13  embodying the failure to take a compensation expense as required.  Though later financial

14  statements (including those alleged by the SEC) may also be restated to amortize that

15  compensation expense over the life of the option, Congress did not extend Section 304's forfeiture

16  penalty to those later filings, as none of them qualifies as the "first" one containing the financial

17  reporting error.  This interpretation makes sense, as it gives meaning to the word "first" and thus

18  prohibits forfeiture of several years' worth of compensation due to the continuing consequences of

19  a single accounting error that infects several periods of financial statements.

20         None of the Forms 10-Q or 10-K alleged by the SEC as the basis for its Section 304 claim

---

[3/]  Responding to Mr. Smith's statute of limitations argument, the SEC also asks this Court to read the phrase "is required to prepare" a restatement out of the statute and replace it with "actually makes" a restatement.  <u>See</u> Opp. at 14.  A restatement is "required" when a company discovers that previously provided financial statements contain materially inaccurate information.  <u>See</u> Financial Accounting Series ("FAS") No. 154 (restatement required when errors in financial statements "discovered").  The SEC repeatedly alleges in its Complaint that Mr. Smith and Mercury knew of and concealed the material accounting consequences of their fraud in inaccurate financial statements.  <u>See e.g.</u> ¶ 1.  Since Mercury allegedly knew of the accounting improprieties, it "discovered" and was thus "required to prepare" a restatement the moment it filed each materially inaccurate financial statement.  Accordingly, the SEC's Section 304 claim accrued for purposes of the four-year statute of limitations on the date of each financial statement alleged to violate Section 304, <u>not</u> when the restatement was made on July 3, 2006, as the SEC argues.  <u>See</u> Opp. at 14.  The applicable statute of limitations, 28 U.S.C. § 1658, thus bars a Section 304 claim for all financial statements filed more than four years prior to the date of the Complaint, May 31, 2007.

1  (starting with Mercury's November 12, 2002 10-Q for the third quarter of 2002) is a "**first** public

2  issuance or filing," as explained in Mr. Smith's opening brief.  See Op. Mem. at 8-9.  The August

3  13, 2002 10-Q, which was not certified by Mr. Smith pursuant to Section 302 because the

4  certification requirement had not yet been instituted at that time, is not even alleged by the SEC as

5  a basis for its Section 304 claim.[4/]  Opp. at 11-12.  Thus, none of the financial statements alleged

6  by the SEC qualify as the "first public issuance or filing with the Commission," and therefore

7  none of them can support Section 304 forfeiture of bonuses or stock profits.[5/]

8       C.    The Rule of Lenity Requires that any Ambiguities
9            in Section 304 be Resolved in Favor of Mr. Smith

10       "Due process requires that before a criminal sanction or significant civil or administrative

11  penalty attaches, an individual must have fair warning of the conduct prohibited by the statute or

12  the regulation that makes such a sanction possible."  County of Suffolk, N.Y. v. First Am. Real

13  Estate Solutions, 261 F.3d 179, 195 (2d Cir. 2001).  The rule of lenity is a canon of statutory

14  construction that arises out of this general principle of due process.  The rule of lenity "requires

15  that ambiguities in a criminal or punitive statute be resolved in favor of the defendants."  Fed.

16  Election Comm'n v. Arlen Specter '96, 150 F. Supp. 2d 797, 812 (E.D. Pa. 2001).  The rule of

17  lenity applies to civil forfeiture statutes that are punitive in nature.  See United States v. One 1973

18  Rolls Royce, V.I.N. SRH-16266, 43 F.3d 794, 801 (3d Cir. 1994).

19

20  [4/]  According to the SEC, Section 304 operates in tandem with Section 302 by punishing CEOs
     and CFOs who certify a false financial filing pursuant to Section 302.  See Opp. at 11-12.  As
21   a result, the SEC cannot amend to allege a "first" false filing that would trigger forfeiture,
     because the only possible such "first" filing after the effective date of SOX is the August 13,
22   2002 Form 10-Q.  Mr. Smith did not, however, certify the August 13, 2002 Form 10-Q
     pursuant to Section 302 because certification was not required under that Section until August
23   29, 2002.  See SEC Release No. 33-8124 (stating effective date of Rule 13a-14 implementing
     Section 302 is August 29, 2002).

