1

2                                    **E-Filed 9/30/08**

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                  **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10                            **SAN JOSE DIVISION**

11

12   SECURITIES AND EXCHANGE COMMISSION,        Case Number C 07-2822 JF (RS)

13                     Plaintiff,               ORDER[1] GRANTING IN PART
                                                MOTIONS TO DISMISS OF
14         v.                                   DEFENDANTS LANDAN, SMITH
                                                AND SKAER WITH LEAVE TO
15   MERCURY INTERACTIVE, LLC., et al.,         AMEND; AND VACATING
                                                DEFENDANT ABRAMS' MOTION
16                     Defendants.              TO DISMISS

17

18                                              [re:  docket nos. 45, 49, 54, 57]

19

20

21         Defendants Amnon Landan ("Landan"), Douglas Smith ("Smith"), Susan Skaer ("Skaer")

22   and Sharlene Abrams ("Abrams") move to dismiss the complaint of the Securities and Exchange

23   Commission ("SEC") on the ground that the complaint fails to state a claim upon which relief

24   may be granted.  *See* Fed. R. Civ. P. 12(b)(6).  Landan alternatively seeks a more definite

25   statement pursuant to Fed. R. Civ. P. 12(e), and Smith alternatively moves to strike portions of

26   the complaint pursuant to Fed. R. Civ. P. 12(f).  The Court has considered the briefing submitted

27   ─────────────────

28         [1]      This disposition is not designated for publication in the official reports

by the parties as well as the oral argument of counsel presented at the hearing. Abrams has

requested that the Court defer consideration of her motion on the ground that she and the SEC

are close to reaching a settlement. The Court will vacate Abrams' motion without prejudice to

reassertion of the motion in the event that the settlement is not finalized. For the reasons

discussed below, the Court will grant the remaining motions to dismiss in part, with leave to

amend. Given its disposition of the motions to dismiss, the Court need not reach the alternative

motions to strike and for a more definite statement.

## I. BACKGROUND

The SEC commenced this civil action on May 31, 2007, alleging that Mercury

Interactive, LLC ("Mercury")[2] and four of its senior executives had committed numerous

violations of the Securities Exchange Act of 1934 ("Exchange Act") and the Securities Act of

1933 ("Securities Act") in the course of a stock options backdating scheme. The Individual

Defendants are Landan, the company's Chief Executive Officer ("CEO") from 1997 through

November 2005; Abrams, the company's Chief Financial Officer ("CFO") from 1993 through

November 2001; Smith, the CFO from November 2001 through November 2005; and Skaer, who

acted as Mercury's general counsel and secretary from November 2000 through November 2005,

and prior to that as outside counsel from October 1996 through November 2000. The SEC and

Mercury subsequently entered into a settlement under which Mercury agreed to pay a civil

penalty in the amount of $28,000,000 and to the issuance of permanent injunctive relief.[3] On

July 12, 2007, the Court entered a stipulated final judgment reflecting these terms. Only the

claims against the Individual Defendants remain.

The SEC alleges that the granting of stock options was one of Mercury's primary sources

of employee compensation. Complt ¶ 15. Under the company's stock option plan in effect from

1989 to 1999, ordinary stock options had to be priced at eighty-five percent or more of the

---

[2] Formerly known as Mercury Interactive, Inc.

[3] The stipulated judgment states expressly that Mercury does not admit or deny the allegations of the complaint.

2

market value on the grant date, while incentive stock options had to be priced at one hundred

percent of fair market value on the grant date. *Id*. ¶ 16.  In 1998, the company's shareholders

rejected the company's request for approval of a new plan incorporating the same terms, and

instead approved a stock option plan requiring that all options be priced at one hundred percent

of the stock's market value on the grant date. *Id*. ¶¶ 17-18.  Both plans provided that "[t]he date

of grant of an Option shall, for all purposes, be the date on which the Board makes the

determination granting such Option." *Id*. ¶ 19.

