1   Jeffrey S. Facter (State Bar No. 123817)
    Patrick D. Robbins (State Bar No. 152288)
2   Emily V. Griffen (State Bar No. 209162)
    SHEARMAN & STERLING LLP
3   525 Market Street, Suite 1500
    San Francisco, CA 94105-2723
4   Telephone: (415) 616-1100
    Facsimile: (415) 616-1199
5   Email:     jfacter@shearman.com
               probbins@shearman.com
6              egriffen@shearman.com

7   Attorneys for Defendant Douglas Smith

8

9                  UNITED STATES DISTRICT COURT

10                NORTHERN DISTRICT OF CALIFORNIA

11                      SAN JOSE DIVISION

12  SECURITIES AND EXCHANGE COMMISSION,     | Case No.: 5:07-C02822-JF

13                Plaintiff,                 | Assigned to Hon. Jeremy Fogel

14          v.                               | DEFENDANT DOUGLAS SMITH'S
                                             | NOTICE OF MOTION AND MOTION
15  MERCURY INTERACTIVE, LLC (F/K/A/         | TO DISMISS THE NINTH, TENTH AND
    MERCURY INTERACTIVE, INC.), AMNON        | ELEVENTH CLAIMS FOR RELIEF
16  LANDAN, SHARLENE ABRAMS, DOUGLAS         | ALLEGED IN THE FIRST AMENDED
    SMITH and SUSAN SKAER,                   | COMPLAINT PURSUANT TO F.R.C.P.
17                                           | 12(B)(6) AND 9(B); MEMORANDUM OF
                  Defendants.                | POINTS AND AUTHORITIES IN
18                                           | SUPPORT THEREOF

19

20                                           | Date:      March 20, 2009
                                             | Time:      9:00 a.m.
21                                           | Judge:     Honorable Jeremy Fogel
                                             | Courtroom: No. 3, 5th Floor

22

23

24

25

26

27

28

DEFENDANT DOUGLAS SMITH'S                              CASE NO. 5:07-C02822-JF
MOT. TO DISMISS FAC

## TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED
COMPLAINT.................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

INTRODUCTION................................................................................................... 1

STATEMENT OF FACTS ALLEGED IN THE FIRST AMENDED COMPLAINT .................. 3

ARGUMENT ........................................................................................................ 5

I.    The Eleventh Claim for Forfeiture of Profits Pursuant to
      Section 304 of the Sarbanes-Oxley Act is Not Actionable ....................................... 5

      A.    Section 304 Does Not Apply Retroactively to the Misconduct
            Alleged Here.................................................................................... 5

      B.    Even if Section 304 Did Apply Retroactively, None of the
            Filings Alleged Qualifies to Trigger Forfeiture of Profits as None
            Is a "First" Filing Required to Be Restated Due to Backdating......................... 9

      C.    The Rule of Lenity Requires that any Ambiguities in Section 304
            Be Resolved in Favor of Mr. Smith....................................................... 11

II.   The Ninth Claim for Relief for Violation of Section 16(a) of the
      Exchange Act and Rule 16a-3 Must Be Dismissed for Failure to Plead
      with Particularity Mr. Smith's Failure to File Any Specific Form ......................... 12

      A.    Plaintiff Has Failed Once Again to Plead With Particularity
            What Filings by Mr. Smith Form the Basis for this Claim ............................. 12

      B.    Plaintiff Fails to Allege that Mr. Smith Violated Section 16(a)
            by Failing to File the Required Forms.................................................... 14

III.  The Tenth Claim for Relief for Violation of Section 14(a) of the
      Exchange Act and Rule 14a-9 Must Be Dismissed for Failure to
      Plead that Mr. Smith Made Statements in Proxies that Were Materially
      False or Misleading When Made........................................................... 16

      A.    Plaintiff Fails to Allege Materially Misleading Statements in the
            Proxy Solicitations.......................................................................... 16

      B.    The Proxies Filed While Mr. Smith Was CFO Are Not Actionable
            as They Were Filed, According to Plaintiff's Own Allegations,
            After All Alleged Backdating Had Ceased .............................................. 18

CONCLUSION ................................................................................................... 19

1

## TABLE OF AUTHORITIES

2

Page

3

Cases

Boise Cascade Corp. v. EPA, 942 F.2d 1427 (9th Cir. 1991)................................................ 10

4

Bruns v. Ledbetter, 583 F. Supp. 1050 (S.D. Cal. 1984) ................................................... 14

5

Cooper v. Pickett, 137 F.3d 616 (9th Cir. 1997).................................................................. 13

6

County of Suffolk, N.Y. v. First Am. Real Estate Solutions, 261 F.3d 179
    (2d Cir. 2001) ................................................................................................................ 11

7

8

Desaigoudar v. Meyercord, 223 F.3d 1020 (9th Cir. 2000)............................................ 6, 17

9

Eco Mfg. LLC v. Honeywell Int'l, 357 F.3d 649 (7th Cir. 2003)......................................... 7

10

In re Enter. Mortgage Acceptance Co. Sec. Litig., 391 F.3d 401 (2d Cir. 2004) .............. 6

11

Fed. Election Comm'n v. Arlen Specter '96, 150 F. Supp. 2d 797 (E.D. Pa. 2001).......... 11

12

Foss v. Bear, Stearns & Co., 394 F.3d 540 (7th Cir. 2005) ................................................ 6

13

In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541 (9th Cir. 1994)............................................ 13

14

In re Goodyear Tire & Rubber Co. Derivative Litig., No. 5:03CV2180,
    2007 WL 43557 (N.D. Ohio Jan. 5, 2007)..................................................................... 6, 8

15

Hulliung v. Bolen, 548 F. Supp. 2d 336 (N.D. Tex. 2008) ............................................... 19

16

Humetrix, Inc., v. Gemplus S.C.A., 268 F.3d 910 (9th Cir. 2001) ...................................... 6

17

In re ADC Telecomms., Inc. Sec. Litig., 409 F.3d 974 (8th Cir. 2005)............................... 6

18

In re AFC Enters., Inc., Derivative Litig., 224 F.R.D. 515 (N.D. Ga. 2004)...................... 6, 7, 8

19

In re Asyst Techs., Inc. Derivative Litig., No. C-06-04669 EDL, 2008 WL
    2169021 (N.D. Cal. May 23, 2008)................................................................................. 18

20

In re iBasis, Inc. Derivative Litig., 532 F. Supp. 2d 214 (D. Mass. 2007) ........................ 18, 19

21

J.I. Case Co. v. Borak, 377 U.S. 426 (1964)........................................................................ 19

22

Kaplan v. Rose, 49 F.3d 1363 (9th Cir. 1994) ..................................................................... 13

23

Landgraf v. USI Film Prods., 511 U.S. 244 (1994) ............................................................ 6, 7

24

Lieberman v. Cambridge Partners, L.L.C., 432 F.3d 482 (3d Cir. 2005) ........................... 6

25

Mehlenbacher v. Jitaru, No. 6:04CV1118ORL-22KRS, 2005 WL 4585859
    (M.D. Fla. June 6, 2005) ................................................................................................ 7, 11

26

27

Plumbers & Pipefitters Local 572 Pension Fund v. Cook, No. 1:03cv168,
    2004 WL 5349589 (S.D. Ohio Sept. 22, 2004)............................................................... 6, 8

28

Resident Councils of Wash. v. Leavitt, 500 F.3d 1025 (9th Cir. 2007) .............................. 10

SEC v. Falstaff Brewing Corp., 629 F.2d 62 (D.C. Cir. 1980) ............................................ 18

