Jeffrey S. Facter (State Bar No. 123817)
Patrick D. Robbins (State Bar No. 152288)
Emily V. Griffen (State Bar No. 209162)
SHEARMAN & STERLING LLP
525 Market Street, Suite 1500
San Francisco, CA 94105-2723
Telephone: (415) 616-1100
Facsimile: (415) 616-1199
Email:       jfacter@shearman.com
             probbins@shearman.com
             egriffen@shearman.com

Attorneys for Defendant Douglas Smith

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No.: 5:07-C02822-JF |
| Plaintiff, | Assigned to Hon. Jeremy Fogel |
| v. | DEFENDANT DOUGLAS SMITH'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION TO DISMISS THE NINTH, TENTH AND ELEVENTH CLAIMS FOR RELIEF ALLEGED IN THE FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(B)(6) AND 9(B) |
| MERCURY INTERACTIVE, LLC (F/K/A/ MERCURY INTERACTIVE, INC.), AMNON LANDAN, SHARLENE ABRAMS, DOUGLAS SMITH and SUSAN SKAER, | |
| Defendants. | Date:        March 20, 2009<br>Time:        9:00 a.m.<br>Judge:       Honorable Jeremy Fogel<br>Courtroom:   No. 3, 5th Floor |

1

## TABLE OF CONTENTS

2
Page

3    INTRODUCTION ................................................................................................................ 1

4    ARGUMENT .................................................................................................................... 2

5    I.    The Eleventh Claim for Forfeiture of Profits Pursuant to Section 304 of the
           Sarbanes-Oxley Act is Not Actionable ...................................................................... 2
6
7          A.    The Court Should Reject Plaintiff's Attempt to Rewrite the Language of
                 Section 304 to Delete the "First Public Issuance or Filing" Limitation ............................ 2

8          B.    Section 304 Cannot Apply Retroactively to the Misconduct Alleged Here ..................... 4

9    II.   The Ninth Claim Must be Dismissed Because the Conduct Pleaded Does Not
           Violate Section 16(a) and Rule 16a-3 ................................................................... 10
10
11   III.  The Tenth Claim Pursuant to Section 14(a) and Rule 14a-9 Must Be Dismissed
           for Failure to Plead that Mr. Smith Made Materially False or Misleading
           Statements in Any Proxy ................................................................................... 12
12
13   CONCLUSION ............................................................................................................. 14

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>TABLE OF AUTHORITIES</u>

Page

<u>Cases</u>

Desaigoudar v. Meyercord, 223 F.3d 1020 (9th Cir. 2000) ......................................................... 12

GAF Corp. v. Milstein, 453 F.2d 709 (2d Cir. 1971)................................................................... 10

In re Goodyear Tire & Rubber Co. Derivative Litig., No. 5:03CV2180, 2007 WL 43557
    (N.D. Ohio Jan. 5, 2007) ........................................................................................................... 9

Hulliung v. Bolen, 548 F. Supp. 2d 336 (N.D. Tex. 2008) ........................................................... 13

Kelley v. Rambus, 2008 U.S. Dist. LEXIS 100319 (N.D. Cal. Dec. 9, 2008)............................... 13

Landgraf v. USI Film Prods., 511 U.S. 244 (1994) ....................................................................... 9

Landmark Screens LLC v. Morgan, Lewis & Bockius LLP, No. 08-2581-JF, 2008 U.S.
    Dist. LEXIS 87646 (N.D. Cal. Oct. 2, 2008) ......................................................................... 6

Mehlenbacher v. Jitaru, No. 6:04CV1118ORL-22KRS, 2005 WL 4585859 (M.D. Fla.
    June 6, 2005) ............................................................................................................................ 3

SEC v. Falstaff Brewing Corp., 629 F.2d 62 (D.C. Cir. 1980) .................................................... 13

SEC v. Levy, 706 F. Supp. 61 (D.D.C. 1989) .............................................................................. 12

SEC v. Lucent Techs., 363 F. Supp. 2d 708 (D.N.J. 2005)........................................................... 10

SEC v. Sablhok, No. C 08-04238 CRB, slip op. (N.D. Cal. Feb. 18, 2009)................................. 8

SEC v. Shattuck Denn Mining, 297 F. Supp. 470 (S.D.N.Y. 1968) ............................................. 10

Schneider v. Cal. Dep't of Corrections, 151 F.3d 1194 (9th Cir. 1998) ........................................ 5

In re Tyco Int'l, No. MDL 02-1335-B, 2004 WL 2348315 (D.N.H. Oct. 14, 2004) ................... 12

Union Pac. R.R. Co. v. Laramie Stock Yards, Co., 231 U.S. 190 (1913)....................................... 9

United States v. Bilzerian, 926 F.2d 1285 (2d Cir. 1991) ........................................................... 12

Wilson v. Great American Indus., 855 F.2d 987 (2d Cir. 1988)................................................... 12

Yamamoto v. Omiya, 564 F.2d 1319 (9th Cir. 1977) ................................................................... 14

