1              IN THE UNITED STATES DISTRICT COURT

2          FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                     SAN JOSE DIVISION

4
     SEC,                        )  CV-07-2822-JF
5                                )
                    PLAINTIFF,   )  SAN JOSE, CALIFORNIA
6                                )
           VS.                   )
7                                )  MARCH 23, 2009
     MERCURY INTERACTIVE LLC,    )
8    ET AL,                      )
                                 )  PAGES 1-34
9                 DEFENDANT.     )
     _____

10

11              TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE JEREMY FOGEL
12             UNITED STATES DISTRICT JUDGE

13

14   A P P E A R A N C E S:

15

16   FOR THE PLAINTIFF:  U.S. SECURITIES AND EXCHANGE
                         COMMISSION
17                       BY:  ALVIN DAVID WILLIAMS
                         100 F STREET, NE, RM 4221
18                       WASHINGTON, DC 20549

19

20   FOR THE DEFENDANT:  SHEARMAN & STERLING LLP
     SMITH                BY:  JEFFREY FACTER
21                       525 MARKET STREET, STE 1500
                         SAN FRANCISCO, CA 94105

22

23        (APPEARANCES CONTINUED ON THE NEXT PAGE)

24

25   OFFICIAL COURT REPORTER: SUMMER CLANTON, CSR,
                              CERTIFICATE NUMBER 13185

                                                         1

```
 1    FOR THE DEFENDANT:  SULLIVAN & WORCESTER
      LANDAN               BY:  FRANKLIN VELIE
 2                              ANDREW SOLOMON
                           1290 AVENUE OF THE AMERICAS
 3                         NEW YORK, NY 10104

 4

 5    FOR THE DEFENDANT:  ORRICK HERRINGTON
      SKAER                BY:  MICHAEL TODD SCOTT
 6                         405 HOWARD STREET
                           SAN FRANCISCO, CA 94115
 7

 8    FOR THE DEFENDANT:  FARELLA BRAUN & MARTEL
      ABRAMS               BY:  CARL BRANDON WISOFF
 9                         235 MONTGOMERY STREET, 17TH FL
                           SAN FRANCISCO, CA 94104
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1    SAN JOSE, CALIFORNIA          MARCH 23, 2009
 2                P R O C E E D I N G S
 3               (WHEREUPON, COURT CONVENED AND THE
 4    FOLLOWING PROCEEDINGS WERE HELD:)
 5               THE COURT:  SEC VERSUS MERCURY
 6    INTERACTIVE.  SEC.
 7               MR. WILLIAMS:  GOOD MORNING, YOUR HONOR.
 8    DAVE WILLIAMS FOR THE PLAINTIFF, SEC.
 9               MR. FACTER:  GOOD MORNING, YOUR HONOR.
10    JEFF FACTER FOR DOUGLAS SMITH.
11               MR. VELIE:  GOOD MORNING, YOUR HONOR.
12    FRANK VELIE FOR AMNON LANDAN.
13               MR. SCOTT:  GOOD MORNING, YOUR HONOR.
14    TODD SCOTT FOR SUSAN SKAER.
15               MR. WISOFF:  GOOD MORNING, YOUR HONOR.
16    BRANDON WISOFF FOR SHARLENE ABRAMS.
17               MR. SOLOMON:  GOOD MORNING, YOUR HONOR.
18    ANDREW SOLOMON FOR AMNON LANDAN.
19               THE COURT:  MY UNDERSTANDING IS
20    MS. ABRAMS IS SETTLED.  I DID SEE A JUDGMENT THIS
21    MORNING AND I'VE ACTUALLY SIGNED THE PAPERS, SO
22    THANK YOU VERY MUCH.
23               AS TO THE REMAINING PARTIES, A COUPLE OF
24    COMMENTS.  THE COURT ASKED, IN ITS EARLIER ORDER,
25    FOR GREATER SPECIFICITY AS TO CLAIM 9.  LET'S START
```

1    WITH CLAIM 9, THE SECTION 16 CLAIM.  AND AS TO

2    MR. SMITH, ALSO THE SECTION 14 CLAIM.  AND I DIDN'T

3    SEE A LOT OF ADDITIONAL FACTUAL MATERIAL IN THIS

4    AMENDED COMPLAINT.

5         I THINK THE PROBLEMS ARE THE SAME THAT

6    EVEN THOUGH THE SEC IS THE PLAINTIFF, THIS IS NOT A

7    PSLRA CASE, THERE STILL NEEDS TO BE PARTICULARITY

8    AS TO WHAT EXACTLY IT IS THAT THE DEFENDANTS DID.

9    I'M JUST WONDERING IF THE SEC HAS ANYTHING FURTHER

10   IT CAN PLEAD BEYOND WHAT'S ALREADY IN THE

11   COMPLAINT.

12        MR. WILLIAMS:  YOUR HONOR, IN THE AMENDED

13   COMPLAINT WE ATTEMPTED TO ADDRESS WHAT YOUR HONOR

14   REQUESTED BY -- ESSENTIALLY, WITH RESPECT TO THE

15   SECTION 16 CLAIMS, DIRECTING THIS SPECIFICALLY

16   ALLEGING IN THE COMPLAINT THE PORTION OF THE

17   ALLEGATIONS THAT DEAL WITH WHAT WE BELIEVE TO BE

18   THE SECTION 16 VIOLATIONS, THAT IS, FILING FALSE

19   STOCK TRANSACTION REPORTING --

20        THE COURT:  I GUESS WHAT I DIDN'T SEE, OR

21   PERHAPS I MISSED, IS WHICH FORMS 3 AND 4 ARE WRONG,

22   AND HOW ARE THEY WRONG?

23        MR. WILLIAMS:  YOUR HONOR, WHAT THE

24   COMPLAINT GOES THROUGH IS IT ALLEGES THAT EACH

25   GRANT RECEIVED BY EACH OF THE DEFENDANTS WAS

1    BACKDATED.  AND IT ALLEGES THAT WHEN THEY REPORT

2    THOSE TRANSACTIONS, THOSE TRANSACTIONS WERE

3    MISREPORTED TO THE SEC EACH AND EVERY TIME.

4            IF WHAT YOUR HONOR IS LOOKING FOR IS A

5    CHART WITH RESPECT TO EACH TRANSACTION, THAT WAS

6    FILED DURING THE PERIOD OF TIME --

7            THE COURT:  THAT'S WHAT I'M -- IF IT

8    WASN'T CLEAR IN THE LAST RULING, THAT IS

9    SPECIFICALLY -- IT WASN'T NECESSARILY A CHART, BUT

10   IT WAS SOME TYPE OF FORM-BY-FORM, DATE-BY-DATE TYPE

11   OF STATEMENT.

12           BECAUSE I UNDERSTAND WHAT YOU ARE SAYING,

13   INFERENTIALLY, IF THEY WERE ALL BACKDATED THEN ALL

14   THE FORMS THEY FILED WERE FALSE.  I UNDERSTAND

15   THAT'S THE THEORY.  BUT WHAT I WAS LOOKING FOR --

16   IT MAY OR MAY NOT BE LEGALLY NECESSARY.

17           I GUESS MY THOUGHT WAS THAT IT IS GIVEN

18   THE NATURE OF THESE CLAIMS.  BUT I WILL JUST MAKE

19   SOMETHING UP, "THE 2005 FORM 3 WAS INACCURATE

20   BECAUSE IT STATED SUCH AND SUCH, WHEN IN FACT THE

21   TRUTH WAS SUCH AND SUCH."

22           AND YOU CAN DO THAT?

23           MR. WILLIAMS:  YEAH.

24           THE COURT:  THANK YOU.  ALL RIGHT.

25   THAT'S THE COMMENT I HAD AS TO THE 16.

1              NOW THE 14 ON MR. SMITH IS ACTUALLY A

2       FAIRLY SIMILAR OBSERVATION.  IT DIDN'T SPELL OUT

3       WHICH WAS THE FIRST FILING.

4              MR. WILLIAMS:  I THOUGHT IT ALLEGED WHICH

5       FORMS, WHICH PROXY STATEMENTS APPLIED TO MR. SMITH

6       AND ALLEGED HOW THOSE PROXY STATEMENTS WERE FILED.

7              THE COURT:  WELL, IF WE DON'T MAKE IT

8       RETROACTIVE, WHICH I DON'T THINK WE CAN THINK WE

9       CAN, THEN AM I RIGHT THAT THE FIRST FALSE STATEMENT

10      IF YOU DON'T APPLY IT RETROACTIVELY IS THE 10-Q IN

11      AUGUST OF 2002.

12             MR. WILLIAMS:  ARE YOU REFERRING TO THE

13      304 CLAIM OR THE PROXY CLAIM?

