**E-Filed 9/15/2009**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>MERCURY INTERACTIVE, LLC., et al.,<br><br>Defendants. | Case Number C 07-2822 JF (RS)<br><br>ORDER[1] GRANTING DEFENDANTS' MOTIONS TO DISMISS WITH LEAVE TO AMEND AND DENYING AS MOOT ALTERNATIVE MOTIONS FOR MORE DEFINITE STATEMENT AND TO STRIKE<br><br>[re: docket nos. 98, 102, 103] |

Defendants Amnon Landan ("Landan"), Douglas Smith ("Smith"), and Susan Skaer ("Skaer") move to dismiss all or portions of the first amended complaint ("FAC") of the Securities and Exchange Commission ("SEC") pursuant to Fed. R. Civ. P. 12(b)(6). Landan alternatively seeks a more definite statement pursuant to Fed. R. Civ. P. 12(e), and Skaer alternatively moves to strike portions of the FAC pursuant to Fed. R. Civ. P. 12(f). The Court has considered the moving and responding papers and the arguments of counsel presented at the hearing on March 23, 2009. For the reasons discussed below, the Court will grant the motions to dismiss with leave to amend and will deny as moot the alternative motions brought by Landon and Skaer.

---

[1] This disposition is not designated for publication in the official reports

**I. BACKGROUND**

The SEC commenced this civil action on May 31, 2007, alleging that Mercury Interactive, LLC ("Mercury")[2] and four of its senior executives had committed numerous violations of the Securities Exchange Act of 1934 ("Exchange Act") and the Securities Act of 1933 ("Securities Act") in the course of implementing a stock options backdating scheme. The SEC's allegations regarding that scheme are described at length in this Court's prior order issued September 30, 2008 ("September 30 Order") and need not be repeated in detail here. In brief, the SEC alleges that under Generally Accepted Accounting Principles ("GAAP"), a company is required to record a compensation expense each time it grants a stock option with an exercise price below the stock's market price on the grant date; such options are referred to herein as "backdated" or "in-the-money" options. FAC ¶¶ 19-20. Mercury and the four individual defendants allegedly orchestrated forty-five such option grants between 1997 and April 2002 while concealing the in-the-money nature of the grants and thus concealing associated compensation expenses of $258 million. FAC ¶¶ 44, 100.

Mercury and one of the individual defendants, Sharlene Abrams ("Abrams"), have entered into separate stipulated judgments providing for the payment of significant civil penalties ($28,000,000 by Mercury and $2,287,914 by Abrams) as well as permanent injunctive relief.[3] The remaining individual defendants are Landan, the company's Chief Executive Officer ("CEO") from 1997 through November 2005; Smith, the Chief Financial Officer ("CFO") from November 2001 through November 2005; and Skaer, who acted as Mercury's general counsel and secretary from November 2000 through November 2005, and prior to that as outside counsel from October 1996 through November 2000. All three of these individuals moved to dismiss the original complaint, which motions were granted in part and denied in part in the September 30 Order. The Court concluded that the SEC adequately had alleged claims pursuant to § 17(a) of

---

[2] Formerly known as Mercury Interactive, Inc.

[3] The stipulated judgments state expressly that Mercury and Abrams do not admit or deny the allegations of the complaint.

the Securities Act, § 10(b) of the Exchange Act, and § 302 of the Sarbanes Oxley Act of 2002. However, the Court dismissed with leave to amend the SEC's claims pursuant to several other statutory provisions.

The SEC filed the operative FAC on October 30, 2008, alleging claims for: (1) fraud in connection with the offer or sale of Mercury stock in violation of § 17(a) of the Securities Act; (2) fraud in the purchase or sale of Mercury stock in violation of § 10(b) of the Exchange Act and Rule 10b-5 thereunder; (3) record keeping violations of § 13(b)(5) of the Exchange Act and Rule 13b2-1 thereunder; (4) making false or misleading statements or omissions in connection with an audit in violation of Exchange Act Rule 13b2-2; (5) fraud in the filing of annual and quarterly reports in violation of § 13(a) of the Exchange Act and Rules 12b-20, 13a-1 and 13a-13 thereunder; (6) providing false certifications of Forms 10-K and 10-Q in violation of Exchange Act Rule 13a-14; (7) record keeping violations of § 13(b)(2)(A) of the Exchange Act; (8) failure to maintain internal accounting controls in violation of § 13(b)(2)(B) of the Exchange Act; (9) violation of reporting requirements of § 16(a) of the Exchange Act and Rule 16a-3 thereunder; (10) fraud in the solicitation of proxies in violation of § 14(a) of the Exchange Act and Rule 14a-9 thereunder; and (11) repayment under § 304 of the Sarbanes-Oxley Act.  The SEC seeks permanent injunctive relief, disgorgement of wrongfully obtained benefits plus prejudgment interest, civil monetary penalties, an order precluding the individual defendants from serving as officers or directors of any public company, and repayment of bonuses and stock profits.

