# 08-3860-cv

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

D. DAVID COHEN,

Intervenor-Appellant,

v.

ALVIN VIRAY, Derivatively on Behalf of DHB Industries, Inc.,

Plaintiff-Appellee,

DAVID H. BROOKS, DHB INDUSTRIES INC., SANDRA HATFIELD, DAWN
M. SCHLEGEL, JEROME KRANTZ, GARY NADELMAN, CARY CHASIN,
BARRY BERKMAN, LARRY ELLIS, DAVID BROOKS INTERNATIONAL
INC., TERRY BROOKS, ELIZABETH BROOKS INTERNATIONAL INC.,
ANDREW BROOKS INTERNATIONAL INC., JEFFREY BROOKS,
TACTICAL ARMOR PRODUCTS, INC.,

Defendants-Appellees.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

_____

BRIEF FOR THE UNITED STATES
AS AMICUS CURIAE

_____

TONY WEST
 Assistant Attorney General

OF COUNSEL:                                           BENTON J. CAMPBELL
                                                      United States Attorney
DAVID M. BECKER
 General Counsel                                      THOMAS M. BONDY
RICHARD M. HUMES                                       (202) 514-4825
 Associate General Counsel                            EDWARD HIMMELFARB
SARAH E. HANCUR                                        (202) 514-3547
 Senior Counsel                                        Attorneys, Appellate Staff
 Securities and Exchange Commission                    Civil Division, Room 7646
 100 F Street, N.E.                                    Department of Justice
 Washington, D.C.  20549                               Washington, D.C.  20530-0001

**TABLE OF CONTENTS**

**Page**

INTEREST OF THE UNITED STATES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.    Statutory Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      B.    Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      A PUBLIC COMPANY'S AGREEMENT TO INDEMNIFY
      ITS CEO OR CFO AGAINST ANY LIABILITY INCURRED
      UNDER SECTION 304 OF SARBANES-OXLEY IS
      INCONSISTENT WITH THE LAW AND VIOLATES
      PUBLIC POLICY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      A.    District Courts Have A Broad Responsibility To Ensure
            That Settlement Agreements Between Private Parties Are
            Consistent With The Law And Do Not Conflict With
            Important Public Policies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      B.    An Indemnification Provision That Nullifies The
            Commission's Authority To Pursue The Section 304
            Remedy Or To Grant Exemptions From The Statute Is
            Inconsistent With The Law And Violates Public Policy . . . . . . . . . 18

      C.    Indemnification Provisions That Violate Public Policy
            Cannot Be Enforced . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ANTIVIRUS CERTIFICATION

ADDENDUM – STATUTES

## TABLE OF AUTHORITIES

**Cases:**                                                                                              **Page(s)**

AES Corp. v. Dow Chemical Co., 325 F.3d 174 (3d Cir. 2003) . . . . . . . . . . . . . 26

Baker, Watts & Co. v. Miles & Stockbridge, 876 F.2d 1101
        (4th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Bunker Ramo-Eltra Corp. v. Fairchild Indus., Inc., 639 F. Supp. 409
        (D. Md. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Carnero v. Boston Scientific Corp., 433 F.3d 1 (1st Cir.), cert. denied,
        548 U.S. 906 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

EEOC v. Waffle House, Inc., 534 U.S. 279 (2002) . . . . . . . . . . . . . . . 21, 22, 24

Eichenholtz v. Brennan, 52 F.3d 478 (3d Cir. 1995) . . . . . . . . . . . . . . . . . 23, 24

First Golden Bancorporation v. Weiszmann, 942 F.2d 726
        (10th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 25

Free Enterprise Fund v. Public Co. Accounting Oversight Bd.,
        537 F.3d 667 (D.C. Cir. 2008), cert. granted, 129 S. Ct. 2378
        (May 18, 2009) (No. 08-861) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Gerber v. MTC Elec. Technologies Co., 329 F.3d 297 (2d Cir.),
        cert. denied, 540 U.S. 966 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Globus v. Law Research Serv., Inc., 418 F.2d 1276 (2d Cir. 1969),
        cert. denied, 397 U.S. 913 (1970) . . . . . . . . . . . . . . . . . . . . . . . . 13-14, 23, 24

Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,
    530 U.S. 1 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Hurd v. Hodge, 334 U.S. 24 (1948) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

In re DHB Industries, Inc. Class Action Litigation, No. 05-4296
    (E.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8

In re Digimarc Corp. Derivative Litig., 549 F.3d 1223 (9th Cir. 2008) . . . . . . . . 6

In re Masters Mates & Pilots Pension Plan and IRAP Litig.,
    957 F.2d 1020 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

M. Fortunoff of Westbury Corp. v. Peerless Ins. Co., 432 F.3d 127
    (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Miller Tabak Hirsch & Co. v. Commissioner, 101 F.3d 7 (2d Cir. 1996) . . 15, 21

Odette v. Shearson, Hammill & Co., 394 F. Supp. 946 (S.D.N.Y. 1975) . . . . . . 24

Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust ex rel.
    Fannie Mae v. Raines, 534 F.3d 779 (D.C. Cir. 2008) . . . . . . . . . . . . . . . . . 6

Schaffer v. CC Invs., LDC, 286 F. Supp.2d 279 (S.D.N.Y. 2003) . . . . . . . . . . . 25

SEC v. David H. Brooks, No. 07-61526 (S.D. Fla.) . . . . . . . . . . . . . . . . . . . . . 2, 9

SEC v. Schlegel, et al., No. 06-61251 (S.D. Fla.) . . . . . . . . . . . . . . . . . . . . . . . . 8

Seigal v. Merrick, 590 F.2d 35 (2d Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Shearson/American Express, Inc. v. McMahon, 482 U.S. 220 (1987) . . . . . . . . 26

Stamford Bd. of Educ. v. Stamford Educ. Ass'n, 697 F.2d 70
    (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

United States v. Brooks, No. 06-CR-550 (E.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . 2

iv

United States v. Dawn Schlegel and Sandra Hatfield, No. 06-550
(E.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29 (1987) . . . . . . 15, 16

Vacold LLC v. Cerami, 545 F.3d 114 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . 26

