1

2  **E-Filed 11/22/2011**

3

4

5

6

7

8  ## IN THE UNITED STATES DISTRICT COURT

9  ## FOR THE NORTHERN DISTRICT OF CALIFORNIA

10  ## SAN JOSE DIVISION

11

| | |
|---|---|
| 12 SECURITIES AND EXCHANGE COMMISSION, | Case Number 5:07-cv-02822-WHA |
| 13          Plaintiff, | ORDER[1] DENYING DEFENDANT SKAER'S MOTION FOR |
| 14     v. | RECONSIDERATION |
| 15 MERCURY INTERACTIVE, LLC., et al., | [re:  document no. 184] |
| 16          Defendants. | |

17

18

19          On September 27, 2010, this Court denied Defendant Susan Skaer's motion to dismiss

20  claims asserted against her pursuant to §§ 10(b) and 14(a) of the Securities Exchange Act of

21  1934 ("Exchange Act"), § 17(a) of the Securities Act of 1933 ("Securities Act"), and rules

22  promulgated under those statutes.  Skaer seeks reconsideration in light of the subsequent decision

23  of the Supreme Court in *Janus Capital Group, Inc. v. First Derivative Traders*, — U.S. —, 131

24  S.Ct. 2296 (2011).  Having considered the briefing, the Court concludes that the motion is

25  appropriate for disposition without oral argument pursuant to Civil Local Rule 7-1(b).  For the

26  reasons discussed below, the motion will be denied.

27  ─────────────────

28          [1] This disposition is not designated for publication in the official reports

# I. LEGAL STANDARD

"After a court enters an order, it may set aside or change its order pursuant to either its own local rules or Rule 60 of the Federal Rules of Civil Procedure." *County of Santa Cruz v. Ashcroft*, 314 F. Supp. 2d 1000, 1005 (N.D. Cal. 2004). Both Civil Local Rule 7-9(b)(2) and Rule 60 afford the Court discretion to modify an order based upon a subsequent change in the law. *See In re Pacific Far East Lines, Inc.*, 889 F.2d 242, 249 (9th Cir. 1989) (enactment of statute after entry of order justified relief under Rule 60); Civ. L.R. 7-9(b)(2) (providing for reconsideration based upon "[t]he emergence of new material facts or a change of law occurring after the time of such order").

# II. DISCUSSION

## A.   § 10(b) Claim

*Janus* addressed the scope of Securities and Exchange Commission ("SEC") Rule 10b-5, and specifically, language in that rule providing that it is unlawful to "make any untrue statement of a material fact . . . in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5; *Janus*, 131 S.Ct. at 2299. The Court began its discussion by noting that, "one 'makes' a statement by stating it." *Janus*, 131 S.Ct. at 2302. It then went on to conclude that:

> For purposes of Rule 10b–5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it. Without control, a person or entity can merely suggest what to say, not "make" a statement in its own right. One who prepares or publishes a statement on behalf of another is not its maker. And in the ordinary case, attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by – and only by – the party to whom it is attributed. This rule might best be exemplified by the relationship between a speechwriter and a speaker. Even when a speechwriter drafts a speech, the content is entirely within the control of the person who delivers it. And it is the speaker who takes credit – or blame – for what is ultimately said.

*Id*. Applying these standards, the Court held that a mutual fund investment advisor that was significantly involved in preparing prospectuses for a client nonetheless did not "make" statements contained therein for purposes of Rule 10b-5. *Id*. at 2305.

Skaer points out that her last motion to dismiss was denied in part based upon allegations that she was significantly involved in preparing the company's annual and quarterly reports. Characterizing the claim against her as a "misstatements" claim under Rule 10b-5(b), she argues

1   that such allegations are inadequate in light of *Janus*.  The Court agrees that allegations regarding

2   Skaer's involvement in preparing annual and quarterly reports that were not signed by or

3   otherwise attributable to her are insufficient to state a Rule 10b-5(b) claim against Skaer.

4   However, Skaer is alleged to have both prepared and signed false and misleading proxy

5   statements.  *See* Second Am'd Compl. ("SAC") ¶ 146.  Thus, at least arguably, she may be

6   considered the "maker" of the statements contained therein.  Skaer contends that she signed only

7   the notice to shareholders that constituted the first page of each proxy packet, and that the actual

8   contents of the proxy statements may not be attributed to her.  She also asserts that she signed the

9   notices in her capacity as an officer of the company, and that the company is the sole "maker" of

10  the proxy statements.  These factual assertions are beyond the scope of a motion to dismiss.

