IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SECURITIES AND EXCHANGE
COMMISSION,

              Plaintiff,

      v.

MERCURY INTERACTIVE LLC, et al.,

              Defendants.

Case No.: 3:07-cv-02822-WHA (JSC)

**ORDER DENYING DEFENDANTS'
MOTION FOR SANCTIONS AND
RECOMMENDING CONTINUANCE
OF CASE MANAGEMENT DATES**

**(Dkt. Nos. 212, 240)**

Plaintiff Securities and Exchange Commission ("SEC" or "Commission") alleges Defendants Amnon Landan, Douglas Smith, and Susan Skaer ("Defendants") unlawfully participated in the backdating of options at Mercury Interactive, LLC ("Mercury"). Now pending before the Court is Defendants' motion for sanctions, including dismissal, for spoliation of evidence. The motion arises from the SEC's mistaken deletion of over 5 million pages of electronic data it had received from Mercury (all but 270,000 pages have now been located from other sources). Having carefully considered the parties' written submissions and evidence, and with the benefit of oral argument on June 7, 2012 and August 3, 2012, the Court DENIES Defendants' motion for sanctions. The Court nonetheless precludes the SEC from making arguments which take advantage of the missing documents and recommends

1  that the case management schedule be continued to permit Defendants sufficient time to

2  review the recently located documents.

**FACTUAL & PROCEDURAL BACKGROUND**

4  On November 10, 2004, the SEC began an informal investigation into Mercury

5  Interactive LLC ("Mercury") for potential violations of securities laws relating to backdating

6  stock options grants.  Mercury retained Davis Polk & Wardwell LLP ("Davis Polk") as its

7  counsel for the investigation.  (Dkt. No. 213 ¶ 3.)  In or about December 2004, Davis Polk

8  began rolling document productions to the SEC.  (Dkt. No. 213 ¶ 3.)  Approximately six

9  months later Mercury created a Special Committee to perform an internal investigation of its

10  stock options granting practices.  (Dkt. No. 213 ¶ 4.)

11  **A.  The Davis Polk Production to the SEC**

12  On August 30, 2005, the SEC ordered a formal investigation into Mercury, giving

13  SEC staff power to compel production of relevant information.  (Dkt. No. 213 ¶¶ 6-7.)  In

14  October 2005, in response to the SEC's subpoena for documents, Davis Polk produced a

15  substantial amount of electronic data spanning a 12-year period and approximately 87,000

16  pages of hard copy documents.[1]  (Dkt. No. 213-1 at 29-37.)  The electronic files were in

17  "native" format only, meaning they had not been converted into Tagged Image File Format[2]

18  ("TIFF") and included associated metadata.[3]  The native productions did not include Bates

19  numbers.  (Dkt. No. 213-1 at 34.)  Shortly after the initial productions, the SEC requested

20  that Davis Polk reproduce the previously provided native files in Bates-numbered TIFF

21  format, and asked that Davis Polk prioritize production on the named Defendants and six

22  other former Mercury officers and legal department personnel.  (Dkt. No. 213 ¶ 9.)  From

23

---

24  [1] The subpoena required "vast amounts of information" to be produced within two weeks.
(Dkt. No. 231 ¶ 7.)  Productions included materials collected from 51 custodians and were

25  estimated at approximately 5,000,000 pages of (mostly) electronic data.  (Id. ¶ 9; Dkt. No.

26  213-1 at 43.)

27  [2] TIFF images are essentially snapshots of documents, all in the same file format (.tiff) and
Bates-stamped to streamline document organization and review.

28  [3] Metadata, literally "data about data," indicates when and by whom documents are created or
modified.

2

United States District Court
Northern District of California

1    November 2005 until January 2006, Davis Polk reproduced to the SEC files in Bates-

2    numbered TIFF format, estimated at over five million pages.  (Dkt. No. 213-1 at 42-43.)

3            In early January 2006, Davis Polk discovered that the outside vendor used to prepare

4    its productions to the SEC had failed to properly execute privilege searches and failed to set

5    the correct relevance cut-off date.  (Dkt. No. 231 ¶ 15.)  In a letter to the SEC dated February

6    7, 2006, Davis Polk informed the SEC that it may have inadvertently provided substantial

7    amounts of privileged and non-responsive materials due to the vendor's errors.  (Dkt. No.

8    213-1 at 42.)  Davis Polk proposed that it first review the remaining TIFF images (those

9    documents not yet produced in TIFF format) in-house before providing them to the SEC.

10   (Dkt. No. 213-1 at 42-43.)  Then, Davis Polk would re-examine the previously provided

11   TIFFs (those 5 million or so pages intended to replace the original native format productions)

12   for privilege and responsiveness and send the SEC a log of privileged or non-responsive

13   materials, identified by Bates number, which the SEC would be asked to delete.  (Dkt. No.

14   213-1 at 43.)  Davis Polk also asked that the SEC delete all previously produced native files

15   upon receipt of the remaining TIFF images and the privilege log, since the native files

16   contained the privileged materials[4] and would be fully reproduced as TIFFs.  (Dkt. No. 213-1

17   at 43.)

18           After Davis Polk conducted its privilege review as described above, and by letter

19   dated April 7, 2006 ("April 2006 Letter"), Davis Polk provided the SEC with a privilege log

20   identifying 14,982 pages and requesting the SEC destroy the page ranges among the TIFF

21   productions.  (Dkt. No. 213-2 at 3-4, 7-37.)  In the April 2006 Letter, Davis Polk also

22   requested that the SEC "delete (or return to Mercury) the documents previously produced in

23   'native format' (all of which have now been replaced by the production of .Tiff images)."

