DAVID WILLIAMS (Cal. Bar No. 183854)
STEPHAN J. SCHLEGELMILCH
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
100 F Street, N.E.
Washington, DC 20549-5977
Telephone: (202) 551-4548
Facsimile: (202) 772-9246
e-mail: williamsdav@sec.gov
schlegelmilchs@sec.gov

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>MERCURY INTERACTIVE, et al.,<br><br>Defendants. | Case No. 07-cv-02822 WHA/JSC<br><br>**SECURITIES AND EXCHANGE COMMISSION'S REPLY IN SUPPORT OF MOTION TO STRIKE OPINIONS AND REPORTS OF DEFENDANTS' EXPERT WITNESSES**<br><br>Date: February 7, 2013<br>Judge: Honorable William Alsup |

**STATEMENT OF ISSUES TO BE DECIDED**

(Local Rule 7-4(a)(3))

1. Whether the Court should exclude for all purposes the expert opinions and report of James A. Brickley.

2. Whether the Court should exclude for all purposes the expert opinions and report of Richard A. Waldron.

3. Whether the Court should exclude for all purposes the expert opinions and report of Charles R. Morgan, Esq.

4. Whether the Court should exclude for all purposes the expert opinions and report of Roman Weil.

5. Whether the Court should exclude for all purposes the expert opinions and report of Josephine Lewis, Esq.

# INTRODUCTION

The Supreme Court has long held that industry practice or custom may be some evidence of whether a defendant's conduct meets a relevant standard of care: "[w]hat usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not." *Texas & Pacific Ry. Co. v. Behymer*, 189 U.S. 468 (1903). Of course, such evidence is not dispositive. *E.g., Newton v. Merrill, Lynch*, 135 F.3d 266, 274 (3rd Cir. 1998) ("Even a universal industry practice may still be fraudulent.").

But through their phalanx of "experts,"[1] defendants endeavor to bend this evidence from its typical nature. They do not present evidence of "what is usually done" – evidence that might include an explanation of how stock options are usually granted, or how stock options are usually accounted for. Instead, they purport to present evidence of what is or is not usually *known* by a "typical" senior corporate officer, or evidence that purports to show that no reasonable senior officer could understand the accounting for options or interpret the straightforward language of a stock option plan. This "evidence" is offered *not* to establish whether defendants met some supposed standard of care, but to support their claim that they acted with innocent intent.

Of course, "[i]nferences about the intent or motive of parties or others lie outside the

---

[1] Defendants devote a significant portion of their Memorandum in Opposition [DE 314] ("Mem.") to complaining that the Commission is somehow seeking a "tactical advantage" by attemting to strike experts through a single motion rather than five separate motions *in limine*. In the first instance, because the Commission's objections to the opinions of certain defense experts relate to the summary judgment briefing, the Commission reasonably raised those objections in the present context. And, because those objections are common to other experts, it was equally reasonable to include those other experts of the same objectionable ilk in the same motion. Unlike defendants, who affirmatively refused to consolidate their summary judgment briefing so as to avail themselves of every briefing page possible, the Commission has endeavored to present its briefing in as streamlined a manner as possible, first by consolidating its summary judgment motion against three separate defendants into a single pleading, as well as by including all pertinent experts in the present motion so as to permit the Court to resolve common issues as efficiently as possible. While the Commission is not trying to circumvent the Court's limitations on *in limine* motions, the Commission (and probably the Court) had no idea that defendants would designate a small army of experts in this relatively uncomplicated case. Certainly defendants cannot possibly believe that the Court would ultimately permit legally inadmissible expert testimony to be received at trial simply because defendants designated so much improper expert evidence that the Commission had "run out" of *in limine* motions through which pre-trial objections could be heard.

bounds of expert testimony." *In re Rezulin Products Liability Lit.*, 309 F.Supp.2d 531, 547 (S.D.N.Y. 2004). Expert testimony is inadmissible where the expert "does no more than counsel for [the proponent] will do in argument, i.e., propound a particular interpretation of [defendant]'s conduct." *Id*. at 551 (quotation omitted). Because each of the experts challenged by the Commission's present motion offer little more than such improper inferences and argumentative interpretations of evidence, their testimony should be excluded in its entirety.