24  [5/]  Mr. Smith is not taking the position that there is only a single financial statement filed by
     Mercury that meets the requirements of Section 304.  Instead, Mr. Smith's view, supported by
25   the plain language of Section 304, is that for each allegedly backdated stock option grant, there
     is a "first" public filing of a financial statement in which a compensation expense failed to be
26   taken by Mercury for that grant, allegedly violating a financial reporting requirement (APB
     No. 25).  Each and every one of those "first" financial statements was issued prior to the
27   effective date of SOX and therefore cannot possibly be subject to Section 304 (except for the
     August 13, 2002 Form 10-Q for the second quarter of 2002, which was the financial statement
28   that, according to the SEC's own allegations, should have recorded an expense for the very last
     allegedly backdated grant, but which was not certified by Mr. Smith pursuant to Section 302).

1    The SEC seeks a multi-million dollar civil penalty from Mr. Smith through a statute that,

2   in the SEC's view, requires no culpable conduct whatsoever on his part.  Opp. at 12-13.  It is self-

3   evident that Section 304 is punitive.  While Mr. Smith believes that his interpretation of Section

4   304 is correct, if the Court were to conclude otherwise, it could do so only by resolving arguable

5   ambiguities in the terms of Section 304 in favor of the SEC.  Cf. Mehlenbacher v. Jitaru, No.

6   6:04CV1118ORL-22KRS, 2005 WL 4585859, at *9 (M.D. Fla. June 6, 2005) ("[Section] 304 is

7   not a model of clarity."); James E. Johnson, "Disgorgement of Executive Compensation," 865

8   PLI/Comm 149, 156 (2004) ("[Section 304] contains a number of significant ambiguities that the

9   legislative history does little to resolve.").  That would contravene the rule of lenity.  The rule of

10  lenity requires that this Court construe any arguable ambiguities that may exist in Section 304 --

11  including (i) the definition of "first public issuance or filing" and (ii) whether Section 304 attaches

12  new consequences to misconduct occurring prior to its enactment or just to the filing of financial

13  statements materially affected by that misconduct -- in Mr. Smith's favor.

14  II.    The Entire Complaint Engages in Shotgun Pleading,
            and Thus Violates Rule 9(b)'s Particularity
15          Requirement for Pleadings Grounded in Fraud

16      The SEC's only response to Mr. Smith's contention that the Complaint improperly engages

17  in "shotgun pleading" is to summarily declare that the Complaint adequately lays out the factual

18  allegations therein.  This conclusory response, like the Complaint itself, is inadequate.  The

19  Complaint's shotgun-style pleading leaves Mr. Smith to puzzle over which prior paragraphs

20  support the elements of each claim, and what conduct alleged in the first 144 paragraphs the SEC

21  intends to use as the basis for each claim.  A complaint is not a puzzle, however, and the court

22  should be "loathe to allow plaintiffs to tax defendants, against whom they have levelled very

23  serious charges, with the burden of solving puzzles in addition to the burden of formulating an

24  answer to their complaint."  In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1554 (9th Cir. 1994).[6]

25      Moreover, the Supreme Court's recent decision in Bell Atlantic Corp. v. Twombly has

26  _____
    [6]   See also In re Metro. Sec. Litig., No. CV-04-0025-FVS, 2007 WL 3274893, at *10 (E.D.
27        Wash. Nov. 5, 2007) ("A complaint is deficient for the purposes of Rule 9(b) when it relies on
          'shotgun' or 'puzzle' pleading.  Shotgun pleadings are those that incorporate every antecedent
28        allegation by reference into each subsequent claim for relief or affirmative defense.")
          (quotations and citations omitted).

DEFENDANT DOUGLAS SMITH'S                         6         CASE NO. 5:07-C02822-JF
REPLY MEM. I/S/O MOT. TO DISMISS                                         270980

1  made it manifestly clear that even under Rule 8(a)'s notice pleading standard, simply listing the

2  elements of a claim for relief does not suffice, as "a plaintiff's obligation to provide the 'grounds'

3  of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation

4  of the elements of a cause of action will not do . . . ." 127 S. Ct. 1955, 1964-65 (2007). If a

5  fundamental level of specificity is required under Rule 8(a)'s relatively permissive standard, then

6  shotgun pleading cannot survive Rule 9(b)'s heightened pleading requirement for fraud.[7]

7        It would be particularly unfair to Mr. Smith to allow the SEC's shotgun-style pleading to

8  go forward in this case. The Complaint purports to outline an ongoing fraudulent scheme that

9  took place over nine years, yet Mr. Smith is alleged to have been involved for the last *two* of the

10 45 allegedly backdated option grants three months before the practice ceased altogether. The

11 Complaint nevertheless makes no effort to specify which particular factual allegations are the

12 basis for each claim for relief against Mr. Smith. These shotgun pleadings in no way provide Mr.