      Under Generally Accepted Accounting Principles ("GAAP"), a company is not required

to record any compensation expense for employee stock options as long as the option's exercise

price is not below the stock's market price on the grant date.  Complt ¶ 20.  If an employee is

granted an option with an exercise price below the stock's market price on the grant date (an "in

the money" option), the employee receives "intrinsic value" in the difference between the

exercise price and the market price. *Id*. ¶ 21.  In that situation, the company must record the

intrinsic value as a compensation expense to be recognized over the vesting period of the option.

*Id*.

      The SEC alleges that Mercury, acting through the Individual Defendants,  issued stock

options "as of" dates earlier than the true grant dates but failed to record such transactions as

required by GAAP.  The SEC cites forty-five such option grants between 1997 and April 2002;

in every single transaction the options were granted "as of" earlier dates corresponding to

relatively low stock prices.  Complt ¶ 45.  Mercury allegedly concealed this backdating for

several years through false filings.  On July 3, 2006, Mercury restated its financials for fiscal

years 2002-2004, indicating that it had failed to disclose compensation expenses associated with

backdated stock options in the aggregate amount of $258 million. *Id*. ¶ 101.

      In addition to backdating stock option grants, the SEC claims that Landan and Abrams

backdated their personal exercises of stock options to obtain tax benefits at the expense of the

company.  Complt ¶¶ 82-90.  Landan and Abrams also allegedly manipulated the company's

recognition of revenue. *Id*. ¶¶ 117-130.  The company also allegedly engaged in accounting

irregularities with respect to the exercise of stock options by its employees in European

1  countries. *Id*. ¶¶ 131-144.

2      Based upon these allegations, the SEC asserts the following claims: (1) fraud in

3  connection with the offer or sale of Mercury stock in violation of Section 17(a) of the Securities

4  Act; (2) fraud in the purchase or sale of Mercury stock in violation of Section 10(b) of the

5  Exchange Act and Rule 10b-5 thereunder; (3) record-keeping violations of Section 13(b)(5) of

6  the Exchange Act and Rule 13b2-1 thereunder; (4) making false or misleading statements or

7  omissions in connection with an audit in violation of Exchange Act Rule 13b2-2; (5) fraud in the

8  filing of annual and quarterly reports in violation of Section 13(a) of the Exchange Act and Rules

9  12b-20, 13a-1 and 13a-13 thereunder; (6) providing false certifications of Forms 10-K and 10-Q

10 in violation of Exchange Act Rule 13a-14; (7) record-keeping violations of Section 13(b)(2)(A)

11 of the Exchange Act; (8) failure to maintain internal accounting controls in violation of Section

12 13(b)(2)(B) of the Exchange Act; (9) violation of reporting requirements of Section 16(a) of the

13 Exchange Act and Rule 16a-3 thereunder; and (10) fraud in the solicitation of proxies in

14 violation of Section 14(a) of the Exchange Act and Rule 14a-9 thereunder.  The SEC seeks

15 permanent injunctive relief, disgorgement of wrongfully obtained benefits plus prejudgment

16 interest, civil monetary penalties, an order precluding the Individual Defendants from serving as

17 officers or directors of any public company, and repayment of bonuses and stock profits.

18                              **II. MOTIONS TO DISMISS**

19 **A.   Legal Standard**

20      "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a

21 cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v.*

22 *Centinela Hosp. Medical Center*, 521 F.3d 1097, 1104 (9th Cir. 2008).  However, "[w]hile a

23 complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

24 allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

25 requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

26 of action will not do." *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, 127 S. Ct. 1955 (2007)

27 (internal citations omitted).

28      A heightened pleading standard applies to claims of fraud.  Fed. R. Civ. P. 9(b) (requiring

                                        4

1  that when alleging fraud a party must "state with particularity the circumstances constituting

2  fraud"). This standard extends to claims grounded in fraud, that is, claims in which fraudulent

3  conduct serves as an element. *See In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1404-05 (9th Cir.