SEC v. Shanahan, No. 4:07CV270 JCH, 2008 WL 5211909 (E.D. Mo.
 Dec. 12, 2008) ............................................................................................................... 10

SEC v. Shattuck Denn Mining Corp., 297 F. Supp. 470 (D.C.N.Y. 1968) ........................ 15

SEC v. World-Wide Coin Invs., Ltd., 567 F. Supp. 724 (D.C. Ga. 1983) .......................... 14

Segal v. Gordon, 467 F.2d 602 (2d Cir. 1972) ................................................................... 13

Seinfeld v. Bartz, 322 F.3d 693 (9th Cir. 2003) ................................................................. 17

Semegen v. Weidner, 780 F.2d 727 (9th Cir. 1985) ........................................................... 13

In re Stac Elecs. Sec. Litig., 89 F.3d 1399 (9th Cir. 1996) ................................................ 13

TSC Indus. v. Northway, Inc., 426 U.S. 438 (1976) ...................................................... 16, 17

Tracinda Corp. v. DaimlerChrysler AG, 364 F. Supp. 2d 362 (D. Del. 2005) ................... 17

Union Pac. R.R. Co. v. Laramie Stock Yards Co., 231 U.S. 190 (1913) ............................. 7

United States v. Berger, 473 F.3d 1080 (9th Cir. 2007) ..................................................... 17

United States v. One 1973 Rolls Royce, V.I.N. SRH-16266, 43 F.3d 794
 (3d Cir. 1994) ................................................................................................................. 11

United States v. Robertson, 73 F.3d 249 (9th Cir. 1996) ..................................................... 8

Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097 (9th Cir. 2003) ........................................ 13

Weiner v. Quaker Oats Co., 129 F.3d 310 (3d Cir. 1997) .................................................. 17

Wool v. Tandem Computers, Inc., 818 F.2d 1433 (9th Cir. 1987) ...................................... 13

## Statutes

15 U.S.C.
 § 78p(a) ......................................................................................................................... 12
 § 7243 ........................................................................................................................ passim
 § 7243(a)(1) ..................................................................................................................... 9

Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 2002 U.S.C.C.A.N.
 (116 Stat.) 745 ................................................................................................................. 6

## Rules and Regulations

17 C.F.R. § 240.16a-3 ....................................................................... 14

Federal Rule of Civil Procedure
9(b) ............................................................................................ 13
12(b)(6)...................................................................................... 1, 12

SEC Rule 16a C.F.R. § 240.16a .......................................................... 14

## Other Authorities

H.R. 3762 – The Corporate and Auditing Accountability, and Transparency
Act of 2002: Hearing Before the H. Comm'n on Fin. Servs., 107th Cong.
(Mar. 20, 2002) ............................................................................ 8

H.R. Rep. No. 1383, 73d Cong., 2d Sess. 13 (1934)............................... 15

Kourtney T. Cowart, The Sarbanes-Oxley Act: How a Current Model in
the Law of Unintended Consequences May Affect Securities Litigation,
42 Duq. L. Rev. 293 (Winter 2004) ............................................... 7

Marleen A. O'Connor, Toward a More Efficient Deterrence of Insider
Trading: The Repeal of Section 16(b), 58 Fordham L. Rev. 309 (1989)...... 15

Steve Thel, The Genius of Section 16: Regulating the Management of
Publicly Held Companies, 42 Hastings L.J. 391 (1991) ...................... 15

James E. Johnson, Disgorgement of Executive Compensation,
865 PLI/Comm 149 (2004) ............................................................ 11

1    <u>NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT</u>

2    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3            PLEASE TAKE NOTICE THAT on March 20, 2009, at 9:00 a.m., or as soon

4    thereafter as the matter may be heard, in Courtroom Three, Fifth Floor of the above captioned

5    Court, located at 280 South First Street, San Jose, California, defendant Douglas Smith will and

6    hereby does move the Court for an order dismissing the Ninth, Tenth and Eleventh Claims for

7    Relief alleged in the First Amended Complaint.  This motion is made pursuant to Federal Rule of

8    Civil Procedure 12(b)(6) and the heightened pleading requirements of Rule 9(b), and asks that this

9    Court dismiss these claims against Mr. Smith for failure to state a claim upon which relief may be

10   granted.

11                      <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

12                                        <u>INTRODUCTION</u>

13           This motion raises a serious due process question arising from the SEC's effort to

14   apply a relatively new and unusually harsh civil penalty – the Sarbanes-Oxley Act's ("SOX")

15   Section 304 forfeiture provision – retroactively and beyond the statute's plain limitations.  Enacted

16   by Congress in July 2002, Section 304 penalizes corporate misconduct that leads to a restatement

17   by requiring a CFO or CEO who certifies false financial statements to return to the company

18   certain incentive-based compensation, including stock proceeds and bonuses.  In this case, the

19   SEC seeks to punish Douglas Smith, the former CFO of Mercury Interactive Corp. ("Mercury" or

20   the "Company"), for certifying financial statements that were false and required restatement <u>solely</u>

21   as a result of certain alleged misconduct – backdating[1] of stock options at Mercury – that

22   according to the SEC's own First Amended Complaint ended <u>prior</u> to SOX's effective date.

23           To apply the statute against Mr. Smith is to exact a retroactive penalty for acts

24   committed before the statute created that penalty.  The cases addressing this issue uniformly

---

25

26   [1]   This memorandum uses the phrases "stock option backdating" or "backdated grants" to refer
       to those stock option grants as to which someone chose a grant date in the past with a
27     beneficial price and in so doing caused the Company to incur a compensation expense under
       applicable accounting principles because the grant's value exceeded the fair market value of
28     the Company's stock on the date the details of the grant were determined.

---

1   examine the date of the alleged <u>misconduct</u> – not the financial statements requiring restatement –

2   and ask whether that misconduct pre-dates or post-dates SOX.  If it precedes the statute, forfeiture

3   under Section 304 is foreclosed as an impermissible retroactive application of the statute.

4   By its plain terms, Section 304 also limits forfeiture of bonuses and stock profits to

5   those received in the one-year period following the <u>first</u> SEC filing containing the accounting error

6   stemming from the misconduct.  The SEC's First Amended Complaint identifies no such "first"

7   filing, because the backdating had long ceased and had already been "first" improperly accounted

8   for in filings prior to those pleaded by the SEC.  For both of these reasons, the Court should hold

9   that Section 304 is inapplicable to Mr. Smith, and dismiss the Eleventh Claim for Relief.  <u>See</u> <u>infra</u>

10  Section I.

11  Plaintiff's Ninth and Tenth Claims for Relief against Mr. Smith for violations of

12  Sections 14(a) and 16(b) of the Securities Exchange Act of 1934 present prime examples of why

13  fraud claims must be pled with particularity.  Plaintiff alleges a nine-year scheme of stock option

14  backdating and related false statements – including false proxies and false Forms 3, 4 and 5 –

15  arising out of 45 allegedly backdated stock option grants from 1997 to early 2002.  By the SEC's

16  own account, however, Mr. Smith did not become CFO of Mercury until the end of November

17  2001, mere months before the backdating at Mercury ended, and was involved only in the very last

18  two of those grants.  Given these undisputed facts, a meaningful application of Rule 9(b) –

19  requiring the SEC to plead precisely <u>what fraudulent</u> statements Mr. Smith is allegedly responsible

20  for, <u>how</u> he participated in creating those statements, and why the statements were false or

21  misleading when made  – is essential.