<u>Statutes</u>

15 U.S.C. § 7243 ....................................................................................................................... 1, 7

15 U.S.C. § 7243(a)(1) .................................................................................................................. 3

1

2                                    <u>Miscellaneous</u>

3   H.R. Rep. No. 1383, 73d Cong., 2d Sess. 13 (1934)...................................................................... 11

4   Marleen A. O'Connor, <u>Toward a More Efficient Deterrence of Insider Trading:  The
       Repeal of Section 16(b)</u>, 58 Fordham L. Rev. 309, 323 (1989)........................................ 10

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

<u>INTRODUCTION</u>

Defendant Douglas Smith's motion to dismiss challenges plaintiff's attempt to expand its powers under Sarbanes-Oxley Act ("SOX") Section 304 beyond the limitations imposed by the plain language and meaning of the statute.  Most importantly, Section 304 limits plaintiff's recovery of an executive's bonus and stock profits to those received "during the 12-month period following <u>the first</u> public issuance or filing with the Commission (whichever first occurs) of the financial document embodying" a financial error that must be restated.  15 U.S.C. § 7243 (emphasis added).  In its opposition, plaintiff fails to respond in any meaningful way to the argument that its Section 304 claim is not actionable because <u>none</u> of the filings it alleges as the basis for its claim is a "first public issuance or filing" of a financial statement that contained inaccurate accounting for backdated stock options.

For each backdated grant at Mercury, there was a "first public issuance or filing" of financial statements that failed to record the required compensation expense for that grant under APB No. 25.  But because, as plaintiff alleges, backdating at Mercury ended in April 2002, every single one of those "first" filings occurred *before* the filings alleged by plaintiff to violate Section 304 (beginning with the November 2002 Form 10-Q).  Thus, none of the filings alleged by plaintiff is a "first" filing, and none is actionable under Section 304.  Plaintiff devotes less than a paragraph to this issue in its opposition, and does little more than suggest to the Court that when Congress used the word "first," it also meant "each."  This effort to rewrite and expand Section 304 must be rejected.  <u>See</u> <u>infra</u> Section I.A.

Mr. Smith's motion to dismiss also pointed out that plaintiff's Section 304 claim seeks to punish retroactively "misconduct" that occurred prior to SOX's enactment.  In response, plaintiff asserts, for the first time in its opposition, an entirely new theory different from that pled in the First Amended Complaint ("FAC").  Plaintiff now claims that the "misconduct" that caused Mercury to restate its financial statements was not the backdating of stock options after all, but instead the alleged fraudulent misstatements in Mercury's post-SOX financial statements.  This effort must be rejected because plaintiff does not plead in the FAC that the "misconduct" on which it predicates its Section 304 claim are the allegedly false statements contained in the financial

1

statements, and a pleading failure cannot be cured by making new allegations in an opposition

brief.  Even if plaintiff were permitted to amend the FAC to allege what it now claims is the

"misconduct" on which it relies, as discussed in Section I.B infra, plaintiff's new theory does not

actually implicate "misconduct" that post-dates the enactment of the statute.

Finally, plaintiff fails to state a claim for violations of Sections 16 and 14 of the

Exchange Act.  Even after leave to amend, plaintiff declines to provide any particularity regarding

the precise filings it claims are false and misleading, what statements within those filings make

them false or misleading, and how they are false or misleading, despite the Court's order that it do

so.  In addition, plaintiff's Section 16 claim is not actionable because Mr. Smith complied with the

statute by timely and accurately filing a statement of his beneficial ownership in Mercury stock;

Section 16 requires nothing more.  See infra Section II.  Plaintiff's Section 14 claim is deficient

for the fundamental reason that none of the proxies in which Mr. Smith participated was an

"essential link" in the backdating alleged in the FAC because, according to plaintiff's own

allegations, all those proxies were filed *after* the backdating had ceased.  See infra Section III.

Plaintiff has already been given one opportunity to amend its complaint to state

actionable claims, and was given guidance by this Court regarding what it must do, including

providing the bases for its Section 304 claim and providing greater particularity in its Section 16

and 14 claims.  Plaintiff has failed to fix these problems.  These claims should now be dismissed

with prejudice.

<u>ARGUMENT</u>

I.    The Eleventh Claim for Forfeiture of Profits
      Pursuant to Section 304 of the Sarbanes-Oxley
      Act is Not Actionable

      A.    The Court Should Reject Plaintiff's Attempt to
            Rewrite the Language of Section 304 to Delete
            the "First Public Issuance or Filing" Limitation

Plaintiff spends four pages of its opposition brief arguing that SOX Section 304's

application in this case is not retroactive, and just four sentences responding to Mr. Smith's

independent (and dispositive) argument that the Section 304 claim cannot stand because not one of

the false filings alleged in the FAC qualifies as a "***first*** public issuance or filing . . . of the financial

1  document embodying [the] financial reporting requirement" of APB No. 25 that a company take a

2  compensation expense for in-the-money stock options. 15 U.S.C. § 7243(a)(1) (emphasis added).