14             THE COURT:  THE PROXY CLAIM.

15             MR. WILLIAMS:  OKAY.  WITH RESPECT TO THE

16      PROXY CLAIM, WE ALLEGE THAT PROXIES THAT INVOLVE

17      MR. SMITH, I BELIEVE FOR THE 2002 AND 2003 YEARS,

18      WERE FALSE.

19             THE COURT:  OKAY.  I'M JUST TRYING TO --

20      I MAY HAVE MISSED SOMETHING.  THERE'S A LOT HERE,

21      OBVIOUSLY, BUT YOU HAVE TO --

22             MR. WILLIAMS:  SPECIFICALLY PARAGRAPH 112

23      OF THE AMENDED COMPLAINT --

24             THE COURT:  OKAY.

25             MR. WILLIAMS:  -- DEALS WITH MR. SMITH

1    FOR THE 2002 AND 2003 PROXIES.

2              THE COURT:  I'M SORRY.  I THINK I GAVE

3    YOU A CONFUSING RESPONSE TO YOUR QUESTION.

4              ON THE 304 CLAIM, THE FIRST --

5              MR. WILLIAMS:  WITH RESPECT TO THE 304,

6    THE FIRST FILING THAT WE ALLEGE TRIGGERS THE

7    REQUIREMENT WAS A QUARTERLY REPORT FROM MERCURY

8    FILED NOVEMBER 12, 2002.

9              THE COURT:  NOVEMBER 12, 2002.  AND THEN

10   YOU'VE PUT EVERYTHING IN ABOUT MS. SKAER.

11             MR. WILLIAMS:  YES, YOUR HONOR.  WE

12   DIDN'T ALLEGE THE FACT THAT SHE ASSERTED HER FIFTH

13   AMENDMENT PRIVILEGE.

14             THE COURT:  THANK YOU.

15             COUNSEL, I GUESS MY INITIAL THOUGHT IS

16   THERE IS STILL A LACK OF SPECIFICITY, AND I WOULD

17   LIKE TO HEAR FROM YOU AS TO WHETHER YOU THINK

18   THERE'S ANY REASON I SHOULDN'T GIVE THE SEC ONE

19   MORE OPPORTUNITY TO PLEAD IT.

20             MR. FACTER:  YOUR HONOR, JEFF FACTER FOR

21   DOUG SMITH.

22             WITH RESPECT TO THE SECTION 14 AND THE

23   SECTION 16 CLAIMS, WE AGREE WITH THE COURT WHEN WE

24   DID OUR RED LINE OF THE CHANGES IN THE COMPLAINT.

25   THERE WASN'T A LISTING OF FORMS AND THE STATEMENTS

1    IN THE FORMS AND THE REASON FOR WHICH THE STATEMENT

2    WAS FALSE OR MISLEADING.

3              AND THE REASON NOT TO ALLOW THEM TO

4    REPLEAD, WITH RESPECT TO THOSE CLAIMS, I THINK, IS

5    THEY HAD A PRETTY CLEAR INSTRUCTION THE FIRST TIME

6    AND FOR SOME REASON THEY IGNORED THE INSTRUCTION.

7              NOW WITH RESPECT TO THE THIRD CLAIM WE

8    MOVED ON, AND THAT'S THE CLAIM FOR THE FORFEITURE

9    OF ALL OF MR. SMITH'S BONUSES AND STOCK SALE

10   PROCEEDS, THAT CLAIM PRESENTS A PRETTY FUNDAMENTAL

11   QUESTION OF THE SEC TRYING TO ASSERT POWERS THAT IT

12   DOES NOT HAVE.

13             AND I THINK IT'S A PRETTY IMPORTANT

14   STATUTORY INTERPRETATION QUESTION, AND I DON'T

15   THINK THAT'S SOMETHING THEY CAN FIX IN AN AMENDED

16   COMPLAINT.  HOWEVER, IT MAY BE THE CASE THAT THE

17   ISSUE IS NOT RIPE FOR THE COURT YET BECAUSE WITH

18   RESPECT AT LEAST TO THE RETROACTIVITY CLAIM, THEY

19   DID NOT PLEAD IN THE ORIGINAL PLEADING, THE WAY WE

20   UNDERSTAND IT.  THEY PLED THE WRONGFUL CONDUCT THAT

21   CAUSED THE NEED FOR THE MISSTATEMENT WAS THE

22   BACKDATING.  AND THAT PRETTY CLEARLY OCCURRED PRE-

23   SARBANES-OXLEY.

24             NOW, IN THEIR BRIEF, WE ARE SEEING FOR

25   THE FIRST TIME THAT THEY ARE SAYING IS THAT WHAT

8

1    HAPPENED POST-SARBANES-OXLEY WAS THE FILING OF THE

2    FALSE FINANCIAL STATEMENT.  WELL, THE INNOCENT

3    FILING OF A FALSE FINANCIAL STATEMENT ISN'T

4    MISCONDUCT THAT'S GOING TO GENERATE A FORFEITURE.

5    THE NEGLIGENT FILING IS NOT THE MISCONDUCT THAT'S

6    GOING TO GENERATE A FORFEITURE.  I DON'T THINK

7    NEGLIGENCE IS MISCONDUCT; AND AS WE POINTED OUT IN

8    THE FOOTNOTE, I DON'T EVEN THINK RECKLESS FILING OF

9    A FALSE FINANCIAL STATEMENT IS MISCONDUCT WITHIN

10   THE MEANING OF THE STATUTE.

11        SO NOW WE ARE HEARING FOR THE FIRST TIME

12   THAT WITH RESPECT TO EACH OF THESE DOCUMENTS THERE

13   WAS A KNOWING VIOLATION, KNOWING THAT THERE WAS --

14   THAT THE STATEMENT WAS FALSE BECAUSE THE

15   COMPENSATION CHARGE WASN'T TAKEN.

16        THEY HAVE NOT PLEAD IN THIS COMPLAINT

17   THAT THAT IS THE MISCONDUCT WHICH THEY RELY FOR