Landan moves to dismiss the ninth and eleventh claims or, in the alternative, for a more definite statement of the eleventh claim.  Smith moves to dismiss the ninth, tenth and eleventh claims.  Skaer moves to dismiss all claims against her or, in the alternative, to strike certain allegations from the FAC.

## II. MOTIONS TO DISMISS

**A.    Legal Standard**

Dismissal under Fed. R. Civ. P. 12(b)(6) "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Medical Center*, 521 F.3d 1097, 1104 (9th Cir. 2008).  For purposes of a motion

to dismiss, the plaintiff's allegations are taken as true, and the court must construe the complaint in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). At the same time, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Thus, a court need not accept as true conclusory allegations, unreasonable inferences, legal characterizations, or unwarranted deductions of fact contained in the complaint. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-755 (9th Cir. 1994). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

A heightened pleading standard applies to claims of fraud. Fed. R. Civ. P. 9(b) (requiring that when alleging fraud a party must "state with particularity the circumstances constituting fraud"). This standard extends to claims grounded in fraud, that is, claims in which fraudulent conduct serves as an element. *See In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1404-05 (9th Cir. 1996). To meet this standard, the plaintiff must allege the "who, what, where, when, and how" of the fraudulent conduct. *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Thus the SEC may allege scienter in conclusory fashion. *SEC v. Levin*, 232 F.R.D. 619, 623 (C.D. Cal. 2005) (holding that "the complaint need only state that the required scienter existed"); *see also SEC v. ICN Pharmaceuticals, Inc.*, 84 F. Supp. 2d 1097, 1098-99 (C.D. Cal. 2000).[4]

---

[4] The Private Securities Litigation Reform Act ("PSLRA") imposes more stringent pleading requirements in private actions for securities fraud; the PSLRA does not apply to actions brought by the SEC. *ICN Pharmaceuticals*, 84 F. Supp. 2d at 1099.

**B.    Ninth Claim**

Landan and Smith move to dismiss the ninth claim, alleging violations of § 16(a) of the Exchange Act, 15 U.S.C. § 78p(a), and Rule 16a-3 thereunder, 17 C.F.R. § 240.16a-3. Those provisions require officers, directors, and beneficial owners of more than ten percent of any class of equity security registered pursuant to § 12 of the Exchange Act to file periodic reports disclosing any change of beneficial ownership of those securities. The SEC alleges that each grant or exercise of stock options required the filing of Forms 3 and 4[5] with the SEC, FAC ¶ 178; that the individual defendants in fact filed the requisite Forms 3 and 4, FAC ¶ 179; but that the individual defendants nonetheless violated § 16(a) and Rule 16a-3 because the Forms 3 and 4 "contained false or misleading statements with respect to the options' grant dates, expiration dates and exercise prices," FAC ¶ 179.

These allegations are insufficient to state a claim. The Court previously dismissed the ninth claim, among others, for failure to identify with particularity the documents that are the bases for the claim. The SEC has not cured this defect; although it alludes generally to "Forms 3 and 4" filed by the individual defendants, and refers to several preceding paragraphs, the ninth claim does not identify with particularity which Forms 3 and 4 are at issue for each individual defendant. Moreover, the SEC does not allege that the Forms 3 and 4 that were filed by the individual defendants failed to make accurate disclosures regarding changes in beneficial ownership. As long as the forms disclosed each grant and exercise of an option, it is unclear how the forms could give rise to liability under these provisions even if the compensation expenses for the grants were not properly recorded.