**Statutes:**

Class Action Fairness Act, 28 U.S.C. 1711-1715 . . . . . . . . . . . . . . . . . . . . . . 2, 11

Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745: . . . . . . passim

§ 3(b)(1), 15 U.S.C. 7202(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 20, 26
§ 302(a)(3), 15 U.S.C. 7241(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 21
§ 304, 15 U.S.C. 7243 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim
§ 304(a), 15 U.S.C. 7243(a) . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 18, 19, 20
§ 304(b), 15 U.S.C. 7243(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 18, 20

Securities Act of 1933, 15 U.S.C. 77a et seq.:

§ 11, 15 U.S.C. 77l . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 23

Securities Exchange of Act 1934, 15 U.S.C. 78a et seq.:

§ 16(b), 15 U.S.C. 78p(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 25, 26
§ 21(d)(1), 15 U.S.C. 78u(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
§ 29(a), 15 U.S.C. 78cc(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

28 U.S.C. 517 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

**Rules:**

Rule 29, Fed. R. App. P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Legislative History:**

S. Rep. No. 205, 107th Cong., 2d Sess. (July 3, 2002),
    2002 WL 1443523 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 20


**Miscellaneous:**


Form 10-K, http://www.sec.gov/Archives/edgar/data/899166/
    000119312507210399/d10k.htm  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Pursuant to 28 U.S.C. 517 and Rule 29 of the Federal Rules of Appellate Procedure, the United States submits this brief as amicus curiae.

## INTEREST OF THE UNITED STATES

The United States administers and enforces the federal securities laws and has the authority to pursue civil and criminal charges for certain violations of those laws through the Securities and Exchange Commission (Commission) and the Department of Justice. Under federal securities law, companies are required to comply with numerous financial-reporting requirements, and must also prepare restatements of their financial reporting to correct material misstatements. Section 304 of the Sarbanes-Oxley Act of 2002 (Sarbanes-Oxley), Pub. L. No. 107-204, 116 Stat. 745, 778, requires top company officers to reimburse the company for bonuses and certain other types of compensation, as well as profits from the sale of company stock for the 12-month period following a false financial report, if the company was required to file restated financial reports as a result of misconduct. Congress gave the Commission general enforcement authority for provisions of Sarbanes-Oxley, 15 U.S.C. 7202(b)(1), and it specifically assigned to the Commission the task of deciding whether any exception should be made to the requirements of section 304. 15 U.S.C. 7243(b). Section 304 has been understood to give the Commission the exclusive power to enforce its mandate.

Thus far, the Commission has brought ten civil actions against CEOs or CFOs seeking reimbursement of their companies under section 304. In particular, it has

brought an action against David Brooks, former CEO of DHB Industries, Inc., seeking disgorgement under several legal theories and reimbursement of DHB under section 304. SEC v. David H. Brooks, No. 07-61526 (S.D. Fla.).[1]

Under the Class Action Fairness Act, 28 U.S.C. 1711-1715, Congress has required that the Attorney General of the United States be notified of proposed settlements in certain class actions. In this derivative action and the related class actions against Brooks, DHB, and others (In re DHB Industries, Inc. Class Action Litigation, No. 05-4296 (E.D.N.Y.)), the Attorney General received such notification and, in consultation with the Commission, presented objections to provisions of a settlement in district court. App. 1701-09. In particular, the Attorney General objected to the provision in which DHB indemnified Brooks and Schlegel for liability in the Commission's action under section 304, on the ground that indemnification for violations of the securities laws violates public policy. The district court approved the settlement over this objection.

In this brief, the United States respectfully offers this Court its views on section 304 and the question whether the CEO and CFO of a company that is required to

---

[1] The government has also pursued criminal charges against Brooks, Dawn Schlegel, the former chief financial officer of DHB, and Sandra L. Hatfield, the former chief operating officer of DHB. United States v. Brooks, No. 06-CR-550 (E.D.N.Y.). The civil action against Brooks has been stayed pending the disposition of those criminal charges.

restate its corporate financial statements as a result of misconduct may properly be indemnified by the company against their section 304 liability. See 28 U.S.C. 517 (authorizing Department of Justice "to attend to the interests of the United States in a suit pending in a court of the United States").

**STATEMENT OF THE ISSUE**

The United States will address the following issue:

Whether the settlement provision here requiring DHB to indemnify Brooks and Schlegel against their section 304 liability is inconsistent with the law and public policy.

**STATEMENT OF FACTS**

**A.    Statutory Background.**

"Following the Enron and Worldcom accounting scandals that exposed serious weaknesses in industry self-regulatory reporting requirements for certain publicly held companies, Congress enacted the Sarbanes-Oxley Act of 2002, 15 U.S.C. §§ 7201 et seq." Free Enterprise Fund v. Public Co. Accounting Oversight Bd., 537 F.3d 667, 669 (D.C. Cir. 2008), cert. granted, 129 S. Ct. 2378 (May 18, 2009) (No. 08-861). "The Sarbanes-Oxley Act itself is a major piece of legislation bundling together a large number of diverse and independent statutes, all designed to improve the quality of and transparency in financial reporting and auditing of public companies." Carnero v. Boston Scientific Corp., 433 F.3d 1, 9 (1st Cir.), cert. denied, 548 U.S. 906 (2006).

3

In its effort to increase the accuracy of reporting by public companies, Sarbanes-Oxley placed greater responsibility on the CEO and CFO of publicly traded companies for the accuracy of their company's financial reporting. For example, section 302(a) for the first time required that the CEO and CFO personally certify, among other things, that "based on such officer's knowledge, the financial statements, and other financial information included in the report, fairly present in all material respects the financial condition and results of operations of the issuer as of, and for, the periods presented in the report." 15 U.S.C. 7241(a)(3).

As one of its powerful means of furthering its objectives, Sarbanes-Oxley included a provision that would prevent "CEOs and CFOs from benefitting from profits they receive as a result of misstatements of their company's financials." S. Rep. No. 205, 107th Cong., 2d Sess. 23 (July 3, 2002), 2002 WL 1443523 (Senate Report). Thus, in section 304 of Sarbanes-Oxley, entitled "Forfeiture of Certain Bonuses and Profits," Congress provided that CEOs and CFOs of companies that are required to restate their earnings for material noncompliance with any financial reporting requirement of the securities laws must reimburse the company for certain bonuses and other incentive- or equity-based compensation, and return to their company any profits from the sale of company stock, if the financial restatement occurred as a result of misconduct.