11        In any event, the Court need not resolve whether Skaer's signatures on the proxy

12  documents would be sufficient, standing alone, to state a viable misstatements claim under Rule

13  10b-5(b), because the SEC alleges facts sufficient to state a viable scheme liability claim under

14  Rule 10b-5(a) and (c).  "Under Rule 10b–5(a) or (c), a defendant who uses a 'device, scheme, or

15  artifice to defraud,' or who engages in 'any act, practice, or course of business which operates or

16  would operate as a fraud or deceit,' may be liable for securities fraud."  *WPP Luxembourg*

17  *Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1057 (9th Cir. 2011) (quoting 17 C.F.R.

18  § 240.10b-5).  In general, courts have held that a fraudulent scheme claim under Rule 10b-5(a) or

19  (c) "cannot be premised on the alleged misrepresentations or omissions that form the basis of a

20  Rule 10b–5(b) claim."  *Id.* (internal quotation marks and citation omitted).  However, a defendant

21  may "be liable as part of a fraudulent scheme based upon misrepresentations and omissions

22  under Rules 10b-5(a) or (c) when the scheme also encompasses conduct beyond those

23  misrepresentations."  *Id*.

24        Skaer argues forcefully that granting in-the-money stock options is not wrongful in and of

25  itself, and that it is a failure to record and report the compensation expenses associated with the

26  granting of such options that may give rise to § 10(b) liability.  She asserts that the SEC

27  impermissibly is attempting to recast a misstatements claim governed by Rule 10b-5(b) into a

28  scheme claim governed by Rule 10b-5(a) and (c).  While the question is a close one, the Court

3

1   concludes that the backdating scheme alleged by the SEC encompasses enough conduct beyond

2   the concealment of the compensation expenses to state a viable claim of scheme liability against

3   Skaer under Rule 10b-5(a) and (c), at least at the pleading stage.  The SEC's theory is not that

4   Defendants issued backdated stock options on one or two occasions and *then* decided to conceal

5   the associated compensation expenses.  Rather, the SEC alleges that Defendants entered into a

6   comprehensive scheme under which in-the-money stock options would be granted on a broad

7   scale while the associated compensation expenses would be concealed.  Defendants allegedly

8   backdated forty-five different stock options grants to themselves, other executives, and

9   employees, over more than five years.  SAC ¶¶ 1, 44.  Every one of the grants was backdated to a

10  carefully selected date corresponding to a relative low point of the company's stock.  *Id*. ¶ 44.

11  Skaer is alleged to have selected certain of the effective grant dates personally so as to maximize

12  the benefit to the grantees, and to have prepared necessary paperwork for those grants.  *Id*. ¶¶ 78-

13  111.  These and similar allegations are sufficient to state a claim for scheme liability against

14  Skaer under Rule 10b-5(a) and (c).

15  **B.    § 14(a) and § 17(a) Claims**

16      Skaer also argues that *Janus* should be extended to § 14(a) of the Exchange Act and §

17  17(a) of the Securities Act, although the decision did not address either of those statutes.  *Janus*

18  discussed what it means to "make" a statement for purposes of Rule 10b-5(b), which renders it

19  unlawful to "make any untrue statement of a material fact . . . in connection with the purchase or

20  sale of any security."  17 C.F.R. § 240.10b-5; *Janus*, 131 S.Ct. at 2299.  The operative language

21  of §§ 14(a) and 17(a) does not require that the defendant "make" a statement in order to be liable.

22  "Rather, Section 17(a) makes it unlawful (1) *to employ* any device, scheme, or artifice to defraud,

23  (2) *to obtain* money or property by means of any untrue statement or omission of a material fact,

24  or (3) *to engage* in certain types of transactions."  *SEC v. Daifotis*, No. C 11-00137-WHA, 2011

25  WL 3295139 (N.D. Cal. Aug. 1, 2011) (internal quotation marks and citation omitted).  Section

26  14(a) and Rule 14a-9 promulgated thereunder proscribe the solicitation of proxies "by means of"

27  false or misleading statements.  17 C.F.R. § 240.14a-9(a).  This Court agrees with those

28  decisions that have concluded that *Janus* may not be extended to statutes lacking the very

4

1   language that *Janus* construed.  *See, e.g.*, *Daifotis*, 2011 WL, at *5; *but see SEC v. Kelly*, — F.

2   Supp. 2d —, No. 08 Civ. 4612(CM), 2011 WL 4431161, at *5 (S.D.N.Y. Sept. 22, 2011)

3   (applying *Janus* to § 17(a) claim based upon conclusion that "[a]lthough the language of

4   subsection (2) of Section 17(a) is not identical to that of subsection (b) of Rule 10b–5, both

5   provisions have the same functional meaning with it comes to creating primary liability").

**III. ORDER**

7       Good cause therefor appearing, the motion for reconsideration is DENIED.

9   Dated:  11/22/2011

10
11                                             JEREMY FOGEL
                                               United States District Judge

Case No. 5:07-cv-02822-WHA
ORDER DENYING DEFENDANT SKAER'S MOTION FOR RECONSIDERATION
(JFLC2)