24   (Dkt. No. 213-2 at 3-4.)  Along with the April 2006 Letter, Davis Polk provided "a

25   particularly voluminous document production . . . includ[ing] five external hard drives, 15

26   DVDs, and one CD-ROM containing newly located documents."  (Dkt. No. 231 ¶ 19.)

27   _____
     [4]  Because the native files were not organized by Bates number, it would have been difficult to
28   eliminate only the privileged or non-responsive materials among the native documents.  (Dkt.
     No. 213-1 at 43.)

United States District Court
Northern District of California

Between April 7, 2006 and February 2007, Davis Polk continued additional document production.  (Dkt. No. 213 ¶ 13.)  During this time, Davis Polk repeatedly followed up with the SEC requesting that the SEC delete or return the erroneously produced privileged and non-responsive materials referenced in Davis Polk's April 2006 Letter.[5]  (Dkt. No. 244-1 at 2-3.)  In response to one such request, Joseph Jest, counsel for the SEC, informed Davis Polk that the SEC's delay in returning the documents was due to the SEC's comparison of the early, native productions to the "replacement" TIFFs to make sure all non-privileged, relevant materials remained with the SEC.  (Dkt. No. 244-1 at 2.)  In turn, Davis Polk suggested that the SEC "return the 'native format' files and inadvertently produced .tiffs to [Davis Polk immediately] subject to a commitment by [Davis Polk] to resolve any issues the [SEC might] subsequently discover[.]"  (Dkt. No. 244-1 at 2.)  Davis Polk assured the SEC that it was "obviously willing to get the [SEC] whatever non-privileged materials it need[ed] if issues [did], in fact, arise."  (Dkt. No. 244-1 at 2.)

**B.  The SEC Deletes the Pre-April 2006 Productions**

Carrie Holt, the SEC's IT Litigation Support Specialist (and the individual primarily responsible for communicating with Davis Polk during their document production efforts), understood that Davis Polk wanted the SEC to delete all material produced prior to April 2006 and that Davis Polk would reproduce the documents absent the privileged and non-responsive material.  According to Ms. Holt, Davis Polk confirmed the propriety of the SEC's return or deletion of all of the pre-April 2006 materials (not just those Davis Polk identified on the privilege log) in a December 14, 2006 conference call ("December Call").  (Dkt. No. 219 ¶ 15.)  Ms. Holt relies on her notes from the December Call in remembering this request.[6]  (Dkt. No. 219 ¶ 15.)  Ms. Holt's notes, while failing to bring substantial clarity

_____

[5] Davis Polk followed up on its April request at least three times in writing, in June 2006 (by letter) and September and October 2006 (by e-mail).  (Dkt. No. 244-1 at 3.)

[6] In Ms. Holt's Declaration in Support of the SEC's Opposition to this Motion, she indicated that the December Call took place in 2007.  (Dkt. No. 219 ¶ 15.)  Based on circumstantial evidence, the Court finds that the December Call occurred in 2006, prior to the SEC's March 2007 deletion of the pre-April 2006 productions.  (Dkt. No. 231 ¶¶ 32-36.)  Ms. Holt's notes, which the SEC eventually produced pursuant to this Court's June 21, 2012 Order re: Request

4

to the issue, do not contradict her assertion that Davis Polk requested the return of *all* materials produced prior to April 7, 2006.[7]  (Dkt. No. 241-2.)

In or about January 2007, the SEC discovered numerous technical issues with Davis Polk's most recent productions (the substantial April 7, 2006 production and those after April 7, 2006).  (Dkt. No. 219 at 3-5.)  In a January 10, 2007 e-mail to Davis Polk, Carrie Holt of the SEC identified many of the recent technical issues with Davis Polk's document productions and asked whether the SEC "need[ed] to keep any production provided to [the SEC] after April 7, 2006."  (Dkt. No. 219-1 at 3-5.)  Davis Polk's response did not indicate in any way that Ms. Holt should keep pre-April 7, 2006 productions.[8]  (Dkt. No. 219-1 at 3.) While Davis Polk disputes that it ever advised the SEC to delete all pre-April 2006 productions, Defendants do not offer any evidence that Davis Polk warned the SEC not to delete the earlier productions.

In March 2007, the SEC removed all pre-April 7, 2006 documents from its electronic databases and returned any physical documents and tangible materials in its possession. (Dkt. Nos. 219 ¶ 9; 227 at 5-6.)  Prior to doing so, SEC staff "devoted substantial time and effort over a period of several months to ensuring that the materials that had been previously produced to the Commission were, in fact, included in the materials reproduced to the Commission," and the Commissions' investigative staff attempted to retain "all non-

---

for Additional Discovery (Dkt. No. 232), did not specify the year, only the month and date of the December Call.  (Dkt. No. 241-2 at 2.)

[7] Ms. Holt's notes include the statement "Privileged Materials → Sent back entire set → beginning & end."  (Dkt. No. 241-2 at 2.)  Further down the page, Ms. Holt's notes – partially erased by what appears to be a beverage stain – make reference to the "April 2006" date repeatedly and read "Delet[] . . . Produc[] . . . ."  (Id.)