## ARGUMENT

### I. The "Role Of Senior Officer" Expert Evidence Is Improper.

Defendants' Opposition to the motion fails to offer any substantial basis for admitting the improper expert testimony. They contend that "[b]ecause a jury cannot reasonably be expected to be familiar with industry standards and practices for a public company CFO, CEO or GC," expert testimony as to the "roles and responsibilities of such corporate executives" is proper. Mem. at 6. Generally speaking, this proposition is correct.[2] But the facts at issue here do not pertain to these general background facts, which can more than adequately be elucidated to a jury by fact witnesses. And the proffered evidence that forms the true substance of the opinions of defense experts James Brickley, Richard Waldron and Charles Morgan is not nearly so benign.

For instance, Dr. Brickley opines that a CEO can reasonably "[d]elegate primary responsibility for complying with accounting, disclosure and legal requirements" to legal, financial and accounting professionals "including those requirements pertaining to the firm's granting of stock option awards and the firm's stock option plans." [DE 283, Ex. A. p. 4]. He apparently takes no account or consideration of the fact that Landan, as a member of Mercury's Stock Option Committee, over a period of years systematically subscribed to backdated

---

[2] Defendants incorrectly assert that the Commission is required to "prove" negligence to sustain its claims under Section 17(a)(2) and (3) of the Securities Act of 1933. This is false. Section 17(a)(2) and (3) do not require proof of any particular state of mind – once a defendant's actions have been established, the violations are proven. *Aaron v. SEC*, 446 U.S. 680, 697 (1980).

Unanimous Written Consent documents that expressly – and falsely – represented that the exercise price of options he approved was the "present fair market value" of the company's stock. With all due respect to Dr. Brinkley, you do not need to be an "expert" on the role of a CEO to know that when you represent that the fair market value of Mercury's stock is $50, and the stock is trading at $75, you are making a misrepresentation. Brickley then proceeds to opine that Landan's supposed "delegation and reliance on accounting and legal professionals" was reasonable, and that Brickley would not expect Landan to have "sufficient training, knowledge or expertise necessary" to assess whether the backdating at Mercury violated the company's stock option plan or GAAP. [*Id*. at p. 4-5].

But Landan himself failed to establish any lack of knowledge or cognizable reliance. During his investigative testimony in 2005, he asserted his Fifth Amendment privilege as to substantive questions. [DE 270 at Ex. 66.] Years later, at his deposition on March 27, 2012, Landan testified that he had no "specific recollection of a [stock option] pricing process"[3] and had "no specific recollection of . . . specific grants," but generally recalled that options were priced with the benefit of hindsight to dates coinciding with relative low points of the Company's stock price. Landan could not "recall specifics about price determination." [*Id*. at Ex. 14 (p. 27:21-25).] He had "no recollection of what actually took place" in terms of the execution of UWCs [*Id*. (p. 49:12-18)], did not remember if he was aware of what an in-the-money option was, and did not know how "the fair market value of the stock was determined" – despite the fact that he checked Mercury's stock price on at least a daily basis. [*Id*. (pp. 57:20-59:3).] In fact, he generally understood that there were accounting implications to granting stock options, but had "no recollection" of any conversations on the subject with Abrams or the Company's outside auditors. [*Id*. (pp. 73:10-74:12).]

---

[3] [DE 270 at Ex. 14 (pp. 24:16-22; 25:14-26:2).]