13 Smith with fair notice of the basis for the claims made against him. See id. at 1964.

14        The SEC's allegations also do not satisfy Rule 9(b)'s particularity requirements because

15 the Complaint does not state how the backdating of each of the two option grants in which Mr.

16 Smith was allegedly involved caused Mercury's financial statements to be materially false or

17 misleading. Absent this level of particularity with respect to how Mr. Smith's conduct in

18 particular caused a *materially* false or misleading statement, no securities fraud claim is

19 adequately pled. See Op. Mem. at 13-14 (citing cases).

20 III.    The Claims Based on "Scheme" Liability and Section 13(b)
             Must Be Dismissed as Time-Barred by 28 U.S.C. § 2462

21

22        None of the SEC's arguments to avoid application of 28 U.S.C. § 2462's five-year statute

23 ─────────────────────

[7] Indeed, since the Supreme Court's decision in Twombly, district courts in various jurisdictions
24 have applied Twombly to interpret the heightened requirements of Rule 9(b). "Because the
   requirements of Rule 9 are more stringent than those for Rule 8, the Supreme Court's decision
25 in Twombly applies with at least equal force to the Rule 9 pleading requirements." Dell, Inc. v.
   This Old Store, Inc., No. H-07-0561, 2007 WL 1958609, at *2 (S.D. Tex. July 2, 2007). See
26 also Apace Commc'ns, Ltd. v. Burke, No. 07-CV-6151L, 2007 WL 4125232, at *5 (W.D.N.Y.
   Nov. 16, 2007) ("Even prior to Twombly, fraud claims were subject to the heightened pleading
27 standard of Rule 9(b) . . . . Twombly, however, reinforces the principle that it is not enough
   for a plaintiff simply to allege, in broad, conclusory terms, some claim to relief."); OBG
28 Technical Servs., Inc. v. Northrup Grumman Space & Mission Sys. Corp., 503 F. Supp. 2d
   490, 508 (D. Conn. 2007) (citing Twombly in holding Rule 9(b) not satisfied).

─────────────────────

1   of limitations -- relating to the SEC's "fraudulent scheme" and Section 13(b) claims -- has merit.

2   First, the SEC's reliance on <u>SEC v. Rind</u>, 991 F.2d 1486 (9th Cir. 1993) is misplaced.  Neither the

3   Ninth Circuit nor the district court in <u>Rind</u> was ever presented with the question whether Section

4   2462's five-year statute of limitations applied in that case.  The only statute of limitations argued

5   in <u>Rind</u> was <u>Lampf's</u> one-year/three-year statute of limitations for private actions.  <u>See</u> <u>id</u>. at 1488-

6   89.  Therefore, <u>Rind's</u> holding that no statute of limitations applies to SEC enforcement actions

7   seeking equitable relief must be limited to its particular context; it is undeniable that the plain

8   language of Section 2462 applies to actions by the SEC.  The SEC concedes as much when it

9   notes only that the Ninth Circuit in <u>Rind</u> "has held that there is no ***implied*** statute of limitations

10  applicable to SEC actions seeking equitable remedies such as an injunction or disgorgement."

11  Opp. at 19 (emphasis added).  Mr. Smith is not arguing that an "implied" statute of limitations

12  applies to this action.  Mr. Smith relies solely on Section 2462, an express statute of limitations.

13      <u>Second</u>, the Ninth Circuit's more recent ruling in <u>Federal Election Commission v.</u>

14  <u>Williams</u>, 104 F.3d 237 (9th Cir. 1996) is controlling here.  In <u>Williams</u>, the Ninth Circuit

15  extended the concurrent remedy rule to an action by a federal agency just like the present one,

16  holding that "because the claim for injunctive relief is connected to the claim for legal relief, the

17  statute of limitations [Section 2462] applies to both."  <u>Id</u>. at 240.  The SEC claims that the holding

18  in <u>Williams</u> is "contrary to the traditional rule that 'an action on behalf of the United States in its

19  governmental capacity . . . is subject to no time limitation, in the absence of congressional

20  enactment clearly imposing it.'"  Opp. at 20 (citing cases).  Here, there is a congressional

21  enactment, Section 2462, expressly imposing a time limitation on governmental actions.  <u>Williams</u>

22  simply applied the concurrent remedy rule to that express statutory authority.  The SEC suggests