4  1996). To meet this standard, the plaintiff must allege the "who, what, where, when, and how"

5  of the fraudulent conduct. *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003).

6  However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged

7  generally." Fed. R. Civ. P. 9(b). Thus the SEC may allege scienter in conclusory fashion.[4] *SEC*

8  *v. Levin*, 232 F.R.D. 619, 623 (C.D. Cal. 2005) (holding that "the complaint need only state that

9  the required scienter existed"); *see also SEC v. ICN Pharmaceuticals, Inc.*, 84 F. Supp. 2d 1097,

10  1098-99 (C.D. Cal. 2000).

11  **B.    Catch-All Statute Of Limitations**

12        Landan and Smith assert that a number of the SEC's claims are wholly or partially time-

13  barred by the federal catch-all statute of limitations, 28 U.S.C. § 2462. The Ninth Circuit has

14  held expressly that no statute of limitations applies to SEC civil enforcement actions. *SEC v.*

15  *Rind*, 991 F.2d 1486, 1492 (9th Cir. 1993). As *Rind* remains good law, a citation to that holding

16  ordinarily would dispose of the statute of limitations argument. However, Defendants point out

17  that despite its broad language, *Rind* did not address the precise question of whether Section

18  2462 applies to SEC enforcement actions. Section 2462 provides as follows:

19              Except as otherwise provided by Act of Congress, an action, suit or proceeding for
              the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise,
20              shall not be entertained unless commenced within five years from the date when
              the claim first accrued if, within the same period, the offender or the property is
21              found within the United States in order that proper service may be made thereon.

22  28 U.S.C. § 2462. Landan and Smith assert that this five-year limitations period applies to the

23  first, second, third, seventh and eighth claims. The instant action was filed on May 31, 2007.

24  Thus to the extent that Section 2462 applies, it bars claims arising out of conduct occurring

25  before May 31, 2002. The last alleged backdated options grant occurred in April 2002.

26  _____

27        [4] The Private Securities Litigation Reform Act ("PSLRA") imposes more stringent
  pleading requirements in private actions for securities fraud; the PSLRA does not apply to
28  actions brought by the SEC. *ICN Pharmaceuticals*, 84 F. Supp. 2d at 1099.

Case No. C 07-2822 JF (RS)
ORDER GRANTING IN PART MOTIONS TO DISMISS OF LANDAN, SMITH AND SKAER ETC.
(JFLC2)

1    Because *Rind* did not address application of Section 2462, this Court concludes that there

2    is an open question as to that statute's application.  As noted above, the statute applies to actions

3    "for the enforcement of any civil fine, penalty, or forfeiture."  The SEC seeks permanent

4    injunctive relief, disgorgement of wrongfully obtained benefits plus prejudgment interest, civil

5    monetary penalties, an order precluding the Individual Defendants from serving as officers or

6    directors of any public company, and repayment of bonuses and stock profits.  While the request

7    for civil monetary penalties clearly falls within the scope of Section 2462, the remainder of the

8    relief sought arguably does not.  As at least one court in this district recently has held,

9    disgorgement of ill-gotten gains and injunctive relief aimed at precluding a recurrence of

10   wrongful conduct are remedial in nature.  *See SEC v. Berry*, 2008 WL 2002537, at *7 (N.D. Cal.

11   2008).  Following the reasoning of that decision, this Court concludes that while Section 2462

12   may preclude the imposition civil penalties for conduct occurring before May 31, 2002, it would

13   not preclude the other relief sought by the SEC.  Accordingly, Defendants have failed to

14   demonstrate that any of the claims are subject to dismissal as time-barred.