22  As to the Ninth Claim (Section 14(a)), plaintiff has opted not to provide the

23  requisite particularity in the First Amended Complaint about precisely which proxies it alleges are

24  false or misleading, nor does it identify what is false or misleading about them.  Plaintiff also fails

25  to identify Mr. Smith's role in preparing the proxies, and continues to maintain in conclusory

26  fashion that Mr. Smith is liable for filings made before he was even an employee or officer of

27  Mercury.  In addition, the proxies during Mr. Smith's tenure as CFO were issued after the alleged

28  backdating at Mercury had ended, and therefore could not have been materially false or

---

DEFENDANT DOUGLAS SMITH'S                    2                    CASE NO. 5:07-C02822-JF
MOT. TO DISMISS FAC                                                                        277095

1    misleading, nor could they have been an "essential link" in the accomplishment of any further

2    backdating.

3           As to the Tenth Claim (Section 16(b)), plaintiff fails to allege a valid cause of

4    action.  First, Section 16(b) requires only that Forms 3, 4 and 5 – stating changes in directors' and

5    officers' beneficial ownership in their company's stock – be filed, and does not by its terms

6    prohibit falsity.  Second and in any case, plaintiff continues to fail to identify a particular Form 3,

7    4 or 5 attributable to Mr. Smith that it claims was false or misleading when made.  See infra

8    Sections II and III.

9           The SEC's accusations of fraud, as well as the possible sanctions it seeks, are

10   unusually severe, and fundamental fairness requires that the Court closely scrutinize the SEC's

11   claims yet again.  Such scrutiny reveals a failure to allege a violation of the express terms of SOX

12   Section 304, as well as a continuing lack of particularity in the First Amended Complaint's claims

13   that Mr. Smith somehow committed fraud in connection with Mercury's proxy statements and

14   SEC Forms 3, 4 and 5.  Because the SEC has already had one chance to fix these problems

15   through an amended complaint, and has declined to do so, the Court should now dismiss these

16   claims with prejudice.

17          STATEMENT OF FACTS ALLEGED IN THE FIRST AMENDED COMPLAINT [2/]

18          The First Amended Complaint ("FAC") alleges that from 1997 through 2005,

19   Mercury and its senior officers, including "at various times" Mr. Smith, "engaged in a fraudulent

20   and deceptive scheme" to provide Mercury employees undisclosed compensation by backdating

21   the date on which stock options were granted.  FAC ¶ 1.  From 1997 through 2005, Mercury filed

22   financial statements that were false or misleading because they failed to comply with Generally

23   Accepted Accounting Principles ("GAAP") with respect to accounting for backdated options, and

24   made false or misleading statements about the Company's policy with respect to granting options

25   at fair market value.  FAC ¶¶ 1, 97-116.  From 1997 through April 2002, plaintiff alleges there

26

27   _____

28   [2/]  This brief Statement of Facts is based entirely on the allegations in the FAC, which are taken
         to be true solely for purposes of this motion.

     _____
     DEFENDANT DOUGLAS SMITH'S              3          CASE NO. 5:07-C02822-JF
     MOT. TO DISMISS FAC                                        277095

1   were 45 instances of stock option grants in which the exercise price of the stock option was

2   backdated to a date corresponding to a relative low point of Mercury's stock.  FAC ¶¶ 1, 44.

3            Mr. Smith did not join Mercury until 2000.  FAC ¶ 11.  He joined in a strategic

4   position, Executive Vice President of Corporate Development, not a legal, human resources,

5   executive compensation or financial position.  Id.  Mr. Smith had no authority over stock options

6   until November 2001, when he became Mercury's Chief Financial Officer ("CFO") and a member

7   of Mercury's Stock Option Committee.  FAC ¶¶ 11, 29, 59.  According to the SEC, by the time

8   Mr. Smith became CFO, the Company had been backdating options for almost five years.  FAC

9   ¶¶ 1, 44.  Within six months of Mr. Smith's becoming CFO of Mercury, the intentional selection

10   of favorable prices for stock options had ceased.  FAC ¶¶ 1, 44.  Plaintiff alleges that only two

11   stock option grants were backdated while Mr. Smith was CFO of Mercury, the January 22 and

12   March 20, 2002 employee grants.  These were the last two allegedly backdated grants before the

13   practice ended in April 2002.  FAC ¶¶ 44, 59-77.

14            On July 3, 2006, Mercury restated its financial statements for the years 2002, 2003

15   and 2004 and selected financial data for the fiscal years 2000-2004, in large part to correct for the

16   failure to have taken compensation charges for in-the-money options in an aggregate amount of

17   $258 million.  FAC ¶ 100.  Plaintiff claims that the Company's publicly filed financial statements

18   for the nine years between 1997 and 2005 – including nine annual Forms 10-K (filed March 1997

19   through March 2005) and twenty-five quarterly Forms 10-Q (filed May 14, 1997 through May 6,

20   2005) – as well as statements made by the Company that it granted options at fair market value,

21   were materially false and misleading due to the accounting adjustments that were later made.

22   FAC ¶¶ 98-105.  Plaintiff alleges that Mr. Smith reviewed and signed the annual Forms 10-K for

23   fiscal years 2002 through 2005, and reviewed and signed eleven quarterly Forms 10-Q filed

24   between November 2001 and May 2005.  FAC ¶¶ 101-102, 104-105.

25            Plaintiff alleges additional false and misleading statements by Mr. Smith, including

26   (as relevant to this motion):  (1) Mr. Smith (and defendant Landan) signed false Sarbanes-Oxley

27   Act Section 302 certifications included in Mercury's Forms 10-K and 10-Q beginning

28   November 12, 2002 stating that the reports "fairly present in all material respects the financial

DEFENDANT DOUGLAS SMITH'S      4      CASE NO. 5:07-C02822-JF
MOT. TO DISMISS FAC

1   condition and results of operations of Mercury" (FAC ¶¶ 101, 104-105), and these financial

2   statements were required to be restated (FAC ¶¶ 190-192); (2) Mr. Smith permitted materially

3   false and misleading information with respect to the grant dates of his options to be reported in

4   proxy statements sent to Mercury's shareholders from 1997 through 2003 (FAC ¶¶ 112-113); and

5   (3) Mr. Smith filed various unidentified Forms 3 and 4 with the SEC that contained false or

6   misleading statements with regard to his options' grant dates, expiration dates and exercise prices

7   (FAC ¶ 179).  Plaintiff alleges generally that Mr. Smith and the other defendants knew, should

8   have known, or were reckless in not knowing, that they made materially false and misleading

9   statements in these and other documents.  See, e.g., FAC ¶ 115.

10                                           ARGUMENT

11  I.      The Eleventh Claim for Forfeiture of Profits Pursuant to
12          Section 304 of the Sarbanes-Oxley Act is Not Actionable

13              Plaintiff seeks forfeiture of Mr. Smith's bonuses and stock profits pursuant to

14  Section 304 of the Sarbanes-Oxley Act of 2002, 15 U.S.C. § 7243 ("Section 304").  Section 304

15  provides in relevant part as follows:

16              If an issuer is required to prepare an accounting restatement due to
                the material noncompliance of the issuer, as a result of misconduct,
17              with any financial reporting requirement under the securities laws,
                the chief executive officer and chief financial officer of the issuer
18              shall reimburse the issuer for . . . any bonus [or stock profits]
                received by that person from the issuer during the 12-month period
19              following the first public issuance or filing with the Commission
                (whichever first occurs) of the financial document embodying such
20              financial reporting requirement . . . .

21  15 U.S.C. § 7243.  The following elements of a Section 304 claim are apparent from the statutory

22  text:  (1) the issuer must be required to restate its financial statements; (2) the restatement must be

23  due to "material non-compliance" with a financial reporting requirement; and (3) the material

24  noncompliance must be the "result of misconduct."