3  And nowhere in those four sentences does plaintiff address the actual language of Section 304 that

4  limits its applicability to the one-year period following the "first" financial document "embodying

5  [the] financial reporting requirement" that was violated. As is evident from its perfunctory

6  argument, plaintiff would simply rewrite the language of Section 304 to replace the word "first"

7  with "each" in order to expand its statutory remedy to pursue all bonuses and compensation paid

8  to Mr. Smith for a five-year period. <u>See</u> Opp. at 13:10 ("***each*** annual and quarterly financial

9  statement"), 13:17 ("with respect to ***each*** financial statement"), 13:20 ("obvious that ***each*** of these

10 later-restated financial statements triggers a repayment obligation") (emphasis added).

11         Plaintiff's failure to address this issue is fatal to this claim. Any interpretation of

12 Section 304 which is in direct variance with its explicit terms cannot be countenanced by this

13 Court. <u>See</u> Opening Mem. at 10 (citing cases). This basic canon of statutory interpretation

14 forecloses the interpretation of Section 304 advanced by plaintiff that would omit the word "first"

15 (and replace it with "each").

16         Plaintiff justifies its interpretation by arguing that "the financial impact of the

17 misconduct is not limited to the very first financial statement following the fraud . . . ." Opp. at

18 13. Nowhere does Section 304 mention a continuing "financial impact" of an error by its terms;

19 the statute is concerned only with the one-year period running from the <u>first</u> "financial document

20 embodying such financial reporting requirement," in other words, the first financial document that

21 contains the error in financial reporting (here, failure to take a compensation expense for

22 backdated stock options).

23         While Mr. Smith believes that it is clear that the word "first" cannot mean "each,"

24 the worst that can be said for Mr. Smith's position is that Section 304 is ambiguous.[1/] To the

25

---

26 [1/]   While Mr. Smith believes that his interpretation of Section 304 is correct, not plaintiff's, the
        statute "is not a model of clarity." <u>Mehlenbacher v. Jitaru</u>, No. 6:04CV1118ORL-22KRS,
27      2005 WL 4585859, at *9 (M.D. Fla. June 6, 2005); <u>see also</u> Opening Mem. at 11 (citing
        authorities).
28

---

1   extent that the Court finds that the phrase "first . . . financial document embodying such financial

2   reporting requirement" contains any ambiguity, that ambiguity must be resolved in Mr. Smith's

3   favor pursuant to the rule of lenity as a matter of due process.[2]   Plaintiff simply ignores

4   Mr. Smith's arguments regarding applicability of the rule of lenity to Section 304, asserting

5   instead that "the clear language of Section 304 makes obvious" that its interpretation of the statute

6   is correct.  Opp. at 13.  There is nothing obvious, however, about interpreting "first" to mean

7   "each."

8            Because all of the backdating at Mercury had ceased by April 2002 (by plaintiff's

9   own allegations in the FAC), none of the Forms 10-Q or 10-K alleged by plaintiff as the basis for

10  its Section 304 claim (starting with Mercury's November 12, 2002 10-Q for the third quarter of

11  2002, covering July-September 2002) is a "*first* public issuance or filing," as explained in detail in

12  Mr. Smith's opening brief.  See Opening Mem. at 9-11.[3]  Thus, none of the financial statements

13  alleged by plaintiff qualifies as the "first public issuance or filing with the Commission," and none

14  of them can support Section 304 forfeiture of bonuses or stock profits.  Plaintiff's Section 304

15  claim must be dismissed on this basis alone.

16          B.      Section 304 Cannot Apply Retroactively
                    to the Misconduct Alleged Here
17

18           Throughout the FAC, plaintiff alleges that defendants engaged in a fraudulent and

19  deceptive scheme to backdate the date on which stock options were granted.  See, e.g., FAC ¶¶ 1,

20  27, 44.  In its Section 304 claim, plaintiff alleges that Mercury's quarterly and annual reports were

21  _____

22  [2]   Plaintiff does not dispute that Section 304 is punitive in nature and thus the rule of lenity is
      applicable here.  However, plaintiff does take the position that the Section 304 forfeiture
23    penalty it seeks to impose against Mr. Smith, in its view, requires no culpable conduct
      whatsoever on his part.  See Opp. at 11 ("Indeed, by the language of Section 304, neither the
24    CFO nor CEO need be personally responsible for, or even aware of, the misconduct itself.").
      This only reinforces the need to resolve any ambiguities in Mr. Smith's favor, before imposing
25    a penalty upon him due to misconduct for which he may not be personally responsible, or of
      which he may not even be aware.

26  [3]   The August 13, 2002 Form 10-Q covering the April-June 2002 quarter, which was not
      certified by Mr. Smith pursuant to Section 302 because the certification requirement had not
27    yet been instituted at that time, is not even alleged by plaintiff as a basis for its Section 304
      claim (even though plaintiff was given an opportunity to amend its complaint to address the
28    bases for this claim).