18   THIS FORFEITURE UNDER SECTION 304.

19        SO IF THE COURT DECIDED THAT IT WAS

20   INCLINED TO LOOK AT OUR SECTION 304 ARGUMENTS AND

21   THAT THAT'S THE KEY ARGUMENT, IT PROBABLY ISN'T

22   RIPE FOR DECISION OF THE COURT BECAUSE THEY NEED TO

23   PLEAD WHAT THE WRONGFUL CONDUCT IS.

24        THE COURT:  IT WASN'T THE BACKDATING.

25   AND I DON'T THINK THEY ARGUE THAT.

9

1              MR. FACTER:  I THINK THAT'S RIGHT.

2         BUT WHAT I WOULD LIKE TO SAY BEFORE I SIT

3    DOWN, WITH RESPECT TO THE 304 CLAIM, IS THAT WE

4    HAVE TWO ARGUMENTS.

5              ONE IS THE RETROACTIVITY ARGUMENT.  BUT

6    THE SECOND ARGUMENT, WHICH IS WHAT I WOULD REFER TO

7    AS THE FIRST PUBLIC ISSUANCE OR FILING ARGUMENT, IS

8    AN ARGUMENT THAT SEEMS TO GET BURIED.  IT DIDN'T

9    GET ARGUED AT THE PREVIOUS HEARING AND IT'S BARELY

10   ADDRESSED IN THEIR OPPOSITION BRIEF.

11             AND AS TO THAT ARGUMENT, THAT'S SOMETHING

12   THAT I THINK IS RIPE AND IT'S NOT FIXABLE.  SO IF I

13   COULD HAVE A COUPLE MINUTES ON THAT.

14             THE COURT:  THIS IS THE 10-Q I ASKED

15   COUNSEL ABOUT?

16             MR. FACTER:  EXACTLY.  EXACTLY.

17             SO WHAT THE STATUTE SAYS IS THE

18   FORFEITURE THAT I'VE DESCRIBED IS BONUSES AND STOCK

19   PROCEEDS FOR A 12-MONTH PERIOD, EARNED IN A

20   12-MONTH PERIOD.  AND THE MEASUREMENT OF THAT

21   12-MONTH PERIOD IS FROM THE FIRST PUBLIC ISSUANCE

22   OR FILING OF A FINANCIAL DOCUMENT.  AND THEN IN THE

23   LANGUAGE OF THE STATUTE, "WHICH EMBODIES THE

24   REPORTING REQUIREMENT -- THE FINANCIAL REPORTING

25   REQUIREMENT THAT WASN'T FILED."

1            SO THE FINANCIAL REPORTING REQUIREMENT

2    THAT WAS NOT FILED HERE WAS APB 25, IT'S AN

3    ACCOUNTING RULE, IT'S PART OF GAP, AND IT DEFINES

4    SOMETHING CALLED A MEASUREMENT DATE.  AND YOU LOOK

5    AT THE MEASUREMENT DATE AND YOU DECIDE WHETHER THE

6    OPTIONS BEING GRANTED IN THE MONEY OR NOT BASED ON

7    THAT DEFINITION OF THE MEASUREMENT DATE.

8            ALL OF THE BACKDATING THAT OCCURRED IS

9    ALLEGED IN THE COMPLAINT TO BE PRIOR TO APRIL OF

10   2002; AFTER APRIL 2002 IT STOPPED.  THE VERY LAST

11   BACKDATED OPTION THAT'S ALLEGED IN THIS COMPLAINT,

12   THE MEASUREMENT DATE ACCORDING TO THE COMPANY'S

13   RESTATEMENT WHICH IS PLED IN THE COMPLAINT IS

14   APRIL 1ST.  THAT'S WHAT THEY SAID SHOULD HAVE BEEN

15   THE DATE FOR THE EXERCISE PRICE, APRIL 1, 2002.

16           THE 10-Q WHICH IS THE FIRST PUBLIC

17   ISSUANCE OR FILING FOR THAT BACKDATED GRANT, WHICH

18   IS THE LAST GRANT, IS THAT 10-Q FOR THE SECOND

19   QUARTER OF THE YEAR, WHICH THE COURT POINTED OUT,

20   IS AUGUST 13TH OF 2002.  THAT'S WHEN THAT 12-MONTH

21   MEASUREMENT PERIOD OUGHT TO RUN, IF THERE WAS A

22   VIOLATION.

23           NOW THEY DON'T PLEAD THAT AS THE FIRST

24   PUBLIC ISSUANCE OR FILING.  THEY PLEAD NOVEMBER OF

25   2002.

11

1        SO THE QUESTION IS, TO RESPOND TO THE

2    COURT'S INQUIRY, SHOULD WE LET THEM GO BACK AND

3    HAVE A CHANCE TO PLEAD THAT ONE, PLEAD THE FIRST

4    PUBLIC ISSUANCE --

5        THE COURT:  THE AUGUST 1ST.

6        MR. FACTER:  THE AUGUST 1ST, YES, AND TO

7    RUN THE 12-MONTH PERIOD FROM THAT.

8        WELL, THEY CAN'T DO THAT, YOUR HONOR,

9    BECAUSE THERE WAS NO REQUIREMENT OF THE CFO,

10   MR. SMITH, TO CERTIFY FINANCIAL STATEMENTS AT THAT

11   POINT.  THE SEC HADN'T ADOPTED REGULATIONS PURSUANT

12   TO SARBANES-OXLEY.  AND THAT'S WHY THEY EXCLUDE THE

13   AUGUST --

14       THE COURT:  THERE'S A MATTER OF

15   UNDISPUTED FACT.  THERE'S NO WAY THAT COULD HAVE

16   BEEN A DUTY THAT EXISTED AT THAT TIME.

17       MR. FACTER:  THAT'S CORRECT, YOUR HONOR.

18       SO THAT FIRST PUBLIC ISSUANCE OR FILING

19   REQUIREMENT OF THAT STATUTE CANNOT BE MET IN THIS

20   CASE.

21       THE COURT:  SO YOU ARE SAYING THE CLAIM

22   11 AS TO MR. SMITH, THERE ISN'T A WAY TO FIX.