The SEC argues that § 16(a) and Rule 16a-3 require not only that the appropriate forms be filed but also that the information provided on the forms be true and correct. *See SEC v. Shattuck Denn Mining*, 297 F. Supp. 470, 477 (S.D.N.Y. 1968) ("The failure to file proper Form 4 statements, and make complete disclosure in similar statements actually filed, constitutes a

---

[5] Rule 16a-3 provides that an initial statement by an insider is to be made on Form 3, and subsequent statements of changes in beneficial ownership are to be made on Form 4 or Form 5. 17 C.F.R § 240.16a-3.

1  violation of section 16(a)."). The Court agrees insofar as the SEC is asserting that the
2  information regarding changes in beneficial ownership provided in the Forms 3 and 4 must be
3  accurate. However, it is not clear from the FAC that the individual defendants filed any Forms 3
4  or 4 as to which such information was not accurate. Accordingly, the ninth claim is subject to
5  dismissal for failure to state a claim upon which relief may be granted. At the hearing, counsel
6  for the SEC represented that the SEC could plead the particular Forms 3 and 4 giving rise to
7  liability as to each defendants. Accordingly, the ninth claim will be dismissed with leave to
8  amend.
9       Landon asserts that even assuming that the ninth claim can be amended to cure the
10 defects noted above, the claim is time-barred under 28 U.S.C. § 2462, which provides as follows:
11     Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise,
12     shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is
13     found within the United States in order that proper service may be made thereon.
14 28 U.S.C. § 2462. The Court previously addressed the effect of § 2462 in its September 30
15 Order, concluding that (a) there is an open question as to the statute's application in this case,
16 and (b) even assuming that the statute does apply, and is not subject to equitable tolling, the
17 statute does not apply to some forms of relief sought by the SEC, such as injunctive relief and
18 disgorgement of ill-gotten gains. September 30 Order at 5-7. Landon's renewed arguments as to
19 these issues have not persuaded the Court to change its ruling.[6]
20 **C.    Tenth Claim**
21      Only Smith moves to dismiss the tenth claim, alleging violations of § 14(a) of the
22 Exchange Act, 15 U.S.C. § 78n(a), and Rule 14a-9 thereunder, 17 C.F.R. § 240.14a-9. Those
23 provisions impose liability for the issuance of proxy statements containing materially false or
24 misleading statements. To state a claim under §14(a), a plaintiff must show that (1) the
25
26     [6] Landon asserts that the SEC will not be able to make the requisite showing to obtain
27 injunctive relief or disgorgement. Landon may be correct. However, whether the SEC can prevail on the merits of its claims is a separate question distinct from whether those claims are
28 time-barred.

Case No. C 07-2822 JF (RS)
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ETC.
(JFLC2)

defendant made a material misrepresentation or omission in a proxy statement, (2) the misrepresentation or omission was made with the requisite level of culpability, and (3) the misrepresentation or omission was an essential link in the accomplishment of a transaction proposed in the proxy solicitation. *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000). Each of these requirements – and the "essential link" requirement in particular – reflects the purpose of section 14(a), which is to prevent corporate management "from obtaining authorization for corporate action by means of deceptive or inadequate disclosure of proxy solicitation." *J.I. Case Co. v. Borak*, 277 U.S. 426, 431 (1964). The essential link requirement can "only be established when the proxy statement at issue *directly authorizes* the loss-generating corporate action." *Hulliung v. Bolen*, 548 F. Supp. 2d 336, 341 (N.D. Tex. 2008) (emphasis added).

       The SEC alleges that the individual defendants solicited proxies by means of proxy statements containing false and misleading representations. FAC ¶ 185. However, the tenth claim does not allege with particularity which proxy statements are at issue for each individual defendant. Moreover, with respect to Smith, it appears that the only two proxy statements filed after he became the CFO were filed *after* the alleged backdating had ceased; thus it is unclear how those proxy statements could have been an essential link in the execution of a backdating transaction. *See Hulliung*, 548 F. Supp. 2d at 340 (holding that it was "simply illogical to suggest that Proxies could be an 'essential link' to – i.e., directly authorize – corporate actions that were taken three years or more *before* any of the proxies were distributed"); *In re iBasis, Inc. Deriv. Litig.*, 532 F. Supp. 2d 214, 222-23 (D. Mass. 2007) (dismissing § 14(a) claim because any fallout associated with the alleged backdating would have occurred regardless of disclosure, and because plaintiffs had failed to allege that any backdated options were issued in connection with the challenged proxy statement). Accordingly, the tenth claim is subject to dismissal with respect to Smith. Based upon the facts alleged in the amended complaint, it does not appear that the SEC will be able to state a viable § 14(a) claim against Smith. However, the Court will afford the SEC one final opportunity to do so before dismissing this claim without leave to amend.