In doing so, Congress made executive reimbursement to the company manda-

4

tory:

> (a)    Additional compensation prior to noncompliance with Commission financial reporting requirements
>
> If an issuer is required to prepare an accounting restatement due to the material noncompliance of the issuer, as a result of misconduct, with any financial reporting requirement under the securities laws, the chief executive officer and chief financial officer of the issuer <u>shall reimburse the issuer</u> for –
>
> > (1)    any bonus or other incentive-based or equity-based compensation received by that person from the issuer during the 12-month period following the first public issuance or filing with the Commission (whichever first occurs) of the financial document embodying such financial reporting requirement; and
> >
> > (2)    any profits realized from the sale of securities of the issuer during that 12-month period.

15 U.S.C. 7243(a) (emphasis added).[2]

Although reimbursement pursuant to section 304(a) is mandatory, Congress gave the Commission, in section 304(b), the exclusive power to make exceptions:

---

[2]    Under section 3(b)(1) of Sarbanes-Oxley, the Commission may enforce section 304 pursuant to its authority to enforce any provision of the Securities Exchange of Act 1934, 15 U.S.C. 78u(d)(1). <u>See</u> 15 U.S.C. 7202(b)(1) ("A violation by any person of this Act * * * shall be treated for all purposes in the same manner as a violation of the Securities Exchange Act of 1934 (15 U.S.C. 78a <u>et</u> <u>seq.</u>) or the rules and regulations issued thereunder, consistent with the provisions of this Act, and any such person shall be subject to the same penalties, and to the same extent, as for a violation of that Act or such rules or regulations.").

> (b)   Commission exemption authority
>
> The Commission may exempt any person from the application of subsection (a) of this section, as it deems necessary and appropriate.

15 U.S.C. 7243(b).  Court opinions have uniformly held that only the Commission may pursue the section 304 remedy.[3]

**B.   Facts.**

1.   DHB Industries, Inc., now called Point Blank Solutions, Inc., develops, manufactures, and distributes bullet and projectile resistant garments, vests, blankets, and related ballistic accessories and technologies for the United States military and law enforcement agencies.  Until August 2005, DHB sold a line of body-armor products that had been manufactured with Zylon, even though it had information that the product was subject to degrading with age, particularly when exposed to sunlight, fluorescent light, elevated temperatures, and humidity.  Following the announcement that DHB would cease sales of products containing Zylon, the company was required to file, and did file, restated financial reports with the Commission.

---

[3]   See, e.g., In re Digimarc Corp. Derivative Litig., 549 F.3d 1223, 1230-33 (9th Cir. 2008) (rejecting a shareholder's attempt to bring action on behalf of the corporation to recover from former officers); Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust ex rel. Fannie Mae v. Raines, 534 F.3d 779, 793 (D.C. Cir. 2008) (in deciding that Fannie Mae's board did not violate its duties by deciding not to pursue such an action against its former CEO, court stated that section 304 does not provide a cause of action).

The consolidated derivative complaint alleged that Brooks, Schlegel, Sandra L. Hatfield (former chief operating officer of DHB), and five members of the DHB board of directors engaged in breaches of fiduciary duty, abuse of control, gross mismanagement, and waste of corporate assets, and were unjustly enriched as a result of their conduct. In particular, the complaint alleged that at a time when the defendants were aware of flaws in Zylon announced by its manufacturer, they nevertheless caused or allowed DHB to make false or misleading public statements affirming the high quality of DHB's products containing Zylon, the strong condition of the company, and current and anticipated increased revenue and earnings. App. 131-33.

In addition, the complaint alleged that during this period, Brooks, Schlegel, Hatfield, and four of the five defendant board members engaged in insider trading, selling well over $200 million of DHB stock during a period in November and December 2004 in which the stock price was artificially high as a result of DHB's false or misleading public statements. A large part of this insider trading occurred on November 29 and 30, 2004, the day before and the day of the signing of a "waiver" by Hatfield that acknowledged the company's products did not meet government standards. App. 133. The complaint alleged that Brooks alone sold over 13 million shares of DHB stock during the period, netting proceeds of more than $185 million. App. 134, 141. On August 30, 2005, the company issued a press release stating that it had discontinued the use of Zylon in its bullet-resistant products. The complaint

7

alleged that this press release resulted in a 24% reduction in DHB's market capitalization.  App. 192-93.

The complaint also alleged that DHB's inadequate internal controls rendered the company's financial reporting unreliable and inconsistent with generally accepted accounting principles.  App. 196-202.[4]

2.     In August 2006, the Commission brought a civil action against Schlegel and Hatfield in the Southern District of Florida, seeking injunctive and other relief. SEC v. Schlegel, et al., No. 06-61251 (S.D. Fla.).  The Commission's complaint alleged that the defendants had "materially misrepresented [DHB's] inventory, cost of goods sold, gross profit, gross margin, pre-tax income, and other key figures in its reports filed with the Commission and its earnings releases."  Compl. ¶ 12.  It also charged them with insider trading in their sales of DHB stock in November and December 2004.  Compl. ¶¶ 54-57.

At the same time, Schlegel and Hatfield were indicted in the Eastern District of New York.  United States v. Dawn Schlegel and Sandra Hatfield, No. 06-550 (E.D.N.Y.).  The indictment charged the two with engaging in a "scheme to defraud

---

[4]     The parallel class actions alleged, among other things, that Brooks, Schlegel, and other defendants engaged in a scheme to defraud investors by artificially inflating the price of DHB stock before selling their own stock based on insider information and that they issued misleading proxy statements leading to the election of six individual defendants and the approval of an equity-based incentive plan.  In re DHB Industries, Inc. Class Action Litigation, No. 05-4296 (E.D.N.Y.).

the investing public by overstating and thereby materially misrepresenting DHB's quarterly and annual gross profit margins, inventories and earnings reported on Forms 10-Q and 10-K." Indictment ¶ 9. The indictment also charged them with insider trading. The Commission's civil action was stayed pending resolution of the criminal proceedings.