[8] Davis Polk's response only addressed the technical issues with the April 7, 2006 production and subsequent productions.  (Dkt. No. 219-1 at 3.)  Further, Davis Polk's response serves to highlight the error-riddled production record; for example, to address some errors, Davis Polk would "re-run the productions (43 of them, 1 per custodian)" for a specific hard drive "and provide [the SEC] a replacement," as well as replace several of the DVDs.  (Id.)  Davis Polk also admitted that some of the organizational charts provided were "very possibl[y] . . . not put together correctly" but that "once all the data [was] loaded in [the SEC's database software]" the information categorizing documents by custodian and Bates number "should" be available.  (Id.)

privileged, responsive materials." (Dkt. No. 221 ¶¶ 4, 10.)  The SEC returned or deleted the materials produced pre-April 2006 with the understanding that "Mercury [and/or Davis Polk] would preserve any and all responsive materials." (Dkt. No. 220 ¶¶ 9-10.)  Davis Polk repeatedly assured the SEC that any missing materials were properly withheld based on privilege or non-responsiveness.[9] (Dkt. Nos. 227 at 6; 219 ¶ 19; 219-7 at 2-4.)

### C. The Procedural History of the Case

As a result of the SEC's investigation, on May 31, 2007, the SEC filed a Complaint against Mercury, Defendants, and Sharlene Abrams alleging perpetration of a multi-year fraudulent stock options back-dating scheme. (Dkt. No. 1.)  The court entered a stipulated final judgment as to Mercury on July 12, 2007. (Dkt. No. 27.)  The settlement agreement between Mercury (now HP) and the SEC required Mercury to retain all documents and to produce them to the SEC if necessary during this ongoing investigation. (Dkt. No. 227 at 31-32.)

On September 7, 2007, the SEC served its Rule 26(a) initial disclosures on Defendants. (Dkt. No. 214 ¶ 2.)  The initial disclosures state that the "SEC will make available to Defendants . . . all documents, data compilations and tangible things in its possession, custody or control that were compiled since the beginning of the investigation." (Dkt. No. 214-1 at 9.)  The SEC listed specific Bates number ranges in its disclosures, identifying documents received from Mercury and others during the investigation, which would be provided to Defendants.[10] (Dkt. No. 214-1 at 10-15.)

Defendants and Sharlene Abrams filed motions to dismiss on October 1, 2007. (Dkt. Nos. 45, 49, 54, 57.)  In an order dated September 30, 2008, the district court vacated

---

[9] As Defendants point out, it is not clear that Davis Polk was referring specifically to all pre-April 2006 materials, as opposed to a small sub-set of materials from one production. (Dkt. No. 219-7 at 2-4.)

[10] Defendants contend that the SEC's initial disclosures include many of the missing/deleted documents and were never, in fact, produced to the Defendants.  According to Defendants' Declaration in Support of Defendants' Supplemental Brief, the SEC listed "4,560,841 pages, or 80 percent" "[o]f the 5,731,093 pages of Destroyed Documents" in its initial disclosures. (Dkt. No. 241 ¶ 57.)

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Abrams' motion due to a pending settlement.  (Dkt. No. 86 at 2.)  Additionally, the district

2   court granted Defendants' motions to dismiss as to seven of the ten causes of action with

3   leave to amend and denied Defendants' motions as to the remaining three causes of action.

4   (Dkt. No. 86 at 15.)

5        Issues began to arise concerning the completeness of the SEC's document production

6   around April 2008.  (Dkt. No. 214 ¶ 4.)  In a joint case management conference statement

7   filed April 14, 2008, Defendants alleged that significant ranges of documents, as indicated by

8   Bates number, were missing from the SEC's production.  (Dkt. No. 214 ¶ 4.)  In response,

9   the SEC indicated that it was investigating the matter.  (Dkt. No. 214 ¶ 4.)  The SEC

10  continued producing small amounts of documents inadvertently omitted from its initial

11  production into late 2008.  (Dkt. No. 214 ¶¶ 5-7.)

12       The dispute regarding the SEC's document production took a back burner after the

13  SEC filed its First Amended Complaint on October 30, 2008.  (Dkt. No. 89.)  Shortly

14  thereafter, Defendants again moved to dismiss all or parts of the Complaint and the parties

15  agreed to defer discovery pending final resolution of the motions to dismiss.  (Dkt. Nos. 98,

16  102, 103, 214 ¶ 9.)  While Defendants' motions to dismiss were pending, Abrams and the

17  SEC reached a settlement and the district court entered final judgment as to Abrams on

18  March 24, 2009.  (Dkt. No. 116.)  On September 15, 2009, the district court granted

19  Defendants' motions to dismiss with leave to amend.  (Dkt. No. 119.)

20       The SEC filed a Second Amended Complaint on October 15, 2009.  (Dkt. No. 120.)

21  Again, Defendants moved to dismiss all or parts of the Complaint.  (Dkt. Nos. 124, 129,

22  132.)  On September 27, 2010, the district court granted Defendants' motions to dismiss

23  without leave to amend only as to specific causes of action for each Defendant, and

24  otherwise denied the motions.  (Dkt. No. 147 at 10.)

25       In January 2011, discovery picked up once again.  (Dkt. No. 214 ¶ 10.)  In an effort to

26  determine the completeness of the SEC's document production, Defendants took the SEC's

27  internal production log, which catalogued documents received by the SEC during its

28  investigation, subtracted the documents the SEC claimed Mercury had withdrawn as

7

1   privileged or non-responsive, and compared the resulting list to the list of documents the

2   SEC had produced to Defendants.  (Dkt. No. 214 ¶ 10.)  According to Defendants, the

3   comparison indicated "the potential for a large number of missing pages, assuming the

4   accuracy of the SEC's production log."  (Dkt. No. 214 ¶ 10.)  In a May 6, 2011 letter to

5   Defendants, the SEC attempted to explain the missing ranges of documents.  (Dkt. No. 214-1

6   at 70-72.)  The SEC stated that the Bates ranges in the SEC production log were generated

7   by scripting software which may have produced errors in generating document ranges.  (Dkt.