Landan thus eluded extended cross-examination on the existence – much less the reasonableness – of his reliance, as well as on his scienter, first by asserting a Fifth Amendment privilege, and later asserting a purported lack of recollection. Now, as a substitute for such evidence, Landan puts forward a "defense" of reliance and lack of scienter through Dr. Brickley, who he believes will similarly be able to elude cross-examination as to the asserted defenses because he purportedly does not "summarize evidence or testify to the evidence or facts in this case." Mem. at 5. This is improper. So-called "expert" testimony as to what a defendant likely "believed, and relied upon, advice from counsel and others" regarding the fraudulent conduct is properly excluded as "nothing more than an attempt by [the defendant] to testify by proxy, that is, to elicit the aid of a so-called expert to expound on [defendant]'s mental state and thereby avoid . . . undergoing rigorous cross-examination." *U.S. v. Tucker*, 345 F. 3d 320, 330 (5th Cir. 2003). An "[expert]'s belief about a party's state of mind is an improper subject for expert testimony and cannot be saved by couching his opinion as 'industry custom and practice.'" *Highland Capital Management, LP v. Schneider*, 551 F.Supp.2d 173, 182-83 (S.D.N.Y. 2008); *U.S. v. Bilotto*, 2005 WL 5978665, at *2 (W.D. Tex. Sept. 27, 2005) ("Such testimony would . . . be pure speculation, because the expert has no personal knowledge as to whether Defendant relied upon the agent, nor does the expert have personal knowledge as to Defendant's intent at the time of the . . . transactions").

The proffered testimony of Waldron and Morgan suffer from the same defect. Waldron opines that a "CFO is not required to have accounting expertise" and must therefore "rely on internal and external finance and accounting experts to ensure that accounting rules are properly applied." [DE 283, Ex. B (p. 7).] But Smith, who expressly told an employee that backdating an option grant to the date of the employee's offer letter "would create a Comp. expense," and who similarly asserted his Fifth Amendment privilege during his 2005 investigative testimony [DE

270 at Ex. 67], did not "recall having knowledge of . . . the method by which a price was set for a stock option at Mercury" during his deposition. [*Id*. at Ex. 62 (pp. 40:23-44:4).] He also did not "recall what [he] knew in 2002 about accounting consequences for stock options." [*Id*. (p. 43:5-10).] Record evidence demonstrates that in 2002, Smith told the company's General Counsel and the company's VP-Finance and Principal Accounting Officer: "STOP!!!!!!!!!!!!!!!!!!!!No more accounting for stock option expense without my complete involvement." [*Id*. at Ex. 52]. With all due respect to Mr. Waldron, this does not sound like a CFO who was following the lead of others.

Similarly, Morgan opines that it was "reasonable" for Skaer to rely on outside consultants for any interpretation of the stock option plan, and "reasonable" for her to rely on accounting and finance documents and outside auditors for the preparation of financial statements. [DE 283, Ex. C, p. 15-19]. But where is the evidence in support of such claims of "reasonable" reliance? If Skaer relied on "outside consultants" for her interpretation of the company's stock option plan, there is certainly no evidence of it in the record. And this claim of "reasonableness" is proffered in the face of Skaer's sworn investigative testimony cited in the Commission's summary judgment motion demonstrating that Skaer did, in fact, have a working understanding of the stock option plan, and the evidence described both in the Commission's summary judgment motion and its opposition to Skaer's Summary Judgment Motion clearly demonstrating that Skaer did, in fact, understand the accounting principles at issue.

In order to adequately set forth a "good faith reliance" defense, each defendant must demonstrate that he or she "1) made full disclosure of the relevant facts to the professional; 2) requested advice from the professional as to the legality of the proposed action; 3) received advice that it was legal; and 4) relied in good faith on that advice." *SEC v. Indigenous Global Devel. Corp.*, 2008 WL 8853722, at *14 (N.D. Cal. June 30, 2008). The Commission respectfully submits that there is inadequate evidence of such good faith reliance in the record

REPLY IN SUPPORT OF MOTION TO STRIKE
EXPERTS' TESTIMONY                                - 5 -

*SEC v. Mercury Interactive, et al.*, Case No. 07-2822 WHA/JSC

here to create even a material question of fact as to each defendant's scienter. Defendants certainly cannot create such evidence by hiring "expert" witnesses. After all, "[a]n expert witness may provide opinion testimony" only if "the testimony is based upon sufficient facts or data." *Oracle America v. Google*, 2012 WL 4017808, at *1 (N.D. Cal. April 10, 2012). The purported "reasonableness" of reliance is simply irrelevant in the absence of any substantial showing of reliance.