23  that the reasoning of <u>Williams</u> is merely persuasive and can be rejected.  But the Ninth Circuit's

24  opinion is binding on this Court.  Moreover, the SEC's primary attack on <u>Williams</u> is to cite the

25  Ninth Circuit's *earlier* holding in <u>Rind</u>, in which Section 2462 was not at issue.[8/]

---

26  [8/]   The cases relied upon by the SEC for rejecting <u>Williams</u> are not convincing.  The first, <u>SEC v.</u>
       <u>First California Capital Markets Group</u>, No. C-97-02761-CRB, slip. op. at 4-5 (N.D. Cal. July

27     30, 1998), chose to follow <u>Rind</u> (which as noted does not address Section 2462) instead of
       <u>Williams</u> because "<u>Rind</u> involved an SEC enforcement action . . . , whereas <u>Williams</u> was

28     brought by the FEC," a distinction without any substantive difference.  The second, <u>United</u>

---

1    The SEC also argues that cases applying the concurrent remedy rule only bar claims for

2    injunctive relief "when the substance of the claim is truly one governed by a statute of

3    limitations."  Opp. at 20.  There can be no question that the SEC's legal claims for civil penalties

4    are governed by Section 2462 (the SEC concedes as much), and there is no difference in the

5    "substance of the claim" upon which the legal and equitable remedies are sought.  There is no

6    basis for ignoring <u>Williams'</u> binding authority and refusing to apply the concurrent remedy rule.

7        <u>Third</u>, the SEC is incorrect that the "continuing violation" or "continuing wrong" doctrine

8    applies to permit recovery for violations based on backdating conduct otherwise outside the statute

9    of limitations.  None of the cases cited by the SEC (most of which are from other Circuits) is (or is

10   like) a stock option backdating case.  It appears that every backdating case to address the

11   continuing violation doctrine has rejected it, holding that a claim based on the act of backdating

12   accrues at the time of the backdated grant.[9/]  The SEC's generalized attempt to plead a "fraudulent

13   scheme" or concealment of the scheme does not save the SEC's time-barred claims.  <u>See</u> <u>e.g.</u>, <u>In re</u>

14   <u>Zoran Corp. Deriv. Litig.</u>, 511 F. Supp. 2d 986, 1014 (N.D. Cal. 2007) (rejecting argument that

15   "the statute of limitations for the entire scheme should be tolled from the last misleading

16   statement"); <u>In re Maxim Integrated Prods., Inc.</u>, No. C06-0334JW, 2007 WL 2745805, at *4

17   (N.D. Cal. July 25, 2007) ("none of Plaintiffs' cited cases go so far as to construe concealment of a

18
_____

19   States v. Campbell Soup Co., No. CIV-S-95-1854 DFL, 1997 WL 258894, at *3 (E.D. Cal.
     Mar. 11, 1997), never cited <u>Williams</u>.  Moreover, its holding was guided in large part by the
     "particular statutory language at issue" in the Clean Water Act.  <u>Id.</u>

20   [9/]  <u>See</u> <u>In re Affiliated Computer Servs. Deriv. Litig.</u>, No. 3:06-CV-1110-M, 2007 WL 4440920,
     at *3 (N.D. Tex. Dec. 13, 2007) ("A claim under § 10(b) that is based upon the backdating

21   itself accrues on the date the option grant was made.  <u>In re Ditech Networks, Inc. Derivative
     Litig.</u>, 2007 WL 2070300, *7 (N.D. Cal. July 16, 2007).  The Court rejects Plaintiffs' argument

22   that the 'continuing wrong' theory applies to toll limitations and repose until the last alleged
     misrepresentation was made."); <u>In re iBasis, Inc. Deriv. Litig.</u>, No. 06-12276-DPW, 2007 WL

23   4287591, at *6 (D. Mass. Dec. 4, 2007) ("Recent cases addressing allegations of stock option
     grant date manipulation under Section 14(a) have disavowed the broad fraudulent scheme

24   approach and instead required that the initial misstatement regarding option dating fall within
     the statute of repose period.") (citing cases); <u>Stoll v. Ardizzone</u>, No. 07 Civ. 00608 (CM),

25   2007 WL 2982250, at *2 (S.D.N.Y. Oct. 9, 2007) ("Pleading the existence of a 'scheme' does
     not resurrect stale claims relating to proxy statements that are more than three years old at the

26   time an action is filed; there is no 'continuing violations' exception to the absolute bar of the
     statutory limitations period.'"); <u>In re Zoran Corp. Deriv. Litig.</u>, 511 F. Supp. 2d 986, 1009,

27   1014 (N.D. Cal. 2007) (holding that "each grant of backdated stock options was an integrated
     transaction unto itself" such that "the statute of limitations accrues as of when the violation

28   itself occurs, not when the last violation in a series of alleged violations occur").