15   Defendants argue that because the legal remedy of a civil monetary penalty is time-

16   barred, the equitable remedies arising out of the same conduct likewise are time-barred under the

17   concurrent remedy rule.  Defendants rely primarily upon *Fed. Election Comm'n v. Williams*, 104

18   F.3d 237 (9th Cir. 1996) for this proposition.  *Williams* was not an SEC enforcement action, but

19   rather a suit brought by the Federal Election Commission seeking civil penalties and equitable

20   relief for campaign violations.  The Ninth Circuit held that the limitations period set forth in §

21   2462 barred the claim for civil penalties, and then stated almost in passing that "because the

22   claim for injunctive relief is connected to the claim for legal relief, the statute of limitations

23   applies to both."  *Id.* at 240.  The court's entire analysis of the issue consists of a quotation from

24   *Cope v. Anderson*, 331 U.S. 461 (1947):  "and equity will withhold its relief in such a case where

25   the applicable statute of limitations would bar the concurrent legal remedy."  *Id.* at 464.

26   However, the context of the Supreme Court's observation was entirely different from that of

27   *Williams*.  *Cope* involved a number of suits arising in different states, all seeking relief from the

28   shareholders of a national bank that had become insolvent.  The court noted that the various

6

1   states' statutes of limitations applied, and that "it is only the scope of the relief sought and the

2   multitude of parties sued which gives equity concurrent jurisdiction to enforce the legal

3   obligation here asserted." *Id*. at 463-64.  It was against that backdrop that the court held that a

4   bar to the legal claims concurrently would bar the equitable claims.

5          Absent more analogous authority, and in the face of express statutory language limiting

6   the application of Section 2462 to actions for "a civil fine, penalty, or forfeiture," this Court is

7   reluctant to extend the five-year limitations period in the manner requested by Defendants.  An

8   action on behalf of the United States in its governmental capacity generally "is subject to no time

9   limitation, in the absence of congressional enactment clearly imposing it." *E.I. DuPont De*

10  *Nemours & Co. v. Davis*, 264 U.S. 456, 462 (1924).  "Statutes of limitation sought to be applied

11  to bar rights of the government, must receive a strict construction in favor of the government."

12  *Id*.

13         Even with respect to the remedies that do fall within Section 2462, the limitations period

14  may be subject to equitable tolling.  *See Williams*, 104 F.3d at 240 (holding that "section 2462 is

15  subject to equitable tolling").  "To establish that equitable tolling applies, a plaintiff must prove

16  the following elements:  fraudulent conduct by the defendant resulting in concealment of the

17  operative facts, failure of the plaintiff to discover the operative facts that are the basis of its cause

18  of action within the limitations period, and due diligence by the plaintiff until discovery of those

19  facts." *Id*. at 240-41.  The complaint alleges that Defendants concealed their backdating scheme

20  and other wrongful conduct; the SEC well may be able to demonstrate that its failure to discover

21  the operative facts at an earlier date was the result of Defendants' concealment rather than any

22  lack of diligence.  Given its conclusion that the SEC's requests for equitable remedies are not

23  time-barred, the Court need not reach the question of equitable tolling at this time.  Application

24  of the doctrine more appropriately may be addressed in the context of a motion for summary

25  judgment if and when the filing of such motion becomes appropriate.

26         Accordingly, the Court will deny the motions to dismiss claims or portions of claims as

27  barred by the five-year limitations period set forth in Section 2462.

28

7

1    **C.      First And Second Claims**

2           The SEC's first claim is asserted pursuant to Section 17(a) of the Securities Act, 15

3    U.S.C. § 77q(a).  The second claim is asserted pursuant to Section 10(b) of the Exchange Act, 15

4    U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.  Section 17(a) provides that,

5    with respect to the offer or sale of a security, it is unlawful:

6           (1)      to employ any device, scheme, or artifice to defraud, or
             (2)      to obtain money or property by means of any untrue statement of a
7                    material fact or any omission to state a material fact necessary in order to
                     make the  statements made, in light of the circumstances under which they
8                    were made, not misleading; or
             (3)      to engage in any transaction, practice, or course of business which operates
9                    or would operate as a fraud or deceit upon the purchaser.