25          A.      Section 304 Does Not Apply Retroactively
26                  to the Misconduct Alleged Here

27              The "misconduct" alleged by plaintiff that resulted in the restatement of Mercury's

28  financial statements is the alleged backdating of stock options at Mercury in violation of the

1    Company's stock option plans, which caused the options to be priced at less than fair market value

2    on the date of grant.  See FAC ¶¶ 27-28.  Plaintiff alleges that the backdating itself ended in April

3    2002.  FAC ¶ 44.  SOX was enacted on July 30, 2002.  See Sarbanes-Oxley Act of 2002, Pub. L.

4    No. 107-204, 2002 U.S.C.C.A.N. (116 Stat.) 745.  Accordingly, the very last act of alleged

5    misconduct underlying the charged violation of Section 304 occurred before the statute was

6    enacted.  Since all of the conduct comprising an essential element of the Section 304 claim

7    occurred before the statute's passage, permitting Section 304 to reach this alleged misconduct

8    would constitute an impermissible, retroactive application of the statute.

9           There is a presumption against retroactive application of legislation absent an

10   "express command" from Congress to the contrary.  Landgraf v. USI Film Prods., 511 U.S. 244,

11   280 (1994).[3/]  See Humetrix, Inc., v. Gemplus S.C.A., 268 F.3d 910, 922 (9th Cir. 2001).

12   Congress has expressed no intention that Section 304 have a retroactive effect.[4/]

13          Section 304 itself and the Act's Conference Report and Congressional Record are

14   silent regarding retroactive application of Section 304.  Accordingly, the only courts to address the

15   issue have opined that Section 304 does not apply retroactively, as "nothing in the text of Section

16   304 suggests retroactive application of any of its provisions."  In re Goodyear Tire & Rubber Co.

17   Derivative Litig., No. 5:03CV2180, 2007 WL 43557, at *8 (N.D. Ohio Jan. 5, 2007).  See also In

18   re AFC Enters., Inc., Derivatiave Litig., 224 F.R.D. 515, 521 (N.D. Ga. 2004) ("There is no 'clear

19   indication' from Congress that [Section 304] of the Sarbanes-Oxley Act was intended to have

20   retroactive application.");  Plumbers & Pipefitters Local 572 Pension Fund v. Cook, No.

21   1:03cv168, 2004 WL 5349589, at *4 (S.D. Ohio Sept. 22, 2004) (SOX Section 304 claim "would

22   apply only to wrongdoing occurring after its effective date of July 30, 2002").  There is nothing in

---

23   [3/]   "[T]he presumption against retroactive legislation is deeply rooted in our jurisprudence, and
24          embodies a legal doctrine centuries older than our Republic."  Landgraf, 511 U.S. at 265
              (quoted in INS v. St. Cyr, 533 U.S. 289, 316 (2001)).

25   [4/]   Consistent with this presumption, at least one other section of SOX has been found not to
26          apply retroactively.  The majority of courts to address the issue have held that Section 804,
              which extends the statute of limitations for certain securities claims, does not apply
              retroactively.  See Lieberman v. Cambridge Partners, L.L.C., 432 F.3d 482, 492 (3d Cir.
27          2005); In re ADC Telecomms., Inc. Sec. Litig., 409 F.3d 974, 978 (8th Cir. 2005); Foss v.
              Bear, Stearns & Co., 394 F.3d 540, 542 (7th Cir. 2005); In re Enter. Mortgage Acceptance Co.
28          Sec. Litig., 391 F.3d 401, 406 (2d Cir. 2004).

---

1   Section 304's text, legislative history, or SOX as a whole which might imply that Congress

2   intended Section 304 to apply retroactively.[5/]

3          A statute operates retroactively when it "attaches new legal consequences to events

4   completed before its enactment," such as by "increas[ing] a party's liability for past conduct . . . ."

5   Landgraf, 511 U.S. at 270, 280 (quoted in Rodriguez v. Gen. Motors Corp., 27 F.3d 396, 398 (9th

6   Cir. 1994)).  See also Landgraf, 511 U.S. at 269 n.23 (citing Union Pac. R.R. Co. v. Laramie Stock

7   Yards Co., 231 U.S. 190, 199 (1913) (a statute has retroactive effect when it gives "a quality or

8   effect to acts or conduct which they did not have or did not contemplate when they were

9   performed.")); Eco Mfg. LLC v. Honeywell Int'l, 357 F.3d 649, 652 (7th Cir. 2003) ("A law is

10  retroactive when it alters the legal consequences of completed acts.").  Section 304 implicates both

11  aspects of retroactivity as applied here.  Section 304's forfeiture remedy both attaches new legal

12  consequences to, and increases Mr. Smith's liability for, alleged misconduct which had ceased,

13  according to plaintiff's own statement of the case, before the statute's enactment.

14          Section 304 imposes new legal consequences on misconduct which was complete

15  well before the statute's effective date because it is the underlying misconduct itself, not solely the

16  filing of false financial statements tainted by that misconduct, which Section 304 seeks to punish.

17  Every case examining the retroactive application of Section 304 focuses on when the

18  "misconduct" occurred, not when the corporation made the false financial disclosures that were

19  later restated.  For example, in In re AFC Enterprises, Inc. Derivative Litigation, AFC made

20  allegedly false and misleading financial disclosures, arising out of alleged misconduct, in its

21  quarterly financial results, including results filed in October 2002, *after* the July 30, 2002 adoption

22  of SOX.  See In re AFC Enters., 224 F.R.D. at 517.  The timing of this filing did not even enter the

23  Court's analysis, as it opined that "[t]he plain language of the statute indicates that ***the purpose of***

24

---

25  [5/]   See, e.g., Mehlenbacher v. Jitaru, No. 6:04CV1118ORL-22KRS, 2005 WL 4585859, at *10
       (M.D. Fla. June 6, 2005) ("As far as this Court can determine, no relevant legislative history
26     exists concerning § 304.  Apparently, the Sarbanes-Oxley Act was passed in a hurry.") (citing
       cases); Kourtney T. Cowart, The Sarbanes-Oxley Act:  How a Current Model in the Law of
27     Unintended Consequences May Affect Securities Litigation, 42 Duq. L. Rev. 293, 302-03
       (Winter 2004) (noting that there is "little formal legislative history regarding the Act because
28     few hearings were held and meaningful debate as to certain provisions was lacking").

---

1   *the Act is to punish 'misconduct,'*" and there was no indication that "Sarbanes-Oxley was

2   intended to have retroactive application to *misconduct which occurred before its effective date*."

3   Id. at 521 (emphasis added); see also In re Goodyear, 2007 WL 43557, at *1, 8 (restated financial

4   documents filed in "first two quarters of 2003" but Section 304 "would not apply to the vast

5   majority of the alleged *wrongful conduct* . . . because that alleged *conduct* took place prior to the

6   statute's enactment in July 2002") (emphasis added); Plumbers & Pipefitters Local 572, 2004 WL

7   5349589, at *4 (SOX Section 304 claim "would apply only to wrongdoing occurring after its

8   effective date of July 30, 2002, since Congress did not indicate that it should be applicable to

9   misconduct occurring before that date").  In fact, the Chairman of the SEC at the time of SOX's

10  enactment, Harvey L. Pitt, testified before Congress that the legal consequence of forfeiture of

11  bonuses and stock profits should be a sanction for "misconduct."[6]

12          Both a false financial filing *and* underlying misconduct are required elements to

13  state a Section 304 claim, so the new legal consequences of the Section 304 forfeiture penalty

14  attach to both.[7] Congress expressed no intention, let alone a clear one, that Section 304 impose

15  punishment predicated upon misconduct which ceased prior to the statute's effective date.