_____

DEFENDANT DOUGLAS SMITH'S              4            CASE NO. 5:07-C02822-JF
REPLY MEM. I/S/O MOT. TO DISMISS

1   required to be restated "as a result of misconduct."  FAC ¶ 192.  In moving previously to dismiss

2   plaintiff's Amended Complaint (the precursor to the FAC), Mr. Smith argued that the misconduct

3   alleged against him – the alleged backdating of stock options – occurred prior to the enactment of

4   SOX and would thus constitute a retroactive application of the statute.  In response to Mr. Smith's

5   previous motion to dismiss, plaintiff did not disagree that the "misconduct" it alleged in the

6   Amended Complaint, which is identically alleged in the FAC, is the backdating of stock options at

7   Mercury.  In its opposition papers to Mr. Smith's current motion to dismiss, however, plaintiff has

8   decided to redefine the alleged "misconduct" to mean something other than the backdating of

9   stock options.  See Opp. at 10.  Plaintiff now claims that the alleged "misconduct" that caused

10  Mercury to restate its financial statements was "the fraudulent (as opposed to negligent)

11  misrepresentations made within each of the filed financial statements," in other words, the "failure

12  to accurately account for the backdating transactions," during periods after the actual backdating

13  and after the enactment of SOX.  Opp. at 10, 12.

14          This last-ditch effort to avoid a finding of retroactivity must fail for two reasons.

15  First, plaintiff has presented these new allegations of what constitutes the alleged "misconduct" for

16  the first time in its opposition papers.  Making assertions in a brief does not cure the failure to

17  make these allegations in the FAC.  See infra Section I.B.1.  Second, even if such allegations were

18  made in a future amended complaint, they would still fail to solve plaintiff's retroactivity problem,

19  as plaintiff still relies on misconduct – the alleged decision not to take a compensation charge –

20  that occurred prior to the enactment of SOX.  See infra Section I.B.2.

21          1.      Plaintiff's New Allegations Redefining the
                    Alleged "Misconduct" that Resulted in the
22                  Restatement May Not Be Considered as
                    They Are Raised for the First Time in its
23                  Opposition Papers

24          The law is clear that the focus of any Rule 12(b)(6) dismissal is the complaint.

25  Schneider v. Cal. Dep't of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (holding that

26  plaintiff's new allegations in its opposition to defendant's motion to dismiss were irrelevant for

27  Rule 12(b)(6) purposes).  In determining the propriety of a Rule 12(b)(6) dismissal, a court may

28  not look beyond the complaint to a memorandum filed in opposition to a defendant's motion to

DEFENDANT DOUGLAS SMITH'S              5              CASE NO. 5:07-C02822-JF
REPLY MEM. I/S/O MOT. TO DISMISS                     277817

1    dismiss.  Id.; Landmark Screens LLC v. Morgan, Lewis & Bockius LLP, No. 08-2581-JF, 2008

2    U.S. Dist. LEXIS 87646, at *20 (N.D. Cal. Oct. 2, 2008) (refusing to consider facts not alleged in

3    plaintiff's pleadings in ruling on motion to dismiss).

4             "Misconduct" resulting in a restatement of financial statements is an element of a

5    Section 304 claim.  Mr. Smith should not be required to guess at what the conduct is that satisfies

6    that element and be forced to shoot at a moving target each time he files his motion to dismiss.

7    Had plaintiff included the actual details of what it alleges as the "misconduct" in the FAC,

8    Mr. Smith would have had the opportunity to respond with a full argument, in his opening brief

9    supporting his motion to dismiss, as to why such allegations are wholly insufficient to cure the

10   retroactivity problem and adequately state a Section 304 claim.  Mr. Smith has not been given that

11   opportunity to address these new allegations.

12             Therefore, plaintiff's new allegations that the "misconduct" that resulted in the

13   restatement was something other than the alleged backdating should not be considered by the

14   Court in ruling on Mr. Smith's motion to dismiss the FAC.  Since the Court already provided

15   leave to amend once, giving plaintiff a full opportunity to state the bases for its Section 304 claim,

16   plaintiff should not be permitted to amend to add these new allegations now.

17             2.    Even if Plaintiff Were Permitted to Amend to
                     Replead the Element of Misconduct, the New
18                   Allegations Would Fail to Cure the
                     Retroactivity Problem

19

20             Plaintiff now appears to claim, for the first time in its opposition, that the act of

21   filing Mercury's November 12, 2002 Form 10-Q (and later SEC filings), allegedly knowing that

22   those filings contain misstatements due to the failure to take amortized compensation charges for

23   stock options backdated in prior quarters and years, is the "misconduct" that caused the financial

24   statements to be restated.  See Opp. at 10-13.  Plaintiff then argues that because this alleged

25   "misconduct" took place after the enactment of SOX, at the time of the November 2002 Form 10-

26   Q filing (and later filings[4/]), applying Section 304 to the "misconduct" would not constitute a

27   _____
     [4/]   All arguments referring to the November 2002 Form 10-Q apply equally to all later filings
28           alleged by plaintiff in the FAC as well.