23       MR. FACTER:  THAT IS CORRECT, YOUR HONOR.

24   AND I WOULD SAY TWO MORE THINGS ABOUT THAT.

25       ONE IS THEY KNOW THEY CAN'T FIX IT BECAUSE THE

1    LEGAL DUTY DID NOT EXIST WITH RESPECT TO THAT FIRST

2    FILING.  AND SINCE THEY KNOW THEY CAN'T FIX IT,

3    WHAT THEY'VE BEEN ARGUING IS EVERY SINGLE FILING

4    AFTER THAT POINT IS A FIRST FILING.

5            IN OTHER WORDS, THE PHRASE IN THE STATUTE

6    WHICH SAYS "FIRST PUBLIC FILING -- FIRST PUBLIC

7    ISSUANCE OR FILING" APPLIES TO EVERY SINGLE 10-Q

8    AND 10-K FILED THEREAFTER.

9            AND AS WE EXPLAINED IN OUR PAPERS, THAT'S

10   NOT THE WAY I LEARNED THE MEANING OF THE WORD

11   "FIRST."  THEY WANT TO SUBSTITUTE THE WORD EACH,

12   EVERY, ANY -- WELL, THAT'S NOT THE WAY WE INTERPRET

13   THE STATUTES UNDER THE LAW.

14           BUT LET'S SAY THE STATUTE IS A MESS.

15   SOME PEOPLE HAVE SAID SARBANES-OXLEY IS A MESS, AND

16   I KNOW YOUR HONOR HAS HAD TO DEAL WITH IT IN A

17   NUMBER OF THESE OPTIONS CASES.  LET'S SAY IT'S

18   AMBIGUOUS, GIVE THEM THE BENEFIT OF THE DOUBT.

19   THERE'S NO QUESTION THIS IS A PUNITIVE --

20           THE COURT:  AND THE RULE OF LENITY.

21           MR. FACTER:  AND THE RULE OF LENITY MEANS

22   WE WIN.  SO WHETHER WE LOOK AT THE LANGUAGE ON ITS

23   FACE, FIRST MEANS FIRST, OR WHETHER WE LOOK AT

24   FIRST AS AMBIGUOUS, EVEN THOUGH WE DON'T THINK IT

25   IS, I THINK MR. SMITH WINS.

1          LAST THING THAT I WOULD SAY, YOU TALKED

2     ABOUT A RESOLUTION THIS MORNING OF THE ABRAMS --

3     CLAIMS AGAINST ABRAMS IN THIS CASE.  THIS -- I'M

4     NOT SAYING THAT, YOU KNOW, THERE WOULD BE A

5     SETTLEMENT TOMORROW, BUT AS A PRACTICAL MATTER, THE

6     ENORMOUS POWER THAT THEY ARE ARROGATING TO TAKE

7     AWAY, ESSENTIALLY, ALL THE MONEY MR. SMITH MADE

8     WHILE HE WAS AT MERCURY DOING A GOD JOB AS THE CFO

9     OF MERCURY, THIS IS THE STUMBLING BLOCK THAT THEIR

10    VERY AGGRESSIVE INTERPRETATION OF THIS STATUTE,

11    WHICH THEY ARE RELYING ON, IS THE REASON THAT WE

12    CAN NEVER BE IN THE POSITION ABRAMS IS IN.

13          AND SO WHILE I AGREE THAT THE

14    RETROACTIVITY ARGUMENT WHICH I AM PREPARED TO ARGUE

15    ON THE MERITS OF WHAT THEY PUT IN THE OPPOSITION

16    BRIEF BUT I DON'T THINK IT'S RIGHT BECAUSE I DON'T

17    THINK THEY PLEAD THE NEW MISCONDUCT.  THIS FIRST

18    PUBLIC ISSUANCE OR FILING ARGUMENT WHICH HAS HAD

19    KIND OF A BACK SEAT FOR SOME REASON --

20          THE COURT:  THIS GOES TO CLAIM 11 AS TO

21    ALL OF THE REMAINING DEFENDANTS, CORRECT?

22          MR. FACTER:  I THINK THAT'S RIGHT.  AND,

23    WELL, IT'S -- SECTION 304 IS SOMETHING THAT IS

24    APPLICABLE ONLY TO THE CEO, MR. LANDAN AND TO

25    MR. SMITH.

1          THE COURT:  DOESN'T APPLY TO MS. SKAER.

2          MR. FACTER:  CORRECT.

3          BUT IF THAT CLAIM WERE OUT OF THE CASE,

4     IT IS THE STUMBLING BLOCK TO ANY RESOLUTION BECAUSE

5     OF THE ENORMITY OF THE CLAIM.

6          AND SO GOING BACK TO THE COURT'S ORIGINAL

7     QUESTION, SHOULD WE GIVE THEM ANOTHER CHANCE?

8     COULD THEY REPLEAD?  I THINK MR. WILLIAMS MAYBE

9     SHOULD TAKE THE PODIUM ONE MORE TIME AND ANSWER HOW

10    HE'S GOING FIX THE FIRST PUBLIC ISSUANCE.

11         THE COURT:  I WILL GIVE HIM THAT

12    OPPORTUNITY.  I JUST WANT TO MAKE SURE COUNSEL FOR

13    MS. SKAER AND MR. LANDAN DON'T HAVE TO ADD ANYTHING

14    TO WHAT HAS ALREADY BEEN SAID.

15         MR. VELIE:  GOOD MORNING, YOUR HONOR.

16         WE, OF COURSE, JOINED IN THE SMITH MOTION

17    IN SO FAR AS IT APPLIES TO MR. LANDAN.  WE DO, IN

18    FACT, HOPE TO RECEIVE THE BENEFIT OF IT.

19         WOULD YOU LIKE ME TO SPEAK TO THE 16-A

20    ISSUE BEFORE YOU GET MR. WILLIAMS BACK?

21         THE COURT:  WELL, THE 16-A ISSUE IN THE

22    SENSE OF WHETHER THEY SHOULD BE GIVEN LEAVE TO

23    AMEND OR NOT?

24         MR. VELIE:  EXACTLY.

25         THE COURT:  SURE.  GO AHEAD.

15

1          MR. VELIE:  IN OUR VIEW THEY SHOULDN'T BE

2     GIVEN LEAVE TO AMEND.  WHAT THEY HAVE DONE BY WAY

3     OF PROVING THE COMPLAINT IS THEY ACTUALLY ALLEGED

4     THREE FILINGS.

5          AND BY THE WAY, YOUR HONOR, THESE HAVE TO

6     DO WITH BACKDATED EXERCISES RATHER THAN BACKDATED

7     GRANTS.  SO IT'S A COMPLETELY DIFFERENT EPISODE OUT

8     OF THE COMPLAINT.

9          AND THE THREE THEY'VE PICKED WERE IN

10    '98 -- TWO OF THEM IN '98 AND ONE IN '01.  A FULL

11    MORE THAN FIVE YEARS BEFORE THE COMPLAINT WAS

12    FILED.  SO WE HAVE A STATUTE OF LIMITATIONS MOTION.

13    WE ALSO HAVE A JURISDICTIONAL MOTION, AND I WOULD

14    LIKE A MINUTE TO EXPLAIN THAT.

15          WITH RESPECT TO THE STATUTE OF

16    LIMITATIONS, IT IS PLAIN THAT THE PROPER STATUTE OF

17    LIMITATIONS IS 28 USC 2462; NO DISPUTE ABOUT THAT.

18    YOU'VE HELD THAT IT APPLIES; THEY AGREE IT APPLIES.

19    IF IT APPLIES, WE WIN, UNLESS THERE IS EQUITABLE

20    TOLLING.

21          THEY POINT TO SEC V. WILLIAMS, A NINTH

22    CIRCUIT CASE, AND SAYS IT WAS HELD THAT YOU TOLLED

23    THAT STATUTE.  THAT IS CORRECT, BUT IT DOESN'T GO

24    FAR ENOUGH.  SEC V. WILLIAMS WAS BASED ON A SUPREME

25    COURT CASE FROM 1946, HOLMBERG V. AMBRECHT, SPELLED

16

1   OUT IN OUR PAPERS, WHICH SAID ALL FEDERAL

2   LIMITATIONS PERIODS ARE SUBJECT TO EQUITABLE

3   TOLLING.

4         THAT, YOUR HONOR, IS NO LONGER THE LAW.

5   THERE ARE TWO CASES THAT MAKE THAT VERY, VERY

6   PLAIN, JOHN R. SAND & GRAVEL IS THE FIRST.  AND THE