**D.    Eleventh Claim**

Landan and Smith move to dismiss the eleventh claim, seeking reimbursement for bonuses and stock profits pursuant to § 304 of the Sarbanes-Oxley Act, 15 U.S.C. § 7243. That section provides in relevant part as follows:

> If an issuer is required to prepare an accounting restatement due to the *material noncompliance of the issuer, as a result of misconduct, with any financial reporting requirement* under the securities laws, the chief executive officer and chief financial officer of the issuer shall reimburse the issuer for–
>
> (1) any bonus or other incentive-based or equity-based compensation received by that person from the issuer during the 12-month period *following the first public issuance or filing* with the Commission (whichever first occurs) of the financial document embodying such financial reporting requirement; and
>
> (2) any profits realized from the sale of securities of the issuer during that 12-month period.

15 U.S.C. § 7243(a) (emphasis added). The SEC alleges that: Mercury restated its financial results for fiscal years 2002-2004 inclusive, and restated selected financial data for fiscal years 2000-2003 inclusive, FAC ¶ 190; the restatements resulted from Mercury's failure to disclose in annual and quarterly reports $258 million in compensation expenses associated with backdated stock options, FAC ¶¶ 191-192; Landan and Smith served as Mercury's CEO and CFO, respectively, during this time frame, FAC ¶ 193; and Landan and Smith received bonuses and realized stock profits during the twelve months following the filing of each of the annual and quarterly reports that failed to disclose the subject compensation expenses, FAC ¶ 194.

Defendants contend that the misconduct underpinning the § 304 claim is the alleged backdating; that all such backdating occurred prior to July 30, 2002, the date upon which § 304 was enacted; and thus that applying § 304 in this case would constitute an impermissible retroactive application of the statute. The SEC appears to concede that § 304 may not be applied retroactively, but it asserts that it was not the backdating itself that constituted the actionable misconduct, but rather the filing of statements concealing the resulting compensation expenses; the SEC contends that because many such statements were filed after the enactment of § 304 the statute properly may be applied.

The Court agrees with the parties that § 304 may not be applied retroactively. "In

general, our jurisprudence harbors an aversion to retroactivity, grounded in '[e]lementary considerations of fairness.'" *Humetrix, Inc., v. Gemplus S.C.A.*, 268 F.3d 910, 922 (9th Cir. 2001) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994)). "Accordingly, a presumption against retroactive legislation prevails, absent a clear indication from Congress that it intends that new legislation apply retroactively." *Id*. (internal quotation marks and citations omitted). Congress has not expressed an intent that § 304 apply retroactively. See *In re Goodyear Tire & Rubber Co. Derivative Litigation*, 2007 WL 43557, at *8 (N.D. Ohio 2007) ("Nothing in the text of Section 304 suggests retroactive application of any of its provisions.").

       The parties present an interesting question as to what precise conduct would trigger application of § 304 (if indeed it is triggered) in this case. All of the alleged backdating occurred prior to enactment of the Sarbanes-Oxley Act on July 30, 2002. However, numerous annual and quarterly reports concealing the compensation expenses resulting from such backdating were filed after the effective date of the Act. There is no controlling authority directly on point. Based upon the text of the statute, which focuses on whether the company must restate its financials because of material noncompliance with "any financial reporting requirement," the Court agrees with the SEC that it is the filing of the inaccurate annual and quarterly financial reports that triggers application of § 304.