On October 1, 2007, DHB filed a comprehensive Form 10-K that included restated financial statements for 2003, 2004, and 2005. In the 10-K, DHB also announced that its actual gross profit margins and net income for those years were materially lower than it had previously disclosed. See http://www.sec.gov/Archives/edgar/data/899166/000119312507210399/d10k.htm. Following this restatement, the Commission brought a civil action against Brooks in the Southern District of Florida on October 25, 2007, in which it sought injunctive and other relief, including reimbursement of bonuses and stock profits pursuant to section 304 of Sarbanes-Oxley. SEC v. David H. Brooks, No. 07-61526 (S.D. Fla.). The complaint charged that Brooks engaged in widespread accounting fraud at DHB between 2003 and 2005, sold $186 million in DHB stock in late 2004 at the high-point of its value, based on material, non-public information, in violation of insider-trading laws, and used millions of dollars in DHB's corporate funds to pay extravagant personal expenses for himself and his family. The complaint alleged that DHB filed false and misleading financial documents with the Commission and made false statements in its public

9

statements as a result of the misconduct by Brooks.

At the same time the Commission filed its civil action against Brooks, the government unsealed a superseding indictment in the Eastern District of New York that included criminal charges against Brooks (and Hatfield) arising out of the same set of allegations.[5]  In addition to charges of accounting fraud and insider trading, the indictment charged Brooks with lying to the company's independent auditors to cover up the fraud and submitting false reports to the Commission during an investigation of the company's executive compensation.  Brooks was also charged with conspiracy to commit tax fraud by failing to report to the IRS large cash bonuses paid to him, DHB employees, and others, and by directing DHB employees to conceal the bonuses from the IRS.  As with the civil action against Schlegel and Hatfield, the civil action against Brooks was stayed pending disposition of the criminal case.[6]

3.    Pursuant to the Class Action Fairness Act, 28 U.S.C. 1711-1715, the Attorney General of the United States was notified of a proposed settlement of both the class actions and the derivative action.  The United States filed written objections to the proposed settlement.  App. 1701-09.  First, the United States objected to a pro-

---

[5]    In a separate superseding information, Schlegel pleaded guilty to counts of conspiracy to commit securities fraud and conspiracy to commit tax fraud.  Schlegel was thus excluded from the superseding indictment against Brooks and Hatfield.

[6]    The criminal trial of Brooks and Hatfield is currently scheduled to begin in September 2009.

10

vision that could have barred the class plaintiffs from recovering restitution being sought against Brooks in the pending criminal case. Second, the United States objected to a provision that would indemnify Brooks and Schlegel against any liability incurred under section 304 of Sarbanes-Oxley. That provision, paragraph 4.7 of the agreement, stated:

> In addition, DHB shall indemnify defendants David H. Brooks and Dawn M. Schlegel, and each of them, against any liability under § 304 of the Sarbanes-Oxley Act of 2002 incurred by them, or either of them, in any action brought by a third party under § 304, and to pay them, and to each of them, an amount equal to any payment made by them, or either of them, to DHB pursuant to any judgment in any such action.

App. 471. In a parallel paragraph of the agreement (¶ 1.27), DHB released Brooks and Schlegel from any section 304 liability. App. 453. The United States argued that these provisions would undermine the Commission's ability to pursue its pending or potential civil actions against Brooks and Schlegel and were contrary to public policy. App. 1703-05.

At a hearing on the proposed settlement on June 25, 2008, the parties agreed to modify the proposed settlement to address the first of the two objections, but Brooks and Schlegel would not agree to eliminate the section 304 indemnification provision. The district court, citing the government's failure to discuss the section 304 objection for a <u>second</u> time in its reply brief, as well as the fact that counsel for the Commission

11

did not make a personal appearance along with Department of Justice counsel at the hearing, at first appeared to treat the objection as waived. App. 1782-83. But the court's ruling on the government's objection was only this: "I don't see any basis for continuing with this issue." App. 1786. Paragraph 12 of the final judgment provided that the settlement would include a new paragraph 4.10, which stated, in part, that "[n]othing contained in this Stipulation is intended to limit the United States' ability to pursue forfeiture, restitution or fines in any criminal, civil or administrative pro-ceeding, except that Paragraph 4.7 of this Stipulation [regarding indemnification for section 304 liability] shall remain in full force and effect." Sp. App. 6.

## SUMMARY OF ARGUMENT

The district court erred in approving as part of the settlement of this derivative action a provision requiring DHB to indemnify its former CEO, David Brooks, against any liability imposed on him under section 304 of Sarbanes-Oxley. The Commission has a pending civil action against Brooks seeking relief that includes requiring Brooks to reimburse DHB, pursuant to section 304, in light of DHB's restatement of its financial reports "due to the material noncompliance of the issuer, as a result of misconduct, with any financial reporting requirement under the securities laws." By its operation, the indemnification provision takes from DHB the entirety of any section 304 award in the Commission's civil action and returns it to Brooks. In short, the district court has approved a "get out of section 304 free" card for Brooks.

12

Section 304 is not a mechanism for private recovery of the sort that a victim of misconduct has the right to compromise. To the contrary, in section 304, Congress gave the Commission the exclusive authority to grant exemptions from liability, in light of important public purposes advanced by the provision: preventing CEOs and CFOs from benefitting from profits they receive when their companies are required to prepare accounting restatements as a result of misconduct, and thereby helping to ensure the integrity of public company financial reporting, which furthers investor confidence in our financial markets. Neither DHB nor Brooks has the authority to grant Brooks an exemption from section 304 liability.

Finding the agreement to indemnify Brooks inconsistent with law and in violation of public policy is consistent with other cases that have found analogous indemnification agreements unenforceable. See, e.g., Globus v. Law Research Serv., Inc., 418 F.2d 1276 (2d Cir. 1969), cert. denied, 397 U.S. 913 (1970) (finding indemnification agreement unenforceable where underwriter was found liable under section 11 of the Securities Act of 1933), and First Golden Bancorporation v. Weiszmann, 942 F.2d 726, 729 (10th Cir. 1991) (holding that the "public policy behind section 16(b) renders invalid any attempt by an insider to seek indemnification for his liability"). As those cases have recognized, indemnification cannot be permitted where it would effectively nullify a statute.