8   No. 214-1 at 70.)  While the SEC could not offer a definitive explanation, the SEC believed

9   that the process used "to attempt to reflect the full content of [the SEC's] investigative file

10  resulted in Bates numbers that were altered" such that documents in the investigative file

11  which were actually produced instead showed up as missing.  (Dkt. No. 214-1 at 71.)  Even

12  assuming the accuracy of the SEC's production log, the SEC attributed further missing

13  ranges of documents to Mercury withholding or retracting them based on privilege or non-

14  responsiveness.[11]  (Dkt. No. 214-1 at 72.)  The SEC believed based on its records that

15  document production was complete.  (Dkt. No. 214-1 at 70.)

16          What followed was essentially a several-months-long process in which Defendants

17  discovered new documents from third-party sources (mostly Davis Polk) and questioned the

18  SEC for not producing specific Bates-numbered documents.  (See Dkt. No. 214-2 at 61-69.)

19  In response, the SEC found that copies of some of the same documents had previously been

20  produced to Defendants under different Bates numbers or were otherwise publicly available

21  documents.  (See Dkt. No. 214-2 at 64-69.)  The SEC explained that omissions in its

22  productions were due to complications in document production in this case, "through no fault

23  of the Commission, by erroneous and corrective productions, withdrawals of productions and

24  re-productions of materials received . . . from third parties."  (Dkt. No. 214-2 at 71.)

25  _____

26  [11] The SEC represents that after it reviewed Davis Polk's reproductions from April 7, 2006
    forward ("culminating with a February 7, 2007 production"), the SEC provided Davis Polk

27  with a list of documents not properly reproduced.  (Dkt. No. 214-1 at 71.)  In response, Davis
    Polk confirmed that the SEC's list contained "images that were properly excluded from the

28  production to the [SEC] because of . . . privilege and/or non-responsive[ness]."  (Id.)

United States District Court
Northern District of California

1   Because of the gaps in the SEC's production, Defendants threatened to seek sanctions under

2   Federal Rule of Civil Procedure 37. (Dkt. No. 214-2 at 69.)

3           During this same period, and pursuant to a document subpoena issued in October

4   2011, Defendants obtained Davis Polk's production correspondence with the SEC from the

5   initial investigation, and Defendants analyzed the correspondence in an attempt to determine

6   the completeness of the SEC's document production.  (Dkt. No. 213 ¶ 15.)  Specifically,

7   Defendants compared Davis Polk's production index, which identified all documents (by

8   Bates number) produced by Davis Polk to the SEC during the investigation, to Defendants'

9   list of Bates numbers received from the SEC during discovery.  (Dkt. No. 213 ¶ 18.)

10  Following the examination, Defendants "identified 5,731,093 pages of non-privileged,

11  responsive documents that Davis Polk had produced to the SEC but that the SEC never

12  produced to [D]efendants."  (Dkt. No. 213 ¶ 18.)  Defendants have since clarified that their

13  examination of dates on Davis Polk's production index indicates that 5.6 million of the 5.7

14  million pages of missing documents were produced before April 7, 2006 (the date on which

15  Davis Polk began its privilege claw-back and the date prior to which the SEC had deleted or

16  returned all documents in its possession believing them to have been replaced by subsequent

17  productions).  (Dkt. No. 223 ¶ 10.)

18          Defendants sought to obtain all of the approximately 5.7 million pages of missing

19  documents from Davis Polk.  (Dkt. No. 213 ¶ 19.)  Despite initial representations to the

20  Court that more than 5 million pages of documents were missing, Defendants have been able

21  to obtain all but approximately 270,000 pages, either from Davis Polk or Hewlett-Packard

22  ("HP") (Mercury's new parent company).[12]  (Dkt. No. 241 ¶ 43.)  Defendants believe that

23  those 270,000 pages of documents are permanently lost.  (Dkt. No. 248 at 4.)  The record

24  does not include a definitive explanation from Davis Polk as to why it cannot locate these

25  particular Bates-numbered document pages.  Davis Polk believes the reason it "cannot locate

26  _____

27  [12] The Court suggested at the June 7 hearing that the SEC use the power of its settlement
    agreement with HP/Mercury to encourage HP's participation in the search for missing
28  documents.  By way of these efforts, in June and July Defendants were able to recover most,
    but not all, of the documents from Davis Polk and HP.

9

some of these missing pages is because of a document system crash that occurred at Davis Polk sometime after Davis Polk made the April 7, 2006 production to the SEC" or because of "corruption of the databases over time." (Dkt. No. 231 ¶ 29.) And although Davis Polk's "litigation support staff worked diligently for months" to recover these materials, "certain images were never recovered." (Dkt. No. 231 ¶ 29 n.4.) Defendants have identified the approximately 270,000 pages of missing Bates numbers using custodian-specific prefixes and have been able to isolate the number of missing pages for each custodian on the SEC's original list of potential trial witnesses. (Dkt. No. 241-2 at 4.)

As of August 3, 2012, Defendants have only been able to review a portion of the over 5 million previously-missing documents recently obtained from Davis Polk and HP. (Dkt. No. 241 ¶¶ 49-50.) From the portion recently reviewed, Defendants have identified a handful of relevant documents, some of which Defendants claim "will be trial exhibits." (Dkt. Nos. 241 ¶¶ 51-56; 240 at 7.) They have not, however, identified any specific missing range of documents; for example, for a particular custodian for whom it appears documents are missing (based on the document production correspondence) they have not identified any gaps in email correspondence or other files.