Defendants also contend that there are other permissible uses for the proffered expert testimony; they assert for instance that that the jury "will have to determine what the standard of care is for a GC when it comes to allocating finite resources to limitless risk." Mem. at 12. But this is not a case about whether defendants appropriately "allocated risk" – this is a case about whether defendants committed fraud by backdating stock options. And the standard of care is not the subject of serious dispute – it is one of "reasonable prudence, whether it usually is complied with or not." *SEC v. Dain Rauscher, Inc.*, 254 F.3d 852, 856 (9th Cir.2001).

As the Third Circuit noted in *Berckeley Inv. Group v. Colkitt*, 455 F.3d 195 (3d Cir. 2006), "the line between admissible and inadmissible expert testimony as to the customs and practices of a particular industry often become blurred when the testimony concerns a party's compliance with customs and practices that implicate legal duties." *Id*. at 218. Such "custom and practice" testimony is *improper* when it extends to the "reasonableness" of a defendant's purported belief or mental state. *Id*. Such testimony – without regard to what that mental state in fact was – is simply irrelevant and properly excluded. *E.g., In re Apollo Group. Sec. Lit.*, 527 F.Supp.2d 957, 962-63 (D. Ariz. 2007) (excluding expert testimony as to legal advice "a reasonable securities practitioner" would have given as irrelevant). For these reasons, the testimony of defense experts James Brickley, Richard Waldron and Charles Morgan, should be excluded.

**II. Professor Weil's Proffered Testimony Is Improper.**

Defendants also proffer the opinion of Professor Roman Weil. Defendants concede that Professor Weil offers no opinions, discussion, analysis or even mention of any of the accounting judgments made in this case. Mem. at 12. Professor Weil opines – in the face of a number of judicial decisions in this district – that the interpretation of APB 25 was "ambiguous."[4] *Compare United States v. Reyes*, 2007 WL 1574540, at *3 (N.D. Cal. May 30, 2007); *see also Middlesex Ret. Sys. v. Quest Software, Inc.*, 2008 WL 7084629, *7 (C.D. Cal. Jul. 10, 2008) ("Although in some circumstances application of APB 25 may be unclear, there is no plausible interpretation of APB 25 that can justify Defendants' intentional backdating and failure to record compensation expenses."). Defendants do not dispute that Professor Weil *never* opines that Defendants' conduct comported with APB 25, or "GAAP."

Professor Weil's opinion is simply irrelevant, unhelpful to the trier of fact, and creates an unnecessary risk of confusion. Defendants argue that it informs the "reasonableness" of the supposed confusion of Sharlene Abrams, Mercury's former CFO who purportedly believed that the backdating scheme comported with GAAP. Mem. at 13; *But cf.* [DE 270, Ex. 50 (8/31/00 email from Abrams to Egert – "No backdating – this is illegal and causes a charge to earnings. All grants are current per [the Board].")]. But Abrams is no longer a defendant in this case. Defendants point to no evidence whatsoever of their own "confusion" as to the "interpretation" of APB 25. Indeed, they argue (in the face of substantial documentary evidence) that they were somehow unaware of the rule. If defendants were unaware of the rule – and Professor Weil does not contend that the conduct actually complied with the rule – whether the rule was "confusing" or not has no apparent relevance.

---

[4] Defendant assert that the Commission does not challenge Sections IV and V of Professor Weil's report, but each section of the report reflects a different aspect of the same theme – that APB 25 was somehow "confusing" with respect to how backdated grants are accounted for. Accordingly, the Commission challenges the report in its entirety.