_____

DEFENDANT DOUGLAS SMITH'S            9            CASE NO. 5:07-C02822-JF
REPLY MEM. I/S/O MOT. TO DISMISS                              270980

1    wrongful act as a continuing wrong").

2         In fact, this Court very recently in <u>In re Apple Computer, Inc., Derivative Litigation</u>

3    rejected a very similar argument made by the derivative plaintiffs there, holding:  "Plaintiffs may

4    not avoid the effect of the statute of limitations by combining allegations of recent financial

5    statements and time-barred option backdating.  Because the claim under section 10(b) as currently

6    pled depends upon such a combination, it will be dismissed."  No. C 06-4128 JF, 2007 WL

7    4170566, at *5 (N.D. Cal. Nov. 19, 2007).  The Court explained its reasoning as follows:

8              Plaintiffs also allege that Apple filed a series of false financial
               statements during the five-year period of repose, raising a question
9              as to whether the filing of such subsequent false financial
               statements preserves claims for alleged options manipulation that
10             occurred outside the period.  The Court concludes that in light of
               the statute's focus on the date of the "violation," the statute of
11             limitations must be applied to the specific violations alleged.  To
               the extent that Plaintiffs' claim is based on the backdating itself,
12             the period of repose began to run on the date that the option grant
               was made.  Plaintiffs may be able to state a claim under Section
13             10(b) and Rule 10(b)(5) for dissemination of fraudulent financial
               statements, but the dates of such statements themselves must fall
14             within the five-year period.

15   <u>Id</u>. (citations omitted).  In a footnote, the Court further noted that "[t]he Court is skeptical of a

16   continuing wrong theory that would create liability under Section 10(b) upon the issuance of a

17   financial statement that merely fails to correct a prior false statement."  <u>Id</u>. at *5 n.8.[10]  Therefore,

18   while the SEC has alleged claims for false financial statements within the statute of limitations,

19   those claims do not resurrect time-barred claims related to backdating that occurred outside the

20

21   _____
     [10] The same result has been reached in derivative cases in which the plaintiffs attempt to create
22   standing to sue for backdating occurring before they were shareholders on the basis of the
     continuing wrong doctrine.  <u>See</u> <u>In re Computer Scis. Corp. Deriv. Litig.</u>, 244 F.R.D. 580, 587
23   (C.D. Cal. 2007) ("[P]laintiffs cannot use a 'continuing wrong' exception to assert standing
     over claims based on option grants occurring before they became shareholders.") (citing
24   cases); <u>Desimone v. Barrows</u>, 924 A.2d 908, 913, 925 n.39, 926 (Del. Ch. 2007) ("Desimone
     alleges that he is attacking a pattern of "continuing wrongs."  That argument, though, is belied
25   by the fact that the complaint actually challenges a number of discrete stock option grants --
     transactions that were completed the moment the grants were issued. . . .  [T]he well-accepted
26   rule in the statute of limitations context is that the statute of limitations for each discrete
     wrongful transaction begins to run upon the occurrence of each transaction, and a plaintiff can
27   only challenge those transactions, or other wrongful acts, that occurred within the limitations
     period. . . .  [T]hat there was a restatement of operating results issued during the period when
28   Desimone was a stockholder related to options grants occurring before his purchase of shares
     does not puree the prior grants into an undifferentiated bisque of 'continuing wrongs.'").

---

1   statute of limitations.[11/]

2       The SEC similarly asserts that "[w]here at least some of the alleged conduct is within the

3   period of limitations, a Court should not bar the claim on a motion to dismiss." Opp. at 22. This

4   is a red herring. The case relied upon by the SEC for this assertion is distinguishable, as the

5   conduct giving rise to the claims at issue there occurred both outside and within the statute of

6   limitations. See SEC v. Richie, No. EDCV 06-63-VAP, slip. op. at 33 (C.D. Cal. May 9, 2006)

7   ("a portion of the alleged wrongful conduct occurred within the limitations period"). Mr. Smith is

8   only seeking dismissal of those claims that are based *solely* on conduct that *only* occurred *outside*

9   the five-year statute of limitations, and are therefore completely barred. See Op. Mem. at 15-17.