10   15 U.S.C. § 77q(a).  Rule 10b-5 contains nearly identical language, providing that "in connection

11   with the purchase or sale of any security," it is unlawful:

12           (a)      To employ any device, scheme, or artifice to defraud,
             (b)      To make any untrue statement of a material fact or to omit to state a
13                   material fact necessary in order to make the statements made, in the light
                     of the circumstances under which they were made, not misleading, or
14           (c)      To engage in any act, practice, or course of business which operates or
                     would operate as a fraud or deceit upon any person. . . .
15

16   17 C.F.R. § 240.10b-5.

17          To make out claims alleging material misstatements or omissions under Section 17(a) and

18   Section 10(b)/Rule 10b-5, the SEC must allege and prove much the same elements:  (1) a

19   material misstatement or omission (2) in connection with the offer or sale of a security (3) by

20   means of interstate commerce.  *SEC v. Phan*, 500 F.3d 895, 907-08 (9th Cir. 2007).  As an

21   alternative to proving a material misstatement or omission, the SEC may prove a scheme or

22   artifice to defraud or a fraudulent act, practice or course.  *SEC v. Fitzgerald*, 135 F. Supp. 2d 992,

23   1028 (N.D. Cal. 2001).  Violations of Section 17(a)(1) and Section 10(b)/Rule 10b-5 require

24   scienter.  *Phan*, 500 F.3d at 908.  Violations of Sections 17(a)(2) and (a)(3) require negligence.

25   *Id*.  Reliance need not be demonstrated for violations of Section 10(b) and Rule 10b-5.  *SEC v.*

26   *Rana Research, Inc.*, 8 F.3d 1358, 1363-64 (9th Cir. 1993).

27          The SEC asserts both a scheme to defraud and material misstatements and omissions.

28   With respect to the former, the SEC alleges that four of Mercury's senior executives – Landan,

8

Abrams, Smith and Skaer – engaged in a long-term scheme under which they caused Mercury to issue backdated stock options on at least forty-five occasions between 1997 and April 2002. Complt ¶ 45.  Every single one of the grants was backdated to correspond to a relative low point in the price of the company's stock.  *Id*. The complaint provides significant detail with respect to four of the grants:  the January 1999 Compensation Committee Grant, the April 1999 Stock Option Committee Grant, the January 2002 Grant and the March 2002 Stock Option Committee Grant.  *Id*. ¶¶ 47-78.  The complaint sets forth the dates of specific communications regarding the grants, identifies the speakers, and quotes the email text of such communications or otherwise describes the content of the communications; the communications make clear that the Individual Defendants deliberately looked backward in time to select stock price low points so as to maximize the value of the options grants.  *Id*.  The SEC alleges the dates the grants actually were approved as well as the dates to which the grants were backdated, and provides corresponding stock prices for those dates.  *Id*. at ¶ 45.  The allegations make clear that backdating the options grants in this fashion violated Mercury's internal stock options plans.  *Id*. ¶¶ 16-19.  The SEC also explains why Mercury's failure to record the backdated grants as compensation expenses violated GAAP, *id.* ¶¶ 20-21, and alleges that because of Mercury's failure to record the grants properly, Mercury had to restate its financials in the aggregate amount of $258 million.  *Id*. ¶ 101.

With respect to material misstatements and omissions, the SEC points to numerous public filings, including 10-Ks and quarterly reports; representation letters to the company's outside auditors; proxy statements; and registration statements.  Complt ¶¶ 98-116.  The SEC alleges that each of the Individual Defendants either signed these statements or participated in their creation. *Id*.