16  Accordingly, this Court should dismiss the Eleventh Claim for Relief for Section 304 forfeiture of

17  bonuses and stock profits as an impermissible retroactive application of the statute to the facts at

18  hand.

19

20

21

---

22  [6]  See H.R. 3762 – The Corporate and Auditing Accountability, and Transparency Act of 2002:
    Hearing Before the H. Comm'n on Fin. Servs., 107th Cong. (Mar. 20, 2002) (remarks by

23  Harvey L. Pitt, SEC Chairman) ("Just last week, we brought a case . . . in which we have
    sought to have a former CEO of a public company *disgorge his compensation in stock options*

24  *and bonuses* . . . .  I believe that the Commission has to be much more aggressive in *targeting
    misconduct*.  And *where serious misconduct has occurred, I think one incentive or sanction*

25  *has to be removing any benefits* . . . .") (emphasis added).

26  [7]  In the analogous context of the retroactivity of criminal statutes and sentencing guidelines, the
    Ninth Circuit has stated unequivocally that "the Government has to show that a complete
    offense could be charged based on conduct occurring after [enactment], in order to avoid an *ex

27  post facto* problem . . . ."  United States v. Robertson, 73 F.3d 249, 252 (9th Cir. 1996).  Here,
    the SEC cannot charge a complete Section 304 offense if it relies (as it must) solely upon

28  conduct occurring after SOX's enactment.

---

1

B.   Even if Section 304 Did Apply Retroactively, None
     of the Filings Alleged Qualifies to Trigger Forfeiture
2    of Profits as None Is a "First" Filing Required to Be
     Restated Due to Backdating

3

4    Plaintiff seeks forfeiture of bonuses and stock profits based on every Mercury

5    quarterly and annual report filed from the November 12, 2002 10-Q until Mercury's July 3, 2006

6    restatement of financial results.  See FAC ¶ 192.  None of these SEC filings, however, provides a

7    basis for Section 304 forfeiture under the express terms of the statute.

8            Section 304 only requires forfeiture of bonuses or stock profits received by a CEO

9    or CFO "during the 12-month period following the ***first public issuance or filing*** with the

10   Commission (whichever first occurs) of the financial document embodying such [material

11   noncompliance with a] financial reporting requirement . . . ."  15 U.S.C. § 7243(a)(1) (emphasis

12   added).  The earliest financial document plaintiff relies on here is Mercury's November 12, 2002

13   10-Q for the third quarter of 2002.  However, plaintiff alleges that the backdating itself ended in

14   April 2002.  Plaintiff thus alleges that the very *last* allegedly backdated grant should have been

15   dated April 1, 2002 (not March 20, 2002), and should have been accounted for by taking a

16   compensation expense in the ***second quarter*** of 2002.  FAC ¶ 44.

17           If a compensation expense were taken for the April 1, 2002 grant in order to

18   properly account for it, however, that expense would have been reflected in the August 13, 2002

19   Form 10-Q for the second quarter of 2002, which encompasses April, May and June 2002.  That

20   Form 10-Q, then, is the "***first public issuance or filing*** with the Commission . . . of the financial

21   document embodying such financial reporting requirement . . . ."  Each and every public filing

22   *after* the August 13, 2002 Form 10-Q – including all of the filings alleged by plaintiff to be the

23   basis for its Section 304 forfeiture claim (November 12, 2002 Form 10-Q and thereafter) – merely

24   repeats the previous noncompliance with the requirement to take a compensation expense for in-

25   the-money option grants, and thus falls outside the express temporal language of the statute

26   (applying only to the "first" such filing).

27           Therefore, *none* of the filings alleged by plaintiff to be the basis for its Section 304

28   claim (filings from November 12, 2002 on) in fact meets the express requirements for forfeiture of

DEFENDANT DOUGLAS SMITH'S          9          CASE NO. 5:07-C02822-JF
MOT. TO DISMISS FAC                                    277095

1   bonuses and stock profits pursuant to Section 304, because none is the "***first*** public issuance or

2   filing" (after the effective date of SOX) of the financial document in which the Company failed to

3   comply with the applicable reporting requirement that its financial statements reflect non-cash

4   compensation charges for backdated stock options.

5          Any alternative interpretation of Section 304 which seeks to replace or eliminate

6   the word "first" in the statute cannot be endorsed.  See Boise Cascade Corp. v. EPA, 942 F.2d

7   1427, 1432 (9th Cir. 1991) ("Under accepted canons of statutory interpretation, we must interpret

8   statutes as a whole, giving effect to each word."); SEC v. Shanahan, No. 4:07CV270 JCH, 2008

9   WL 5211909, at *5, 8 (E.D. Mo. Dec. 12, 2008) (rejecting SEC's argument that a Section 304

10  violation lies even when a restatement has not actually been made, due to plain language of

11  statute).  It is the duty of the Court to interpret the statute as written, not as a party wishes it were

12  written.  See Resident Councils of Wash. v. Leavitt, 500 F.3d 1025, 1031 (9th Cir. 2007) (in

13  conducting a statutory analysis, a court "may not rewrite a statute, but instead [must] simply

14  'construe what Congress has written. . . .'").  For each allegedly backdated stock option, there is

15  one financial statement that meets the definition as the "first public issuance or filing" embodying

16  the failure to take a compensation expense as required.  Though later financial statements

17  (including those alleged by the SEC) may also need to be restated to amortize that compensation

18  expense over the life of the option, Congress did not extend Section 304's forfeiture penalty to

19  those later filings, as none of them qualifies as the "first" one containing the financial reporting

20  error.  This interpretation makes sense, as it gives meaning to the word "first" and thus prohibits

21  forfeiture of several years' worth of compensation due to the continuing consequences of a single

22  accounting error that infects several periods of financial statements.

23          None of the Forms 10-Q or 10-K alleged by the SEC as the basis for its Section 304

24  claim (starting with Mercury's November 12, 2002 10-Q for the third quarter of 2002) is the "***first***

25  public issuance or filing," required for Section 304 forfeiture to apply.[8/]  The claim for forfeiture

---

[8/]  Mr. Smith is not taking the position that there is only a single financial statement filed by
Mercury that meets the requirements of Section 304.  Instead, Mr. Smith's view, supported by
the plain language of Section 304, is that for each allegedly backdated stock option grant, there
is one "first" public filing of a financial statement in which a compensation expense failed to
be taken by Mercury for that grant, allegedly violating a financial reporting requirement (APB

---

DEFENDANT DOUGLAS SMITH'S                    10          CASE NO. 5:07-C02822-JF
MOT. TO DISMISS FAC                                                          277095

1  of Mr. Smith's bonuses and stock profits pursuant to Section 304 of SOX must be dismissed on

2  this ground as well.

3          C.      The Rule of Lenity Requires that any Ambiguities
                   in Section 304 Be Resolved in Favor of Mr. Smith
4

5              "Due process requires that before a criminal sanction or significant civil or

6  administrative penalty attaches, an individual must have fair warning of the conduct prohibited by

7  the statute or the regulation that makes such a sanction possible." County of Suffolk, N.Y. v. First

8  Am. Real Estate Solutions, 261 F.3d 179, 195 (2d Cir. 2001).  The rule of lenity is a canon of

9  statutory construction that arises out of this general principle of due process.  The rule of lenity

10 "requires that ambiguities in a criminal or punitive statute be resolved in favor of the defendants."