---

DEFENDANT DOUGLAS SMITH'S              6              CASE NO. 5:07-C02822-JF
REPLY MEM. I/S/O MOT. TO DISMISS                     277817

1  retroactive application of the statute.  This argument fails to state an actionable Section 304 claim

2  for at least two reasons:  (i) plaintiff does not plead that the decision to file a false financial

3  statement was made <u>after</u> the enactment of Section 304; and (ii) such an allegation could not be

4  made in good faith as required under Rule 11.

5          First, the mere act of filing or certifying false financial statements cannot be the

6  "misconduct" on which a Section 304 claim is predicated.  More is needed, as the statute makes

7  clear.  Section 304 applies only when "an issuer is required to prepare an accounting restatement

8  due to the material noncompliance of the issuer, ***as a result of misconduct***, with any financial

9  reporting requirement under the securities laws . . . ."  15 U.S.C. § 7243 (emphasis added).

10  Something more than filing (or permitting the filing of) a false financial statement is required in

11  order to violate Section 304:  affirmative "misconduct."

12          Therefore at the very least, plaintiff must plead that some improper *conduct*

13  occurred after the enactment of SOX in July 2002 that caused the November 2002 Form 10-Q to

14  be inaccurate and require restatement.  To do so, plaintiff must allege that Mr. Smith consciously

15  made a decision, at some point during the creation, finalization or certification of the November

16  2002 Form 10-Q, not to take a compensation charge for options that he knew were backdated and

17  thus required such a charge <u>in that quarter</u>.  No such allegation is made anywhere in the FAC.

18          Plaintiff ***could*** not make such an allegation consistent with its obligations under

19  Rule 11 for two reasons.  First, for Mr. Smith to have committed this newly alleged misconduct

20  with respect to, <u>e.g.</u>, the November 2002 financial statement, Mr. Smith would have to have

21  *known* that options backdated months earlier in April 2002 and previously (for which a

22  compensation charge should have first been taken in prior quarters) <u>also</u> required amortization of

23  that compensation charge over the life of the option, thus causing a material accounting effect in

24  quarters subsequent to the backdating.[5/]  Plaintiff does not and cannot, in conformance with Rule

25

26  _____

[5/]   Though deliberate recklessness satisfies the scienter element of a Section 10(b) claim, it is not
27       clear that it would satisfy the "misconduct" element of Section 304, as the term "misconduct"
         suggests something more than mere deliberate recklessness, and should require at least
28       *knowledge* that the financial statements are materially inaccurate.

1  11, allege even in a general fashion that Mr. Smith knew this accounting rule and therefore knew

2  that the November 2002 Form 10-Q contained materially false statements.

3          Second, because the decision not to take the compensation charge for backdated

4  options occurred in the earlier quarters in which the backdating was occurring – all pre-SOX as

5  plaintiff admits – plaintiff cannot allege in good faith that any additional decision was made post-

6  SOX, at the time of the November 2002 filing, not to record a compensation charge.  If the

7  backdated options had been properly accounted for by recording a compensation charge, that

8  compensation charge would have first hit Mercury's books in the quarters *prior* to SOX, because

9  that is when the backdated options were first granted.  It is at that point in time, when the

10  compensation charge should have first been recorded, that the entry in Mercury's books would

11  have generated the obligation to amortize the compensation charge over the life of the option

12  (generally four years), and therefore, the obligation to take compensation charges in several

13  quarters in the future.  However, because Mercury did *not* take that initial compensation charge

14  when it originally granted the backdated options and filed financial statements failing to account

15  for them properly (all pre-SOX), there was no further decision – and plaintiff pleads none – to

16  make at the time of the November 2002 Form 10-Q regarding whether to amortize the (non-

17  existent) charge over the life of the option.  Consequently, no "misconduct" of any kind occurred

18  post-SOX, when the November 2002 Form 10-Q (and later filings) were finalized, certified, and

19  filed.  The accounting charge was *already* absent from the prior filings at the time that the

20  backdated options were granted and not accounted for correctly (prior to SOX), and that error

21  merely carried over into later, post-SOX filings – without any post-SOX conduct whatsoever on

22  anyone's part.[6]

---

25  [6]  Judge Breyer mentions in <u>SEC v. Sabhlok</u>, recently submitted to the Court by plaintiff, that the
SEC's limitation of its Section 304 claim in that case to "funds obtained after the date of the
first filing made after the enactment of SOX § 304 . . . avoids the problem of retroactivity
raised in Sabhlok's motion."  No. C 08-04238 CRB, slip op. at 13 (N.D. Cal. Feb. 18, 2009).
However, defendant Sabhlok never raised the retroactivity argument that Mr. Smith raises
here:  that relying upon pre-SOX "misconduct" (regardless of the date of the filing at issue)
necessarily requires an impermissibly retroactive application of the statute.