7   NEXT IS BOWLES, BOTH SET OUT IN OUR PAPERS.

8       JOHN R. SAND & GRAVEL GOES THROUGH THIS AND

9   SAYS THERE ARE DIFFERENT KINDS OF LIMITATIONS

10  PERIODS.  THERE IS SOME THAT ARE JURISDICTIONAL,

11  AND AS TO THE ONES THAT ARE JURISDICTIONAL, NO

12  TOLLING.  THAT'S WHAT WE'VE GOT HERE.

13        AND WHAT BOWLES SAYS IS IT TELLS YOU AS A

14  DISTRICT JUDGE, HOW DO I KNOW IF IT'S ONE OR THE

15  OTHER?  NOW MIND YOU, THE NINTH CIRCUIT HASN'T DONE

16  AN ANALYSIS, THEY SIMPLY RELIED ON WHAT

17  SEC V. WILLIAMS SAID.

18        SO THIS IS, IN A WAY, AN INITIAL FIRST

19  IMPRESSION UNDECIDED BY THE CIRCUIT.  OR IF IT'S

20  BEEN DECIDED BY THE CIRCUIT, I WOULD SUGGEST THAT

21  YOU READ THE CIRCUIT EXACTLY AT ITS WORDS, WHICH

22  IS, "STATUTES OF LIMITATION ARE SUBJECT TO

23  EQUITABLE TOLLING," BUT, OF COURSE, STATUE OF

24  REPOSE ARE NOT.

25        SO WE ARE LEFT WITH THE SAME QUESTION

1    WHICH THE NINTH CIRCUIT HASN'T LOOKED AT.  IS IT A

2    STATUE OF REPOSE OR IS IT A STATUTE OF LIMITATIONS?

3    AND WHAT BOWLES TELLS US TO DO IS, LET'S LOOK AT

4    THE STATUTE.

5            THE FIRST THING THE STATUTE SAYS, AND I'M

6    GOING TO READ FROM 2462, "EXCEPT AS OTHERWISE

7    PROVIDED BY ACTIVE CONGRESS," THE ONLY EXCEPTIONS

8    ARE GOING TO BE DONE BY ACTIVE CONGRESS.  WHAT IS

9    THE CONGRESS SAYING?  IT'S SAYING, JUDGE, NO

10   JUDICIAL TOLLING.

11           THE NEXT THING IT SAYS IS "NO -- AN

12   ACTION FOR THE ENFORCEMENT OF CIVIL FINE, PENALTY

13   OR FORFEITURE, SHALL NOT BE ENTERTAINED."  IS THAT

14   THE SPEAKING TO THE LITIGANTS?  DOES IT SAY, SEC

15   DON'T BRING THESE?  IT SPEAKS TO THE DISTRICT COURT

16   AND SAYS, DON'T ENTERTAIN IT.  THIS IS THE LANGUAGE

17   OF JURISDICTION.  THERE WILL BE NO TOLLING HERE.

18           AND WE SUBMIT, YOUR HONOR, THAT THIS

19   ISN'T AN ISSUE OF FIRST IMPRESSION.  YOU ARE NOT

20   BOUND, WE FEEL, BY THE NINTH CIRCUIT FOR THIS

21   REASON, AND THAT YOU SHOULD HOLD THAT THIS CLAIM,

22   IN SO FAR AS IT IS FOR FINES, MUST BE DISMISSED AND

23   MAY NOT BE REPLEAD BECAUSE IT'S BARRED BY A STATUE

24   OF REPOSE.

25           THERE ARE TWO OTHER REMEDIES THAT THEY

1    SEEK AND NEITHER OF THESE REMEDIES UNDER 16-A

2    SUPPORT JURISDICTION IN THIS COURT TO GRANT RELIEF.

3            THE FIRST IS INJUNCTION.  HERE, THIS CASE

4    IS SQUARELY GOVERNED, WE SUBMIT, BY A SUPREME COURT

5    CASE WE CITED IN OUR PAPERS CALLED STEEL CO. V.

6    CITIZENS FOR A BETTER ENVIRONMENT.  523 U.S. 83.

7            THERE, AS HERE, IT WAS A 12(B) MOTION.

8    THE ONLY DEVELOPMENT OF THE CASE WAS THE COMPLAINT.

9    GOT UP TO THE SUPREME COURT ON THAT COMPLAINT.  THE

10   ISSUE THEN IS, IS THE COMPLAINT ENOUGH TO SUPPORT

11   JURISDICTION FOR AN INJUNCTION?

12           THERE, AS HERE, THERE WAS A PAST

13   VIOLATION.  THERE IT WAS A LATE FILING, HERE IT'S

14   ALLEGED INACCURACIES IN THE FILINGS.  OUR CASE IS

15   ACTUALLY STRONGER BECAUSE THERE THE LATE FILING WAS

16   CURED AFTER LITIGATION WAS BEGUN, IN RESPONSE TO

17   LITIGATION.

18           INSPECT OUR CASE CERTAINLY AS TO LANDAN,

19   I DON'T SPEAK FOR ANYBODY ELSE HERE BUT I THINK IT

20   APPLIES TO THE OTHERS, THERE IS NO ALLEGATION OF

21   SUBSEQUENT ABUSE AND THERE WERE PLENTY OF FORM 4'S

22   AFTER THESE THREE.

23           SO WHATEVER THAT PRACTICE WAS, IT STOPPED

24   VOLUNTARILY BEFORE THE SEC CASE, BEFORE THE SPECIAL

25   INVESTIGATION OR ANYTHING.  SO WE HAVE THE CASE, SO

19

1    FAR, EXACTLY ON ALL FOURS.

2              AND HERE, AS IN STEEL CO., THE GOVERNMENT

3    ARGUED THAT THERE'S A PRESUMPTION OF FUTURE INJURY.

4    AND THE SUPREME COURT THREW THAT OUT WITH BOTH

5    HANDS AS FOLLOWS:  "IT IS AN IMMENSE AND

6    UNACCEPTABLE STRETCH TO CALL THE PRESUMPTION INTO

7    SERVICE AS A SUBSTITUTE FOR THE ALLEGATION OF

8    PRESENT OR THREATENED INJURY UPON WHICH STANDING

9    MUST BE BASED," AND HELD THERE WAS NO ARTICLE 3

10   CASE OR CONTROVERSY.

11             WE SUBMIT NO INJUNCTION COULD POSSIBLY BE

12   HAD HERE ON THE ALLEGATIONS THEY'VE MADE.  THEY'VE

13   PLED IT TWICE, IT ISN'T THERE.  THEY ARE NOT GOING

14   TO BE ABLE TO DO THAT.  THIS MUST BE DISMISSED AS

15   FAR AS IT HAS TO DO NOW WITH PENALTIES OR WITH

16   INJUNCTION.

17             WHAT ABOUT DISGORGEMENT?  HERE, THE SEC

18   HAS ALLEGED, AND WE BELIEVE THAT THIS IS ALL

19   THEY'VE GOT, THE THING TO BE DISGORGED IS POTENTIAL

20   TAX BENEFIT.  POTENTIAL TAX BENEFIT.

21             THERE ARE TWO THINGS WRONG WITH THAT.

22   BOTH OF THEM ARE DEALT WITH BY THIS:  IN 75 YEARS

23   OF SEC ENFORCEMENT, THEY HAVE BEEN UNABLE TO COME

24   UP WITH A SINGLE CASE, AND WE HAVEN'T FOUND ONE

25   EITHER, IN WHICH THE SEC WAS ABLE TO DISGORGE ANY

1    TAX BENEFIT LET ALONE A POTENTIAL TAX BENEFIT.

2            THERE'S A REASON FOR THAT.  THE SEC HAS

3    NO AUTHORITY TO DO IT, THEREFORE NO STANDING TO DO

4    IT.  IT'S INVESTED BY STATUTE IN THE IRS.

5            AND WHOLLY APART FROM THAT, THE FACT THAT

6    THEY ARE TALKING ABOUT POTENTIAL JUST MEANS WE DO

7    NOT HAVE A CASE FOR CONTROVERSY HERE.  THEY ARE

8    SAYING SOME DAY, YOU KNOW, MAYBE IF IT TURNS OUT

9    THERE WERE A TAX BENEFIT, WE COULD GET SOME RELIEF.

10   THAT DOESN'T BELONG IN THE DISTRICT COURT.

11           THAT'S BASICALLY IT, JUDGE.

12           THE COURT:  OKAY.  THANK YOU.

13           MR. VELIE:  AS FAR AS WE ARE CONCERNED,

14   16-A SHOULD NOT BE RE-PLEAD.