       Defendants argue that this construction reads out of the statute the requirement that the material noncompliance in reporting be the "result of misconduct." Defendants assert that the misconduct in this case is the backdating, which ended before enactment of the Sarbanes-Oxley Act. Defendants argue that because the "misconduct" necessarily occurred prior to enactment of the Sarbanes-Oxley Act, applying § 304 in this case unfairly would impose consequences on conduct that predated the Act. As the SEC points out, however, granting in-the-money stock options is not wrongful in and of itself; it is the failure to record and report the compensation expense associated with the granting of such options that is wrongful. The SEC has alleged that the individual defendants participated in a scheme to defraud the market by concealing the compensation expenses associated with the grant of in-the-money options, and made material misstatements and omissions in 10Ks, quarterly reports, and other public statements designed to

conceal those compensation expenses. Accordingly, the Court concludes that Defendants' retroactivity argument is unavailing.

However, the Court agrees with Defendants that the SEC has not identified adequately "the first public issuance or filing . . . of the financial document embodying such financial reporting requirement." *See* 15 U.S.C. § 7243(a)(1). The statute authorizes recovery of bonuses and stock profits received by the CEO and CFO during the twelve-month period following such "first public issuance or filing." *Id*. Defendants argue persuasively that, with respect to each in-the-money options grant, the "first public issuance or filing" was the quarterly report that should have reflected the compensation expense resulting from the options grant. The last alleged options grant occurred in April 2002. Any compensation expense associated with that options grant should have been reported in the quarterly report for the second quarter of 2002, encompassing April, May, and June 2002. That quarterly report was the August 13, 2002 Form 10-Q. However, the SEC does not allege the August 13, 2002 Form 10-Q as a basis for its § 304 claim. Instead, the SEC alleges that the claim is based upon subsequent filings that also fail to disclose the compensation expense. By definition, none of these subsequent filings is the "first" one. Accordingly, the Court concludes that none of the subsequent filings can support the SEC's § 304 claim.

The SEC's opposition brief does not respond meaningfully to Defendants' argument based upon the "first public issuance or filing" language, but rather asserts that Landan and Smith are responsible for repayment of all bonuses and stock sales in the year following *each* annual and quarterly financial statement because "the financial impact of the misconduct is not limited to the very first financial statement following the fraud." Opp. at 13. Section 304 imposes the repayment penalty for the year following the "first" filing for which there was a financial reporting requirement, not for a year following "each" filing. Moreover, the statute says nothing about the length of time that the "financial impact" of the misconduct is felt.

At the hearing, counsel for the SEC suggested that the statute's reference to the "first public issuance or filing" of a document refers to the first time *that* document is issued or filed – whether that be published online, in a proxy statement, in a press release, or filed with the SEC –

Case No. C 07-2822 JF (RS)
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ETC.
(JFLC2)

as distinguished from the subsequent issuances or filings of the document. Under the SEC's reading, there is a new twelve-month period triggered by the filing of *each* such document, the twelve-month period running from the "first" filing of that document. The Court does not find the SEC's reading of the statute to be plausible. However, even if the SEC's reading were one possible reasonable construction of the statutory language, Defendants' reading is at least equally reasonable. Application of the SEC's construction thus would violate Defendants' due process rights. *See County of Suffolk v. First American Real Estate Solutions*, 261 F.3d 179, 195 (2d Cir. 2001) ("Due process requires that before a criminal sanction or significant civil or administrative penalty attaches, an individual must have fair warning of the conduct prohibited by the statute or the regulation that makes such a sanction possible.").

Because the SEC has not identified adequately a "first public issuance or filing" sufficient to identify a twelve-month period for which Landan and Smith are obligated to repay bonuses and stock profits, the eleventh claim is subject to dismissal. Given the facts alleged in the first amended complaint and the Court's construction of § 304, the SEC may not be able to allege a viable claim against Landon or Smith. However, the Court will afford the SEC an opportunity to attempt to do so before dismissing the § 304 claim without leave to amend.

**E.     Skaer**

With respect to Skaer, the Court previously held that the SEC adequately had alleged claims under § 17(a) of the Securities Act and § 10(b) of the Exchange Act, and dismissed all remaining claims against her pursuant to Fed. R. Civ. P. 12(b)(6). *See* September 30 Order at 14. Skaer contends that the SEC has not cured the pleading defects identified by the Court in its September 30 Order, and asks the Court to reconsider the adequacy of the SEC's allegations with respect to the § 17(a) and § 10(b) claims.