The judgment of the district court should be reversed to the extent it permits

13

DHB to indemnify Brooks or Schlegel against any liability under section 304 of Sarbanes-Oxley.

## ARGUMENT

### A PUBLIC COMPANY'S AGREEMENT TO INDEMNIFY ITS CEO OR CFO AGAINST ANY LIABILITY INCURRED UNDER SECTION 304 OF SARBANES-OXLEY IS INCONSISTENT WITH THE LAW AND VIOLATES PUBLIC POLICY.

The district court's approval of a settlement term requiring DHB to indemnify its former CEO and CFO for any liability they incur under section 304 of Sarbanes-Oxley was in error. The public policy established in section 304 is to ensure the integrity of public company financial statements by strengthening the responsibility of corporations and their senior executives for those financial statements, not merely to compensate the company for bonuses paid. No publicly held company has the authority to enter into an agreement that will effectively nullify a federal statute.

The government's amicus participation here is limited to this single issue. We take no position on any of the other issues presented by this appeal.

### A. District Courts Have A Broad Responsibility To Ensure That Settlement Agreements Between Private Parties Are Consistent With The Law And Do Not Conflict With Important Public Policies.

Settlement agreements in private securities litigation are not simply documents arranging the parties' affairs that may be enforced without supervision of the court.

14

Particularly in derivative litigation, it is important for the court to ensure that the settlement agreements conform to statutory law and public policy.

1.    This Court has observed that "[a] settlement in an ordinary civil litigation is normally the sole concern of the parties," Seigal v. Merrick, 590 F.2d 35, 37 (2d Cir. 1978), but there are two important qualifications of this principle.  First, the settlement must "not [be] violative of law or public policy."  Miller Tabak Hirsch & Co. v. Commissioner, 101 F.3d 7, 10 (2d Cir. 1996).  This is nothing more than the settlement-specific application of the "general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy."  United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 42 (1987); see Hurd v. Hodge, 334 U.S. 24, 34-35 (1948) (courts' power to enforce private agreements "is at all times exercised subject to the restrictions and limitations of the public policy of the United States as manifested in the Constitution, treaties, federal statutes, and applicable legal precedents").  This limitation finds further justification in the fact that "the public's interests in confining the scope of private agreements to which it is not a party will go unrepresented unless the judiciary takes account of those interests when it considers whether to enforce such agreements." Misco, 484 U.S. at 42; cf. In re Masters Mates & Pilots Pension Plan and IRAP Litig., 957 F.2d 1020, 1026 (2d Cir. 1992) ("where the rights of one who is not a party to a settlement are at stake, the fairness of the settlement to the settling parties is not enough to earn the judicial stamp of approval").

15

The second qualification is that in any derivative action, settlement agreements are subject to court approval "because of the vicarious representation involved," and in considering whether to approve it, the court "cannot be a rubber stamp" for the parties' agreement.  Seigal, 590 F.2d at 37-38.

2.    In this derivative action, while the government (and Mr. Cohen, the appellant) explicitly objected to the release and indemnification provisions as inconsistent with section 304 of Sarbanes-Oxley, the district court failed to give any clear answer why it was approving the agreement in the face of this objection.  At first, the court hinted that the government might have waived its objection, fully set forth in its opening brief below, App. 1703-05, by failing to raise it a second time in its reply brief.  App. 1781 ("MR. RUDMAN:  * * *  Those arguments weren't responded to. So I would assume that it was waived. THE COURT:  It would certainly seem that way to me."); see also App. 1783.  While the court appears not to have held the objection was waived, it failed to give any explanation of its ruling, leaving its comment to this:  "I don't see any basis for continuing with this issue." App. 1786; see App. 1788 ("I think I have heard enough argument on this.  I'm going to include the language * * *.").  The court offered no legal analysis and cited no case law or statutory authority to support its ruling.

This Court should review de novo the legal issue whether the settlement's release and indemnification provisions are inconsistent with law or public policy.  See

16

Gerber v. MTC Elec. Technologies Co., 329 F.3d 297, 302 (2d Cir.), cert. denied, 540 U.S. 966 (2003) ("Although the district court normally has discretion to approve a settlement, we may review the district court's decision de novo where an appellant's challenge to the authority of the district court to approve the settlement raises novel issues of law.").  And in doing so, it should give appropriate deference to the Commission's interpretations, set forth in this amicus brief.  See, e.g., M. Fortunoff of Westbury Corp. v. Peerless Ins. Co., 432 F.3d 127, 139 (2d Cir. 2005).

**B.    An Indemnification Provision That Nullifies The Commission's Authority To Pursue The Section 304 Remedy Or To Grant Exemptions From The Statute Is Inconsistent With Law And Violates Public Policy.**

The indemnification provision approved by the district court is unlawful, because it effectively exempts Brooks from liability under section 304.  Section 304(a) mandates that, if a company is "required to prepare an accounting restatement due to the material noncompliance of the issuer, as a result of misconduct, with any financial reporting requirement under the securities laws," a CEO or CFO "shall reimburse" the company for bonuses and stock profits obtained during the 12 months following the noncompliant statement.  Only the Commission has authority, under section 304(b), to exempt a CEO or CFO from that mandate.

Section 304(b) gives the Commission alone the power to grant exemptions as the Commission itself deems necessary and appropriate:

17

(b)    Commission exemption authority

The Commission may exempt any person from the application of subsection (a) of this section, as it deems necessary and appropriate.

15 U.S.C. 7243(b) (emphasis added).  That this authority is exclusive is beyond reasonable dispute.  As the Supreme Court explained in a similar situation:

Here, the statute appears quite plain in specifying who may use [it] –"[t]he trustee."  It is true, however, * * * that all this actually "says" is that the trustee may seek recovery under the section, not that others may not.  The question thus becomes whether it is a proper inference that the trustee is the only party empowered to invoke the provision.  We have little difficulty answering yes.

Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000) (footnote omitted); id. ("a situation in which a statute authorizes specific action and designates a particular party empowered to take it is surely among the least appropriate in which to presume nonexclusivity").

At the time the district court approved the settlement, the company had issued a Form 10-K restating prior years' earnings, and the Commission had filed a civil action against Brooks seeking repayment under section 304.  The Commission plainly was not providing Brooks an exemption from his repayment obligations.  In light of this, the purpose of the indemnification in the settlement is quite simple:  It is to insulate Brooks from any liability under section 304 and undermine the pending Commission enforcement action.  The way it operates is also simple:  If the Commission

18

succeeds in its civil action in obtaining a reimbursement order against Brooks under section 304, Brooks will technically be liable to the company, which, in turn, will have to indemnify Brooks for that same liability. The result is a complete wash for Brooks. Thus, the indemnification provision has both the effect and the intended purpose of exempting Brooks from liability under section 304(a). The inclusion of a separate release of section 304 liability makes this doubly clear.

Section 304(b) does not permit a CEO to grant himself an exemption from section 304(a) liability. Nor does it permit his company to grant him an exemption. Only the Commission itself has the authority to grant exemptions, and Congress conferred that authority upon it in order to effectuate the public purposes of section 304.

Similarly, it is a mistake to infer that, when the Commission pursues section 304 relief, it acts solely to obtain reimbursement for the company. The section 304 remedy furthers important public purposes. The Commission's mandate is to prevent the CEO and CFO from profiting from inaccurate financial statements that are based on misconduct and to deter the misconduct that results in misstatements. In fact, the public purpose of the section 304 remedy is even broader than that: As an important part of the Commission's general enforcement authority under Sarbanes-Oxley, 15 U.S.C. 7202(b)(1), section 304 helps to ensure the integrity of the financial markets. See Senate Report at 57-58 ("The bill * * * seeks to correct shortcomings that have

19

threatened the reputation of [financial] markets for integrity."); id. at 58 (noting "continuing serious adverse economic impact on investors, the markets, and the national economy of the failure of existing regulatory arrangements and the decline in investor confidence, here and abroad, that this failure has generated").

Section 302(a) requires that the CEO and CFO personally certify, among other things, that "based on such officer's knowledge, the financial statements, and other financial information included in the report, fairly present in all material respects the financial condition and results of operations of the issuer as of, and for, the periods presented in the report."  15 U.S.C. 7241(a)(3).  In that context, the section 304 remedy is an enforcement mechanism that further helps ensure the integrity of the financial markets.  It imposes a significant cost on CEOs and CFOs who certify the financial reporting by their companies when the reports are misstated as a result of misconduct – the cost of reimbursing bonuses and stock profits, which often form a large portion of their executive compensation.

In district court, the proponents of the settlement attempted to justify the indemnification provision as having been freely agreed to by DHB for consideration and as necessary to induce Brooks to fund the settlement of the claims against him.  App. 1779.[7]  But a private agreement to settle is not the sole concern of the parties if the

_____

[7]    We note that the government's prosecutors advised the district court that this
(continued...)

20

terms are inconsistent with law or public policy. <u>Miller Tabak Hirsch & Co.</u>, 101 F.3d at 10. Nor can the agreement of private parties frustrate the power of a federal agency to pursue the public's interests in litigation. <u>See</u> <u>EEOC</u> v. <u>Waffle House, Inc.</u>, 534 U.S. 279, 296 (2002) (individual's agreement with employer to arbitrate claims not binding on EEOC in its own Title VII action) ("whenever the EEOC chooses from among the many charges filed each year to bring an enforcement action in a particular case, the agency may be seeking to vindicate a public interest, not simply provide make-whole relief for the employee, even when it pursues entirely victim-specific relief").[8] Finally, even assuming the unlawfulness of private indemnification agreements between company and CEO regarding section 304 does make it more difficult to settle securities litigation, that is a judgment that has been made by Congress. By requiring forfeiture unless the Commission determines an exemption should apply, Congress has qualified any policy that otherwise favors settlement of securities litigation.

---

[7](...continued)
funding of the settlement was, "at least in part, from the proceeds of Brooks' insider trading," as alleged in the indictment. App. 1772.

[8]    Although the <u>Waffle House</u> decision suggested that other actions of the employee could affect the relief available to the EEOC, 534 U.S. at 296-97, that is only because the employee had an independent right to pursue Title VII remedies for his own injury.

21

## C.    Indemnification Provisions That Violate Public Policy Cannot Be Enforced.

While no court has previously addressed indemnification for a section 304 remedy, courts have addressed indemnification for liability under other provisions of the federal securities laws and have recognized that indemnification cannot be permitted where it would effectively nullify a statute. Those cases are instructive; while they do not address these specific circumstances, they show the importance of not allowing indemnification when indemnification would frustrate the purposes of section 304. It was error for the district court to have approved indemnification here.

1.    In Globus v. Law Research Service, Inc., 418 F.2d 1276 (2d Cir. 1969), cert. denied, 397 U.S. 913 (1970), this Court addressed an underwriter's contractual claim for indemnification from an issuer from liability under section 11 of the Securities Act of 1933, after a jury had found that the underwriter had engaged in misconduct that the Court described as "a sin graver than ordinary negligence." Id. at 1288. Noting that "[i]t is well established that one cannot insure himself against his own reckless, wilful or criminal misconduct," id., and citing the Commission's position that indemnification under the Securities Act of 1933 was against public policy, this Court held that the indemnification agreement was unenforceable: "to tolerate indemnity under these circumstances would encourage flouting the policy of the common law and the Securities Act." Id. The Court observed that civil liability under section 11

22

had a public purpose; the statute "was designed not so much to compensate the defrauded purchaser as to promote enforcement of the Act and to deter negligence by providing a penalty for those who fail in their duties." Id. If an underwriter could pass its liability on to the issuer, it might be lax in its duty to investigate the statements in the offering circular. See also Stamford Bd. of Educ. v. Stamford Educ. Ass'n, 697 F.2d 70, 74 (2d Cir. 1982) (applying Globus to deny indemnification against liability for sex discrimination).