### D. **The Pending Spoilation Motion**

Defendants filed a letter brief seeking discovery sanctions based on the SEC's alleged spoliation on April 13, 2012. (Dkt. No. 202.) The District Court judge referred the matter to the undersigned Magistrate Judge who ordered full briefing. (Dkt. No. 206.) Defendants initially sought outright dismissal as a sanction for spoliation of 5 million pages of evidence. As explained above, since that initial filing, Defendants have obtained additional documents from Davis Polk and HP, such that now at most approximately 270,000 pages are unaccounted for. In their supplemental brief, Defendants still seek outright dismissal, but in the alternative they ask for an adverse inference instruction, or one of two evidentiary restrictions. They also seek an extension of time to conduct discovery in light of the recent production of 5 million pages of documents. While the SEC admits to deleting documents, it claims that any erasure was made pursuant to requests from Mercury/Davis Polk and that all

United States District Court
Northern District of California

responsive, non-privileged materials from the investigation were retained and provided to Defendants.  The SEC does not, however, oppose a 90-day extension of the case deadlines. (Dkt. No. 248 at 55-56.)

**LEGAL STANDARD**

Federal Rule of Civil Procedure 37(c)(2) provides for sanctions based on a party's failure to comply with their obligations under Federal Rule of Civil Procedure 26.  In addition, district courts may impose sanctions as part of their inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991) (internal citations and quotations omitted).  A court's inherent power to sanction may be invoked in response to a party's spoliation of evidence.  Advantacare Health Partners, LP v. Access IV, No. 03-4496, 2004 WL 1837997, at *4 (N.D. Cal. Aug. 17, 2004).  Spoliation is "the destruction or significant alteration of evidence . . . in pending or future litigation."  Kearney v. Foley & Lardner, LLP, 582 F.3d 896, 900 (9th Cir. 2009).

Federal courts have "discretionary power" to choose an appropriate sanction for "a party who prejudices its opponent through the spoliation of evidence that the spoliating party had reason to know was relevant to litigation."  Moore v. Gilead Sciences, Inc., No. 07-3850, 2012 WL 669531, at *3 (N.D. Cal. Feb. 29, 2012).  Courts should choose a sanction that will "(1) penalize those whose conduct may be deemed to warrant such a sanction; (2) deter parties from engaging in the sanctioned conduct; (3) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (4) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party."  Access IV, 2004 WL 1837997, at *4 (internal citations omitted).  The question, then, is what, if any, sanctions are appropriate in this case.

**DISCUSSION**

**I.     The SEC's Conduct**

Before deciding on whether a sanction or some other remedial measure is warranted, the Court must first make findings as to whether potentially relevant documents were

11

destroyed and why. The Court assumes that Davis Polk asked the SEC to delete the approximately 14,000 pages reflected on its April 2006 privilege log, but never instructed the SEC to delete all of the productions prior to that date (other than the entire production of native files). The Court nonetheless finds that the SEC misunderstood that it was being asked to delete all pre-April 2006 productions believing that Davis Polk would reproduce all of the documents less the privileged and non-responsive documents that Davis Polk had previously erroneously produced.

The SEC's misunderstanding was not wholly unreasonable. It would have made more sense for Davis Polk to have reproduced all of the previously produced documents less the erroneously produced documents than to have the SEC review 5 million pages of documents and individually identify and remove/delete over 14,000 different pages. Davis Polk's proposed procedure was especially odd given that it had inadvertently produced thousands of attorney-client privileged documents to its client's opponent; it was essentially identifying for the adversary the privileged material and then asking the adversary to review and then replace it. Further, Ms. Holt's e-mails appear to reflect her misunderstanding as to the deletion of all pre-April 2006 productions, but Davis Polk never corrected Ms. Holt (though Davis Polk likely did not realize that she had that misunderstanding). It is also significant that Mercury's document production to the SEC was complicated and problematic, a process that involved production, claw-back, and reproduction of some 13 million pages of documents, with many of the reproductions and further productions riddled with errors. These complications likely contributed to Ms. Holt's misunderstanding. And, Davis Polk did, in fact, ask the SEC to return all of the native files.

Finally, it is not as though the SEC was deleting the only version of the documents. These were Mercury's documents and the SEC had every reason to expect that Mercury's counsel and Mercury itself would each retain copies of what had been produced. Indeed, Davis Polk, in its urgency to retrieve/delete the inadvertently produced privileged and non-responsive documents promised the SEC that it would provide the SEC with any documents that turned up missing.

In the end, however, the SEC never accurately confirmed that Davis Polk had, in fact, reproduced what the SEC believed it would reproduce. While the record is replete with e-mails demonstrating some efforts by the SEC to confirm that Davis Polk had reproduced what the SEC believed it was supposed to receive, the bottom line is that the SEC did not know what was in its investigative files. Instead, it produced initial disclosures to Defendants which identified by Bates numbers documents which the SEC no longer possessed. The question before the Court is whether a sanction is appropriate in light of these findings.