REPLY IN SUPPORT OF MOTION TO STRIKE EXPERTS' TESTIMONY - 7 -

In this respect, the Ninth Circuit's decision in *United States v. Scholl*, 166 F.3d 964 (1999) is instructive. In *Scholl*, the Ninth Circuit upheld the exclusion of a tax expert put forward to explain "the confusing state of tax and accounting law," where "the proffered experts had no personal knowledge of any predicate matter relating to [defendant]'s own ability to understand the legal principles involved." *Id.* at 973. The Ninth Circuit affirmed the exclusion, explaining that "the expert's personal experience with the tax laws was not relevant, would be confusing and the prejudicial effect outweighed the probative value." *Id*. So too here. Professor Weil's testimony should be stricken in its entirety.

**III.  Expert Opinion As To The Legal Meaning of Mercury's Option Plan Is Improper.**

Defendants' opposition is noteworthy in that it does not even *attempt* to explain the basis of the purported ambiguity created by their "expert" in the stock option plan. Again, at issue is the straightforward provision which provides, under the section "Time of Granting Options," that "the date of grant of an Option shall, for all purposes, be the date on which the Board makes the determination granting such Option." The Commission has cited to the Court substantial authority in support of the proposition that such legal "expert" opinion interpreting an unambiguous plan provision is improper. In opposing the motion, defendants rely heavily – if not exclusively – on Judge Chen's decision in *SEC v. Sabhlok*, No. 08-4238, 2010 WL 2944255 (N.D. Cal. July 23, 2010).

In *Sabhlok*, the court permitted testimony regarding the interpretation of a stock option plan "because an ambiguity in the terms of the stock option plan may inform whether Defendant engaged in unreasonable conduct constituting an extreme departure from ordinary care." *Id*. at *2. Important to this decision was the existence of a potential "ambiguity in the terms" of the plan that might have some specialized meaning. *Id*. With respect to the determination of the "grant date" for a stock option, the option plan at issue in *Sabhlok* provided: "The date of grant

REPLY IN SUPPORT OF MOTION TO STRIKE
EXPERTS' TESTIMONY                                    - 8 -

*SEC v. Mercury Interactive, et al.*, Case No. 07-2822 WHA/JSC

of an Option shall be the date on which the Administrator makes the determination to grant such Option *unless otherwise specified by the Administrator.*") [Embarcadero Technologies 1993 SOP, Section 5.2]. *SEC v. Sabhlok*, No. 08- 4238, (N.D. Cal.), Docket No. 333, Appx. 6, Tab 48. In *Sabhlok*, the Commission maintained – and put forward evidence – that the clause "unless otherwise specified by the Administrator" was *not* intended to permit backdating.[5] But the clause, at least on its face, does not expressly foreclose backdating and is at least arguably ambiguous.

But the arguably ambiguous provision in *Sabhlok* governing the determination of "grant date" *does not exist* in the Mercury stock option plan. While expert testimony might be helpful to inform the meaning of an ambiguity, it is patently improper to create ambiguity where none exists. *Northrop Grumman Corp. v. Factory Mut. Ins. Co.*, 563 F.3d 777, 787 (9th Cir. 2009) (defendant cannot "artificially create ambiguity where none exists"). And, even in *Sabhlok*, Judge Chen permitted testimony on the meaning of the plan from an *accounting* expert: "the Court will limit testimony if it involves knowledge and experience of a legal rather than an accounting expert." *Sabhlok*, 2010 WL 2944255 at *2. This is precisely what defendants' proffered "expert" offers – legal testimony from a lawyer as to the meaning of a facially unambiguous contractual provision.