10      Fourth and last, the SEC claims the statute of limitations should be equitably tolled due to

11  Mr. Smith's alleged fraudulent concealment. Opp. at 24-25. However, "[f]raudulent concealment

12  necessarily requires active conduct by a defendant, above and beyond the wrongdoing upon which

13  the plaintiff's claim is filed, to prevent the plaintiff from suing in time." See Santa Maria v. Pac.

14  Bell, 202 F.3d 1170, 1177 (9th Cir. 2000). The Ninth Circuit has affirmatively rejected any theory

15  of fraudulent concealment based on a self-concealing fraud, holding that where a plaintiff claims

16  that a defendant's "acts constitute fraudulent concealment because they were by nature self-

17  concealing [, w]e require more. A plaintiff alleging fraudulent concealment must establish that its

18  failure to have notice of its claim was the result of affirmative conduct by the defendant." Conmar

19  Corp. v. Mitsui & Co. (U.S.A.), 858 F.2d 499, 505 (9th Cir. 1988) (citations omitted).

20      Here, the SEC claims that "defendants concealed their backdating conduct though [sic] the

21  filing of materially false financial statements and other conduct." Opp. at 24. However, that

22  [11/]  The SEC argues in a footnote that because "each of the defendants later exercised some of the
23      options procured by fraud," those subsequent exercises re-start any applicable statute of
       limitations. Opp. at 21 n.7. This is incorrect for at least two reasons. First, the Complaint
24      does not allege that the mere exercise of stock by Mr. Smith was an independently wrongful
       act subject to liability. Paragraph 80, relied upon by the SEC, merely alleges that defendants
25      benefited from the alleged backdating by later exercising their options, but does not allege that
       the later exercise was itself wrongful. Even if such later exercises were alleged to be
26      wrongful, they would not act to re-start or toll the statute of limitations for time-barred conduct
       for the same reason that the "continuing wrong" doctrine does not apply. See e.g., Elster v.
27      Am. Airlines, Inc., 100 A.2d 219, 224 (Del. Ch. 1953) ("The wrong or injury of which
       plaintiff complains is the *granting* of the options, not the exercise thereof. The action is
28      therefore not a continuing one.") (emphasis added) (cited in Ryan v. Gifford, 935 A.2d 258,
       267 (Del. Ch. 2007)).

conduct is the *exact same conduct* that the SEC alleges as the basis for its various securities fraud claims and includes as part of the supposed "ongoing scheme to defraud" just a page earlier in its opposition brief. See id. at 23 ("The conduct complained of in this case, including filing misstated financial reports and other public documents to conceal that Mercury executives were receiving backdated options . . . , was a part of an ongoing scheme to defraud . . . ."). Thus, the SEC has alleged no affirmative conduct by Mr. Smith to fraudulently conceal the backdating, above and beyond the alleged fraud itself, that could act to toll the statute of limitations. See Richie, slip. op. at 3 (rejecting plaintiff's request to toll Section 2462 due to fraudulent concealment).[12]

IV.    The Aiding and Abetting Claims Must Be Dismissed for
       Failure to Plead with Particularity What Conduct by Smith
       Constituted Aiding and Abetting With Requisite State of Mind

The SEC claims that it need not plead its aiding and abetting claims with particularity because the primary violation underlying those claims does not contain an element of scienter. Opp. at 15. This is incorrect for two reasons. First, even if the primary violation does not require scienter, the aiding and abetting claims, which require a specific intent or "actual knowledge," sound in fraud and are therefore subject to Rule 9(b). See SEC v. Lucent Techs., 363 F. Supp. 2d 708, 727 (D.N.J. 2005) ("While a Section 13 claim does not require a showing of scienter, that the SEC has pled that [defendant] knowingly assisted Lucent's violation of Section 13 leads this Court to conclude that the particularity requirement of Rule 9(b) should apply to this claim as well."). Second, the entire Complaint undoubtedly sounds in fraud and is therefore subject to Rule 9(b). See id.; Op. Mem. at 10.