Defendants assert that notwithstanding the alleged scheme and misleading documents, the SEC fails adequately to allege scienter.  As noted above, however, scienter may be alleged generally.  The Court thus could end its analysis here.  However, the SEC does not merely allege scienter conclusorily, but also alleges facts giving rise to an inference that Defendants knew that backdating the options grants was improper.  For example, the SEC notes that in 1998 the company's shareholders rejected a proposed stock option plan that would have permitted some

9

options to be given exercise prices below the stock's market value on the grant date; the shareholders subsequently approved a plan that required all options to be priced at one hundred percent of the stock's market value on the grant date.  Complt ¶¶ 16-18.  Skaer, acting as outside counsel at the time, helped draft the provisions of the plan that was voted down.  *Id*. ¶ 37. Accordingly, she certainly knew the requirements of the company's stock option plan when she became Mercury's general counsel.  The fact that the company's shareholders had insisted that options be priced at 100% of market value on the grant date was discussed at a board meeting in March 1999, attended by Landan and Skaer.  *Id*. ¶ 38.  At that meeting, Abrams told Landan and Skaer that the company's policy was that it did not grant in the money options because such grants would result in compensations charges for the company.  *Id*. ¶ 42.  Skaer subsequently explained to others that granting in the money options would result in compensation expenses for Mercury.  ¶ 43.  After Smith joined Mercury as its CFO in 2001, he communicated to Landan, Skaer and others that delivering in the motion options would create a "comp charge."  *Id*. ¶ 44.

Notwithstanding the widespread backdating of options grants in violation of the company's own stock option plan, Defendants argue that the SEC alleges no facts giving rise to an inference that Defendants knew that Mercury was violating *GAAP*.  As noted above, scienter may be alleged conclusorily.  Thus while Defendants certainly may argue at a later date that they did not realize that their conduct violated the law, the complaint adequately alleges claims under Section 17(a) and Section 10(b) against each of the Individual Defendants.

Having concluded that the first and second claims meet the applicable pleading standards, the Court will deny the motions to dismiss as to these claims.

**D.     Third, Fourth, Fifth, Seventh And Eighth Claims**

The third, fourth, fifth, seventh and eighth claims allege that the Individual Defendants violated the Exchange Act's reporting and record-keeping requirements.  The third claim alleges violation of Section 13(b)(5) of the Exchange Act, 15 U.S.C. § 78m(b)(5), and Rule 13b2-1 thereunder, 17 C.F.R. § 240.13b2-1  (prohibiting falsification of books, records or accounts covered by the statute); the fourth claim alleges violation of Exchange Act Rule 13b2-2, 17 C.F.R. § 240.13b2-2 (in relevant part prohibiting false or misleading statements or omissions in

10

1   connection with an audit or financial review); the fifth claim alleges that the Individual

2   Defendants aided and abetted Mercury's violations of Section 13(a) of the Exchange Act, 15

3   U.S.C. § 78m(a), and Rules 12b-20, 13a-1 and 13a-13 thereunder, 17 C.F.R. §§ 240.12b-20,

4   240.13a-1 and 240.13a-13 respectively (requiring issuers of registered securities to file with the

5   Commission accurate annual and quarterly reports); and the seventh and eighth claims allege that

6   the Individual Defendants aided and abetted Mercury's violations of Section 13(b)(2)(A) of the

7   Exchange Act, 15 U.S.C. § 78m(b)(2)(A) (requiring issuers of registered securities to keep

8   accurate accounts fairly reflecting transactions) and Section 13(b)(2)(B) of the Exchange Act, 15

9   U.S.C. § 78m(b)(2)(B) (requiring issuers of registered securities to devise and maintain a

10  sufficient system of internal accounting controls).

11       The SEC alleges that Landan and Smith signed and filed financial statements containing

12  material misrepresentations regarding the company's stock option granting practices, backlog and

13  GAAP income.  Complt ¶¶ 101-116, 123-25.  With respect to Skaer, the SEC alleges that she

14  drafted and prepared the 10-Ks for the fiscal years 2001-2005.  *Id*. ¶ 102.  As discussed above,

15  the SEC adequately has alleged that Landan, Smith and Skaer were participants in a fraudulent

16  backdating scheme; their knowledge that the filings and other documents should have

17  documented the the in the money grants thus may be inferred.  Moreover, to the extent that there is a

18  scienter requirement with respect to these claims – a point debated by the parties – scienter may

19  be alleged conclusorily.