11 Fed. Election Comm'n v. Arlen Specter '96, 150 F. Supp. 2d 797, 812 (E.D. Pa. 2001).  The rule

12 of lenity applies to civil forfeiture statutes that are punitive in nature.  See United States v. One

13 1973 Rolls Royce, V.I.N. SRH-16266, 43 F.3d 794, 801 (3d Cir. 1994).

14             The SEC seeks a multi-million dollar civil penalty from Mr. Smith through a

15 statute that purportedly requires no culpable conduct whatsoever on his part.  It is self-evident that

16 Section 304 is punitive.  While Mr. Smith believes that his interpretation of Section 304 is correct,

17 if the Court were to conclude otherwise, it could do so only by resolving arguable ambiguities in

18 the terms of Section 304 in favor of the SEC.  Cf. Mehlenbacher v. Jitaru, No. 6:04CV1118ORL-

19 22KRS, 2005 WL 4585859, at *9 (M.D. Fla. June 6, 2005) ("[Section] 304 is not a model of

20 clarity.");  James E. Johnson, Disgorgement of Executive Compensation, 865 PLI/Comm 149, 156

21 (2004) ("[Section 304] contains a number of significant ambiguities that the legislative history

22 does little to resolve.").  That would contravene the rule of lenity.  The rule of lenity requires that

23 this Court construe any arguable ambiguities that may exist in Section 304 – including (i) the

24
   No. 25).  However, every single one of those "first" financial statements was issued before
25 SOX Section 302 began to require CEOs and CFOs to certify financial statements (which for
   Mercury began with the November 12, 2002 Form 10-Q).  The SEC only alleges the
26 November 12, 2002 Form 10-Q and later filings as the basis for its Section 304 claim, but
   those filings are long after the backdating at Mercury had ceased, and not one of them
27 reflected the "first" time the failure to take a compensation expense for any backdated
   grant at Mercury.  Thus, none of the filings alleged by the SEC constitutes a "first" filing
28 under SOX.

DEFENDANT DOUGLAS SMITH'S              11              CASE NO. 5:07-C02822-JF
MOT. TO DISMISS FAC                                                              277095

1   definition of "first public issuance or filing" and (ii) whether Section 304 was intended to attach

2   new consequences to misconduct that results in the filing of false financial statements – in

3   Mr. Smith's favor.  Accordingly, the SEC's Section 304 claim should be dismissed.

4   II.      **The Ninth Claim for Relief for Violation of Section 16(a)**
         **of the Exchange Act and Rule 16a-3 Must Be Dismissed**
5        **for Failure to Plead with Particularity Mr. Smith's Failure**
         **to File Any Specific Form**
6

7          Plaintiff was given an opportunity to amend its Section 16(a) claim, which the

8   Court correctly noted lacked sufficient particularity to allow Mr. Smith to determine with certainty

9   which documents formed the bases for this claim.  Order at 13.[9/]  Rather than curing these defects,

10  plaintiff has simply reasserted vague, conclusory allegations.  The Ninth Claim of the FAC suffers

11  from the same lack of particularity that existed in the original Complaint.  Because plaintiff has

12  already been given one opportunity to improve this claim and has utterly failed to do so, it should

13  now be dismissed with prejudice.

14         A.      **Plaintiff Has Failed Once Again to Plead With**
                 **Particularity What Filings by Mr. Smith Form**
15               **the Basis for this Claim**

16         Section 16(a) of the Exchange Act requires in relevant part as follows:

17             Every person who is . . . an officer of the issuer of [any equity
             security which is registered pursuant to section 12] shall file . . . at
18             the time of the registration of such security[,] within 10 days after he
             or she becomes such [officer, or] if there has been a change in such
19             ownership . . . a statement of the amount of all equity securities of
             such issuer of which the filing person is the beneficial owner; and
20             . . . shall indicate ownership by the filing person at the date of filing,
             any such changes in such ownership, and such purchases and sales
21             of the security-based swap agreements as have occurred since the
             most recent such filing . . . .
22

23  15 U.S.C. § 78p(a).

24         The particularity requirement of Federal Rule of Civil Procedure 9(b) – requiring

25  that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be

26  _____

27  [9/]  The Order Granting in Part Motions to Dismiss of Defendants Landan, Smith and Skaer with
      Leave to Amend; and Vacating Defendant Abrams' Motion to Dismiss, entered on September
28    30, 2008, will be referred to as "Order."

DEFENDANT DOUGLAS SMITH'S                    12                  CASE NO. 5:07-C02822-JF
MOT. TO DISMISS FAC                                                       277095

1   stated with particularity" –  applies to plaintiff's Section 16(a) claim, as the entirety of the

2   Complaint sounds in fraud. Fed. R. Civ. P. 9(b); see, e.g., In re Stac Elecs. Sec. Litig., 89 F.3d

3   1399, 1404-05 (9th Cir. 1996) (holding that Rule 9(b) applies even to claims that do not require a

4   showing of fraud when the nature of the allegations "clearly sound in fraud").  Here, plaintiff

5   alleges that Mr. Smith, along with the other defendants, "engaged in a fraudulent and deceptive

6   scheme to provide executives and other employees undisclosed, secret compensation" by

7   "backdat[ing] the date on which stock options were granted to executives and employees so that

8   those options appeared to have been granted at times corresponding to low points of the closing

9   price of the company's stock, resulting in artificially and fraudulently low exercise prices for those

10  options," and that the "accounting consequences of these benefits were then concealed . . . ."  FAC

11  ¶ 1. These are allegations of intentional deception and concealment, and undoubtedly sound in

12  fraud.  Thus, plaintiff's allegations are subject to Rule 9(b)'s particularity requirement.  Plaintiff's

13  failure to plead fraud with the requisite particularity is grounds for dismissal.  See Wool v.

14  Tandem Computers, Inc., 818 F.2d 1433, 1439 (9th Cir. 1987).

15          To satisfy Rule 9(b), the FAC must "set forth what is false or misleading about a

16  statement, and why it is false."  In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994)

17  (en banc).  First, the pleadings must "state precisely the time, place, and nature of the misleading

18  statements, misrepresentations, and specific acts of fraud."  Kaplan v. Rose, 49 F.3d 1363, 1370

19  (9th Cir. 1994).  "Averments of fraud must be accompanied by 'the who, what, when, where, and

20  how' of the misconduct charged."  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir.

21  2003) (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)).

22          Rule 9(b) also imposes a second requirement, that the complaint "set forth an

23  explanation as to why the statement or omission complained of was false or misleading."

24  GlenFed, 42 F.3d at 1548.  Conclusory allegations that a defendant's conduct was fraudulent or in

25  violation of federal securities law are insufficient.  See Semegen v. Weidner, 780 F.2d 727, 731

26  (9th Cir. 1985); Segal v. Gordon, 467 F.2d 602, 606-08 (2d Cir. 1972).  Further, plaintiff must

27  satisfy Rule 9(b) for each defendant; here, the SEC must distinguish among those it sues and

28

DEFENDANT DOUGLAS SMITH'S              13              CASE NO. 5:07-C02822-JF
MOT. TO DISMISS FAC                                                    277095

1    "enlighten each defendant as to his or her part in the alleged fraud."  Bruns v. Ledbetter, 583 F.

2    Supp. 1050, 1052 (S.D. Cal. 1984).

3                   As in plaintiff's original Complaint, however, the FAC fails to identify any

4    particular Form 3, Form 4 or Form 5 filed or caused to be filed by Mr. Smith, though it is only

5    those documents which give rise to the Section 16(a) claim.  See SEC Rule 16a-3, 17 C.F.R.