1    A statute has retroactive effect when it gives "a quality or effect to acts or conduct

2  which they did not have or did not contemplate when they were performed."  Landgraf v. USI

3  Film Prods., 511 U.S. 244, 268 n.23 (1994) (citing Union Pac. R.R. Co. v. Laramie Stock Yards,

4  Co., 231 U.S. 190, 199 (1913)).  For the reasons described above, application of Section 304 here

5  would retroactively give a new "quality or effect" to alleged misconduct that occurred prior to its

6  enactment.  Every case examining the retroactive application of Section 304 focuses on when the

7  "misconduct" occurred, not when the corporation made the false financial disclosures that were

8  later restated.  See Opening Mem. at 6-8 (discussing cases and other authorities).[7/]

9    Plaintiff's opposition itself reveals the fallacy of its new description of the

10  "misconduct" when it asserts that "Section 304 attaches no new legal consequence to the

11  backdating itself; it attaches a legal consequence to the filing of a financial statement ***tainted by***

12  ***backdating misconduct*** . . . ."  Opp. at 12 (emphasis added).  In short, plaintiff continues to rely

13  on pre-SOX "backdating misconduct," and seeks to punish financial statements *because* they were

14  "tainted" by that "backdating misconduct" (or as Section 304 says, the financial statements were

15  inaccurate "as a result of [backdating] misconduct"), without any additional post-SOX

16  "misconduct" whatsoever.  Plaintiff cannot escape that its Section 304 claim necessarily attaches

17  new legal consequences to pre-SOX backdating misconduct, consequences that did not exist prior

18  to the statute.  The SEC's theory of "misconduct" necessarily constitutes a retroactive application

19  of the statute.

20  _____

[7/]  Plaintiff responds to only one of Mr. Smith's many cases and authorities which support the
21    proposition that Section 304 seeks to punish misconduct, such that allegations of pre-SOX
      misconduct trigger retroactive application of Section 304.  The one case plaintiff does cite, In
22    re Goodyear Tire & Rubber Co. Derivative Litigation, No. 5:03CV2180, 2007 WL 43557
      (N.D. Ohio Jan. 5, 2007), does not support the proposition for which it is cited.  In fact, the
23    two sentences immediately following plaintiff's parenthetical quotation succinctly describe the
      alleged misconduct which might support a Section 304 claim:  "The Complaint alleges that
24    Individual Defendants 'caused' Goodyear to issue a series of allegedly false press releases and
      financial statements from 1998 to July 2003.  Plaintiffs allege that defendants breached their
25    fiduciary duties by failing to oversee Goodyear's management, policies, practices and internal
      controls[.]"  Id. at *1.  Goodyear implies only that breaches of fiduciary duty occurring after
26    July 30, 2002, not simply the filing of false financial statements, could fulfill the "misconduct"
      element of a Section 304 claim.  The Court was careful to clarify that Section 304 "would not
27    apply to the vast majority of alleged wrongful conduct about which the plaintiffs complain,
      because that alleged conduct took place prior to the statute's enactment in July 2002."  Id. at
28    *8.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

II.     The Ninth Claim Must be Dismissed Because the Conduct
        Pleaded Does Not Violate Section 16(a) and Rule 16a-3

Plaintiff argues in its opposition that filing an SEC Form 3 or 4 violates Section 16 if that Form recites an effective grant date rather than the "measurement date" dictated by the accounting rules.  The argument that Section 16 contains an implicit requirement that the information reported be accurate, however, is predicated on cases interpreting other, distinguishable sections of the Exchange Act.  For instance, in GAF Corp. v. Milstein, 453 F.2d 709 (2d Cir. 1971), the Court held that defendants had violated Section 13(d) when they filed Schedule 13(D) forms that did not disclose their intent to acquire control of a company and claimed no present intention to acquire additional shares.  In that case, disclosure of the information missing from defendants' filings was the very reason Congress passed Section 13(d): "The purpose of section 13(d) is to require disclosure of information by persons who have acquired a substantial interest, or increased their interest in the equity securities of a company by a substantial amount, within a relatively short period of time.  Otherwise, investors cannot assess the potential for changes in corporate control and adequately evaluate the company's worth."  Id. at 717 (citations omitted).  See also SEC v. Lucent Techs., 363 F. Supp. 2d 708, 718 n.1 (D.N.J. 2005) (Section 13 case citing GAF Corp. in a footnote).[8]

But here, as explained in Mr. Smith's opening brief, Mr. Smith's filings accurately reflected his stock acquisitions and dispositions and therefore fulfilled the purpose of Section 16(a).  Congress passed the provision "to allow public investors to review insiders' purchases and sales for suggestions of the insider's private opinions about the company's future."  Marleen A. O'Connor, Toward a More Efficient Deterrence of Insider Trading:  The Repeal of Section 16(b),

---

[8]   SEC v. Shattuck Denn Mining, 297 F. Supp. 470, 477 (S.D.N.Y. 1968), a case quoted by plaintiff in its opposition (at 15), is typical of a case holding defendant liable for violating Section 16(a).  In Shattuck, the defendant eventually filed a Section 16(a) filing, revealing that he had not accurately disclosed all of his previous equity transactions, and brought to light the fact that even when defendant had filed a Form 4 in the past, he had not fully disclosed his disposition of shares.  Id. at 477.  Mr. Smith faces no such allegations here.