15           THE COURT:  OKAY.  THANK YOU VERY MUCH.

16           ANYTHING ON BEHALF OF MS. SKAER BEFORE I

17   HEAR FROM MR. WILLIAMS?

18           MR. SCOTT:  QUICKLY, YOUR HONOR.

19           WE'VE ALREADY HEARD MR. WILLIAMS CAN ADD

20   NOTHING NEW WITH REGARD TO MS. SKAER, SO WE THINK

21   THE POINT OF WHETHER OR NOT WE SHOULD AMEND TO HER

22   IS MOOT.

23           I AM WONDERING IF YOU WOULD LIKE TO HEAR

24   DISCUSSION ON WHAT'S ALLEGED?

25           THE COURT:  I THINK WE KIND OF WENT OVER

21

1    THAT LAST TIME.  I DON'T HAVE A NEED UNLESS YOU

2    FEEL A NEED TO MAKE ADDITIONAL POINTS.

3              MR. SCOTT:  NO; THAT'S FINE, YOUR HONOR.

4              I WOULD LIKE TO DISCUSS THE MOTION TO

5    STRIKE IF WE COULD, PERHAPS AFTER MR. WILLIAMS

6    ADDRESSES --

7              THE COURT:  WELL, GO AHEAD.

8              MR. SCOTT:  OKAY.

9              AS YOU MADE CLEAR IN YOUR MOTION TO

10   STRIKE, YOUR HONOR, SEC HAS CURRENTLY ALLEGED THAT

11   MS. SKAER HAS BEEN INVOLVED IN ONLY 3 OF 45 GRANTS

12   AT ISSUE.

13             INDEED, THE FIRST AMENDED COMPLAINT

14   SPECIFICALLY CONCEDED THAT SHE HAD NO INVOLVEMENT

15   IN JANUARY 1999 OR APRIL 1999 GRANTS.  AND CAN

16   OFFER NO FACTS, SPECIFIC OR OTHERWISE, TO SHOW SHE

17   WAS INVOLVED IN OPTION GRANTS PRIOR TO

18   DECEMBER 2001.

19             THESE ALLEGATIONS ARE FUNDAMENTALLY

20   CONTRADICTORY FROM THE BROADER CLAIM THAT SHE WAS

21   SOMEHOW INVOLVED IN A SCHEME DATING BACK TO 1996.

22   WITH THAT INCONSISTENCY IN MIND, THE QUESTION

23   BECOMES WHETHER MR. SKAER SHOULD HAVE TO SHOULDER

24   THE BURDEN OF LITIGATING 45 CHALLENGED GRANTS, WHEN

25   BY THE COMPLAINTS' OWN ALLEGATIONS SHE WAS ONLY

1    INVOLVED IN MAKING THREE OF THEM.

2              SHOULD SHE HAVE TO TAKE DISCOVERY ON AND

3    DEFEND AGAINST SEVEN YEARS OF REPORTED WRONGDOING

4    WHEN, BY THE SEC'S OWN ALLEGATIONS, SHE WAS ONLY

5    INVOLVED IN ONE AND A HALF OF THOSE YEARS?

6              SHOULD SHE HAVE TO FILE A MOTION FOR

7    SUMMARY JUDGEMENT CHALLENGING 45 GRANTS WHEN 42 OF

8    THEM ARE NOT BEEN ALLEGED TO HAVE BEEN HER DOING?

9              NOW, THE SEC ARGUES THAT MS. SKAER'S

10   MOTION TO STRIKE SHOULD BE DENIED BECAUSE SHE CAN'T

11   ENUMERATE WHICH SPECIFIC PARAGRAPH SHOULD BE

12   STRICKEN.  BUT HOW CAN THE SEC ASK TO HOLD

13   MS. SKAER TO A STANDARD OF SPECIFICITY WHEN ITSELF

14   FAILS TO MEET.

15             PUT ANOTHER WAY, HOW CAN MS. SKAER'S

16   MOTION TO STRIKE BE DENIED FOR LACK OF SPECIFICITY

17   WHEN THE FIRST AMENDED COMPLAINT ITSELF OFFERS NO

18   SPECIFIC ALLEGATIONS TO BE STRICKEN?

19             NOW, WE WOULD BE HAPPY TO OFFER YOUR

20   HONOR A BLACK LINE VERSION OF THE COMPLAINT SHOWING

21   WHAT WE THINK SHOULD BE STRICKEN.  WE THINK THE

22   BETTER SOLUTION IS ONE WE PROPOSE IN OUR MOTION.

23             THE COURT ISSUE A SIMPLE ORDER HOLDING

24   THE FIRST AMENDED COMPLAINT SCHEME ALLEGATIONS ARE

25   APPLICABLE TO MS. SKAER FROM THE POINT OF HER FIRST

1    ALLEGED INVOLVEMENT, WHICH IS LATE DECEMBER 2001,

2    FORWARD ONLY.

3              THAT'S ALL I HAVE.

4              THE COURT:  OKAY.  THANK YOU.  THANK YOU

5    VERY MUCH.

6              MR. WILLIAMS?

7              MR. WILLIAMS:  THANK YOU, YOUR HONOR.

8              LET ME START WITH THE 304 ARGUMENTS THAT

9    MR. FACTER MADE ON BEHALF OF MR. SMITH.

10             FIRST OF ALL, I THINK THAT THE ISSUE OF

11   THE MISCONDUCT AND WHAT MISCONDUCT THE SEC IS

12   ALLEGING IS SOMEWHAT OF A COMPILATION OF THE

13   MISCONDUCT TALKED ABOUT IN THE STATUTE AND WHAT THE

14   DEFENDANT HAS TO DO TO ACTUALLY BE LIABLE

15   UNDERGROUND SECTION 304.

16             I THINK A PLAIN READING OF SECTION 304

17   INDICATES THAT THE MISCONDUCT CONGRESS WAS SPELLING

18   OUT THAT WAS A PRECURSOR FOR LIABILITY UNDER 304

19   WAS PUT THERE SIMPLY TO DISTINGUISH FINANCIAL FRAUD

20   SITUATION FROM AN ACCOUNTING DISAGREEMENT SITUATION

21   AND HAS NOTHING DO WITH THE CONDUCT OF THE

22   INDIVIDUALS THAT ARE LIABLE UNDER THE SECTION 304.

23             THE INDIVIDUALS THAT ARE LIABLE UNDER

24   SECTION 304 ARE THE CHIEF FINANCIAL OFFICER AND

25   CHIEF EXECUTIVE OFFICER WHO ARE RESPONSIBLE FOR

1    ENSURING THE ACCURACY.  THEY CERTIFY IN

2    SARBANES-OXLEY THAT THEY EITHER KNOW THERE IS NO

3    FRAUD OR THEY HAVE IMPLEMENTED INTERNAL CONTROLS

4    THAT ENSURE.

5             THE COURT:  WHAT'S THE SCIENTER?  WHAT'S

6    THE MENS REA FOR THAT?

7             SO IT'S A STRICT LIABILITY IF THEY SAY

8    THERE'S NOTHING WRONG AND IT TURNS OUT THERE IS?

9    THEY ARE ON THE HOOK?

10            MR. WILLIAMS:  BECAUSE 304 WORKS IN

11   CONCERT WITH 302, YOUR HONOR.

12            THEY ARE IN THE SAME SECTION OF

13   SARBANES-OXLEY CALLED CORPORATE RESPONSIBILITY.

14   AND IF YOU LOOK AT THE LEGISLATIVE HISTORY OF THE

15   SARBANES-OXLEY, ONE OF THE OUTRAGES OF THE

16   CONGRESSIONAL HEARINGS AT THE TIME IS THE CEO OF

17   WALCOM AND THE CEO OF ENRON WERE TESTIFYING THAT WE

18   DIDN'T KNOW ANYTHING ABOUT THE FINANCIAL FRAUD

19   GOING ON IN OUR COMPANY.  AND THE ISSUE IS CONGRESS

20   IS MANDATING THEY BE RESPONSIBLE FOR THE

21   CERTIFICATIONS THEY MAKE.