This motion presents a close question. While the Court previously held that the SEC adequately had alleged viable § 17(a) and § 10(b) claims against all the remaining defendants, and Skaer did not seek reconsideration of the September 30 Order, the Court concludes that Skaer properly may request that the Court revisit the adequacy of the SEC's allegations against her in the context of the FAC. In its September 30 Order, the Court noted that Skaer's role in

each of the alleged filings was unclear. The Court permitted the action to go forward as to all the remaining defendants, but as to Skaer noted that "[b]ecause she is not alleged to have signed any of the filings, but rather to have assisted in their drafting and preparation, specificity regarding her conduct is particularly important." September 30 Order at 11. The SEC had the benefit of more than an additional year of discovery between the filing of its original complaint and the operative FAC, but the allegations regarding Skaer remain quite vague. At the hearing, counsel for the SEC conceded that Skaer is alleged to have been involved in only three of the forty-five grants alleged in the complaint, but resisted the suggestion that her liability (if any) should be limited to those three transactions. Having reviewed the SAC as well as the transcript of the oral arguments presented at the hearing, the Court presently is uncertain as to the precise scope of the allegations against Skaer. Rather than attempt to excise portions of the SAC as requested in Skaer's alternative motion to strike, the Court will dismiss all claims against Skaer with directions to the SEC to be as clear as possible regarding Skaer's involvement in the alleged scheme when repleading.

### IV. ALTERNATIVE MOTIONS

In light of its disposition of Landan's motion to dismiss, the Court need not reach his alternative motion for more definite statement pursuant to Fed. R. Civ. P. 12(e). Similarly, the Court need not reach Skaer's alternative motion to strike pursuant to Fed. R. Civ. P. 12(f).

//
//
//
//
//

Case No. C 07-2822 JF (RS)
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ETC.
(JFLC2)

**V. ORDER**

(1)   Landan's motion to dismiss the ninth and eleventh claims is GRANTED WITH LEAVE TO AMEND, and his alternative motion for more definite statement is DENIED AS MOOT;

(2)   Smith's motion to dismiss the ninth, tenth, and eleventh claims is GRANTED WITH LEAVE TO AMEND;

(3)   Skaer's motion to dismiss is GRANTED WITH LEAVE TO AMEND, and her alternative motion to strike is DENIED AS MOOT; and

(4)   Any amended complaint shall be filed within thirty (30) days of the date of this order.

DATED:  9/15/2009

_____
JEREMY FOGEL
United States District Judge

1  Copies of Order served on:

2

3  Alvin David Williams     williamsdav@sec.gov

4  Amanda Kaye Packel     apackel@orrick.com

5  Andrew T. Solomon     asolomon@sandw.com

6  Carl Brandon Wisoff     bwisoff@fbm.com, calendar@fbm.com, mzappas@fbm.com

7  Douglas R. Young     dyoung@fbm.com, calendar@fbm.com

8  Emily Victoria Griffen     egriffen@shearman.com

9  Frank J. Riebli     friebli@fbm.com, calendar@fbm.com, dlynch@fbm.com

10  Franklin B. Velie     fvelie@sandw.com

11  James A. Meyers     jmeyers@orrick.com

12  James Craig Mann     James.C.Mann@usdoj.gov, laurie.best@usdoj.gov

13  James Neil Kramer     jkramer@orrick.com

14  Jeffrey S. Facter     jfacter@shearman.com, rcheatham@shearman.com

15  John D. Cline     jcline@jonesday.com, jjew@jonesday.com, sobrien@jonesday.com

16  K.C. Maxwell , Esq     kcmaxwell@jonesday.com

17  Lucy B. Ricca     lricca@orrick.com

18  Melinda Haag     mhaag@orrick.com, vsweet@orrick.com

19  Michael Todd Scott     tscott@orrick.com, elee@orrick.com

20  Randall Scott Luskey     rluskey@orrick.com, gpackard@orrick.com

21  Thomas B. Mayhew     tmayhew@fbm.com, calendar@fbm.com, mzappas@fbm.com

22

23

24

25

26

27

28

Case No. C 07-2822 JF (RS)
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ETC.
(JFLC2)