The Globus principle has been widely followed. See, e.g., Eichenholtz v. Brennan, 52 F.3d 478, 484 (3d Cir. 1995) ("Generally, federal courts disallow claims for indemnification because such claims run counter to the policies underlying the federal securities acts."); Baker, Watts & Co. v. Miles & Stockbridge, 876 F.2d 1101, 1108 (4th Cir. 1989). Courts have also extended it to negligent conduct. See Eichenhotlz, 52 F.3d at 484-85; Odette v. Shearson, Hammill & Co., 394 F. Supp. 946, 956 (S.D.N.Y. 1975).

In district court, various parties responded to the government's Globus objection by arguing that only those indemnification agreements entered into in advance of the wrongdoing are barred under Globus and that Globus does not relate to indemnification agreements made in settlement of claims of past misconduct. App. 1714, 1720-21, 1734. But this "ex ante/ex post" distinction, whatever its potential application in other contexts, has no application to indemnification against liability under section

23

304.

First, the indemnification provision here does not relate to the securities claims of the private parties themselves; it relates to the public enforcement mechanism of section 304. Private parties have no authority to compromise government litigation. Waffle House, 534 U.S. at 296. Second, the notion that indemnification ex post does not destroy the deterrent effect of the law is mistaken. A holding here that a CEO may obtain indemnification from his own company against section 304 liability would render the Commission's enforcement power toothless. Worse, it would offer CEOs a roadmap for evading section 304 liability in the future. Such a result would flout Congress's goal of deterring the misconduct prohibited in Sarbanes-Oxley.

2.       Courts have also found indemnification to be against public policy in the context of section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. 78p(b), concerning short swing profits, and under which an issuer, not the Commission, is authorized to bring a claim. In First Golden Bancorporation v. Weiszmann, 942 F.2d 726, 729 (10th Cir. 1991), the court found that "the public policy behind section 16(b) renders invalid any attempt by an insider to seek indemnification for his liability under section 16(b)," even though section 16(b) does not require proof of fraudulent intent. Indemnification would undermine the deterrent purpose of section 16(b), which, like section 304, is a "prophylactic" statute. "That Congress felt the most effective way to deter fraud in this area was through use of strict liability does not, however,

minimize the purpose behind the statute to prevent fraudulent trading based upon improper insider information or manipulation." Id. See also Schaffer v. CC Invs., LDC, 286 F. Supp.2d 279, 283 n.6 (S.D.N.Y. 2003) ("allowing indemnification for § 16(b) violations would frustrate the public policy behind the statute because liable parties would not have to return their short-swing profits to the plaintiff issuer"); Bunker Ramo-Eltra Corp. v. Fairchild Indus., Inc., 639 F. Supp. 409, 419 (D. Md. 1986) (voiding indemnification agreement where "defendants would have been able to waive, in effect, the requirement of section 16(b)," which would "frustrate the public policy behind the prohibition of insider trading within the six-month time period found in section 16(b)").

Also instructive is the case law under section 29(a) of the Exchange Act, 15 U.S.C. 78cc(a), which provides that any "condition, stipulation, or provision binding any person to waive compliance with any provision of this title or of any rule or regulation thereunder, or of any rule of any exchange required thereby shall be void." Section 29(a) "'prohibits waiver of the substantive obligations imposed by the Exchange Act.'" AES Corp. v. Dow Chemical Co., 325 F.3d 174, 179 (3d Cir. 2003) (quoting Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 228 (1987)). The underlying concern of this section is "'whether the [challenged] agreement weakens [the] ability to recover under the Exchange Act.'" Id. (alterations in original) (quoting McMahon). Thus, this Court, citing section 29(a), has refused to "give effect

25

to contractual language * * * purporting to be a general waiver or release of Rule 10b-5 liability altogether." <u>Vacold LLC v. Cerami</u>, 545 F.3d 114, 122 (2d Cir. 2008).

In this case, the settlement agreement not only indemnifies Brooks and Schlegel against any section 304 liability but also offers them a release from such liability. App. 453.  Given that Sarbanes-Oxley expressly provides that violations are to be treated the same as violations of the Exchange Act, 15 U.S.C. 7202(b)(1), the case law under section 29(a) further bolsters the public policy objections to indemnification and release.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed to the extent it permits DHB to indemnify Brooks or Schlegel against any liability under section 304 of Sarbanes-Oxley.

Respectfully submitted,[9]

TONY WEST
  Assistant Attorney General

OF COUNSEL:

BENTON J. CAMPBELL
  United States Attorney

DAVID M. BECKER
  General Counsel
RICHARD M. HUMES
  Associate General Counsel
SARAH E. HANCUR
  Senior Counsel
  Securities and Exchange Commission
  100 F Street, N.E.
  Washington, D.C.  20549

THOMAS M. BONDY
  (202) 514-4825
EDWARD HIMMELFARB
  (202) 514-3547
  Attorneys, Appellate Staff
  Civil Division, Room 7646
  Department of Justice
  Washington, D.C.  20530-0001

JULY 2009

---

[9]   The Department of Justice gratefully acknowledges the assistance of Zachary Schauf, a law student at Harvard Law School, in the preparation of this brief.

27

## CERTIFICATE OF COMPLIANCE

I certify that this brief is proportionately spaced, using Times New Roman font, 14 point type.  Based on a word count under Corel Word Perfect 12, this brief contains 6,341 words, excluding the table of contents, table of authorities, addenda, and certificates of counsel.


s/   Edward Himmelfarb
Edward Himmelfarb
Attorney for the United States
  as Amicus Curiae

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2009, I served the foregoing Brief for the

United States as Amicus Curiae on the following by causing two copies to sent by

Federal Express, for overnight delivery, with a courtesy copy by electronic mail, to:

Israel David, Esq.
Fried, Frank, Harris, Shriver
& Jacobson LLP
One New York Plaza, 24th Floor
New York, New York 10004
Israel.David@friedfrank.com

Brian Robbins, Esq.
Robbins Umeda LLP
610 West Ash Street, Suite 1800
San Diego, California 92101
brobbins@robbinsumeda.com