**II.    What Sanction, if any, is Appropriate**

   **A. Terminating Sanctions**

Defendants initially argued exclusively for the harshest possible sanction: dismissal. Dismissal is an available sanction "when a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." Anheuser-Busch, Inc. v. Natural Beverage Distrib., 69 F.3d 337, 348 (9th Cir. 1995); see also Chambers, 501 U.S. at 45 ("[O]utright dismissal . . . is a particularly severe sanction, yet is within the court's discretion.") A default judgment is usually an acceptable remedy where a "pattern of deception and discovery abuse made it impossible" for the court to conduct a trial "with any reasonable assurance that the truth would be available." Anheuser-Busch, 69 F.3d at 352. To put it another way, dismissal is appropriate when "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings" because "courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the administration of justice." Leon v. IDX Sys. Corp., 464 F.3d 951, 959 (9th Cir. 2006).

In Leon, for example, the plaintiff filed a wrongful termination suit against his former employer claiming he was fired for "whistle-blowing activities." 464 F.3d at 955-56. The plaintiff was explicitly warned not to lose or corrupt any data on his company-issued laptop as such data would be relevant in the lawsuit. Id. at 956. Despite this warning, the plaintiff admittedly deleted over 2,200 files from the laptop and wrote a program to permanently wipe

13

out the deleted files.  Id.  The plaintiff claimed that his conduct did not warrant a finding of bad faith because he only intended to erase "personal" information.  Id.  Regardless, the court held that because the plaintiff intentionally deleted evidence most likely relevant to the defendant's case, this behavior constituted willful spoliation justifying the sanction of termination.  Id. at 956-57.

The record here, in contrast, does not support terminating sanctions.  While the SEC knew that the deleted documents were potentially relevant (those that were not privileged or non-responsive), it also believed that Davis Polk was going to or had reproduced them to the SEC.  It also believed that Davis Polk and Mercury had copies of everything that the SEC deleted, and that they would reproduce anything to the SEC upon its request.  Under these circumstances the Court cannot find that the SEC engaged in conduct which constitutes deliberately deceptive practices that undermine the integrity of judicial proceedings.  See Akaosugi v. Benihana Nat'l Corp., No. 11-1272, 2012 WL 929672, at *3 (N.D. Cal. Mar. 19, 2012) (not imposing sanctions for spoliation of evidence where the plaintiff deleted his copies of documents which were also in defendant's possession).

Defendants' reliance on the SEC manual does not persuade the Court that the SEC's conduct nonetheless warrants terminating sanctions.  While the SEC may not have followed its internal guidelines, it does not change the reality that the SEC was attempting to cooperate with Davis Polk and Mercury in their efforts to comply with the SEC's subpoena and in the course of its cooperation it mistakenly deleted documents which Davis Polk did not intend for the SEC to delete.  There was no intent to deprive anyone of documents.

The Court disagrees with Defendants' suggestion that under Leon the Court can impose the "harsh sanction" of termination based merely on a finding of "fault," whatever that means.  The Leon court expressly held that under a court's inherent authority "[d]ismissal is an available sanction when a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings because courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice."  464 F.3d at 958

14

United States District Court
Northern District of California

1   (internal quotation marks and citation omitted).  The court's statement that before

2   termination can be imposed a court must also find "willfulness, fault or bad faith" did not

3   negate its earlier holding as to the requirement of deceptive or deceitful conduct.  464 F.3d at

4   959.  Indeed, the quote upon which Defendants rely comes under the heading "bad faith."

5   The facts in Leon supported a finding of bad faith.  The facts here do not.[13]

6       Defendants' reliance on Silvestri v. GMC, 271 F.3d 583, 593 (4th Cir. 2001), for the

7   proposition that mere negligence can support terminating sanctions is equally unavailing.

8   Silvestri was a products liability action in which the plaintiff claimed the air bag in his

9   vehicle did not deploy as warranted, thereby exacerbating his injuries from a crash.  Id. at

10  585.  Before he filed suit, however, he had the car repaired thus destroying any evidence of a

11  defect and the district court dismissed the plaintiff's claim for spoliation of evidence.  The

12  Fourth Circuit noted that dismissal as a sanction is generally "justified only in circumstances

13  of bad faith of other 'like action.'"  Id. at 593.  The court nonetheless held that in the

14  circumstances of that case, where the prejudice to the defendant from the spoliation was

15  extraordinary, dismissal was warranted.  Id.

16      No such extraordinary prejudice exists here.  To determine prejudice in the context of

17  spoliation, the test "is whether there is a reasonable possibility, based on *concrete evidence*,

18  that access to the evidence which was destroyed or altered, and which was *not otherwise*

19  *obtainable*, would produce evidence favorable to the objecting party."  Hamilton v.

20  Signature Flight Support Corp., No. 05-490, 2005 WL 3481423, at *8 (N.D. Cal. Dec. 20,

21  2005) (emphasis added) (internal citations and quotations omitted); Leon, 464 F.3d at 959

22  (stating that prejudice is determined by examining whether the spoliation impacted either the

23  ultimate disposition of the case or the ability of the opposing party to try it).  Defendants

24  _____

25  [13] The cases upon which Defendants rely for their argument that gross negligence can support
    terminating sanctions (Dkt. No. 240 at 4 n.7) are inapplicable.  Each case involved dismissal

26  for violation of court orders—conduct not at issue here.  See United Artists Crop. v. La Cage
    Aux Folles, Inc., 771 F.2d 1265, 1270 (9th Cir. 1985) (repeated noncompliance with

27  discovery orders); Hi-Tek Bags Ltd. v. Bobtron Int'l, Inc., 144 F.R.D. 379, 384 (C.D. Cal.
    1992) (holding that plaintiff's disclosure of confidential information in violation of protective

28  order justified dismissal sanction).