The defendants also contend that Lewis's opinion is relevant to "whether the jury can conclude that defendants' belief that assigning dates in hindsight did not violate the plan is reasonable." Mem at 16. But, *none* of the defendants has testified that he or she understood the provision to permit backdating, and *none* stated that they found the provision ambiguous.[6]

---

[5] The language is consistent with the provisions of the 2003 Equity Incentive Plan proposed by Mercury in April 2003 (and ultimately rejected by the company's shareholders) which provided at Section 5.2 that "The date of grant of an Option will be the date on which the Committee makes the determination to grant the Option, unless a *later* date is otherwise specified by the Committee." The language of *this* provision was omitted from the "analysis" of defendants' "expert."

[6] Indeed, Landan, Skaer and Smith each refused, on the basis of the Fifth Amendment, to describe their understanding of Mercury's options plan when testifying before the Commission in 2005, and an adverse inference is appropriate. *Baxter v. Palmigiano*, 425 U.S. 308, 319 (1976) ("silence is often evidence of the most persuasive

Rather, each defendant has taken the position that they cannot remember seeing the provision or what they thought the provision meant:

> Q. And this is, appears to be at least, Mercury Interactive Corporation's 1999 Stock Option Plan as amended on May 26, 1999. My question to you is: Have you ever seen this document before?
> A. I have seen it as part of the preparation and whole process.
> Q. Prior – prior to the SEC Complaint?
> A. I don't recall seeing this before.
>
> * * * *
>
> Q. Did you know in 1999 and 2000 how the grant date of a stock option was determined under the 1999 stock option plan?
> A. I don't remember now.
>
> * * * *
>
> Q. . . . How did you believe that the price of your options was supposed to be determined?
> A. Well, I believed it was supposed to be determined by the – I really don't know what the actual method for determining the grant date was or should be.
> Q. Okay. You didn't know?
> A. I didn't know.[7]

Indeed, defendants cannot cite to single witness—other than Lewis, who they have paid handsomely—who holds or held this opinion. Defendants attempt to use an expert to create a "reasonable belief" out of whole cloth. Lewis's testimony and opinions regarding the stock option provisions are, however, simply irrelevant and, for this reason, her opinions and testimony must be excluded.

Thus, for the reasons stated in the Commission's motion, the Court should exclude the opinion Josephine Lewis, Esq. in its entirety.

## **CONCLUSION**

For the reasons stated, the Court should grant the Commission's motion and exclude all opinions offered by James A. Brickley, Richard A. Waldron, Charles R. Morgan, Esq., Roman Weil, and Josephine Lewis, Esq.

---

character"); *Nationwide Life Ins. v. Richards*, 541 F.3d 903, 912 (9th Cir. 2008) (adverse inference appropriate when defendant had asserted Fifth Amendment about participation in a murder).

[7] [Declaration of Stephan Schlegelmilch at Exs. A (p. 84:15-23), B (p. 44:9-12), Ex. C (p. 88:14-20).]

REPLY IN SUPPORT OF MOTION TO STRIKE EXPERTS' TESTIMONY - 10 -

*SEC v. Mercury Interactive, et al.*, Case No. 07-2822 WHA/JSC

1 | DATED: February 1, 2013

Respectfully submitted,

*s/ Stephan J. Schlegelmilch*
David Williams
Stephan J. Schlegelmilch
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
100 F Street, NE
Washington, DC 20901-4010
Telephone: (202) 551-4548 (Williams)
Fax: (202) 972-9246 (Williams)

REPLY IN SUPPORT OF MOTION TO STRIKE EXPERTS' TESTIMONY - 11 -

*SEC v. Mercury Interactive, et al.*, Case No. 07-2822 WHA/JSC

1

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2013, I electronically filed the foregoing PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO STRIKE THE OPINIONS AND REPORTS OF DEFENDANTS' EXPERTS with the Clerk of the Court using the CM/ECF system.

                                          s/ *Stephan J. Schlegelmilch*_____
                                          One of Plaintiff's Attorneys

REPLY IN SUPPORT OF MOTION TO STRIKE EXPERTS' TESTIMONY — - 12 -

*SEC v. Mercury Interactive, et al.*, Case No. 07-2822 WHA/JSC