The SEC has not pled what in particular Mr. Smith did to aid and abet Mercury's violations of Section 13. The SEC does not plead with particularity facts showing that Mr. Smith

---

[12]    The SEC's reliance on language in United States ex rel. Hyatt v. Northrop Corp., 91 F.3d 1211, 1216 (9th Cir. 1996) that "[f]raud by its very nature is concealed and difficult to discover" is misleading, as that case addressed a statute that follows a "discovery rule," by which the statute does not start until the plaintiff discovered or should have discovered the fraud. The Ninth Circuit in Williams expressly held that the "discovery rule" does not apply to Section 2462, holding that "an action, suit or proceeding to assess or impose a civil penalty must be commenced within five years of the date of the violation giving rise to the penalty." Williams, 104 F.3d at 240 (quoting 3M Co. v. Browner, 17 F.3d 1453, 1462-63 (D.C. Cir. 1994)). Two of the cases relied upon by the SEC, SEC v. First California Capital Markets Group (at 32-33) and SEC v. Richie (at 3), specifically noted this aspect of Section 2462.

DEFENDANT DOUGLAS SMITH'S                12                CASE NO. 5:07-C02822-JF
REPLY MEM. I/S/O MOT. TO DISMISS
270980

1    had the requisite state of mind for aiding and abetting: "actual knowledge" of a primary violation

2    of Section 13 by Mercury.  See SEC v. Fehn, 97 F.3d 1276, 1288 (9th Cir. 1996).  As the SEC

3    itself admits, its state of mind allegation is that Mr. Smith (and others) "knew *or were certainly*

4    *reckless in not knowing* income was overstated, because they failed to report any compensation

5    expense arising from the stock option grant transactions, which they knew *or had information*

6    *that should have alerted them* was required under GAAP."  Opp. at 16 (emphasis added).

7    However, in order for Mr. Smith to aid and abet a primary violation, it is not sufficient that he was

8    "*certainly reckless in not knowing*" or that he have "*information that should have alerted him*"

9    to the improper accounting treatment for stock options.  An aiding and abetting claim requires a

10   very specific intent:  actual knowledge of the primary violation.  Mr. Smith must have actually

11   *known* that he was causing Mercury to make a false entry in the company's books and records.

12   The SEC pleads no facts showing Mr. Smith had such knowledge.

13   V.    The Section 16(a) and Rule 16a-3 Claim Must be
           Dismissed for Failure to Plead with Particularity
14         Mr. Smith's Failure to File Any Specific Form

15        The SEC argues in its opposition that to file an SEC Form 3 or 4 violates Section 16 if it

16   recites an effective grant date rather than the proper "measurement date" dictated by the

17   accounting rules.  This argument, however, is predicated on cases interpreting other,

18   distinguishable sections of the Exchange Act.  For instance, in GAF Corp. v. Milstein, 453 F.2d

19   709 (2d Cir. 1971), the Court held that defendants had violated Section 13(d) when they filed

20   Schedule 13(D) forms that did not disclose their intent to acquire control of a company and

21   claimed no present intention to acquire additional shares.  However, disclosure of the information

22   missing from defendants' filings was the very reason Congress passed Section 13(d): "The

23   purpose of section 13(d) is to require disclosure of information by persons who have acquired a

24   substantial interest, or increased their interest in the equity securities of a company by a substantial

25   amount, within a relatively short period of time.  Otherwise, investors cannot assess the potential

26   for changes in corporate control and adequately evaluate the company's worth."  Id. at 717

27   (citations omitted).  See also Lucent Techs., 363 F. Supp. 2d at 718 n.1 (Section 13 case citing

28   GAF Corp. in a footnote).

DEFENDANT DOUGLAS SMITH'S                    13              CASE NO. 5:07-C02822-JF
REPLY MEM. I/S/O MOT. TO DISMISS                                    270980

1    But here, Mr. Smith's filings fulfilled the purpose of Section 16(a), passed by Congress "to

2    allow public investors to review insiders' purchases and sales for suggestions of the insider's

3    private opinions about the company's future."  Marleen A. O'Connor, Toward a More Efficient

4    Deterrence of Insider Trading: The Repeal of Section 16(b), 58 Fordham L. Rev. 309, 323 (1989)

5    (citing H.R. Rep. No. 1383, 73d Cong., 2d Sess. 13 (1934) at 24).  Mr. Smith's stock acquisitions

6    and dispositions were all accurately reflected in his Form 3 and Form 4 filings, allowing

7    stockholders to determine what interest he had in Mercury and what his private opinion of the

8    Company's future might be, thus serving the purpose of Section 16(a) reports.  See Steve Thel,

9    The Genius of Section 16:  Regulating the Management of Publicly Held Companies, 42 Hastings

10   L.J. 391, 423 (1991) (explaining that Section 16(a) reports disclosing management holdings

11   enabled stockholders to protect themselves from uninterested managers).