20       However, because the complaint alleges the facts in a narrative form, and the claims in

21  question do not refer specifically to any particular filings, it is difficult to discern which filings

22  form the bases for each claim.  Moreover, it is not entirely clear what role Skaer played in each

23  filing.  Because she is not alleged to have signed any of the filings, but rather to have assisted in

24  their drafting and preparation, specificity regarding her conduct is particularly important.

25  Accordingly, the Court will grant the motions to dismiss as to these claims, with leave to amend.

26  **E.    Sixth Claim**

27       The sixth claim alleges that Landan and Smith filed false certifications under Rule 13a-

28  14, promulgated under Section 302 of the Sarbanes Oxley Act Of 2002, 15 U.S.C. 7241.

11

1    Defendants move to dismiss the SEC's claims as time-barred to the extent that they are based

2    upon certifications made prior to May 31, 2003.  Defendants' argument is based upon application

3    of the four-year statute of limitations set forth in 28 U.S.C. § 1658, which Defendants assert

4    applies to the sixth claim.  The SEC disputes application of the four-year period.

5            Even assuming without deciding that the four-year period applies for purposes of this

6    motion, the sixth claim clearly would not be subject to dismissal because it alleges that false

7    certifications were included in Mercury's annual and quarterly reports through 2005.  The Court

8    declines to carve out and dismiss a portion of the claim as Defendants appear to be requesting.

9    Accordingly, the Court will deny the motions with respect to the sixth claim.

10   **F.      Prayer For Repayment Of Bonuses And Stock Profits**

11           The prayer requests that the Individual Defendants be required to repay bonuses and stock

12   profits pursuant to Section 304 of the Sarbanes-Oxley Act, 15 U.S.C. § 7243.  That section

13   provides in relevant part as follows:

14           If an issuer is required to prepare an accounting restatement due to the material
             noncompliance of the issuer, as a result of misconduct, with any financial
15           reporting requirement under the securities laws, the chief executive officer and
             chief financial officer of the issuer shall reimburse the issuer for–
16
17           (1) any bonus or other incentive-based or equity-based compensation received by
             that person from the issuer during the 12-month period following the first public
             issuance or filing with the Commission (whichever first occurs) of the financial
18           document embodying such financial reporting requirement; and

19           (2) any profits realized from the sale of securities of the issuer during that 12-
             month period.
20
21   15 U.S.C. § 7243(a).  Defendants contend that the misconduct underpinning the Section 304

22   claim[5] is the backdating; that all of the alleged backdating occurred prior to July 30, 2002, the

23   date upon which Section 304 was enacted; and thus that applying Section 304 in this case would

24   constitute an impermissible retroactive application of the statute.  The SEC asserts that it was the

25   filing of financial statements that later needed to be restated that triggered Section 304, and that

26

27   _____

28           [5] For the sake of simplicity, the Court refers to the prayer's request for repayment of
     bonuses and stock options as a "claim" even though it is not drafted as such.

                                          12

1   because many such statements were filed after the statute's enactment, the statute properly may

2   be applied.

3          The parties present an interesting question of statutory construction.  However, that

4   question is not yet ripe with respect to this case.  The entirety of the SEC's "claim" under Section

5   304 is a single sentence in the prayer requesting repayment of bonuses and stock profits.  The

6   bases for this claim are entirely unclear.  Accordingly, the Court will dismiss the claim under

7   Section 304, with leave to amend.  In the event that the SEC alleges a viable claim for

8   reimbursement under this statute, Defendants may reassert their arguments regarding the statute's

9   applicability.