6    § 240.16a-3 ("All such statements shall be prepared and filed in accordance with the requirements

7    of the applicable form.").[10/]  Rather, the FAC continues to lump all the defendants and their

8    respective, unidentified Forms 3 and 4 together, alleging nothing more than that "grant or exercise

9    transactions involving Defendants Landan, Smith, Abrams or Skaer required the filing of Forms 3

10   and 4 with the Commission" and that "Landan, Smith, Abrams and Skaer filed false Forms 3 and 4

11   with the Commission that contained false or misleading statements with regard to the options'

12   grant dates, expiration dates and exercise prices."  FAC ¶¶ 178-179.  Mr. Smith cannot respond

13   meaningfully to this claim.  Because plaintiff's claim continues to lack specificity and continues to

14   fail to allege with any particularity the Forms 3, Forms 4 or Forms 5 alleged to violate Section

15   16(a), even after the Court ordered plaintiff to provide the requisite particularity, it should be

16   dismissed with prejudice.

17            B.     Plaintiff Fails to Allege that Mr. Smith Violated
                    Section 16(a) by Failing to File the Required Forms
18

19                   Even assuming that plaintiff could plead with particularity a Form 3, 4 or 5 filing

20   for which Mr. Smith was responsible, and even if those filings reflected allegedly backdated

21   grants, plaintiff has not alleged –  and cannot allege – that Mr. Smith has not complied with the

22   requirements of Section 16(a) and Rule 16a-3.  Those provisions merely require the filing of the

23   requisite Forms with the SEC.  Plaintiff does not allege that Mr. Smith failed to file the periodic

24   statements of ownership mandated by Section 16(a) and Rule 16a-3 with the SEC.[11/]

25

26   [10/]  Rule 16a-3 provides that an initial statement by an insider is to be made on Form 3, and
          subsequent statements of changes in beneficial ownership are to be made on Form 4 or
27        Form 5.  17 C.F.R. § 240.16a-3.

28   [11/]  Cases holding a defendant liable for violating Section 16(a) generally involve instances where
          an insider fails to file such periodic reports.  See, e.g., SEC v. World-Wide Coin Invs., Ltd.,

---

DEFENDANT DOUGLAS SMITH'S              14              CASE NO. 5:07-C02822-JF
MOT. TO DISMISS FAC                                              277095

1    In an apparent attempt to heap as many claims upon Mr. Smith as possible, plaintiff

2  reads an additional requirement into Section 16(a) and Rule 16a-3 – one not supported by the plain

3  language of the statute or rule nor supported by any case law – by alleging that Mr. Smith filed

4  false or misleading statements of beneficial ownership.  While materially false SEC filings may

5  trigger liability under other sections of the securities laws, such as Sections 10(b) and 17(a) (which

6  have been asserted against Mr. Smith), Section 16(a) and the Rules thereunder say nothing about

7  false filings.

8    Mr. Smith's filings fulfilled the purpose of Section 16(a), passed by Congress "to

9  allow public investors to review insiders' purchases and sales for suggestions of the insider's

10  private opinions about the company's future."  Marleen A. O'Connor, <u>Toward a More Efficient</u>

11  <u>Deterrence of Insider Trading: The Repeal of Section 16(b)</u>, 58 Fordham L. Rev. 309, 322 (1989)

12  (citing H.R. Rep. No. 1383, 73d Cong., 2d Sess. 13 (1934) at 24).  Mr. Smith's stock acquisitions

13  and dispositions were all fully reflected in his Form 3 and Form 4 filings, allowing stockholders to

14  determine what interest he had in Mercury and what his private opinion of the Company's future

15  might be, thus serving the purpose of Section 16(a) reports.  <u>See</u> Steve Thel, <u>The Genius of</u>

16  <u>Section 16:  Regulating the Management of Publicly Held Companies</u>, 42 Hastings L.J. 391, 423

17  (1991) (explaining that Section 16(a) reports disclosing management holdings enabled

18  stockholders to protect themselves from uninterested managers).  <u>See also</u> <u>SEC v. Shattuck Denn</u>

19  <u>Mining Corp.</u>, 297 F. Supp. 470, 477 (D.C.N.Y. 1968) (finding defendant liable for Section 16(a)

20  violation for his failure to make complete disclosures of his stock disposition in certain Forms 4).

21  Because plaintiff's allegations of falsity as to alleged Forms 3, 4 and 5 (even if plaintiff had

22  adequately identified and attributed them to Mr. Smith) do not trigger liability under Section

23  16(a), the claim should be dismissed with prejudice.

24

25

26

27

---

28    567 F. Supp. 724, 758 (D.C. Ga. 1983) (finding company liable for aiding and abetting
violations of Section 16(a) where officer had never filed Forms 3 and Forms 4).

1
2
3

III.    The Tenth Claim for Relief for Violation of Section
        14(a) of the Exchange Act and Rule 14a-9 Must Be
        Dismissed for Failure to Plead that Mr. Smith Made
        Statements in Proxies that Were Materially False or
        Misleading When Made

4       Like the Ninth Claim, this Court gave plaintiff an opportunity to amend its Tenth

5   Claim for violation of Section 14(a) and Rule 14a-9 to satisfy Rule 9(b)'s particularity

6   requirements, but plaintiff has failed to improve its allegations.  As a result, this claim should now

7   be dismissed with prejudice.

8       To state a claim under Section 14(a) and Rule 14a-9, plaintiff must allege a false or

9   misleading statement or omission of material fact; that the misstatement or omission was made

10  with the requisite level of culpability; and that the proxy solicitation was an essential link in the

11  accomplishment of the transaction.  See Desaigoudar v. Meyercord, 223 F.3d 1020, 1022 (9th Cir.

12  2000) (citing TSC Indus. v. Northway, Inc., 426 U.S. 438, 444 & n.7 (1976)).

13      The Section 14(a) claim here must be dismissed because plaintiff fails to identify

14  which statements in the proxies are allegedly false or misleading, thus rendering it impossible to

15  determine whether the allegedly false or misleading statements were material.  Additionally,

16  plaintiff has not adequately alleged that Mr. Smith was actually involved in drafting or releasing

17  Mercury's proxy statements such that he may be liable for "soliciting" proxies.  Finally, even

18  assuming that Mr. Smith played a role in soliciting proxies as Mercury's CFO, the only two proxy

19  statements filed while he was CFO – on April 12, 2002 and April 2, 2003 – are not actionable as

20  they were filed after all backdating at Mercury had ceased, and therefore could not have been an

21  "essential link" in accomplishing the backdating.

22
23

        A.    Plaintiff Fails to Allege Materially Misleading
              Statements in the Proxy Solicitations

24      In contravention of Rule 9(b), plaintiff still does not specifically identify the

25  statements that it alleges were materially false or misleading within the proxies enumerated in its

26  Tenth Claim.  See FAC ¶ 185.  Based on plaintiff's own allegations that Mr. Smith did not join

27  Mercury until 2000, it is clear that many of the Company's proxy statements contain no

28  information whatsoever about Mr. Smith's grant dates or exercise prices.  Thus, without the

1  requisite particularity regarding the alleged false or misleading statements in the challenged proxy

2  statements, Mr. Smith cannot respond to this claim.