| DEFENDANT DOUGLAS SMITH'S REPLY MEM. I/S/O MOT. TO DISMISS | 10 | CASE NO. 5:07-C02822-JF |
| --- | --- | --- |
| | | 277817 |

1    58 Fordham L. Rev. 309, 323 (1989) (citing H.R. Rep. No. 1383, 73d Cong., 2d Sess. 13 (1934) at

2    24).  See Opening Mem. at 15.[9/]

3    In any event, plaintiff's Section 16(a) filings were not false.  Plaintiff argues that

4    Mr. Smith's Section 16(a) filings were "*false* forms reporting equity transactions" because the

5    forms "misrepresented the date that the options were actually granted."  Opp. at 14-15.  But, as

6    plaintiff itself states in its opposition, the mere act of backdating is not improper; the conduct only

7    becomes improper under the securities laws when the corresponding compensation expense is not

8    taken.  See Opp. at 10.  Since the accounting treatment of stock options granted to officers is

9    irrelevant for purposes of Section 16, plaintiff's argument that Mr. Smith's Section 16(a) filings

10   were false – because the effective stock option grant dates might have been different from the

11   grants' proper measurement dates – is a red-herring.  In fact, there is nothing false about plaintiff's

12   Section 16(a) filings, because the "effective" grant date contained in them was in fact the correct,

13   accurate grant date of the options (though not the proper "measurement date" for accounting

14   purposes under APB No. 25) at the time.  Plaintiff has not pled how plaintiff's Section 16(a)

15   filings were false or misleading when made.

16   Moreover, plaintiff has not pled this claim with particularity.  Plaintiff continues to

17   decline to identify the particular filings, or particular false or misleading statements, made by

18   Mr. Smith, as required by Rule 9(b).  It should not be difficult for plaintiff to identify the

19   particular SEC filings made by each defendant that it contends violate Section 16(a), and to

20   identify the particular contents of those filings it contends are false or misleading.  Instead,

21   plaintiff has simply alleged that a category of types of statements (regarding the date that options

22   were granted) contained within a category of types of filings (Forms 3 and 4) were false, without

23

24   _____

25   [9/]   Judge Breyer recently noted in a stock option backdating case that a Section 16 claim would
     stand if plaintiff were able to prove that a Section 16(a) filing contained inaccurate
     information.  Sabhlok, supra, slip op. at 15 ("[I]f plaintiff can prove that [defendant]'s Section
26   16(a) filing contained inaccurate information, then he cannot maintain that he satisfied his
     obligation [under Section 16(a)].").  The Court in reaching its conclusion in Sabhlok was not
27   presented with nor considered the argument being advanced by Mr. Smith here:  that liability
     under Section 16 may not be imposed when a defendant's Section 16(a) filings fully satisfied
28   the purpose and intent of the statute by timely disclosing management's holdings and sales.

1  identifying either the filings or the statements at issue with any particularity. More is required

2  pursuant to Rule 9(b).

3  III.   The Tenth Claim Pursuant to Section 14(a) and Rule 14a-9
       Must Be Dismissed for Failure to Plead that Mr. Smith Made
4      Materially False or Misleading Statements in Any Proxy

5            Having based the FAC on a theory of fraud, plaintiff must plead all of its claims in

6  compliance with Rule 9(b). The cases plaintiff cites, however, simply hold that scienter is not a

7  requirement for a Section 14(a) claim. Since those cases did not address whether Rule 9(b)

8  applies to Section 14(a) claims sounding in fraud, plaintiff's cases are not responsive.[10]

9            Plaintiff asserts that the proxy statements were materially false because each

10  provided incorrect information regarding the grant dates of executive stock option grants. But to

11  determine whether these statements were material, the allegedly misleading information must be

12  evaluated in the specific context of each proxy. See Opening Mem. at 17 (citing cases).[11]

13  Plaintiff provides no such context by failing to actually identify any particular proxy or any

14  statement therein alleged to be false, and thus fails to allege how the incorrect grant date

15  information might be an "essential link in the accomplishment of the proposed transaction."

16  Desaigoudar v. Meyercord, 223 F.3d 1020, 1022 (9th Cir. 2000).[12]

17  _____

18  [10]  Even in Wilson v. Great American Industries, cited by plaintiff for the proposition that
       negligence is sufficient, the court concluded that defendants' nondisclosure in that case "was a
19     deliberate decision demonstrat[ing] a culpable state of mind far in excess of negligence." 855
       F.2d 987, 995 (2d Cir. 1988).