22            AS I SAY, YOU EITHER REPRESENT AS A CHIEF

23   FINANCIAL OFFICER THAT YOU KNOW THAT NO FRAUD IS

24   THERE, AND IF THAT REPRESENTATION PROVES FALSE, YOU

25   ARE LIABLE.  OR YOU REPRESENT YOU HAVE IMPLEMENTED

                                                    25

1    INTERNAL CONTROLS THAT ENSURE YOU ARE AWARE OF ALL

2    THE FRAUD.  AND IF THE FRAUD COMES UP THEN THAT

3    CERTIFICATION --

4            THE COURT:  WHAT ABOUT WHAT I TOOK TO BE

5    THE HEART OF MR. FACTER'S ARGUMENT IS NOT SO MUCH

6    THAT, ALTHOUGH HE HAD A LOT TO SAY ABOUT THAT TOO,

7    BUT THE DATE IN QUESTION HERE HAS TO BE

8    AUGUST 13TH, AND THAT -- THOSE DUTIES WERE NOT

9    ARTICULATED BY THE SEC AS OF THAT DATE.

10           MR. WILLIAMS:  YOUR HONOR, THE PLAIN

11   READING OF SECTION 304 INDICATES -- THE REASON THAT

12   I HAVE A DIFFICULT TIME UNDERSTANDING MR. FACTER'S

13   ARGUMENT, AS YOU READ THE STATUTE, IT SAYS, "A CEO

14   OR CFO IS LIABLE TO REPAY THE INCENTIVE

15   COMPENSATION FOR A 12-MONTH PERIOD FOLLOWING THE

16   FIRST PUBLIC ISSUANCE FOR FILING WITH THE

17   COMMISSION OF THE FINANCIAL DOCUMENT EMBODYING

18   FINANCIAL REPORTING REQUIREMENT."

19           NOW, WE HAVE ALLEGED THAT THERE ARE LOTS

20   OF DOCUMENTS HERE THAT EMBODY A FINANCIAL REPORTING

21   REQUIREMENT.

22           MR. FACTER, I THINK, SAID THAT APB25 WAS

23   A FINANCIAL REPORTING REQUIREMENT.  APB25 IS NOT A

24   FINANCIAL REPORTING REQUIREMENT, IT'S AN ACCOUNTING

25   RULE.  A FINANCIAL REPORTING REQUIREMENT IS A

1    REQUIREMENT, SOME STATUTE OR REGULATION THAT

2    REQUIRES ISSUERS TO FILE FINANCIAL REPORTS.

3              IN THIS CASE, SECTION 13(A) OF THE

4    EXCHANGE ACT, RULE 13(A)(1) REQUIRES ISSUERS TO

5    FILE ANNUAL REPORTS.  RULE 13(A)(13) REQUIRES

6    ISSUERS TO FILE QUARTERLY REPORTS.  WE'VE

7    ARTICULATED WHAT EACH ONE OF THOSE QUARTERLY AND

8    ANNUAL REPORTS ARE.

9              THE COURT:  SO YOU COULD PICK ANY

10   REPORT --

11             MR. WILLIAMS:  IF IT'S A REPORT THAT'S

12   REQUIRED TO BE RESTATED, THEN THE CEO AND THE CFO

13   ARE LIABLE FOR REPAYMENT OF DISGORGEMENT FOR THE

14   PERIOD DURING WHICH --

15             THE COURT:  SO IF THE FIRST MISSTATEMENT

16   OCCURRED IN AN EARLIER REPORT, IT ISN'T ACTIVE ON

17   THE LATER ONE?

18             MR. WILLIAMS:  NO, BECAUSE IT'S THE JOB

19   OF THE CFO AND CEO TO PRODUCE ACCURATE FINANCIAL

20   REPORTS.

21             IF THEY PRODUCED AN INACCURATE ONE IN THE

22   PREVIOUS QUARTER, THEN IT'S THEIR RESPONSIBILITY

23   FOR THE NEXT ONE TO PRODUCE AN ACCURATE ONE.

24             THE COURT:  WHAT DOES FIRST MEAN?

25             I'M TRYING TO UNDERSTAND WHAT THE CONTEXT

27

1    OF THAT IS.  BECAUSE MR. FACTER MADE IT SOUND

2    SILLY, AND THAT'S GOOD ADVOCACY ON HIS PART.  EACH

3    DOCUMENT THAT GETS FILED WITH THE SEC IS FIRST

4    FILED WHEN IT'S FILED WITH THE SEC.

5          MR. WILLIAMS:  NO, YOUR HONOR.  IT'S THE

6    FIRST PUBLIC ISSUANCE OR FILING.

7          AN ISSUER MIGHT ISSUE A FINANCIAL REPORT

8    BY PUBLISHING ON THEIR WEBSITE, THEY MIGHT FILE IT

9    WITH THE COMMISSION.

10          THE COURT:  SO LET ME MAKE SURE I

11    UNDERSTAND THIS.

12          LET'S SAY X FINANCIAL REPORT, WHATEVER IT

13    IS WHETHER IT'S QUARTERLY OR ANNUAL, IT CAN BE

14    PUBLISHED OR ISSUED IN A DIFFERENT CONTEXT.  IT CAN

15    BE FILED WITH THE SEC, IT COULD BE PUT ON THE

16    WEBSITE, IT CAN APPEAR IN A PROXY STATEMENT, IT CAN

17    APPEAR IN A PRESS RELEASE.  SO IT'S THE FIRST

18    PUBLICATION OF EACH --

19          MR. WILLIAMS:  OF EACH DOCUMENT.

20          THE COURT:  OKAY.  ALL RIGHT.  OKAY.

21          ANYTHING ELSE YOU WANT TO ADDRESS,

22    MR. WILLIAMS, IN REBUTTAL?

23          MR. WILLIAMS:  NOT WITH RESPECT TO THAT,

24    YOUR HONOR.

25          WITH RESPECT TO THE ARGUMENT THAT

1    MR. VELIE MADE WITH RESPECT TO THE STATUTE OF

2    LIMITATIONS, THE SUPREME COURT'S DECISION IN THE

3    SAND & GRAVEL CASE, THE SUPREME COURT CLEARLY

4    STATED THAT MOST STATUTE OF LIMITATIONS SEEK TO

5    PROTECT DEFENDANTS AGAINST STALE OR LATE CLAIMS.

6    SUCH STATUTES TYPICALLY PERMIT THE COURTS TOLL THE

7    LIMITATIONS PERIOD.

8         YOUR HONOR HAS ALREADY RULED 2462 IS ONE

9    OF THOSE STATUTES.  NOTHING HAS CHANGED FROM YOUR

10   HONOR'S LAST RULING.

11        AND WITH RESPECT TO THE MOTION TO STRIKE,

12   YOUR HONOR, COUNSEL FOR MS. SKAER HAS ARTICULATED

13   WE DON'T ALLEGE THAT SHE WAS INVOLVED FOR THE

14   ENTIRETY OF THE SCHEME.  THAT DOESN'T MEAN SHE

15   WASN'T INVOLVED.

16        THE COURT:  SO SOME TYPE OF ORDER --

17   ASSUMING THE MOTION TO DISMISS IS DENIED, SOME TYPE

18   OF ORDER EXPRESSLY LIMITING WHAT SHE NEEDS TO

19   RESPOND TO WOULD NOT BE A PROBLEM.

20        MR. WILLIAMS:  I DON'T SEE THE NEED FOR

21   THAT SORT OF ORDER, YOUR HONOR, BECAUSE THERE'S

22   NOTHING IN THE COMPLAINT THAT SUGGESTS THAT SHE WAS

23   INVOLVED IN --

24        THE COURT:  WELL, COUNSEL'S FEAR SEEMS TO

25   BE, IF I AM UNDERSTANDING HIM, IS THAT SHE'S

1    SOMEHOW RESPONSIBLE FOR RESPONDING TO THE ALL OF

2    THE ALLEGATIONS OF THE SCHEME INCLUDING THE OTHER

3    42 OPTIONS.