Thomas Amon, Esq.
Law Offices of Thomas G. Amon
250 West 57th Street, Suite 1316
New York, New York 10107
tamon@amonlaw.com

Jeffrey L. Nagel, Esq.
Gibbons P.C.
One Pennsylvania Plaza, 37th Floor
New York, New York 10019
jnagel@gibbonslaw.com

Earl Silbert, Esq.
DLA Piper US LLP
500 Eighth Street, N.W.
Washington, DC 20004
earl.silbert@dlapiper.com

Jerome Gotkin, Esq.
Mintz Levin Cohn Ferris Glovsky
& Popeo PC
Chrysler Center
666 Third Avenue, 25th Floor
New York, New York 10017
jgotkin@mintz.com

Eric Rieder, Esq.
David P. Kasakove, Esq.
Bryan Cave LLP
1290 Avenue of the Americas
New York, New York 10104
erieder@bryancave.com
dpkasakove@bryancave.com

Ian Levy, Esq.
Steven G. Kobre, Esq.
Kobre & Kim LLP
800 Third Avenue
New York, New York 10022
ian.levy@kobrekim.com
steven.kobre@kobrekim.com

Roland G. Riopelle, Esq.
Sercarz & Riopelle, LLP
Carnegie Hall Tower
152 West 57th Street, Suite 24C
New York, New York 10019
rriopelle@juno.com

Jeffrey Brooks
1500 South Ocean Blvd.
Boca Raton, Florida 33234

C. Neil Gray, Esq.
Milbank Tweed Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, New York 10005
cngray@milbank.com

Mark Holland, Esq.
Mary K. Dulka, Esq.
Goodwin Procter LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
mholland@goodwinprocter.com
mdulka@goodwinprocter.com

s/   Edward Himmelfarb
Edward Himmelfarb
Attorney for the United States
  as Amicus Curiae

**ANTI-VIRUS CERTIFICATION FORM**

*See* Second Circuit Interim Local Rule 25(a)6.


CASE NAME:_____


DOCKET  NUMBER:_____



      I, (please print your name)_____, certify   that

I have scanned  for viruses  the  PDF version of the attached document that was submitted in this case as

an email attachment to _____   <agencycases@ca2.uscourts.gov>.

                                  _____   <criminalcases@ca2.uscourts.gov>.

                                  _____   <civilcases@ca2.uscourts.gov>.

                                  _____   <newcases@ca2.uscourts.gov>.

                                  _____   <prosecases@ca2.uscourts.gov>.


and that no viruses were detected.

Please print the **name** and the **version** of the anti-virus detector that you used_____

_____

If you know, please print the version of revision and/or the anti-virus signature files _____

_____


               (Your Signature)_____


Date: _____

**ADDENDUM – STATUTES**

## Table of Contents

**Page**

Sarbanes-Oxley Act of 2002

Section 3(b)(1) (15 U.S.C. 7202(b)(1)) . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1

Section 302(a) (15 U.S.C. 7241(a)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-2

Section 304 (15 U.S.C. 7243) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-4

## 15 U.S.C. 7202(b)(1)

Sec. 3. Commission Rules and Enforcement

* * * * *

    (b)    Enforcement

    (1)    In general

A violation by any person of this Act, any rule or regulation of the Commission issued under this Act, or any rule of the Board shall be treated for all purposes in the same manner as a violation of the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.) or the rules and regulations issued thereunder, consistent with the provisions of this Act, and any such person shall be subject to the same penalties, and to the same extent, as for a violation of that Act or such rules or regulations.

* * * * *

## 15 U.S.C. 7241(a)

Sec. 302. Corporate Responsibility for Financial Reports.

    (a)    Regulations required

The Commission shall, by rule, require, for each company filing periodic reports under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m, 78o(d)), that the principal executive officer or officers and the principal financial officer or officers, or persons performing similar functions, certify in each annual or quarterly report filed or submitted under either such section of such Act that–

    (1)    the signing officer has reviewed the report;

    (2)    based on the officer's knowledge, the report does not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which such statements were made, not misleading;

    (3)    based on such officer's knowledge, the financial statements, and other financial information included in the report, fairly present in all material respects the financial condition and results of operations of the issuer as of, and for, the periods presented in the report;

    (4)    the signing officers –

    (A)    are responsible for establishing and maintaining internal controls;

    (B)    have designed such internal controls to ensure that material information relating to the issuer and its consolidated subsidiaries is made known to such officers by others within those entities, particularly during the period in which the periodic reports are being prepared;

    (C)    have evaluated the effectiveness of the issuer's internal controls as of a date within 90 days prior to the report; and

    (D)    have presented in the report their conclusions about the

A-2

A-3

effectiveness of their internal controls based on their evaluation as of that date;

(5)    the signing officers have disclosed to the issuer's auditors and the audit committee of the board of directors (or persons fulfilling the equivalent function) –

(A)    all significant deficiencies in the design or operation of internal controls which could adversely affect the issuer's ability to record, process, summarize, and report financial data and have identified for the issuer's auditors any material weaknesses in internal controls; and

(B)    any fraud, whether or not material, that involves management or other employees who have a significant role in the issuer's internal controls; and

(6)    the signing officers have indicated in the report whether or not there were significant changes in internal controls or in other factors that could significantly affect internal controls subsequent to the date of their evaluation, including any corrective actions with regard to significant deficiencies and material weaknesses.

*   *   *   *   *

A-3

## 15 U.S.C. 7243

Sec. 304. Forfeiture of Certain Bonuses and Profits.

(a)    Additional compensation prior to noncompliance with Commission financial reporting requirements

If an issuer is required to prepare an accounting restatement due to the material noncompliance of the issuer, as a result of misconduct, with any financial reporting requirement under the securities laws, the chief executive officer and chief financial officer of the issuer shall reimburse the issuer for –

(1)    any bonus or other incentive-based or equity-based compensation received by that person from the issuer during the 12-month period following the first public issuance or filing with the Commission (whichever first occurs) of the financial document embodying such financial reporting requirement; and

(2)    any profits realized from the sale of securities of the issuer during that 12-month period.

(b)    Commission exemption authority

The Commission may exempt any person from the application of subsection (a) of this section, as it deems necessary and appropriate.

A-4