United States District Court
Northern District of California

1  appear to have calculated the number of missing documents using a production index

2  compiled by Davis Polk during the initial SEC investigation.  Given the number of Davis

3  Polk productions, reproductions, privilege mistakes, and technical errors which occurred

4  during the investigation, the document deficiency is far from "concrete."  Nonetheless,

5  assuming that 270,000 documents are in fact missing, Defendants have not demonstrated

6  sufficient prejudice to justify the harsh sanction of dismissal.  Defendants have pointed to no

7  specific missing document without which their defense is hampered.  While Defendants have

8  categorized the missing documents by custodian (based on custodian prefixes contained in

9  the various Bates numbers) in order to assess their potential relevance (Dkt. No. 241-2 at 4),

10  and while many of these custodians, such as stock option administrators, would have

11  potentially relevant evidence, Defendants have not been able to identify any specific missing

12  documents or gaps in production; for example, they do not allege that e-mails for a particular

13  period of time are missing for a particular custodian.  While Defendants may not have had

14  time to develop such evidence, their motion for sanctions is submitted.  The bottom line is

15  that their showing of prejudice is insufficient to warrant dismissal.

16  **B. Alternative, Lesser Sanctions**

17  Although Defendants initially sought only terminating sanctions, in their

18  supplemental brief they ask, in the alternative, for less severe sanctions.  Permissible

19  sanctions less harsh than outright dismissal include: an adverse inference jury instruction,

20  monetary sanctions that seek to either punish the spoliating party or compensate the

21  prejudiced party, and attorney's fees.  Access IV, 2004 WL 1837997, at *4.  Courts must

22  exercise their inherent powers to levy an appropriate sanction "with restraint and discretion."

23  Roadway Express, Inc. v. Piper, 447 U.S. 752, 764 (1980).  Courts should choose a sanction

24  that penalizes improper conduct, deters parties from engaging in such conduct, shifts the risk

25  of an erroneous judgment to the culpable party, and "restores the prejudiced party to the

26  same position he would have been in absent" evidence spoliation.  Access IV, 2004 WL

27  1837997, at *4.

28  Defendants offer four alternatives to outright dismissal and propose the Court adopt

some combination thereof.

### 1. Adverse Inference Instruction

Defendants first ask the Court to impose sanctions in the form of an adverse inference jury instruction. An adverse inference instruction asks the jury to infer that the spoliated evidence was adverse to the party responsible for destroying the evidence and beneficial to the prejudiced party. Moore, 2012 WL 669531, at *5; see also Access IV, 2004 WL 1837997, at *6 (discussing the adverse inference instruction but ultimately awarding monetary sanctions for evidence spoliation). The adverse inference instruction is "an extreme sanction and should not be taken lightly." Moore, 2012 WL 669531, at *5 (internal citations and quotations omitted); see also Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 219-20 (S.D.N.Y. 2003) ("[w]hen a jury is instructed that it may infer that the party who destroyed potentially relevant evidence did so out of a realization that the evidence was unfavorable, the party suffering this instruction will be hard-pressed to prevail on the merits" (internal citations and quotations omitted)). The instruction, though a severe sanction, can be useful in restoring balance by placing the risk of an erroneous judgment on the party that wrongfully created the risk. Access IV, 2004 WL 1837997, at *6.

The Ninth Circuit has not clearly articulated a test for determining the appropriateness of an adverse inference instruction. Courts in this District, however, have generally followed Second Circuit law. See, e.g., Apple Inc. v. Samsung Electronics Co., LTD, No. 11-1846, 2012 WL 3042943 *2 (N.D. Cal. July 25, 2012) (noting that the majority of courts follow the test set forth in Zubulake v. UBS Warburg LLC, 220 F.R.D. at 220, which in turn follows Byrnie v. Town of Cromwell, 243 F.3d 93, 107-12 (2d Cir. 2001); Hamilton v. Signature Flight Support Corp., No. 05-0490, 2005 WL 3481423 *3 (N.D. Cal. Dec. 20, 2005) (following Residential Funding Corp. v. DeGeorge Fin'l Corp., 306 F.3d 99, 107 (2d Cir. 2002) and Byrnie, 243 F.3d at 107-12)). Accordingly, the party seeking the adverse inference instruction must demonstrate "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind[;]' and (3) that the destroyed evidence was

17

1    'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it

2    would support that claim or defense." Zubulake, 220 F.R.D. at 220 (internal citations

3    omitted).  Under this standard, the presence of bad faith automatically establishes relevance;

4    however, "when the destruction is negligent, relevance must be proven by the party seeking

5    sanctions." Id.

6          As explained above there is no bad faith here.  With respect to prejudice, Defendants

7    have not shown that the missing documents, if in fact there are missing documents, would

8    support a claim by Defendants.  Again, all the record shows is that a comparison of

9    spreadsheets from an admittedly error-riddled document production suggests that documents

10   with certain Bates numbers that came from certain custodians are missing.  Although

11   Defendants provided some detail at oral argument as to why documents from these

12   custodians might be relevant, there is no evidence as to what time frame the missing

13   documents are from, or indeed, whether based on Defendants' review of the 12 million pages

14   of documents produced they have identified any particular gaps.  In Apple Inc., 2012 WL

15   3042943 at *6-7, in contrast, and based on a review of the documents actually produced, the

16   plaintiff identified actual gaps in the emails (or a lack of any emails) for relevant witnesses.

17   In sum, the Court finds that an adverse inference instruction--an instruction that would make

18   the SEC "hard pressed to prevail on the merits," Zubulake, 220 F.R.D. at 219-20--is not

19   warranted here.