12   In addition, the SEC has not pled this claim with particularity.  The SEC has declined to

13   identify the particular filings, or particular false or misleading statements, made by Mr. Smith, as

14   required by Rule 9(b).

15   VI.   The Section 14(a) and Rule 14a-9 Claim Must Be Dismissed
        for Failure to Plead with Particularity Any Specific Proxy
16      Statement, or Any Particular Statement Made Therein
        That Was Materially False or Misleading

17   Having based its Complaint on a theory of fraud, the SEC must plead all of its claims in

18   compliance with Rule 9(b).  The cases the SEC cites, however, simply hold that scienter is not a

19   requirement for a Section 14(a) claim.  Since those cases did not address whether Rule 9(b)

20   applies to Section 14(a) claims sounding in fraud, the SEC's cases are not responsive.[13]

21   The SEC asserts that the proxy statements were materially false because each provided

22   incorrect information regarding how Mercury calculated grant dates for executive stock options.

23   But to determine whether these statements were material, the alleged misleading information must

24   be evaluated in the specific context of each proxy:  "[T]the false statement must have a tendency

25   to influence a decision -- how an investor will vote."  United States v. Berger, 473 F.3d 1080,

26

27   [13]  Even in Wilson v. Great American Industries, Inc., cited by the SEC for the proposition that
        negligence is sufficient, the court concluded that defendants' nondisclosure in that case "was a
28      deliberate decision demonstrat[ing] a culpable state of mind far in excess of negligence."  855
        F.2d 987, 995 (2d Cir. 1988).

DEFENDANT DOUGLAS SMITH'S          14          CASE NO. 5:07-C02822-JF
REPLY MEM. I/S/O MOT. TO DISMISS                              270980

1    1100 (9th Cir. 2007) (citing TSC Indus. v. Northway, Inc., 426 U.S. 438, 449 (1976)).[14]

2    Further, the SEC asserts that it has alleged precisely who participated in the preparation of

3    each of the proxy statements by referencing the vague allegation that Mr. Smith "prepared and/or

4    reviewed" proxies between 2000 and 2003 (even though Mr. Smith was not CFO until late 2001),

5    and claiming that the defendants were aware or should have been aware of the alleged

6    misrepresentations in the proxies because they permitted the use of their names in the proxies.

7    Opp. at 18-19. Until Mr. Smith became CFO of Mercury, however, his name would not have

8    appeared in Mercury's proxies. In any case, contrary to the SEC's suggestion, the mere fact that

9    someone's name appears in a proxy statement does not trigger liability, as stated in the very case

10   cited by the SEC, SEC v. Falstaff Brewing Corp., 629 F.2d 62, 68 (D.C. Cir. 1980) ("Of course,

11   the simple appearance of one's name in a proxy statement does not trigger liability for any

12   misstatement appearing therein."). Rather, for Section 14(a) liability to be triggered, there needs

13   to be a substantial connection between the use of the person's name and the solicitation effort. Id.

14   The SEC's failure to identify specific proxies leaves Mr. Smith unable to show that the use of his

15   name lacked a substantial connection to the solicitation effort of each specific proxy statement.

16   <u>CONCLUSION</u>

17   For all of the foregoing reasons, the Complaint must be dismissed for failure to state a

18   claim pursuant to Rule 12(b)(6), and failure to plead fraud with particularity pursuant to Rule 9(b)

19   (or, in the alternative, the particular portions identified above must be stricken).

20   Dated: January 15, 2008                    SHEARMAN & STERLING LLP

21                                              By: _____/s/_____
                                                        Jeffrey S. Facter
22

23                                              Attorneys for Defendant Douglas Smith

24   [14]  Item 402(a) of Regulation S-K does not make all information required to be in a proxy
          necessarily material to a shareholder's vote. In fact, the case cited by the SEC in support of
25        this argument expressly "decline[d] to hold that the information required to be disclosed in
          13(D) is material per se simply because such disclosure is required under the securities laws."
26        United States v. Bilzerian, 926 F.2d 1285, 1298 (2d Cir. 1991). In the other case relied upon
          by the SEC, the Court did not determine that the undisclosed information was material simply
27        because it was required in Schedule 13(D), but also analyzed the specific facts of the
          undisclosed information to determine whether, in context, the information would have been
28        significant to a reasonable shareholder. See SEC v. Levy, 706 F. Supp. 61, 72 (D.D.C. 1989).

DEFENDANT DOUGLAS SMITH'S                15                    CASE NO. 5:07-C02822-JF
REPLY MEM. I/S/O MOT. TO DISMISS                                              270980