10  **G.   Ninth And Tenth Claims**

11         The ninth claim alleges violations of Section 16(a) of the Exchange Act, 15 U.S.C. §

12  78p(a), and Rule 16a-3 thereunder, 17 C.F.R. § 240.16a-3.  Those provisions require officers,

13  directors, and beneficial owners of more than ten percent of any class of equity security

14  registered pursuant to Section 12 of the Exchange Act to file periodic reports disclosing any

15  change of beneficial ownership of those securities.  The tenth claim alleges violations of Section

16  14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and Rule 14a-9 thereunder, 17 C.F.R. § 240.14a-

17  9.  Those provisions impose liability for the issuance of proxy statements containing materially

18  false or misleading facts.

19         These claims suffer from the same defects as the reporting and record-keeping claims

20  addressed in part D, above.  The SEC references numerous documents in the body of the

21  complaint, but the ninth and tenth claims themselves do not refer specifically to any particular

22  documents.  The Court thus cannot discern which documents form the bases for these claims.

23  Accordingly, the Court will grant the motions to dismiss as to these claims, with leave to amend.

24                              **IV. ALTERNATIVE MOTIONS**

25         In light of its disposition of the parties' motions to dismiss, the Court need not reach the

26  alternative motions to strike and for more definite statement.

27

28

Case No. C 07-2822 JF (RS)
ORDER GRANTING IN PART MOTIONS TO DISMISS OF LANDAN, SMITH AND SKAER ETC.
(JFLC2)

1

## V. ORDER

2

(1)    The motions to dismiss brought by Defendants Landan, Smith and Skaer are GRANTED WITH LEAVE TO AMEND as to the third, fourth, fifth, seventh, eighth, ninth and tenth claims, and as to the claim for reimbursement under Section 304 of the Sarbanes-Oxley Act.  The motions are DENIED as to the first, second and sixth claims;

3

4

5

(2)    The motion to dismiss brought by Defendant Abrams is VACATED without prejudice to her reasserting the motion in the event that the settlement is not finalized; and

6

7

(3)    Any amended complaint shall be filed within thirty (30) days of the date of this order.

8

9

10

DATED:  9/30/08

11

_____

12

JEREMY FOGEL
United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14

1    Copies of Order served on:

2

3    Alvin David Williams williamsdav@sec.gov

4    Amanda Kaye Packel apackel@orrick.com

5    Andrew T. Solomon asolomon@sandw.com

6    Carl Brandon Wisoff bwisoff@fbm.com, calendar@fbm.com, mzappas@fbm.com

7    Douglas R. Young dyoung@fbm.com, calendar@fbm.com

8    Emily Victoria Griffen egriffen@shearman.com

9    Frank J. Riebli friebli@fbm.com, calendar@fbm.com, dlynch@fbm.com

10    Franklin B. Velie fvelie@sandw.com

11    James A. Meyers jmeyers@orrick.com

12    James Craig Mann James.C.Mann@usdoj.gov, laurie.best@usdoj.gov

13    James Neil Kramer jkramer@orrick.com

14    Jeffrey S. Facter jfacter@shearman.com, rcheatham@shearman.com

15    John D. Cline jcline@jonesday.com, cyip@jonesday.com, jjew@jonesday.com,
16    sobrien@jonesday.com

17    K.C. Maxwell , Esq kcmaxwell@jonesday.com

18    Lucy B. Ricca lricca@orrick.com

19    Melinda Haag mhaag@orrick.com, vsweet@orrick.com

20    Michael Todd Scott tscott@orrick.com, elee@orrick.com

21    Randall Scott Luskey rluskey@orrick.com, gpackard@orrick.com

22    Thomas B. Mayhew tmayhew@fbm.com, calendar@fbm.com, mzappas@fbm.com

23    Joseph V Vest
24    Securities and Exchange Commission
      100F Street NE
25    Washington, DC 20549-4010

26

27

28