3  By failing to identify which statements were allegedly false or misleading, plaintiff

4  also makes it impossible to determine whether any such misleading or false information was

5  material. To maintain a Section 14(a) claim, plaintiff needs to demonstrate the materiality of the

6  allegedly false or misleading statement. Desaigoudar, 223 F.3d at 1026 ("there can be no Section

7  14(a) liability without materiality"). Plaintiff's conclusory allegations that the proxies contained

8  statements that were false and misleading with respect to material facts is not sufficient since the

9  materiality of any alleged misleading information must be evaluated in the specific context of each

10 proxy: "[T]the false statement must have a tendency to influence a decision – how an investor

11 will vote." United States v. Berger, 473 F.3d 1080, 1100 (9th Cir. 2007) (citing TSC Industries,

12 426 U.S. at 449 (information is material if "there is a substantial likelihood that a reasonable

13 shareholder would consider [omitted or misleading information] important in deciding how to

14 vote")). See Weiner v. Quaker Oats Co., 129 F.3d 310, 317 (3d Cir. 1997) (internal citations

15 omitted) (immateriality may be decided as a matter of law "if the alleged misrepresentations or

16 omissions are so obviously unimportant to an investor that reasonable minds cannot differ on the

17 question of materiality").

18 Because plaintiff has not identified specific statements that are alleged to be

19 materially false or misleading, Mr. Smith is unable to answer the Section 14(a) claim against him

20 by showing, for example, that any of the statements alleged to be false or misleading was

21 immaterial as a matter of law because a reasonable investor would not consider statements about

22 stock option grant dates and prices important in deciding on how to vote on issues for which the

23 proxies were sought. See, e.g., Seinfeld v. Bartz, 322 F.3d 693, 698 (9th Cir. 2003) (rejecting

24 argument that omitted information about Black-Scholes valuation of shares granted to executive

25 officers was material when voting on amendment to stock option plan for grants to outside

26 directors).[12]

---

27 [12] Not only does plaintiff fail to identify any false statement, but it also fails to plead that Mr.
Smith prepared any particular proxy statement. The FAC does not allege that Mr. Smith had
28 any real involvement in the issuance of the proxy statements, other than by stating conclusorily

---

DEFENDANT DOUGLAS SMITH'S          17          CASE NO. 5:07-C02822-JF
MOT. TO DISMISS FAC                                              277095

1

B.   The Proxies Filed While Mr. Smith Was
     CFO Are Not Actionable as They Were Filed,
2    According to Plaintiff's Own Allegations,
     After All Alleged Backdating Had Ceased

3

4          Plaintiff has not alleged – and cannot allege – how Mr. Smith could be liable for

5   proxy statements made before he became CFO of Mercury.[13/]   Nor is Mr. Smith liable under

6   Section 14(a) for the proxies he prepared or signed as CFO, because there could be no transaction

7   causation as to the proxy statements filed on April 11, 2002 and April 3, 2003, the only two proxy

8   statements filed during Mr. Smith's tenure as Mercury's CFO.  Transaction causation in the

9   context of stock option backdating generally involves a three-step process:  (1) first, there is a

10  stock option grant manipulation that pre-dates a proxy statement; (2) next, there is a false or

11  misleading proxy statement that leads to the approval of the recommended action, generally the

12  reelection of directors or the amendment of the Company's stock option plan, and (3) finally, these

13  directors grant additional manipulated stock options.  In re Asyst Techs., Inc. Derivatiave Litig.,

14  No. C-06-04669 EDL, 2008 WL 2169021, at *9 (N.D. Cal. May 23, 2008) (citing In re iBasis, Inc.

15  Derivatiave Litig., 532 F. Supp. 2d 214, 223 (D. Mass. 2007)).  Where a plaintiff cannot establish

16  the last step, the plaintiff cannot show the essential element of transaction causation.  Id.  In other

17  that Mr. Smith, along with the other defendants, "prepared and/or reviewed each proxy
    statement . . . between 2000 and 2003 . . . ."  FAC ¶ 112.  But such a conclusory statement
18  ignores the fact that Mr. Smith's position – and thus responsibilities – changed while he was at
    Mercury, since for part of his tenure, he served as Executive Vice President of Corporate
19  Development, and only in late 2001 became CFO.  FAC ¶ 11.  The fact that the FAC
    summarily alleges that Mr. Smith "prepared and/or reviewed" each proxy statement during the
20  entirety of his tenure at Mercury – regardless of his position at the Company – underscores the
    Complaint's lack of specificity and its inability to plead any facts showing Mr. Smith's
21  participation in soliciting proxies, whether as Executive Vice President of Corporate
    Development or as CFO.  See Tracinda Corp. v. DaimlerChrysler AG, 364 F. Supp. 2d 362,
22  391 (D. Del. 2005) (holding that defendant who "may have read" proxy solicitation but was
    not involved in preparing or approving the document could not be subject to Section 14(a)
23  liability).

24  [13/]  Plaintiff does not allege any facts showing that Mr. Smith prepared or signed any proxy
    statement before he became CFO.  The mere fact that someone's name appears in a proxy
25  statement does not trigger liability, as stated in SEC v. Falstaff Brewing Corp., 629 F.2d 62, 68
    (D.C. Cir. 1980) ("Of course, the simple appearance of one's name in a proxy statement does
26  not trigger liability for any misstatement appearing therein.").  Rather, for Section 14(a)
    liability to be triggered, there needs to be a substantial connection between the use of the
27  person's name and the solicitation effort.  Id.  The SEC's failure to identify specific proxies
    leaves Mr. Smith unable to show that the use of his name lacked a substantial connection to
28  the solicitation effort of each specific proxy statement.

DEFENDANT DOUGLAS SMITH'S           18             CASE NO. 5:07-C02822-JF
MOT. TO DISMISS FAC                                277095

1   words, the essential link requirement can "only be established when the proxy statement at issue

2   *directly authorizes* the loss-generating corporate action."  Hulliung v. Bolen, 548 F. Supp. 2d 336,

3   341 (N.D. Tex. 2008) (emphasis added).  This requirement flows from the purpose of Section

4   14(a), which is to prevent shareholder voting on the basis of deceptive proxy solicitations.

5   J.I. Case Co. v. Borak, 377 U.S. 426, 431 (1964), overruled on other grounds by Cort v. Ash, 422

6   U.S. 66 (1975).  Accordingly, any Section 14(a) claim based on proxy statements that were issued

7   after all the alleged backdating had ceased, would fail.  See e.g., iBasis, 532 F. Supp. 2d at 223

8   (dismissing Section 14(a) claim where plaintiffs failed to allege manipulated stock options that

9   post-dated the proxy at issue).

10          Here, according to plaintiff's own allegations, all the proxy statements filed while

11   Mr. Smith served as CFO occurred after all alleged backdating had ceased.  Compare FAC ¶ 44

12   (last allegedly backdated grant is dated March 20, 2002) with FAC ¶ 186 (proxies filed after Smith

13   became CFO were dated April 11, 2002 and April 3, 2003).  As such, plaintiff cannot show the

14   transaction causation element necessary to state a viable Section 14(a) claim against Mr. Smith.

15          Plaintiff's Section 14(a) claim should be dismissed with prejudice as to Mr. Smith

16   because the FAC (i) does not plead with particularity what role, if any, Mr. Smith had in the

17   preparation of proxies before he became CFO, or (ii) that any proxy prepared while Mr. Smith was

18   CFO could be an "essential link" in the accomplishment of further backdating at Mercury.

19                                          CONCLUSION

20          For all of the foregoing reasons, the Ninth, Tenth and Eleventh Claims for Relief of

21   the First Amended Complaint must be dismissed for failure to state a claim pursuant to Rule

22   12(b)(6), and failure to plead fraud with particularity pursuant to Rule 9(b).

23   Dated:  December 23, 2008                  SHEARMAN & STERLING LLP

24

25                                          By: _____/s/_____

26                                                      Jeffrey S. Facter

27                                          Attorneys for Defendant Douglas Smith

28

---

DEFENDANT DOUGLAS SMITH'S              19              CASE NO. 5:07-C02822-JF
MOT. TO DISMISS FAC                                                   277095