20  [11]  Item 402(a) of Regulation S-K does not make all information required to be in a proxy
       necessarily material to a shareholder's vote. In fact, one of the cases cited by plaintiff in
21     support of this argument expressly "decline[d] to hold that the information required to be
       disclosed in 13(D) is material per se simply because such disclosure is required under the
22     securities laws." United States v. Bilzerian, 926 F.2d 1285, 1298 (2d Cir. 1991). In another
       case relied upon by plaintiff, the court did not determine that the undisclosed information was
23     material simply because it was required in Schedule 13(D), but also analyzed the specific facts
       of the undisclosed information to determine whether, in context, the information would have
24     been significant to a reasonable shareholder. See SEC v. Levy, 706 F. Supp. 61, 72 (D.D.C.
       1989). Finally, the last case referenced by plaintiff, In re Tyco International, No. MDL 02-
25     1335-B, 2004 WL 2348315, at *6-7 (D.N.H. Oct. 14, 2004), is inapposite, as that case
       discusses the factors considered by another circuit – the First Circuit – in determining whether
26     a corporation's failure to disclose information about its officers' scheme to loot the company's
       assets might amount to a Section 10(b) – not a Section 14(a) – violation.

27  [12]  As with plaintiff's Section 16(a) claim, plaintiff alleges that the proxies were false because
       they contained incorrect information regarding executives' grant dates. As explained infra in
28     Section II, plaintiff has failed to plead how the "effective" grant dates contained in the proxies

---

DEFENDANT DOUGLAS SMITH'S            12            CASE NO. 5:07-C02822-JF
REPLY MEM. I/S/O MOT. TO DISMISS
                                                                    277817

1    As noted in Mr. Smith's opening brief, the essential link requirement can only be

2    established when the proxy statement at issue directly authorizes the loss-generating corporate

3    action, for example, if a proxy approves of a stock option plan that was then used to issue

4    backdated options.  Kelley v. Rambus, Case No. C 07-1238 JF, 2008 U.S. Dist. LEXIS 100319, at

5    *25 (N.D. Cal. Dec. 9, 2008) (quoting Hulliung v. Bolen, 548 F. Supp. 2d 336, 341 (N.D. Tex.

6    2008)).  Plaintiff fails to address Mr. Smith's argument.  This conspicuous silence likely stems

7    from plaintiff's inability to plead any link at all between the allegedly false grant dates stated in

8    the proxy statements and any additional backdated stock options granted *after* the statements'

9    issuance, since all the proxy statements filed while Mr. Smith served as CFO occurred *after* all

10   alleged backdating had ceased.  Compare FAC ¶ 144 (last allegedly backdated grant is dated

11   March 20, 2002) with FAC ¶ 186 (proxies filed after Mr. Smith became CFO were dated April 11,

12   2002 and April 3, 2003); see, e.g., Opening Mem. at 18-19; Hulliung, 548 F. Supp. 2d at 341

13   (finding "simply illogical" the suggestion that proxy statements distributed three or more years

14   after alleged backdating could be an essential link in loss-generating corporate action); Rambus,

15   2008 U.S. Dist. LEXIS, at *28 (dismissing Section 14(a) claim where plaintiffs failed to allege

16   that backdating occurred after shareholders approved recommended action in proxy statements).

17   Further, plaintiff asserts that it has alleged precisely who participated in the

18   preparation of each of the proxy statements by referencing the vague allegation that Mr. Smith

19   "prepared and/or reviewed" proxies between 2000 and 2003 (even though Mr. Smith was not CFO

20   until late 2001), and claiming that the defendants were aware or should have been aware of the

21   alleged misrepresentations in the proxies because they permitted the use of their names in the

22   proxies.  Opp. at 16-17.  Until Mr. Smith became CFO of Mercury, however, his name would not

23   have appeared in Mercury's proxies.  In any case, contrary to plaintiff's suggestion, the mere fact

24   that someone's name appears in a proxy statement does not trigger liability, as stated in the very

25   case cited by plaintiff, SEC v. Falstaff Brewing Corp., 629 F.2d 62, 68 (D.C. Cir. 1980) ("Of

26   course, the simple appearance of one's name in a proxy statement does not trigger liability for any

27

28   are false or misleading simply because they were not the correct "measurement dates" for
     accounting purposes.

1   misstatement appearing therein."). <u>See</u> <u>also</u> <u>Yamamoto v. Omiya</u>, 564 F.2d 1319, 1322-23

2   (9th Cir. 1977) (rejecting plaintiff's Section 14 claim because mere presence of defendant's name

3   in the proxy materials did not reveal significant control by defendant over statement or his

4   adoption of it).  Rather, for Section 14(a) liability to be triggered, there must be a substantial

5   connection between the use of the person's name and the solicitation effort.  <u>Falstaff Brewing</u>, 629

6   F.2d at 68.  Plaintiff does not plead that the use of Mr. Smith's name was substantially connected

7   to the solicitation effort of each proxy statement filed between 2000 and 2003.  <u>See</u> FAC ¶¶ 112-

8   113; Opp. at 16.

9                                                  <u>CONCLUSION</u>

10              For all of the foregoing reasons, the Court should dismiss the FAC with prejudice

11   for failure to state a claim pursuant to Rule 12(b)(6), and failure to plead fraud with particularity

12   pursuant to Rule 9(b).

13   Dated:  March 3, 2009                     SHEARMAN & STERLING LLP

14

15                                             By: _____/s/_____
                                                            Jeffrey S. Facter

16                                             Attorneys for Defendant Douglas Smith

17

18

19

20

21

22

23

24

25

26

27

28