4          MR. WILLIAMS:  WELL, BUT COUNSEL IS

5    GLEAMING FROM OUR COMPLAINT THAT WE ONLY ALLEGE SHE

6    WAS INVOLVED IN A SMALL NUMBER OF THEM.

7          MY RELUCTANCE WOULD BE THIS:  WE ALLEGE

8    SHE WAS INVOLVED IN A BACKDATED GRANT, AND WE

9    SPECIFICALLY PLEAD THE DETAILS OF THAT AS FAR BACK

10   AS 1998.

11         SO IN ORDER OF SAYING, YOU DON'T HAVE TO

12   WORRY ABOUT ANYTHING AFTER 2001, DOESN'T MAKE SENSE

13   IN THE CONTEXT OF WHAT WE'VE ACTUALLY PLED.

14         THE COURT:  IT SEEMS TO ME YOU OUGHT TO

15   BE HELD TO THE LIMITATIONS YOU'VE ACKNOWLEDGED.

16   YOU ACKNOWLEDGED THAT YOU ARE NOT SEEKING TO HOLD

17   HER RESPONSIBLE FOR MORE THAN THREE GRANTS.

18         MR. WILLIAMS:  RIGHT.

19         BUT THAT WAS MY ISSUE WITH THE MOTION TO

20   STRIKE IS THEY DIDN'T REALLY IDENTIFY ANYTHING

21   WE'VE ALLEGED THAT IS INCONSISTENT WITH WHAT WE'VE

22   ALLEGED.

23         THE COURT:  OKAY.  ALL RIGHT.

24         GO AHEAD, COUNSEL.  YOU GOT 30 SECONDS.

25   WE NEED TO TAKE A BREAK.

1              MR. SCOTT:  I WOULD ONLY POINT OUT, YOUR

2    HONOR, THAT WE ARE ASKING TO STRIKE ALLEGATIONS AS

3    THEY RELATE TO A SCHEME TO BACKDATE OPTION GRANTS.

4              MR. WILLIAMS, IN HIS PAPER BRINGS UP THIS

5    1998 BACKDATED OPTION EXERCISE, BUT THAT'S NOT WHAT

6    OUR MOTION CONCERNS.

7              THE COURT:  I THINK I UNDERSTAND WHAT THE

8    GOAL IS AND I'LL SEE WHAT I CAN DO.

9              MR. FACTER, 30 SECONDS.  I KNOW THAT'S

10   HARD, BUT --

11             MR. FACTER:  WELL, I WOULD JUST SAY THIS,

12   YOUR HONOR.  NOW THERE ARE TWO NEW AMBIGUITIES THAT

13   COME OUT OF THAT ARGUMENT.  THE FIRST PUBLIC

14   ISSUANCE OR FILING NOW MEANS FIRST PUBLIC ISSUANCE

15   OF EACH FILING.  THAT'S THE ARGUMENT.

16             THE COURT:  THAT'S WHAT MR. WILLIAMS

17   SAID.

18             MR. FACTER:  I DON'T READ IT THAT WAY,

19   BUT IF THERE IS A READING THAT WAY, I THINK THE

20   RULE OF LENITY, GIVEN THE FORFEITURE AT STAKE HERE,

21   RESOLVES IT.

22             THE SECOND AMBIGUITY THAT I'M HEARING NOW

23   IS THE MEANING OF FINANCIAL REPORTING REQUIREMENT.

24   HE'S SAYING ANY DOCUMENT THAT GETS FILED, THE

25   REQUIREMENT IS TO FILE A DOCUMENT.  BUT THE WORD

1       "FINANCIAL" IS BEFORE REPORTING REQUIREMENT.

2               AND THIS STATUTE APPLIES, IF AN ISSUER IS

3       REQUIRED TO PREPARE AN ACCOUNTING STATEMENT DUE TO

4       THE MATERIAL NON-COMPLIANCE OF THE ISSUER AS A

5       RESULT OF MISCONDUCT WITH ANY FINANCIAL REPORTING

6       REQUIREMENT.

7               THE COURT:  SO IF IT WAS LIMITED TO THE

8       10-Q'S AND THE 10-K'S AND SO FORTH, THAT WOULD

9       BE -- IT HAD NOTHING TO DO WITH GAP, IT WOULD HAVE

10      TO DO WITH WHETHER YOU FILED ON TIME OR NOT.

11              MR. FACTER:  EXACTLY.  AND THIS IS A

12      STATUTE THAT PUNISHES RESTATEMENTS.

13              THE COURT:  IT'S ABOUT MORE THAN THE

14      TIMING OF YOUR FILING.

15              MR. FACTER:  THAT'S CORRECT.

16              I THINK THAT'S THE BETTER READING, BUT I

17      THINK THAT'S ONLY READING.  BUT IF I AM WRONG AND

18      THERE ARE TWO READINGS, WE WIN.

19              THE COURT:  UNDERSTOOD.  THANK YOU VERY

20      MUCH.

21              MR. WILLIAMS:  YOUR HONOR, IF I COULD

22      JUST SAY ONE MORE THING.  OKAY.

23              THE COURT:  OKAY.  I'M TRYING, BUT GO

24      AHEAD.

25              MR. WILLIAMS:  I THINK THAT IT IS CLEAR,

32

1    AND WE'VE ALLEGED IN OUR COMPLAINT THAT SECTION

2    13(A) OF THE EXCHANGE ACT REQUIRES ISSUERS TO FILE

3    PERIODIC REPORTS.  AND IT IS A VIOLATION OF SECTION

4    13(A) TO FILE A MATERIALLY FALSE PERIODIC REPORT.

5             SO THERE'S NOTHING INCONSISTENT WITH

6    ASCRIBING TO A FINANCIAL REPORTING REQUIREMENT --

7             THE COURT:  THE REQUIREMENT IS NOT SIMPLY

8    LIMITED TO, YOU HAVE TO FILE THESE REPORTS ON THESE

9    PARTICULAR DATES; YOU HAVE TO FILE REPORTS THAT

10   COMPORT WITH GAP AND ARE OTHERWISE MATERIALLY

11   CORRECT.

12            MR. WILLIAMS:  THE COURTS HAVE RULED THAT

13   THAT'S IMPLIED IN 13(A) WHICH IS THE FINANCIAL

14   REPORTING REQUIREMENT THAT REPORTS THAT ARE FILED

15   BE FILED MATERIALLY CORRECT.

16            THE COURT:  OKAY.  UNDERSTOOD.  THANK

17   YOU.

18            I GOT A LOT OF WORK TO DO.  I WILL GET

19   SOMETHING OUT TO YOU SOON.  THANK YOU VERY MUCH.

20            MR. FACTER:  THANK YOU, YOUR HONOR.

21            MR. WILLIAMS:  THANK YOU, YOUR HONOR.

22            (WHEREUPON, THE PROCEEDINGS IN THIS

23   MATTER WERE CONCLUDED.)

24

25

1

2

3

4                        **CERTIFICATE OF REPORTER**

5

6

7

8              I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13              THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22                         _____
                           SUMMER A. CLANTON, CSR
23                         CERTIFICATE NUMBER 13185

24

25

                                                        34