20        **2.  Exclusion or Restriction of Evidence**

21          Defendants also ask the Court to exclude or restrict certain types of evidence based on

22   the SEC's mishandling of documents.  In particular, they ask the Court to preclude the SEC

23   from introducing evidence as to Defendants' state of mind or strike those claims for which

24   scienter is an element.  The Court declines this "summary judgment" evidentiary sanction for

25   the same reasons it finds dismissal and an adverse inference instruction inappropriate: the

26   SEC's conduct and the resulting prejudice do not warrant such a severe sanction.  The Court

27   also declines to prohibit the SEC from introducing any evidence of any metadata collected

28   during its investigation because—at Davis Polk's request—it destroyed all of the native files

United States District Court
Northern District of California

1 Davis Polk initially produced.  This is an issue more properly raised in a motion in limine

2 when it is apparent what evidence the SEC intends to offer at trial.

3         On the other hand, the SEC should not be allowed to take advantage of the apparently

4 missing documents given its role in the loss of the documents.  For example, it would be

5 unfair to allow the SEC to argue or otherwise imply at trial that a witness is being untruthful

6 or his or her testimony is inaccurate because the witness does not have documents to support

7 the testimony when it appears that documents related to that witness (based on Bates number

8 prefix) are missing.  Accordingly, regardless of whether it is called a sanction or simply a

9 remedial measure as a matter of fairness, the Court shall preclude the SEC from arguing or

10 implying that a witness's testimony is not credible because Defendants have not submitted a

11 document that supports the witness's testimony, provided the witness is identified on

12 Defendants' Exhibit 3 to the Declaration of Matthew Tolve (Dkt. No. 241-2 at 4) as a

13 custodian for whom there are still missing pages.  Conversely, the SEC shall also be

14 precluded from arguing that a particular witness is credible or should be believed because

15 there are no documents to contradict the witness's testimony, again provided the witness is

16 identified on Defendants' Exhibit 3 (Dkt. No. 241-2 at 4) as a custodian for whom there are

17 still missing pages.  This prohibition shall not apply should the SEC be able to prove that all

18 documents relevant to that particular witness have in fact been produced to Defendants.

19         **3.   Continuance of the Case Management Schedule**

20         Since Defendants initially filed their letter brief with the district court alleging that

21 approximately 5.7 million pages of documents were lost, they and the SEC believe they have

22 located all but 270,000 pages, although not all of the newly located documents have yet been

23 produced to Defendants.  This late production includes "more than 870,000" documents

24 which Defendants have received in the past month.  (Dkt. No. 241 ¶ 49-50.)  Although

25 Defendants have spent over 5,100 hours of time reviewing these recently located documents,

26 as of the end of July Defendants have "been able to review only about 209,000 of them."

27 (Id. ¶ 50.)  Defendants anticipate receiving another 61,000 pages from Hewlett Packard, and

28 still thousands more from Davis Polk.  Given the late production of the documents,

United States District Court
Northern District of California

1   Defendants contend that "it is unreasonable to assume on the current schedule defendants

2   can review, analyze, and effectively incorporate these millions of pages into depositions (for

3   those few that remain), expert witness testimony, dispositive motions, or trial." (Dkt. No.

4   240 at 10.) They thus ask for a 90-day extension of all case management deadlines,

5   including trial. At oral argument the SEC stated that it does not oppose a 90-day

6   continuance.

7        While the issue of the SEC's missing documents was raised more than three years

8   ago, the fact remains that the SEC did not disclose (and probably did not realize) that it had

9   deleted more than 5 million pages of documents received from Mercury which were never

10  reproduced until after Defendants filed its motions for sanctions. It was only then that it

11  became clear that the SEC had not produced and could not produce all the documents it had

12  identified in its initial disclosures. Since that time Defendants have diligently sought the

13  same documents from Davis Polk and HP/Mercury; however, they do not have sufficient

14  time to review the recovered documents and complete fact discovery by the August 31, 2012

15  deadline. Accordingly, the Court agrees with the parties that a 90-day continuance of all

16  case deadlines is warranted and recommends the same. The current case deadlines are as

17  follows:

18       Discovery cut-off:          August 31, 2012

19       Last Day to file motions:   October 4, 2012

20       Pretrial Conference:        November 26, 2012

21       Trial:                      December 10, 2012.

22

23                                  **CONCLUSION**

24       The Court in its discretion DENIES Defendants' motion for sanctions. (Dkt. Nos.

25  212, 240.) Nonetheless, as a matter of fairness, the Court precludes the SEC from arguing

26  or implying that a witness's testimony is not credible because Defendants have not submitted

27  a document that supports the witness's testimony, provided the witness is identified on

28  Defendants' Exhibit 3 to the Declaration of Matthew Tolve (Dkt. No. 241-2 at 4) as a

United States District Court
Northern District of California

custodian for whom there are still missing pages.  Conversely, the SEC is also precluded from arguing that a particular witness is credible or should be believed because there are no documents to contradict the witness's testimony, again provided the witness is identified on Defendants' Exhibit 3 (Dkt. No. 241-2 at 4) as a custodian for whom there are still missing pages.  This prohibition shall not apply should the SEC be able to prove that all documents relevant to that particular witness have in fact been produced to Defendants.

Finally, in light of the late receipt by Defendants of hundreds of thousands of pages of documents the Court recommends that the case management schedule be continued 90 days, as requested by Defendants and not opposed by the SEC.

This Order disposes of Docket Nos. 212 and 240.

**IT IS SO ORDERED.**

Dated: August 9, 2012

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE